# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CRAIG DUNN, PAM KOEHLER, ZULMARIE RIVERA, TRU VALUE AUTO MALLS LLC, DAVID M. JORGENSEN, ANNA MARIE BRECHTELL FLATTMANN, ROBERT REDFEARN, JR., TASHA R. SEVERIO, KENNETH G. DECIE, GREGORY MCCARTHY, NICOLE PEASLEE, KAREN SWITKOWSKI, ANTHONY D. DARK, LEMON AUTO SALES, INC., NATHAN BORDEWICH, KATHLEEN WILKINSON, HAYDEE MASISNI, AND NANCY BARNETT on Behalf of Themselves and All Those Similarly Situated, | Civil Action No. |
| | |
| **Plaintiffs,** | **CLASS ACTION COMPLAINT** |
| vs. | **JURY TRIAL DEMANDED** |
| TAKATA CORPORATION, TK HOLDINGS, INC., HIGHLAND INDUSTRIES, INC., HONDA MOTOR CO., LTD., AMERICAN HONDA MOTOR CO., INC., BAYERISCHE MOTOREN WERKE AG, BMW OF NORTH AMERICA, LLC, BMW MANUFACTURING CO., LLC, FORD MOTOR COMPANY, TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., AND TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., | |
| | |
| **Defendants.** | |

## NATURE OF CLAIM

1.      Plaintiffs Craig Dunn, Pam Koehler, Zulmarie Rivera, Tru Value Auto Malls LLC, David M. Jorgensen, Anna Marie Brechtell Flattmann, Robert Redfearn, Jr., Tasha R. Severio, Kenneth G. Decie, Gregory McCarthy, Nicole Peaslee, Karen Switkowski, Anthony D. Dark, Lemon Auto Sales, Inc., Nathan Bordewich, Kathleen Wilkinson, Haydee Masisni, and Nancy Barnett bring this action on behalf of themselves and on behalf of all persons similarly situated who purchased or leased Defective Vehicles (defined below) manufactured, distributed, or sold by the Vehicle Manufacturer Defendants (defined below) that contain airbags manufactured by Defendant Takata (defined below), for claims under of federal and state law. Plaintiffs, based on personal knowledge as to Plaintiffs and their own acts, and upon information and belief as to all other matters, allege as follows:

2.      As used in this Complaint, "Defective Vehicles" refers to all vehicles purchased or leased in the United States that have airbags manufactured by Defendant Takata and have been subject to an airbag-related warning or recall, including, but not limited to,  the following vehicles:  2001 - 2007 Honda Accord; 2001 -2005 Honda Civic; 2002 – 2006 Honda CR-V; 2003 – 2011 Honda Element; 2002 – 2004 Honda Odyssey; 2003 – 2007 Honda Pilot; 2006 Honda Ridgeline; 2003 – 2006 Acura MDX; 2002 – 2003 Acura TL/CL; 2005 Acura RL; 2000 – 2005 BMW 3 Series Sedan; 2000 – 2006 BMW 3 Series Coupe; 2000 – 2005 BMW 3 Series Sports Wagon; 2000 – 2006 BMW 3 Series Convertible; 2001 – 2006 BMW M3 Coupe; 2001 – 2006 BMW M3 Convertible; 2004 Ford Ranger; 2005 – 2006 Ford GT; 2005 – 2007 Ford Mustang; 2002 – 2004 Lexus SC; 2002 – 2005 Toyota Corolla; 2003 – 2005 Toyota Corolla Matrix; 2002 – 2005 Toyota Sequoia; and 2003 – 2005 Toyota Tundra.  The term "Defective Vehicles" includes all vehicles purchased or leased in the United States that have airbags

2

manufactured by Defendant Takata and are recalled at any point after the filing date of this Complaint for a reason relating to airbag defects.

3. Other vehicles that have been recalled because they have airbags manufactured by Defendant Takata include the following:  2003 – 2008 Dodge Ram 1500; 2005 – 2008 Dodge Ram 2500; 2006 – 2008 Dodge Ram 3500; 2006 – 2008 Dodge Ram 4500; 2008 Dodge Ram 5500; 2005 – 2008 Dodge Durango; 2005 – 2008 Dodge Dakota; 2005 – 2008 Chrysler 300; 2007 – 2008 Chrysler Aspen; 2003 – 2005 Pontiac Vibe; 2005 Saab 9-2x; 2003 – 2007 Mazda6; 2006 – 2007 MazdaSpeed6; 2004 – 2008 Mazda RX-8; 2004 – 2005 Mazda MPV; 2004 Mazda B-Series Truck; 2004 – 2005 Mitsubishi Lancer; 2006 – 2007 Mitsubishi Raider; 2001 – 2003 Nissan Maxima; 2001 – 2004 Nissan Pathfinder; 2002 – 2004 Nissan Sentra; 2001 – 2004 Infiniti I30/I35; 2002 – 2003 Infiniti QX4; 2003 – 2005 Infiniti FX35/FX45; 2003 – 2005 Subaru Baja; 2003 – 2005 Subaru Outback; 2003 – 2005 Subaru Legacy; and 2004 – 2005 Subaru Impreza.

4. Airbags are meant to inflate rapidly during an automobile collision.  The airbag's purpose is to cushion occupants during a crash and provide protection to their bodies when they strike objects in the vehicle, such as the steering wheel, dash board, or windshield.  When people operate a motor vehicle or ride in one as a passenger, they trust and rely on the manufacturers of those motor vehicles to make those vehicles safe.  And one of the central safety features of any motor vehicle is the airbag.

5. The Defective Vehicles contain airbags manufactured by Defendant Takata that, instead of protecting vehicle occupants from bodily injury during accidents, violently explode and expel vehicle occupants with lethal amounts of metal debris and shrapnel.

6.    The manufacturing defect in Takata's airbags dates back to at least April 2000, when, according to one recall notice, some Takata airbags produced between April 2000 and September 2002 contained manufacturing defects.  Takata became aware of the defect at least as early as 2001 when the first recall was issued relating to the exploding Takata airbags in Isuzu vehicles.

7.    In 2004, a Takata airbag in a Honda Accord exploded in Alabama, shooting out metal shrapnel and severely injuring the car's driver.  Honda and Takata deemed the incident "an anomaly" and did nothing about it.  Honda did not issue a recall.  Neither Honda nor Takata sought the involvement of federal safety regulators.  In fact, Honda did not tell regulators about this event until an inquiry into its 2009 recall.

8.    The serious danger posed by the lethal Takata airbags was not disclosed to U.S. safety regulators until 2008, despite red flags raised by the 2001 Isuzu and 2004 Honda exploding airbag incidents.  Indeed, Honda received three additional reports of airbag rupture incidents in 2007, but never issued recalls or told U.S. safety regulators that the incidents involved exploding airbags.  Finally, in November 2008, Honda informed U.S. authorities that it had a problem with some of the Takata airbags installed in its vehicles.  However, at that time Honda recalled only 4000 Accords and Civics.

9.    In April 2009, six months after the limited 2008 recall, a Takata airbag in Florida resident Jennifer Griffin's Honda Civic exploded after a minor accident.  The lethal explosion sent a two-inch piece of shrapnel from the airbag flying into Ms. Griffin's neck.  Although Ms. Griffin survived, when highway troopers found her, blood was gushing from a gash in her neck. Ms. Griffin's car was not part of the 2008 Recall.

10.      In May 2009, a month after Ms. Griffin's accident, 18-year-old Ashley Parham was killed while driving a 2001 Honda Accord when the Takata airbag in her car exploded after her car bumped into another car in a parking lot.  While she apparently survived her accident, the metal shrapnel that shot out of the exploding Takata airbag sliced open her carotid artery and she bled to death.

11.      Ms. Parham's car was not one of those recalled six months earlier by Honda.

12.      It wasn't until two months after Ms. Parham's death that Honda expanded its 2008 recall to about 400,000 vehicles, summoning back additional 2001 and 2002 Acura, Civic, and Accord models, including the model driven by Ms. Parham.

13.      In recent incidents, first responders have been baffled by the fact that victims of apparently minor accidents suffered injuries more consistent with being shot or stabbed repeatedly.

14.      For example, around July 2014, South Florida resident Claribel Nunez was involved in a crash while driving her 2001 Honda Civic. While she survived the automobile accident, she was badly injured when a chunk of metal exploded from her car's Takata airbag into her forehead. She survived, but now suffers from headaches, nausea, and loss of vision.

15.      On September 29, 2014, Florida resident Hien Tran died four days after her 2001 Honda Accord struck another car in Orlando and the Takata airbag exploded, sending shrapnel into her neck.  The medical examiner stated that the shrapnel tore through the airbag, hitting Ms. Tran and causing "stab-type wounds" and cutting her trachea.  Indeed, her death was initially investigated as a homicide by detectives.  A week after she died she received a letter in the mail from Honda urging her to get her car fixed because of faulty airbags that could explode.

16.    Despite this shocking record, both Takata and Honda have been slow to report the full extent of the danger to drivers and passengers and failed to issue appropriate recalls.  Both Honda and Takata provided contradictory and inconsistent explanations to regulators for the defects in Takata's airbags, leading to more confusion and delay.   Indeed, the danger of exploding airbags and the number of vehicles affected was not disclosed for years after it became apparent there was a potentially lethal problem.  Instead, Takata and Honda repeatedly failed to fully investigate the problem and issue proper recalls, allowing the problem to proliferate and cause numerous injuries and at least four deaths over the last 13 years.

17.    It was not until 2013, four years after Honda first reported the problem to U.S. regulators, that a more detailed recounting of Takata's safety failures was revealed.  The full scope of the defects have yet to be determined.  More information about Takata's defective airbags continues to be uncovered today.

18.    Takata's own airbag manufacturing plants did not abide by Takata's internal safety rules.  In 2002, Takata's airbag manufacturing plant in Mexico allowed a defect rate that was "six to eight times above" acceptable limits, or roughly 60 to 80 defective parts for every 1 million airbag inflators shipped.

19.    Equally troubling, Takata misled at least one other car manufacturer to believe that its vehicles were not affected by Takata's defective airbags.  In 2010, Takata affirmatively assured BMW that its vehicles were not affected because BMW's airbags were manufactured on a different production schedule from Honda's.  It wasn't until 2013 that Takata finally admitted that BMW's airbags were in fact at risk of explosion.  Takata's actions thus aided in the delay of other car manufacturers issuing recalls on their vehicles with Takata airbags.

20.     However, the other Vehicle Manufacturer Defendants were on notice as early as 2008 when Honda first notified regulators of a problem with its Takata airbags.  Other car manufacturers with Takata airbags in their vehicles knew or should have known at that time that there might be a safety problem with their airbags and should have launched their own investigations and notified customers.

21.     In June 2014, NHTSA announced that BMW, Chrysler, Ford, Honda, Mazda, Nissan, and Toyota were conducting limited regional recalls to address a possible safety defect involving Takata brand airbag inflators.  The action was influenced by a NHTSA investigation into six reports of airbag inflator ruptures, all of which occurred in Florida and Puerto Rico.

22.     To date, over 14 million vehicles with Takata's airbags have been recalled worldwide, and there are reports that additional vehicles that have not yet been disclosed by the Defendants could join the list of recalls.  The large majority of those recalls have come only within the last year despite the fact that many of the vehicles were manufactured with a potentially defective and dangerous airbag over a decade ago.

23.     U.S. federal prosecutors have taken notice of Takata's failure to properly report the problem with its airbags and are trying to determine whether Takata misled U.S. regulators about the number of defective airbags it sold to automakers.

24.     As a result of Takata's and the Vehicle Manufacturer Defendants' misconduct, Plaintiffs and Class Members (defined below) were harmed and suffered actual damages in that the Defective Vehicles have potentially deadly airbags that pose an ongoing threat to drivers and passengers and have drastically diminished the value of the cars in which they are installed. Plaintiffs and the Classes did not receive the benefit of their bargain as purchasers and lessees received vehicles that were of a lesser standard, grade, and quality than represented, and did not

receive vehicles that met ordinary and reasonable consumer expectations. Class Members did not receive vehicles that would reliably operate with reasonable safety, and that would not place drivers and occupants in danger of encountering an ongoing and undisclosed risk of harm, which could have been avoided. A vehicle purchased or leased under the reasonable assumption that it is "safe" as advertised is worth more than a car—such as the Defective Vehicles—that is known to contain a Takata airbag. All purchasers of the Defective Vehicles overpaid for their vehicles. Furthermore, the public disclosure of the defective Takata airbags has caused the value of the Defective Vehicles to materially diminish. Purchasers or lessees of the Defective Vehicles paid more, either through a higher purchase price or higher lease payments, than they would have had the defects been disclosed.

25.     Worse still, the current recalls have done little to protect owners and lessees of Defective Vehicles from the urgent and ongoing threat posed by Takata airbags because there are not enough new airbags to replace the millions of recalled airbags.

26.     All owners or lessees of the Defective Vehicles have been strongly urged by the National Highway Traffic Safety Administration ("NHTSA") "to act immediately" on the recall notices to replace Takata airbags. The NHTSA reiterated that its recall message comes with "urgency" and that "[r]esponding to these recalls, whether old or new, is essential to personal safety."

27.     However, Takata is unable to manufacture enough new, safe airbags quickly enough to replace the faulty airbags in the nearly eight million vehicles that are the subject of the most recent recall. "There's simply not enough parts to repair every recalled single car immediately," said Chris Martin, a spokesman for Honda.[1]

---

[1] Hiroko Tabuchi and Christopher Jensen, *It Looked Like a Stabbing, but Takata Airbag Was the Killer*, N.Y. Times, Oct. 20, 2014.

28.     Even if there were enough airbags, dealers are unable to keep up with the volume of customers rushing to get their Takata airbags replaced.  Some dealers have reported receiving up to 900 calls per day about the recalls and are telling customers that they may have to wait months before airbags can be replaced.

29.     Instead of replacing the airbags, some dealers are either disabling airbags and leaving customers with vehicles that are unsafe to drive, or are advising customers to not drive vehicles with Takata airbags until the airbags can be replaced.

30.     Toyota has taken the extreme step of disabling passenger airbags entirely and putting a "Do Not Sit Here" decal in the vehicle until proper repairs can be made.  In the alternative, Toyota is advising customers to not drive their vehicles with Takata airbags until the airbags can be replaced.  Toyota has not explained how drivers who rely on these vehicles for work and school are to cope without means for transportation.

31.     Plaintiffs and Class Members are either left with unsafe vehicles or no vehicle at all.  At this time, automakers are not offering customers the use of loaner vehicles.

32.     Congress is also concerned with this serious problem and has questioned the legality of Toyota's and other automaker's responses.  U.S. Senators Richard Blumenthal and Edward J. Markey, in a letter to the Department of Transportation (DOT), expressed their alarm "that NHTSA has endorsed a policy recently announced by Toyota and GM that dealers should disable passenger-side airbags and instruct against permitting passengers in the front seat if replacement parts for these airbags are unavailable.  **As a matter of policy, this step is extraordinarily troubling and potentially dangerous.**  As a matter of law . . . §30122(b) of the Motor Vehicle Safety Act (40 U.S.C.) prohibits a manufacturer from knowingly making a safety

device inoperative unless the [DOT] issues a specific exemption.   We are unaware of an exemption from your office in the case of Takata airbags."[2]

33.     Equally important, the Senators said, is that "all drivers deserve access to loaners or rental cars at no cost to them while they await repairs to their cars that make them safe enough to drive again."[3]  **"[Y]our office should strongly encourage manufacturers to provide rental cars at no cost to consumers if their cars cannot be fixed immediately because of insufficient replacement parts**."[4]

34.     As these Senators have recognized, there is an immediate need to provide safe vehicles for Plaintiffs and Class Members.  Otherwise, many may be left without a vehicle to take them to and from work, to be able to pick up their children from school or childcare, or, in the most urgent situations, a vehicle to transport themselves or someone else to a hospital.

35.     Takata and the Vehicle Manufacturer Defendants knew or should have known that the Takata airbags installed in millions of vehicles were defective.  Both Takata and the Vehicle Manufacturer Defendants, who concealed their knowledge of the nature and extent of the defects from the public, have shown a blatant disregard for public welfare and safety.

## JURISDICTION AND VENUE

36.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because members of the proposed Plaintiff Class are citizens of states different from Defendants' home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

---

[2] *Id.*

[3] *Id.*

[4] *Id.* (emphasis added).

37.    This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction. This Court has personal jurisdiction over Defendants, pursuant to Florida Statutes § 48.193(1)(a)(1), (2), and (6), because they conduct substantial business in this District, some of the actions giving rise to the Complaint took place in this District, and some of Plaintiffs' claims arise out of Defendants operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; committing a tortious act in this state; and causing injury to property in this state arising out of Defendants' acts and omissions outside this state and at or about the time of such injuries Defendants were engaged in solicitation or service activities within this state or products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

38.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendants have caused harm to class members residing in this District, and the Defendants are residents of this District under 28 U.S.C. 1391(c)(2) because they are subject to personal jurisdiction in this district.

## **THE PARTIES**

39.    Craig Dunn—Florida:  Plaintiff and proposed Nationwide and Florida State Class Representative Craig Dunn is a resident and citizen of Orlando, Florida.  Mr. Dunn owns a 2007 Honda Accord and was injured as a result of Defendants' unlawful conduct.

40.    Pam Koehler—Florida:  Plaintiff and proposed Nationwide and Florida State Class Representative Pam Koehler is a resident and citizen of St. Augustine, Florida.  Ms. Koehler owns a 2006 Honda Pilot and was injured as a result of Defendants' unlawful conduct.

41.     Zulmarie Rivera—Connecticut:   Plaintiff and proposed Nationwide and Connecticut State Class Representative Zulmarie Rivera is a resident and citizen of Hartford, Connecticut.  Ms. Marie owns a 2007 Honda Accord and was injured as a result of Defendants' unlawful conduct.

42.     Tru Value Auto Malls LLC—Connecticut:  Plaintiff and proposed Nationwide and Connecticut State Class Representative Tru Value Auto Malls LLC is a resident and citizen of Berlin, Connecticut.  Tru Value Auto Malls LLC owns a 2007 Honda Accord and a 2007 Honda Accord coupe and was injured as a result of Defendants' unlawful conduct.

43.     Anna Marie Brechtell Flattmann—Louisiana:  Plaintiff and proposed Nationwide and Louisiana State Class Representative Anna Marie Brechtell Flattmann is a resident and citizen of Ponchatoula, Louisiana.  Ms. Brechtell Flattmann owns a 2002 Honda CR-V and was injured as a result of Defendants' unlawful conduct.

44.     David M. Jorgensen—Hawaii:  Plaintiff and proposed Nationwide and Louisiana State Class Representative David M. Jorgensen is a resident and citizen of Wailuku, Hawaii.  Mr. Jorgensen owns a 2006 Honda Ridgeline and was injured as a result of Defendants' unlawful conduct.

45.     Robert Redfearn, Jr.—Louisiana:   Plaintiff and proposed Nationwide and Louisiana State Class Representative Robert Redfearn, Jr. is a resident and citizen of New Orleans, Louisiana.  Mr. Redfearn owns a 2003 BMW 3-series and was injured as a result of Defendants' unlawful conduct.

46.     Tasha R. Severio—Louisiana:  Plaintiff and proposed Nationwide and Louisiana State Class Representative Tasha R. Severio is a resident and citizen of Denham Springs,

Louisiana.  Ms. Severio owns a 2007 Honda Pilot and was injured as a result of Defendants' unlawful conduct.

47.     Kenneth G. Decie—Massachusetts:  Plaintiff and proposed Nationwide and Massachusetts State Class Representative Kenneth G. Decie is a resident and citizen of Quincy, Massachusetts. Mr. Decie owns a 2004 Toyota Matrix and was injured as a result of Defendants' unlawful conduct.

48.     Gregory McCarthy—Massachusetts:  Plaintiff and proposed Nationwide and Massachusetts State Class Representative Gregory McCarthy is a resident and citizen of Boston, Massachusetts. Mr. McCarthy owns a 2004 Honda Civic EX and was injured as a result of Defendants' unlawful conduct.

49.     Nicole Peaslee—Massachusetts:  Plaintiff and proposed Nationwide and Massachusetts State Class Representative Nicole Peaslee is a resident and citizen of Norwood, Massachusetts. Ms. Peaslee owns a 2005 Honda Accord and was injured as a result of Defendants' unlawful conduct.

