```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF FLORIDA
                        MIAMI DIVISION
                 CASE NO. 14-24009-CV-JLK

CRAIG DUNN, et al.,

                      Plaintiffs,      OCTOBER 30, 2014
                                       9:37 A.M.


    vs.


TAKATA CORPORATION, et al.,

                      Defendants.      PAGES 1 THROUGH 17
```
___

```
              TRANSCRIPT OF HEARING ON MOTIONS
          BEFORE THE HONORABLE JAMES LAWRENCE KING
                UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:    Mr. Peter Prieto, Esq.
                      PODHURST ORSECK, P.A.
                      25 West Flagler Street
                      Suite 800
                      Miami, FL  33130

                      Ms. Martis Alex, Esq.
                      LABATON SUCHAROW
                      140 Broadway
                      New York, NY  10005

                      Mr. Roland Tellis, Esq.
                      BARON & BUDD
                      Encino Plaza
                      15910 Ventura Blvd., Suite 1600
                      Encino, CA  91436


FOR THE DEFENDANT:    Mr. Thomas Scott, Esq.
                      Mr. Richard Cole, Esq.
                      COLE, SCOTT & KISSANE
                      9150 South Dadeland Boulevard, Suite 1400
                      Miami, FL  33156
```

1        (Open Court, 9:37 a.m.)

2            THE COURT: Thank you. Be seated, please. All right.
3   Our 9:30 hearing involves the matter of Craig Dunn and others
4   versus Takata Corporation and others. This is an emergency
5   hearing scheduled or requested by counsel for the plaintiffs
6   and it was prior to service upon the defendants. However, I am
7   aware that either the plaintiffs have notified the lawyers for
8   the defense and/or whatever, but I know that there are
9   attorneys here for the defendants or some of them and on, of
10  course, extremely short notice on both sides.

11           I set the matter yesterday for a prompt hearing to
12  have the plaintiffs explain why they needed this expedited
13  discovery. I am of course pleased to see that the defendants
14  received notice and are here. Obviously, judges much prefer to
15  have both sides here. It's very unusual, but if we're talking
16  about some expedited discovery and all that sort of thing, I
17  wanted to find out what we were talking about, so we scheduled
18  it even before the service had been effected.

19           So now I will ask you to announce your appearances for
20  both sides. We'll start with the plaintiffs.

21           MR. PRIETO: Good morning, Your Honor. Peter Prieto,
22  of Podhurst Orseck, and with me is Martis Alex of Labaton
23  Sucharow and Roland Tellis of Baron & Budd.

24           THE COURT: Good morning.

25           MR. SCOTT: Good morning, Judge. Tom Scott and

1    Richard Cole of Cole, Scott & Kissane.  We are here today
2    making a limited appearance on behalf of American Honda Motor
3    Company, reserving jurisdiction.  My client was literally
4    served yesterday, but we're here for the purposes of addressing
5    the Court on this matter.
6              THE COURT:  Yes.
7              MR. SCOTT:  And we're the only defendant here, by the
8    way, Judge.
9              THE COURT:  Okay.  Well, I thank you and Mr. Cole for
10   coming over under the short notice, the circumstances, on the
11   status that we find ourselves here.  It's helpful to have
12   someone here to express whatever view there may be for the
13   single defendant.
14             So, Mr. Prieto, simply advising you for your
15   information, or all counsel, I have read and reviewed your
16   papers.  I have not seen any, if any have been filed -- all
17   right, Mr. Cole is indicating to me that apparently I have read
18   whatever has been filed here, which is from the plaintiff.
19             So, Mr. Prieto, if you'll step up to the -- they've
20   got a whole new elaborate system here just for me and my
21   hearing, and I keep forgetting to put this thing on, but it
22   helps me hear you.  It's wonderful.  The clerk did this for me,
23   they're very thoughtful, but if I don't use it, it doesn't do
24   any good, does it?  Give me a chance to figure out how to turn
25   this thing on.

1      MR. PRIETO:  Absolutely, Your Honor.

2      THE COURT:  It tells me it's working.

3      MR. PRIETO:  We'll find out.

4      THE COURT:  Thank you.  Mr. Prieto, would you please
5 describe your case and why there is this somewhat
6 nontraditional motion to commence discovery along with the
7 service of a complaint.  Mr. Prieto.

