**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

MDL No. 2599
Master File No. 15-2599-MD-MORENO

**IN RE:**

**TAKATA AIRBAG PRODUCT
LIABILITY LITIGATION**

_____

THIS DOCUMENT RELATES TO
ECONOMIC DAMAGES TRACK CASES
_____/

**DEFENDANT MAZDA MOTOR OF AMERICA, INC.'S MOTION TO DISMISS
<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

# TABLE OF CONTENTS

SUMMARY ................................................................................................................ 1

ARGUMENT ........................................................................................................... 3
    A.    Applicable Pleading Standards ................................................................. 3
    B.    Plaintiffs' Claims Under California Law Should Be Dismissed ........................... 4
            1.    Choice-of-Law Analysis Requires Dismissal Of Plaintiffs'
                 California Claims ............................................................................. 5
            2.    The Law Of The State Of Purchase Governs Pardue's,
                 Vukadinovic's, And Birdsall's Claims ........................................... 6
            3.    The Commerce Clause and Due Process Clause Prohibit
                 Extraterritorial Application of California State Laws ................. 8
            4.    Alternatively, The California Law Claims Should Be Dismissed
                 Even If California Law Is Applied .................................................. 9
    C.    Manifestation:  All Damages Claims Against MNAO Should Be
        Dismissed For Failure To Allege Manifestation Of A Defect ...................... 10
            1.    The Florida Plaintiffs Fail To Allege Manifestation Of A Defect
                 As Required By Florida Law ........................................................... 11
            2.    Pardue, The Alabama Plaintiff, Failed To Allege Manifestation Of
                 A Defect As Required By Alabama Law ....................................... 13
            3.    Birdsall, The Pennsylvania Plaintiff, Failed To Allege
                 Manifestation Of A Defect As Required By Pennsylvania Law ............. 15
    D.    Under *Iqbal* And Rule 8(a), Plaintiffs Fail To Allege That MNAO Had
        Knowledge Of The Inflator Defect Prior To 2013 ................................... 16
            1.    Plaintiffs Do Not Allege That MNAO Had Actual Knowledge Of
                 The Inflator Defect Before 2013 .................................................. 18
            2.    Plaintiffs' Allegation That MNAO Knew Of The Inflator Defect
                 From The Moment Of Manufacture Fails As A Matter Of Law ............. 18
            3.    Plaintiffs' Allegation That MNAO Had Constructive Knowledge
                 Based On A Duty To Investigate The First Honda Recall Fails As
                 A Matter Of Law ............................................................................. 19
    E.    This Court Should Dismiss All Claims Asserted By Crystal Pardue (Ala.) ......... 21
            1.    Fraudulent Concealment – Count 25 ......................................... 21
            2.    Negligent Failure To Recall – Count 31 ..................................... 22
                 a.    *Alabama Law Does Not Recognize A Claim For Negligent*
                     *Failure To Recall* ................................................................. 23

i

  b.  *In the Alternative, The Economic Loss Rule Requires Dismissal* .......................................................................... 23

 3.  Unjust Enrichment – Count 27 .................................................. 24

 4.  Alabama Deceptive Trade Practices Act – Count 49 ................. 24

F.  This Court Should Dismiss All Claims Asserted By Vukadinovic (Fla.) ........... 25

 1.  Fraudulent Concealment – Count 25 ......................................... 25

 2.  Negligent Failure To Recall – Count 31 .................................... 26

 3.  Unjust Enrichment – Count 27 .................................................. 26

 4.  Florida Unfair And Deceptive Trade Practices Act – Count 47 ............. 27

 5.  Magnuson-Moss Warranty Act Claim – Count 3 ...................... 28

 6.  Implied Warranty Of Merchantability – Count 48 .................... 28

  a.  *Vukadinovic Did Not Provide Pre-Suit Notice* ........... 28

  b.  *Vukadinovic Lacks Privity With MNAO* ..................... 29

  c.  *In The Alternative, Vukadinovic's Implied Warranty Claim Is Time Barred* ...................................................... 29

G.  This Court Should Dismiss All Claims Asserted By Birdsall (Pa.) .................... 30

 1.  Fraudulent Concealment – Count 25 ......................................... 30

 2.  Negligent Failure To Recall – Count 31 .................................... 31

 3.  Unjust Enrichment – Count 27 .................................................. 31

 4.  Birdsall Cannot Assert MMWA, UTPCPL, Or Implied Warranty Claims On Behalf Of The Pennsylvania Sub-Class ...................... 32

H.  This Court Should Dismiss All Claims Asserted By the ARA (Fla.) .................. 33

I.  This Court Should Dismiss All Claims For Injunctive Relief And The Negligent Failure To Recall Claim Given NHTSA's Primary Jurisdiction ........ 33

CONCLUSION ......................................................................................................... 35

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<small>CASES</small>

*Abels v. JPMorgan Chase Bank, N.A.*,
    678 F. Supp. 2d 1273 (S.D. Fla. 2009) ................................................................33

*Alhassid v. Bank of Am., N.A.*,
    60 F. Supp. 3d 1302 (S.D. Fla. 2014) ..................................................................3

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*,
    390 F. Supp. 2d 1170 (M.D. Fla. 2005) ...............................................................27

*Angus v. Shiley*,
    989 F.2d 142 (3d Cir. 1993) ............................................................................11, 15

*Anunziato v. eMachines, Inc.*,
    402 F. Supp. 2d 1133 (C.D. Cal. 2005) ...............................................................9

*Aprigliano v. Am. Honda Motor Co.*,
    979 F. Supp. 2d 1331 (S.D. Fla. 2013) ...........................................................17, 25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................3, 16, 19

*Bacerra v. Aldridge Connors, LLP*,
    No. 13-23763-CIV, 2013 WL 6497835 (S.D. Fla. Dec. 11, 2013) ......................3

*Bailey v. Monaco Coach Corp.*,
    168 F. App'x. 893 (11th Cir. 2006) ...................................................................29

*Bohlke v. Shearer's Foods, LLC*,
    No. 14-cv-80727, 2015 WL 4249418 (S.D. Fla. Jan. 20, 2015) .........................28

*Bortz v. Noon*,
    729 A.2d 555 (Pa. 1999) ..................................................................................31

*Breakstone v. Caterpillar, Inc.*,
    No. 1:09-cv-23324, 2010 WL 2164440 (S.D. Fla. May 6, 2010) ...................12, 13

*Briehl v. Gen. Motors Corp.*,
    172 F.3d 623 (8th Cir. 1999) ...........................................................................11

*Brisson v. Ford Motor Co.*,
    349 F. App'x 433 (11th Cir. 2009) ...................................................................12

*Burns v. Winnebago Indus., Inc.*,
    No. 8:13-CV-1427-T-24, 2013 WL 4437246 (M.D. Fla. Aug. 16, 2013) ............................25

*Busche v. Monaco Coach Corp.*,
    No. 06-cv-3801, 2006 WL 3302477 (E.D. Pa. Nov. 13, 2006) ................................................32

*Bussian v. DaimlerChrysler Corp.*,
    411 F.Supp.2d 614 (M.D.N.C. 2006) ...........................................................................11, 34

*Carlson v. Gen. Motors Corp.*,
    883 F.2d 287 (4th Cir. 1989) ...........................................................................................12

*Chin v. Chrysler Corp.*,
    182 F.R.D. 448 (D.N.J. 1998)...........................................................................................34

*Chrysler Corp. v. Dep't of Transp.*,
    472 F.2d 659 (6th Cir. 1972) ...........................................................................................34

*Cohen v. Implant Innovations, Inc.*,
    259 F.R.D. 617 (S.D. Fla. 2008) .......................................................................................28

*Collins v. DaimlerChrysler Corp.*,
    894 So. 2d 988 (Fla. 5th DCA 2004) .........................................................................12, 13

*Cook's Pest Control, Inc. v. Rebar*,
    28 So. 3d 716 (Ala. 2009) .................................................................................................22

*Cramer v. Ford Motor Co.*,
    No. 2007-CA-2135, 2011 WL 2477232 (Fla. Cir. Ct. June 9, 2011) ......................................12

*Cromer Fin. Ltd. v. Berger*,
    137 F. Supp. 2d 452 (S.D.N.Y. 2001)..................................................................................8

*D.L. Edmonson Selective Service Inc. v. LCW Automotive Corp.*,
    689 F. Supp. 2d 1226 (C.D. Cal. 2010) ...............................................................................9

*Dairyland Ins. Co. v. Gen. Motors Corp.*,
    549 So. 2d 44 (Ala. 1989)..................................................................................................23

*David v. Am. Suzuki Motor Corp.*,
    629 F. Supp. 2d 1309 (S.D. Fla. 2009) ........................................................................28, 29

*Davis v. Monahan*,
    832 So.2d 708 (Fla. 2002)..................................................................................................27

*De George v. American Airlines, Inc.*,
    338 F. App'x 15 (2d Cir. 2009) ...........................................................................................4

*Deerman v. Fed. Home Loan Mortg. Corp.*,
   955 F. Supp. 1393 (N.D. Ala. 1997) ...................................................................24

*Diamond "S" Dev. Corp. v. Mercantile Bank*,
   989 So. 2d 696 (Fla. 1st DCA 2008) .................................................................27

*Dodd v. Nelda Stephenson Chevrolet, Inc.*,
   626 So. 2d 1288 (Ala. 1993) ............................................................................21

*Excavation Tech., Inc. v. Columbia Gas Co. of Pa.*,
   936 A.2d 111 (Pa. Super. Ct. 2007) ............................................................30, 31

*First Interstate Dev. Corp. v. Ablanedo*,
   511 So. 2d 536 (Fla. 1987) ...............................................................................25

*Fitts v. Minnesota Min. & Mfg. Co.*,
   581 So.2d 819 (Ala. 1991) ..................................................................................8

*Flo-Sun, Inc. v. Kirk*,
   783 So. 2d 1029 (Fla. 2001) .............................................................................35

*Ford Motor Co. v. Magill*,
   698 So.2d 1244 (Fla. 3d DCA 1997) ................................................................34

*Ford Motor Co. v. Rice*,
   726 So.2d 626 (Ala. 1998) .........................................................................passim

*Franklin v. Curry*,
   738 F.3d 1246 (11th Cir. 2013) ..........................................................................4

*Gen. Matters v. Paramount Canning Co.*,
   382 So. 2d 1262 (Fla. 2d DCA 1980) ...............................................................28

*Gill v. Blue Bird Body Co.*,
   147 F. App'x 807 (11th Cir. 2005) ....................................................................28

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
   525 F. App'x 94 (3d Cir. 2013) ...................................................................16, 17

*Grupo Televisa, A.A. v. Telemundo Comm. Group, Inc.*,
   485 F.3d 1233 (11th Cir. 2007) ..........................................................................5

*Gyongyosi v. Miller*,
   80 So. 3d 1070 (Fla. 4th DCA 2012) ................................................................20

*Harrell v. Dodson*,
   398 So. 2d 272 (Ala. 1981) ..............................................................................22

*Herremans v. BMW of N. Am., LLC*,
    No. CV 14-02363 MMM PJWX, 2014 WL 5017843 (C.D. Cal. Oct. 3, 2014).....................17

*Herrod v. Metal Powder Products*,
    886 F. Supp. 2d 1271 (D. Utah 2012) ...............................................................................20, 21

*Howard v. Kerzner Int'l Ltd.*,
    No. 12-22184-CIV, 2014 WL 714787 (S.D. Fla. Feb. 24, 2014) ..................................5, 6, 7, 8

*In re Actiq Sales & Mktg. Practices Litig.*,
    790 F. Supp. 2d 313 (E.D. Pa. 2011) ........................................................................................8

*In re Bridgestone/Firestone, Inc.*,
    288 F.3d 1012 (7th Cir. 2002) ..........................................................................................11, 12

*In re Grand Theft Auto Video Game Consumer Litig.*,
    251 F.R.D. 139 (S.D. N.Y. 2008) .............................................................................................8

*In re Managed Care Litig.*,
    150 F. Supp. 2d 1330, 1345 (S.D. Fla. 2001) .......................................................................3, 8

*In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012) .....................................................................................10

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods.*
    *Liab. Litig.*,
    785 F. Supp. 2d 925 (C.D. Cal. 2011) .........................................................................6, 13, 15

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods.*
    *Liab. Litig.*, No. 8:10ML 02151, 2012 U.S. Dist. LEXIS 189744 (C.D. Cal. May 4,
    2012) ........................................................................................................................................13

*ITT Specialty Risk Servs., Inc. v. Barr*,
    842 So. 2d 638 (Ala. 2002) ......................................................................................................5

*Jackson-Gilmore v. Dixon*,
    No. 04-cv-03759, 2005 WL 3110991 (E.D. Pa. Nov. 18, 2005) ...............................................5

*Justice v. Rheem Mfg. Co.*,
    2014 U.S. Dist. LEXIS 179128 (S.D. Fla. Aug. 21, 2014).....................................................29

*Kagan v. Harley Davidson, Inc.*,
    No. 07-cv-0694, 2008 WL 1815308 (E.D. Pa. Apr. 22, 2008)................................................33

*Kia Motors Am. Corp. v. Butler*,
    985 So. 2d 1133 (Fla. 3d DCA 2008) ...................................................................11, 12, 13, 27

*Lance v. Wade*,
457 So. 2d 1008 (Fla. 1984) ....................................................................................25

*Marlborough Holdings Grp., Ltd. v. Azimut-Benetti,SPA, Platinum Yacht Collection No. Two, Inc.*,
505 F. App'x 899 (11th Cir. 2013) ...........................................................................27

