**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

IN RE:

**TAKATA AIRBAG PRODUCT**                    **MDL No. 2599**
**LIABILITY LITIGATION**                          **Master File No. 15-2599-MD-MORENO**

_____

THIS DOCUMENT RELATES TO
ECONOMIC DAMAGES TRACK CASES

_____


**DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS**
**PLAINTIFFS' SECOND AMENDED CONSOLIDATED CLASS ACTION**
**COMPLAINT AND INCORPORATED SUPPORTING MEMORANDUM OF LAW**

# TABLE OF CONTENTS

I.  INTRODUCTION ............................................................................................................. 1

II.  STATEMENT OF FACTS ............................................................................................. 4

      A.  Ford's (Lack of) Knowledge of Potential Takata Inflator Issues. ........................ 4

      B.  The Ford Plaintiffs. ............................................................................................... 5

III.  LEGAL STANDARD ................................................................................................... 7

IV.  ARGUMENT ................................................................................................................ 10

      A.  The Ford Plaintiffs Fail To State A Claim For Fraudulent Concealment
           (Count 20). ........................................................................................................... 10

      B.  Ford Plaintiffs' Implied Warranty And Magnuson-Moss Counts Fail. ............... 13

           1.  Plaintiffs' Choice of Law Analysis Is Flawed. ....................................... 13

           2.  The Ford Plaintiffs' Implied Warranty Claims Are Barred By Lack
               of Privity, Failure of Notice, and/or Expiration Of Their Warranty. ....... 15

      C.  Plaintiffs' Unjust Enrichment Claims Fail ........................................................... 19

      D.  Ford Plaintiffs Cannot Assert Claims Under Michigan Consumer
           Protection Act Or The Ohio Consumer Sales Practices Act. ............................... 22

      E.  Ford Plaintiffs' Negligence Claims Are Barred By The Economic Loss
           Rule. ..................................................................................................................... 24

      F.  Ford Plaintiffs Fail To State A Claim Under FDUTPA. ..................................... 26

           1.  Lack of Manifestation of Defect Bars FDUTPA Claims. ........................ 26

           2.  Plaintiffs Have Not Alleged Their Fraud-Based FDUTPA Claims
               with the Particularity Required by Rule 9(b). .......................................... 27

           3.  Plaintiff Joseph Aliscio's FDUTPA Claim is Time-Barred. ................... 28

      G.  This Court Lacks Personal Jurisdiction Over The Claims Of Ford
           Plaintiffs Barnett, Huebner, Benton, and Woodard. ........................................... 29

      H.  Plaintiff Barnett Fails To State A Claim Under Texas CPA. .............................. 31

      I.  Plaintiffs' Requests For Judicial Supervision Of Recall Process Are
         Preempted Or Within The Primary Jurisdiction Of NHTSA. .............................. 33

V.  CONCLUSION .............................................................................................................. 34

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Airplay Am., LLC v. Cartagine*,
 Civ. No. 08-81224, 2009 WL 909521 (S.D. Fla. Apr. 2, 2009) ...............................................30

*Altenel, Inc. v. Millennium Partners, L.L.C.*,
 947 F. Supp. 2d 1357 (S.D. Fla. 2013) ...................................................................................29

*Am. Pipe & Constr. Co. v. Utah*,
 414 U.S. 538, 94 S. Ct. 765, 38 L. Ed. 2d 713 (1974)............................................................29

*Am. Safety Ins. Serv., Inc. v. Griggs*,
 959 So. 2d 322 (Fla. 5th DCA 2007) .......................................................................................21

*Amstadt v. U.S. Brass Corp.*,
 919 S.W.2d 644 (Tex. 1996)..............................................................................................32, 33

*Anderson v. Dist. Bd. of Trustees Cent. Fla. Comm.*,
 77 F.3d 364 (11th Cir. 1996) ...........................................................................................8, 10

*Aprigliano v. Am. Honda Motor Co.*,
 979 F. Supp. 2d 1331 (S.D. Fla. 2013) ......................................................................13, 17, 24

*Argyle Indep. Sch. Dist. v. Wolf*,
 234 S.W.3d 229 (Tex. Ct. App. 2007) .....................................................................................21

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)...........................................................................................................7, 12

*Balabanos v. North Am. Inv. Group, Ltd.*,
 708 F. Supp. 1488 (N.D. Ill. 1988) .........................................................................................11

*Barrett v. Miller*,
 321 S.E.2d 198 (S.C. App. 1984) ............................................................................................20

*Begualg Inv. Mgmt., Inc. v. Four Seasons Hotel Ltd.*,
 Case No. 10-22153-CIV, 2011 WL 4434891 (S.D. Fla. Sept. 23, 2011) ..................................9

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)................................................................................................................12

*Berry v. Budget Rent A Car Sys., Inc.*,
 497 F. Supp. 2d 1361 (S.D. Fla. 2007) ..............................................................................13, 23

## <u>TABLE OF AUTHORITIES</u>

**Page**

*Blair v. Wachovia Mortg. Corp.*,
 Case No. 11-cv-566-OC-37, 2012 WL 868878 (M.D. Fla. Mar. 14, 2012) ............................9

*Breakstone v. Caterpillar, Inc.*,
 09-23324-CIV, 2010 WL 2164440 (S.D. Fla. 2010).......................................................26, 27

*Brisson v. Ford Motor Co.*,
 349 Fed. App'x 433 (11th Cir. 2009) ....................................................................................18

*Broe v. Oneonta Sales Co., Inc.*,
 100 Misc. 2d 1099 (N.Y. Sup. Ct. 1978) ...............................................................................18

*Burns v. Winnebago Indus., Inc.*,
 No. 8:13-CV-1427-T-24, 2013 WL 4437246 (M.D. Fla. Aug. 16, 2013).........................13, 24

*Bush v. Am. Motor Sales, Corp.*,
 575 F. Supp. 1581 (D. Colo. 1984).......................................................................................18

*Callaghan v. BMW*,
 2014 WL 1340085 (N.D. Cal. Apr. 2, 2014) .........................................................................25

*Carmouche v. Tamborlee Mgmt., Inc.*,
 Civ. No. 14–14325, 2015 WL 3651521 (11th Cir. Jun. 15, 2015) .........................................30

*Cash Inn of Dade, Inc. v. Metropolitan Dade County*,
 938 F.2d 1239 (11th Cir. 1991) ..............................................................................................6

*Chapman v. Abbott Labs.*,
 930 F. Supp. 2d 1321 (M.D. Fla. Mar. 14, 2013) ..................................................................16

*Chase Home Fin., LLC v. Risher*,
 405 S.C. 202, 746 S.E.2d 471 (S.C. Ct. App. 2013)...............................................................22

*Cohen v. Implant Innovations, Inc.*,
 259 F.R.D. 617 (S.D. Fla. 2008) (Florida).......................................................................14, 16

*Copans Motors, Inc. v. Porshe Cars N. Am., Inc.*,
 No. 14-60413-CV, 2014 WL 2612308 (S.D. Fla. June 11, 2014)......................................9, 10

*Cornelius v. Fidelity Nat'l Title Co.*,
 2009 WL 596585 (W.D. Wash. Mar. 9, 2009) .......................................................................23

<u>**TABLE OF AUTHORITIES**</u>

**Page**

*Corwin v. Lawyers Title Ins. Co.*,
   276 F.R.D. 484 (E.D. Mich. 2011) ....................................................................19

*Costa v. Kerzner Intern. Resorts, Inc.,*
   11-60663-CV, 2011 WL 2519244 (S.D. Fla. 2011) ............................................28

*Cox v. Indiana*,
   Civ. No. 5:15-61, 2015 WL 2238571 (N.D. Fla. May 12, 2015) .........................30

*Daigle v. Ford Motor Co.*,
   Civ. No. 09–3214, 2012 WL 3113854 (D. Minn. July 31, 2012)..........................17

*Daimler AG v. Bauman*,
   134 S. Ct. 746 (2014)...........................................................................................30

*Davila v. Delta Air Lines, Inc.*,
   326 F.3d 1183 (11th Cir. 2003) ...........................................................................7

*Davis v. Coca-Cola Bottling Co.*,
   516 F.3d 955 (11th Cir. 2008) ............................................................................12

*Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*,
   693 So. 2d 602 (Fla. 2d DCA 1997) ....................................................................26

*Doll v. Ford Motor Co.*,
   814 F. Supp. 2d 526 ...........................................................................................21

*Dunn et.al v. Takata Corp., et.al*,
   Case 1:14-cv-24009 (S.D. Fla. Oct. 27, 2014).....................................................29

*Dunn v. Takata Corp.*,
   No. 1:14-cv-24009 (S.D. Fla. Oct. 27, 2014) .......................................................30

*E. River S.S. Corp. v. Transamerica Delaval, Inc.*,
   476 U.S. 858 (1986)...........................................................................................24

*Eaton Corp. v. Magnavox Co.*,
   581 F. Supp. 1514 (E.D. Mich. 1984)..................................................................25

*Ellie, Inc. v. Miccichi*,
   594 S.E.2d 485 (S.C. Ct. App. 2004)...................................................................12

## <u>TABLE OF AUTHORITIES</u>

**Page**

*Enreach Technology, Inc. v. Embedded Internet Solutions, Inc.*,
　403 F. Supp. 2d 968 (N.D. Cal. 2005) ...................................................................................20

*Erie R.R. Co. v. Tompkins*,
　304 U.S. 64 (1938) .................................................................................................................19

*Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*,
　1 So. 3d 400, 401 (Fla. 3d DCA 2009) .................................................................................21

*Frenzel v. AliphCom*,
　__ F. Supp. 3d __, No. 14-cv-03587-WHO, 2014 WL 7387150 (N.D. Cal. Dec. 29,
　2014) ......................................................................................................................................17

*Friedman v. Am. Guardian Warranty Servs.*,
　837 So. 2d 1165 (Fla. Dist. Ct. App. 2003) ....................................................................12, 28

*Garcia v. Clarins USA, Inc.*,
　2014 U.S. Dist. LEXIS 182426 (S.D. Fla. Sep. 9, 2014)......................................................16

*Gerhart v. Takata Corp.*,
　Case No. 2:14-cv-01562 (W.D. Pa. Nov. 14, 2014) ........................................................30, 14

*Granfield v. NVIDIA Corp.*,
　2012 WL 2847575 (N.D. Cal. July 11, 2012)........................................................................23

*Greenberg v. Miami Children's Hosp. Research Instit., Inc.*,
　264 F. Supp. 2d 1064 (S.D. Fla. 2003) .................................................................................11

*Guarantee Ins. Co. v. Brand Mgmt. Serv.*,
　Civ. No. 12–61670, 2013 WL 6768641 (S.D. Fla. Dec. 20, 2013) ........................................19

*Hahn v. Ford Motor Co., Inc.*,
　434 N.E.2d 943 (Ind. App. 1982) ..........................................................................................18

*Hancock v. Chi. Title Ins. Co.*,
　635 F. Supp. 2d 539 (N.D. Tex. 2009) ...................................................................................21

*Harris v. comScore, Inc.*,
　292 F.R.D. 579 (N.D. Ill. 2013)..............................................................................................19

*Hill v. Hoover Co.*,
　899 F. Supp. 2d 1259 (N.D. Fla. 2012)...................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page**

*In re Aqua Dots Prods. Liab. Litig.*,
270 F.R.D. 377 (N.D. Ill. 2010) ............................................................................19

*In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*,
22 F. Supp. 3d 1322 (N.D. Ga. 2014) ....................................................................25

*In re Automotive Refinishing Paint Antitrust Litig.*,
358 F.3d 288 (3d Cir. 2004).....................................................................................29

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*,
288 F.3d 1012 (7th Cir. 2002) ............................................................20, 23, 24, 27

*In re Chinese Drywall Prods. Liability Litig.*,
742 F.3d 576 (5th Cir. 2014) ..................................................................................30

*In re Conagra Peanut Butter Prods. Liab. Litig.*,
251 F.R.D. 689 (N.D. Ga. 2008).............................................................................19

*In re Ford Ignition Switch Prods. Liab. Litig.*,
174 F.R.D. 332 (D.N.J. 1997)..............................................................................5, 15

*In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*,
2007 U.S. Dist. LEXIS 62483 (D. Mich. Aug. 24, 2007)......................................16

*In re Graphics Processing Units Antitrust Litig.*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007) ..................................................................23

*In re Managed Care Litig.*,
298 F. Supp. 2d 1259 (S.D. Fla. 2003) ......................................................14, 22, 23

*In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*,
21 F. Supp. 2d 593 (E.D. La. 1998) ........................................................................14

*In re MI Windows & Doors, Inc., Prods. Liab. Litig.*,
Civ. No. 2:12–mn–00001, 2012 WL 5408563 (D.S.C. Nov. 6, 2012) .............21, 25

*In re Niaspan Antitrust Litig.*,
42 F.Supp.3d 735, 758 (E.D. Pa. 2014) ..................................................................23

*In re Packaged Ice Antitrust Litig.*,
779 F. Supp. 2d 642 (E.D. Mich. 2011)..................................................................23

# TABLE OF AUTHORITIES

**Page**

*In Re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*,
  880 F. Supp. 2d 801 (S.D. Ohio 2012) ...................................................................21

*Jogani v. Superior Court*,
  165 Cal. App. 4th 901 (Cal. Ct. App. 2008) ..........................................................20

*Jovine v. Abbott Labs, Inc.*,
  795 F. Supp. 2d 1331 (S.D. Fla. 2011) ..................................................................20

*Kagan v. Harley Davidson, Inc*.,
  2008 U.S. Dist. LEXIS 32747 (E.D. Pa. Apr. 22, 2008) ......................................18

*Kalliaten Sekhneb Khepera-Bey v. Santander Consumer USA, Inc.*,
  2013 U.S. Dist. LEXIS 117570 (D. Md. Aug. 16, 2013) .........................................6

*Karhu v. Vital Pharms., Inc.*,
  No. 13-60768-CIV-COHN, 2013 WL 4047016 (S.D. Fla. Aug. 9, 2013) ...................7, 12, 16