50.     Karen Switkowski—Massachusetts:  Plaintiff and proposed Nationwide and Massachusetts State Class Representative Karen Switkowski is a resident and citizen of Boston, Massachusetts.  Ms. Switkowski owns a 2005 Honda Accord and was injured as a result of Defendants' unlawful conduct.

51.     Anthony D. Dark —New Jersey:  Plaintiff and proposed Nationwide and New Jersey State Class Representative Anthony D. Dark is a resident and citizen of Maplewood, New Jersey.  Mr. Dark owns a 2003 Honda CR-V and was injured as a result of Defendants' unlawful conduct.

52.     Lemon Auto Sales, Inc.—New York:  Plaintiff and proposed Nationwide and New York Class Representative Lemon Auto Sales, Inc. is a resident and citizen of Hicksville, New York.  Lemon Auto Sales, Inc. owns a 2005 Honda Civic and was injured as a result of Defendants' unlawful conduct.

53.     Nathan Bordewich—Oregon:  Plaintiff and proposed Nationwide and Oregon State Class Representative Nathan Bordewich is a resident and citizen of Salem, Oregon. Mr. Bordewich owns a 2003 Toyota Sequoia and was injured as a result of Defendants' unlawful conduct.

54.     Kathleen Wilkinson—Oregon:  Plaintiff and proposed Nationwide and Oregon State Class Representative Kathleen Wilkinson is a resident and citizen of Grants Pass, Oregon. Ms. Wilkinson owns a 2006 Acura MDX and was injured as a result of Defendants' unlawful conduct.

55.     Haydee Masini—Commonwealth of Puerto Rico:  Plaintiff and proposed Nationwide and Commonwealth of Puerto Rico Class Representative Haydee Masini is a resident and citizen of the Commonwealth of Puerto Rico.  Ms. Masini owns a 2004 Honda Element and was injured as a result of Defendants' unlawful conduct.

56.     Nancy Barnett—Texas:  Plaintiff and proposed Nationwide and Texas Class Representative Nancy Barnett is a resident and citizen of Texas.  Ms. Barnett owns a 2007 Ford Mustang and was injured as a result of Defendants' unlawful conduct.

57.     Defendant Takata Corporation ("Takata") is a foreign for-profit corporation with its principal place of business in Tokyo, Japan.  Takata is a specialized supplier of automotive safety systems that designs, manufactures, tests, markets, distributes, and sells airbags.  Takata is a vertically-integrated company and manufactures component parts in its own facilities.

14

58.     Defendant TK Holdings Inc. ("TK Holdings") is a subsidiary of Takata Corporation headquartered in Auburn Hills, Michigan.  TK Holdings sells, designs, manufactures, tests, marks, and distributes airbags in the United States.  TK Holdings both directly and through subsidiaries, owns and operates 56 manufacturing plants in twenty countries.  TK Holdings manufactures airbags in the United States, including airbags at issue in this litigation.

59.     Highland Industries, Inc. ("Highland") is a subsidiary of Takata Corporation and is headquartered in Greensboro, North Carolina.  Highland manufactures industrial and automotive textile product solutions including airbag fabrics for the automotive airbag industry.  Highland manufactures airbags in the United States, including airbags at issue in this litigation.

60.     Defendants Takata, TK Holdings, and Highland are collectively referred to as "Takata" or "Takata Defendants."  Takata is the manufacturer of all the faulty airbags recalled by the NHTSA that are the subject of this Complaint.

61.     Defendant Honda Motor Co., Ltd. ("Honda Motor") is a foreign for-profit corporation with its principal place of business in Tokyo, Japan.  Honda Motor manufactures and sells motorcycles, automobiles, and power products through independent retail dealers, outlets, and authorized dealerships primarily in Japan, North America, Europe, and Asia.

62.     Defendant American Honda Motor Co., Inc. ("American Honda") is a subsidiary of Honda Motor headquartered in Torrance, California.  American Honda conducts the sale, marketing, and operational activities for Honda cars, trucks, and sport utility vehicles automobile parts in the United States.  American Honda manufactures and assembles its vehicles for sale in the United States in automobile plants located in Greensburg, Indiana, East Liberty, Ohio, Lincoln, Alabama, and Marysville, Ohio.

63.     Defendants Honda Motor and American Honda are collectively referred to as "Honda" or "Honda Defendants."  Honda vehicles sold in the United States contain airbags manufactured by the Takata Defendants.  The NHTSA has recalled to date the following Honda vehicles for having faulty Takata airbags, totaling 5,051,364 vehicles: 2001-2007 Honda Accord; 2001-2005 Honda Civic; 2002-2006 Honda CR-V; 2003-2011 Honda Element; 2002-2004 Honda Odyssey; 2003-2007 Honda Pilot; 2006 Honda Ridgeline; 2003-2006 Acura MDX; 2002-2003 Acura TL/CL; and 2005 Acura RL.

64.     Defendant Bayerische Motoren Werke AG ("BMW AG") is a German holding company and automobile manufacturer.  BMW AG is headquartered in Munich, Bavaria, Germany.  BMW Group is a subsidiary of BMW AG and is also headquartered in Munich. BMW AG, together with its subsidiaries, develops, manufactures, and sells cars and motorcycles worldwide.

65.     Defendant BMW of North America, LLC ("BMW North America") is a subsidiary of BMW AG and is headquartered in Woodcliff Lake, New Jersey.  BMW of North America is the United States importer of BMW vehicles.

66.     Defendant BMW Manufacturing Co., LLC ("BMW Manufacturing") is part of BMW's global manufacturing network and is located in Spartanburg, South Carolina.

67.     Defendants BMW AG, BMW North America, and BMW Manufacturing are collectively referred to as "BMW" or "BMW Defendants."  BMW vehicles sold in the United States contain airbags manufactured by the Takata Defendants. The NHTSA has recalled to date the following BMW vehicles for having faulty Takata airbags, totaling 627,615 vehicles:  2000-2005 3 Series Sedan; 2000-2006 3 Series Coupe; 2000-2005; 3 Series Sports Wagon; 2000-2006 3 Series Convertible; 2001-2006; M3 Coupe; and 2001-2006 M3 Convertible.

16

68.     Defendant Ford Motor Company ("Ford") is headquartered in Dearborn, Michigan.  Ford develops, manufactures, distributes, and services vehicles, parts, and accessories worldwide, including in the United States.  Ford vehicles sold in the United States contain airbags manufactured by the Takata Defendants. The NHTSA has recalled to date the following Ford vehicles for having faulty Takata airbags, totaling 58,669 vehicles:  2004 Ranger; 2005-2006 GT; and 2005-2007 Mustang.

69.     Defendant Toyota Motor Corporation ("Toyota") is the world's largest automaker and the largest seller of automobiles in the United States.  Toyota is a Japanese Corporation headquartered in Toyota City, Aichi Prefecture, Japan.

70.     Defendant Toyota Motor Sales, U.S.A., Inc. ("Toyota U.S.A.") is a wholly-owned subsidiary of Toyota Motor Corporation and is responsible for the marketing, sales, and distribution in the United States of automobiles manufactured by Toyota Motor Corporation. Toyota U.S.A. is headquartered in Torrance, California and is a subsidiary of Toyota Motor Corporation.

71.     Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") is headquartered in Erlanger, Kentucky with major operations in Arizona, California, and Michigan.  TEMA is responsible for Toyota's engineering design and development, research and development, and manufacturing activities in the U.S., Mexico, and Canada.  TEMA is a subsidiary of Toyota Motor Corporation.

72.     Defendants Toyota, Toyota U.S.A., and TEMA are collectively referred to as "Toyota" or "Toyota Defendants."  Toyota vehicles sold in the United States contain airbags manufactured by the Takata Defendants. The NHTSA has recalled to date the following Toyota vehicles for having faulty Takata airbags, totaling 877,000 vehicles: 2002-2005 Lexus SC; 2002-

17

2005 Toyota Corolla; 2003-2005 Toyota Corolla Matrix; 2002-2005 Toyota Sequoia; and 2003-2005 Toyota Tundra.

73.     Defendants Honda, BMW, Ford, and Toyota collectively are referred to as "Vehicle Manufacturer Defendants."  Vehicle Manufacturer Defendants, along with Defendant Takata, are collectively are referred to as "Defendants."

## FACTUAL ALLEGATIONS

**Takata is a Major Manufacturer of Airbags and Inflators**

74.     Defendant Takata is the world's second largest manufacturer of automotive safety devices, including airbags.  Takata was a pioneer in developing driver side airbags, being the first to market driver side airbags in the early 1980s.  Takata has supplied airbags to U.S. consumers and to state and local governmental purchasers since at least 1983.

75.     Airbags made up 37.3% of Takata's automotive safety products business in 2007.

76.     Takata also develops other safety technologies, including cushions and inflators, which are components of Takata-manufactured airbags.

77.     The airbags at issue in this case were developed by Takata in the late 1990s in an effort to make airbags more compact and to reduce the toxic fumes that earlier airbag models emitted when deployed.  The redesigned airbags are inflated by means of an explosive based on a common compound used in fertilizer.  That explosive is encased in a metal canister.

78.     The two Takata plants that manufactured the airbags at issue in this Complaint are located in Moses Lake, Washington and Monclova, Mexico.  These plants also manufacture airbag inflators.

79.     Airbags manufactured by Takata, including the airbags at issue in this case, have been installed in vehicles manufactured by at least ten different automakers, including Honda.

80.     Takata Corporation has, since at least 2007, claimed to prioritize driver safety as its "dream."[5]

81.     Based on that "dream," they claimed to be "motivated by the preciousness of life" and pledged to both "communicate openly and effectively."[6]  Takata has failed to live up to its dream by manufacturing, distributing, and selling airbags that can cause serious bodily injury or death.

**Honda Field Reports and Takata Internal Testing Reveal a Problem**

82.     Takata has known since at least 2001 that Takata airbags, and particularly the inflator component, were defective, as Isuzu was forced to make a recall that year due to exploding Takata airbags.

83.     In 2004, a Takata airbag violently exploded in a Honda Accord, shooting out metal fragments and injuring the car's driver.  At a loss to explain the incident, Honda and Takata deemed it "an anomaly" and did not issue a recall or seek the involvement of federal safety regulators.[7]

84.     In June and August of 2007, Honda notified Takata of three additional airbag explosion incidents.  All three involved defective airbags driving metal fragments into the faces and limbs of car passengers upon deployment of the airbags.  These incidents triggered an internal investigation by Takata, including a survey of inflators.

85.     Honda settled financial claims with the individuals injured by the airbags. These settlements were confidential.

---

[5] Takata Company Investor's Meeting Presentation- Investment Highlights, FY2007, at 3.

[6] *Id.*

[7] Hiroko Tabuchi, *Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls*, N.Y. Times (Sept. 11, 2014).

86.     Honda filed a standard report with U.S. safety regulators on the initial air bag injury in 2004, and followed up with similar filings on the incidents in 2007.  Inexplicably, Honda did not issue any recalls and never informed safety regulators of the most critical detail of these incidents: that the airbags posed a substantial risk of serious injury or death when deployed.

**2008: Recall 08V593**

87.     Takata shared the results of the inflator survey analysis with Honda in November of 2008.  That analysis indicated an airbag inflator issue.  The results triggered a Honda recall, but for only about 4200 of its vehicles.  This recall occurred over four years after the first airbag explosion incident in a Honda car.

88.     The November 2008 recall involved certain 2001 Honda Accord and Civic vehicles to replace airbags that "could produce excessive internal pressure," causing "the inflator to rupture," spraying metal fragments through the airbag cushion ("2008 Recall").[8]  Honda reported that it learned of the problem via a June 2007 claim.

**2009: Recall 09V259**

89.     In June of 2009, Takata provided a follow up report to Honda on its November 2008 analysis, stating that issues related to propellant production appeared to have caused the improper inflator performance.

90.     Honda subsequently received two more claims of "unusual deployments," Ms. Parham's May 28, 2009 accident and another in June 9, 2009.

91.     As a result of Takata's June 2009 follow up report and the additional claims of "unusual deployments," on June 30, 2009, Honda expanded the recall to 440,000 vehicles, which included 2001 and 2002 Civic, Accord, and Acura vehicles ("2009 Recall").

---

[8] Nov. 11, 2008 Honda Recall Letter to NHTSA, at 2.

92.     In August 2009, the NHTSA Recall Management Division sent Honda an information request to explain why it did not include 2009 Recall vehicles in the 2008 Recall, and "to evaluate the timeliness of [Honda's] recent defect decision."[9]

93.     NHTSA also wanted to know "the difference between the driver's airbag inflators in those vehicles from the inflators in the 09V-259 vehicles and explain how this distinction, or any other between the two sets of vehicles, convinced HMC at the time that it did not need to include the latter set in the 08V-593 recall population."[10]

94.     The NHTSA Recall Management Division further requested that Honda provide complaints, lawsuits, warranty claims, and field reports, along with an explanation of the "unusual deployments" and Honda's investigative efforts.[11]

95.     In Honda's September 2009 reply to the NHTSA, the automaker said that its information about the "unusual deployments" came from Takata:  "We understood the causal factors to be related to airbag propellant due to handling of the propellant during airbag inflator module assembly."[12]

96.     Honda also reported, based on information from Takata, the problem with the airbags was isolated to the "production of the airbag propellant prior to assembly of the inflators."  Specifically, the cause was "related to the process of pressing the propellant into wafers that were later installed into the inflator modules," and limited to "one production process" involving one high-precision compression press that was used to form the propellant into wafers, the automaker told NHTSA.[13]

---

[9] Aug. 19, 2009 Letter from NHTSA to American Honda Motor Co.

[10] *Id.*

[11] *Id.*

[12] Sept. 16, 2009 Letter from Honda American Motor Co. to NHTSA, at 1.

[13] *Id.* at 1.

97.     Honda also disclosed to the NHTSA that it had fielded nine complaints and one lawsuit related to the 2008 and 2009 Recalls.  Honda also, for the first time, told NHTSA about the 2004 incident involving an "unusual deployment" of the vehicles airbag.  Honda claimed that it "only recently were reminded of this incident," and that, until recently, Honda "had not associated it with the [2008 Recall] campaign."[14]

98.     At least four complaints have been submitted to the NHTSA by Honda vehicle operators reporting defective airbag deployments that have released metal shards into the cabin of the Honda vehicle.

**Takata's Contact with NHTSA**

99.     In its communications with the NHTSA, Takata continually gave misleading or incorrect information about the airbags it manufactured that were part of the recalls.

100.    On November 20, 2009, the NHTSA requested information from Takata as part of their ongoing investigation into the airbag inflators that triggered the 2009 Recall.

101.    Takata submitted a partial response to NHTSA on December 23, 2009 ("Partial Response"), and then a full response on February 19, 2010 ("Full Response").  Both responses provided vague and misleading information about the seriousness of the problem.

102.    In both responses, Takata asserted that there were no substantive design differences between the inflators in the airbags at issue in the two recalls.  However, in the Full Response, Takata states that there were, in fact, differences in the production processes between the lots.

103.    In both responses, Takata asserted that the defects only existed in specific lots manufactured between certain dates.  They claimed that the inflators involved in the 2008 Recall were manufactured between October 29, 2000 and December 1, 2000.  They also claimed that

---

[14] *Id.* at 4.

inflators involved in the 2009 Recall were manufactured between August 23, 2000 and February 25, 2001.

104.    Takata did not provide the dates the inflators were shipped, as the NHTSA requested, because, as Takata admitted, its records did not have that information.  Instead, they gave just the manufacturing dates.

105.    In both the Partial Response to NHTSA on December 23, 2009, and the Full Response on February 19, 2010, Takata stated that: "Takata has not provided any airbag inflators that are the same or substantially similar to the inflators in vehicles covered by the recalls in 2008 and 2009 **to any customers other than Honda.  The physical characteristics of the inflator housing used in the Honda vehicles subject to these recalls are unique to Honda**."[15] This statement would prove to be untrue.

106.    In its Full Response, Takata asserted that the defect identified in the 2009 Recall was the result of a single compression press, although Takata recommended to Honda that a small number of other vehicles with propellant processed on a different press be recalled as well.

107.    In the Full Response, Takata asserted that the defective parts were all manufactured on a particular press (the "Stokes press") in a single manufacturing plant.  Takata further asserted that while they did manufacture 2,400 inflators using the same process as the defective inflators, the design was different and "[t]herefore Takata is convinced that the inflators sold [redacted] contain no safety-related defect."[16]

108.    Takata wrote in its Full Response that it "believed – [redacted] – that expanding the recall to include all vehicles equipped with inflators manufactured with Stokes propellant produced through and including February 28, 2001 would capture all inflators with tablets that

---

[15] Dec. 23, 2009 Letter from Takata to NHTSA, at 2; Feb. 19, 2010 Letter from Takata to NHTSA, at 2.
[16] Feb. 19, 2010 Letter from Takata to NHTSA, at 5.

had a risk of producing overly energetic combustion.  This recommendation, as well as the analysis that supported it, was presented to Honda on June 12 2009."[17]

109.    Both Honda and Takata represented to the public and the NHTSA that the total number of affected vehicles was quite small.

**2010: Recall 10V041**

110.    In 2010, merely months after its previous recall, Honda announced a third recall for an additional 379,000 vehicles, including 2002 Honda CR-V, 2002 Honda Odyssey, 2003 Honda Pilot, 2002-2003 Acura 3.2TL, and 2003 Acura 3.2CL vehicles, while adding more 2001 and 2002 Accords and Civics to its 2009 recall list ("2010 Recall").

111.    Honda's explanation for the airbag defects changed yet again.  Honda explained that there are two different manufacturing processes utilized in the preparation of an airbag propellant.  While one process is within specification, the other is not.  Honda's expanded recall reached those vehicles employing airbags that had utilized manufacturing processes not within specification.

**2011: Recall 11V260**

112.    In April 2011, Honda filed a Part 573 Defect and Noncompliance report for 2,430 replacement service part airbag modules that might have been installed in vehicles covered by previous recall expansions ("2011 Recall").

**2013: Recall 13V132**

113.    By 2013, it became clear that the defective airbag issue was far more widespread than Takata or Honda initially reported to the NHTSA.

114.    According to Honda's 2013 Defect and Noncompliance report, an exploding airbag in Puerto Rico in October 2011 prompted Honda to ask permission from the NHTSA to

---

[17] *Id.* at 11-12.

collect "healthy" airbag modules to see if "abnormal combustion was possible."  Honda found

that even its so-called "healthy" airbags could abnormally combust in certain conditions.

115.    On February 8, 2013, NHTSA and Honda met to discuss the "ongoing

investigation" into Honda's defective Takata airbags.  Honda stated:

> A recreation of propellant production using the same methods as were used during
> 2001-2002 production periods indicated that it was possible for propellant
> produced during 2001-2002 to be manufactured out of specification without the
> manufacturing processes correctly identifying and removing the out of
> specification propellant. Separately, Honda was informed by the supplier of
> another potential concern related to airbag inflator production that could affect the
> performance of these airbag modules.[18]

116.    On April 10, 2013, Honda filed a Recall Notification ("2013 Recall") for their

2001-2003 Civic, 2002-2003 CR-V, and their 2002 Odyssey vehicles with the NHTSA.  In that

notification, Honda asserted that 561,422 vehicles could be affected by the following part defect:

**Defect description:**

> In certain vehicles, the passenger's (frontal) airbag inflator could produce
> excessive internal pressure.  If an affected airbag deploys, the increased internal
> pressure may cause the inflator to rupture.  In the event of an inflator rupture,
> metal fragments could be propelled upward toward the windshield, or downward
> toward the front passenger's foot well, potentially causing injury to a vehicle
> occupant.[19]

117.    On April 11, 2013, Takata filed a Defect Information Report titled "Certain

Airbag Inflators Used as Original Equipment" ("Takata DIR").  In that report, Takata identified

the defective airbags as follows:

> Certain airbag inflators installed in frontal passenger-side airbag modules
> equipped with propellant wafers manufactured at Takata's Moses Lake,
> Washington plant during the period from April 13 2000 (start of production)
> through September 11, 2002…and certain airbag inflators manufactured at

---

[18] April 10, 2013 Letter to NHTSA, at 2-3.

[19] *Id.* at 2.