8      MR. PRIETO:  Thank you, Your Honor.  Your Honor, this
9 case is a class action and it's based on a defect in air bags
10 that have been manufactured by Takata, a Japanese company.  The
11 defect is quite troubling and causes an issue of public safety.
12 The defect is that when an air bag is activated, what it's
13 supposed to do is to provide safety to the passengers by
14 inflating and preventing the passenger from hitting the
15 dashboard, the windshield.

16     What's happening with these defective air bags is
17 instead of inflating and protecting the passenger and the
18 occupants, the air bags are rupturing and expelling shrapnel
19 and metal debris towards the vehicle occupants and the drivers.
20 This case and the defect have caused considerable press
21 coverage around the country with this problem.

22     As a result of this problem, about 8 million cars
23 around the country have been recalled so that the air bags can
24 be replaced or fixed, most likely to be replaced because I
25 don't think there's a fix.

1           Florida seems to be the center of the problem because
2  apparently the defect in the canister that causes the air bag
3  to rupture is vulnerable to moisture.  So NHTSA, the National
4  Highway Transportation Safety Administration, has basically
5  focused on the recall in Florida and in Puerto Rico, places
6  where -- that are very humid, because they believe that that's
7  the cause of what's going wrong with these air bags.
8           I believe, Your Honor, if I've read correctly, that
9  Your Honor not only has this class action, but Your Honor also
10 has a personal injury case involving the same defect.  I
11 believe the plaintiff's name, I don't have the case number, the
12 plaintiff's name is Carmen Nunez.  I think that case --
13          THE COURT:  I'm aware of it.  Mr. Scott, as a former
14 judge in this court, will have the same amusement that I do.
15 He won't be familiar with what I'm about to tell you, which has
16 nothing to do with your case, this case, except to say that
17 there's a blind random assignment system in the court we've
18 used for years and years to assign cases out to judges, and
19 there are 18 active and myself, 19 judges taking a full
20 caseload in the court.  We get assignments.  There were two
21 cases filed within the last couple of days, 56 digits apart in
22 distribution, both of them assigned to this division of court
23 involving allegations of some aspect of the air bag problem, or
24 air bag defect problem, both of them assigned to me.
25          I do believe firmly that the clerk's office

1   distributes these evenly across the board.  It's set up in the
2   blind random.  The computer does it.  It is set so that nobody
3   can pick a judge or a lawyer can't or a judge can't or
4   whatever.  They just come to us in blind random chance
5   distributions.  But the idea in mind that every judge getting
6   one or two cases every day, and 18, 20 judges, the mathematical
7   probabilities, we figured out, was something like 4,000 to 1
8   against it if you were playing roulette at a gambling casino,
9   the odds are incredible that the same judge would get two cases
10  involving basically the same thing, and basically allegations
11  that, as you've referred to, involve, what did you say,
12  8 million cars?  In any event, it's an incredible mathematical
13  probability.
14          Having said all that, and I think Mr. Scott and I have
15  discussed this 20 years ago when I was chief judge and he was
16  one of our loyal marvelous right arms that supported everything
17  we were doing administratively, he'll understand this blind
18  random system.  This has nothing to do with your case.  You've
19  just gotten an old judge who is sitting here on his 44th
20  anniversary today listening to you.  So I got off onto that
21  because when you mentioned it, the mathematical probabilities
22  that that would happen with the distribution are pretty big.
23  But it did happen, so yes, I have two cases assigned to me.
24  Fine.  Yours is one of them.
25          MR. PRIETO:  Right.

```
 1              THE COURT:  Okay.  Enough of that.  I don't mean to
 2    take up all your time.
 3              MR. PRIETO:  Not a problem, Your Honor.  The other
 4    case is a personal injury action, individual.  This is a class
 5    action.
 6              THE COURT:  Are you or your firm involved in the other
 7    case?
 8              MR. PRIETO:  No, sir.
 9              THE COURT:  Oh, you're not.  Okay.
10              MR. PRIETO:  We're involved in this class action which
11    really focuses on the loss of value and the diminution in value
12    in these cars, and that's what we're going to be seeking in
13    this class action, as well as repair costs.
14              So that's essentially the nature of the case, Your
15    Honor.  It's a public safety issue because when these air bags
16    rupture, the damage that's caused by -- to the occupants and
17    the drivers is amazing.  In fact, when one of the -- one of the
18    few incidents or one of the several incidents involving these
19    ruptures that was investigated, the metal debris and shrapnel
20    had caused so much damage to the person that the authorities
21    initially believed that somebody had been murdered because she
22    was full of cuts as a result of the shrapnel entering her body,
23    her neck, her head.  So it's a pretty severe problem.  It's a
24    public safety concern and a huge problem.
25              I want to let Your Honor know that this is not the
```