*Marshall v. Crocker*,
387 So. 2d 176 (Ala. 1980) ......................................................................................22

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .....................................................................................5

*McDaniel v. Bieffe USA, Inc.*,
35 F. Supp. 2d 735 (D. Minn. 1999) .........................................................................23

*McKissic v. Country Coach, Inc.*,
No. 8:07-cv-1488, 2008 WL 2782678 (M.D. Fla. July, 16 2008) ...........................30

*McQueen v. BMW of N. Am., LLC*,
No. CIV.A. 12-06674 SRC, 2014 WL 656619 (D.N.J. Feb. 20, 2014) ...........17, 18, 19

*Melchior v. New Line Prod., Inc.*,
131 Cal. Rptr. 2d 347 (Cal. Ct. App. 2003) ...............................................................9

*Mesa v. BMW N. Am.*,
904 So. 2d 450 (Fla. 3d DCA 2005) .........................................................................29

*Mitchell v. Moore*,
729 A.2d 1200 (Pa. Super. 1999) .............................................................................31

*Morrison v. Williams*,
No. Civ.A 98-2408, 1998 WL 717423 (E.D. Pa. Sept. 18, 1998) ...........................15

*N. Assur. Co. of Am. v. Bayside Marine Const., Inc.*,
No. 08-cv-222, 2009 WL 151023 (S.D. Ala. Jan. 21, 2009) ....................................24

*Nader v. Allegheny Airlines, Inc.*,
426 U.S. 290 (1976) ............................................................................................34, 35

*Nelson v. Original Smith & Wesson Bus. Entities &/or Corp.*, No. 4:10-CV-0003-RRB,
2010 WL 7125186 (D. Alaska May 18, 2010) .........................................................23

*Novae Corporate Underwriting Ltd. v. Atl. Mut. Ins. Co.*,
556 F. Supp. 2d 489 (E.D. Pa. 2008) ........................................................................32

*O'Neil v. Simplicity, Inc.*,
574 F.3d 501 (8th Cir. 2009) ....................................................................................12

vii

*Osness v. Lasko Prods., Inc.*,
   868 F. Supp. 2d 402 (E.D. Pa. 2012) ................................................................15, 33

*Panthera Rail Car LLC v. Kasgro Rail Corp.*,
   985 F. Supp. 2d 677 (W.D. Pa. 2013) ..........................................................................8

*Perlman v. Wells Fargo Bank, N.A.*,
   559 F. App'x 988 (11th Cir. 2014) ..............................................................................4

*Pfizer, Inc. v. Farsian*,
   682 So.2d 405 (Ala. 1996) ...........................................................................13, 14, 24

*Rand v. Nat'l Fin. Ins. Co.*,
   304 F.3d 1049 (11th Cir. 2002) .................................................................................25

*Ray v. Ford Motor Co.*,
   No. 07-cv-175, 2011 WL 6749034 (M.D. Ala. Dec. 23, 2011).............................6, 23

*Roberts v. Electrolux Home Prods., Inc.*,
   No. 12-cv-1644, 2013 WL 7753579 (C.D. Cal. Mar. 4, 2013)..................................6

*Rosener v. Sears, Roebuck & Co.*,
   168 Cal. Rptr. 237 (Cal. Ct. App. 1980) .....................................................................6

*RREF RB-AL SLDL, LLC v. Saxon Land Dev.*,
   968 F. Supp. 2d 1133 (M.D. Ala. 2013) ....................................................................24

*Sam v. Beaird*,
   685 So. 2d 742 (Ala. Civ. App. 1996) .......................................................................24

*Samuel-Bassett v. Kia Motors Am., Inc.*,
   34 A.3d 1 (Pa. 2011) ..................................................................................................16

*Schmidt v. Ford Motor Co.*,
   972 F. Supp. 2d 712 (E.D. Pa. 2013) ........................................................................32

*Silvas v. Gen. Motors, LLC*,
   No. 2:14-cv-89, 2014 WL 1572590 (S.D. Tex. Apr. 17, 2014)................................34

*Simmons v. Pacor, Inc.*,
   674 A.2d 232, 237 (Pa. 1996) ...................................................................................15

*Smith v. GTE Corp.*,
   236 F.3d 1292 (11th Cir. 2001) .................................................................................33

*Speier-Roche v. Volkswagen Group of America, Inc.*,
   No. 14-20107-CIV, 2014 WL 1745050 (S.D. Fla. Apr. 30, 2014)................3, 27, 29

*State Farm Fire & Cas. Co. v. Owen*,
  729 So. 2d 834 (Ala. 1998) ...................................................................................20

*Steinberg v. A Analyst Ltd.*,
  No. 04-60898-CIV, 2009 WL 806780 (S.D. Fla. Mar. 26, 2009) ....................................26, 27

*Swafford v. Schweitzer*,
  906 So. 2d 1194 (Fla. 4th DCA 2005) .........................................................................26

*Thomas v. Bombardier Recreational Prods., Inc.*,
  682 F. Supp. 2d 1297 (M.D. Fla. 2010) ....................................................................6, 26

*Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*,
  110 So. 3d 399 (Fla. 2013) ...............................................................................25, 26

*Tietsworth v. Sears, Roebuck & Co.*,
  No. 5:09-CV-00288, 2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) .....................................9

*Topp, Inc. v. Uniden Am. Corp.*,
  483 F. Supp. 2d 1187 (2007) ..................................................................................7

*Tudor Dev. Grp., Inc. v. U.S. Fid. & Guar. Co.*,
  968 F.2d 357 (3d Cir. 1992) ..................................................................................32

*United States ex rel. Clausen v. Lab. Corp. of Am.*,
  290 F.3d 1301 (11th Cir. 2002) .......................................................................3, 22, 26, 31

*United States v. W. Pac. R.R. Co.*,
  352 U.S. 59 (1956) ............................................................................................33

*Utica Nat. Ins. Grp. v. BMW of N. Am., LLC*,
  45 F. Supp. 3d 157 (D. Mass. 2014) ..........................................................................17

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) ............................................................................................6

*Verneret v. Foreclosure Advisors, LLC*,
  45 So. 3d 889 (Fla. 3d DCA 2010) ..............................................................................5

*W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*,
  287 F. App'x 81 (11th Cir. 2008) ...............................................................................4

*Walewski v. ZeniMax Media, Inc.*,
  No. 6:11-cv-1178, 2012 WL 834125 (M.D. Fla. Jan. 30, 2012) .............................................7

*Wallis v. Ford Motor Co.*,
  208 S.W.3d 153 (Ark. 2005) ...................................................................................12

*Weaver v. Chrysler Corp.*,
   172 F.R.D. 96 (S.D.N.Y. 1997) ................................................................12, 14

*Werwinski v. Ford Motor Co.*,
   286 F.3d 661 (3d Cir. 2002).....................................................................30, 32

*White v. Gen. Motors Corp.*,
   718 So. 2d 480 (La. Ct. App. 1998)...............................................................34

*Williams v. Yamaha Motor Corp., U.S.A.*,
   No. CV 13-05066 BRO, 2015 WL 2375906 (C.D. Cal. Apr. 29, 2015) .................................17

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ......................................................................16

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
   681 F.3d 1208 (10th Cir. 2012) ................................................................21, 35

**RULES**

Fed. R. Civ. P. 8(a) ...........................................................................16, 17, 19

Fed. R. Civ. P. 9(b) ................................................................................ passim

**STATUTES**

Ala. Code § 8-19-10(e) .............................................................................24

Fla. Stat. § 95.11(3)(f)...............................................................................27

Fla. Stat. § 671.201 ..................................................................................30

Fla. Stat. § 672.316(2)................................................................................30

Fla. Stat. § 672.607(3)(a)............................................................................28

15 U.S.C. §§ 2301, *et seq.*...................................................................28, 32, 33

**OTHER AUTHORITIES**

15 Charles Alan Wright et al., Fed. Prac. & Proc. § 3867 (4th ed.) ...................................4

Restatement (Second) of Conflicts of Laws § 147 (1971).............................................7

Restatement (Third) of Torts: Prod. Liab. § 11 cmt. a (1998).......................................23

## SUMMARY

Only three individual plaintiffs have asserted claims against Mazda Motor of America, Inc. d/b/a Mazda North American Operations ("MNAO"). They are Crystal Pardue (Alabama), Mickey Vukadinovic (Florida), and Justin Birdsall (Pennsylvania) (collectively "Individual Plaintiffs"). The Automotive Recyclers Association ("ARA") also purports to assert claims against MNAO that were assigned to it by three automotive parts recyclers in Florida. As with any federal class action, it is these specific plaintiffs' claims and no others that are relevant in determining whether MNAO should remain in this case. As discussed below, they each fail to state a cause of action in the Second Amended Consolidated Class Action Complaint ("SACCAC"), and their claims should therefore be dismissed.

Plaintiffs purchased Mazda vehicles with airbags manufactured by Takata Corporation ("Takata") that allegedly contain defective airbag inflators ("Inflator Defect"), and they now seek economic damages under diminished value and benefit of the bargain theories. But none of the Individual Plaintiffs' vehicles manifested the Inflator Defect in any way. Birdsall owns a 2004 Mazda 6i, which he purchased *used* in 2008. Birdsall still owns the vehicle, and he has used it for over seven years without an airbag failure. Pardue owns a 2007 Mazda 6, which she purchased *used* in January 2012. Pardue still owns the vehicle, and she has used it for over three years without an airbag failure. Vukadinovic purchased a new Mazda MPV in 2004, and he has been driving the vehicle for over eleven years without an airbag failure.

None of these Individual Plaintiffs allege that their airbag failed. None of them allege that they suffered a personal injury. None of them allege that they sold their Mazda vehicle at a loss. Moreover, each of the Individual Plaintiffs' airbags will be replaced free-of-charge in the Mazda recall being overseen by the National Highway Traffic Safety Administration's ("NHTSA") Coordinated Remedy Program. In short, by utilizing their vehicles without incident for many years and continuing to do so today, the Individual Plaintiffs have received the benefit of their bargain.

Without any incident or injury, the Individual Plaintiffs allege only unspecified, hypothetical economic losses. The laws of Alabama, Florida and Pennsylvania govern the claims of these plaintiffs, however, and each of these states follows the strict "manifestation rule" that requires dismissal of their claims for failure to allege manifestation of a defect. Specifically, each of these states have determined that, as a matter of public policy, permitting

uninjured consumers to recover money for unmanifested defects is speculative, unfair, and bad economics, notwithstanding the fact that the alleged defect is dangerous or can manifest suddenly. Federalism, due process, and the Rules Enabling Act dictate respect for the policy decisions of those states and their laws.

In light of the manifestation rule in these states (and other variations in state law), the Individual Plaintiffs assert a number of claims on behalf of a nationwide class under California law. But none of these plaintiffs allege that they purchased their car in California, that they viewed advertisements about their vehicles in California, or that they have ever been to California or have any connection with California whatsoever. Simple application of choice-of-law principles to each plaintiff demonstrates that California law does not apply. Instead, the Individual Plaintiffs' claims are governed by the law of the state where they purchased their vehicles, and plaintiffs' claims under California law must therefore be dismissed.

In addition, plaintiffs' fraud and deceptive-trade-practice claims must be dismissed under Fed. R. Civ. P. 9(b) for failure to allege with particularity that MNAO made any false statements or engaged in deceptive conduct. Plaintiffs' allegations of fraud and deceptive conduct are based on the assertion that MNAO failed to disclose the existence of the Inflator Defect to the Individual Plaintiffs before they purchased their cars. The Individual Plaintiffs purchased their cars in 2004, 2008, and 2012, but they do not allege that MNAO had actual knowledge of the existence of an Inflator Defect until 2013. Prior to 2013, plaintiffs allege only a single incident of an airbag failure in a Mazda vehicle, and the owner of that car has not asserted claims against MNAO in this case. While plaintiffs allege that other manufacturers experienced dangerous airbag deployments and began working with Takata on the issue as early as 2003, plaintiffs do not allege that MNAO had knowledge of an Inflator Defect before 2013, and the Individual Plaintiffs' claims for fraud and deceptive trade practices must therefore be dismissed.

Aside from the manifestation rule and failure to allege fraud with specificity, these state-law claims are also barred by the economic loss rule, the statute of limitations, the privity bar, and the pre-suit notice requirement. Some claims are not even recognized under applicable state law. Finally, claims for injunctive relief and/or recall-related claims should be dismissed in favor of NHTSA's primary jurisdiction over automotive recalls.

For these reasons, all of the claims against MNAO should be dismissed.

## ARGUMENT

### A.     Applicable Pleading Standards

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To meet this standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere *possibility* of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'"  *Id.* at 679 (emphasis added).  While the Court "must view the complaint in the light most favorable to the plaintiff and accept plaintiff's well-pleaded facts as true," "'plaintiffs must do more than merely state legal conclusions.'"  *Bacerra v. Aldridge Connors, LLP*, No. 13-23763-CIV, 2013 WL 6497835, at *1 (S.D. Fla. Dec. 11, 2013) (Moreno, J.).  Instead, "plaintiffs must 'allege some specific factual basis for those conclusions or face dismissal of their claims.'"  *Id.*

In addition to this baseline standard, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Under this rule, plaintiffs must allege "the 'who, what, when, where, and how' of the alleged fraud."  *Speier-Roche v. Volkswagen Group of America, Inc.*, No. 14-20107-CIV, 2014 WL 1745050, at *7 (S.D. Fla. Apr. 30, 2014) (Moreno, J.) (citation omitted).  Specifically, they must allege:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

*United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002); *see also In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1345 (S.D. Fla. 2001) (Moreno J.) (same).  "Rule 9(b) thus forces a plaintiff to 'offer more than mere conjecture' and 'requires that a complaint plead facts giving rise to an inference of fraud.'"  *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1316 (S.D. Fla. 2014) (citations omitted).  "In a case with multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized

allegations 'lumping' multiple defendants together are insufficient." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008).