*Kia Motors Am. Corp. v. Butler*,
  985 So. 2d 1133 (Fla. 3d DCA 2008), *review denied*, 999 So. 2d 644 (Fla. 2008)..........26, 27

*Klein v. Marvin Lumber and Cedar Co.*,
  575 Fed. Appx. 347 (5th Cir. 2014)........................................................................33

*Koch v. Royal Wine Merchants, Inc.*,
  847 F. Supp. 2d 1370 (S.D. Fla. 2012) ....................................................................9

*Landsman Packing Co. v. Continental Can Co.*,
  864 F.2d 721 (11th Cir. 1989) ................................................................................18

*LaRosa v. City of Sweetwater*,
  13-21585-CIV, 2014 WL 235449 (S.D. Fla. Jan 22, 2014)......................................8

*Lauren v. PNC Bank, N.A.*,
  296 F.R.D. 389 (W.D. Pa. 2014) ............................................................................23

*Licul v. Volkswagen Grp. Of Am., Inc.*,
  Civ. No. 13–61686, 2013 WL 6328734 (S.D. Fla. Dec. 5, 2013)  .........................18

*Llado-Carreno v. Guidant Corp.*,
  Case No. 09-20971-CIV, 2011 WL 705403 (S.D. Fla. Feb. 22, 2011) .............................9, 28

## <u>TABLE OF AUTHORITIES</u>

**Page**

*Lone Star Ladies Inv. Club v. Scholtzsky's, Inc.*,
  238 F.3d 363 (5th Cir. 2001) ..................................................32

*Louis Vuitton Malletier, S.A. v. Mosseri*,
  736 F.3d 1339 (11th Cir. 2013) ..............................................31

*Luna v. Nationwide Prop. & Cas. Ins. Co.*,
  No. 10-2918, 2011 WL 2565354 (S.D. Tex. Jun. 27, 2011)......................33

*Lyon v. Caterpillar, Inc.*,
  194 F.R.D. 206 (E.D. Pa. 2000)..............................................15

*Magluta v. Samples*,
  256 F. 3d 1282 (11th Cir. 2001) ..............................................8

*Marsh v. Butler Cnty., Ala.*,
  268 F.3d 1014 (11th Cir. 2001) ...............................................7

*Martinez v. Bank of Am. Corp.*,
  Civ. 14–21467, 2014 WL 2735668 (S.D. Fla. June 16, 2014) ...................9

*Massey v. Novartis Pharms. Corp.*,
  46 F. Supp. 3d 688 ..........................................................17

*Matthews v. Am. Honda Motor Co.*,
  Civ. No. 12–60630, 2012 WL 2520675 (S.D. Fla. June 6, 2012) ...............20

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ................................................23

*McBride v. Boughton*,
  123 Cal. App. 4th 379 (Cal. Ct. App. 2004) .................................20

*McCabe v. Daimler AG & Mercedes-Benz USA, LLC*,
  948 F. Supp. 2d 1347 (N.D. Ga. 2013) ...........................16, 19, 28, 30

*McGhee v. General Motors Corp.*,
  98 Mich. App. 495, 296 N.W.2d 286 (1980)...................................25

*McGuire v. BMW of N. Am., LLC*,
  Civ. No. 13–7356, 2014 WL 2566132 (D.N.J. June 6, 2014) ..................23

# TABLE OF AUTHORITIES

**Page**

*Mesa v. BMW of N. Am., LLC,*
904 So. 2d 450 (Fla. 3d DCA 2005) ....................................................................16

*Mills v. Polar Molecular Corp.,*
12 F.3d 1170 (2d Cir. 1993)...............................................................................11

*Moore v. Coachmen Indus., Inc.,*
499 S.E.2d 772 (N.C. App. 1998).......................................................................18

*Moynet v. Courtois,*
8 So.3d 377, 379 (Fla. Dist. Ct. App. 2009) .......................................................21

*Murphy v. Proctor & Gamble Co.,*
695 F. Supp. 2d 600 (E.D. Mich. 2010)..............................................................25

*Murray v. Ford Motor Co.,*
97 S.W.3d 888 (Tex. App.-Dallas 2003) ............................................................25

*Oldfield v. Pueblo De Bahia Lora, S.A.,*
558 F.3d 1210 (11th Cir. 2009) ..........................................................................31

*Ortiz v. Ford Motor Co.,*
909 So. 2d 479 (Fla. 3d DCA 2005) ....................................................................27

*Pelletier v. Zweifel,*
921 F.2d 1465 (11th Cir. 1991) .......................................................................8, 10

*Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla. N.A.,*
667 So. 2d 876 (Fla 3d DCA 1996) .................................................................21, 3

*Perret v. Wyndham Vacation Resorts, Inc.,*
846 F. Supp. 2d 1327 (S.D. Fla. 2012) ............................................................9, 28

*Premix-Marblelite Mfg. Corp. v. SKW Chemicals, Inc.,*
145 F. Supp. 2d 1348 (S.D. Fla. 2001) ...................................................14, 15, 24

*Prohias v. Pfizer, Inc.,*
490 F. Supp. 2d 1228 (S.D. Fla. 2007) ...............................................................20

*Pulte Home Corp., Inc. v. Ply Gem Indust., Inc.,*
804 F. Supp. 1471 (M.D. Fla. 1992)....................................................................14

# <u>TABLE OF AUTHORITIES</u>

**Page**

*Rajbhandari v. U.S. Bank*,
13-81218-CIV, 2014 WL 4545875 (S.D. Fla. Sept. 15, 2014)................................................8

*Rapp v. Green Tree Servicing, LLC*,
302 F.R.D. 505 (D. Minn. 2014)............................................................................................19

*Redwood Resort Props., LLC v. Holmes Co.*,
2006 WL 3531422 (N.D. Tex. Nov. 27, 2006)......................................................................21

*Sapp v. Ford Motor Co.*,
386 S.C. 143, 687 S.E.2d 47 (2009) .....................................................................................25

*Seely v. White Motor Co.*,
63 Cal. 2d 9 (1965) ...............................................................................................................25

*Seiferth v. Helicopteros Atuneros, Inc.*,
472 F.3d 266 (5th Cir. 2006) ................................................................................................29

*Sharma v. BMW of N. Am., LLC*,
Civ. No. No. C–13–2274, 2014 WL 2795512 (N.D. Cal. June 19, 2014)............................25

*Sharyland Water Supply Co. v. City of Alton*,
354 S.W.3d 407 (Tex. 2011)..................................................................................................25

*Sherwin-Williams Co. v. Bei Enters., Inc.*,
2012 WL 5990313 (E.D. Pa. Nov. 30, 2012) (Pennsylvania) ..............................................14

*Smith v. Ford Motor Co.*,
462 Fed. Appx. 660 (9th Cir. 2011).......................................................................................21

*Smith v. Pizza Hut, Inc.*,
2011 WL 2791331 (D. Colo. July 14, 2011) .........................................................................23

*Snodgrass v. Ford Motor Co.*,
2001 U.S. Dist. LEXIS 18555 (D.N.J. Sep. 4, 2001) ...........................................................17

*Speier-Roche v. Volkswagen Grp. Of Am., Inc.*,
Civ. No. 14–20107, 2014 WL 1745050 (S.D. Fla. Apr. 30, 2014) ......................10, 16, 18, 29

*Spence v. Glock*,
227 F.3d 308 (5th Cir. 2000) ................................................................................................15

# TABLE OF AUTHORITIES

**Page**

*St. Johns United Methodist Church v. Delta Elec., Inc.*,
   Civ. No. 3-11-57, 2012 WL 3205043 (S.D. Tex. Aug. 3, 2012) ......................................32, 33

*Stein v. Marquis Yachts, LLC*,
   Civ. No. 14–24756, 2015 WL 1288146 (S.D. Fla. Mar. 20, 2015) ........................................11

*Stires v. Carnival Corp.*,
   243 F. Supp. 2d 1313 (M.D. Fla. 2002)...................................................................................9

*Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*,
   447 F.3d 1357 (11th Cir. 2006) .............................................................................................29

*Suarez v. Playtex Prods., Inc.*,
   2009 WL 2212315 (N.D. Ill. July 24, 2009).........................................................................23

*Taterka v. Ford Motor Co*,
   271 N.W.2d 653 (Wis. 1978).................................................................................................18

*Thompson v. Bayer Corp.*,
   No. 4:07CV00017 JMM, 2009 WL 362982 (E.D. Ark. Feb. 12, 2009).................................19

*Thompson v. Jiffy Lube Int'l, Inc.*,
   250 F.R.D. 607 (D. Kan. 2008)..............................................................................................19

*Tiara Condo. Ass'n v. Marsh & McLennan Cos. Inc.*,
   110 So.3d 399, 401 (Fla. 2013)..............................................................................................24

*U.S. Tire-Tech, Inc. v Boeran, B.V.*,
   110 S.W.3d 194 (Tex. App.-Houston 1st Dist. 2003)............................................................16

*United States ex rel. Graves v. Plaza Med. Ctrs. Corp.*,
   Civ. No. 10–23382, 2014 WL 5040284 (S.D. Fla. Oct. 8, 2014) ......................................8, 11

*United States ex rel. Mastej v. Health Mgmt. Assocs.*,
   869 F. Supp. 2d 1336 (M.D. Fla. 2012)...................................................................................8

*Weisblat et.al v. Takata Corp., et.al*,
   Case No. 0:14-cv-62669-RNS (S.D. Fla. Nov. 21, 2014) ......................................................29

*White v. Volkswagen Group of Am., Inc.*,
   Civ. No. 2:11–02243, 2013 WL 685298 (W.D. Ark. Feb. 25, 2013)......................................17

# TABLE OF AUTHORITIES

**Page**

*Yarger v. ING Bank, FSB*,
    285 F.R.D. 308 (D. Del. 2012) ............................................................................19

STATUTES

Fla. Stat. § 671.105(1)........................................................................................................15

Fla. Stat. § 672.607(3)........................................................................................................16

Fla. Stat. § 48.193(1)(a)(1), (2), and (6) ...........................................................................30

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*........................................1, 2

Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.903, *et seq.* .............22

Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.01, *et seq.* ..................22

Tex. Bus. & Com. Code § 2.607(c)(1)................................................................................16

Tex. Bus. & Com. Code § 17.50(a)(1), (3) ........................................................................31

Texas Consumer Sales Practices Act, Tex. Bus. & Com. Code §§ 17.41, *et seq.*........31

OTHER AUTHORITIES

Fed. R. Civ. P. 8...........................................................................................................7, 9, 12

Fed. R. Civ. P. 9(b) ................................................................................................... passim

Fed. R. Civ. P. 10(b) ...........................................................................................................10

Fed.R.Civ.P. 12(b)(2)...........................................................................................3, 4, 5, 29

Fed. R. Civ. P.  12(b)(6)....................................................................................................2, 7

Fed. R. Evid. 201 ..................................................................................................................9

Black's Law Dictionary (9th ed. 2009)...............................................................................28

Charles A. Wright, *et al.,* 4A *Federal Practice & Procedure* § 1069.7 (3d ed.)..........29

Charles A. Wright, *et al.,* 4A *Federal Practice & Procedure* § 3866 (3d.ed.).............31

# I.  INTRODUCTION

This multidistrict litigation involves claims for economic loss relating to automobiles equipped with airbag inflators supplied by Takata Corporation and TK Holdings (collectively, "Takata" or "the Takata Defendants").  A number of different vehicles models, many more than a decade old, from a number of different automotive manufactures, have been subject to recalls and service campaigns relating to these Takata inflators.  The recalls and service campaigns remain ongoing, under the active supervision of the National Highway Traffic Safety Administration ("NHTSA"), the regulatory agency with primary jurisdiction over automotive safety recalls.

On February 5, 2015, the Joint Panel on Multidistrict Litigation ordered centralization of federal claims that "share factual questions arising from allegations that certain Takata-manufactured airbags are defective in that they can violently explode and eject metal debris[.]" (Ex. 1, JPML Order, 2/5/15).  At the time of that Order, Defendant Ford Motor Company ("Ford") was aware of only a single, unverified report of a potential inflator rupture involving a Ford vehicle, and, as noted in Plaintiffs' own pleading, that incident did not take place until August of 2014.  (SAC at ¶ 290(e)).  That incident does not involve any of the named Plaintiffs in this MDL.  (SAC at ¶¶ 76, 82, 84, 114, 165, 179, 184).

Notwithstanding Ford's lack of knowledge of potential problems involving Takata inflators prior to late 2014, Plaintiffs have filed a Second Amended Consolidated Class Action Complaint ("SAC") asserting claims against Ford for alleged economic losses attributed to the Takata inflators and their related recalls.  The SAC is 438 pages long, containing more than 1,930 paragraphs of allegations.  Virtually none of those allegations relate to the knowledge or conduct of Ford.  Instead, the SAC attempts to state claims against Ford based on information and actions attributed to other defendants.  In fact, Plaintiffs go so far as to accuse those other defendants of committing fraud based on their statements to NHTSA that potential problems with Takata inflators were unique to those installed in Honda vehicles.  (SAC at ¶¶ 239, 243, 250, 254-256, 263, 274, 277, 422-423, 427).

With respect to Ford, the SAC asserts claims for: **(1)** violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, for breach of underlying state law implied warranties (Count 3); **(2)** fraudulent concealment (Count 20); **(3)** breach of the implied warranty of merchantability (Count 21); **(4)** unjust enrichment (Count 22); **(5)** violation of the Michigan

Consumer Protection Act (Count 23); **(6)** negligence (Count 24); **(7)** violation of the Florida consumer protection act, FDUTPA, for a Florida subclass (Count 47); **(8)**; breach of the implied warranty of merchantability, for a Florida subclass (Count 48); **(9)** violation of the Ohio consumer sales practices act, for an Ohio subclass (Count 87); **(10)** violation of the Texas Consumer Sales Practices Act, for a Texas subclass (Count 97); and **(11)** breach of the implied warranty of merchantability, for a Texas subclass (Count 98).[1]

The SAC asserts similar claims against the "Vehicle Manufacturer Defendants"– who are generally referred to collectively – on the theory that those defendants all knew and concealed relevant information from consumers relating to the Takata inflators.