Takata's Monclova, Mexico plant during the period from October 4, 2001 (start of production) through October 31, 2002....[20]

118.   It wasn't until its April 2013 Report that Takata finally admitted that its affected inflators were installed as original equipment in vehicles manufactured by car manufacturers other than Honda, including Toyota, Nissan, Mazda, and BMW.[21]

119.   Takata asserted that it did not know how many inflators were installed in vehicles, as it did not have those records.[22]  While it did not have the information to estimate the number of vehicles affected, Takata still insisted that the total number of installed inflators would be extremely low.

120.   Takata described the defect as follows:

Some propellant wafers produced at Takata's plant in Moses Lake, Washington, between April 13, 2000 and September 11, 2002 may have been produced with an inadequate compaction force. . . . In addition some propellant wafers used in inflators produced at Takata's plant in Monclova, Mexico between October 4, 2001 and October 31, 2002, may have been exposed to uncontrolled moisture conditions.  These wafers could have absorbed moisture beyond the allowable limits . . . . In both cases propellant could potentially deteriorate over time due to environmental factors, which could lead to over-aggressive combustion in the event of an airbag deployment.  This could create excessive internal pressure within the inflator and the body of the inflator could rupture.[23]

**Recalls and Notices Relating to Defective Airbag Inflators in Non-Honda Vehicles**

121.   In April of 2013, based on Takata's new admissions, six major automakers, including Nissan, Mazda, BMW, Pontiac, and Honda, issued recalls of **3.6 million** vehicles containing Takata airbags.

---

[20] Takata April 11, 2013 DIR at 3.

[21] *Id.* at 2-3

[22] *Id.* at 3.

[23] *Id.* at 3-4.

122.    Chrysler and Ford similarly announced limited regional NHTSA recalls for vehicles originally sold or currently registered in Florida, Puerto Rico, Hawaii, or the U.S. Virgin Islands, and equipped with Takata airbag inflators.

123.    On October 22, 2014, the NHTSA expanded the list of vehicles affected by the recall of defective Takata components to cover ten automakers and numerous car models, totaling nearly 8 million vehicles.  Those automakers are BMW (627,615 potentially affected vehicles), Chrysler (371,309 potentially affected vehicles), Ford (58,669 potentially affected vehicles), General Motors (undetermined number of potentially affected vehicles), Honda (5,051,364 potentially affected vehicles), Mazda (64,872 potentially affected vehicles), Mitsubishi (11,985 potentially affected vehicles), Nissan (694,626 potentially affected vehicles), Subaru (17,516 potentially affected vehicles) and Toyota (877,000 potentially affected vehicles).[24]

124.    Over the past 13 years that Takata has known there was a problem with the safety of their airbags, there have been at least four deaths and 139 injuries linked to defective Takata airbags.

**Takata Fails to Meet Safety Standards and Maintain Airbag Quality**

125.    As recently as 2011, supervisors at Takata's Monclova plant were reporting potentially lethal defects in the manufacturing process.  Based on internal Takata documents, Takata was unable to meet its own standards for safety up until at least 2011.[25]

126.    Despite all the theories proposed by Takata to federal regulators as to the sources of the defects, according to documents reviewed by *Reuters*, Takata also cited rust, bad welds,

---

[24] Ben Klayman, *U.S. regulators expand number of vehicles affected by Takata recalls*, Oct. 22, 2104, Reuters, *available at* http://www.reuters.com/article/2014/10/22/us-autos-takata-warning-idUSKCN0IB03B20141022.

[25] Joanna Zuckerman Bernstein, Ben Klayman, and Yuko Kubota, *Exclusive: Takata engineers struggled to maintain airbag quality, documents reveal*, Reuters, Oct. 17, 2014, *available at* http://www.reuters.com/article/2014/10/18/us-takata-airbags-idUSKCN0I701B20141018.

and even chewing gum dropped into at least one inflator as reasons for the defects. The same documents show that in 2002, Takata's plant in Mexico allowed a defect rate that was "six to eight times above" acceptable limits, or roughly 60 to 80 defective parts for every 1 million airbag inflators shipped.

**Federal Investigations**

127.     The NHTSA is now investigating Takata airbags manufactured between 2000 and 2007 to determine whether Takata airbag inflators made during that time were improperly sealed.[26]

128.     In a Consumer Advisory dated October 22, 2014, the NHTSA said:

> The National Highway Traffic Safety Administration urges owners of certain Toyota, Honda, Mazda, BMW, Nissan, Mitsubishi, Subaru, Chrysler, Ford and General Motors vehicles to act immediately on recall notices to replace defective Takata airbags. Over seven million vehicles are involved in these recalls, which have occurred as far back as 18 months ago and as recently as Monday. The message comes with urgency, especially for owners of vehicles affected by regional recalls in the following areas: Florida, Puerto Rico, limited areas near the Gulf of Mexico in Texas, Alabama, Mississippi, Georgia, and Louisiana, as well as Guam, Saipan, American Samoa, Virgin Islands and Hawaii.

129.     The U.S. Department of Justice has reported that it is investigating whether Takata misled U.S. regulators about the number of defective airbags it sold to automakers, including Toyota and Honda.

**Automakers Have Failed to Provide Vehicle Owners with Takata Airbags with Replacement Parts or Vehicles**

130.     In a statement from Honda regarding Airbag Inflator Regional Safety Improvement Campaigns, dated October 22, 2014, Honda announced:

> If a customer has received notification from Honda about this special campaign, Honda requests that the customer promptly contact his/her local authorized dealer and make an appointment for replacement of the covered airbag components.

---

[26] Klayman, *supra* n.20.

131.     However, Honda has acknowledged that it would not send out recall letters to car owners or lessees until there are parts available, meaning that many drivers would not receive notices for weeks or longer as they continue to drive vehicles with potentially deadly airbags.

132.     Like Honda, other automakers have also instructed customers to make an appointment to replace their Takata airbags at an authorized dealer.

133.     But, authorized dealers are experiencing a severe shortage of parts to replace the faulty airbags.  Dealers have been telling frustrated car owners to expect to wait many months before their airbags can be replaced.  Honda owners who have received recall notices have been told to wait at least a month before their authorized dealer has availability to assess their vehicle. Toyota dealers are reporting that wait times for customers who own affected vehicles to get their Takata airbags replaced could be as long as one to three months.[27]

134.     In response to the airbag replacement shortage, Toyota has taken the extreme step of disabling passenger airbags entirely and putting a "Do Not Sit Here" decal in the vehicle until a proper repair can be made.  In the alternative, Toyota is advising customers to not drive their vehicles with Takata airbags until the airbags can be replaced.

135.     Like Toyota, other automakers have also resolved to remedy their customers' vehicles containing Takata airbags not by providing temporary replacement vehicles or replacement parts, but by disengaging the airbags entirely.

136.     In fact, customers are put in potentially dire situations because replacement airbag parts are not available in the quantities demanded by those affected by the millions of recalls.  At this time, automakers are not offering customers loaner cars to use until their airbags can be replaced.

---

[27] Jeff Harrington, *Tampa Bay auto dealers warn of delays to replace defective airbags*, Tampa Bay Times, October 21, 2014, *available at* http://www.tampabay.com/news/business/autos/tampa-bay-auto-dealers-warn-of-delays-to-replace-defective-airbags/2203132.

137.    Congress is also concerned with this serious problem.  U.S. Senators Richard Blumenthal and Edward J. Markey, in a letter to the Department of Transportation (DOT), "urge[d] [the DOT] to provide clear guidance regarding [NHTSA's] October 21st Consumer Advisory about potentially defective Takata airbags."[28]

138.    The Senators expressed their belief "that NHTSA should immediately issue a nation-wide safety recall on all the affected cars, regardless of where the car is registered. NHTSA's October 21, 2014 Consumer Advisory provided "no factual basis for distinguishing between states or regions of the country regarding the potential severe danger of this defect to motorists.  All state experience seasons of heat and humidity . . . Replacement parts are, 'essential to personal safety,' **for all drivers** whether they live in New England or Florida, and the NHTSA should immediately issue a nation-wide recall that protects all drivers."[29]

139.    The Senators were also "alarmed and astonished that NHTSA has endorsed a policy recently announced by Toyota and GM that dealers should disable passenger-side airbags and instruct against permitting passengers in the fronts seat if replacement parts for these airbags are unavailable.  As a matter of policy, this step is extraordinarily troubling and potentially dangerous.  As a matter of law . . . §30122(b) of the Motor Vehicle Safety Act (40 U.S.C.) prohibits a manufacturer from knowingly making a safety device inoperative unless the [DOT] issues a specific exemption.  We are unaware of an exemption from your office in the case of Takata airbags."[30]

140.    Equally important, the Senators said, is that "all drivers deserve access to loaners or rental cars at no cost to them while they await repairs to their cars that make them safe enough

---

[28] Oct. 23, 2014  Letter from U.S. Senators Richard Blumenthal and Edward J. Markey to the U.S. Dept. of Transportation, at 1.

[29] *Id.* at 2.

[30] *Id.*

to drive again."[31]  **"[Y]our office should strongly encourage manufacturers to provide rental cars at no cost to consumers if their cars cannot be fixed immediately because of insufficient replacement parts**."[32]

141.    Plaintiffs and Class Members are now left in the position of either being without a vehicle or driving a vehicle that does not have an operable airbag for months at a time.  They are left without a vehicle to take them to work, to pick up their children at school or childcare, or, more urgently, a vehicle for emergency situations.  Plaintiffs and Class Members must also take time away from work and other important obligations to take their vehicles to the repair shop when replacement parts do become available.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Fraudulent Concealment

142.    Upon information and belief, Defendant Takata has known of the defects in its airbags since at least 2001.  Defendant Honda has known of the defects in the Takata airbags in Honda's vehicles since 2004.  The Vehicle Manufacturer Defendants have known or should have known of the defects in Takata's airbags since 2008.  Defendants knew well before Plaintiffs and Class Members purchased the Defective Vehicles, and have concealed from or failed to notify Plaintiffs, Class Members, and the public of the full and complete nature of the defects.

143.    Although Defendants have now acknowledged to safety regulators that Takata's airbags are defective, for years, Defendants did not fully investigate or disclose the seriousness of the issue and in fact downplayed the widespread prevalence of the problem.

---

[31] *Id.*
[32] *Id.*(emphasis added).

144.    Any applicable statute of limitation has therefore been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

## CLASS ACTION ALLEGATIONS

145.    The Classes' claims all derive directly from a single course of conduct by Takata and the Vehicle Manufacturer Defendants.  This case is about the responsibility of Takata and the Vehicle Manufacturer Defendants, at law and in equity, for their knowledge, their conduct, and their products. Takata and the Vehicle Manufacturer Defendants have engaged in uniform and standardized conduct toward the Classes.  They did not differentiate, in degree of care or candor, their actions or inactions, or in the content of their statements or omissions, among individual Class members. The objective facts on these subjects are the same for all Class members. Within each Claim for Relief asserted by the respective Classes, the same legal standards govern. Additionally, many states share the same legal standards and elements of proof, facilitating the certification of multistate classes for some or all claims.  Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other persons similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) and/or (b)(2) and/or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

**The Nationwide Consumer Class**

146.    Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and a Nationwide Consumer Class defined as follows:

> **All persons who entered into a lease or purchased one or more Defective Vehicles in the United States.**

**The Nationwide Commercial or Non-Consumer Class**

147.    Plaintiffs bring this action and seek to certify and maintain it as a class action under Rules 23(a); (b)(1) and/or (b)(2); and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and a Nationwide Non-Consumer Class initially defined as follows:

> **All individuals or entities in any of the fifty states who purchased, leased and/or insured the residual value of one or more of the Defective Vehicles and were engaged in the business of vehicle sales, rentals, or providing residual value insurance for those vehicles.**

**The State Consumer Classes**

148.    Plaintiffs allege statewide class action claims on behalf of the following classes in the following states and the Commonwealth of Puerto Rico ("State Classes").  Each of these State Consumer Classes is initially defined as follows:

> **All persons in the State of Connecticut who entered into a lease or purchased one or more of the Defective Vehicles.**

> **All persons in the State of Florida who entered into a lease or purchased one or more of the Defective Vehicles.**

> **All persons in the State of Hawaii who entered into a lease or purchased one or more of the Defective Vehicles.**

> **All persons in the State of Louisiana who entered into a lease or purchased one or more of the Defective Vehicles.**

> **All persons in the State of Massachusetts who entered into a lease or purchased one or more of the Defective Vehicles.**

> **All persons in the State of New Jersey who entered into a lease or purchased one or more of the Defective Vehicles.**

> **All persons in the State of New York who entered into a lease or purchased one or more of the Defective Vehicles.**

> **All persons in the State of Oregon who entered into a lease or purchased one or more of the Defective Vehicles.**

> **All persons in the State of Texas who entered into a lease or purchased one or more of the Defective Vehicles.**
>
> **All persons in the U.S. Territory of the Commonwealth of Puerto Rico who entered into a lease or purchased one or more of the Defective Vehicles.**

**The State Non-Consumer Classes**

149.    Plaintiffs allege statewide class action claims on behalf of the following classes in the following states.  Each of these State Non-Consumer Classes is initially defined as follows:

> **All individuals or entities in the State of Connecticut who purchased, leased and/or insured the residual value of one or more of the Defective Vehicles and were engaged in the business of vehicle sales, rentals, or providing residual value insurance for those vehicles.**
>
> **All individuals or entities in the State of New York who purchased, leased and/or insured the residual value of one or more of the Defective Vehicles and were engaged in the business of vehicle sales, rentals, or providing residual value insurance for those vehicles.**

150.    The Nationwide Consumer Class, the Nationwide Non-Consumer Class, the State Consumer Classes, and the State Non-Consumer Classes, and their members are sometimes referred to herein as the "Class" or "Classes."

151.    To the extent warranted, the list of Defective Vehicles for the purpose of the Nationwide Consumer Class, the Nationwide Non-Consumer Class, the State Consumer Class, the State Non-Consumer Class Definitions will be supplemented to include other vehicles that have Takata airbags that may be defective.

152.    Excluded from each Class are Takata and the Vehicle Manufacturer Defendants, their employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates of Takata and the Vehicle Manufacturer Defendants; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

**Numerosity and Ascertainability**

153.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). Plaintiffs are informed and believe that there are millions of Defective Vehicles nationwide, and thousands of Defective Vehicles in each of the States. Individual joinder of all Class members is impracticable.

154.    Each of the Classes is ascertainable because its members can be readily identified using registration records, sales records, production records, and other information kept by Takata and the Vehicle Manufacturer Defendants or third parties in the usual course of business and within their control. Plaintiffs anticipate providing appropriate notice to each certified Class, in compliance with Fed. R. Civ. P. 23(c)(1)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

**Predominance of Common Issues**

155.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because questions of law and fact that have common answers that are the same for each of the respective Classes predominate over questions affecting only individual Class members. These include, without limitation, the following:

(a)    Whether the Defective Vehicles suffer from airbag defects;

(b)    Whether the Defective Vehicles have suffered a diminution of value as a result of those Vehicles' incorporation of the airbags at issue;

(c)    Whether Defendants knew or should have known about the airbag defects, and, if yes, how long Defendants have known of the defects;

(d)    Whether the defective nature of the Defective Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a Defective Vehicle;

(e)     Whether Defendants had a duty to disclose the defective nature of the Defective Vehicles to Plaintiffs and Class Members;

(f)     Whether Defendants omitted and failed to disclose material facts about the Defective Vehicles;

(g)     Whether Defendants' concealment of the true defective nature of the Defective Vehicles induced Plaintiffs and Class Members to act to their detriment by purchasing the Defective Vehicles;

(h)     Whether Defendants' conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or equitable estoppels;

(i)     Whether Defendants misrepresented that the Defective Vehicles were safe;

(j)     Whether Defendants engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices in trade or commerce by failing to disclose that the Defective Vehicles were designed, manufactured, and sold with defective airbag inflators;

(k)     Whether Defendants' conduct, as alleged herein, likely to mislead a reasonable consumer;

(l)     Whether Defendants' statements, concealments and omissions regarding the Defective Vehicles material, in that a reasonable consumer could consider them important in purchasing, selling, maintaining, or operating such vehicles;

(m)     Whether Defendants violated each of the States' consumer protection statutes, and if so, what remedies are available under those statutes;

(n)     Whether the Defective Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

(o)      Whether Plaintiffs and the Classes are entitled to a declaratory judgment stating that the airbag inflators in the Defective Vehicles are defective and/or not merchantable;

(p)      Whether Defendants' unlawful, unfair, and/or deceptive practices harm Plaintiffs and the Classes;

(q)      Whether Defendants have been unjustly enriched by their conduct;

(r)      Whether Plaintiffs and the Classes are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

(s)      Whether Defendants should be declared responsible for notifying all Class members of the defects and ensuring that all vehicles with the airbag inflator defect are promptly recalled and repaired;

(t)      What aggregate amounts of statutory penalties are sufficient to punish and deter Defendants and to vindicate statutory and public policy; and

(u)      How such penalties should be most equitably distributed among Class members.

**Typicality**

156.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiffs' claims are typical of the claims of the Class members, and arise from the same course of conduct by Takata and the Vehicle Manufacturer Defendants. The relief Plaintiffs seek is typical of the relief sought for the absent Class members.

**Adequate Representation**

157.    Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective products.

158.    Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes, and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the Classes.

**Superiority**

159.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by the individual Class members on the claims asserted herein would create a risk of inconsistent or varying adjudications for individual Class members, which would establish incompatible standards of conduct for Takata and the Vehicle Manufacturer Defendants; and because adjudication with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members, or impair substantially or impede their ability to protect their interests.

160.    Absent a class action, most Class Members would likely find the cost of litigating their individual claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.

161.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendants Takata and the Vehicle Manufacturer Defendants have acted and refused to act on grounds generally applicable to each Class, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to each Class as a whole.

162.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The common questions of law and of fact regarding Takata and the Vehicle

Manufacturer Defendants' conduct and responsibility predominate over any questions affecting only individual Class members.

163.    Because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, such that most or all class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

164.    The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

165.    Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiffs or on its own determination, certify nationwide, statewide and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular

claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

166.    The Classes expressly disclaim any recovery in this action for physical injury resulting from the airbag inflator defects without waiving or dismissing such claims.  Plaintiffs are informed and believe that injuries suffered in crashes as a result of the defective airbags implicate the Defective Vehicles and are continuing to occur because of Defendants' delays and inaction regarding the commencement and completion of recalls. The increased risk of injury from the airbag defects serves as an independent justification for the relief sought by Plaintiffs and the Classes.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## ON BEHALF OF THE NATIONWIDE CLASS

### Violation of the Magnuson-Moss Warranty Act 15 U.S.C. § 2301 et. seq.

167.    Plaintiffs bring this Count on behalf of members of the Nationwide Class who are residents of the following States:  Hawaii, Louisiana, Massachusetts, New Jersey, New York, Texas, and the Commonwealth of Puerto Rico. In the event a nationwide class cannot be maintained on this Claim, this Claim is asserted by each statewide class asserting claims related to a breach of warranty.

168.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

169.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

170.    The Defective Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

40

171.    Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

172.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

173.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

174.    Defendants provided Plaintiffs and the other Class Members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Defendants warranted that the Defective Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled. Mich. Comp. Laws § 440.2314(2)(a), (c), and (e); U.C.C. § 2-314.

175.    Defendants breached these implied warranties, as described in more detail above, and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Defective Vehicles share common design defects in that they are equipped with defective airbags that can explode, leaving occupants of the Defective Vehicles vulnerable to serious injury and death. Defendants have admitted that the Defective Vehicles are defective in issuing its recalls, but the recalls are woefully insufficient to address each of the defects.

176.    In their capacity as warrantors, as Defendants had knowledge of the inherent defects in the Defective Vehicles, any efforts to limit the implied warranties in a manner that

would exclude coverage of the Defective Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Defective Vehicles is null and void.

177.    The limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendants and Plaintiffs and the other Class Members, as, at the time of purchase and lease, Plaintiffs and the other Class Members had no other options for purchasing warranty coverage other than directly from Defendants.

178.    The limitations on the warranties are substantively unconscionable. Defendants knew that the Defective Vehicles were defective and would continue to pose safety risks after the warranties purportedly expired. Defendants failed to disclose these defects to Plaintiffs and the other Class Members. Thus, Defendants' enforcement of the durational limitations on those warranties is harsh and shocks the conscience.