1    only class action that's been filed in the country.  One has
2    been filed in California.  And we expect that because this is
3    such an important case, you know, with a lot of press coverage,
4    that other class actions are going to be filed around the
5    country.  What that means, Your Honor, as you well know, is
6    that there may likely be a request for an MDL, and I raise that
7    because I know Your Honor, from personal experience, has a lot
8    of experience with MDLs, and it may come a point when somebody
9    requests an MDL and Your Honor, based on the way you've handled
10   the checking overdraft MDL, may be a logical choice for an MDL,
11   and I raise that just so Your Honor knows.
12            THE COURT:  Well, that's nice of you to say, but
13   that's totally up to the MDL panel, the prestigious group of,
14   what is it, nine judges, and they make those decisions and
15   whatever they decide is what it is.  They're very careful to
16   put these class action cases where it is best in their judgment
17   for them to be tried, if they are class actions, and they
18   base -- there are a lot of factors that go into that.  But what
19   you're saying, just down to pure form, is that this case may
20   get transferred to some other court or they all may get
21   transferred here.  Fine.  I don't think it has a great deal to
22   do with the judge involved, but that's a factor as to whether
23   or not they believe they have time or this or that.
24            MR. PRIETO:  Right.
25            THE COURT:  But go ahead.  I didn't mean to interrupt

1    you.  Go ahead.  Now, really we need to focus on, why do we
2    need to depart from the traditional standard of service and
3    then opportunities to test with pleadings and the necessity,
4    perhaps, to have an immediate or a very prompt Rule 16
5    scheduling conference?  See, that's doable in this division of
6    court or in the Southern District.  I mean, anybody wanting a
7    very prompt scheduling conference to discuss discovery and all
8    that, that can be done as soon as the lawyers are all in the
9    case, the parties.
10          But here, you're suggesting, and I've read your
11   memorandum, but you're suggesting that, well, with the service
12   of the complaint you'd like to serve some documentary requests.
13   I understand you're not seeking to take depositions before the
14   lawyers get in on the other side, but focusing on that, why do
15   we need to deviate maybe only slightly, but from the speed, if
16   that's the right word, that we address the issues?
17          MR. PRIETO:  Your Honor, I think the short answer to
18   your question is we don't have to address the merits of our
19   request right now because I've spoken to Judge Scott, who I've
20   had the pleasure of trying two or three cases before when he
21   was a federal judge, and we have sort of an agreement and a
22   briefing schedule so that Your Honor has the appropriate
23   pleadings and eventually a hearing to determine whether our
24   request has merit or not.  We think it does have merit because
25   this is a public safety issue.

1            So what we were going to propose to Your Honor, since
2    American Honda is the only defendant present in the courtroom,
3    is that American Honda respond to our motion within seven
4    business days.  Then we would -- the other defendants who have
5    not been served with the motion respond within ten days of
6    receipt of the motion, of service on the motion, and then we
7    would have a short five days to reply, and then Your Honor
8    could schedule a hearing to address the merits of our motion.
9    And we were looking at our calendars and we would propose maybe
10   the week of December 1st.  Obviously, your calendar is a lot
11   more important than ours, but that would be, I think, a
12   reasonable schedule, Your Honor, and it would give everybody,
13   including the Court, the chance to really fully brief the
14   issues and address the merits of our motion.
15            THE COURT:  Okay.  Well, you have done what I expect
16   good, experienced lawyers to do.  You have resolved a number of
17   the issues.
18            Let me hear from Mr. Scott briefly.  He's come all the
19   way over here this morning, he and Mr. Cole.  Mr. Scott likes
20   to come, and that's not unusual for him to come over, but we're
21   really, I hesitate to say honored, that looks like I'm blessing
22   the defense with some compliment that I should share with both
23   sides.  But anyway, I'm glad to see Mr. Cole here.  I haven't
24   seen him in a while.
25            MR. SCOTT:  Your Honor, it's nice to be back in front