In addition, the Court must ignore a plaintiff's conclusory allegation that a defendant "'knew or should have known' of a risk" and focus instead only on whether there are properly pleaded "facts from which one could draw such a conclusion." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). To meet this burden, it is not enough for the plaintiff to identify "red flags" that "could arouse suspicions." *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 993-94 (11th Cir. 2014). Instead, the well-pleaded facts must "create a *strong inference* of actual knowledge." *Id.* at 994 (emphasis added).

### B.      Plaintiffs' Claims Under California Law Should Be Dismissed

MNAO is not an automobile manufacturer. It is the U.S. distributor of Mazda Motor Corporation, a Japanese corporation that has not yet been served. MNAO is responsible for the sales, marketing and distribution of Mazda vehicles in the United States, and independent dealerships sell Mazda vehicles to the public. Plaintiffs allege that MNAO sold vehicles with airbags manufactured by Takata containing the Inflator Defect.

Plaintiffs purport to represent a nationwide class of Mazda customers asserting claims under various California statutes—Count 26 (Song-Beverly Act), Count 28 (Unfair Competition Law ("UCL")), Count 29 (Consumer Legal Remedies Act ("CLRA")), and Count 30 (False Advertising Law ("FAL"))—and several common law claims under California law. The ARA seeks to represent a nationwide class of automotive recyclers (Count 104 (fraudulent misrepresentation and concealment)) and a class of automotive recyclers asserting violations of 28 states' consumer protection laws (Count 105). There is no basis for these plaintiffs to assert claims against MNAO under California law. "[A] transferee court applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed." *De George v. American Airlines, Inc.*, 338 F. App'x 15, 16 (2d Cir. 2009); *see also* 15 Charles Alan Wright et al., Fed. Prac. & Proc. § 3867 (4th ed.) ("[T]here is no doubt that in diversity of citizenship cases, the MDL transferee court must apply the substantive law (including . . . choice of law rules) that would have been applied in the transferor forum."). Application of the proper choice of law rules dictates that the consumer plaintiffs' and ARA's claims are governed by the law of the states where they purchased their respective vehicles. That determination precludes many of plaintiffs' claims.

4

      1.     <u>Choice-of-Law Analysis Requires Dismissal Of Plaintiffs'</u>
                <u>California Claims.</u>

Choice of law determinations are necessary when there is a "true conflict" between differing state laws, which is present when "two or more states have a legitimate interest in a particular  set of facts in litigation and the laws of those states differ or would produce a different result." *Howard v. Kerzner Int'l Ltd.*, No. 12-22184-CIV, 2014 WL 714787, at *1 (S.D. Fla. Feb. 24, 2014) (Moreno, J.) (citing *Grupo Televisa, A.A. v. Telemundo Comm. Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007)).  Such a "true conflict" exists here:  Alabama, Florida, and Pennsylvania—the states where the Individual Plaintiffs purchased their vehicles—"have a legitimate interest" in governing consumer transactions that occur within their states, and application of those states' laws "would produce a different result" than California law.  *Id.*

In refusing to apply California's UCL, CLRA, and FAL to a nationwide class, the Ninth Circuit, in a similar automobile defect case, held "that the district court abused its discretion in certifying a class under California law that contained class members who purchased or leased their car in different jurisdictions with materially different consumer protection laws." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012).  The same is true here.  Alabama, Florida, and Pennsylvania consumer protection statutes are materially different from, and often in direct conflict with, the California statutes upon which the plaintiffs base their claims.  By way of example, and as discussed in greater detail below, the Alabama Deceptive Trade Practices Act ("ADTPA") and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") both require manifestation of a defect, and FDUTPA has no discovery rule for purposes of the statute of limitations.

A "true conflict" likewise exists with respect to the California common law claims for fraudulent concealment (SACCAC ¶ 717), unjust enrichment (SACCAC ¶ 745), and negligent failure to recall (SACCAC ¶ 809).  There are material, outcome determinative differences between California law with respect to these claims and the laws of Alabama, Florida, and Pennsylvania.  For example, a fraudulent concealment claim has a higher standard of proof in Florida, Alabama, and Pennsylvania ("clear and convincing evidence") than in California ("preponderance of the evidence").  *Compare ITT Specialty Risk Servs., Inc. v. Barr*, 842 So. 2d 638 (Ala. 2002), *Verneret v. Foreclosure Advisors, LLC*, 45 So. 3d 889, 890 (Fla. 3d DCA 2010), *and Jackson-Gilmore v. Dixon*, No. 04-cv-03759, 2005 WL 3110991, at *6 (E.D. Pa.

5

Nov. 18, 2005) *with Rosener v. Sears, Roebuck & Co.*, 168 Cal. Rptr. 237, 246 (Cal. Ct. App. 1980).  And while California recognizes a negligent failure to recall claim, Alabama, Florida, and Pennsylvania do not.  *Compare Ray v. Ford Motor Co.*, No. 07-cv-175, 2011 WL 6749034, at *2 (M.D. Ala. Dec. 23, 2011) *and Thomas v. Bombardier Recreational Prods., Inc.*, 682 F. Supp. 2d 1297, 1302 (M.D. Fla. 2010) *with Roberts v. Electrolux Home Prods., Inc.*, No. 12-cv-1644, 2013 WL 7753579, at *13 (C.D. Cal. Mar. 4, 2013).

For these reasons, the Court must apply the choice-of-law rules of each of the forums that have transferred cases against MNAO to this MDL.  As explained below, those choice-of-law rules require application of the laws in the states where the plaintiffs purchased their vehicles. Because no Individual Plaintiff purchased a vehicle in California, their California claims should be dismissed.

2.   The Law Of The State Of Purchase Governs Pardue's, Vukadinovic's, And Birdsall's Claims.

As explained above, this Court must apply the choice-of-law rules from each of the transferor forums (Fla., Ala., Pa., and N.Y.).[1]  *See Van Dusen v. Barrack*, 376 U.S. 612 (1964). With respect to the Individual Plaintiffs and the ARA, this Court must conduct choice-of-law analyses under Florida, Alabama, Pennsylvania, and New York law.  *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*, 785 F. Supp. 2d 925, 931 (C.D. Cal. 2011) ("Neither the general authorization of the coordination and consolidation under the MDL statute nor the more specific use of consolidated complaints" may "alter the substantive rights of the parties." ).  Under each of these choice-of-law tests, the law of the state of purchase—not California law—governs their claims.

Under the Florida choice-of-law analysis, the Court applies the "most significant relationship" test from the Restatement (Second) of Conflicts of Laws.  *See Howard*, 2014 WL 714787 at *2.  "Unless another state has a more significant relationship, 'the local law of the

---

[1]  There are six cases that named MNAO as a defendant that were transferred into this MDL. Those six cases come from a total of four different jurisdictions, including Florida, Alabama, Pennsylvania, and New York.  The six transferred cases can be identified as follows:  *Mickey Vukadinovic v. Takata Corp. et al.* 2:14-cv-6648 (E.D. Pa.);  *Roy Martin et al. v. Takata Corp. et al.* 2:15-cv-00092 (N.D. Ala.); *Automotive Dismantlers and Recyclers Ass'n, Inc v. Takata Corp. et al* 1:15-cv-20520 (S.D. Fla.); *Janet McFarland v. Takata Corp. et al* 2:15-cv-00153 (W.D. Pa.);  *Wieczorek, et al. v Takata Corporation et al.,* 1:15-cv-009821 (E.D. N.Y.); and *Cathryn Tanner and Marita Murphy v. Takata Corp., et al.,* 2:14-cv-2407 (N.D. Ala.).

state where the injury occurred determines the rights and liabilities of the parties.'"  *Id.* (quoting Restatement (Second) of Conflicts of Laws § 147 (1971)).  With respect to consumer fraud claims, this Court has correctly considered:  (1) where the alleged reliance took place; (2) where the plaintiff received the representations; (3) where the defendant made the representations; (4) the domicile of the parties; and (5) the place where the tangible thing that was the subject of the transaction was located.  *Topp, Inc. v. Uniden Am. Corp.*, 483 F. Supp. 2d 1187, 1191 (2007) (Moreno, J.).

Application of the Restatement test demands a finding that the laws of the states of purchase govern the claims of the Individual Plaintiffs.  California does not have a "more significant relationship" to the present dispute than the states where the plaintiffs reside and purchased their vehicles.  They have not alleged any personal connection to California.  There is no allegation that MNAO made representations in California or that plaintiffs received or relied upon those representations while in California.  Indeed, because plaintiffs allege that MNAO sells "millions of Class Vehicles nationwide," the alleged misrepresentations or omissions could have "emanated" from a variety of locations.  *Walewski v. ZeniMax Media, Inc.*, No. 6:11-cv-1178, 2012 WL 834125, at *8 (M.D. Fla. Jan. 30, 2012).  The only California-centric fact alleged in the SACCAC is that MNAO is headquartered in California.  SACCAC ¶¶ 360-64.  At bottom, the facts alleged by the plaintiffs reveal that most of the relevant factors—the location of the reliance, receipt of representations, domicile, vehicles, injury, and their relationship with MNAO—all occurred outside of California.  SACCAC ¶¶ 85, 141, 175.  Accordingly, the law of the place of the alleged injury—Alabama for Pardue, Florida for Vukadinovic and the ARA, and Pennsylvania for Birdsall—governs their consumer protection claims.  *See Howard*, 2014 WL 714787, at *4; *Topp,* 483 F. Supp. 2d at 1192; *Walewski*, 2012 WL 834125, at *8.

The analysis is the same for plaintiffs' common law claims.  In conducting a choice-of-law analysis for tort claims, the Court considers:  (1) the place of the alleged injury; (2) where the alleged injurious conduct occurred; (3) the domicile of the parties; and (4) where the parties' relationship is centered.  *Howard*, 2014 WL 714787, at *3.  As explained above, the relevant facts alleged by the plaintiffs—namely the location of their injuries and the center of their relationships with MNAO—are grounded in the states where they purchased their vehicles.  SACCAC ¶¶ 85, 141, 175.  Therefore, the plaintiffs may not pursue—or represent a nationwide

class pursuing—California common law claims under Florida's choice-of-law test. *See Howard*, 2014 WL 714787, at *4.

The results are the same under the Alabama, New York, and Pennsylvania choice-of-law tests applied by the other transferor forums. "*Lex loci delicti* has been the rule in Alabama for [more than] 100 years. Under this principle, an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred." *Fitts v. Minnesota Min. & Mfg. Co.*, 581 So.2d 819, 820 (Ala. 1991). Under New York's "interest analysis," courts typically apply the law of the place of injury to consumer protection, fraud, and negligence claims. *See In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 149 (S.D. N.Y. 2008); *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 492 (S.D. N.Y. 2001). And Pennsylvania choice-of-law typically applies the place of the injury for consumer protection statutes while following Florida and the contacts test of the Second Restatement for fraud and negligence. *See In re Actiq Sales & Mktg. Practices Litig.*, 790 F. Supp. 2d 313, 321 (E.D. Pa. 2011); *Panthera Rail Car LLC v. Kasgro Rail Corp.*, 985 F. Supp. 2d 677, 700 (W.D. Pa. 2013).

Under any of the applicable choice-of-law tests, Alabama, Florida, and Pennsylvania law govern the plaintiffs' statutory and common law claims because they made their purchases and suffered their alleged injuries in those states. They may not pursue UCL, CLRA, FAL, or common law claims against MNAO under California law.

        3.      The Commerce Clause and Due Process Clause Prohibit
                Extraterritorial Application of California State Laws.

The Individual Plaintiffs' claims under California law should also be dismissed because the Commerce Clause and the Due Process Clause prohibit the application of California state law to plaintiffs and claims outside California's borders. *E.g.*, *In re Managed Care*, 150 F. Supp. 2d at 1296. Here, none of the Individual Plaintiffs purchased their cars in California or had any connection to California whatsoever, so California law cannot apply to their claims. In support of this argument, MNAO hereby incorporates by reference the arguments on this point made by Ford Motor Company ("Ford") and Honda Motor Co., Ltd. ("Honda") in their Motions to Dismiss. Ford MTD at Sec. IV.D; Honda MTD at Sec. III.A.

    4.    <u>Alternatively, The California Law Claims Should Be Dismissed</u>
               <u>Even If California Law Is Applied</u>.

Even if the Court concludes that California law governs plaintiffs' claims, those claims are still subject to dismissal on numerous independent grounds. First, plaintiffs' unjust enrichment claim (Count 27) should be dismissed under California law because "there is no cause of action in California for unjust enrichment." *Melchior v. New Line Prod., Inc.*, 131 Cal. Rptr. 2d 347, 357 (Cal. Ct. App. 2003).

Plaintiffs' negligent failure to recall claim under California law (Count 31) should be dismissed in favor of NHTSA's primary jurisdiction over automotive recalls. *See* Section I, *infra*. Moreover, the negligent failure to recall claim should also be dismissed in light of California's economic loss rule. In support of this argument on the economic loss rule, MNAO hereby incorporates by reference the arguments made in BMW of North America, LLC's ("BMW") Motion to Dismiss. BMW MTD at Sec. VIII.