What is missing from this voluminous pleading, however, are <u>any</u> supporting allegations with respect to the alleged knowledge, or improper conduct, of Ford. Notwithstanding repeated boilerplate allegations of "reckless disregard, deception, concealment, and obfuscation," (SAC at ¶ 33), including claims that Ford's conduct "exhibits the highest degree of reprehensibility" so as to "warrant[] an assessment of punitive damages," (*id.* at ¶ 676), the SAC is devoid of factual support for these claims. The only allegations relating to Ford's knowledge involve the August 2014 incident, which occurred <u>after</u> the Takata recall process was already underway with other manufacturers, and many years after the purchase dates of each of the named plaintiffs who allegedly own Ford vehicles (collectively, the "Ford Plaintiffs"). In short, there is no basis stated in the SAC to support the contention that Ford knew of any potential issues with the Takata inflators installed in its vehicles prior to the commencement of the recall process that is still ongoing, and certainly no basis to contend that Ford defrauded or actively concealed relevant information from consumers in general or the Ford Plaintiffs in particular. For these reasons, all of the Counts in the SAC predicated on Ford's alleged fraud, concealment, or misrepresentations must be dismissed for failure to satisfy the requirements of Rule 8 and Rule 9(b), and for failure to state a claim under Rule 12(b)(6).

---

[1] The SAC also asserts three counts against all vehicle manufacturing defendants on behalf of Automotive Dismantlers and Recyclers Association, Inc., a trade group putatively appearing by assigning of rights from several members of the trade group. These commercial claims are for: (1) fraudulent misrepresentation and fraudulent concealment (Count 104); (2) violation of various state consumer protection acts (Count 105); and (3) violation of Florida's FDUTPA, on behalf of a Florida subclass of automotive recyclers (Count 106). With Plaintiffs' consent, these Counts are addressed in a separate joint motion to dismiss filed on behalf of all of the OEM Defendants.

The Ford Plaintiffs claims are also subject to dismissal for other, substantive reasons:

*First*, the Ford Plaintiffs' breach of implied warranty claims (Counts 21, 48, and 98) must be dismissed.  Plaintiffs' implied warranties expired with their express warranties, and none of the Ford Plaintiffs allege that the claimed defect manifested during the warranty period (or, for that matter, at any other time).  In addition, for those Ford Plaintiffs from Florida, there is no privity of contract with Ford relating to their purchases of used vehicles from third-party dealerships, which precludes all implied warranty claims under controlling Florida precedent.  Further, the Magnuson-Moss claim (Count 3) must also be dismissed because there is no valid claim for breach of underlying state law warranty rights to serve as a predicate for that Count.

*Second*, the Ford Plaintiffs' unjust enrichment claims (Count 22) fail: (1) because the cause of action is not recognized in their relevant jurisdictions; or (2) because such equitable claims are improper in a case where remedies for the same injury are also sought or available under legal claims; or (3) because the SAC lacks a plausible allegation of a benefit conferred on Ford arising from the Ford Plaintiffs' purchases from independent dealerships.

*Third***,** the Ford Plaintiffs' claims under the Michigan Consumer Protection Act (Count 23) and the Ohio Consumer Sales Practices Act (Count 87) fail because these Ford Plaintiffs suffered no injury in Michigan or Ohio, and they therefore cannot make claims for injuries sustained or transactions occurring beyond the territorial reach of Michigan or Ohio.

*Fourth***,** the Ford Plaintiffs' negligence claims seeking diminution in the value of their vehicles (Count 24) are barred by the economic loss rule found in the properly applicable State laws.

*Fifth*, the FDUTPA claims of the putative Florida sub-class of Ford Plaintiffs (Count 47) fail because none of them allege the manifestation of the alleged defect, and because their fraud-based misrepresentation claims are not alleged with specificity as required under Rule 9(b).  The statute of limitations also bars the claim of one Ford Plaintiff, Joseph Aliscio.

*Sixth***,** with respect to Ford Plaintiffs Barnett, Huebner, Benton, and Woodard, whose original claims were brought in Districts other than those where they resided or purchased their vehicles, those claims must be dismissed pursuant to Fed.R.Civ.P. 12(b)(2) because the transferor courts lacked personal jurisdiction over Ford with respect to those Plaintiffs' claims.

*Seventh*, Ford Plaintiff Nancy Barrett's claim under the Texas Deceptive Trade Practices Act (Count 97) fails because she fails to plead any facts to establish deceptive conduct on the part of Ford in connection with her consumer transaction.

*Finally*, to the extent that Plaintiffs seek to utilize this MDL to second-guess or contradict the determinations of NHTSA with respect to the schedule, the appropriate scope, and the appropriate content of ongoing safety recalls relating to Takata inflators, all such efforts are either preempted by federal law, or best directed to NHTSA's discretion through the doctrine of primary jurisdiction.

## II. <u>STATEMENT OF FACTS</u>

### A.    <u>Ford's (Lack of) Knowledge of Potential Takata Inflator Issues</u>.

The bulk of the allegations in the SAC relate to defendants other than Ford. Specifically, the SAC spends more than 30 pages addressing the alleged knowledge and conduct of Takata and/or Honda in response to incidents and reports involving Takata inflators installed in Honda vehicles.[2] (SAC at pages 80-110). The SAC also alleges that Takata (and Honda, based on information it received from Takata) said in their regulatory filings that any potential issues in Takata inflators were attributable to Takata's manufacturing processes, and that all vehicles that "could potentially experience the problem" had been identified. (*Id.* at ¶ 239, 243, 250, 254-56, 263, 274, 277.) The SAC alleges that Takata affirmatively represented to NHTSA in 2010 that "Takata has not provided any airbag inflators that are the same or substantially similar to the inflators in vehicles covered by [Honda] Recalls 08V-593 [in 2008] and 09V-259 [in 2009] <u>to any customers other than Honda. The physical characteristics of the inflator housing used in the Honda vehicles subject to these recalls are unique to Honda.</u>" (*Id.* at ¶ 257) (emphasis added). There are no allegations in the SAC that any other OEM was informed that their vehicles may have issues with Takata inflators until March or April of 2013 (*id.* at ¶¶ 275, 277-78), and the first reference to a potential issue in Ford vehicles was not until June 11, 2014 – years after the Ford Plaintiffs had purchased their vehicles. (*Id.* at ¶ 284).

---

[2] Ford expresses no opinion as to the legitimacy or accuracy of Plaintiffs' contentions with respect to the knowledge or actions of either Takata or Honda. Ford merely notes that Plaintiffs' allegations in the SAC with respect to the alleged concealment of information by co-defendants are inconsistent with a simultaneous claim of alleged knowledge of inflator issues on the part of Ford, thereby rendering Plaintiffs' claims against Ford implausible.

In contrast to the allegations about other defendants' knowledge of potential inflator issues, the SAC includes **no** factual allegations that Ford was privy to the same information. The only public information cited by Plaintiffs relating to Takata's and Honda's alleged knowledge of potential issues with Takata inflators were various statements and regulatory filings by Takata and Honda, which stated that the issues were related to manufacturing process concerns at specific facilities (in one case, in a specific press at a specific facility), at defined points in time, and with a defined universe of inflators potentially affected by the manufacturing issues. (*Id.* at ¶ 239, 243, 250, 254-56, 263). Prior to 2014, none of the inflators discussed in this context were alleged to be installed in Ford vehicles. (*See id.* at ¶ 257, 278). No factual basis is provided in the SAC to support the contention that Ford somehow knew that the limited manufacturing issue explanation was incorrect or untrue. To the contrary, this manufacturing issue explanation was consistent with Ford's own experience with Takata inflators, inasmuch as Ford received no notice of any claimed issues involving Takata inflators in Ford vehicles until late 2014. (*See id.* at ¶ 290(e)).

### B.      The Ford Plaintiffs.

There are seven Ford Plaintiffs in the SAC. Six of those Plaintiffs purchased their vehicles used. (*See* SAC at ¶¶ 76, 82, 84, 114, 165, 179). Only one of these six Plaintiffs alleges that she purchased her used vehicle from a Ford dealership. (*Id.*) Plaintiff Joseph Aliscio purchased a used 2004 Ford Ranger on October 22, 2009, in Ft. Pierce, Florida. (*Id.* at ¶ 76). Plaintiff John Heubner purchased his used 2005 Ford Mustang in March of 2011, in Burbank, California. (*Id.* at ¶ 114). Plaintiff Eugennie Sinclair purchased a used 2007 Ford Mustang in September of 2012, in Davie, Florida. (*Id.* at ¶ 165). Plaintiff Brooks Weisblat alleges that she purchased a used 2005 Ford GT in February of 2011 in Miami, Florida. (*Id.* at ¶ 179). Plaintiff Nancy Barrett purchased a used 2007 Ford Mustang on July 7, 2008, in Austin, Texas. (*Id.* at ¶ 82). Plaintiff Alicia Benton – the only purchaser of a used Ford who bought from a Ford dealership – bought her used 2010 Ford Mustang from Summerville Ford in August of 2010, in Summerville, South Carolina. (*Id.* at ¶ 84).

Of the six Ford Plaintiffs who purchased their vehicles used, four also purchased them at times when the original New Vehicle Limited Warranty issued by Ford had already expired; accordingly, any implied warranties issued by Ford also expired before these Plaintiffs ever

purchased their used vehicles.  (*See id.* at ¶¶ 76, 114, 165, 179; *see also* Ex. 2 at p. 5 (Aliscio 2004 Ranger Warranty Guide); Ex. 3 at p. 5 (Huebner & Woodard 2005 Mustang Warranty Guide); Ex. 4 at p. 8 (Sinclair &  Barnett 2007 Mustang Warranty Guide); Ex. 5 at p. 5 (Weisblat 2005 Ford GT Warranty Guide)).  The two used Ford vehicles that may have been covered by the New Vehicle Limited Warranty at the time of their purchase were Plaintiff Barnett's used 2007 Mustang, and Plaintiff Benton's used 2010 Mustang.  (*Id.* at ¶¶ 82, 84).  Both of those vehicle warranties are now expired based on the dates of sale and vehicle first use.  (*See id.; see also* Ex. 4 at p. 8; Ex. 6 at p. 8 (Benton 2010 Mustang Warranty Guide); Ex. 7 (original title of Benton vehicle)).[3]  None of the Ford Plaintiffs who purchased used vehicles made any allegations as to the mileage of their vehicles at the time of purchase, or currently.  (*Id.* at ¶¶ 76, 82, 84, 114, 165, 179).  None of the Ford Plaintiffs who bought used vehicles allege any direct dealings or communications with Ford prior to their purchase of their used vehicles.  (*Id.*).

One of the Ford Plaintiffs added to the SAC in the second amendment alleges she purchased her vehicle new from a Ford dealership.  Plaintiff Teresa Woodard purchased a new 2005 Ford Mustang from Fairway Ford in Greenville, South Carolina, in 2005.  (*Id.* at ¶ 184).  Based on the date of sale, her New Vehicle Limited Warranty (and any related implied warranties) expired more than five years ago.  (*Id.*; *see also* Ex. 3 at p. 5).  Plaintiff Woodard also does not allege any direct dealings or communications with Ford prior to purchasing her vehicle.  (*Id.* at ¶ 184).

No Ford Plaintiff identifies with specificity **any** statement or action by Ford that he or she saw or relied upon prior to purchasing a Ford vehicle.  (*Id.* at ¶¶ 76, 82, 84, 114, 165, 179, 184).  The only allegations in the SAC involving statements by Ford are: (1) two quotes allegedly from brochures in 2006 – not matching the model year of any Ford Plaintiff's vehicle – stating Ford's vehicles had "up-to-the minute safety and security systems [that] help protect you and your passengers out there on the road," and that its cars contain a "Personal Safety System®" that "enhances protection for the driver and front passenger in certain frontal collisions.  The system customizes the deployment of the dual-stage front airbags based on several criteria, including the

---

[3] As a public record, this Court may take judicial notice of the original titling document.  *See Cash Inn of Dade, Inc. v. Metropolitan Dade County*, 938 F.2d 1239, 1243 (11th Cir. 1991) ("A district court may take judicial notice of public records"); *Kalliaten Sekhneb Khepera-Bey v. Santander Consumer USA, Inc.,* 2013 U.S. Dist. LEXIS 117570, *11 (D. Md. Aug. 16, 2013) (taking judicial notice of DMV title records).

driver's seat position, whether the front safety belts are in use, the amount of pressure exerted on the front-passenger seat, and the overall severity of the impact,"; and (2) an alleged statement from Ford's website in __**2015**__ – years after the last Ford Plaintiff purchased a Ford vehicle – stating:  "At Ford, we hold ourselves to very high standards for vehicle safety.  The fact is, vehicle safety is a critical part of our brand promise to Go Further.  We aim to give customers peace of mind and make the world safer by developing advanced safety technologies and making them available across a wide range of vehicles."  (*Id.* at ¶ 310(b)).  The SAC does not link these statements to __**any**__ Ford Plaintiff, or any Ford Plaintiff's purchasing decision.  No Plaintiff alleges that the airbags in his or her Ford vehicle ever deployed, much less deployed in an inappropriate or dangerous manner.  (*Id.* at ¶¶ 76, 82, 84, 114, 165, 179, 184).

### III.  <u>LEGAL STANDARD</u>

Dismissal of a complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), is proper when "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  *Karhu v. Vital Pharms., Inc.*, No. 13-60768-CIV-COHN, 2013 WL 4047016, at *2 (S.D. Fla. Aug. 9, 2013) (quoting *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas. Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)).  "Pleadings must be something more than an ingenious academic exercise in the conceivable."  *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1037 (11th Cir. 2001).  To state a claim under Federal Rule of Civil Procedure 8, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief.  *Id.* at 679 (internal citation, alteration, and quotation marks omitted; emphasis added).

While the court must always accept the truth of a complaint's factual allegations, that principle "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678; *see also Davila v.*

*Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) ("conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.").