179.    Plaintiffs and each of the other Class Members have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract. Nonetheless, privity is not required here because Plaintiffs and each of the other Class Members are intended third-party beneficiaries of contracts between Defendants and its dealers, and specifically, of the implied warranties. The dealers were not intended to be the ultimate consumers of the Defective Vehicles and have no rights under the warranty agreements provided with the Defective Vehicles; the warranty agreements were designed for and intended to benefit consumers. Finally, privity is also not required because the Defective Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

180.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Defendants notice and an opportunity to cure until such time as the

Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

181.     Furthermore, affording Defendants an opportunity to cure their breach of written warranties would be unnecessary and futile here. At the time of sale or lease of each Defective Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations concerning the Defective Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

182.     Plaintiffs and the other Class Members would suffer economic hardship if they returned their Defective Vehicles but did not receive the return of all payments made by them. Because Defendants are refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other Class Members have not re-accepted their Defective Vehicles by retaining them.

183.     The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of the other Class Members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class Members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees

based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class Members in connection with the commencement and prosecution of this action.

184.    Further, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1). Based on Defendants' continuing failures to fix the known dangerous defects, Plaintiffs seek a declaration that Defendants have not adequately implemented their recall commitments and requirements and general commitments to fix its failed processes, and injunctive relief in the form of judicial supervision over the recall process is warranted. Plaintiffs also seek the establishment of a Defendant-funded program for Plaintiffs and Class Members to recover out of pocket costs incurred, as discussed above.

185.    Plaintiffs also request, as a form of equitable monetary relief, re-payment of the out-of-pocket expenses and costs they have incurred in attempting to rectify the airbags in their vehicles. Such expenses and losses will continue as Plaintiffs and Class members must take time off from work, pay for rental cars or other transportation arrangements, child care, and the myriad expenses involved in going through the recall process.

186.    The right of Class Members to recover these expenses as an equitable matter to put them in the place they would have been but for Defendants' conduct presents common questions of law. Equity and fairness requires the establishment by Court decree and administration under Court supervision of a program funded by the Defendants, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid.

## SECOND CLAIM FOR RELIEF

## ON BEHALF OF THE NATIONWIDE CLASS

### Violation of Michigan Consumer Protection Act ("MCPA"), Michigan Comp. Laws Ann. § 445.903 et seq.

187.    This Claim is brought on behalf of the Nationwide Class.

188.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

189.    At all times relevant hereto, there was in full force and effect Mich. Comp. Laws. Ann. § 445.903 *et seq.* (the "MCPA").

190.    Plaintiffs and the Nationwide Class Members were "person[s]" within the meaning of the MCPA, M.C.L.A § 445.902(1)(d).

191.    At all relevant times hereto, Defendants were "persons" engaged in "trade or commerce" within the meaning of the MCPA, M.C.L.A. § 445.902(1)(d) and (g).

192.    The MCPA holds unlawful "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." M.C.L.A. § 445.902(1).

193.    The practices of Defendants violate the MCPA for, inter alia, one or more of the following reasons:

(a)       represented that the Defective Vehicles had approval, characteristics, uses, and benefits that they do not have;

(b)       Defendants provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the safety, performance, reliability, quality, and nature of the Defective Vehicles;

(c)     Defendants represented that the Defective Vehicles were of a particular standard, quality, or grade, when they were of another;

(d)     Defendants engaged in unconscionable commercial practices in failing to reveal material facts and information about the Defective Vehicles, which did and tended to, mislead Plaintiffs and the Class about facts that could not reasonably be known by the consumer until the recalls were issued;

(e)     Defendants failed to reveal facts concerning the airbag defects that were material to the transaction in light of representations of fact made in a positive manner;

(f)     Defendants failed to reveal material facts concerning the airbag defects to Plaintiffs and the Class Members, the omission of which would tend to mislead or deceive consumers, including Plaintiffs and the Class;

(g)     Defendants made material representations and statements of fact to Plaintiffs and the Class that resulted in Plaintiffs and the Class Members reasonably believing the represented or suggested state of affairs to be other than what they actually were; and

(h)     Defendants intended that Plaintiffs and Class Members rely on their misrepresentations and omissions, so that Plaintiffs and other Class Members would purchase or lease the Defective Vehicles.

194.    Plaintiffs seek injunctive relief to enjoin Defendants from continuing their unfair and deceptive acts or; seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for Plaintiffs and each Class Member, reasonable attorneys' fees; and any other just and proper relief available under the Mich. Comp. L. Ann. § 445.911.

46

195.    Plaintiffs also seek punitive damages against Defendants because they carried out despicable conduct with willful and conscious disregard of the rights and safety of others. Defendants intentionally and willfully misrepresented the safety and reliability of Defective Vehicles, deceived Plaintiffs and Class Members on life-or-death matters, and concealed material facts that only it knew, all to avoid the expense and public relations nightmare of correcting a deadly flaw in the Defective Vehicles it repeatedly promised Plaintiffs and Class Members were safe. Defendants' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

### THIRD CLAIM FOR RELIEF

### ON BEHALF OF THE NATIONWIDE CLASS

### Breach of Implied Warranty of Merchantability (Mich. Comp. Laws § 440.2314)

196.    This claim is brought on behalf of the Nationwide Class for breach of implied warranty under Michigan law.

197.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

198.    Defendants were merchants with respect to motor vehicles within the meaning of MICH. COMP. LAWS § 440.2314(1).

199.    Under MICH. COMP. LAWS § 440.2314, a warranty that the Defective Vehicles were in merchantable condition was implied by law in the transactions when Class members purchased their Defective Vehicles.

200.    These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.  Specifically, the Defective Vehicles are inherently defective in that the Takata airbags installed in those vehicles explode unexpectedly, shooting out metal shrapnel toward the vehicle occupants.

201.    Defendants were provided notice of these issues by numerous complaints filed against them, internal investigations, investigations by the NHTSA.

202.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the National Class has been damaged in an amount to be proven at trial.

203.    The National Class also seeks available equitable and/or injunctive relief.  Based on Defendants' continuing failures to fix the known dangerous defects, the National Class seeks a declaration that Defendants have not adequately implemented recall commitments and requirements and general commitments to fix their failed processes, and injunctive relief in the form of judicial supervision over the recall process is warranted.  The National Class also seeks the establishment of a program funded by the Defendants for Plaintiffs and Class members to recover out of pocket costs incurred.

## FOURTH CLAIM FOR RELIEF

## ON BEHALF OF THE NATIONWIDE CLASS

### (Fraud by Concealment)

204.    This Claim is brought on behalf of the Nationwide Class under Michigan law.

205.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

206.    As set forth above, Defendants concealed and/or suppressed material facts concerning the safety of their vehicles.

207.    Defendants had a duty to disclose these safety issues because they consistently marketed their vehicles as reliable and safe and proclaimed that Defendants maintain the highest safety standards. Once Defendants made representations to the public about safety, Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.  One who

48

volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

208.    In addition, Defendants had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendants who have superior knowledge and access to the facts, and Defendants knew they were not known to or reasonably discoverable by Plaintiffs and Class Members.  These omitted facts were material because they directly impact the safety of the Defective Vehicles.  Whether or not an airbag will improperly explode and cause shrapnel to come flying out at passengers at great speeds is a material safety concern. Defendants possessed exclusive knowledge of the defects rendering Defective Vehicles inherently more dangerous and unreliable than similar vehicles.

209.    Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and Class Members to purchase Defective Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

210.    Plaintiffs and Class Members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiffs' and Class Members' actions were justified.  Defendants were in exclusive control of the material facts concerning the airbag defects and such facts were not known to the public or the Class Members.

211.    As a result of the concealment and/or suppression of facts, Plaintiffs and Class Members have sustained and will continue to sustain damages arising from the difference between the actual value of that which Plaintiffs and the Classes paid and the actual value of that which they received.

212.     Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class Members' rights and well-being to enrich Defendants.   Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## FIFTH CLAIM FOR RELIEF

### (Claim for Actual Damages/Expense Reimbursement Fund)

213.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

214.     This Count is brought on behalf of all Plaintiffs and Members of all Classes. Plaintiffs and Class Members have incurred out-of-pocket expenses and damages in attempting to rectify the airbag defect in their vehicles, and such expenses and losses will continue as they must take time off from work, pay for rental cars or other transportation arrangements, child care and the myriad expenses involved in going through the recall process to correct the defect.

215.     Plaintiffs and Class Members seek payment of such damages and reimbursement of such expenses under the consumer statutes and applicable law invoked in this Complaint. While such damages and expenses are individualized in detail and amount, the right of the Class Members to recover them presents common questions of law.   Equity and fairness to all Class members requires the establishment by court decree and administration under Court supervision of a Defendant-funded program, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid, such that Defendants, not the Class Members, absorb the losses and expenses fairly traceable to the recall of the vehicles and correction of the Defect.

### SIXTH CLAIM FOR RELIEF

### ON BEHALF OF THE CONNECTICUT STATEWIDE CONSUMER AND NON-CONSUMER CLASS

**(Violations of the Connecticut Unfair Trade Practices Act**
**(Conn. Gen. Stat. § 42-110a,** *et seq.***))**

216.    This claim is brought on behalf of Plaintiff Tru Value Auto Malls LLC, Zulmarie

Rivera,  and the Connecticut Statewide Non-Consumer Class (the "Connecticut Class") against

the Takata and Honda Defendants (collectively, for the purposes of this Claim, "Defendants").

217.    Plaintiffs hereby incorporate by reference the allegations contained in the

preceding paragraphs of this Complaint.

218.    The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") provides:

"No person shall engage in unfair methods of competition and unfair or deceptive acts or

practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110b(a).

219.    Each of the Defendants is a "person" within the meaning of Conn. Gen. Stat. §

42-110a(3). Each of the Defendants was and is engaged in in "trade" or "commerce" within the

meaning of Conn. Gen. Stat. § 42-110a(4).

220.    Defendants participated in deceptive trade practices that violated the Connecticut

UTPA as described herein. In the course of their business, Defendants willfully failed to disclose

and actively concealed the dangers and risks posed by the Takata airbags in the Defective

Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to

deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive

acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any

material fact with intent that others rely upon such concealment, suppression or omission, in

connection with the sale or lease of Defective Vehicles.

221.    As alleged above, Defendants knew of the dangers and risks posed by the Takata airbags, while the Connecticut Class was deceived by the Defendants' omissions into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer.

222.    Defendants knew or should have known that their conduct violated the Connecticut UTPA.

223.    As alleged above, the Defendants made material statements about the safety and reliability of Defective Vehicles that were either false or misleading.

224.    Defendants engaged in a deceptive trade practice when they failed to disclose material information concerning the Defective Vehicles and/or Takata airbags which they knew at the time of the sale/lease. Defendants knew of and deliberately withheld the information about the Takata airbags' propensity to release shrapnel upon deployment or otherwise malfunction in order to ensure that consumers would purchase their vehicles and to induce the consumer to enter into a transaction. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Takata airbags and their tragic consequences and allowed unsuspecting new and used car purchasers to continue to buy/lease the Defective Vehicles and allowed all Defective Vehicle owners/lessors to continue driving highly dangerous vehicles.

225.    Defendants each owed the Connecticut Class a duty to disclose the defective nature of Defective Vehicles and/or dangers and risks posed by the Takata airbags, including the dangerous risk that the Takata airbags will release shrapnel upon deployment, because they:

(a)     Possessed exclusive knowledge of the defects rendering Defective Vehicles and/or Takata airbags inherently more dangerous and unreliable than similar vehicles;

(b)     Intentionally concealed the hazardous situation with Defective Vehicles and/or Takata airbags through their deceptive marketing campaign and recall program that they designed to hide the life-threatening problems from the Connecticut Class; and/or

(c)     Made incomplete representations about the safety and reliability of Defective Vehicles and/or Takata airbags while purposefully withholding material facts from the Connecticut Class that contradicted these representations.

226.    The Defective Vehicles and/or Takata airbags posed and/or pose an unreasonable risk of death or serious bodily injury to the Connecticut Class, passengers, other motorists, pedestrians, and the public at large, because the Takata airbags are susceptible to releasing shrapnel upon deployment or other malfunctions.

227.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Connecticut Class, about the true safety and reliability of the Defective Vehicles and/or Takata airbags.

228.    The propensity of the Defective Vehicles' Takata airbags to emit shrapnel upon deployment or otherwise malfunction was material to the Connecticut Class. Had the Connecticut Class known that their vehicles had these serious safety dangers, risks and/or defects, they would either not have purchased their Defective Vehicles containing Takata airbags, or would have paid less for them than they did.

229.    All members of the Connecticut Class suffered ascertainable loss caused by the Defendants' failure to disclose material information. The Connecticut Class overpaid for their vehicles and did not receive the benefit of their bargain – vehicles containing airbags that did not pose safety risks.  As the result of the existence of, the concealment of and the failure to remedy the dangers and risks posed by the Takata airbags and Defective Vehicles, and the piecemeal and serial nature of the recalls, the value of their Defective Vehicles was and is diminished. This is particularly true now that the safety issues with the Takata airbags in the Defective Vehicles have come to light, and the Connecticut Class own and lease unsafe vehicles.

230.    Members of the Connecticut Class have been proximately and directly damaged by Defendants' misrepresentations, concealment, and non-disclosure of the dangers and risks posed by the Takata airbags in the Defective Vehicles.  They own and lease vehicles whose value has greatly diminished.  The diminishment of the Defective Vehicles' value was only exacerbated by the Defendants' failure to timely disclose and remedy the dangers and risks posed by the Takata airbags.  Defendants' egregious and widely-publicized conduct and the never-ending and piecemeal nature of Defendants' recalls have so tarnished the Defective Vehicles that no reasonable consumer would purchase them—let alone pay what would otherwise be fair market value for the vehicles.

231.    The Connecticut Class Members risk irreparable injury as a result of the Defendants' acts and omissions in violation of the Connecticut UTPA, and these violations present a continuing risk to the Connecticut Class as well as to the general public. The Defendants' unlawful acts and practices complained of herein affect the public interest.

232.     The recalls and repairs instituted by Defendants have not been adequate. The recall is not an effective remedy and is not offered for all Defective Vehicles and other vehicles with Takata airbags susceptible to the malfunctions described herein.

233.     As a direct and proximate result of the Defendants' violations of the Connecticut UTPA, the Connecticut Class has suffered injury-in-fact and/or actual damage.

234.     The Connecticut Class is entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g.

235.     Defendants acted with a reckless indifference to another's rights or wanton or intentional violation to another's rights and otherwise engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights and safety of others.

236.     Pursuant to Conn. Gen. Stat. § 42-110g(c), the Connecticut Class will mail a copy of the complaint to Connecticut's Attorney General.

## SEVENTH CLAIM FOR RELIEF

## ON BEHALF OF THE CONNECTICUT STATEWIDE CONSUMER AND NON-CONSUMER CLASS

### (Fraud by Concealment)

237.     In the event that the Court declines to certify a Nationwide Class under Michigan law, this claim is brought on behalf the Connecticut Class against the Takata and Honda and Defendants (collectively, for the purposes of this Claim, "Defendants").

238.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

239.     As described above, Defendants made material omissions and affirmative misrepresentations regarding the Defective Vehicles and/or Takata airbags.

240.     The Defendants knew these representations were false when made.

55

241.    The vehicles purchased or leased by the Connecticut Class were, in fact, defective, unsafe and unreliable, because the vehicles' Takata airbags were subject to releasing shrapnel upon deployment or other malfunctions.

242.    The Defendants had a duty to disclose that these vehicles and the Takata airbags therein were defective, unsafe and unreliable in that the Takata airbags vehicles were subject to releasing shrapnel upon deployment or other malfunctions, because the Connecticut Class relied on the Defendants' representations that the vehicles they were purchasing and retaining were safe and free from defects.

243.    The aforementioned concealment was material, because if it had been disclosed the Connecticut Class would not have bought, leased or retained their vehicles.

244.    The aforementioned representations were also material because they were facts that would typically be relied on by a person purchasing, leasing or retaining a new or used motor vehicle. The Defendants knew or recklessly disregarded that their representations were false because they knew that people had died and had been injured as the result of the vehicles' Takata airbags. The Defendants intentionally made the false statements in order to sell vehicles and avoid the expense and public relations nightmare of a recall.

245.    The Connecticut Class relied on the Defendants' reputations—along with their failure to disclose the Takata airbag's dangers and problems and the Defendants' affirmative assurance that its vehicles and/or airbags were safe and reliable and other similar false statements—in purchasing, leasing or retaining the Defective Vehicles.

246.    As a result of their reliance, the Connecticut Class has been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

247.    The Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of the Connecticut Class. The Connecticut Class is therefore entitled to an award of punitive damages.

## EIGHTH CLAIM FOR RELIEF

## ASSERTED ON BEHALF OF THE FLORIDA STATEWIDE CONSUMER CLASS

### (Violation of Florida's Unfair & Deceptive Trade Practices Act
### (Fla. Stat. § 501.201, *et seq.*))

248.    This claim is brought on behalf of Plaintiffs Pam Koehler, Craig Dunn, and the Florida Statewide Consumer Class (the "Florida Class") against the Takata and Honda Defendants (collectively, for the purposes of this Claim, "Defendants").

249.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

250.    The Florida Class are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. § 501.203(7).

251.    Defendants engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

252.    The FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce...." Fla. Stat.   § 501.204(1). Defendants participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

253.    In the course of their business, Defendants willfully failed to disclose and actively concealed the dangers and risks posed by the Takata airbags in the Defective Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or

practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or lease of Defective Vehicles.

254.    As alleged above, Defendants knew of the Takata airbags' dangers and risks, while the Class was deceived by the Defendants' omission into believing the Defective Vehicles and the Takata airbags therein were safe, and the information could not have reasonably been known by the consumer.

255.    The Companies knew or should have known that their conduct violated the FUDTPA.

256.    As alleged above, the Companies made material statements about the safety and reliability of Defective Vehicles that were either false or misleading.

257.    Defendants engaged in deceptive trade practices when they failed to disclose material information concerning the Defective Vehicles and dangerous Takata airbags, which they knew at the time of the sale. Defendants deliberately withheld the information about the vehicles' Takata airbags' propensity to release shrapnel upon deployment or otherwise malfunction. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the Takata airbag dangers and defects and their tragic consequences and allowed unsuspecting new and used car purchasers and lessors to continue to buy and lease the Defective Vehicles and allowed all Defective Vehicle owners/lessors to continue driving highly dangerous vehicles.

258.    The Companies each owed the Florida Class a duty to disclose the dangerous and risky nature of Defective Vehicles and the Takata airbags, including the deadly risk that the Takata airbag would release shrapnel upon deployment, because they:

(a)     Possessed exclusive knowledge of the defects rendering the Defective Vehicles and/or the Takata airbags inherently more dangerous and unreliable than similar vehicles and/or airbags;

(b)     Intentionally concealed the hazardous situation with Defective Vehicles through their deceptive marketing campaign and recall program that they designed to hide the life-threatening problems from the Florida Class; and/or

(c)     Made incomplete representations about the safety and reliability of Defective Vehicles generally, and the Takata airbags in particular, while purposefully withholding material facts from the Florida Class that contradicted these representations.

259.    The Defective Vehicles and the Takata airbags posed and/or pose an unreasonable risk of death or serious bodily injury to the Florida Class passengers, other motorists, pedestrians, and the public at large, because they are susceptible to expelling shrapnel upon deployment or otherwise malfunctioning.

260.    The Defendants unfair or deceptive acts or practices were likely to deceive reasonable consumers, including the Florida Class, about the true safety and reliability of Defective Vehicles and/or Takata airbags. The Defendants intentionally and knowingly misrepresented material facts regarding the Defective Vehicles and/or Takata airbags with an intent to mislead the Florida Class.

261.    The propensity of the Defective Vehicles and Takata airbags to expel shrapnel upon deployment or otherwise malfunction was material to the Florida Class. Had the Florida Class known that their vehicles had these serious safety defects, they would either not have purchased their Defective Vehicles with Takata airbags, or would have paid less for them than they did.