1  of the Court.  I hope the Court -- with the odds that you just
2  stood on, I hope you're playing the lottery a lot lately,
3  because seriously, that's one in --
4         THE COURT:  You knew what I was talking about, about
5  the odds.
6         MR. SCOTT:  I know.  It happens, I understand that.
7         THE COURT:  And we'd sit around here years ago, and
8  have done it throughout, judges are amused by these things, we
9  do believe in the blind randomness of it, it's not a suggestion
10 that the Court is trying to send a big case to Judge King or
11 any other judge, but the mathematical probabilities are
12 sometimes really amazing how they work.  I guess that's what
13 makes gambling so popular.
14        MR. SCOTT:  That's why I said to the Court, it's time
15 to start the lottery if you're not doing it because at least
16 you're on a run right now.
17        Judge, let me just briefly address the Court.  My
18 client was literally served either yesterday or the day before.
19 I was literally contacted at 6 o'clock last night, 5 o'clock,
20 Mr. Cole and I.  I have rearranged my schedule to be here.  I
21 have not really had an opportunity to speak to my client.  I
22 had a brief five-minute call.
23        I met with Mr. Prieto this morning, and I would also
24 point out that we're the only defendant here.  Some of the
25 defendants have not even been served yet.  Some of them may

1   have been served, I'm not sure, I don't know the status of
2   that.  So when I met with Mr. Prieto, I suggested that we use
3   this opportunity to set a scheduling, so that all the
4   defendants could be before the Court and have the opportunity
5   to be heard, at least from a minimum due process, and of course
6   he readily agreed to that.  He has laid out the schedule.  We
7   ask for seven business days to file a response to their motion.
8   We think there's a bona fide defense to this motion.  We think,
9   for example, that the National Highway Traffic Safety
10  Administration has primary jurisdiction, is already
11  investigating it.  But we can address those issues.  In our
12  brief, we can address those issues, but they're addressing this
13  right now and there's no need for an emergency.  But with that
14  said, I have suggested to him the time frame that he set up,
15  which is seven business days for American Honda Motor to
16  respond, ten days from service on the other defendants to
17  respond, and I have no problem with the Court setting a hearing
18  the first week of December on this matter.  I think it should
19  be at issue by that point and we can bring the issues before
20  the Court and argue the merits.  I think it's an appropriate
21  way.  I think it guarantees due process and I think it's a good
22  way of scheduling an orderly process, which I know this Court
23  is very fond of doing so that all the parties be heard.  That's
24  really all I have to say.  And I again thank you.
25              THE COURT:  Well, thank you, Mr. Scott.  And there's

1  no need, I'm sure, for a reply, Mr. Prieto.

2  This is excellent.  This is just about where I
3  tentatively thought, as I read through the pleadings this
4  morning, we would probably end up.  We certainly have to give
5  the parties an opportunity to be served and lawyers get in the
6  case and I knew that once that happened, which I assumed would
7  certainly take place probably, these are big companies and big
8  corporations, what have you, probably could be accomplished by
9  the plaintiff through the Marshal Service within a week or ten
10 days, and this is just about exactly where you would have ended
11 up if you had been here on a nonagreed matter.

12 I understand, for the record, that we're only dealing
13 with Mr. Scott and Mr. Cole's client, which I heard referred to
14 as American Motors?

15 MR. SCOTT:  American Honda.

16 THE COURT:  American Honda.  And we haven't heard from
17 the others and the others may have differing views.  But
18 fortunately we can accommodate your case.  Fortunately, any
19 cases filed tomorrow or the next day, we can address promptly.