Plaintiffs' claim for breach of implied warranty under California's Song-Beverly Consumer Warranty Act (Count 26) should be dismissed for three reasons. First, the Song-Beverly Act requires that "the subject vehicle must at least have been bought or leased in California." *D.L. Edmonson Selective Service Inc. v. LCW Automotive Corp.*, 689 F. Supp. 2d 1226, 1235 (C.D. Cal. 2010). Because Pardue, Vukadinovic, and Birdsall purchased their cars in Alabama, Florida, and Pennsylvania respectively, their Song-Beverly claim must be dismissed. Second, the Song-Beverly Act claim should be dismissed because the implied warranty created by the Song-Beverly Act is limited in duration to one year. Here, the Individual Plaintiffs did not file a claim against MNAO within the one year warranty period provided under the statute. In support of this argument, MNAO hereby incorporates by reference the arguments made by BMW, Honda, and Toyota Motor Sales USA, Inc. ("Toyota"). BMW MTD at Sec. VI.C; Honda MTD at Sec. IV.A.; Toyota MTD at Sec. VI. Third, Pardue and Birdsall's claims for breach of implied warranty under the Song-Beverly Act fail because they purchased their cars used and are not in vertical privity with MNAO. *See Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005) (dismissing implied warranty claim because "there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale"); *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288, 2009 WL 3320486, at *12 (N.D. Cal. Oct. 13, 2009).

As discussed in sections D, E.1, F.1, and G.1 below, plaintiffs' UCL, CLRA, FAL, and fraudulent concealment claims should be dismissed because they are not pled with the particularity required by Rule 9(b). *See In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942 (S.D. Cal. 2012) (dismissing UCL, CLRA, and FAL claims under Rule 9(b) where claims were "grounded in fraud"). In addition, plaintiffs' UCL, CLRA, FAL, and fraudulent concealment claims fail to allege any actionable misrepresentation that MNAO made about its vehicles, as the only specific representations alleged in the SACCAC are non-actionable *puffery*. SACCAC at 310(d) (advertising Mazda vehicles as having "inspiring performance," "legendary performance, function, style, and safety," and "reassuring safety features" with no reference to safety of its airbags). In support of this argument, MNAO hereby incorporates by reference the puffery arguments under California law made by Nissan North America, Inc. ("Nissan") in its Motion to Dismiss. Nissan MTD at Sec. VIII.

For all of the foregoing reasons, Plaintiffs' statutory and common law claims under California law should be dismissed even if California law is applied to their claims.

## C.     Manifestation:  All Damages Claims Against MNAO Should Be Dismissed For Failure To Allege Manifestation Of A Defect.

Plaintiffs contend that five different Mazda models in years 2003 through 2008 contain Takata airbags that have "an unreasonably dangerous tendency" to manifest the Inflator Defect. SACCAC ¶ 197. Plaintiffs do not allege that all or most of MNAO's vehicles have manifested or will manifest this defect. To the contrary, in the entire 442-page SACCAC, plaintiffs allege *only one* manifestation of an Inflator Defect in a Mazda vehicle—a December 31, 2014 incident in a 2008 Mazda 6—and that vehicle owner is not a named plaintiff. SACCAC ¶ 306(c). Plaintiffs do not allege that any other Mazda model, or any Mazda vehicle for model years 2003-2007, has ever manifested the alleged defect.

Dispositively, the Individual Plaintiffs, Florida resident Vukadinovic (2004 Mazda MPV), Alabama resident Pardue (2007 Mazda 6), and Pennsylvania resident Birdsall (2004 Mazda 6i), along with the automotive parts recyclers who assigned their claims to the ARA, never experienced the alleged Inflator Defect. *See* SACCAC ¶¶ 85, 141, 175, 189-93. Like hundreds of thousands of other Mazda owners, their vehicles have performed satisfactorily without any manifestation of the Inflator Defect. Nevertheless, plaintiffs seek economic loss damages based on the conclusory allegation that the value of their vehicles has somehow

diminished and that they would not have purchased their vehicles, or paid as much for them, had they known about the alleged defect. *Id.*

Numerous courts have addressed and rejected this exact type of economic loss, no-manifestation claim. In fact, the "overwhelming majority" of courts require manifestation of a defect even where plaintiffs allege "diminished value or loss of resale value" and the "defect is life-threatening." *Bussian v. DaimlerChrysler Corp.*, 411 F.Supp.2d 614, 630 (M.D.N.C. 2006). These courts recognize that allowing recovery by uninjured buyers would be speculative, unfair, and bad economics. *See, e.g., In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1016-17 (7th Cir. 2002); *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 629 (8th Cir. 1999).

Florida, Alabama, and Pennsylvania have "firmly aligned" with this "majority jurisprudence" and, for that reason alone, the Court should dismiss the plaintiffs' claims. *Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1139 (Fla. 3d DCA 2008); *see also Angus v. Shiley*, 989 F.2d 142 (3d Cir. 1993); *Ford Motor Co. v. Rice*, 726 So.2d 626 (Ala. 1998).

       1.     The Florida Plaintiffs Fail To Allege Manifestation Of A Defect As Required By Florida Law.

Vukadinovic and the ARA (the Florida plaintiffs), do not allege that their vehicles manifested the alleged Inflator Defect, but that is exactly what Florida law requires them to do. *See* SACCAC ¶¶ 175, 189-93; *Kia Motors*, 985 So. 2d at 1139.

In *Kia Motors*, Florida's Third District Court of Appeals held that Florida requires manifestation of a defect to recover damages for any cause of action premised on an allegedly defective product. 985 So. 2d at 1139. Like plaintiffs here, the *Kia Motors* plaintiffs asserted breach of warranty, Magnuson Moss Warranty Act, and FDUTPA claims seeking damages for "the difference between the price paid for each vehicle and the value of the vehicle as delivered" and the "depressed resale value" of the vehicles. *Id.* at 1134. And, also like here, the plaintiffs alleged a potentially life-threatening vehicle defect. *Id.* (explaining that alleged defect can cause "vehicle to be unable to stop . . . and loss of control"). Nevertheless, the court unequivocally stated that Florida is aligned with the "majority jurisprudence" denying recovery to those plaintiffs whose vehicles have not "manifested a deficiency." *Id.* at 1139.

The *Kia Motors* court supported its conclusion that "the majority rule is the correct rule" by adopting Judge Easterbrook's economic rationale from *Bridgestone/Firestone*. *Id.* at 1139 n.5 (quoting *Bridgestone/Firestone*, 228 F.3d at 1017). As Judge Easterbrook explained, "'[i]f tort law fully compensates those who are physically injured, then any recoveries by those whose

products function properly means excess compensation." *Bridgestone/Firestone*, 228 F.3d at 1017. This "excess compensation" rationale has even stronger application in this case than it did in *Kia Motors*. Because plaintiffs have alleged that only one Mazda vehicle manifested the Inflator Defect, all but one Mazda owner would be overcompensated if plaintiffs recover economic loss damages absent manifestation of the defect.

In addition to this economic rationale, *Kia Motors* adopted Judge Easterbrook's common sense reasoning that courts should not compensate owners of vehicles with a mere propensity to fail because they will receive everything they bargained for if the defect never manifests or if the problem is fixed before resale. *Kia Motors*, 985 So. 2d at 1139 n.5; *see also O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 504 (8th Cir. 2009); *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297-98 (4th Cir. 1989); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 99-100 (S.D.N.Y. 1997); *Wallis v. Ford Motor Co.*, 208 S.W.3d 153 (Ark. 2005). That reasoning applies with equal force here, where many Mazda owners' vehicles will never manifest the defect (*see* SACCAC ¶¶ 195, 306(c) (alleging a mere "tendency" to manifest and only one defect manifestation in a Mazda vehicle)), and many Mazda owners' vehicles will be repaired before resale through the widespread recalls.

*Kia Motors* does not stand alone. In *Brisson v. Ford Motor Co.*, the Eleventh Circuit applied Florida law and affirmed dismissal of the plaintiffs' warranty claims because the plaintiffs "fail[ed] to allege that they experienced a defect within the warranty period." 349 F. App'x 433, 434 (11th Cir. 2009). In *Breakstone v. Caterpillar, Inc.*, this Court cited *Kia Motors*, noting that Florida law "require[s] a showing of actionable defect" and that class members whose products have not "manifested a deficiency . . . only have speculative damages" and cannot recover. No. 1:09-cv-23324, 2010 WL 2164440, at *5-6 (S.D. Fla. May 6, 2010) (citing *Kia Motors*, 985 So. 2d at 1139; *Weaver*, 172 F.R.D. at 99); *see also Cramer v. Ford Motor Co.*, No. 2007-CA-2135, 2011 WL 2477232, at *1 (Fla. Cir. Ct. June 9, 2011) (relying on *Kia Motors* and recognizing that those whose vehicles performed satisfactorily cannot recover). These decisions leave little doubt that *Kia Motors* reflects the current state of Florida law.

Plaintiffs will likely attempt to save their consumer fraud claims under FDUTPA by relying on a pre-*Kia Motors*, *Brisson*, and *Breakstone* decision—*Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988, 990-91 (Fla. 5th DCA 2004). Notably, the *Collins* decision only addressed claims under FDUTPA, and the court heavily relied on the meaning of that statute's

"actual damages" requirement.  *See id.* at 990-91; *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*, No. 8:10ML 02151, 2012 U.S. Dist. LEXIS 189744, at *240-41 (C.D. Cal. May 4, 2012) (explaining that "[i]n no way did the [*Collins*] court indicate that its holding applied beyond the context of FDUTPA").  But even concerning FDUTPA claims, *Collins* no longer reflects Florida law.  No Florida court has ever cited *Collins* for the proposition that a plaintiff may recover for an unmanifested defect.  And, in *Breakstone*, this court elected to follow *Kia Motors* and ignored *Collins* entirely.  2010 WL 2164440, at *5.

In the Toyota unintended acceleration MDL, the court dismissed all of the damages claims asserted by plaintiffs who did not experience unintended acceleration, recognizing that *Kia Motors* and its progeny accurately reflected current Florida law.  *Toyota*, 2012 U.S. Dist. LEXIS 189744, at *235-54.  The *Toyota* court recognized that, "[u]nlike *Collins*, in which the court simply could 'see no requirement in FDUTPA that a defect manifest itself,' the *Kia Motors* court relied on an economic- and policy-based rationale for adopting the majority rule on the manifestation of defect issue."  *Id.* at *244-45.  The *Toyota* court also rejected the plaintiffs' argument that the manifestation rule did not apply because the alleged defect was sudden and dangerous.  *Id.* at *246-47, 253.  Even though the plaintiffs alleged "thousands of crashes and hundreds of deaths," the Toyota court held that awarding plaintiffs economic losses when their vehicles have not malfunctioned "would lead to the undesirable consequences recognized by Judge Easterbrook" and the Florida appellate court in *Kia Motors.  Id.* at *248 n.15, 253 (highlighting that majority rule adopted by *Kia Motors* makes "no distinction between defects that could lead to sudden, unexpected, and catastrophic consequences, and those that could not").

Because Florida law requires Vukadinovic and the ARA to plead manifestation of the alleged Inflator Defect, and they did not, their damages claims against MNAO must be dismissed.

2.  Pardue, The Alabama Plaintiff, Failed To Allege Manifestation Of A Defect As Required By Alabama Law.

Pardue asserts fraud and negligence claims, but fails to allege that her vehicle manifested the Inflator Defect.  SACCAC ¶ 141.  She cannot assert those claims as a matter of law because, like Florida, Alabama has adopted the majority rule requiring manifestation of a defect.  *See Rice*, 726 So. 2d at 626; *Pfizer, Inc. v. Farsian*, 682 So.2d 405 (Ala. 1996); *see also Kia Motors*,

985 So. 2d at 1139 (citing *Rice* and including Alabama in list of "majority of jurisdictions" requiring defect manifestation).

Similarly, in *Rice*, the plaintiffs sued a vehicle manufacturer for fraudulent suppression based on their vehicles' alleged "undue propensity to roll over in sudden-avoidance maneuvers." *Rice*, 726 So. 2d at 626-27.  Like in *Farsian* and here, the plaintiffs alleged benefit-of-the-bargain damages because they received vehicles that "were worth less than they would have been worth if they had been what [the defendant] had represented them to be."  *Id.* at 627.  Consistent with *Farsian* and "the view of most courts," the Alabama Supreme Court dismissed the plaintiffs' claims and recognized that "'[i]t is well established that '[p]urchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own.'"  *Id.* at 628-29 (quoting *Weaver*, 172 F.R.D. at 99).[2]  The *Rice* court required defect manifestation even though the plaintiffs alleged that their vehicles would inevitably fail if ever called upon to perform a sudden-avoidance maneuver.  *Id.* at 629.  Thus, even if plaintiffs could plausibly allege that Pardue's airbag will invariably malfunction in the event of an accident, Alabama law requires more.

As these cases demonstrate, Alabama unwaveringly requires manifestation of a defect to plead a claim for damages.  Alabama does not allow an exception for dangerous or life-threatening defects.  In fact, *Farsian* involved an extraordinarily deadly defect.  Not only could the defective heart valves fail at any time, but their failures resulted in deaths two-thirds of the time.  *Farsian*, 682 So. 2d at 405, 406 n.2.  Similarly, *Rice* involved a dangerous defect that

---

[2]  *Rice* left open the question of whether a plaintiff could recover if the defect had caused a "tangible injury," such as a loss upon resale of the vehicle.  *See Rice*, 726 So. 2d at 630, 631 n.1. No Alabama court since *Rice* has adopted such an exception to the manifestation rule and, in any event, Pardue does not allege that she sold her vehicle at a loss.

caused vehicles to roll over in emergency situations. *Rice*, 726 So. 2d at 626-27. Despite these dangerous and life-threatening defects, in both cases, the Alabama Supreme Court refused to allow recovery for unmanifested defects. This Court should do the same for Pardue's claims.