In setting forth the claims in the complaint, it is improper to engage in "shotgun" pleading.  A shotgun pleading is one in which involves multiple defendants, that fails to connect specific facts to specific counts, and that makes allegations that "'the defendants' engaged in certain conduct, making no distinction among the [numerous] defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of."  *Magluta v. Samples*, 256 F. 3d 1282, 1284 (11th Cir. 2001); *see also LaRosa v. City of Sweetwater*, 13-21585-CIV, 2014 WL 235449, at *1 (S.D. Fla. Jan 22, 2014) (defining shotgun pleading as "pleadings involving multiple defendants and complicated factual scenarios, where the plaintiff is imprecise in asserting which actions are attributable to which defendants"); *Rajbhandari v. U.S. Bank*, 13-81218-CIV, 2014 WL 4545875, at *2 (S.D. Fla. Sept. 15, 2014) (granting motion to dismiss shotgun complaint on basis, *inter alia*, that "specific facts are not related in any way to a specific count" and "the Amended Complaint lumps multiple Defendants together").  The Eleventh Circuit has roundly condemned shotgun pleadings because they make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."  *Anderson v. Dist. Bd. of Trustees Cent. Fla. Comm.*, 77 F.3d 364, 366 (11th Cir. 1996).  The Eleventh Circuit similarly disapproves of the attempt to assert multiple causes of action under a single count in a complaint. *See, e.g., Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991) (disapproving of "quintessential" shotgun pleading that, *inter alia*, asserted four separate RICO claims under a single count).

When a claim is premised on allegations of fraud, the allegations must further satisfy the heightened particularity requirement of Rule 9(b).  *See United States ex rel. Graves v. Plaza Med. Ctrs. Corp.*, Civ. No. 10–23382, 2014 WL 5040284, at *2 (S.D. Fla. Oct. 8, 2014) (Moreno, J.) (holding under Rule 9(b) "a plaintiff must plead the circumstances constituting fraud with particularity").  "Rule 9(b)'s particularity requirement for fraud allegations exists to put defendants on notice as to the exact misconduct with which they are charged and to protect defendants against spurious charges."  *United States ex rel. Mastej v. Health Mgmt. Assocs.*, 869 F. Supp. 2d 1336, 1340 (M.D. Fla. 2012) (citing *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194,

1202 (11th Cir. 2001)).  Consistent with the prohibition on "shotgun" pleading under Rule 8, it is also improper under Rule 9(b) for plaintiffs to merely lump multiple defendants together.  *See Martinez v. Bank of Am. Corp.*, Civ. 14–21467, 2014 WL 2735668, at *5 (S.D. Fla. June 16, 2014) (Moreno, J.).

In the Eleventh Circuit, the particularity requirement of Rule 9(b) is only satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Id.* (quoting *Ziemba*, 256 F.3d at 1202) (internal quotations omitted).  The requirements of Rule 9(b) apply to any claim grounded in fraud, whether denominated as such or not.  *See Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012) (stating Rule 9(b) "does not state it only applies to claims for fraud; it says it applies to *allegations* of fraud.").  The majority of opinions in this District have applied the requirements of Rule 9(b) to allegations under FDUTPA.  *See Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) ("Most courts construing claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading standard requirements of Rule 9(b)").[4]

Although a court should not normally consider materials outside of the complaint in ruling on a motion to dismiss, a court may consider exhibits submitted with, or documents whose contents are alleged in, the complaint, as well as documents that are matters of public record or may be judicially noticed pursuant to Fed. R. Evid. 201.  *Copans Motors, Inc. v. Porshe Cars N. Am., Inc.*, No. 14-60413-CV, 2014 WL 2612308, at *1 (S.D. Fla. June 11, 2014) (citing *United*

---

[4]  *See also Koch v. Royal Wine Merchants, Inc.*, 847 F. Supp. 2d 1370, 1380-81 (S.D. Fla. 2012) (applying Rule 9(b) to FDUTPA claims sounding in fraud); *Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327 (S.D. Fla. 2012) (dismissing FDUPTA claim for failure to plead with specificity required under Rule 9(b)); *Blair v. Wachovia Mortg. Corp.*, Case No. 11-cv-566-OC-37, 2012 WL 868878 (M.D. Fla. Mar. 14, 2012) (holding that "where the gravamen of the claim sounds in fraud, as here, the heightened pleading standard of Rule 9(b) would apply"); *Llado-Carreno v. Guidant Corp.*, Case No. 09-20971-CIV, 2011 WL 705403, *5 (S.D. Fla. Feb. 22, 2011) (holding Rule 9(b) applicable to FDUTPA claims premised on fraudulent conduct); *Begualg Inv. Mgmt., Inc. v. Four Seasons Hotel Ltd.*, Case No. 10-22153-CIV, 2011 WL 4434891 (S.D. Fla. Sept. 23, 2011) ("the allegations relating to the FDUPTA violation . . . have failed to meet the requisite particularity under Rule 9(b)").

*States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) and stating that a court may take judicial notice of public records in a motion to dismiss).

## IV.  ARGUMENT

**A.      The Ford Plaintiffs Fail To State A Claim For Fraudulent Concealment (Count 20).**

In Count 20, the Ford Plaintiffs allegedly bring a claim for fraudulent concealment under "the common law," or alternatively under the law of Michigan, or further alternatively under the "laws of the states where Plaintiffs and Class Members reside and/or purchased their Class Vehicles."  (SAC at ¶ 663).[5]  Count 20 includes claims that Ford "omitted and concealed facts," "actively concealed," "purposefully with[held]," and "suppressed . . . material facts," and did so "maliciously, oppressively, deliberately, with intent to defraud," thereby exhibiting "the highest degree of reprehensibility [which] . . . warrants an assessment of punitive damages[.]"  (*Id.* at ¶¶ 664-676).  What Count 20 does not include is a <u>single fact</u> that Ford is alleged to have misrepresented, withheld, or concealed.  Count 20 contains no cross-references to any of the prior allegations in the SAC, and it does not itself describe what Ford supposedly knew, when it knew it, and how it supposedly withheld or misrepresented this information – much less how Ford supposedly did these things intentionally, and with "the highest degree of reprehensibility[.]"  To the contrary, the allegations of the SAC support that Ford was <u>unaware</u> of potential issues associated with its Takata inflators, given the supposed conspiracy of other defendants to suppress such information.  (*See* SAC at ¶¶ 419-443).  For this reason, based on its own allegations the SAC fails to state a claim against Ford for fraudulent concealment.

Further, fraudulent concealment is, as the name suggests, an allegation of fraud.  As such it must satisfy the pleading requirements of Rule 9(b).  *See Speier-Roche v. Volkswagen Grp. Of*

---

[5]   Ford notes that Plaintiffs' habit of pleading a single count under potentially as many as six distinct (but not specifically stated) legal standards would appear to run afoul of the rulings of the Eleventh Circuit regarding the prohibition on "shotgun" pleadings.  *See Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991) (disapproving of "quintessential" shotgun pleading that, *inter alia*, asserted four separate RICO counts under a single count in the complaint); *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996) ("where, as here, the plaintiff asserts multiple claims for relief, a more definite statement, if properly drawn, will present each claim for relief in a separate count, as required by Rule 10(b)."). Regardless of the applicable substantive law, however, Plaintiffs' SAC fails the requirements of Rule 9(b), which is applicable to all such claims.

*Am., Inc.*, Civ. No. 14–20107, 2014 WL 1745050, at *7 (S.D. Fla. Apr. 30, 2014) (Moreno, J.) ("[a] fraudulent concealment claim is subject to [Rule 9(b)]'s requirement that the circumstances constituting fraud shall be stated with particularity.  Under Rule 9(b), the circumstances of the fraud must be alleged with specificity, i.e., the 'who, what, when, where, and how' of the alleged fraud.") (internal citation omitted); *Greenberg v. Miami Children's Hosp. Research Instit., Inc.*, 264 F. Supp. 2d 1064, 1073 (S.D. Fla. 2003) (Moreno, J.) (same).  Count 20 lacks any of the elements of a proper 9(b) fraud pleading.  There is no indication as to the time, place, or content of the allegedly fraudulent misrepresentation or omission.  To the contrary, the allegations in the SAC establish that Ford was **not** informed of any potential issues with Takata inflators in Ford vehicles until after – in most cases, many years after – the Ford Plaintiffs purchased their vehicles.  The SAC contains **no** factual allegations to support concealment of any kind by Ford, much less the active and deliberate concealment asserted.  There are certainly no allegations identifying specific communications from Ford, the person responsible for those communications, or when any such communications were made (a fact of particular significance here, given the broad temporal scope of the fraud alleged and the evolution of facts over time relating to Takata inflators).  *See Stein v. Marquis Yachts, LLC*, Civ. No. 14–24756, 2015 WL 1288146, at *6 (S.D. Fla. Mar. 20, 2015) (dismissing FUDTPA claim lacking allegations of pre-sale misrepresentations made in Florida).

Instead, the Ford Plaintiffs seek to conceal by generality, apparently in the hope that collective references to wrongdoing by "Vehicle Manufacturer Defendants" as a whole will mask the paucity of allegations with respect to Ford.  This is precisely the type of "shotgun" pleading that this Court and the Eleventh Circuit have repeatedly, and appropriately, condemned.  *See United States ex rel. Graves*, Civ. No. 10–23382, 2014 WL 5040284, at *2-3 (S.D. Fla. Oct. 9, 2014) (Moreno, J.) (granting motion to dismiss under Rule 9(b), holding "in a case involving multiple defendants[,] the complaint should inform each defendant of the nature of his alleged participation in the fraud.... The Amended Complaint is devoid of specific factual allegations with respect to the separate Defendants.") (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1381 (11th Cir. 1997)); *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'"); *Balabanos v. North Am. Inv. Group, Ltd.*, 708 F. Supp. 1488, 1493 (N.D. Ill. 1988) (stating that in cases involving multiple defendants, "the

complaint should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant.").

In addition to failing the requirements of Rule 9(b), the Ford Plaintiffs' allegations also fail to satisfy the lower standard of Rule 8 as articulated by the Supreme Court in *Twombly* and *Iqbal*. The facts alleged with respect to Ford (such as they are) are not "consistent with a defendant's liability" and therefore stop well-short of the "line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

In Count 20, Plaintiffs make nothing but skeletal and bald allegations of Ford's claimed misconduct, without tying any of that conduct to the specific purchasing transactions of any of the Ford Plaintiffs. Sweeping and generalized allegations, such as those in support of Count 20 "fail[] to adequately link a cause of action to its factual predicates." *Karhu*, 2013 WL 4047016, at *3 (quoting *Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x. 274, 277 (11th Cir. 2008)). Shotgun pleading of this nature has been expressly and explicitly condemned by the Eleventh Circuit for failing to comply with the requirements of Fed. R. Civ. P. 8(a)(2) and 8(d). *See Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 979 n.9 (11th Cir. 2008); *Karhu*, 2014 WL 4047016, at *3. Count 20 should be dismissed with respect to Ford because the SAC "does not plead the specific factual predicate for each claim" and does not "link particular fats to the individual cause[] of action." *Karhu*, at *3.

In addition to their various pleading-based deficiencies, the Ford Plaintiffs' fraudulent concealment claims fail because no such cause of action can arise absent a fiduciary or special relationship that can support a legal duty to disclose. *See Friedman v. Am. Guardian Warranty Servs.*, 837 So. 2d 1165, 1166 (Fla. Dist. Ct. App. 2003) ("Fraud based upon a failure to disclose material information exists only when a duty to make such disclosure exists. This duty arises when one party has information which the other party has a right to know because there is a fiduciary or other relation of trust or confidence between the two parties."); *Ellie, Inc. v. Miccichi*, 594 S.E.2d 485, 497 (S.C. Ct. App. 2004) (duty to disclose only arises where there is a fiduciary relationship). In *Taylor v. American Honda Motor Co.*, the district court rejected the application of fraudulent concealment claims against remote manufacturers under circumstances similar to those at issue here, noting "plaintiffs' complaint is deficient, if for no other reason, because it fails to allege any sales transaction whatever between [plaintiff] and [remote manufacturer] . . . . No Florida case has gone so far as to impose upon merchants a duty to

12

disclose information to the public at large, and this Court declines to do so today." 555 F. Supp. 59, 64 (M.D. Fla. 1982). That rationale should likewise apply here. Furthermore, for Plaintiffs Aliscio, Weisblat, and Sinclair, the economic loss rule would bar their fraudulent concealment claims in any event. *See Burns v. Winnebago Indus., Inc.*, No. 8:13-CV-1427-T-24, 2013 WL 4437246, at *3 (M.D. Fla. Aug. 16, 2013) (dismissing fraudulent concealment claim under Florida's economic loss rule); *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1338 (S.D. Fla. 2013).[6]

### B.    Ford Plaintiffs' Implied Warranty And Magnuson-Moss Counts Fail.

In Count 21 of the SAC, the Ford Plaintiffs claim to bring a Nationwide class for breach of the implied warranty of merchantability under the laws of the State of Michigan. (SAC at ¶ 677). The Ford Plaintiffs allege that Michigan law should apply to the putative nationwide class for this Count because "Michigan has the most significant relationship to the facts and issues relevant to this claim." (*Id.*). The Ford Plaintiffs are wrong in their choice of law analysis, and each fail to state a claim under Michigan law for breach of implied warranty. Further, even if the appropriate law of their place of purchase were applied to their claims (which the Ford Plaintiffs did not request as an "alternative" position to Count 21, unlike their alternative requests for their unjust enrichment and fraudulent concealment claims), their implied warranty claims still fail. Thus, the Ford Plaintiffs' claims under Count 21, and the state-specific subclass Counts 48 (Florida) and 98 (Texas) for breach of implied warranty, should be dismissed. Lacking any supporting implied warranty claim to serve as a predicate, the Ford Plaintiffs' Magnuson-Moss Warranty Act claim (Count 3) should likewise be dismissed with respect to Ford.

### 1.    Plaintiffs' Choice of Law Analysis Is Flawed.

Determining the proper law to apply to a claim is appropriate at the motion to dismiss stage, particularly in the case of a putative class action seeking to apply foreign law to a nationwide class. *See Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1365 (S.D. Fla. 2007) ("the choice of law issue presented at this time is simply whether the Court should apply the law of the state in which [Defendant] is headquartered to all members of the class, or apply the law of each state in which the class members rented the vehicles . . . . [T]he resolution

---

[6] The economic loss rule is described in greater detail in Section E, *infra.*

of the instant Motion to Dismiss depends upon the Court first determining this fundamental choice of law question.  Therefore, the Court addresses it at this time.").