262.   The Florida Class suffered ascertainable loss caused by the Defendants' failures to disclose material information. The Florida Class overpaid for their vehicles with Takata airbags and did not receive the benefit of their bargain – vehicles containing airbags that did not pose safety risks and worked properly.  As the result of the existence of, the concealment of and the failure to remedy the dangers and risks posed by the Takata airbags and Defective Vehicles, and the piecemeal and serial nature of the recalls, the value of their Defective Vehicles was, has and continues to be diminished. This is particularly true now that the safety issues with the Takata airbags in the Defective Vehicles have come to light, and the Florida Class owns and leases unsafe vehicles.

263.   Members of the Florida Class have been damaged by Defendants' misrepresentations, concealment, and non-disclosure of the dangers and risks posed by the Takata airbags in the Defective Vehicles.  They own and lease vehicles whose value has greatly diminished.  The already diminished value of the Defective Vehicles was further diminished by the Defendants' failure to timely disclose and remedy the dangers and risks posed by the Takata airbags.  Defendants' egregious and widely-publicized conduct and the never-ending and piecemeal nature of Defendants' recalls have so tarnished the Defective Vehicles that no reasonable consumer would purchase them—let alone pay what would otherwise be fair market value for the vehicles.

264.   Members of the Florida Class risk irreparable injury as a result of the Defendants' acts and omissions in violation of the FUDTPA, and these violations present a continuing risk to the Class as well as to the general public. The Defendants' unlawful acts and practices complained of herein affect the public interest.

60

265.     The recalls and repairs instituted by Defendants have not been adequate. The recall is not an effective remedy and is not offered for all Defective Vehicles and vehicles containing Takata airbags.

266.     As a direct and proximate result of the Defendants' violations of the FUDTPA, the Florida Class has suffered injury-in-fact and/or actual damage.

267.     The Florida Class are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

268.     The Florida Class also seeks an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FUDTPA.

## NINTH CLAIM FOR RELIEF

## ON BEHALF OF THE FLORIDA STATEWIDE CONSUMER CLASS

### (Fraud by Concealment)

269.     In the event that the Court declines to certify a Nationwide Class under Michigan law, this claim is brought on behalf the Florida Class against the Takata and Honda Defendants (collectively, for the purposes of this Claim, "Defendants").

270.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

271.     As described above, Defendants made material omissions and affirmative misrepresentations regarding the Defective Vehicles and/or Takata airbags.

272.     The Defendants knew these representations were false when made.

273.     The vehicles purchased or leased by the Florida Class were, in fact, defective, unsafe and unreliable, because the vehicles' Takata airbags were subject to releasing shrapnel upon deployment or other malfunctions.

274.    The Defendants had a duty to disclose that these vehicles and the Takata airbags therein were defective, unsafe and unreliable in that the Takata airbags  vehicles were subject to releasing shrapnel upon deployment or other malfunctions, because the Florida Class relied on the Defendants' representations that the vehicles they were purchasing and retaining were safe and free from defects.

275.    The aforementioned concealment was material, because if it had been disclosed the Florida Class would not have bought, leased or retained their vehicles.

276.    The aforementioned representations were also material because they were facts that would typically be relied on by a person purchasing, leasing or retaining a new or used motor vehicle. The Defendants knew or recklessly disregarded that their representations were false because they knew that people had died and had been injured as the result of the vehicles' Takata airbags. The Defendants intentionally made the false statements in order to sell vehicles and avoid the expense and public relations nightmare of a recall.

277.    The Florida Class relied on the Defendants'  reputations—along with their failure to disclose the Takata airbag's dangers and problems and the Defendants' affirmative assurance that its vehicles and/or airbags were safe and reliable and other similar false statements—in purchasing, leasing or retaining the Defective Vehicles.

278.    As a result of their reliance, the Florida Class has been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

279.    The Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of the Florida Class. The Florida Class are therefore entitled to an award of punitive damages.

<u>TENTH CLAIM FOR RELIEF</u>

<u>ON BEHALF OF THE HAWAII STATEWIDE CONSUMER CLASS</u>

<u>(Deceptive Acts in Violation of Hawaii Law (Haw. Rev. Stat. §480, *et seq.*))</u>

280.     This claim is brought on behalf of Plaintiff  David Jorgensen and the Hawaii Statewide Consumer Class (the "Hawaii Class") against the Takata and Honda Defendants (collectively, for the purposes of this Claim, "Defendants").

281.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

282.     Defendants are "persons" under Haw. Rev. Stat. § 480-1.

283.     Members of the Hawaii Class are "consumer[s]" as defined by Haw. Rev. Stat. § 480-1, who purchased or leased one or more Defective Vehicles.

284.     Defendants' acts or practices as set forth above and below occurred in the conduct of trade or commerce.

285.     The Hawaii Act § 480-2(a) prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.…" By failing to disclose and actively concealing the dangerous propensities of the Defective Vehicles and/or Takata airbags therein, Defendants engaged in unfair and deceptive trade practices prohibited by the Hawaii Act.

286.     In the course of their business, Defendants willfully failed to disclose and actively concealed the dangers and risks posed by the Takata airbags in the Defective Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material

fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or lease of Defective Vehicles.

287. As alleged above, Defendants knew of the dangers and risks posed by the Takata airbags, while the Hawaii Class was deceived by the Defendants' omissions into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer.

288. Defendants knew or should have known that their conduct violated the Hawaii Act.

289. As alleged above, the Defendants made material statements about the safety and reliability of Defective Vehicles that were either false or misleading.

290. Defendants engaged in a deceptive trade practice when they failed to disclose material information concerning the Defective Vehicles and/or Takata airbags which they knew at the time of the sale/lease. Defendants knew of and deliberately withheld the information about the Takata airbags' propensity to release shrapnel upon deployment or otherwise malfunction in order to ensure that consumers would purchase their vehicles and to induce the consumer to enter into a transaction. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Takata airbags and their tragic consequences and allowed unsuspecting new and used car purchasers to continue to buy/lease the Defective Vehicles and allowed all Defective Vehicle owners/lessors to continue driving highly dangerous vehicles.

291. Defendants each owed the Hawaii Class members a duty to disclose the defective nature of Defective Vehicles and/or dangers and risks posed by the Takata airbags, including the

dangerous risk that the Takata airbags will release deadly shrapnel upon deployment, because they:

    a.   Possessed exclusive knowledge of the defects rendering Defective Vehicles and/or Takata airbags inherently more dangerous and unreliable than similar vehicles;

    b.   Intentionally concealed the hazardous situation with Defective Vehicles and/or Takata airbags through their deceptive marketing campaign and recall program that they designed to hide the life-threatening problems from the Hawaii Class; and/or

    c.   Made incomplete representations about the safety and reliability of Defective Vehicles and/or Takata airbags while purposefully withholding material facts from the Hawaii Class that contradicted these representations.

292.    The Defective Vehicles and/or Takata airbags posed and/or pose an unreasonable risk of death or serious bodily injury to the Hawaii Class, passengers, other motorists, pedestrians, and the public at large, because the Takata airbags are susceptible to releasing shrapnel upon deployment or other malfunctions.

293.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Hawaii Class, about the true safety and reliability of the Defective Vehicles and/or Takata airbags.

294.    The propensity of the Defective Vehicles' Takata airbags to emit shrapnel upon deployment or otherwise malfunction was material to the Hawaii Class. Had the Hawaii Class known that their vehicles had these serious safety dangers, risks and/or defects, they either would

not have purchased their Defective Vehicles containing Takata airbags, or would have paid less for them than they did.

295.    All members of the Hawaii Class suffered ascertainable loss caused by the Defendants' failure to disclose material information. The Hawaii Class overpaid for their vehicles and did not receive the benefit of their bargain – vehicles containing airbags that did not pose safety risks.  As the result of the existence of, the concealment of and the failure to remedy the dangers and risks posed by the Takata airbags and Defective Vehicles, and the piecemeal and serial nature of the recalls, the value of their Defective Vehicles was and is diminished. This is particularly true now that the safety issues with the Takata airbags in the Defective Vehicles have come to light, and the Hawaii Class own and lease unsafe vehicles.

296.    Members of the Hawaii Class have been proximately and directly damaged by Defendants' misrepresentations, concealment, and non-disclosure of the dangers and risks posed by the Takata airbags in the Defective Vehicles.  They own and lease vehicles whose value has greatly diminished.  The diminishment of the Defective Vehicles' value was only exacerbated by the Defendants' failure to timely disclose and remedy the dangers and risks posed by the Takata airbags.  Defendants' egregious and widely-publicized conduct and the never-ending and piecemeal nature of Defendants' recalls have so tarnished the Defective Vehicles that no reasonable consumer would purchase them—let alone pay what would otherwise be fair market value for the vehicles.

297.    The Hawaii Class Members risk irreparable injury as a result of the Defendants' acts and omissions in violation of the Hawaii Act, and these violations present a continuing risk to the Hawaii Class as well as to the general public. The Defendants' unlawful acts and practices complained of herein affect the public interest.

298.     The recalls and repairs instituted by Defendants have not been adequate. The recall is not an effective remedy and is not offered for all Defective Vehicles and other vehicles with Takata airbags susceptible to the malfunctions described herein.

299.     As a direct and proximate result of the Defendants' violations of the Hawaii Act, the Hawaii Class has suffered injury-in-fact and/or actual damage.

300.     As a direct and proximate result of the Companies' violations of the Hawaii Act, Hawaii Class members have suffered injury-in-fact and/or actual damage.

301.     Pursuant to Haw. Rev. Stat. § 480-13, the Hawaii Class seeks monetary relief against Defendants measured as the greater of (a) $1,000 and (b) threefold actual damages in an amount to be determined at trial.

302.     Under Haw. Rev. Stat. § 480-13.5, the Hawaii Class seeks an additional award against Defendants of up to $10,000 for each violation directed at a Hawaiian elder. Defendants should have known that their conduct was directed to one or more Class members who are elders. Defendants' conduct caused one or more of these elders to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the elder. One or more Hawaii Class members who are elders are substantially more vulnerable to Defendants' conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Defendants' conduct.

## ELEVENTH CLAIM FOR RELIEF

## ON BEHALF OF THE HAWAII STATEWIDE CONSUMER CLASS

## (Breach of the Implied Warranty of Merchantability (Haw. Rev. Stat. § 490:2-314))

303.    In the event the Court declines to certify a Nationwide Class under Michigan law, this claim is brought under Hawaii law on behalf of the Hawaii Class against the Takata and Honda Defendants (collectively, for the purposes of this Claim, "Defendants").

304.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

305.    Defendants were merchants with respect to motor vehicles within the meaning of Haw. Rev. Stat. § 490:2-104(1).

306.    Under Haw. Rev. Stat. § 490:2-314, a warranty that the Defective Vehicles and Takata airbags therein were in merchantable condition was implied by law in the transactions when the Hawaii Class purchased their Defective Vehicles containing Takata airbags.

307.    These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Vehicles are inherently defective in that the Takata airbags therein are at risk of expelling shrapnel upon deployment or otherwise malfunctioning.

308.    Defendants were provided notice of these issues by their knowledge of the issues, prior complaints filed against them and/or others, and internal investigations. Notice of these issues is being given by the Hawaii Class through this Complaint before or within a reasonable amount of time after Defendants issued the recalls and warnings and the allegations of vehicle defects became public.

309.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Hawaii Class members have been damaged in an amount to be proven at trial.

**TWELFTH CLAIM FOR RELIEF**

**ON BEHALF OF THE HAWAII STATEWIDE CONSUMER CLASS**

**(Fraud by Concealment)**

310.     In the event the Court declines to certify a Nationwide Class under Michigan law, this claim is brought under Hawaii law on behalf of the Hawaii Class against the Takata and Honda Defendants (collectively, for the purposes of this Claim, "Defendants").

311.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

312.     As described above, Defendants made material omissions and affirmative misrepresentations regarding the Defective Vehicles and/or Takata airbags.

313.     The Defendants knew these representations were false when made.

314.     The vehicles purchased or leased by the Hawaii Class were, in fact, defective, unsafe and unreliable, because the vehicles' Takata airbags were subject to releasing shrapnel upon deployment or other malfunctions.

315.     The Defendants had a duty to disclose that these vehicles and the Takata airbags therein were defective, unsafe and unreliable in that the Takata airbags vehicles were subject to releasing shrapnel upon deployment or other malfunctions, because the Hawaii Class relied on the Defendants' representations that the vehicles they were purchasing and retaining were safe.

316.     The aforementioned concealment was material, because if it had been disclosed the Hawaii Class would not have bought, leased or retained their vehicles, or would have paid less for the vehicles.

317.     The aforementioned representations were also material because they were facts that would typically be relied on by a person purchasing, leasing or retaining a new or used motor vehicle. The Defendants knew or recklessly disregarded that their representations were

false because they knew that people had died and had been injured as the result of the vehicles' Takata airbags. The Defendants intentionally made the false statements in order to sell vehicles and avoid the expense and public relations nightmare of a recall.

318.     The Hawaii Class relied on the Defendants' reputations—along with their failure to disclose the Takata airbag's dangers and problems and the Defendants' affirmative assurance that its vehicles and/or airbags were safe and reliable and other similar false statements—in purchasing, leasing or retaining the Defective Vehicles.

319.     As a result of their reliance, the Hawaii Class has been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

320.     The Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of the Hawaii Class. The Hawaii Class is therefore entitled to an award of punitive damages.

## THIRTEENTH CLAIM FOR RELIEF

## ON BEHALF OF THE LOUISIANA CONSUMER STATEWIDE CLASS

**(Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. § 51:1401, _et. seq._))**

321.     This Claim is brought on behalf of Plaintiffs Anna Marie Brechtell Flattmann, Robert Redfearn, Jr., and Tasha R. Severio, and Members of the Louisiana Statewide Consumer Class (the "Louisiana Consumer Class") against the Takata, Honda, and BMW Defendants (collectively, for the purposes of this Claim, "Defendants").

322.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

323.    The Defendants and the Louisiana Consumer Class are "persons" within the meaning of the La. Rev. Stat. § 51:1402(8).

324.    The Louisiana Consumer Class members are "consumers" within the meaning of the La. Rev. Stat. § 51:1402(1).

325.    The Defendants engaged in "trade" or "commerce" within the meaning of La. Rev. Stat.§ 51:1402(9).

326.    The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce..." La. Rev. Stat. § 51:1405(A). Defendants participated in misleading, false, or deceptive acts that violated the Louisiana CPL. By failing to disclose and actively concealing the dangerous airbag defects in the Defective Vehicles, Defendants engaged in deceptive business practices prohibited by the Louisiana CPL.

327.    In the course of their business, Defendants willfully failed to disclose and actively concealed the dangerous airbag defects in the Defective Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Defective Vehicles. Defendants are liable for engaging in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the Louisiana CPL.

328.    As alleged above, Defendants knew of the air bag defects, while the Louisiana Consumer Class was deceived by the Defendants' omissions into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer.

329.    Defendants knew or should have known that their conduct violated the Louisiana CPL.

330.    As alleged above, the Companies made material statements about the safety and reliability of Defective Vehicles that were either false or misleading.

331.    Defendants engaged in a deceptive trade practice when it failed to disclose material information concerning the Defective Vehicles which it knew at the time of the sale. Defendants deliberately withheld the information about the Defective Vehicles' air bag defects in order to ensure that consumers would purchase its vehicles and to induce the consumer to enter into a transaction.

332.    The Defendants each owed the Louisiana Consumer Class a duty to disclose the defective nature of Defective Vehicles, including the dangerous risks arising from the airbag defects, because they:

(a)    Possessed exclusive knowledge of the defects rendering Defective Vehicles inherently more dangerous and unreliable than similar vehicles;

(b)    Intentionally concealed the hazardous situation with Defective Vehicles and/or Takata airbags through their deceptive marketing campaign and recall program that they designed to hide the life-threatening problems from the Louisiana Consumer Class; and/or

(c)    Made incomplete representations about the safety and reliability of Defective Vehicles generally, and the Takata airbags in particular, while purposefully withholding material facts from the Louisiana Consumer Class that contradicted these representations.

333.    For the reasons set forth herein, the Defective Vehicles posed and/or pose an unreasonable risk of death or serious bodily injury to the Louisiana Consumer Class, passengers, other motorists, pedestrians, and the public at large.

334.    The Defendants' unfair or deceptive acts or practices were likely to deceive reasonable consumers, including the Louisiana Consumer Class, about the true safety and reliability of the Defective Vehicles. They intentionally and knowingly misrepresented material facts regarding the Defective Vehicles with intent to mislead the Louisiana Class.

335.    The propensity of the Defective Vehicles' airbags to emit shrapnel or otherwise malfunction at the time of deployment was material to the Louisiana Class. Had the Louisiana Consumer Class known that their vehicles had these serious safety defects, they would either not have purchased their Defective Vehicles, or would have paid less for them than they did.

336.    All members of the Louisiana Consumer Class suffered ascertainable loss caused by the Companies' failure to disclose material information. The Louisiana Consumer Class overpaid for their vehicles and did not receive the benefit of their bargain. As the result of the concealment and failure to remedy the serious safety defect, and the piecemeal and serial nature of the recalls, the value of their Defective Vehicles has diminished now that the safety issues in the Defective Vehicles, and the many other serious safety issues and myriad defects in the Defendants' vehicles have come to light, and the Louisiana Consumer Class own vehicles that are not safe.

337.    The Louisiana Consumer Class has been damaged by Defendants' misrepresentations, concealment, and non-disclosure of the airbag defects in the Defective Vehicles, as they are now holding vehicles whose value has greatly diminished because of Defendants' failure to timely disclose and remedy the serious defects. Defendants' egregious and

73

widely- publicized conduct and the never-ending and piecemeal nature of their recalls, and the many other serious defects in their vehicles, have so tarnished the Defective Vehicles that no reasonable consumer would purchase them—let alone pay what would otherwise be fair market value for the vehicles.

338.    The Louisiana Consumer Class Members risk irreparable injury as a result of the Defendants' acts and omissions in violation of the Louisiana CPL, and these violations present a continuing risk to the Louisiana Consumer Class as well as to the general public. The Defendants' unlawful acts and practices complained of herein affect the public interest.

339.    The purported recalls and repairs instituted by Defendants have not been adequate. The purported recall is not an effective remedy and is not offered for all Defective Vehicles.

340.    As a direct and proximate result of the Defendants' violations of the Louisiana CPL, the Louisiana Consumer Class have suffered injury-in-fact and/or actual damage.

341.    Pursuant to La. Rev. Stat. § 51:1409, the Louisiana Consumer Class seeks to recover actual damages in an amount to be determined at trial; treble damages for the Defendants' knowing violations of the Louisiana CPL; an order enjoining Defendants' unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under La. Rev. Stat.§ 51:1409.

342.    Pursuant to La. Rev. Stat. § 51:1409(B), the Louisiana Class will mail a copy of this complaint to Louisiana's Attorney General

## FOURTEENTH CLAIM FOR RELIEF

## ON BEHALF OF THE LOUISIANA STATEWIDE CONSUMER CLASS

## (Breach of the Implied Warranty of Merchantability (La. Civ. Code Art. 2520, 2524.))

343.     In the event the Court declines to certify a Nationwide Class under Michigan law, this claim is brought on behalf of the Louisiana Consumer Class against the Takata, Honda, and BMW Defendants (collectively, for the purposes of this Claim, "Defendants").

344.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

345.     At the time the Louisiana Consumer Class acquired their Defective Vehicles, those vehicles had a redhibitory defect within the meaning of La. Civ. Code Art. 2520, in that the defective airbags rendered the use of the Defective Vehicles so inconvenient (and dangerous) that the Louisiana Consumer Class either would not have purchased the Defective Vehicles had they known of the defect, or, because the defective airbags so diminished the usefulness and/or value of the Defective Vehicles such that it must be presumed that the Louisiana Consumer Class would have purchased the Defective Vehicles, but for a lesser price.

346.     No notice of the defect is required under La. Civ. Code Art. 2520, since Defendants had knowledge of a redhibitory defect in the Defective Vehicles at the time they were sold to the Louisiana Consumer Class.

347.     Under La. Civ. Code Art.  2524, a warranty that the Defective Vehicles were in merchantable condition, or fit for ordinary use, was implied by law in the transactions when the Louisiana Consumer Class purchased their Defective Vehicles.

348.     These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Vehicles

are inherently defective in that there are defects in the airbags that result in the emission of shrapnel or other malfunctions in the event of a collision.