20 The only problem I have is December 1st is the
21 commencement of a one-week calendar at the U.S. Courthouse in
22 Key West.  I still handle the Key West part of the court with
23 Judge Martinez now.  Judge Moore was, but he's now an important
24 chief judge here.  You know, it's amazing, somebody who tried
25 his first case before me, he says, back when he got out of law

1   school, is now chief judge of our court.  Where does the time
2   go?
3          But in any event, yeah, that's a problem, but that's
4   not really a big problem.  Joyce, you and I went over this
5   yesterday.  I've got that loss case with the lady on damages,
6   that constitutional loss case, and we've got three criminal
7   cases or four yesterday.  Am I correct?
8          COURTROOM DEPUTY:  That's on the November 17th
9   calendar.
10         THE COURT:  Oh, the November calendar.  Now, how about
11  December, let's take a quick look at that.  We can adjust this,
12  but it's just two or three cases.
13         Do you remember, Dave?  Dave Switzler is my law clerk.
14         MR. PRIETO:  Your Honor, I would also suggest, if
15  possible, for Judge Scott and Mr. Cole, November 25th or 26th,
16  which would be sort of the Monday or Tuesday of that prior
17  week.  It is that Thanksgiving week.
18         THE COURT:  Yeah, it's the Thanksgiving period, and if
19  lawyers are going to fly in from various parts, as we have on
20  the MDL class action, we know we have lawyers and what have
21  you, I'm reluctant to set it that close to Thanksgiving.  I
22  think we can accommodate this.
23         Come on up here, Joyce.
24      (Off-the-record discussion.)
25         THE COURT:  All right.  The difficulty is that I have

1  two criminal cases and one civil down in Key West, which I'm
2  confident, even if they go to trial, we can handle in one week.
3  They are jury trials. So, now, what about the 8th? That would
4  be a Monday. The 8th of the second week. I can do something
5  earlier or I can of course give you a hearing on November 24th
6  or 25th, but that's the Thanksgiving week and the lawyers are
7  not yet in the case, if any of them are coming from Detroit or
8  wherever.
9          MR. SCOTT: December 8th would be acceptable to us,
10 Your Honor.
11         MR. PRIETO: And to us as well, Your Honor.
12         THE COURT: All right. Then would you all draft me
13 up -- I can make a minute, but I would rather have a written
14 order that we can mail out to other people.
15         MR. SCOTT: Mr. Prieto and I can draft an order and
16 submit it to the Court.
17         THE COURT: Sure, putting in these dates you're
18 talking about, and given the fact that it's the 8th, we may
19 give the incoming lawyers more than ten days, you might say
20 twelve days or something, because we're not going to get it
21 resolved until the 8th. So your agreement is fine, I approve
22 it, it's great, but talk a little bit and see if you give them
23 a couple more days, that might be helpful. But you all
24 recommend to me what your joint recommendation is. We know we
25 will be getting to this on December 8th. Monday, December 8th.

```
 1    And I thank you.
 2         (Off-the-record discussion.)
 3             THE COURT:  Thank you for coming.
 4         (Proceedings concluded at 10:03 a.m.)
 5                         *   *   *   *   *
```

1  UNITED STATES OF AMERICA                                    )
                                                              ) ss:
2  SOUTHERN DISTRICT OF FLORIDA                                )

3

4                    C E R T I F I C A T E

5      I, Carly L. Horenkamp, Certified Shorthand

6  Reporter in and for the United States District Court for the

7  Southern District of Florida, do hereby certify that I was

8  present at and reported in machine shorthand the proceedings

9  had the 30th day of October, 2014, in the above-mentioned

10 court; and that the foregoing transcript is a true, correct,

11 and complete transcript of my stenographic notes.

12     I further certify that this transcript contains

13 pages 1 - 17.

14     IN WITNESS WHEREOF, I have hereunto set my hand at Miami,

15 Florida, this 30th day of October, 2014.

16

17

                        /s/ Carly Horenkamp
18                      _____
                        Carly L. Horenkamp, RMR, CRR
19                      Certified Shorthand Reporter

20

21

22

23

24

25