### 3.   Birdsall, The Pennsylvania Plaintiff, Failed To Allege Manifestation Of A Defect As Required By Pennsylvania Law.

Like the other Individual Plaintiffs, Birdsall does not allege that his 2004 Mazda 6i ever manifested the alleged Inflator Defect—his vehicle worked properly for 10 years. SACCAC at ¶ 85. Like Florida and Alabama, however, Pennsylvania law does not allow recovery for unmanifested defects. *See Angus*, 989 F.2d at 147-48; *see also Osness v. Lasko Prods., Inc.*, 868 F. Supp. 2d 402, 410-11 (E.D. Pa. 2012) (dismissing warranty claim because alleged defect did not manifest during warranty period even though "defect may have existed at the time of purchase"); *Toyota*, 785 F. Supp. 2d at 932 (holding that Pennsylvania and a number of other states "would preclude or would highly like preclude some or all of the claims asserted by Plaintiffs whose products have manifested no defect").

In *Angus*, the Third Circuit faced the same question the Court does here: whether the Pennsylvania Supreme Court allows recovery for plaintiffs who purchased products that have not manifested the allegedly dangerous defect. *Angus*, 989 F.2d at 147-48. The *Angus* plaintiff asserted a tort claim based on the defendant's manufacture and sale of defective heart valves that were "likely to lead to the recipient's death or injury." *Id.* at 143. The Third Circuit held that, "regardless of how [the plaintiff] pleaded her claims," she could not recover damages for a defective heart valve absent manifestation. *Id.* at 147. The court's opinion was based in part on the policy reasoning that the Pennsylvania Supreme Court would not "sanction a large, if not vast, number of lawsuits by consumers who obtained properly functioning valves." *Id.* at 148.

After *Angus*, the Pennsylvania Supreme Court proved the Third Circuit "prescien[t]." *See Morrison v. Williams*, No. Civ.A 98-2408, 1998 WL 717423, at *3 (E.D. Pa. Sept. 18, 1998) (highlighting, in dismissing tort claim absent manifest injury from asbestos exposure, that subsequent Pennsylvania Supreme Court precedent "confirms the prescience of the Court of Appeals" in *Angus*). In *Simmons v. Pacor, Inc.*, the Pennsylvania Supreme Court held that plaintiffs who had not demonstrated symptoms from asbestos could not recover damages. 674 A.2d 232, 237 (Pa. 1996). By refusing to compensate individuals who did not manifest an

15

asbestos-related injury, the Pennsylvania Supreme Court refused to reward plaintiffs who were not yet symptomatic even though they could develop cancer in the future.  *Id.* at 236-37.[3]

Accordingly, like his Florida and Alabama counterparts, Birdsall's claims against MNAO fail for lack of defect manifestation.

### D.    Under *Iqbal* And Rule 8(a), Plaintiffs Fail To Allege That MNAO Had Knowledge Of The Inflator Defect Prior To 2013.

Since *Iqbal* was decided in 2009, multiple courts have dismissed fraud and other knowledge-dependent automotive defect claims under Rule 8(a) due to the plaintiffs' failure to plead specific facts showing that the defendant knew of the defect at the time of sale.  For instance, in *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, the Third Circuit Court of Appeals recently affirmed the dismissal of a complaint based on the failure to adequately allege that Toyota knew of a defect that caused certain vehicles' headlights to turn off.  525 F. App'x 94 (3d Cir. 2013).  The *Gotthelf* plaintiff alleged that Toyota knew or should have known of the defect based on "several customer complaints [] filed with the NHTSA" prior to the sale and "through its own '[b]ooks of [k]nowledge, internal testing, information on dealership repair orders, warranty data, [and] records of customer complaints.'"  *Id.* at 104.  The *Gotthelf* court concluded that these allegations were insufficient.  First, the "complaints were filed with the NHTSA, not with Toyota, and the NHTSA did not notify Toyota of its investigation until May 6, 2009."  *Id.* Second, the plaintiff provided no details regarding Toyota's alleged internal testing, books of knowledge, and complaints.  *Id.*; *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) ("The allegation that . . . the manufacturer, had 'access to the aggregate information and data regarding the risk of overheating' is speculative and does not suggest how any tests or information could have alerted [the manufacturer] to the defect.").  Consequently, the Court held that under *Iqbal*, "[n]othing in the Complaint provide[d] factual support for Toyota's alleged knowledge and concealment of the defect . . . .  To the contrary, the facts demonstrate[d] that once Toyota became aware of the defect during the NHTSA investigation, it

---

[3] The Pennsylvania Supreme Court also more recently recognized "[t]he impact of the defect on each class member implicates [the] concept[] of manifestation" and only certified a consumer class because the plaintiff offered proof "that each class vehicle manifested the defect" and the defendant's proof of non-manifestation was unconvincing.  *See Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 20, 27 (Pa. 2011).  By contrast, here, plaintiffs' allegations concede Birdsall's vehicle has not manifested the alleged defect.

initiated a Customer Support program to notify customers of the problem with the HID headlamps." *Gotthelf*, 525 F. App'x at 104.

Like *Gotthelf*, other courts applying Rule 8(a) post-*Iqbal* have rejected knowledge-dependent claims where the plaintiff alleged that the defendant had knowledge of a defect due to (1) the fact that the defendant designed or manufactured the product, (2) unspecified internal testing or knowledge, (3) undated customer complaints, or (4) the existence of the same defect in a similar product. *See*, *e.g.*, *Utica Nat. Ins. Grp. v. BMW of N. Am., LLC*, 45 F. Supp. 3d 157, 162 (D. Mass. 2014) (holding plaintiff failed to "allege[] facts sufficient to infer that" defendant had "knowledge of the defect" prior to sale even where, "seventy-five days later, BMW issued a recall to correct the defect" and "the recall report . . . could support an inference that BMW might have received up to nineteen complaints related to this recall"); *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1333 (S.D. Fla. 2013) (dismissing complaint for failure to plead knowledge where plaintiffs alleged that the manufacturer was aware of the design defect "since the time of manufacture" and had also received undated complaints); *Williams v. Yamaha Motor Corp., U.S.A.*, No. CV 13-05066 BRO, 2015 WL 2375906, at *9 (C.D. Cal. Apr. 29, 2015) ("[A]llegations regarding Defendant's exclusive access to engineering data 'require the Court to draw the inference that Defendant's *opportunity* to learn about this alleged defect before selling their engines to the public necessarily means that they *did* learn about the defect.'") (emphasis in original); *McQueen v. BMW of N. Am., LLC*, No. CIV.A. 12-06674 SRC, 2014 WL 656619, at *5 (D.N.J. Feb. 20, 2014) (rejecting allegation "that BMW 'had knowledge of the defect from the outset' because 'the defect [pleaded] in the SAC is an engineering decision by BMW'"); *Herremans v. BMW of N. Am., LLC*, No. CV 14-02363 MMM PJWX, 2014 WL 5017843, at *17 (C.D. Cal. Oct. 3, 2014) ("[G]eneral reference to 'internal testing, records of customer complaints, dealership repair records, and other internal sources' provides little, if any, factual foundation [for plaintiffs'] conclusion that BMW knew of the defect.")

As explained below, plaintiffs' allegations regarding MNAO's knowledge are even more deficient than the allegations in the cases cited above. Plaintiffs do not allege any facts showing that MNAO had knowledge that some of its vehicles might contain the Inflator Defect until 2013—long after the Individual Plaintiffs had purchased their vehicles. Without facts to support an allegation of direct knowledge, plaintiffs advance two theories of constructive knowledge: (1) MNAO knew or should have known that Takata's airbags were defective at the time of

manufacture because MNAO knew that Takata's design contained "volatile and unstable ammonium nitrate;" and (2) MNAO knew or should have known about the Inflator Defect because it had a duty to investigate all of its vehicles following Honda's first recall in 2008. Both of these theories fail as a matter of law, and this Court should dismiss each of plaintiffs' claims that require proof of MNAO's knowledge at the time of sale (as explained in each relevant section below).

1.   Plaintiffs Do Not Allege That MNAO Had Actual Knowledge Of The Inflator Defect Before 2013.

The first fact allegation in the SACCAC about MNAO's knowledge of the Inflator Defect is that, "[i]n February and March 2013, Takata notified Nissan and Mazda that it was investigating airbag quality." SACCAC ¶ 275. Plaintiffs allege no *facts* about what MNAO knew before 2013. *See id.* at ¶¶ 225-306. Though other defendants allegedly experienced Inflator Defect-related incidents as early as 2003, plaintiffs do not assert that any Mazda vehicles were involved in incidents during this time period. *See id.* at ¶¶ 225-28. Likewise, MNAO is not among the defendants who received complaints regarding "unusual Takata airbag deployments that should have prompted further inquiry into the airbags' fitness for use." SACCAC ¶¶ 278-79, 308.

2.   Plaintiffs' Allegation That MNAO Knew Of The Inflator Defect From The Moment Of Manufacture Fails As A Matter Of Law.

Though not alleged in the initial complaint, plaintiffs have added the allegation that "[p]rior to installing the Defective Airbags in their vehicles, the Vehicle Manufacturer Defendants knew or should have known of the Inflator Defect, because Takata informed them that the Defective Airbags contained the volatile and unstable ammonium nitrate and the Vehicle Manufacturer Defendants approved Takata's designs." SACCAC ¶ 812. Plaintiffs offer no substantive factual allegations to support this new theory. *Compare id.* at ¶¶ 194-339 *with* FCCAC at ¶¶ 177-316.

Knowing that Takata's airbags contained ammonium nitrate is not the same as knowing that the airbags were defective. The Federal District Court in New Jersey has rejected exactly the same argument. *See McQueen* 2014 WL 656619 at *5. In *McQueen*, the plaintiff alleged that "BMW was aware of [the defect at issue] 'from the design stage [of the vehicle]' because BMW intentionally design [sic] the 7–series to operate in this manner." *Id.* at *1. The court rejected this "novel" argument:

18

> [I]t is a circular argument that could be used to impute knowledge . . . to any manufacturer who designs and markets a product that is later alleged to be defective—"I (consumer) believe this item to be defective; you (manufacturer) designed the item and sold it; ergo, you knew it was defective, and thus you defrauded me when you elected not to tell me about the defect." . . . It may be, as Plaintiff argues, that because BMW designed Plaintiff's vehicle BMW "cannot disclaim knowledge of [its intentional design] choices." But it does not follow that BMW cannot disclaim knowledge of a defect when faced with a consumer fraud lawsuit. Plaintiff cannot equate design choices with fraudulent conduct simply by saying so and without pleading facts supporting a plausible inference of knowledge on BMW's part. If Rule 8(a), *Iqbal,* and *Twombly* are to have any force whatsoever, a complaint cannot state a [] claim that requires the plaintiff plead knowledge by merely alleging that the defendant designed a defective product.

*Id.* at *5. Here, MNAO's lack of knowledge is even more evident than BMW's in *McQueen* because MNAO did not design, develop, or manufacture the defective airbags. While plaintiffs' allegations may be sufficient to show that *Takata* was aware of the Inflator Defect due to difficulties it experienced in designing, testing, and manufacturing airbags with ammonium nitrate, *see* SACCAC ¶¶ 205-09, 212-24, 229, plaintiffs do not allege that Takata shared test results with MNAO. To the contrary, following the first airbag failures, plaintiffs allege that Takata performed "secret" tests, "delete[d] the test data," and "did not disclose these tests to the public or federal regulators." *Id.* at ¶¶ 230-33. On plaintiffs' "information and belief," the only vehicle manufacturer aware of these tests was Honda. *Id.* at ¶ 233.

With respect to MNAO, plaintiffs allege no incidents until December 2013 even though MNAO began using the airbags at issue in some 2003 model vehicles. *Id.* at ¶¶ 197, 225-306. This suggests that in nearly every instance, ammonium nitrate-based airbags have operated as intended in Mazda vehicles. Plaintiffs' new "knowledge of the design equals knowledge of the defect" theory is unsupported by any specific facts, and it fails as a matter of law.

3.   Plaintiffs' Allegation That MNAO Had Constructive Knowledge Based On A Duty To Investigate The First Honda Recall Fails As A Matter Of Law.

Plaintiffs' second constructive knowledge allegation is that "the Vehicle Manufacturer Defendants were again made aware of the Inflator Defect in Takata's airbags not later than 2008, when Honda first notified regulators of a problem with its Takata airbags." SACCAC ¶ 812. Plaintiffs' theory is that "[b]ecause their vehicles also contained Takata airbags, the Vehicle Manufacturer Defendants knew or should have known at that time that there was a safety problem with their airbags, and the Vehicle Manufacturer Defendants should have launched their

own investigations and notified their customers." *Id.* at ¶ 32.  In other words, plaintiffs assert that MNAO had a duty to investigate its vehicles immediately when Honda recalled 3,940 "2001 Honda Accord and Civic vehicles" due to an airbag defect.  *Id.* at ¶ 239.  No such duty exists.