None of the Ford Plaintiffs are residents of Michigan, nor do they allege that they purchased their vehicles in Michigan.  (SAC at ¶¶ 76, 82, 84, 114, 165, 179, 184).  Plaintiffs provide no rationale as to why "Michigan has the most significant relationship to the facts and issues relevant to this claim," beyond Plaintiffs' bald conclusion.  Implied warranties relating to the sale of goods are creatures of statute, and such warranties arise by operation of the law of the State of sale – which, for the Ford Plaintiffs, uniformly was **not** Michigan.

All of the Ford Plaintiffs are subject to the "most significant relationship"/Restatement (Second) of Conflicts test for determining choice of law.[7]  Applying this test, courts have routinely determined that it is the law of the State where the product is purchased, and where the alleged harm (diminished value) is suffered, that properly applies to claims for breach of warranty.  *See Premix-Marbletite*, 145 F. Supp. 2d at 1354 ("all of the injuries caused by the allegedly defective [product] occurred in Florida.  Accordingly, the Court finds that Florida has an appropriate relation to the transactions underlying this action and will therefore apply Florida's version of the UCC to the breach of warranty claims"); *see also Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 641 (S.D. Fla. 2008) (holding breach of express warranty claims governed by state of purchase); *In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 21 F. Supp. 2d 593, 597-98 (E.D. La. 1998) (multi-district litigation applying Florida UCC and finding appropriate relation existed to the State of Florida where warranties were allegedly breached in Florida); *Pulte Home Corp., Inc. v. Ply Gem Indust., Inc.*, 804 F. Supp. 1471, 1481-

---

[7] The choice-of-law rules governing the Ford Plaintiffs' claims are based on the forum in which their claims were originally filed, prior to centralization in this district.  *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1296 (S.D. Fla. 2003) (Moreno, J.).  Ford Plaintiffs Aliscio, Barnett, and Weisblat originally appeared as named plaintiffs in actions filed in Florida, and Plaintiff Huebner originally appeared  in the *Gerhart* action filed in the Western District of Pennsylvania.  Their choice of law analysis is therefore governed by the "most significant relationship"/Restatement (Second) of Conflicts tests applied in Florida and Pennsylvania.  *See Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 634 (S.D. Fla. 2008) (Florida); *Sherwin-Williams Co. v. Bei Enters., Inc.*, 2012 WL 5990313, at *2 (E.D. Pa. Nov. 30, 2012) (Pennsylvania).  Plaintiffs Sinclair, Benton, and Woodard appeared for the first time in the consolidated complaints filed in this MDL, thus their claims are subject to Florida's conflicts of law analysis.  *Id.*

82 (M.D. Fla. 1992) (applying Florida UCC and finding appropriate relationship existed in Florida where product containing alleged defects was located in Florida).

In fact, it is well-established in consumer claims for economic loss based on putative automotive defects that "[e]ach plaintiff's home state has an interest in protecting its consumers from in-state injuries caused by foreign corporations and in delineating the scope of recovery for its citizens under its own laws." *In re Ford Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 348 (D.N.J. 1997); *see also Spence v. Glock*, 227 F.3d 308, 314 (5th Cir. 2000) ("All 51 relevant jurisdictions are likely to be interested in ensuring that their consumers are adequately compensated in cases of economic loss."); *Lyon v. Caterpillar, Inc.*, 194 F.R.D. 206, 211-12 (E.D. Pa. 2000) ("All of the relevant jurisdictions have an interest in utilizing the state statute crafted by their state's legislature to protect their consumers and/or residents."). "These interests arise by virtue of each state being the place in which plaintiffs reside, or the place in which plaintiffs bought and used their allegedly defective vehicles or the place where plaintiffs' alleged damages occurred." *Ignition Switch*, 174 F.R.D. at 348.

Further, with respect to Ford Plaintiffs Benton, Sinclair, and Barnett – whose claims were all originally filed in Florida, and whose choice-of-law analysis is therefore based on Florida law – provisions contained in their express warranties dictate that their warranty claims be determined under the law of the state of purchase. *See* Fla. Stat. § 671.105(1); *Premix-Marbletite Mfg. Corp. v. SKW Chemicals, Inc.*, 145 F. Supp. 2d 1348, 1353 (S.D. Fla. 2001). Ford's New Vehicle Limited Warranty ("NVLW") for 2007 and 2010 addresses both express and implied warranties relating to Ford vehicles. (*See* Ex. 4 at 7; Ex. 6 at 7). The NVLW provides that "[t]he warranties contained in this booklet and all questions regarding the enforceability and interpretation are governed by the law of the state in which you purchased your Ford vehicle." (*Id.*). Accordingly, per this choice of law provision, the laws of these Ford Plaintiffs' States of purchase apply to their claims, not Michigan law.

2.   The Ford Plaintiffs' Implied Warranty Claims Are Barred By Lack of Privity, Failure of Notice, and/or Expiration Of Their Warranty.

Ford Plaintiffs Aliscio, Weisblat, and Sinclair purchased their vehicles used from third-party dealerships in Florida. (SAC ¶¶ 76, 165, 179). Notably, none of these dealerships are alleged to be Ford dealerships. (*Id.*). None of the Florida Plaintiffs are in privity with Ford, and

therefore they cannot maintain a claim for economic damages in a breach of an implied warranty claim against Ford.  "Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity."  *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. 3d DCA 2005); *Speier-Roche*, 2014 WL 1745050, at *7 ("Under Florida law, '[a] contract action for breach of implied warranty does not lie where there is no privity of contract' between a plaintiff and defendant") (quoting *Westinghouse Corp. v. Ruiz*, 537 So. 2d 596, 596-97 (Fla. 3d DCA 1988)); *see also McCabe v. Daimler AG & Mercedes-Benz USA, LLC*, 948 F. Supp. 2d 1347, 1362 (N.D. Ga. 2013) (applying Florida law and dismissing breach of implied warranty claims where plaintiffs did not purchase their vehicles directly from the defendants).  Plaintiffs' implied warranty claims are not saved, nor is privity established, by the existence of a written manufacturer's warranty which extends to the buyer.  *Am. Suzuki Motor Corp.*, 629 F. Supp. 2d at 1322 (collecting cases) (under Florida law, "the existence of a manufacturer's warranty which runs to the buyer does not in and of itself establish privity."); *Karhu v. Vital Pharms., Inc.*, Civ. No. 13–60768, 2013 WL 4047016, at *7 (S.D. Fla. Aug. 9, 2013) ("[M]erely purchasing a product from an authorized dealer does not establish privity with the manufacturer.").  Nor can these Plaintiffs argue that some theoretical third-party beneficiary status under the original warranties (extended to original purchasers) can somehow by-pass this privity requirement.[8]

The claims of Aliscio, Weisblat, Sinclair, and Barnett should also be dismissed for failure to allege that they provided pre-suit notification of their claims, as required under controlling Florida and Texas law.  *See* Fla. Stat. § 672.607(3) (applies to breaches of express and implied warranties); Tex. Bus. & Com. Code § 2.607(c)(1) (same).  Failure to plead that the requisite notice was provided defeats the warranty claims of these plaintiffs, and such notice cannot be satisfied by the filing of the lawsuit itself.  *See Chapman v. Abbott Labs.*, 930 F. Supp. 2d 1321, 1325 (M.D. Fla. Mar. 14, 2013); *Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 642 (S.D. Fla. 2008); *Garcia v. Clarins USA, Inc.*, 2014 U.S. Dist. LEXIS 182426, *18-19 (S.D. Fla. Sep. 9, 2014); *Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 625 (S.D. Fla. 2008); *In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, 2007 U.S. Dist. LEXIS 62483, *17-19 (D. Mich. Aug. 24, 2007) (applying Florida law); *U.S. Tire-Tech, Inc. v Boeran, B.V.*,

---

[8] Ford incorporates by reference the arguments regarding the inapplicability of third-party beneficiary status made by Subaru of America, Inc. ("Subaru") in its motion to dismiss at II(A)(1).

110 S.W.3d 194, 201-02 (Tex. App.-Houston 1st Dist. 2003) ("The manufacturer must be made aware of a problem with the particular product purchased by a particular buyer"); *Massey v. Novartis Pharms. Corp.*, 46 F. Supp. 3d 688, 692 (W.D. Tex. 2014) (dismissing warranty claim for lack of pre-suit notice, rejecting proposition that awareness from other reports or claims satisfies plaintiff's notice obligation).[9]

Further, Ford Plaintiffs Aliscio, Weisblat, Sinclair, and Huebner all purchased their used vehicles with the Ford New Vehicle Limited Warranty ("NVLW") already expired.  Because their NVLW limited the duration of Ford's implied warranty to the duration of the NVLW, the only implied warranty attributable to Ford was likewise expired prior to their purchase, eliminating any possibility of an implied warranty claim against Ford.  *See, e.g.*, *White v. Volkswagen Group of Am., Inc*., Civ. No. 2:11–02243, 2013 WL 685298, at *5 (W.D. Ark. Feb. 25, 2013) ("Here, according to the plain terms of Defendant's express Warranty, the implied warranty of merchantability applicable to White's vehicle 'is limited in duration to the period of this written warranty.'…As discussed above, the written Warranty expired prior to the time White became the owner of her vehicle. Since the implied warranty's duration is equal to the written Warranty's, the implied warranty also expired."); *Daigle v. Ford Motor Co*., Civ. No. 09–3214, 2012 WL 3113854, at *3 (D. Minn. July 31, 2012) ("Daigle's claim of breach of implied warranty under Minnesota law is limited to the life of the New Vehicle Warranty - which is three years or 36,000 miles, whichever occurs first. It is undisputed that Daigle purchased his 2004 Freestar after the New Vehicle Warranty had expired, therefore his claim of breach of implied warranty has no merit and Ford is entitled to summary judgment.").[10]

---

[9]  Ford incorporates by reference the further arguments on this issue set forth in the motions to dismiss filed by Mazda Motor of America, Inc. ("Mazda"), at Section F(6)(a), and Subaru at Section II(A)(2).

[10]  *See also Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1340 (S.D. Fla. 2013) ("Plaintiffs have asserted they purchased their [products] after the factory warranties issued by Honda had expired.  Plaintiffs cannot plead they experienced any defect during the express warranty periods . . . as they clearly lacked ownership interests during the warranty periods."); *Frenzel v. AliphCom*, __ F. Supp. 3d __, No. 14-cv-03587-WHO, 2014 WL 7387150, at *15 (N.D. Cal. Dec. 29, 2014) (holding that "[t]hese [one-year] restrictions on [defendant's] warranty obligations extend to claims under the implied warranty of merchantability."); *Snodgrass v. Ford Motor Co*., 2001 U.S. Dist. LEXIS 18555, *33-35, 49 n.11 (D.N.J. Sep. 4, 2001) ("Since the limitation was valid upon sale, the implied warranty expired long before the Naves purchased

Similarly, because Ford Plaintiffs Woodard, Barnett, and Benton's NVLW (and, by extension, their implied warranties) expired during their ownership, with no allegation of any manifestation of a defect in their airbag inflators prior to that expiration, their claims are likewise barred. *See, e.g., Brisson v. Ford Motor Co.*, 349 Fed. App'x 433, 434 (11th Cir. 2009) ("[t]he district court properly dismissed the implied warranty claim because . . .  plaintiffs failed to allege that a defect manifested itself or a breach occurred within" the relevant warranty period.); *cf. Licul v. Volkswagen Grp. Of Am., Inc.*, Civ. No. 13–61686, 2013 WL 6328734, at *2 (S.D. Fla. Dec. 5, 2013) (Moreno, J.) ("plaintiff may not bring a claim for breach of an express warranty where a defect has not manifested during the warranty period.").[11]

Finally, Ford incorporates by reference the arguments made by Nissan North America, Inc. ("Nissan") at Section IV(A), regarding the overall merchantability – as a matter of law – of vehicles that have performed without any manifestation of an alleged latent defect.

For all of these reasons, Counts 21, 48, and 98 should be dismissed with prejudice. Lacking a predicate breach of implied warranty claim, the Ford Plaintiffs are unable to assert a Magnuson-Moss claim relating to their vehicles, and Count 3 should likewise be dismissed with respect to Ford.  *See  Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1266 (N.D. Fla. 2012) ("[I]n order to state a claim under the MMWA, the Plaintiff must adequately plead a cause of action for

---

their car in 1992."); *Kagan v. Harley Davidson, Inc*., 2008 U.S. Dist. LEXIS 32747, *31-38 (E.D. Pa. Apr. 22, 2008) (same).

[11]   The Ford Plaintiffs make a half-hearted effort to avoid the expiration of their warranties by arguing that the time and mileage provisions of the warranties are somehow "unconscionable." (SAC ¶¶ 452-454).  Ford's warranties are entirely consistent with industry standards, and longer than numerous other warranties that have been found to be not unconscionable.  *See Landsman Packing Co. v. Continental Can Co.*, 864 F.2d 721, 729 (11th Cir. 1989) (stating courts "have upheld 12 month warranty limitations as reasonable"); *Speier-Roche*, *supra* (enforcing vehicle's 12 month/12,000 mile warranty); *Licul v. Volkswagen Grp. Of Am., Inc.*, Civ. No. 13–61686, 2013 WL 6328734, at *1, 3-4  (two-year/24,000 mile warranty not unconscionable); *Taterka v. Ford Motor Co*, 271 N.W.2d 653, 657 (Wis. 1978) (12-months/12,000 miles not unconscionable); *Broe v. Oneonta Sales Co., Inc.*, 100 Misc. 2d 1099 (N.Y. Sup. Ct. 1978) (same); *Bush v. Am. Motor Sales, Corp.*, 575 F. Supp. 1581 (D. Colo. 1984) (same); *Hahn v. Ford Motor Co., Inc.*, 434 N.E.2d 943 (Ind. App. 1982) (same); *Moore v. Coachmen Indus., Inc.*, 499 S.E.2d 772 (N.C. App. 1998) (12-month/15,000 miles not unconscionable). Further, given that most of the Ford Plaintiffs bought their used vehicles with the Ford warranties already expired, it is difficult to understand how Plaintiffs can claim any prejudice relating to the terms of a warranty they never had access to in the first place.