349.    Defendants were provided notice of these issues by numerous complaints filed against them, internal investigations, and by numerous individual letters and communications sent by the Louisiana Class before or within a reasonable amount of time after Defendants issued the recall and the allegations of vehicle defects became public.

350.    As a direct and proximate result of Defendants' manufacture of defective airbags and/or sale of vehicles with redhibitory defects, and in violation of the implied warranty that the Defective Vehicles were fit for ordinary use, the Louisiana Consumer Class is entitled to either rescission or damages from Defendants in an amount to be proven at trial.

## FIFTEENTH CLAIM FOR RELIEF

## ON BEHALF OF THE LOUISIANA STATEWIDE CONSUMER CLASS

### (Fraud By Concealment)

351.    In the event the Court declines to certify a Nationwide Class under Michigan law, this claim is brought on behalf of the Louisiana Statewide Consumer Class.

352.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

353.    As described above, Defendants made material omissions and affirmative misrepresentations regarding the Defective Vehicles and/or Takata airbags.

354.    The Defendants knew these representations were false when made.

355.    The vehicles purchased or leased by the Louisiana Consumer Class were, in fact, defective, unsafe and unreliable, because the vehicles contained airbags that were subject to releasing shrapnel or otherwise malfunctioning at the time of deployment.

76

356.    Defendants had a duty to disclose that these vehicles were defective, unsafe and unreliable in that the vehicles contained airbags that were subject to releasing shrapnel or otherwise malfunctioning in the event of a collision, because the Louisiana Consumer Class relied on the Defendants' representations that the vehicles they were purchasing and retaining were safe and free from defects.

357.    The aforementioned concealment was material, because if it had been disclosed the Louisiana Consumer Class would not have bought, leased or retained their vehicles.

358.    The aforementioned representations were also material because they were facts that would typically be relied on by a person purchasing, leasing or retaining a new or used motor vehicle. The Defendants knew or recklessly disregarded that their representations were false because they knew that people had died as the result of the defective airbags. The Defendants intentionally made the false statements in order to sell vehicles and avoid the expense and public relations nightmare of a recall.

359.    The Louisiana Consumer Class relied on the Defendants' reputations—along with their failure to disclose the airbag problems and the Defendants' affirmative assurances that their vehicles were safe and reliable and other similar false statements—in purchasing, leasing or retaining the Defective Vehicles.

360.    As a result of their reliance, the Louisiana Consumer Class have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

361.    The Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of the Louisiana Consumer Class. The Louisiana Classes are entitled to an award of punitive damages.

## SIXTEENTH CLAIM FOR RELIEF

## ASSERTED ON BEHALF OF THE LOUISIANA STATEWIDE CONSUMER CLASS

## (Redhibition (La. Civ. Code. Art. 2520, *et. seq.* and 2545)

362.     In the event the Court declines to certify a Nationwide Class under Michigan law, this claim is brought on behalf of the Louisiana Consumer Class against the Takata, Honda, and BMW Defendants (collectively, for the purposes of this Claim, "Defendants").

363.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

364.     Under Louisiana law, the seller and manufacturer warrants the buyer against redhibitory defects or vices in the thing sold. La. Civ. Code. Art. 2520.  A defect is redhibitory under two circumstances.  First, a defect is redhibitory when it renders the thing useless, or renders its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. *Id*. The existence of such a defect gives a buyer the right to obtain rescission of the sale. *Id*. Second, a defect is redhibitory when it diminishes the usefulness or the value of the thing so that it must be presumed that a buyer would still have bought it, but for a lesser price. *Id*. The existence of such a defect entitles the buyer to a reduction in the price. *Id*.

365.     Defendants defectively designed, manufactured, sold, or otherwise placed in the stream of commerce airbags and Vehicles that are defective.

366.     Defendants have known of the defects and the safety hazards that result from the defects, as alleged herein, and have failed to adequately address those safety concerns.

367.     Defendants are responsible for damages caused by the failure of their products to conform to well-defined standards.  In particular, the Defective Vehicles contain defects or vices which have rendered them useless or their use so inconvenient and unsafe that reasonable buyers

would not have purchased them had they known of the defects, or at the least, would not have paid as much for the Vehicles as they did. The Louisiana Consumer Class members are entitled to obtain either rescission or a reduction in the purchase/lease price of the Vehicles from Defendants.

368.     Further, under Louisiana law, Defendants are deemed to know that the Vehicles contained redhibitory defects pursuant to La. Civ. Code Art. 2545. Defendants are liable for the bad faith sale of defective products with knowledge of the defects and thus are liable to the Louisiana Consumer Class for the price of the Vehicles, with interest from the purchase or lease date, as well as reasonable expenses occasioned by the sale or lease of the Vehicles, as well as attorneys' fees.

369.     Due to the defects and redhibitory vices in the Vehicles sold or leased to the Louisiana Class, they have suffered damages under Louisiana law.

## SEVENTEENTH CLAIM FOR RELIEF

## ON BEHALF OF THE MASSACHUSETTS STATEWIDE CONSUMER CLASS

### (Deceptive Acts or Practices in Violation of Massachusetts Law
### (Mass. Gen. Laws ch. 3A, § 1, et seq.))

370.     This claim is brought on behalf of Plaintiffs Kenneth G. Decie, Gregory McCarthy, Nicole Peaslee, and Karen Switkowski, and the Massachusetts Statewide Consumer Class (the "Massachusetts Consumer Class" or "Massachusetts Class") against the Takata, Honda and Toyota Defendants (collectively, for the purposes of this Claim, "Defendants").

371.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

372.     At all relevant times hereto, the Defendants were engaged in trade or commerce within the meaning of Mass. Gen. Laws ch. 93A, § 1(b)., including selling or offering for sale

vehicles, selling or offering airbags, advertising products and/or services relating to vehicles and/or airbags, and/or entering into contracts relating to or implicating the sale of vehicles and/or airbags within the Commonwealth of Massachusetts.

373.    Massachusetts' Consumer Protection Act (the "Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2.  Defendants participated in misleading, false, or deceptive acts that violated the Massachusetts Act.  By failing to disclose and actively concealing the dangers and risks posed by the Takata airbag in the Defective Vehicles, Defendants engaged in deceptive business practices prohibited by the Massachusetts Act.

374.    In the course of their business, Defendants willfully failed to disclose and actively concealed the dangers and risks posed by the Takata airbag in the Defective Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale and lease of Defective Vehicles.  Defendants are directly liable for engaging in unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the Massachusetts Act.

375.    As alleged above, Defendants knew of the dangers and risks posed by the Takata airbags, while the Massachusetts Class were deceived by the Defendants' misstatements and omissions into believing the Defective Vehicles and the Takata airbags therein were safe, and the information could not have reasonably been known by the consumer.

376.    The Companies knew or should have known that their conduct violated the Massachusetts Act.

377.    As alleged above, the Defendants made material statements about the safety and reliability of Defective Vehicles and/or Takata airbags therein that were either false or misleading.

378.    Defendants engaged in deceptive trade practices when they failed to disclose material information concerning the Defective Vehicles and/or Takata airbags therein, which they knew at the time of the sale. Defendants deliberately withheld the information about the vehicles' Takata airbag's propensity to emit shrapnel upon deployment or otherwise malfunction.

379.    Despite Defendants' knowledge of the dangers and risks relating to the Takata airbags,  to protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the defects and their tragic consequences and allowed unsuspecting new and used car purchasers and lessors to continue to buy and lease the Defective Vehicles and allowed all Defective Vehicle owners and lessors to continue driving highly dangerous vehicles.

380.    The Companies each owed the Massachusetts Class a duty to disclose the dangerous and risky nature of Defective Vehicles and the Takata airbags, including the deadly risk that the Takata airbag would release shrapnel upon deployment, because they:

(a)    Possessed exclusive knowledge of the defects rendering the Defective Vehicles and/or the Takata airbags inherently more dangerous and unreliable than similar vehicles and/or airbags;

(b)    Intentionally concealed the hazardous situation with Defective Vehicles through their deceptive marketing campaign and recall program that they designed to hide the life-threatening problems from the Massachusetts Class; and/or

(c)      Made incomplete representations about the safety and reliability of Defective Vehicles generally, and the Takata airbags in particular, while purposefully withholding material facts from the Massachusetts Class that contradicted these representations.

381.    The Defective Vehicles and the Takata airbags posed and/or pose an unreasonable risk of death or serious bodily injury to the Massachusetts Class, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to expelling shrapnel upon deployment or otherwise malfunctioning.

382.    The Defendants unfair or deceptive acts or practices were likely to deceive reasonable consumers, including the Massachusetts Class, about the true safety and reliability of Defective Vehicles. The Defendants intentionally and knowingly misrepresented material facts regarding the Defective Vehicles with an intent to mislead the Massachusetts Class.

383.    The propensity of the Defective Vehicles and Takata airbags to expel shrapnel upon deployment or otherwise malfunction was material to the Massachusetts Class. Had the Massachusetts Class known that their vehicles had these serious safety defects, they would either not have purchased their Defective Vehicles with Takata airbags, or would have paid less for them than they did.

384.    The Massachusetts Class suffered ascertainable loss caused by the Defendants' failure to disclose material information. The Massachusetts Classes overpaid for their vehicles and did not receive the benefit of their bargain – vehicles containing airbags that did not pose safety risks.  As the result of the existence of, the concealment of and the failure to remedy the dangers and risks posed by the Takata airbags and Defective Vehicles, and the piecemeal and serial nature of the recalls, the value of their Defective Vehicles was, are, and continues to be

diminished. This is particularly true now that the safety issues with the Takata airbags in the Defective Vehicles have come to light, and the Massachusetts Classes own and lease unsafe vehicles.

385.    Members of the Massachusetts Class have been damaged by Defendants' misrepresentations, concealment, and non-disclosure of the dangers and risks posed by the Takata airbags in the Defective Vehicles.  They own and lease vehicles whose value has greatly diminished.  The diminishment of the Defective Vehicles' value was only exacerbated by the Defendants' failure to timely disclose and remedy the dangers and risks posed by the Takata airbags.  Defendants' egregious and widely-publicized conduct and the never-ending and piecemeal nature of Defendants' recalls have so tarnished the Defective Vehicles that no reasonable consumer would purchase them—let alone pay what would otherwise be fair market value for the vehicles.

386.    Members of the Massachusetts Class risk irreparable injury as a result of the Defendants' acts and omissions in violation of the Massachusetts Act, and these violations present a continuing risk to the Class as well as to the general public. The Defendants' unlawful acts and practices complained of herein affect the public interest.

387.    The recalls and repairs instituted by Defendants have not been adequate. The recall is not an effective remedy and is not offered for all Defective Vehicles and vehicles containing Takata airbags.

388.    As a direct and proximate result of the Defendants' violations of the Massachusetts Act, the Massachusetts Class have suffered injury-in-fact and/or actual damage.

389.    Pursuant to Mass. Gen. Laws ch. 93A, § 9, the Massachusetts Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount

to be determined at trial and (b) statutory damages in the amount of $25 for each member of the Massachusetts Classes. Because Defendant's conduct was committed willfully and knowingly, up to three times actual damages, but no less than two times actual damages, is warranted as a recovery for each member of the Massachusetts Class.

390.    The Massachusetts Class also seek an order enjoining Defendants' unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Massachusetts Act.

391.    The Massachusetts Plaintiffs have complied with the notice requirement set forth in Mass. Gen. Laws ch. 93A, § 9(3) in the form of a written demand letter sent on October 27, 2014 to Defendants containing a demand for relief, identifying the claimant(s) and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered.

## EIGHTEENTH CLAIM FOR RELIEF

## ON BEHALF OF THE MASSACHUSETTS CONSUMER CLASS

### (Breach of the Implied Warranty of Merchantability
### (ALM GL CH. 106, § 2-314)

392.    In the event the Court declines to certify a nationwide Class under Michigan law, this claim is brought on behalf of the Massachusetts Class against the Takata, Honda and Toyota Defendants (collectively, for the purposes of this Claim, "Defendants").

393.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

394.    Defendants were merchants with respect to motor vehicles and/or airbags within the meaning of ALM GL ch. 106, § 2-104(1).

395.     Under ALM GL CH. 106, § 2-314, a warranty that the Defective Vehicles and Takata airbags were in merchantable condition was implied by law in the Defective Vehicle transactions.

396.     These vehicles, and the Takata airbags therein, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Vehicles and the Takata airbags are inherently dangerous and present safety risks in that the Takata airbags are susceptible to expelling shrapnel upon deployment or otherwise malfunctioning.

397.     Defendants were provided notice of these issues by their knowledge of the issues, prior complaints filed against them and/or others, and internal investigations. Notice of these issues is being given by the Massachusetts Class through this Complaint before or within a reasonable amount of time after Defendants issued the recalls and warnings and the allegations of vehicle defects became public.

398.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the Massachusetts Class has been damaged in an amount to be proven at trial.

## NINETEENTH CLAIM FOR RELIEF

## ON BEHALF OF THE MASSACHUSETTS CONSUMER CLASS

### (Fraud By Concealment)

399.     In the event the Court declines to certify a Nationwide Class under Michigan law, this claim is brought on behalf of the Massachusetts Class against the Takata, Honda and Toyota Defendants (collectively, for the purposes of this Claim, "Defendants").

400.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

401.   As described herein, Defendants made material omissions and affirmative misrepresentations regarding the Takata airbags and/or Defective Vehicles, and knew these representations were false when made.

402.   The vehicles purchased or leased by the Massachusetts Class were and/or are, in fact, defective, unsafe and unreliable, because the vehicles' Takata airbags were susceptible to expelling shrapnel upon deployment or otherwise malfunctioning.

403.   The Defendants had a duty to disclose that these vehicles were defective, unsafe and unreliable in that the vehicles' Takata airbags were susceptible to expelling shrapnel upon deployment or otherwise malfunctioning, because the Massachusetts Class relied on the Companies' representations that the vehicles they were purchasing and retaining were safe and free from defects.

404.   The aforementioned concealment was material, because if it had been disclosed the Massachusetts Class would not have bought, leased or retained their vehicles.

405.   The aforementioned representations were also material because they were facts that would typically be relied on by a person purchasing, leasing or retaining a new or used motor vehicle. The Defendants' knew or recklessly disregarded that their representations were false because they knew that people had died as the result of the Takata airbag's release of shrapnel upon deployment or other malfunctions. The Defendants' intentionally made the false statements in order to sell vehicles and avoid the expense and public relations nightmare of a recall.

406.   The Massachusetts Class relied on the Defendants' reputation—along with their failure to disclose the Takata airbag problems and the Defendants' affirmative assurance that

their vehicles and/or airbags were safe and reliable and other similar false statements—in purchasing, leasing or retaining the Defective Vehicles.

407.    As a result of their reliance, members of the Massachusetts Class have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

408.    The Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of the Massachusetts Class, who are therefore entitled to an award of punitive damages.

## TWENTIETH CLAIM FOR RELIEF

### ON BEHALF OF THE NEW JERSEY STATEWIDE CONSUMER CLASS

#### (Violations of the New Jersey Consumer Fraud Act. (N.J. Stat. Ann. § 56:8-1, *et seq.*))

409.    This claim is brought on behalf of Plaintiff Anthony D. Dark and the New Jersey Statewide Consumer Class (the "New Jersey Class") against the Takata and Honda Defendants (collectively, for the purposes of this Claim, "Defendants").

410.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

411.    The New Jersey Class and Defendants are or were "person[s]" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

412.    Defendants engaged in the "sale" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c), (d).

413.    The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment,

suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby..." N.J. Stat. Ann.§ 56:8-2. The Defendants engaged in unconscionable or deceptive acts or practices that violated the New Jersey CFA as described above and below, and did so with the intent that Class members rely upon their acts, concealment, suppression or omissions.

414.    In the course of their business, Defendants willfully failed to disclose and actively concealed the dangers and risks posed by the Takata airbags in the Defective Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or lease of Defective Vehicles.

415.    As alleged above, Defendants knew of the dangers and risks posed by the Takata airbags, while the New Jersey Class was deceived by the Defendants' omissions into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer.

416.    Defendants knew or should have known that their conduct violated the New Jersey CFA.

417.    As alleged above, the Defendants made material statements about the safety and reliability of Defective Vehicles that were either false or misleading.

418.    Defendants engaged in a deceptive trade practice when they failed to disclose material information concerning the Defective Vehicles and/or Takata airbags which they knew

at the time of the sale/lease. Defendants knew of and deliberately withheld the information about the Takata airbags' propensity to release shrapnel upon deployment or otherwise malfunction in order to ensure that consumers would purchase their vehicles and to induce the consumer to enter into a transaction. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Takata airbags and their tragic consequences and allowed unsuspecting new and used car purchasers to continue to buy/lease the Defective Vehicles and allowed all Defective Vehicle owners/lessors to continue driving highly dangerous vehicles.

419.     Defendants each owed the New Jersey Class a duty to disclose the defective nature of Defective Vehicles and/or dangers and risks posed by the Takata airbags, including the dangerous risk that the Takata airbags will release shrapnel upon deployment, because they:

(a)     Possessed exclusive knowledge of the defects rendering Defective Vehicles and/or Takata airbags inherently more dangerous and unreliable than similar vehicles;

(b)     Intentionally concealed the hazardous situation with Defective Vehicles and/or Takata airbags through their deceptive marketing campaign and recall program that they designed to hide the life-threatening problems from the New Jersey Class; and/or

(c)     Made incomplete representations about the safety and reliability of Defective Vehicles and/or Takata airbags while purposefully withholding material facts from the New Jersey Class that contradicted these representations.

420.     The Defective Vehicles and/or Takata airbags posed and/or pose an unreasonable risk of death or serious bodily injury to the New Jersey Class, passengers, other motorists,

pedestrians, and the public at large, because the Takata airbags are susceptible to releasing shrapnel upon deployment or other malfunctions.

421.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the New Jersey Class, about the true safety and reliability of the Defective Vehicles and/or Takata airbags.

422.    The propensity of the Defective Vehicles' Takata airbags to emit shrapnel upon deployment or otherwise malfunction was material to the New Jersey Class. Had the New Jersey Class known that their vehicles had these serious safety dangers, risks and/or defects, they would either not have purchased their Defective Vehicles containing Takata airbags, or would have paid less for them than they did.

423.    All members of the New Jersey Class suffered ascertainable loss caused by the Defendants' failure to disclose material information. The New Jersey Class overpaid for their vehicles and did not receive the benefit of their bargain – vehicles containing airbags that did not pose safety risks.  As the result of the existence of, the concealment of and the failure to remedy the dangers and risks posed by the Takata airbags and Defective Vehicles, and the piecemeal and serial nature of the recalls, the value of their Defective Vehicles was and is diminished. This is particularly true now that the safety issues with the Takata airbags in the Defective Vehicles have come to light, and the New Jersey Class own and lease unsafe vehicles.

424.    Members of the New Jersey Class have been proximately and directly damaged by Defendants' misrepresentations, concealment, and non-disclosure of the dangers and risks posed by the Takata airbags in the Defective Vehicles.  They own and lease vehicles whose value has greatly diminished.  The diminishment of the Defective Vehicles' value was only exacerbated by the Defendants' failure to timely disclose and remedy the dangers and risks posed

by the Takata airbags.  Defendants' egregious and widely-publicized conduct and the never-ending and piecemeal nature of Defendants' recalls have so tarnished the Defective Vehicles that no reasonable consumer would purchase them—let alone pay what would otherwise be fair market value for the vehicles.

425.    The New Jersey Class Members risk irreparable injury as a result of the Defendants' acts and omissions in violation of the New Jersey CFA, and these violations present a continuing risk to the Connecticut Class as well as to the general public. The Defendants' unlawful acts and practices complained of herein affect the public interest.

426.    The recalls and repairs instituted by Defendants have not been adequate. The recall is not an effective remedy and is not offered for all Defective Vehicles and other vehicles with Takata airbags susceptible to the malfunctions described herein.

427.    As a direct and proximate result of the Defendants' violations of the New Jersey CFA, the New Jersey Class has suffered injury-in-fact and/or actual damage.

428.    The New Jersey Class is entitled to recover legal and/or equitable relief including an order enjoining Defendants' unlawful conduct, treble damages, costs and reasonable attorneys' fees pursuant to N.J. Stat. Ann. § 56:8-19, and any other just and appropriate relief.