"Whether a duty exists is a question of law for the court." *Gyongyosi v. Miller*, 80 So. 3d 1070, 1077 (Fla. 4th DCA 2012); *see also State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834, 839 (Ala. 1998) ("[T]he existence of a duty is a question of law to be determined by the trial judge.").  To MNAO's knowledge, no court has ever imposed a duty on one manufacturer to investigate its own products when a different manufacturer issues a recall, and at least one court has rejected this precise theory. *Herrod v. Metal Powder Products*, 886 F. Supp. 2d 1271 (D. Utah 2012).  In *Herrod*, the plaintiff argued that the defendant, a semi-trailer manufacturer, had a duty to investigate based on a recall notice issued by a different semi-trailer manufacturer.  *Id.* at 1277-78.  The recall was due to a defective wheel retention system manufactured by a third party, and the *Herrod* lawsuit was based on injuries caused by the same defect in a wheel retention system manufactured by the same third party.  Like plaintiffs here, the plaintiff in *Herrod* asserted that the defendant had constructive knowledge of the defect based on a duty to investigate its own semi-trailers following the recall of the same component manufactured by the same third party.  *Id.*  The *Herrod* court rejected this argument as "unreasonable":

> Imposing [a duty to investigate the safety of a part based on a third party's recall] would create an unreasonable burden on all non-manufacturing sellers by forcing them to track every product sold for its useful life and retain design specifications in order to identify latent risks that are uncovered in similar products years later. Non-manufacturing sellers of products are not in the best position to bear this burden and in many cases would not have the information necessary to identify such risks. Such a duty, if appropriate, should normally be placed on the manufacturer of the [component] product and not a down-line retailer.

*Id.* at 1278.  In this case, plaintiffs' own allegations show that MNAO had no reason to believe that an investigation of its airbags was necessary.  As plaintiffs allege, during the first recall, Honda "assured regulators that it had identified *all 'possible vehicles that could potentially experience the problem.'*"  SACCAC at ¶ 239 (emphasis added).  Likewise, during the 2009 recall, Takata informed NHTSA that it "has not provided any airbag inflators that are the same or substantially similar to the inflators in vehicles covered by Recalls 08V-593 [in 2008] and 09V-259 [in 2009] to any customers other than Honda. *The physical characteristics of the inflator housing used in the Honda vehicles subject to these recalls are unique to Honda.*"  *Id.* at ¶ 257

(emphasis added).  Between the 2008 Honda recall and 2013, plaintiffs allege no statements, recalls, or other events indicating that some Mazda vehicles might contain defective airbags.  *See* SACCAC ¶¶ 239-79.

In sum, plaintiffs have not alleged facts establishing that MNAO had a duty to investigate its airbags.  The Court should adopt *Herrod*'s reasoning.  Tens of millions of vehicles are recalled every year, with each recall affecting different makes, models, and numbers of vehicles.  *See* http://www.nhtsa.gov/Vehicle+Safety/Recalls+&+Defects.[4]  "[F]orcing [MNAO] to track every product sold"—and every component in those products—"for its useful life . . . in order to identify latent risks that are uncovered in similar products years later" would impose an "unreasonable burden" on the company.  *Herrod*, 886 F. Supp. 2d at 1278.  If any entity had a duty to investigate whether Mazda's vehicles were potentially affected, Takata was in "best position to bear this burden and . . . ha[d] the information necessary to identify such risks."  *Id.*; *see also* SACCAC at ¶ 336 (alleging that the recyclers—entities that sell airbags as stand-alone products—cannot detect whether the airbags they own contain the Inflator Defect.).  Plaintiffs' allegation that MNAO had constructive knowledge of the Inflator Defect is based solely on a duty that does not exist as a matter of law, and plaintiffs have therefore failed to allege that MNAO had any knowledge of the Inflator Defect—actual or constructive—before 2013.

   **E.    This Court Should Dismiss All Claims Asserted By Crystal Pardue (Ala.)**[5]

       1.    Fraudulent Concealment – Count 25

Under Alabama law, "[t]o establish a prima facie case of fraudulent concealment of a material fact, a plaintiff must show (1) that the defendant had a duty to disclose a material fact, (2) that the defendant concealed or failed to disclose a material fact, (3) that the defendant's concealment or failure to disclose the material fact induced the plaintiff to act or to refrain from acting, and (4) that the plaintiff suffered actual damage as a proximate result."  *Dodd v. Nelda Stephenson Chevrolet, Inc.*, 626 So. 2d 1288, 1293 (Ala. 1993).

---

[4]  This Court can "take judicial notice of documents filed with NHTSA and now available on the agency's public website."  *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1212 (10th Cir. 2012) (applying rule that "[t]he contents of an administrative agency's publicly available files . . . traditionally qualify for judicial notice").

[5]  Unlike Vukadinovic, Pardue does not assert claims against MNAO under the MMWA (Count 3) or for breach of the implied warranty of merchantability as part of the Alabama sub-class.

"As a matter of law, one can only be liable for concealing facts of which one has knowledge." *Harrell v. Dodson*, 398 So. 2d 272, 276 (Ala. 1981). "Concealment implies design, or purpose." *Marshall v. Crocker*, 387 So. 2d 176, 179 (Ala. 1980). Consequently, "an action for suppression will lie only if the defendant *actually knows* the fact alleged to be suppressed." *Cook's Pest Control, Inc. v. Rebar*, 28 So. 3d 716, 726 (Ala. 2009) (emphasis added). "Even if [a defendant] should have discovered" the allegedly concealed fact, "unless [the defendant] actually did discover it, a claim of fraudulent suppression will not lie." *Id.*

As set out in Section D.1, plaintiffs allege that MNAO first had actual knowledge of the inflator defect in 2013, after Pardue purchased her vehicle used in 2012. Plaintiffs' other knowledge theories allege constructive knowledge—that MNAO "knew or should have known" of the defect either at the time of manufacture or following the first Honda recall in 2008. *See id*. Even if these constructive knowledge allegations are plausible, they are insufficient to plead fraudulent concealment under Alabama law.

Pardue's claim also fails to meet the heightened pleading requirements of Rule 9(b). Pardue purchased her car from a *used* car dealership unaffiliated with MNAO. SACCAC ¶ 141. Plaintiffs do not allege that she interacted with any MNAO employees or agents, much less allege the "time and place of each [] statement" containing a material admission and the "person responsible" for making it. *Clausen*, 290 F.3d at 1310. They also do not allege any "statement" by MNAO other than the recall notice she received, much less the "content of such statements," and she does not allege "what [MNAO] obtained" from her used vehicle purchase "as a consequence of" the alleged fraud. *Id*. Pardue's claim therefore fails.

Finally, Pardue's fraudulent concealment claim should be dismissed because MNAO did not have a *duty* to disclose any information to Pardue (a used car purchaser) regarding the Takata airbags. In support of this argument, MNAO incorporates by reference the duty arguments made under Alabama law by Subaru of America, Inc. ("Subaru"). Subaru MTD at Sec. III.B.

2.    Negligent Failure To Recall – Count 31

Pardue's negligent failure to recall claim must be dismissed for three independent reasons. First, Alabama does not recognize a failure to recall claim. Second, even if it did, Pardue's claim would be barred by Alabama's economic loss rule. Third, as explained in Section I, Pardue's claim is barred under the primary jurisdiction doctrine.

a.   *Alabama Law Does Not Recognize A Claim For Negligent*
    *Failure To Recall.*

Alabama courts do not recognize a common law claim for negligent failure to recall.  *See*,
*e.g.*, *Ray v. Ford Motor Co.*, No. 3:07CV175-WHA-TFM, 2011 WL 6749034, at *2 (M.D. Ala.
Dec. 23, 2011).  While a small minority of courts have created this duty, "the vast majority of
jurisdictions [have] refuse[d] to create a cause of action for 'failure to recall and/or retrofit.'"
*Nelson v. Original Smith & Wesson Bus. Entities &/or Corp.*, No. 4:10-CV-0003-RRB, 2010
WL 7125186, at *3 (D. Alaska May 18, 2010), *aff'd*, 449 F. App'x 581 (9th Cir. 2011); *see also*
*McDaniel v. Bieffe USA, Inc.*, 35 F. Supp. 2d 735, 743 (D. Minn. 1999) (holding that Michigan
would likely reject a common law duty to recall because "the overwhelming majority of other
jurisdictions have rejected such an obligation").

Like the majority of jurisdictions, the Restatement (Third) of Torts rejects a common law
duty to recall and explains the justification for the majority rule:

> Duties to recall products impose significant burdens on manufacturers. . . . [E]ven
> when a product is defective . . . , an involuntary duty to recall should be imposed
> on the seller only by a governmental directive issued pursuant to statute or
> regulation.  Issues relating to product recalls are best evaluated by governmental
> agencies capable of gathering adequate data regarding the ramifications of such
> undertakings.

Restatement (Third) of Torts: Prod. Liab. § 11 cmt. a (1998).  Because Pardue's negligent failure
to recall claim does not exist under Alabama law, it should be dismissed.

b.   *In the Alternative, The Economic Loss Rule Requires*
    *Dismissal.*

Pardue's negligence claim is barred by Alabama's economic loss rule because she seeks
damages only "for economic losses" related to the alleged reduction in value of her vehicle due
to the Inflator Defect.  SACCAC, ¶ 194.  Under Alabama's economic loss rule, "a cause of
action does not arise under [the] tort theor[y] of negligence . . . where a product malfunctions or
is defective and thereby causes damage only to the product itself."  *Rice*, 726 So. 2d at 631.  This
rule is applicable to claims alleging a defect in the vehicles that "renders them all defective and
unreasonably dangerous."  *Id.* at 629 (addressing claims that vehicles have "undue propensity to
roll over in sudden-avoidance maneuvers."); *see also Dairyland Ins. Co. v. Gen. Motors Corp.*,
549 So. 2d 44, 45 (Ala. 1989) (dismissing claim against manufacturer alleging defect that caused
vehicle to catch "fire while [plaintiff] was driving it" under the economic loss rule).

3.      Unjust Enrichment – Count 27

Pardue's unjust enrichment claim fails under Alabama law for multiple reasons. Principally, "[a] defendant cannot be unjustly enriched if it does not have in its possession any money belonging to the plaintiff."  *RREF RB-AL SLDL, LLC v. Saxon Land Dev.*, 968 F. Supp. 2d 1133, 1141 (M.D. Ala. 2013).  Pardue alleges that she purchased a 2007 model Mazda in 2012 from a *used* car dealership.  SACCAC ¶ 141.  Plaintiffs do not allege that MNAO received any of the money she paid for this purchase.  *Id.*  Even if the claim did not fail for this reason, it would fail because plaintiffs have alleged adequate remedies at law.  *See, e.g.*, *N. Assur. Co. of Am. v. Bayside Marine Const., Inc.*, No. 08-cv-222, 2009 WL 151023, at *4 (S.D. Ala. Jan. 21, 2009) ("In Alabama, the doctrine of unjust enrichment is an equitable remedy which issues only where there is no adequate remedy at law.").

4.      Alabama Deceptive Trade Practices Act – Count 49

Pardue's ADTPA claim suffers from at least three deficiencies, any one of which requires dismissal of that claim.  First, plaintiffs do not allege that Pardue's 2007 Mazda 6 manifested the airbag defect.  *See* SACCAC ¶ 128.  As explained in Section C.2, because her vehicle did not manifest the alleged defect, Pardue cannot state a claim for damages under the ADTPA.  *See Farsian*, 682 So. 2d at 407-08; *Rice*, 726 So. 2d at 631.

Second, the ADTPA requires proof of "knowledge of false or deceptive conduct on the part of the wrongdoer."  *Sam v. Beaird*, 685 So. 2d 742, 744 (Ala. Civ. App. 1996).  As detailed in Section D, plaintiffs fail to adequately allege MNAO's knowledge of false or deceptive conduct.  Accordingly, Pardue cannot assert an ADTPA claim against MNAO.

Third, Pardue cannot state an ADTPA claim because she failed to satisfy the statute's pre-suit demand requirement.   The ADTPA provides that "at least 15 days prior to the filing of any action under this section," Pardue had to make "a written demand for relief" that "reasonably describe[es] the unfair or deceptive act or practice relied upon and the injury suffered."  Ala. Code § 8-19-10(e).  Plaintiffs do not allege that Pardue provided Mazda with any notice before filing suit, let alone a written demand with the specificity required under the statute.  *See* SACCAC ¶ 128.  Pardue's failure to meet this pre-suit written demand requirement mandates dismissal of her ADTPA claim.  *See, e.g., Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1399-1400 (N.D. Ala. 1997) (dismissing ADTPA claim for failure to comply with 15-day pre-suit notice requirement).

**F.      This Court Should Dismiss All Claims Asserted By Vukadinovic (Fla.)**

1.      Fraudulent Concealment – Count 25

Vukadinovic's claim for fraudulent concealment under Florida law should be dismissed for at least four reasons.  First, in products liability cases, Florida's economic loss rule bars a plaintiff from recovering "economic damages caused by a defective product beyond those damages provided by warranty law." *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 401 (Fla. 2013); *Burns v. Winnebago Indus., Inc.*, No. 8:13-CV-1427-T-24, 2013 WL 4437246, at *3 (M.D. Fla. Aug. 16, 2013) (dismissing fraudulent concealment claim under Florida's economic loss rule); *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1338 (S.D. Fla. 2013).  Under this rule, "a manufacturer in a commercial relationship has no duty under either a negligence or strict products liability theory to prevent a product from injuring itself." *Tiara*, 110 So.3d at 404-05 (emphasis added).  Therefore, Vukadinovic's fraudulent concealment claim should be dismissed under the economic loss rule.