18

written or implied warranties under [State] law."); *McCabe v. Daimler AG & Mercedes-Benz USA, LLC*, 948 F. Supp. 2d 1347, 1364 (N.D. Ga. 2013).

 **C.**  **Plaintiffs' Unjust Enrichment Claims Fail.**

   In Count 22, the Ford Plaintiffs bring a claim for unjust enrichment, again putatively under the "common law," or Michigan law, or the law of the states where Plaintiffs "reside and/or purchased their Class Vehicles." (SAC ¶ 683). Again leaving aside the inherent (and improper) uncertainty associated with Plaintiffs' multiple-contingency pleading methods, the Ford Plaintiffs' claims fail under any of their potential standards.

   First, there is no "common law" of unjust enrichment that this federal court sitting in diversity may apply to the Ford Plaintiffs' claims. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1306 (11th Cir. 2002) ("Under the doctrine enunciated in *Erie* and its progeny, federal courts sitting in diversity apply state substantive law and federal procedural law.") (internal quotation omitted). Further, Plaintiffs' argument that there are "no true conflicts (case-dispositive differences) among various states' laws of unjust enrichment" is wishful thinking of the highest order. Many courts have held that States' articulations of unjust enrichment vary greatly; in fact, there are a number of States – including States whose law applies to certain of the Ford Plaintiffs' claims – that do not acknowledge it as a freestanding cause of action at all. *See, e.g., Rapp v. Green Tree Servicing, LLC,* 302 F.R.D. 505, 514 (D. Minn. 2014) ("[Plaintiff] first contends that there are no material differences among the unjust-enrichment laws of the 50 states. *This argument is plainly wrong.* As countless courts have found, the states' different approaches to, or elements of, unjust enrichment are significant.") (emphasis added, internal quotation omitted) (collecting cases).[12]

   The Ford Plaintiffs' argument that the unjust enrichment law of Michigan should apply to all of their claims fares no better than their attempt to apply Michigan law to their breach of warranty claims. Unjust enrichment is an equitable remedy that is viewed as quasi-contractual in nature. *Guarantee Ins. Co. v. Brand Mgmt. Serv.*, Civ. No. 12–61670, 2013 WL 6768641, at *11

---

[12] *See also Thompson v. Bayer Corp.*, No. 4:07CV00017 JMM, 2009 WL 362982, at *4 (E.D. Ark. Feb. 12, 2009); *Harris v. comScore, Inc.*, 292 F.R.D. 579, 583-84 (N.D. Ill. 2013); *Kunzelmann*, 2013 WL 139913, at *6; *Yarger v. ING Bank, FSB*, 285 F.R.D. 308, 323-25 (D. Del. 2012); *Corwin v. Lawyers Title Ins. Co.*, 276 F.R.D. 484, 485-86 (E.D. Mich. 2011); *In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 377, 386 (N.D. Ill. 2010); *In re Conagra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689, 696-98 (N.D. Ga. 2008); *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 626 (D. Kan. 2008).

(S.D. Fla. Dec. 20, 2013) ("unjust enrichment is a claim in quasi-contract[.]").  Accordingly, the Ford Plaintiffs' unjust enrichment claims are subject to the same choice-of-law analysis as their breach of implied warranty claims, with the same result following:  the law of the place of purchase governs the claim.  *See In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 288 F.3d 1012 (7th Cir. 2002) (reversing district court certification of nationwide class asserting, *inter alia*, unjust enrichment claims against Ford under Michigan law).

Turning to Plaintiffs' third alternative – the law of the Ford Plaintiffs' residence or purchase – the claims of Ford Plaintiffs Aliscio, Weisblat, Sinclair, Benton, and Woodard must be dismissed because under Florida and South Carolina law a plaintiff cannot bring a claim for unjust enrichment (an equitable remedy) alongside a claim at law relating to the same conduct.  This Court held – in the context of an automotive case alleging diminished value from an undisclosed defect – that unjust enrichment claims must be dismissed when a parallel legal claim (such as FDUTPA) is brought for the same conduct.  *See Matthews v. Am. Honda Motor Co.*, Civ. No. 12–60630, 2012 WL 2520675, at *2 (S.D. Fla. June 6, 2012) ("It is well-established under Florida law that unjust enrichment is an equitable remedy that is available only when the plaintiff lacks an adequate remedy at law.  Here, because [plaintiff's] unjust enrichment claim is predicated on the same wrongful conduct as her FDUTPA claim, she does not lack an adequate remedy."); *see also Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236-37 (S.D. Fla. 2007); *Jovine v. Abbott Labs, Inc.*, 795 F. Supp. 2d 1331, 1341-42 (S.D. Fla. 2011); *Barrett v. Miller*, 321 S.E.2d 198, 199 (S.C. App. 1984) (holding that unjust enrichment claim is an equitable remedy and "[w]here a plaintiff has an adequate remedy at law, equitable relief is not normally in order.").

The unjust enrichment claims of Ford Plaintiffs Huebner (CA) and Barnett (TX) also must be dismissed because neither of their home States acknowledge unjust enrichment as a freestanding cause of action, as opposed to a measure of damages or general principle.  *See McBride v. Boughton*, 123 Cal. App. 4th 379, 387-388 (Cal. Ct. App. 2004) ("[u]njust enrichment is not [an independent] cause of action, []or even a remedy, but rather 'a general principle, underlying various legal doctrines and remedies.'") (citation omitted); *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (Cal. Ct. App. 2008) ("[U]njust enrichment is not a cause of action."); *Enreach Technology, Inc. v. Embedded Internet Solutions, Inc.*, 403 F. Supp. 2d 968, 976 (N.D. Cal. 2005) ("[U]njust enrichment is not a valid cause of action in

California."); *Smith v. Ford Motor Co.*, 462 Fed. Appx. 660, 665 (9th Cir. 2011) (finding plaintiffs' argument that unjust enrichment is an independent cause of action "has no merit."); *Hancock v. Chi. Title Ins. Co.*, 635 F. Supp. 2d 539, 561 (N.D. Tex. 2009) ("Texas law does not afford an independent cause of action for unjust enrichment[.]"); *Redwood Resort Props., LLC v. Holmes Co.*, 2006 WL 3531422, at *9 (N.D. Tex. Nov. 27, 2006) (dismissing an unjust enrichment claim and holding that it is not an independent cause of action); *Argyle Indep. Sch. Dist. v. Wolf*, 234 S.W.3d 229, 246-47 (Tex. Ct. App. 2007).

Finally, the unjust enrichment claims of the Ford Plaintiffs from jurisdictions that acknowledge the existence of the cause of action must also be dismissed because they cannot allege that they have conferred any benefit on Ford, a required element of unjust enrichment under their State's law.  *See Moynet v. Courtois*, 8 So.3d 377, 379 (Fla. Dist. Ct. App. 2009); *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th DCA 2007); *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 401 (Fla. 3d DCA 2009) (unjust enrichment claim was properly dismissed because power customer had no relationship with utility's parent company and did not confer a direct benefit on the parent company); *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla. N.A.*, 667 So. 2d 876, 879 (Fla 3d DCA 1996) (dismissing unjust enrichment claim because plaintiff "could not and did not allege that it had directly conferred a benefit on the defendants"); *In re MI Windows & Doors, Inc., Prods. Liab. Litig.*, Civ. No. 2:12–mn–00001, 2012 WL 5408563, at *6 (D.S.C. Nov. 6, 2012). Here, Plaintiffs have conferred no benefit on Ford related to their vehicles.

None of the Ford Plaintiffs purchased their vehicles from Ford.  (SAC ¶¶ 76, 84, 165, 179, 184).  They purchased them from independent dealers, who buy and sell vehicles for their own benefit.  (*Id.*)  Ford did not receive the proceeds of those sales (the dealerships did), and accordingly Ford did not retain any such benefit from the Ford Plaintiffs.  *See In Re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 843 (S.D. Ohio 2012) (dismissing Florida unjust enrichment claim where plaintiff alleged that he purchased a used vehicle and failed to plead the manner in which he conferred a direct benefit on Porsche); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 551-52 (D. Md. 2011 (dismissing Florida unjust enrichment claim because plaintiff failed to demonstrate that Ford received a direct benefit from his purchase of a used Ford vehicle from an independent dealership).  Lacking these essential elements, the Ford Plaintiffs' unjust enrichment claims fail as a matter of law.  *See MI Windows*

*& Doors*, 2012 WL 5408563, at *6-7   (dismissing unjust enrichment claims against remote manufacturer, noting plaintiff's payment to intermediate distributor "does not confer any benefit on [remote manufacturer], since [remote manufacturer] had already been paid for the [products] by the [distributor]. . . . These allegations are insufficient to state a claim.") (citing *Niggel Assocs. v. Polo's of North Myrtle Beach, Inc.*, 296 S.C. 530, 374 S.E.2d 507, 509 (S.C. Ct. App. 1988) ("Any benefit received was an incidental result of dealings between others in which it did not participate and over which it assumed no control")); *Chase Home Fin., LLC v. Risher*, 405 S.C. 202, 212, 746 S.E.2d 471, 476-77 (S.C. Ct. App. 2013) (affirming a finding that unjust enrichment not established where defendant was not direct recipient of claimed benefit).

### D.   Ford Plaintiffs Cannot Assert Claims Under Michigan Consumer Protection Act Or The Ohio Consumer Sales Practices Act.

In Count 23, the Ford Plaintiffs assert a claim for a putative nationwide class under the Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.903, *et seq.*  (SAC ¶ 689-709). In Count 87, they assert a statewide Ohio subclass claim under the Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.01, *et seq.*  (SAC ¶¶ 1641-1663).  None of the Ford Plaintiffs reside in Michigan or Ohio, or purchased their vehicles in Michigan or Ohio. Nevertheless, Plaintiffs baldly assert that Michigan's consumer protection act should apply to the nationwide class "because Michigan has the most significant relationship to the facts and issues relevant to this claim," (SAC ¶ 689), and that a subclass should be maintained for Ford purchasers in Ohio.  Plaintiffs are wrong.

As this Court noted in *In re Managed Care*:

> The Commerce Clause and Due Process Clauses limit the ability of each state to apply its own laws and policies to conduct occurring beyond its borders. *BMW of N. Am. v. Gore*, 517 U.S. 559, 572 , 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). A state's laws are "presumptively territorial and confined to limits over which the law-making power has jurisdiction." *Sandberg v. McDonald*, 248 U.S. 185, 195 , 39 S.Ct. 84 , 63 L.Ed. 200 (1918). None of the state statutes invoked by Plaintiffs expressly apply beyond the borders of the states that enacted them. These are fundamental substantive limits on the scope of state regulatory jurisdiction – limits that the procedural vehicle of a class action cannot justify transgressing. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 , 105 S.Ct.

2965 , 86 L.Ed.2d 628 (1985); *In re Bridgestone/Firestone, Inc.
Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1018 (7th Cir.2002).

*In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1296 (S.D. Fla. 2003).  Consistent with these
principles, numerous courts have held that extraterritorial application of a State's consumer
protection laws to putative class members residing in other States, for transactions occurring in
other States, is improper.  *Id.* ("The Court finds that the [extraterritorial statutes] can have no
application to Plaintiffs that neither reside . . . nor have engaged in a relevant transaction in that
particular State."); *Berry*, 497 F. Supp. 2d at 1366 (dismissing putative nationwide consumer
fraud claim under the law of the State of defendant's headquarters for failure to state a claim
upon which relief can be granted); *In re Bridgestone/Firestone*, 288 F.3d at 1018 (decertifying
50 state class against Ford putatively under Michigan law, holding "[s]tate consumer-protection
laws vary considerably, and courts must respect these differences rather than apply one state's
law to sales in other states with other rules.").[13]

---

[13] *See also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 592 (9th Cir. 2012) (decertifying
nationwide class under law of defendant's State of incorporation, holding "[t]he automobile sales
at issue in this case took place within 44 different jurisdictions, and each state has a strong
interest in applying its own consumer protection laws to those transactions."); *In re Graphics
Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1026 (N.D. Cal. 2007) (dismissing state
law claims in putative class action because no named plaintiff resided in those states, explaining
"[e]ach claim under each state statute must be analyzed separately . . . . [a] class cannot assert a
claim on behalf of an individual that they cannot represent"); *Granfield v. NVIDIA Corp.*, 2012
WL 2847575, at *4 (N.D. Cal. July 11, 2012) (dismissing all non-Massachusetts state law
warranty claims with prejudice for lack of standing where named plaintiff failed to allege she
made any relevant purchases outside the state of Massachusetts); *Suarez v. Playtex Prods., Inc.*,
2009 WL 2212315, at *2 (N.D. Ill. July 24, 2009) (dismissing claims for jurisdictions where
plaintiffs did not live); *Cornelius v. Fidelity Nat'l Title Co.*, 2009 WL 596585, at *9-10 (W.D.
Wash. Mar. 9, 2009) (no basis for claims under out-of-state laws; lacking standing, claims
dismissed); *McGuire v. BMW of N. Am., LLC*, Civ. No. 13–7356, 2014 WL 2566132 , at *6
(D.N.J. June 6, 2014) ("[T]his Court agrees that the Plaintiff here lacks standing to assert claims
under the laws of the states in which he does not reside, or in which he suffered no injury . . .
For the foregoing reasons, the Court grants Defendant's motion to dismiss Plaintiffs multi-state
allegations"); *Lauren v. PNC Bank, N.A.*, 296 F.R.D. 389, 391 (W.D. Pa. 2014) ("[Plaintiff]
suffered an alleged injury exclusively under Ohio law. Therefore, she does not have standing to
assert unjust enrichment claims under the law(s) of any other state"); *In re Packaged Ice
Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D.  Mich. 2011) ("[N]amed plaintiffs lack standing
to assert claims under the laws of states in which they do not reside or in which they suffered no
injury"); *In re Niaspan Antitrust Litig.*, 42 F.Supp.3d 735, 758 (E.D. Pa. 2014) (same); *Smith v.
Pizza Hut, Inc.*, 2011 WL 2791331, *8 (D. Colo. July 14, 2011) ("It is well established that a
plaintiff does not have standing to allege claims on his own behalf under the laws of states where

In keeping with the foregoing authority, Counts 23 and 87 should be dismissed with respect to the Ford Plaintiffs, with prejudice.