429.    Pursuant to N.J. Stat. Ann. § 56:8-20, the New Jersey Class will mail a copy of the complaint to New Jersey's Attorney General within ten (10) days of filing it with the Court.

## TWENTY-FIRST CLAIM FOR RELIEF

## ON BEHALF OF THE NEW JERSEY STATEWIDE CONSUMER CLASS

## (Breach of Implied Warranty of Merchantability (N.J. Stat. Ann. § 12A:2-314))

430.    In the event the Court declines to certify a Nationwide Class, this claim is brought on behalf the New Jersey Class against the Takata and Honda Defendants (collectively, for the purposes of this Claim, "Defendants").

91

431.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

432.    Defendants were merchants with respect to motor vehicles and/or airbags.

433.    A warranty that the Defective Vehicles and Takata airbags were in merchantable condition was implied by law in the transactions when the New Jersey Class purchased their Defective Vehicles.

434.     These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used for the reasons described above and below.

435.    Defendants were provided notice of these issues by their knowledge of the issues, prior complaints filed against them and/or others, and internal investigations. Notice of these issues is being given by the New Jersey Class through this Complaint before or within a reasonable amount of time after Defendants issued the recalls and warnings and the allegations of vehicle defects became public.

436.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, the New Jersey Class has been damaged in an amount to be proven at trial.

## TWENTY-SECOND CLAIM FOR RELIEF

## ON BEHALF OF THE NEW JERSEY STATEWIDE CONSUMER CLASS

### (Fraud by Concealment)

437.    In the event that the Court declines to certify a Nationwide Class under Michigan law, this claim is brought on behalf the New Jersey Class against the Takata and Honda Defendants (collectively, for the purposes of this Claim, "Defendants").

438.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

439.    As described above, Defendants made material omissions and affirmative misrepresentations regarding the Defective Vehicles and/or Takata airbags.

440.    The Defendants knew these representations were false when made.

441.    The vehicles purchased or leased by the New Jersey Class were, in fact, defective, unsafe and unreliable, because the vehicles' Takata airbags were subject to releasing shrapnel upon deployment or other malfunctions.

442.    The Defendants had a duty to disclose that these vehicles and the Takata airbags therein were defective, unsafe and unreliable in that the Takata airbags vehicles were subject to releasing shrapnel upon deployment or other malfunctions, because the New Jersey Class relied on the Defendants' representations that the vehicles they were purchasing and retaining were safe and free from defects.

443.    The aforementioned concealment was material, because if it had been disclosed the New Jersey Class would not have bought, leased or retained their vehicles.

444.    The aforementioned representations were also material because they were facts that would typically be relied on by a person purchasing, leasing or retaining a new or used motor vehicle. The Defendants knew or recklessly disregarded that their representations were false because they knew that people had died and had been injured as the result of the vehicles' Takata airbags. The Defendants intentionally made the false statements in order to sell vehicles and avoid the expense and public relations nightmare of a recall.

445.    The New Jersey Class relied on the Defendants'  reputations—along with their failure to disclose the Takata airbag's dangers and problems and the Defendants' affirmative assurance that its vehicles and/or airbags were safe and reliable and other similar false statements—in purchasing, leasing or retaining the Defective Vehicles.

446.     As a result of their reliance, the New Jersey Class has been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

447.     The Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of the New Jersey Class. The New Jersey Class is therefore entitled to an award of punitive damages.

<u>**TWENTY-THIRD CLAIM FOR RELIEF**</u>

<u>**ON BEHALF OF THE NEW YORK STATEWIDE CLASS**</u>

<u>**(Deceptive Acts or Practices (N.Y. Gen. Bus. Law § 349 and 350))**</u>

448.     This claim is brought on behalf of Plaintiff Lemon Auto Sales, Inc. and the New York Statewide Non-Consumer Class (the "New York Class") against Takata and Honda Defendants (collectively, for the purposes of this Claim, "Defendants").

449.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

450.     The New York Class members are "person[s]" within the meaning of New York General Business Law ("New York GBL"), N.Y. Gen. Bus. Law § 349(h).

451.     Defendants are "person[s]," "firm[s]," "corporation[s]," or "association[s]" within the meaning of N.Y. Gen. Bus. Law § 349(b).

452.      The New York GBL makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. The Defendants conduct, as described above and below, constitutes "deceptive acts or practices" within the meaning of the New York GBL. Furthermore, the Defendants' deceptive acts and practices, which were intended to mislead consumers who were in the process of purchasing and/or leasing the Defective Vehicles, was conduct directed at consumers.

94

453.     The Defendants actions as set forth above and below occurred in the conduct of trade or commerce.

454.     In the course of their business, Defendants willfully failed to disclose and actively concealed the dangers and risks posed by the Takata airbags in the Defective Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or lease of Defective Vehicles.

455.     As alleged above, Defendants knew of the dangers and risks posed by the Takata airbags, while the New York Class was deceived by the Defendants' omissions into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer.

456.     Defendants knew or should have known that their conduct violated the New York GBL.

457.     As alleged above, the Defendants made material statements about the safety and reliability of Defective Vehicles that were either false or misleading.

458.     Defendants engaged in a deceptive trade practice when they failed to disclose material information concerning the Defective Vehicles and/or Takata airbags which they knew at the time of the sale/lease. Defendants knew of and deliberately withheld the information about the Takata airbags' propensity to release shrapnel upon deployment or otherwise malfunction in order to ensure that consumers would purchase their vehicles and to induce the consumer to enter into a transaction. To protect their profits and to avoid remediation costs and a public relations

nightmare, Defendants concealed the dangers and risks posed by the Takata airbags and their tragic consequences and allowed unsuspecting new and used car purchasers to continue to buy/lease the Defective Vehicles and allowed all Defective Vehicle owners/lessors to continue driving highly dangerous vehicles.

459.    Defendants each owed the New York Class a duty to disclose the defective nature of Defective Vehicles and/or dangers and risks posed by the Takata airbags, including the dangerous risk that the Takata airbags will release shrapnel upon deployment, because they:

(a)    Possessed exclusive knowledge of the defects rendering Defective Vehicles and/or Takata airbags inherently more dangerous and unreliable than similar vehicles;

(b)    Intentionally concealed the hazardous situation with Defective Vehicles and/or Takata airbags through their deceptive marketing campaign and recall program that they designed to hide the life-threatening problems from the New York Class; and/or

(c)    Made incomplete representations about the safety and reliability of Defective Vehicles and/or Takata airbags while purposefully withholding material facts from the New York Class that contradicted these representations.

460.    The Defective Vehicles and/or Takata airbags posed and/or pose an unreasonable risk of death or serious bodily injury to the New York Class, passengers, other motorists, pedestrians, and the public at large, because the Takata airbags are susceptible to releasing shrapnel upon deployment or other malfunctions.

461.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the New York Class, about the true safety and reliability of the Defective Vehicles and/or Takata airbags.

96

462.     The propensity of the Defective Vehicles' Takata airbags to emit shrapnel upon deployment or otherwise malfunction was material to the New York Class. Had the New York Class known that their vehicles had these serious safety dangers, risks and/or defects, they would either not have purchased their Defective Vehicles containing Takata airbags, or would have paid less for them than they did.

463.     All members of the New York Class suffered ascertainable loss caused by the Defendants' failure to disclose material information. The New York Class overpaid for their vehicles and did not receive the benefit of their bargain – vehicles containing airbags that did not pose safety risks.  As the result of the existence of, the concealment of and the failure to remedy the dangers and risks posed by the Takata airbags and Defective Vehicles, and the piecemeal and serial nature of the recalls, the value of their Defective Vehicles was and is diminished. This is particularly true now that the safety issues with the Takata airbags in the Defective Vehicles have come to light, and the New York Class own and lease unsafe vehicles.

464.     Members of the New York Class have been proximately and directly damaged by Defendants' misrepresentations, concealment, and non-disclosure of the dangers and risks posed by the Takata airbags in the Defective Vehicles, as they now are holding vehicles whose value was and is greatly diminished because of the dangers and risks posed by the Defective Vehicles and/or Takata airbags  The diminishment of the Defective Vehicles' value was exacerbated by the Defendants' failure to timely disclose and remedy the dangers and risks posed by the Takata airbags.  Defendants' egregious and widely-publicized conduct and the never-ending and piecemeal nature of Defendants' recalls have so tarnished the Defective Vehicles that no reasonable consumer would purchase them—let alone pay what would otherwise be fair market value for the vehicles.

465.    The New York Class Members risk irreparable injury as a result of the Defendants' acts and omissions in violation of the New York GBL, and these violations present a continuing risk to the New York Class as well as to the general public. The Defendants' unlawful acts and practices complained of herein affect the public interest.

466.    The recalls and repairs instituted by Defendants have not been adequate. The recall is not an effective remedy and is not offered for all Defective Vehicles and other vehicles with Takata airbags susceptible to the malfunctions described herein.

467.    As a direct and proximate result of the Defendants' violations of the New York GBL, the Oregon Class has suffered injury-in-fact and/or actual damage.

468.    New York Class members seek punitive damages against Defendants because their conduct was egregious. The Defendants misrepresented the safety and reliability of millions of Takata airbags in millions of vehicles, deceived Class members on life-or-death matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting the serious flaw in its culture and in millions of vehicles with Takata airbags. The Defendants' egregious conduct warrants punitive damages.

469.    Because the Companies' willful and knowing conduct caused injury to Class members, the New York Class seeks recovery of actual damages or $50, whichever is greater, discretionary treble damages up to $1,000, punitive damages, reasonable attorneys' fees and costs, an order enjoining Defendants' deceptive conduct, and any other just and proper relief available under N.Y. Gen. Bus. Law § 349.

## TWENTY-FOURTH CLAIM FOR RELIEF

## ON BEHALF OF THE NEW YORK STATEWIDE CLASS

## (Breach of Implied Warranty of Merchantability (N.Y. U.C.C. § 2-314))

470.     In the event the Court declines to certify a Nationwide class, this claim is brought on behalf of Plaintiff Lemon Auto Sales, Inc. and the New York Statewide Non-Consumer Class (the "New York Class") against Takata and Honda Defendants (collectively, for the purposes of this Claim, "Defendants").

471.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

472.     Defendants are merchants with respect to motor vehicles and/or Takata airbags.

473.     A warranty that the Defective Vehicles and/or Takata airbags therein were in merchantable condition was implied by law in the transactions when the New York Class purchased their Defective Vehicles.

474.     These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Vehicles are inherently defective in that the Takata airbags therein are at risk of expelling shrapnel upon deployment or otherwise malfunctioning.

475.     For the reasons stated in this Complaint, the Defective Vehicles and/or the Takata airbags sold by Defendants are a "things of danger," in that they are of such a character that when used for the purpose for which they are made they are likely to be a source of danger to several or many people if not properly designed and fashioned.

476.     Defendants were provided notice of these issues by their knowledge of the issues, prior complaints filed against them and/or others, and internal investigations. Notice of these issues is being given by the New York Class through this Complaint before or within a

reasonable amount of time after Defendants issued the recalls and warnings and the allegations of vehicle defects became public.

477.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, the New York Class has been damaged in an amount to be proven at trial.

### TWENTY-FIFTH CLAIM FOR RELIEF

### ON BEHALF OF THE NEW YORK STATEWIDE CLASS

### (Fraud by Concealment)

478.    In the event the Court declines to certify a Nationwide class, this claim is brought under New York law on behalf of Plaintiff Lemon Auto Sales, Inc. and the New York Statewide Non-Consumer Class (the "New York Class") against Takata and Honda Defendants (collectively, for the purposes of this Claim, "Defendants").

479.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint

480.    As described above, Defendants made material omissions and affirmative misrepresentations regarding the Defective Vehicles and/or Takata airbags.

481.    The Defendants knew these representations were false when made.

482.    The vehicles purchased or leased by the New York Class were, in fact, defective, unsafe and unreliable, because the vehicles' Takata airbags were subject to releasing shrapnel upon deployment or other malfunctions.

483.    The Defendants had a duty to disclose that these vehicles and the Takata airbags therein were defective, unsafe and unreliable in that the Takata airbags vehicles were subject to releasing shrapnel upon deployment or other malfunctions, because the New York Class relied on the Defendants' representations that the vehicles they were purchasing and retaining were safe and free from defects.

484.     The aforementioned concealment was material, because if it had been disclosed the New Jersey Class would not have bought, leased or retained their vehicles.

485.     The aforementioned representations were also material because they were facts that would typically be relied on by a person purchasing, leasing or retaining a new or used motor vehicle. The Defendants knew or recklessly disregarded that their representations were false because they knew that people had died and had been injured as the result of the vehicles' Takata airbags. The Defendants intentionally made the false statements in order to sell vehicles and avoid the expense and public relations nightmare of a recall.

486.     The New York Class relied on the Defendants' reputations—along with their failure to disclose the Takata airbag's dangers and problems and the Defendants' affirmative assurance that its vehicles and/or airbags were safe and reliable and other similar false statements—in purchasing, leasing or retaining the Defective Vehicles.

487.     As a result of their reliance, the New York Class has been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

488.     The Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of the New York Class. The New York Class is therefore entitled to an award of punitive damages.

## TWENTY-SIXTH CLAIM FOR RELIEF

## ON BEHALF OF THE NEW YORK STATEWIDE CLASS

### (False Advertising (N.Y. Gen. Bus. Law § 350))

489.     This claim is brought on behalf of Plaintiff Lemon Auto Sales, Inc. and the New York Statewide Non-Consumer Class (the "New York Class") against Takata and Honda. Defendants (collectively, for the purposes of this Claim, "Defendants").

101

490.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint

491.    Defendants have been and/or are engaged in the "conduct of…business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

492.    New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity... if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of... representations [made] with respect to the commodity...." N.Y. Gen. Bus. Law § 350-a.

493.    Defendants caused to be made or disseminated through New York, through advertising, marketing and other publications, statements that were untrue or misleading, and that were known, or which by the exercise of reasonable care should have been known to them, to be untrue and misleading to consumers and New York Class.

494.    Defendants have violated § 350 because the misrepresentations and omissions regarding the Takata airbags' dangers and risks, as set forth above, were material and likely to deceive a reasonable consumer.

495.    The New York Class has suffered an injury, including the loss of money or property, as a result of Defendants' false advertising. In purchasing or leasing their vehicles, the New York Class relied on the misrepresentation and/or omissions relating to the safety and reliability of the Defective Vehicles and/or Takata airbags in their vehicles. Those representations were false and/or misleading because the Takata airbags may release shrapnel upon deployment or otherwise malfunction.  Had the New York Class known this, they would

not have purchased or leased their Defective Vehicles with Takta airbags and/or paid as much for them.

496.    Pursuant to N.Y. Gen. Bus. Law § 350-e, the New York Class seeks monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 each for each New York Class Member. Because the conduct was committed willfully and knowingly, the New York Class is entitled to recover three times actual damages, up to $10,000, for each New York Class Member.

497.    The New York Class also seeks an order enjoining the unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under N.Y. Gen. Bus. Law §§ 349–350.

## TWENTY-SEVENTH CLAIM FOR RELIEF

## ON BEHALF OF THE OREGON STATEWIDE CONSUMER CLASS

### (Violations of the Oregon Unlawful Trade Practices Act (Or. Rev. Stat. § 646.605, *et seq.*))

498.    This claim is brought on behalf of Plaintiffs Nathan Bordewich and Kathleen Wilkinson and the Oregon Statewide Consumer Class (the "Oregon Class") against the Takata, Acura/Honda, and Toyota Defendants (collectively, for the purposes of this Claim, "Defendants").

499.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

500.    Each of the Defendants is a person within the meaning of Or. Rev. Stat. § 646.605(4).

501.    The Defective Vehicles containing the Takata airbags at issue are "goods" obtained primarily for personal family or household purposes within the meaning of Or. Rev. Stat. § 646.605(6).

502.    The Defendants' actions as set forth above and below occurred in the conduct of trade or commerce.

503.    The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits a person from, in the course of the person's business, doing any of the following: "(e) Represent[ing] that…goods... have...characteristics...uses, benefits,...or qualities that [they] do not have; (g) Represent[ing] that...goods... are of a particular standard [or] quality…if they are of another; (i) Advertis[ing]... goods or services with intent not to provide [them] as advertised;" and "(u) engag[ing] in any other unfair or deceptive conduct in trade or commerce." Or. Rev. Stat. § 646.608(1).

504.    The Defendants engaged in unlawful trade practices, including representing that Defective Vehicles and/or the Takata airbags therein have characteristics, uses, benefits, and qualities which they do not have; representing that Defective Vehicles and/or Takata airbags therein are of a particular standard and quality when they are not; advertising Defective Vehicles and/or the Takata airbags therein with the intent not to sell them as advertised; and engaging in other unfair or deceptive acts.

505.    In the course of their business, Defendants willfully failed to disclose and actively concealed the dangers and risks posed by the Takata airbags in the Defective Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material

fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or lease of Defective Vehicles.

506.    As alleged above, Defendants knew of the dangers and risks posed by the Takata airbags, while the Oregon Class was deceived by the Defendants' omissions into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer.

507.    Defendants knew or should have known that their conduct violated the Oregon UTPA.

508.    As alleged above, the Defendants made material statements about the safety and reliability of Defective Vehicles that were either false or misleading.

509.    Defendants engaged in a deceptive trade practice when they failed to disclose material information concerning the Defective Vehicles and/or Takata airbags which they knew at the time of the sale/lease. Defendants knew of and deliberately withheld the information about the Takata airbags' propensity to release shrapnel upon deployment or otherwise malfunction in order to ensure that consumers would purchase their vehicles and to induce the consumer to enter into a transaction. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Takata airbags and their tragic consequences and allowed unsuspecting new and used car purchasers to continue to buy/lease the Defective Vehicles and allowed all Defective Vehicle owners/lessors to continue driving highly dangerous vehicles.

510.    Defendants each owed the Oregon Class a duty to disclose the defective nature of Defective Vehicles and/or dangers and risks posed by the Takata airbags, including the dangerous risk that the Takata airbags will release shrapnel upon deployment, because they:

(a)     Possessed exclusive knowledge of the defects rendering Defective Vehicles and/or Takata airbags inherently more dangerous and unreliable than similar vehicles;

(b)     Intentionally concealed the hazardous situation with Defective Vehicles and/or Takata airbags through their deceptive marketing campaign and recall program that they designed to hide the life-threatening problems from the Oregon Class; and/or

(c)     Made incomplete representations about the safety and reliability of Defective Vehicles and/or Takata airbags while purposefully withholding material facts from the Oregon Class that contradicted these representations.

511.    The Defective Vehicles and/or Takata airbags posed and/or pose an unreasonable risk of death or serious bodily injury to the Oregon Class, passengers, other motorists, pedestrians, and the public at large, because the Takata airbags are susceptible to releasing shrapnel upon deployment or other malfunctions.

512.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Oregon Class, about the true safety and reliability of the Defective Vehicles and/or Takata airbags.

513.    The propensity of the Defective Vehicles' Takata airbags to emit shrapnel upon deployment or otherwise malfunction was material to the Oregon Class. Had the Oregon Class known that their vehicles had these serious safety dangers, risks and/or defects, they would either not have purchased their Defective Vehicles containing Takata airbags, or would have paid less for them than they did.

514.    All members of the Oregon Class suffered ascertainable loss caused by the Defendants' failure to disclose material information. The Oregon Class overpaid for their

vehicles and did not receive the benefit of their bargain – vehicles containing airbags that did not pose safety risks.  As the result of the existence of, the concealment of and the failure to remedy the dangers and risks posed by the Takata airbags and Defective Vehicles, and the piecemeal and serial nature of the recalls, the value of their Defective Vehicles was and is diminished. This is particularly true now that the safety issues with the Takata airbags in the Defective Vehicles have come to light, and the Oregon Class own and lease unsafe vehicles.

515.    Members of the Oregon Class have been proximately and directly damaged by Defendants' misrepresentations, concealment, and non-disclosure of the dangers and risks posed by the Takata airbags in the Defective Vehicles.  They own and lease vehicles whose value has greatly diminished.  The diminishment of the Defective Vehicles' value was exacerbated by the Defendants' failure to timely disclose and remedy the dangers and risks posed by the Takata airbags.  Defendants' egregious and widely-publicized conduct and the never-ending and piecemeal nature of Defendants' recalls have so tarnished the Defective Vehicles that no reasonable consumer would purchase them—let alone pay what would otherwise be fair market value for the vehicles.