Second, Vukadinovic has not adequately alleged that MNAO had knowledge of any false statements to Vukadinovic at the time he purchased his car.  Under Florida law, "[t]he elements for actionable fraud are (1) a false statement concerning a material fact; (2) knowledge by the person making the statement that the representation is false; (3) the intent by the person making the statement that the representation will induce another to act on it; and (4) reliance on the representation to the injury of the other party." *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984).  With respect to fraudulent concealment claims based on the sale of an allegedly defective vehicle, plaintiffs must allege that the defendant knew of the defect at the time of sale.  *See Aprigliano*, 979 F. Supp. 2d at 1343.  It is not sufficient for a plaintiff to allege that the defendant "knew or should have known" a statement was false.  *See Rand v. Nat'l Fin. Ins. Co.*, 304 F.3d 1049, 1052 (11th Cir. 2002) (citing *First Interstate Dev. Corp. v. Ablanedo*, 511 So. 2d 536, 539 (Fla. 1987)).  Rather, the Florida Supreme Court has held that a plaintiff must show that a defendant's misrepresentation was "deliberate and knowing."  *Ablanedo*, 511 So.2d at 539.

Plaintiffs do not allege any facts showing that MNAO had actual knowledge until 2013.  Because plaintiffs fail to allege that MNAO had actual knowledge of the Inflator Defect when he purchased his vehicle in early 2005, his fraudulent concealment claim fails.  *See Aprigliano*, 979 F. Supp. 2d at 1343 (dismissing claim where plaintiffs "fail[ed] to plead facts sufficient to

establish Honda's knowledge and concealment of the defect [at the time of sale], much less that Honda's actions amount[ed] to a scheme to defraud its customers.").

Third, Vukadinovic's fraudulent concealment claim fails under Rule 9(b).  The only specific statement by MNAO that was allegedly fraudulent is that, at some unspecified time, an unspecified employee at an unspecified "Mazda dealership" (which is not owned or operated by MNAO) told him that his airbag light was "nothing to worry about."  SACCAC ¶ 175.  Other than this statement, Vukadinovic alleges he "viewed or heard about the vehicle" in unspecified advertisements.  *Id.*  These nondescript allegations are not sufficient to meet Rule 9(b)'s heightened pleading standard.  *See Clausen*, 209 F.3d at 1310 (stating that plaintiff must identify "precisely what . . . omissions were made," the "time and place" of each omission, the "person responsible" for the omission, and the "manner in which" the statements containing the omission "misled the plaintiff").

Finally, Vukadinovic's fraudulent concealment claim should be dismissed because MNAO did not have a *duty* to disclose any information to Vukadinovic regarding the Takata airbags.  In support of this argument, MNAO incorporates by reference the duty arguments made under Florida law by Nissan.  Nissan MTD at Sec. VII.C.

### 2.   Negligent Failure To Recall – Count 31

Vukadinovic's negligent failure to recall claim should be dismissed for three reasons.  First, as in Alabama, Florida does not recognize a common law duty to recall.  *See Thomas v. Bombardier Recreational Prods., Inc.*, 682 F. Supp. 2d 1297, 1302 (M.D. Fla. 2010) ("Plaintiff does not dispute defendant's argument that Florida law does not recognize that a manufacturer has a post-sale duty to recall or retrofit a product.").  Second, even if such a claim was recognized in Florida, it should be dismissed pursuant to Florida's economic loss rule.  *Tiara*, 110 So. 3d at 401.  Finally, as detailed in Section I, Vukadinovic's negligent failure to recall claim should be dismissed in favor of NHTSA's primary jurisdiction over automotive recalls.

### 3.   Unjust Enrichment – Count 27

Vukadinovic's unjust enrichment claim should be dismissed for at least two reasons.  First, "[t]he statute of limitations on a claim for unjust enrichment is four years."  *E.g. Swafford v. Schweitzer*, 906 So. 2d 1194, 1195 (Fla. 4th DCA 2005).  "Under Florida law, a cause of action for unjust enrichment is extinguished unless the action is brought within four years after the transfer was made, regardless of when the transfer is ultimately discovered."  *Steinberg v. A*

*Analyst Ltd.*, No. 04-60898-CIV, 2009 WL 806780, at *10 (S.D. Fla. Mar. 26, 2009).  "The

Florida Supreme Court has ruled that there is no equitable tolling for unjust enrichment claims

and has refused to apply a delayed discovery doctrine to such claims." *Id.* (citing *Davis v.

Monahan*, 832 So.2d 708, 711-12 (Fla. 2002)).  Vukadinovic's unjust enrichment claim accrued

when he purchased his vehicle in 2005, and the statute of limitations ran on this claim in 2009.

Second, "[i]t is well settled in Florida that unjust enrichment is an equitable remedy and

is, therefore, not available where there is an adequate legal remedy." *Am. Honda Motor Co. v.

Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).  Here, the express

warranty Vukadinovic received from MNAO governs claims related to defects in his vehicle, and

"a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract

exists concerning the same subject matter." *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989

So. 2d 696, 697 (Fla. 1st DCA 2008).  For both of these reasons, Vukadinovic's unjust

enrichment claim must be dismissed.

4. <u>Florida Unfair And Deceptive Trade Practices Act – Count 47</u>

As explained above, Florida law requires manifestation of a defect as a prerequisite to the

recovery of damages.  Section C.1.  Florida's manifestation requirement applies to

Vukadinovic's FDUTPA claim, and it must be dismissed.  *Kia Motors*, 985 So. 2d at 1139.

Even if Vukadinovic's vehicle had manifested the alleged defect, his FDUTPA claim is

barred by Florida's four-year statute of limitations for FDUTPA claims.  *Marlborough Holdings

Grp., Ltd. v. Azimut-Benetti,SPA, Platinum Yacht Collection No. Two, Inc.*, 505 F. App'x 899,

906 (11th Cir. 2013) (citing, *e.g.*, § 95.11(3)(f), Fla. Stat.).  As this Court recently confirmed,

Vukadinovic's "FDUTPA claim accrue[d] at the time of purchase . . ., not upon discovery of an

alleged defect."  *Speier-Roche*, 2014 WL 1745050, at *6 ("It is well-settled there is no 'delayed

discovery rule' applicable to FDUTPA claims.").

Applying these rules here, Vukadinovic's FDUTPA claim accrued when he purchased his

2004 Mazda MPV "new in early 2005."  SACCAC ¶ 159.  Consequently, the statute of

limitations for his FDUTPA claim ran in early 2009, several years before plaintiffs commenced

this action, and his claim must be dismissed.  *See Speier-Roche*, 2014 WL 1745050, at *6-7.

Finally, Vukadinovic's FDUTPA claim should be dismissed because it fails to allege any

actionable misrepresentation that MNAO made about its vehicles.  Instead, the only specific

representations alleged in the SACCAC are non-actionable puffery.  SACCAC at  310(d)

(advertising Mazda vehicles as having "inspiring performance," "legendary performance, function, style, and safety," and "reassuring safety features" with no reference to safety of its airbags).  In support of this argument, MNAO hereby incorporates by reference the arguments under Florida law made by Nissan in its Motion to Dismiss.  Nissan MTD at Sec. VIII.

5.      Magnuson-Moss Warranty Act Claim – Count 3

The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq. ("MMWA") authorizes civil actions by consumers to enforce the terms of both express and implied warranties under state law.  *Gill v. Blue Bird Body Co.*, 147 F. App'x 807, 810 (11th Cir. 2005) (opining that state law "controls" MMWA claims); *Bohlke v. Shearer's Foods, LLC*, No. 14-cv-80727, 2015 WL 4249418, at *12  (S.D. Fla. Jan. 20, 2015) (holding that a MMWA "claim depends on a state law claim for breach of warranty") (citations omitted).  While MMWA claims constitute separate federal causes of action for breach of warranty, "courts must look to the relevant state law to determine the meaning and creation of any implied warranty," and "state law thus controls" Vukadinovic's implied warranty MMWA claim.  *Gill*, 147 F. App'x at 810.

If the Court dismisses Vukadinovic's state law warranty claim, it must also dismiss his MMWA claim.  *E.g., David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1324 (S.D. Fla. 2009) ("Plaintiff's implied warranty fails under Florida law. Therefore, a MMWA claim based on breach of implied warranty fails.").  As explained immediately below, Vukadinovic's state-law warranty claim fails for numerous reasons.

6.      Implied Warranty Of Merchantability – Count 48

a.      *Vukadinovic Did Not Provide Pre-Suit Notice.*

Under Florida law, a "buyer must notify the seller that the goods are nonconforming in order to recover damages for breach of either an express or implied warranty."  *Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 642 (S.D. Fla. 2008).  Fla. Stat. § 672.607(3)(a) mandates that a  "buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy. . . ."  Moreover, "'the burden is on the plaintiff to show that he gave the required notice within a reasonable time.'"  *Cohen*, 259 F.R.D. at 642 (quoting *Gen. Matters v. Paramount Canning Co.*, 382 So. 2d 1262, 1264 (Fla. 2d DCA 1980)).  Here, plaintiffs have not alleged that Vukadinovic provided notice that his vehicle was nonconforming.  Accordingly, his implied warranty claim should be dismissed.

b.      *Vukadinovic Lacks Privity With MNAO.*

"Florida law requires privity of contract to sustain a breach of implied warranty claim."

*David*, 629 F. Supp. 2d at 1321; *see also Bailey v. Monaco Coach Corp.*, 168 F. App'x. 893, 894

(11th Cir. 2006) ("[Plaintiff] purchased the motor home from a dealer and not directly from [the

manufacturer].  No privity exists between [plaintiff] and [defendant]."); *Speier-Roche*, 2014 WL

1745050, at *7 ("[W]hen a vehicle is purchased directly from a dealer as opposed to the

manufacturer . . . no privity exists between the plaintiff and manufacturer," and without privity,

the plaintiff "fails to state a valid implied warranty claim against Defendant."); *Justice v. Rheem

Mfg. Co.*, 2014 U.S. Dist. LEXIS 179128, *17 (S.D. Fla. Aug. 21, 2014) (dismissing implied

warranty claims for lack of privity, and rejecting plaintiff's claim that the implied warranties

were applicable because they were intended for "end users . . ., regardless of the existence of

intermediary sellers/dealers."); *Mesa v. BMW N. Am.*, 904 So. 2d 450, 458 (Fla. 3d DCA 2005)

("Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty

in the absence of privity.").

Vukadinovic purchased his vehicle from a dealer, not from MNAO (a distributer).

Consequently, just like in *Speier-Roche*, this Court should find that Vukadinovic lacks privity

with MNAO and should dismiss his claim for breach of implied warranty of merchantability.

c.      *In The Alternative, Vukadinovic's Implied Warranty Claim
        Is Time Barred.*

If this Court determines that Vukadinovic's implied warranty claim does not fail for lack

of privity or failure to provide pre-suit notice, his claim should still be dismissed because it is

time barred.  Vukadinovic's implied warranty claim is precluded by the express written warranty

that covered his vehicle.  SACCAC ¶ 175.  That written warranty modified any implied

warranties that attached to Vukadinovic's vehicle by limiting their duration to the duration of the

express warranty, which was "**48 months** or **50,000 miles,** whichever comes first."  *See* 2004

MPV Warranty, attached as Exhibit A at 9, 14; *see, e.g., Speier-Roche*, 2014 WL 1745050, at

*24 (dismissing implied warranty claim made outside of the 12-months/12,000 miles duration of

the express warranty where the express warranty provided that:  "Any implied warranty,

including any warranty of merchantability or warranty of fitness for a particular purpose, is

limited in duration to the stated period of these written warranties.").   Under Florida law, an

express written warranty may modify the implied warranty of merchantability if two

requirements are met:  (1) the express warranty "mention[s] merchantability" and (2) the modification is conspicuous.  Fla. Stat. § 672.316(2).  Both of these requirements were met here.

First, the warranty modifies "**All Implied Warranties, including but not limited to any regarding marketability**."  2004 MPV Warranty, Ex. A at 14.  Second, the modifications are conspicuous because they are presented on their own page, the main modifications are in bold lettering, and the types of warranties that are being modified are capitalized.  *See, e.g., McKissic v. Country Coach, Inc.*, No. 8:07-cv-1488, 2008 WL 2782678, at *4 (M.D. Fla. July, 16 2008) (modification conspicuous when on the reverse page and capitalized); Fla. Stat. § 671.201 (modification conspicuous when, there is a heading in bold type and the warranty "call[s] attention to the language" of the modification).  Because the complaint here was filed ten years after Vukadinovic purchased the vehicle in early 2005 (SACCAC at ¶ 175), his implied warranty claim is time barred by the terms of his written warranty.

### G.   This Court Should Dismiss All Claims Asserted By Birdsall (Pa.)

#### 1.   Fraudulent Concealment – Count 25

Birdsall's claim for fraudulent concealment should be dismissed for at least four reasons.  First, Pennsylvania's economic loss rule bars a plaintiff from recovering purely economic damages for fraudulent concealment where the injury is limited to the product itself.  *Excavation Tech., Inc. v. Columbia Gas Co. of Pa.*, 936 A.2d 111, 115 (Pa. Super Ct. 2007) ("The economic loss rule states that 'no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage.").  Though the Pennsylvania Supreme Court has not addressed the applicability of the economic loss rule to fraud claims, the Third Circuit Court of Appeals "predicted that the Supreme Court of Pennsylvania would apply the economic loss doctrine to intentional fraud cases," particularly given "Pennsylvania's acceptance of the 'gist of the action' doctrine" and because Pennsylvania state courts have exhibited a 'lack of hospitality to tort liability for purely economic loss.'"  *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 (3d Cir. 2002).  This Court should follow *Werwinski* and dismiss Birdsall's fraudulent concealment claim under Pennsylvania's economic loss rule.