### E.     Ford Plaintiffs' Negligence Claims Are Barred By The Economic Loss Rule.

In Count 24, the Ford Plaintiffs purport to bring a claim for negligence under the law of Michigan, or alternatively under the laws of the States where Plaintiffs "reside and/or purchased their Class Vehicles."  (SAC ¶ 710).  Plaintiffs claim that Ford's negligence has caused them to suffer "actual damages" in the form of "significantly diminished value of the vehicles in which the defective and unreasonably dangerous airbags are installed[.]"   (*Id.* at ¶ 714).  That is, the Ford Plaintiffs seek to recover purely economic losses in negligence.  Such claims are barred by the economic loss rule.

"[T]he economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Tiara Condo. Ass'n v. Marsh & McLennan Cos. Inc.*, 110 So.3d 399, 401 (Fla. 2013) (citation omitted); *see also E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 870 (1986) (same); *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1336 (S.D. Fla. 2013) (same).  In the context of products liability actions claiming only economic losses – such as repair costs, or the loss of value in the product itself owing to an alleged defect – claims in tort are not permitted, as such claims are best addressed by warranty remedies.  *See Tiara*, 110 So.3d at 405 ("the rationale being that in those cases contract principles are more appropriate than tort principles for resolving economic loss without an accompanying personal injury or property damage"); *Aprigliano*, 979 F. Supp. 2d at 1335-36; *E. River*, 476 U.S. at 870.

The claims of Ford Plaintiffs Aliscio, Weisblat, and Sinclair are appropriately determined under Florida law, *see* Section IV(B)(1), *supra*.  Per *Tiara* and *Aprigliano*, their claims must be dismissed under the economic loss doctrine because their vehicles have not injured them or caused damage to other property, and the damages sought are purely economic.  *See also Burns v. Winnebago Indus., Inc.*, 2013 WL 4437246, at * 4 (M.D. Fla. Aug. 16, 2013) (dismissing negligence-based claims against manufacturing defendants under economic loss doctrine where it was alleged that defendants sold a product they knew was defective); *Premix-Marbletite Mfg.*

---

he has never lived or resided because he has not suffered an injury under those laws, nor is he protected by those laws") (citations omitted).

24

*Corp. v. SKW Chems, Inc.*, 145 F. Supp. 2d 1348, 1359 (S.D. Fla. 2001) (granting summary judgment against plaintiff where only economic losses were pleaded and "the allegations contained in [the plaintiff's] tort claims [were] essentially the same as those in its breach of warranty claims").

The claims of Ford Plaintiffs Benton and Woodard are similarly barred by the economic loss rule under South Carolina law. *See Sapp v. Ford Motor Co.*, 386 S.C. 143, 687 S.E.2d 47 (2009) (barring recovery for product defects solely resulting in damage to vehicles themselves, under economic loss rule); *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, 22 F. Supp. 3d 1322 (N.D. Ga. 2014) (applying South Carolina, dismissing negligence claim seeking economic loss on grounds that economic loss rule bars claim). Ford Plaintiff Huebner's claim, based on California law – where Huebner resided and purchased his Ford vehicle (*see* SAC ¶ 114) – is also barred by the economic loss rule. *See Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965); *Sharma v. BMW of N. Am., LLC*, Civ. No. No. C–13–2274, 2014 WL 2795512, *6-7 (N.D. Cal. June 19, 2014); *Callaghan v. BMW*, 2014 WL 1340085, at *1, *6 (N.D. Cal. Apr. 2, 2014). And Ford Plaintiff Barnett's claim is likewise barred under applicable Texas law. *See Murray v. Ford Motor Co.*, 97 S.W.3d 888, 891 (Tex. App.-Dallas 2003) (affirming dismissal of negligence claims under economic loss rule; claim barred in tort where product "injures a consumer economically and not physically"); *Sharyland Water Supply Co. v. City of Alton*, 354 S.W.3d 407, 418 (Tex. 2011) ("we have applied the economic loss rule only in cases involving defective products or failure to perform a contract. In both of those situations, we held that they parties' economic losses were more appropriately addressed through statutory warranty actions or common law breach of contract suits than tort claims.").[14]

---

[14] Even if this Court were to accept Plaintiffs' invitation to apply Michigan law to the putative nationwide class, those claims would nonetheless be barred under the economic loss doctrine as applied in Michigan. *See Murphy v. Proctor & Gamble Co.*, 695 F. Supp. 2d 600, 602 (E.D. Mich. 2010) (holding economic loss doctrine bars consumer claims seeking "purely economic losses arising out of the quality of . . . products") (ellipses in original); *In re MI See MI Windows & Doors,* MDL No. 2333, 2012 WL 5182416, at *3 (D.S.C. Oct. 18, 2012) (applying Michigan law, "Michigan's economic loss doctrine bars consumers from tort recovery against manufacturers of defective products when the only losses are damages to the defect product itself."); *Eaton Corp. v. Magnavox Co.*, 581 F. Supp. 1514, 1536 (E.D. Mich. 1984) ("the only damages recoverable under a negligence theory are those for personal injury and property damage; damages for pure economic harm cannot be recovered."); *McGhee v. General Motors Corp.*, 98 Mich. App. 495, 296 N.W.2d 286 (1980) (same).

### F.   Ford Plaintiffs Fail To State A Claim Under FDUTPA.

Count 47 asserts a claim against Ford under FDUTPA, on behalf of a putative Florida sub-class.  (SAC ¶¶ 1009-1030).  The Ford Plaintiffs' claims must be dismissed because none allege a manifestation of any alleged defect in their vehicles.  Further, because their FDUTPA claims sound in fraud, their pleading is governed by the particularity requirements of Rule 9(b) – which are not satisfied.  Finally, Plaintiff Aliscio's FDUTPA claim is time-barred.

### 1.   Lack of Manifestation of Defect Bars FDUTPA Claims.

Economic damages for products that are alleged to have a "risk of failure" or to be "failure prone," but have not yet failed, are not available under FDUTPA.  FDUTPA was not enacted to provide for recovery of every type of damages that could arise from the purchase of a product or service, nor to duplicate or supplant other claims and relief available to consumers.  Rather, the "obvious purpose of FDUTPA 'is to make consumers whole for losses caused by fraudulent consumer practices.'"  *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2d 602, 606 (Fla. 2d DCA 1997) (quoting *Marshall v. W & L Enters. Corp.* 360 So. 2d 1147, 1148 (Fla. 1st DCA 1978)).  Thus, FDUTPA's remedies "'*are in addition*' to," not duplicative of, "other remedies available under state or local law."  *Id.* (emphasis in original) (quoting *Pinellas Cnty. Dept. of Consumer Affairs v. Castle*, 392 So. 2d 1292, 1293 (Fla. 1980)).

Consistent with FDUTPA's intended purpose, Florida law requires in a case involving an allegedly defective product, that the defect must actually manifest before the purchaser may recover actual damages under FDUTPA.  *See Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1139 (Fla. 3d DCA 2008), *review denied*, 999 So. 2d 644 (Fla. 2008); *see also Breakstone v. Caterpillar, Inc.*, 09-23324-CIV, 2010 WL 2164440, at *6 (S.D. Fla. 2010) (explaining that those "with no manifest injury only have speculative damages.").  In *Kia*, the trial court certified a class to pursue a FDUTPA claim against an automobile distributor that sold vehicles with allegedly defective brakes.  *Id.*   The Florida Third District Court of Appeal reversed the certification order, because, among other reasons, "the class representative seeks compensation not only for class members whose brakes have manifested a deficiency, but also for those whose brakes have performed satisfactorily."  *Id.*  The *Kia* court concluded that certifying a class that included purchasers who have not experienced a manifestation of the alleged defect "deviated

from the majority of jurisdictions, which consistently have denied class recovery on the type of theory the class representative presses in this case." *Id.* (internal citations omitted). The court reiterated that it was "firmly aligned . . . with this majority jurisprudence." *Id.* (citing *Ortiz v. Ford Motor Co.*, 909 So. 2d 479 (Fla. 3d DCA 2005) (refusing to certify a class of purchasers who alleged they overpaid for their Ford Explorer vehicles that allegedly had an undisclosed defect rendering them "prone to rollover" because, among other things, plaintiffs could not "demonstrate the manageability of the putative class which is based on an economic recovery of a product that is merely *failure-prone*.") (emphasis supplied)).

Here, the Ford Plaintiffs have not alleged that the defect has manifested in any of their vehicles. Plaintiffs allege that "[a]s a result of the common, uniform Inflator Defect . . . the defective Takata airbags too often either fail to deploy or violently explode[.]" (SAC at ¶ 8). Plaintiffs do not allege, however, that any Plaintiff asserting a FDUTPA claim against Ford experienced a "fail[ure] to deploy" or a "violent[] explo[sion of]" a Takata airbag in their Ford vehicle. (*See id.* at ¶ 76 (Plaintiff Aliscio); ¶ 165 (Plaintiff Sinclair); ¶ 179 (Plaintiff Weisblat)). Instead, as in *Kia, Ortiz*, and many other cases, Plaintiffs here seek compensation for parts that have a "risk of failure" but for Plaintiffs, have "never actually failed." *See In re Bridgestone/Firestone*, 288 F.3d at 1014-1015; *Kia*, 985 So. 2d at 1139; *Ortiz*, 909 So. 2d 479. Florida is in line with the majority of jurisdictions that prohibit recovery of economic "difference in value" damages—the only damages available under FDUTPA—where, as here, the product purchased by the plaintiff has never actually failed. *Kia*, 985 So. 2d at 1017; *Ortiz,* 909 So. 2d 479. FDUTPA simply does not provide a remedy for those in the circumstances, and therefore Counts 47 should be dismissed with prejudice with respect to Ford.[15]

2.   <u>Plaintiffs Have Not Alleged Their Fraud-Based FDUTPA Claims with the Particularity Required by Rule 9(b).</u>

Because the Ford Plaintiffs' FDUTPA claims are based on allegations of fraudulent conduct, they are subject to Rule 9(b)'s pleading requirements. Rule 9(b) "does not state that it only applies to claims for fraud; it says it applies to *allegations* of fraud. While not all claims under FDUTPA will be based on fraud" when a plaintiff's FDUTPA claim is, it "must be

---

[15]   Consistent with this authority, Ford incorporates by reference the manifestation requirement briefing submitted by Mazda in its Motion to Dismiss at Section C.

plead[ed] with particularity."  *Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012) (emphasis supplied); *see also Llado-Carreno v. Guidant Corp.*, 73 UCC Rep. Serv. 2d 617, 2011 WL 705403 (S.D. Fla. 2011) (dismissing FDUTPA claim and holding "[t]he particularity requirement of Rule 9(b) applies to all claims that sound in fraud, regardless of whether those claims are grounded in state or federal law.").[16]

Here, the Ford Plaintiffs' FDUTPA claims are based on allegations of fraudulent conduct. Indeed, on behalf of the Florida Consumer Sub-Class, Plaintiffs allege that "Defendants ***failed to disclose and actively concealed*** the dangers and risks posed by the Class Vehicles and/or the Defective Airbags," and "also engaged in unlawful trade practices by employing deceptive acts or practices, ***fraud***, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely[.]" (SAC at ¶¶ 1013, 1014) (emphasis supplied).  These are classic allegations of fraud.  *See* Black's Law Dictionary (9th ed. 2009) (defining "fraud" as "A knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment").  As explained, *supra*, in connection with the Ford Plaintiffs' Fraudulent Concealment claim (Count 20), the Ford Plaintiffs have entirely failed to allege the "who, what, when and where" regarding Ford's alleged "misrepresentations and omissions" that is required to satisfy Rule 9(b).  (*See* Section IV(A), *supra*).  To the contrary, Plaintiffs' allegations establish that Ford did **not** know of potential issues with the Takata inflators, which in itself defeats any claim based on Ford's alleged misrepresentation or concealment of potential issues with the inflators, since Ford cannot conceal what is does not know.  *See Friedman v. Am. Guardian Warranty Servs.*, 837 So. 2d 1165 (Fla. 4th DCA 2003); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347 (N.D. Ga. 2013) (applying Florida law).  Accordingly, like the Ford Plaintiffs' fraudulent concealment claims, their FDUTPA claim must be dismissed.

> 3.    Plaintiff Joseph Aliscio's FDUTPA Claim is Time-Barred.

---

[16] The *Perret* court acknowledged "a split in this district over whether a claim under FDUTPA must meet the pleading requirements of Rule 9(b)" 846 F. Supp. 2d at 1333 (citing and comparing *Llado-Carreno*, 2011 WL 705403 *5 with *Costa v. Kerzner Intern. Resorts, Inc.,* 11-60663-CV, 2011 WL 2519244, at *2 (S.D. Fla. 2011) "(noting the split in authority and holding that FDTUPA claims do not have to comply with Rule 9(b), yet, finding insufficient allegations of misrepresentations)."

"Claims under FDUTPA . . . expire after a four-year period running from the occurrence of the last element constituting the cause of action." *Altenel, Inc. v. Millennium Partners, L.L.C.*, 947 F. Supp. 2d 1357, 1371 (S.D. Fla. 2013). "A FDUTPA claim accrues at the time of purchase or lease of a product, not upon discovery of an alleged defect." *Speier-Roche*, 2014 WL 1745050, at *6.