516.    The Oregon Class Members risk irreparable injury as a result of the Defendants' acts and omissions in violation of the Oregon UTPA, and these violations present a continuing risk to the Oregon Class as well as to the general public. The Defendants' unlawful acts and practices complained of herein affect the public interest.

517.    The recalls and repairs instituted by Defendants have not been adequate. The recall is not an effective remedy and is not offered for all Defective Vehicles and other vehicles with Takata airbags susceptible to the malfunctions described herein.

518.    As a direct and proximate result of the Defendants' violations of the Oregon UTPA, the Oregon Class has suffered injury-in-fact and/or actual damage.

519.    The Oregon Class is entitled to recover the greater of actual damages or $200 pursuant to OR. Rev. Stat. § 646.638(1). The Oregon Class is also entitled to punitive damages because the Defendants engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

520.    Pursuant to OR. Rev. Stat. § 646.638(2), Plaintiffs will mail a copy of the complaint to Oregon's attorney general.

## TWENTY-EIGHTH CLAIM FOR RELIEF

## ON BEHALF OF THE OREGON STATEWIDE CONSUMER CLASS

### (Fraud by Concealment)

521.    In the event that the Court declines to certify a Nationwide Class under Michigan law, this claim is brought on behalf the Oregon Class under Oregon law against the Takata, Acura/Honda, and Toyota Defendants (collectively, for the purposes of this Claim, "Defendants").

522.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

523.    As described above, Defendants made material omissions and affirmative misrepresentations regarding the Defective Vehicles and/or Takata airbags.

524.    The Defendants knew these representations were false when made.

525.    The vehicles purchased or leased by the Oregon Class were, in fact, defective, unsafe and unreliable, because the vehicles' Takata airbags were subject to releasing shrapnel upon deployment or other malfunctions.

526.     The Defendants had a duty to disclose that these vehicles and the Takata airbags therein were defective, unsafe and unreliable in that the Takata airbags vehicles were subject to releasing shrapnel upon deployment or other malfunctions, because the Oregon Class relied on the Defendants' representations that the vehicles they were purchasing and retaining were safe and free from defects.

527.     Once Defendants made representations to the public about safety, they was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

528.     Defendants had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendants who had superior knowledge and access to the facts, and Defendants knew they were not known to or reasonably discoverable by Plaintiffs and the Oregon Class.

529.     The aforementioned concealment was material, because if it had been disclosed the Oregon Class would not have bought, leased or retained their vehicles. The omitted facts were material because they directly impact the safety of the Defective Vehicles.

530.     The aforementioned representations were also material because they were facts that would typically be relied on by a person purchasing, leasing or retaining a new or used motor vehicle. The Defendants knew or recklessly disregarded that their representations were false because they knew that people had died and had been injured as the result of the vehicles' Takata airbags. The Defendants intentionally made the false statements in order to sell vehicles and avoid the expense and public relations nightmare of a recall.

531.    The Oregon Class relied on the Defendants' reputations—along with their failure to disclose the Takata airbag's dangers and problems and the Defendants' affirmative assurance that its vehicles and/or airbags were safe and reliable and other similar false statements—in purchasing, leasing or retaining the Defective Vehicles.

532.    The Oregon Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The Oregon Class' actions were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public or the Oregon Class.

533.    As a result of the concealment and/or suppression of the facts, the Oregon Class sustained damage. For those Oregon Class members who elect to affirm the sale, these damages, include the difference between the actual value of that which the Oregon Class paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. Those who want to rescind their purchases are entitled to restitution and consequential damages.

534.    The Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the Oregon Class' rights and well-being to enrich the Companies. The Companies' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## TWENTY-NINTH CLAIM FOR RELIEF

## ON BEHALF OF THE PUERTO RICO CONSUMER CLASS

## (Breach of Implied Warranty (32 L.P.R.A. §§ 3841, 3843))

535.    In the event the Court declines to certify a Nationwide Class under Michigan law, this claim is brought under Puerto Rico Law on behalf of Plaintiff  Hayden  Masini and the Puerto Rico Consumer Class (the "Puerto Rico Class") against the Takata and Honda Defendants (collectively, for the purposes of this Claim, "Defendants").

536.    Plaintiffs  hereby  incorporate  by  reference  the  allegations  contained  in  the preceding paragraphs of this Complaint.

537.    Defendants  were  and/or  are  in  the  business  of  manufacturing  and/or  supplying and/or placing into the stream of commerce the Defective Vehicles and Takata airbags therein for the use by consumers such as Puerto Rico Class Members.

538.    Members  of  the  Puerto  Rico  Class  were  foreseeable  users  of  the  Defective Vehicles and/or Takata airbags.

539.    Defendants impliedly warranted that the vehicles and the Takata airbags therein were  of  good  and  merchantable  quality  and  fit,  and  safe  for  their  ordinary  intended  use— transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

540.    These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Vehicles are inherently defective in that the Takata airbags therein are at risk of expelling shrapnel upon deployment or otherwise malfunctioning.

541.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Puerto Rico Class members have been damaged in an amount to be proven at trial, including rescission and/or diminution in value.

## THIRTIETH CLAIM FOR RELIEF

## ON BEHALF OF THE PUERTO RICO CONSUMER CLASS

### (Fraud by Concealment)

542.     In the event the Court declines to certify a Nationwide Class under Michigan law, this claim is brought under Puerto Rico law on behalf of the Puerto Rico Class against the Takata and Honda Defendants (collectively, for the purposes of this Claim, "Defendants").

543.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

544.     As described above, Defendants made material omissions and affirmative misrepresentations regarding the Defective Vehicles and/or Takata airbags.

545.     The Defendants knew these representations were false when made.

546.     The vehicles purchased or leased by the Puerto Rico Class were, in fact, defective, unsafe and unreliable, because the vehicles' Takata airbags were subject to releasing shrapnel upon deployment or other malfunctions.

547.     The Defendants had a duty to disclose that these vehicles and the Takata airbags therein were defective, unsafe and unreliable in that the Takata airbags vehicles were subject to releasing shrapnel upon deployment or other malfunctions, because the Puerto Rico Class relied on the Defendants' representations that the vehicles they were purchasing and retaining were safe.

548.    The aforementioned concealment was material, because if it had been disclosed the Puerto Rico Class would not have bought, leased or retained their vehicles, or would have paid less for the vehicles.

549.    The aforementioned representations were also material because they were facts that would typically be relied on by a person purchasing, leasing or retaining a new or used motor vehicle. The Defendants knew or recklessly disregarded that their representations were false because they knew that people had died and had been injured as the result of the vehicles' Takata airbags. The Defendants intentionally made the false statements in order to sell vehicles and avoid the expense and public relations nightmare of a recall.

550.    The Puerto Rico Class relied on the Defendants' reputations—along with their failure to disclose the Takata airbag's dangers and problems and the Defendants' affirmative assurance that its vehicles and/or airbags were safe and reliable and other similar false statements—in purchasing, leasing or retaining the Defective Vehicles.

551.    As a result of their reliance, the Puerto Rico Class has been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

552.    The Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of the Puerto Rico Class.

## THIRTY-FIRST CLAIM FOR RELIEF

## ON BEHALF OF THE TEXAS STATEWIDE CONSUMER CLASS

### (Violations of the Texas Deceptive Trade Practices – Consumer Protection Act  (Tex. Bus. & Com. Code §§ 14.41, et seq.))

553.    This claim is brought on behalf of Plaintiff Nancy Barnett and the Texas Statewide Consumer Class (the "Texas Class") against the Takata and Ford Defendants (collectively, for the purposes of this Claim, "Defendants").

554.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

555.    Members of the Texas Class are individuals, partnerships, and corporations with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets). See Tex. Bus. & Com. Code§ 17.41,

556.    The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and an "unconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code § 17.45(5); Tex. Bus. & Com. Code § 17.50(a)(3). The Defendants have committed false, misleading, unconscionable and deceptive acts or practices in the conduct of trade or commerce.

557.    The Defendants also violated the Texas DTPA by (1) representing that the Defective Vehicles and/or Takata airbags have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Defective Vehicles and/or Takata airbags are of a particular standard, quality, and grade when they are not; (3) advertising the Defective Vehicles

114

and/or Takata airbags with the intent not to sell them as advertised; and (4) failing to disclose information concerning the Defective Vehicles and/or Takata airbags with the intent to induce consumers to purchase or lease the Defective Vehicles.

558.    In the course of their business, Defendants willfully failed to disclose and actively concealed the dangers and risks posed by the Takata airbags in the Defective Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or lease of Defective Vehicles.

559.    As alleged above, Defendants knew of the dangers and risks posed by the Takata airbags, while the Texas Class was deceived by the Defendants' omissions into believing the Defective Vehicles were safe, and the information could not have reasonably been known by the consumer.

560.    Defendants knew or should have known that their conduct violated the Texas DTPA.

561.    As alleged above, the Defendants made material statements about the safety and reliability of Defective Vehicles that were either false or misleading.

562.    Defendants engaged in a deceptive trade practice when they failed to disclose material information concerning the Defective Vehicles and/or Takata airbags which they knew at the time of the sale/lease. Defendants knew of and deliberately withheld the information about the Takata airbags' propensity to release shrapnel upon deployment or otherwise malfunction in order to ensure that consumers would purchase their vehicles and to induce the consumer to enter

into a transaction. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Takata airbags and their tragic consequences and allowed unsuspecting new and used car purchasers to continue to buy/lease the Defective Vehicles and allowed all Defective Vehicle owners/lessors to continue driving highly dangerous vehicles.

563.    Defendants each owed the Texas Class members a duty to disclose the defective nature of Defective Vehicles and/or dangers and risks posed by the Takata airbags, including the dangerous risk that the Takata airbags will release deadly shrapnel upon deployment, because they:

a.    Possessed exclusive knowledge of the defects rendering Defective Vehicles and/or Takata airbags inherently more dangerous and unreliable than similar vehicles;

b.    Intentionally concealed the hazardous situation with Defective Vehicles and/or Takata airbags through their deceptive marketing campaign and recall program that they designed to hide the life-threatening problems from the Texas Class; and/or

c.    Made incomplete representations about the safety and reliability of Defective Vehicles and/or Takata airbags while purposefully withholding material facts from the Texas Class that contradicted these representations.

564.    Defective Vehicles and/or Takata airbags posed and/or pose an unreasonable risk of death or serious bodily injury to the Texas Class, passengers, other motorists, pedestrians, and the public at large, because the Takata airbags are susceptible to releasing shrapnel upon deployment or other malfunctions.

565.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Texas Class, about the true safety and reliability of the Defective Vehicles and/or Takata airbags.

566.   The propensity of the Defective Vehicles' Takata airbags to emit shrapnel upon deployment or otherwise malfunction was material to the Texas Class. Had the Texas Class known that their vehicles had these serious safety dangers, risks and/or defects, they would either not have purchased their Defective Vehicles containing Takata airbags, or would have paid less for them than they did.

567.   All members of the Texas Class suffered ascertainable loss caused by the Defendants' failure to disclose material information. The Texas Class overpaid for their vehicles and did not receive the benefit of their bargain – vehicles containing airbags that did not pose safety risks.  As the result of the existence of, the concealment of and the failure to remedy the dangers and risks posed by the Takata airbags and Defective Vehicles, and the piecemeal and serial nature of the recalls, the value of their Defective Vehicles was and is diminished. This is particularly true now that the safety issues with the Takata airbags in the Defective Vehicles have come to light, and the Texas Class own and lease unsafe vehicles.

568.   Members of the Texas Class have been proximately and directly damaged by Defendants' misrepresentations, concealment, and non-disclosure of the dangers and risks posed by the Takata airbags in the Defective Vehicles.  They own and lease vehicles whose value has greatly diminished.  The diminishment of the Defective Vehicles' value was only exacerbated by the Defendants' failure to timely disclose and remedy the dangers and risks posed by the Takata airbags.  Defendants' egregious and widely-publicized conduct and the never-ending and piecemeal nature of Defendants' recalls have so tarnished the Defective Vehicles that no

reasonable consumer would purchase them—let alone pay what would otherwise be fair market value for the vehicles.

569.     The Texas Class Members risk irreparable injury as a result of the Defendants' acts and omissions in violation of the Texas DTPA, and these violations present a continuing risk to the Texas Class as well as to the general public. The Defendants' unlawful acts and practices complained of herein affect the public interest.

570.     The recalls and repairs instituted by Defendants have not been adequate. The recall is not an effective remedy and is not offered for all Defective Vehicles and other vehicles with Takata airbags susceptible to the malfunctions described herein.

571.     As a direct and proximate result of the Defendants' violations of the Texas DTPA, the Texas Class has suffered injury-in-fact and/or actual damage.

572.     As a direct and proximate result of the Companies' violations of the Texas DTPA, Texas Class members have suffered injury-in-fact and/or actual damage.

573.     Pursuant to Tex. Bus. & Com. Code § 17.50(a)(1) and (b), the Texas Class seeks monetary relief against Defendants measured as actual damages in an amount to be determined at trial, treble damages for the Defendants' knowing violations of the Texas DTPA, and any other just and proper relief available under the Texas DTPA.

574.     For those Texas Class members who wish to rescind their purchases, they are entitled under Tex. Bus. & Com. Code § 17.50(b)(4) to rescission and other relief necessary to restore any money or property that was acquired from them based on violations of the Texas DTPA.

575.     The Texas Class also seeks court costs and attorneys' fees under § 17.50(d) of the Texas DTPA.

576.    Compliance with the notice requirement set forth in Tex. Bus. & Com. Code § 17.505(a) is rendered impracticable for numerous reasons, including, but not limited to, the need to file suit before the potential expiration of the statute of limitations.

577.    Upon filing this Complaint and as required by Tex. Bus. & Com. Code § 17.501, Plaintiffs will provide the consumer protection division of the Attorney General's office a copy of a copy of the complaint.

## THIRTY-SECOND CLAIM FOR RELIEF

## ON BEHALF OF THE TEXAS STATEWIDE CONSUMER CLASS

### (Breach of the Implied Warranty of Merchantability (Tex. Bus. & Com. Code §2.314))

578.    In the event the Court declines to certify a nationwide Class under Michigan law, this claim is brought on behalf of the Texas Class against the Takata and Ford Defendants (collectively, for the purposes of this Claim, "Defendants").

579.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

580.    Defendants were and/or are merchants with respect to motor vehicles and/or Takata airbags under Tex. Bus. & Com. Code § 2.104.

581.    Under Tex. Bus. & Com. Code § 2.314, a warranty that the Defective Vehicles were in merchantable condition was implied by law in the transactions in which Texas Class members purchased their Defective Vehicles.

582.    Defendants impliedly warranted that the vehicles and the Takata airbags therein were of good and merchantable quality and fit, and safe for their ordinary intended use— transporting the driver and passengers in reasonable safety during normal operation, and without unduly endangering them or members of the public.

583. These vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, the Defective Vehicles are inherently defective in that the Takata airbags therein are at risk of expelling shrapnel upon deployment or otherwise malfunctioning.

584. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Texas Class members have been damaged in an amount to be proven at trial.

### THIRTY-THIRD CLAIM FOR RELIEF

### ON BEHALF OF THE TEXAS STATEWIDE CONSUMER CLASS

### (Fraud by Concealment)

585. In the event the Court declines to certify a nationwide Class under Michigan law, this claim is brought under Texas law on behalf of the Texas Class against the Takata and Ford Defendants (collectively, for the purposes of this Claim, "Defendants").

586. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

587. As described above, Defendants made material omissions and affirmative misrepresentations regarding the Defective Vehicles and/or Takata airbags.

588. The Defendants knew these representations were false when made.

589. The vehicles purchased or leased by the Texas Class were, in fact, defective, unsafe and unreliable, because the vehicles' Takata airbags were subject to releasing shrapnel upon deployment or other malfunctions.

590. The Defendants had a duty to disclose that these vehicles and the Takata airbags therein were defective, unsafe and unreliable in that the Takata airbags vehicles were subject to releasing shrapnel upon deployment or other malfunctions, because the Texas Class relied on the Defendants' representations that the vehicles they were purchasing and retaining were safe.

591.    The aforementioned concealment was material, because if it had been disclosed the Texas Class would not have bought, leased or retained their vehicles, or would have paid less for the vehicles.

592.    The aforementioned representations were also material because they were facts that would typically be relied on by a person purchasing, leasing or retaining a new or used motor vehicle. The Defendants knew or recklessly disregarded that their representations were false because they knew that people had died and had been injured as the result of the vehicles' Takata airbags. The Defendants intentionally made the false statements in order to sell vehicles and avoid the expense and public relations nightmare of a recall.

593.    The Texas Class relied on the Defendants' reputations—along with their failure to disclose the Takata airbag's dangers and problems and the Defendants' affirmative assurance that its vehicles and/or airbags were safe and reliable and other similar false statements—in purchasing, leasing or retaining the Defective Vehicles.

594.    As a result of their reliance, the Texas Class has been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their vehicles.

595.    The Defendants' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of the Texas Class. The Texas Class is therefore entitled to an award of punitive damages.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against the Defendants, as follows:

A.      an order certifying the proposed Classes designating Plaintiffs as the named representatives of the Classes, and designating the undersigned as Class Counsel;

B.      a declaration that the airbags in Defective Vehicles are defective;

C.      a declaration that the Defendants are financially responsible for notifying all Class Members about the defective nature of the Defective Vehicles;

D.      an order enjoining Defendants to desist from further deceptive distribution, sales, and lease practices with respect to the Defective Vehicles, and directing Defendants to permanently, expeditiously, and completely repair the Defective Vehicles to eliminate the defective airbags;

E.      an award to Plaintiffs and Class Members of compensatory, exemplary, and statutory penalties, damages, including interest, in an amount to be proven at trial;

F.      a declaration that the Defendants must disgorge, for the benefit of Plaintiff and Class Members, all or part of the ill-gotten profits it received from the sale or lease of the Defective Vehicles, or make full restitution to Plaintiffs and Class Members;

G.      an award of attorneys' fees and costs, as allowed by law;

H.      an award of attorneys' fees and costs;

I.      an award of pre-judgment and post-judgment interest, as provided by law;

J.      leave to amend this Complaint to conform to the evidence produced at trial; and

K.      such other relief as may be appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

DATED: October 27, 2014

**PODHURST ORSECK, P.A.**

122

/s/ Peter Prieto
PETER PRIETO (FL Bar No. 501492)
JOHN GRAVANTE III (FL Bar No. 617113)
MATTHEW WEINSHALL (FL Bar No. 84783)
25 West Flagler Street, Suite 800
Miami, Florida 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
pprieto@podhurst.com
jgravante@podhurst.com
mweinshall@podhurst.com


**LABATON SUCHAROW LLP**
LAWRENCE A. SUCHAROW (seeking *pro hac vice* admission)
CHRISTOPHER J. KELLER (seeking *pro hac vice* admission)
MARTIS ALEX (seeking *pro hac vice* admission)
ERIC J. BELFI (seeking *pro hac vice* admission)
MICHAEL W. STOCKER (seeking *pro hac vice* admission)
GREGORY S. ASCIOLLA (seeking *pro hac vice* admission)
140 Broadway
New York, NY 10005
Tel: (212)-907-0700
Fax: (212)-818-0477
lsucharow@labaton.com
ckeller@labaton.com
malex@labaton.com
ebelfi@labaton.com
mstocker@labaton.com
gasciolla@labaton.com

**BARON & BUDD, P.C.**
ROLAND TELLIS (seeking *pro hac vice*
admission)
MARK PIFKO (seeking *pro hac vice* admission)
DAVID FERNANDES (seeking *pro hac vice*
admission)
15910 Ventura Blvd., Suite 1600
Encino, CA 91403
Tel: 818-839-2333
Facsimile: 818-986-9698

**BARON & BUDD, P.C.**
J. BURTON LEBLANC (seeking *pro hac vice*
admission)
9015 Bluebonnet Blvd
Baton Rouge, LA 70810
Tel: 225- 761-6463
Fax: 225-927-5449

**THE DUDENHEFER LAW FIRM, L.L.C.**
FRANK C. DUDENHEFER, JR. (seeking *pro
hac vice* admission)
5200 St. Charles Ave.
New Orleans, Louisiana 70115
Phone: (504) 616-5226

*Counsel for Plaintiffs and the Proposed Classes*

124