Second, plaintiffs have not adequately alleged that MNAO knowingly made false statements to Birdsall related to the purchase of his car.  Pennsylvania has adopted a six element test for fraud that requires a plaintiff to prove, among other things, that the defendant made the alleged misrepresentation "with knowledge of its falsity or recklessness as to whether it is true or

false." *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999). As explained in Section D, plaintiffs fail to plausibly allege that MNAO had knowledge of the Defect, either when an independent dealer first sold Birdsall's 2004 Mazda 6i or when Birdsall purchased his vehicle used in 2008. SACCAC ¶ 85. His fraudulent concealment claim must therefore be dismissed.

Third, Birdsall's fraud claim also fails under Rule 9(b) for failure to plead fraud with particularity. Although plaintiffs alleged that Birdsall viewed unspecified advertisements before purchasing his vehicle, SACCAC ¶ 85, they fail to allege any of the details necessary to satisfy Rule 9(b)'s heightened pleading standard. *See Clausen* 209 F.3d at 1310 (stating that plaintiff must identify "precisely what . . . omissions were made," the "time and place" of each omission, the "person responsible" for the omission, and the "manner in which" the statements containing the omission "misled the plaintiff").

Finally, Birdsall's fraudulent concealment claim should be dismissed because MNAO did not have a *duty* to disclose any information to Birdsall (a used car purchaser) regarding the Takata airbags. In support of this argument, MNAO incorporates by reference duty arguments made under Pennsylvania law by Nissan in its motion to dismiss. Nissan MTD at Sec. VII.C.

### 2.    Negligent Failure To Recall – Count 31

Birdsall's negligent failure to recall claim should be dismissed for three reasons. First, as in Alabama and Florida, Pennsylvania has not recognized a common law duty to recall. Second, even if such a claim were recognized in Pennsylvania, it should be dismissed pursuant to Pennsylvania's economic loss rule. *Excavation Tech.*, 936 A.2d at 115 ("The economic loss rule states that 'no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage."). Finally, as detailed in Section I below, Birdsall's negligent failure to recall claim should be dismissed in favor of NHTSA's primary jurisdiction over automotive recalls.

### 3.    Unjust Enrichment – Count 27

Under Pennsylvania law, "[t]he elements necessary to prove unjust enrichment are: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Mitchell v. Moore*, 729 A.2d 1200, 1203-04 (Pa. Super. 1999). Because Birdsall purchased his vehicle from a *used* car dealership with no connection to MNAO, SACCAC ¶ 85, Birdsall did not confer a benefit on

MNAO, *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 722 (E.D. Pa. 2013) (dismissing unjust enrichment claim where "Plaintiffs do not even allege that they purchased their vehicles from Defendant or one of Defendant's dealers."). In other words, without "alleged evidence of actual payment to" MNAO connected to Birdsall's purchase, the claim fails. *Novae Corporate Underwriting Ltd. v. Atl. Mut. Ins. Co.*, 556 F. Supp. 2d 489, 497 (E.D. Pa. 2008).

Furthermore, in Pennsylvania, "equitable relief is not appropriate where a party has an adequate legal or statutory remedy." *Tudor Dev. Grp., Inc. v. U.S. Fid. & Guar. Co.*, 968 F.2d 357, 364 (3d Cir. 1992) (citation omitted). "In determining whether a remedy is "adequate," we must look to its availability and not to the likelihood of its success." *Id.* (citation omitted). *Id.* Here, Birdsall alleges multiple statutory and common law claims. To the extent he is entitled to recover anything, it is through those claims rather than an equitable claim for unjust enrichment.

> 4. <u>Birdsall Cannot Assert MMWA, UTPCPL, Or Implied Warranty Claims On Behalf Of The Pennsylvania Sub-Class.</u>

Plaintiffs do not assert claims against MNAO on behalf of the Pennsylvania sub-class. *See* SACCAC ¶¶ 1685, 1707 (asserting claims against Takata, Honda, BMW, Nissan, and Toyota). But even if they had, the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") and implied warranty claims asserted by that subclass would fail as a matter of law. First, any claim under the UTPCPL would be barred by the economic loss doctrine. *See Werwinski*, 286 F.3d at 681 (holding that Pennsylvania's economic loss doctrine applies to claims under the UTPCPL). In addition, a UTPCPL claim would fail because Birdsall fails to allege any actionable misrepresentation that MNAO made about its vehicles. Instead, the only specific representations alleged in the SACCAC are non-actionable puffery. SACCAC at 310(d) (advertising Mazda vehicles as having "inspiring performance," "legendary performance, function, style, and safety," and "reassuring safety features" with no reference to safety of its airbags). In support of this argument, MNAO hereby incorporates by reference the arguments under Pennsylvania law made by Nissan in its Motion to Dismiss. Nissan MTD at Sec. VIII.

Likewise, any claim for breach of the implied warranty of merchantability would fail because it would be untimely, either because Birdsall did not file suit within four years of the date he purchased his vehicle in June 2008, *see Busche v. Monaco Coach Corp.*, No. 06-cv-3801, 2006 WL 3302477, at *4 (E.D. Pa. Nov. 13, 2006) (holding that the four-year statute of limitations for implied warranty claims "accrues on the date the tender of delivery is made"), or

within the 48-month durational limit created by the applicable express warranty.  *See* 2004 Mazda 6i Warranty, attached hereto as Exhibit B at 9, 14; *Kagan v. Harley Davidson, Inc.*, No. 07-cv-0694, 2008 WL 1815308, at *9 (E.D. Pa. Apr. 22, 2008) (holding that implied warranty claims expire at the same time as express warranty claims).  Finally, Birdsall's implied warranty claim would fail because Pennsylvania law requires a product to malfunction in order to state an implied warranty claim.  *Osness*, 868 F. Supp. 2d at 414.  Here, Birdsall does not allege that the airbag in his Mazda vehicle failed at any point, and his claim would therefore fail.  Because Birdsall did not and cannot assert a claim for breach of implied warranty under Pennsylvania law, his claim for breach of the MMWA also fails as detailed above.  *See* Section F.5.

> **H.      This Court Should Dismiss All Claims Asserted By the ARA (Fla.)**

MNAO moves to dismiss all claims asserted against MNAO by the ARA (Counts 104-106).  In support of this motion, MNAO hereby incorporates by reference the arguments in the Memorandum of Law of the Automotive Defendants in Support of Motion to Dismiss the Automotive Dismantlers and Recyclers Association, Inc.'s Claims in the Second Amended Consolidated Class Action Complaint, which was filed contemporaneously by Honda on behalf of the Automotive Defendants.  For the reasons stated therein, MNAO respectfully requests that the ARA's claims against MNAO be dismissed.

> **I.      This Court Should Dismiss All Claims For Injunctive Relief And The Negligent Failure To Recall Claim Given NHTSA's Primary Jurisdiction**

Plaintiffs' negligent failure to recall claim and claims for injunctive relief fall directly within the traditional competence of NHTSA and, therefore, should be dismissed under the doctrine of primary jurisdiction.  "'Primary jurisdiction is a judicially created doctrine whereby a court of competent jurisdiction may dismiss or stay an action pending a resolution of some portion of the action[] by an administrative agency.' The purpose of the doctrine is to allow an administrative agency to resolve issues that are within the special competence of that body." *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1277 (S.D. Fla. 2009) (quoting *Smith v. GTE Corp.*, 236 F.3d 1292, 1298 n.3 (11th Cir. 2001)).  In determining when an agency has primary jurisdiction over an issue, courts generally consider:  (1) whether the question is within the conventional experience of judges or instead involves technical or policy considerations within the agency's expertise; and (2) whether there is a possibility of inconsistent rulings that would disrupt the regulation of the business entrusted to the agency.  *See United*

33

*States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956); *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303-04 (1976).

In addition to the claim for negligent failure to recall, plaintiffs seek various types of "injunctive relief," including "Court supervision of the Mazda Defendants' numerous recalls." SACCAC ¶ 767, Prayer for Relief ¶¶ D, G.  These claims and requests fall squarely within NHTSA's wheelhouse and are not suited for resolution by this Court.  "[T]he Motor Vehicle Safety Act, 49 U.S.C. § 30101 *et seq.*, gives NHTSA the authority to investigate complaints concerning automobile defects and to order a recall where appropriate."  *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 464 (D.N.J. 1998).  Since as early as 2008, NHTSA has been heavily involved in recall decisions with respect to vehicles with Takata airbags.  SACCAC ¶¶ 237-308.  More importantly, NHTSA's "investigation and oversight" of Takata-airbag-related recalls is still "ongoing."[6]  NHTSA, *Department of Transportation Announces Steps to Address Takata Air Bag Defects* (May 19, 2015); *see* SACCAC ¶ 299.

The doctrine of primary jurisdiction precludes plaintiffs from pursuing claims in a judicial forum that bear directly upon NHTSA's investigation and decisions. "Courts are not equipped to decide whether and how to fix allegedly defective products."  *White v. Gen. Motors Corp.*, 718 So.2d 480, 505-06 (La. Ct. App. 1998).  These questions are best suited for "[NHTSA] or other administrative agencies with the budget, staffing, technical expertise and legislative mandate."  *Id.*; *see also Chrysler Corp. v. Dep't of Transp.*, 472 F.2d 659, 675 (6th Cir. 1972) (recognizing NHTSA's "expertise" in automobile safety).  Where NHTSA "has taken jurisdiction of [the defect] matter and negotiated recall mandates" the court "should defer to NHTSA" with respect to claims implicating those processes.  *Ford Motor Co. v. Magill,* 698 So.2d 1244, 1245 (Fla. 3d DCA 1997); *see also Silvas v. Gen. Motors, LLC*, No. 2:14-cv-89, 2014 WL 1572590, at *3 (S.D. Tex. Apr. 17, 2014) (deferring "to NHTSA under the doctrine of primary jurisdiction" because plaintiffs "put a recall matter directly in issue"); *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 629 (M.D.N.C. 2005) (dismissing claims relating to vehicles subject to a recall because the requested "relief . . . is clearly within the special competence of the NHTSA").

---

[6]  http://www.nhtsa.gov/About+NHTSA/Press+Releases/DOT-action-on-takata-air-bag-defects.

As important, this Court should defer to NHTSA to prevent issuing a ruling that would disrupt the regulation of businesses under NHTSA's supervision. *Nader*, 426 U.S. at 303-04. Prudence dictates that NHTSA should have the first and comprehensive opportunity to address automobile recalls. "[A]ffording a judicial remedy on top of one already promised by a coordinate branch risks needless inter-branch disputes over the execution of the remedial process" and "risks . . . discouraging other branches from seeking to resolve disputes pending in court." *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1211 (10th Cir. 2012); *see also Flo-Sun, Inc. v. Kirk*, 783 So. 2d 1029, 1037 (Fla. 2001) (explaining that application of the primary jurisdiction doctrine promotes the "integrity of the administrative process and . . . allow[s] the executive branch to carry out its responsibilities as a co-equal branch of government"). For these reasons, plaintiffs' claims for injunctive relief and negligent failure to recall must be dismissed in deference to NHTSA's overriding jurisdiction.

In addition to the doctrine of primary jurisdiction, plaintiffs' claims for injunctive relief and negligent failure to recall should be dismissed for two additional reasons. First, plaintiffs' requests for injunctive relief and their negligent failure to recall claim should be dismissed because they are prudentially moot. In support of this argument, MNAO incorporates by reference Honda's argument on this issue. Honda MTD at Sec. II.B. Second, these claims should be dismissed because they are preempted by federal law. In support of this argument, MNAO incorporates by reference the arguments on preemption made by Toyota and Ford in their motions to dismiss. Toyota MTD at Secs. VII.B, VIII; Ford MTD at Sec. IV.I.

Finally, if MNAO's Motion to Dismiss is not granted in its entirety, then MNAO seeks a stay of the MDL litigation for six months in deference to NHTSA's primary jurisdiction over automotive recalls. In support of this argument, MNAO incorporates by reference the Motion to Stay Based on the Primary Jurisdiction of the National Highway Traffic Safety Administration, which was filed by Toyota contemporaneously herewith.

## CONCLUSION

For all of the foregoing reasons, MNAO respectfully requests that this Court dismiss all the claims asserted against MNAO by Pardue, Vukadinovic, Birdsall, and the ARA.

Dated: July 17, 2015                    Respectfully submitted,

                                        Cari K. Dawson
                                        cari.dawson@alston.com
                                        Scott A. Elder
                                        scott.elder@alston.com
                                        Daniel C. Norris
                                        daniel.norris@alston.com
                                        ALSTON & BIRD LLP
                                        One Atlantic Center
                                        1201 West Peachtree Street
                                        Atlanta, GA 30309
                                        T: (404) 881-7000
                                        F: (404) 881-7777
                                        (*admitted pro hac vice*)

                                        Michael R. Tein
                                        mtein@lewistein.com
                                        Guy A. Lewis
                                        glewis@lewistein.com
                                        LEWIS TEIN, P.L.
                                        3059 Grand Avenue, Suite 340
                                        Coconut Grove, Florida 33133
                                        Tel: (305) 442 1101
                                        Fax: (305) 442 6744

                                        ***Counsel for Mazda Motor of America,***
                                        ***Inc. dba Mazda North American Operations***

                           By:      */s/ Michael R. Tein*
                                        MICHAEL R. TEIN
                                        Florida Bar No. 993522


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 17, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

                          */s/ Michael R. Tein*
                          MICHAEL R. TEIN