Plaintiff Aliscio allegedly purchased a 2004 Ford Ranger on October 22, 2009. (SAC at ¶ 76). Any FDUTPA claim he had with regard to that vehicle purchase, therefore, accrued on October 22, 2009, and expired on October 21, 2013. *Altenel, Inc.*, 947 F. Supp. 2d at 1371; *Speier-Roche*, 2014 WL 1745050, at *6. Mr. Aliscio did not assert his FDUTPA claim until November 21, 2014, when he joined as a Plaintiff in *Weisblat et.al v. Takata Corp., et.al*, Case No. 0:14-cv-62669-RNS (S.D. Fla. Nov. 21, 2014). Even assuming that, pursuant to *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 94 S. Ct. 765, 38 L. Ed. 2d 713 (1974), the statute of limitations on Mr. Aliscio's FDUTPA claim was tolled as soon as the first putative class action suit against Ford regarding Takata inflators was filed, Mr. Aliscio's claim is still time-barred because the first such suit was not filed until October 27, 2014 (*Dunn et.al v. Takata Corp., et.al*, Case 1:14-cv-24009 (S.D. Fla. Oct. 27, 2014)). Because it is time-barred, Mr. Aliscio's FDUTPA claim against Ford should be dismissed.

## G. This Court Lacks Personal Jurisdiction Over The Claims Of Ford Plaintiffs Barnett, Huebner, Benton, and Woodard.

The claims of Nancy Barnett (SAC ¶ 82), John Huebner (*id*. ¶ 114), Alicia Bennett (*id*. ¶ 84), and Teresa Woodard (*id*. ¶ 184) against Ford should be dismissed for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Although the Court will accept as true the allegations of Plaintiffs' complaint, Plaintiffs have the burden of establishing a *prima facie* case of personal jurisdiction over Ford. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). Moreover, Plaintiffs must prove personal jurisdiction exists for each plaintiff's claims against Ford. *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274-275 (5th Cir. 2006); *accord* Charles A. Wright, *et. al.*, 4A *Federal Practice & Procedure* § 1069.7 (3d ed.). Here, neither Barnett, Huebner, Benton, nor Woodard can do so.

In multidistrict litigation, this Court exercises "personal jurisdiction to the same extent that the transferor court could." *In re Automotive Refinishing Paint Antitrust Litig.*, 358 F.3d

288, 279 n.11 (3d Cir. 2004).  Thus, the question for Barnett's and Huebner's claims is whether the courts in Florida and Pennsylvania, where their claims were first filed, respectively, have personal jurisdiction over Ford on their claims.  *See In re Chinese Drywall Prods. Liability Litig.*, 742 F.3d 576, 583 (5th Cir. 2014); *see also* SAC ¶ 82, *Dunn v. Takata Corp.*, No. 1:14-cv-24009 (S.D. Fla. Oct. 27, 2014) (Barnett's claims); SAC ¶ 114, *Gerhart v. Takata Corp.*, Case No. 2:14-cv-01562 (W.D. Pa. Nov. 14, 2014) (Heubner's claims).  Benton and Woodard's claims, by contrast, were first brought as part of Plaintiffs' second amended economic loss class action complaint in this Court (SAC ¶¶ 84, 184), and so the question is whether this Court has personal jurisdiction over Ford on those claims.  In each case, the answer is no.

In the SAC, Plaintiffs allege this Court has personal jurisdiction over all Defendants "pursuant to Florida Statutes 48.193(1)(a)(1), (2), and (6)[.]" (SAC ¶ 41.)  By invoking subsection (1) of Florida's long-arm statute, Plaintiffs are alleging only that "specific jurisdiction" over Ford is warranted.[17]  *See Cox v. Indiana*, Civ. No. 5:15-61, 2015 WL 2238571, at *2 n.1 (N.D. Fla. May 12, 2015) (Florida's long-arm statute provides for two types of personal jurisdiction: specific jurisdiction under § 48.193(1) . . . and general jurisdiction under § 48.193(2), where a party's contacts are unrelated to the litigation[.]").

To prove specific personal jurisdiction, Plaintiffs' are required to show, among other things, that Barnett, Heubner, Benton, and Woodward's claims " 'arise out of or relate to' at least

---

[17] Notably, Plaintiffs do not invoke subsection (2) of the long-arm statute and allege that "general jurisdiction" over Ford is appropriate.  Therefore, the Court need not consider it.  *See Airplay Am., LLC v. Cartagine*, Civ. No. 08-81224, 2009 WL 909521, at *2 (S.D. Fla. Apr. 2, 2009) (finding general jurisdiction not implicated where plaintiff failed to plead in the Complaint that defendant was subject to personal jurisdiction under subsection (2) of the long-arm statute).  Even if the Court were to consider the issue, the SAC contains no *facts* establishing that the Florida or Pennsylvania courts have general personal jurisdiction over Ford.  General jurisdiction requires a finding that a defendant's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum state."  *Daimler AG v. Bauman*, 134 S. Ct. 746, 755 (2014).  In applying this standard, the *Daimler* Court held that a corporate defendant is normally "at home" in only two states—its state of incorporation and state of its principal place of business.  *Id.* at 760; *see also Carmouche v. Tamborlee Mgmt., Inc*., Civ. No. 14–14325, 2015 WL 3651521, at *4 (11th Cir. Jun. 15, 2015) ("A foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business.").  Ford is a Delaware corporation with its principal place of business in Michigan.  (SAC ¶ 53 (Ford is headquartered in Michigan).)  Therefore, the Florida and Pennsylvania courts do not have general personal jurisdiction over Ford.

one of [Ford's] contacts with" Florida or Pennsylvania, as applicable.  *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citation omitted).  Barnett, the initial Florida filer, resides in Texas and purchased her Ford vehicle used in Texas.  (SAC ¶ 82.) Benton and Woodard, the other Florida filers, reside in South Carolina and bought their Ford vehicles used and new, respectively, in South Carolina.  (SAC ¶¶ 84, 184.)  Under the Eleventh Circuit's "arising out of" test, Ford's contacts with Florida must both be the "but-for" cause of their tort claims and must be of such a nature that Ford had fair warning that its Florida activities would subject the company to suit by them.  *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1223 (11th Cir. 2009).  The SAC, however, never identifies an activity of Ford in Florida that was the but-for cause of these claims against the company.  The same is true of Heubner, the Pennsylvania filer.  He lives in California, and brought his Ford vehicle there.  (SAC ¶ 114.)  His claims against Ford do not arise out of any contact Ford has with Pennsylvania.  *See Oldfield*, 558 F.3d at 1233.[18]

Accordingly, the Court should dismiss the claims of Nancy Barnett, John Huebner, Alicia Bennett, and Teresa Woodard for lack of personal jurisdiction.

### H.  Plaintiff Barnett Fails To State A Claim Under Texas CPA.

Count 97 fails to assert a proper claim under the Texas Consumer Sales Practices Act, Tex. Bus. & Com. Code §§ 17.41, *et seq.*  The DTPA proscribes two broad categories of conduct:  (1) the "use or employment by any person of a false, misleading, or deceptive act or practice[;]" and (2) "any unconscionable action or course of action by any person[.]"  TEX. BUS. & COM. CODE § 17.50(a)(1), (3).  Here, the SAC alleges that Ford violated the DTPA by, among other things: "(1) representing that the Class Vehicles and/or the Defective Airbags installed in them have characteristics, uses, benefits, and qualities which they do not have; (2) representing that they are of a particular standard, quality, and grade when they are not; (3) advertising them with the intent not to sell or lease them as advertised; and (4) failing to disclose information concerning them with the intent to induce consumers to purchase or lease them."

---

[18] Although Heubner's suit was brought in Pennsylvania, courts generally hold that a transferee court applies its own circuit law to Due Process questions in the personal-jurisdiction analysis.  *See Federal Practice & Procedure* § 3866.

(SAC ¶ 1796.)  However, these threadbare and conclusory allegations do not state a plausible claim under the DTPA as a matter of law.

Indeed, Plaintiff Barnett (the only Ford Plaintiff from Texas) pleads *no facts* establishing that Ford's allegedly deceptive conduct occurred "in connection with a consumer transaction," as the statute demands.  *See Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649-50 (Tex. 1996) (holding that, under the DTPA, "a defendant's deceptive conduct must occur in connection with a consumer transaction").  This requirement limits liability under the DTPA in a manner consistent with the statute's purposes.  As the Supreme Court of Texas reasoned:

> The in-connection-with requirement imposes a limitation on liability that is consistent with the underlying purposes of the DTPA.  Without this limitation, we would merely substitute the defendant's introduction of a particular product into the stream of commerce for the conduct that was found to have violated the DTPA.  We find no authority for shifting the focus of a DTPA claim from whether the defendant committed a deceptive act to whether a product that was sold caused an injury.  Requiring a connection between the plaintiffs, their transactions, and the defendants' conduct enunciates a limitation we have alluded to, but not fully articulated, in prior cases.  While our words have varied, the concept has been consistent: the defendant's deceptive trade act or practice is not actionable under the DTPA unless it was committed *in connection with* the plaintiff's transaction in goods or service.

*Id.* at 649-50 (internal citations omitted) (italics in original).

Plaintiff Barnett claims she purchased 2007 Ford Mustang from Henna Chevrolet in 2008.  (SAC ¶ 82.)  However, she fails to plead any facts whatsoever demonstrating that Ford somehow acted deceptively or unconscionably ***in connection with*** that transaction.  While the SAC broadly alleges that Defendants violated the DTPA through representations and advertisements regarding the Class Vehicles, Plaintiff Barnett does not plead that Ford made a false representation *to her* in connection with her vehicle purchase transaction, much less identify the content of that representation, state why it was false, how she relied on it to her detriment, or how it induced her into buying an allegedly defective vehicle.[19]  *See St. Johns*

---

[19] The Fifth Circuit has held that "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not."  *Lone Star Ladies Inv. Club v. Scholtzsky's, Inc*., 238 F.3d 363, 368 (5th Cir. 2001).  Because allegations of fraud underlie a Texas DTPA claim, Texas federal district courts have held that the heightened pleading

*United Methodist Church v. Delta Elec., Inc.*, Civ. No. 3-11-57, 2012 WL 3205043, at *4 (S.D. Tex. Aug. 3, 2012) (dismissing DTPA claim based on failure to show that any plaintiff church members saw or relied upon an actionable representation by the defendant). Nor does she identify or describe an allegedly false Ford advertisement to which *she* was exposed before purchasing her vehicle. Similarly, while Plaintiff Barnett claims that Ford failed to disclose information concerning the Class Vehicles "with the intent to induce consumers to purchase or lease them," she never alleges facts demonstrating Ford's knowledge in 2007 that should have been disclosed, nor explain how the withheld information was intended to induce her to purchase her used vehicle.[20] *See St. Johns United Methodist Church*, 2012 WL 3205043, at *4. Simply put, these conclusory allegations are implausible on their face, fall far short of the heightened pleading requirements of Rule 9(b), and fail to state an actionable claim under the DTPA. *Amstadt,* 919 S.W.2d at 650 ("the defendant's deceptive trade act or practice is not actionable under the DTPA unless it was committed *in connection with* the plaintiff's transaction in goods or service" (italics in original)).

I.     **Plaintiffs' Requests For Judicial Supervision Of Recall Process Are Preempted Or Within The Primary Jurisdiction Of NHTSA.**

The SAC requests injunctive relief "to enjoin the Ford Defendants from continuing its negligence by continuing to install Defective Airbags in Class Vehicles." (SAC ¶ 716). Similar requests are imbedded in various other claims in the SAC. *See* SAC ¶¶ 403, 708, Prayer for Relief (D). These requests constitute direct conflicts with NHTSA's authority to supervise automotive recalls, and as such are preempted by the Safety Act, or within the primary jurisdiction of NHTSA. For efficiency, Ford hereby adopts and incorporates by reference the arguments and authority on this proposition set forth in Toyota's Motion to Dismiss, Section

---

requirements of Rule 9(b) apply. *See, e.g., Luna v. Nationwide Prop. & Cas. Ins. Co*., No. 10-2918, 2011 WL 2565354, at *3 (S.D. Tex. Jun. 27, 2011) ("Because 'Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not,' it applies to statutory claims based on allegations of fraud.").

[20] Although a manufacturer may be "connected to" a later purchaser's consumer transaction if the manufacturer's deceptive claims are incorporated into the seller's representations and relied upon by the buyer, Plaintiff Barnett never even attempts to explain (much less plead facts showing) how that occurred here. *Klein v. Marvin Lumber and Cedar Co.*, 575 Fed. Appx. 347, 348-49 (5th Cir. 2014).

VII(B)-VIII, Honda's Motion to Dismiss, Section II(A), Mazda's Motion to Dismiss, Section I, and BMW's Motion to Dismiss at Section X.

## V. <u>CONCLUSION</u>

Plaintiffs' own pleading establishes that at the time the Ford Plaintiffs made their purchases, Ford was unaware of any potential issues with the Takata inflators installed in its vehicles. Merely selling a vehicle that, a decade later, may be determined to contain a potential problem in a component part does not, in and of itself, constitute fraud or a deceptive trade practice. More must be alleged to support such claims. Plaintiffs' SAC provides no basis to conclude that Ford knew of, much less actively concealed, any potential problems with Takata inflators. The SAC certainly falls short of the specificity requirements of Rule 9(b), and otherwise fails to state a claim upon which relief can be granted in any count directed to Ford. Accordingly, for all of the reasons set forth above, all Counts of the SAC directed to Ford should be dismissed, with prejudice.

Respectfully submitted,

*/s/ E. Colin Thompson*_____
**Joel A. Dewey**
joel.dewey@dlapiper.com
**Jeffrey M. Yeatman**
jeffrey.yeatman@dlapiper.com
DLA Piper LLP (US)
6225 Smith Avenue
Baltimore, MD 21209
T: (410) 580-3000
F: (410) 580-3001
*(admitted pro hac vice)*

**E. Colin Thompson**
Florida Bar No. 684929
colin.thompson@dlapiper.com
**J. Trumon Phillips**
Florida Bar No. 0084568
trumon.phillips@dlapiper.com
DLA Piper LLP (US)
100 North Tampa Street, Suite 2200
Tampa, FL 33602
T: (813) 229-2111
F: (813) 229-1447
***Counsel for Ford Motor Company***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 17, 2015, I electronically filed the following document with the Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served this day on all counsel of record in this case via transmission of Notice of Electronic Filing generated by CM/ECF.

<u>*s/ E. Colin Thompson*_____</u>
**E. Colin Thompson**

35