# UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

MDL No. 2599
Master File No.: 15-MD-02599-FAM
S.D. Fla. Case No. 1:14-cv-24009-FAM

| | |
|---|---|
| **IN RE: TAKATA AIRBAG PRODUCT LIABILITY LITIGATION** | S.D. Fla. Case No. 1:14-cv-24009-FAM |

This Document Relates to:
All Economic Loss Class Actions and:

PAM KOEHLER, et al., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

TAKATA CORPORATION, TK HOLDINGS, INC., HONDA MOTOR CO., LTD., AMERICAN HONDA MOTOR CO., INC, BAYERISCHE MOTOREN WERKE AG, BMW OF NORTH AMERICA, LLC, FORD MOTOR COMPANY, TOYOTA MOTOR CORPORATION, TOYOTA MOTOR SALES, U.S.A., INC., AND TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., MAZDA MOTOR CORPORATION, MAZDA MOTOR OF AMERICA, INC., MITSUBISHI MOTORS CORP., MITSUBISHI MOTORS NORTH AMERICA, INC., NISSAN MOTOR CO., LTD., NISSAN NORTH AMERICA, INC., FUJI HEAVY INDUSTRIES, LTD., SUBARU OF AMERICA, INC., GENERAL MOTORS LLC,

Defendants.

## PLAINTIFFS' OMNIBUS RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE SECOND AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

STATEMENT OF THE FACTS ............................................................................................ 3

I.    The Defect in All Takata Airbags: Ammonium Nitrate .......................................... 3

II.   Defendants' Awareness and Concealment of the Inflator Defect............................ 4

III.  Defendants' Admission of the Inflator Defect........................................................ 8

IV.  Problems with Recalls.............................................................................................. 9

V.   This Lawsuit........................................................................................................... 10

LEGAL STANDARD ......................................................................................................... 10

MEMORANDUM OF LAW ............................................................................................... 11

I.    Plaintiffs Have Sufficiently Pleaded RICO Claims Against Takata and Honda. ... 11

    A.   Plaintiffs adequately allege cognizable injuries to their property. ..................... 12

    B.   Plaintiffs adequately allege proximate cause. ................................................... 16

    C.   Plaintiffs adequately allege a RICO enterprise. ................................................ 18

    D.   Plaintiffs adequately allege a RICO conspiracy................................................. 21

II.   Defendants Misapprehend The Choice-Of-Law Issues. ........................................ 24

    A.   This Court should follow the majority of courts and reserve judgment on choice-of-law issues until class certification.................................................................. 25

    B.   In any event, no choice-of-law analysis is required for Plaintiffs' unjust enrichment and fraudulent concealment claims because the law governing these claims is materially uniform throughout the United States. ................................ 26

      1.   The law governing unjust enrichment is materially uniform throughout the United States. ...................................................................................................... 27

2.   The law governing fraudulent concealment is materially uniform throughout the United States. ................................................................................... 29

C.   If true conflicts of law exist, it will be appropriate to apply the law of each Defendant's home state to the nationwide class claims against each Defendant. 30

D.   Even if the Court applies the laws of the states where Plaintiffs reside or purchased their cars to their state-law claims, any conflicts can be addressed by appropriate subclasses. ...................................................................... 32

E.   Class claims under a particular state's law should not be dismissed simply because there is no named plaintiff from that state. ............................................. 33

III.   Plaintiffs Need Not Suffer Catastrophic Airbag Failures and Life-Threatening Injuries Before Asserting Claims For Economic Harm. ...................................... 35

A.   Plaintiffs have suffered tangible economic harm resulting from Defendants' deception. ............................................................................................... 36

B.   Defendants' state-specific authorities do not compel a different conclusion. ...... 42

1.   Florida-Specific Authorities .................................................................. 42

2.   Alabama-Specific Authorities ................................................................ 44

3.   Pennsylvania-Specific Authorities .......................................................... 45

C.   Plaintiffs' Implied Warranty/Magnusson-Moss Warranty Act claims do not require evidence of a malfunction. ...................................................... 46

IV.   Plaintiffs Have Sufficiently Pleaded Claims For Unjust Enrichment .................... 49

A.   Plaintiffs' unjust enrichment claims are not barred by any express warranty claim or other legal remedy. ...................................................................... 49

B.   Unjust Enrichment is a recognized cause of action under California, Texas, and New Jersey law ...................................................................................... 51

C.   Plaintiffs have adequately pleaded that they conferred a direct benefit on Defendants. ............................................................................................. 54

D.   Florida's four-year statute of limitations does not bar Plaintiffs' unjust enrichment claims because the doctrines of fraudulent concealment and equitable estoppel apply. ...................................................................................... 57

V.   Plaintiffs Have Sufficiently Pleaded Fraudulent Concealment Claims. ................. 61

A.  Plaintiffs have adequately alleged Defendants' prior knowledge of the Inflator Defect. .................................................................................. 61

B.  The Vehicle Manufacturer Defendants owed Plaintiffs a duty to disclose the Inflator Defect. ................................................................................ 65

C.  Plaintiffs have alleged Defendants' fraudulent concealment with sufficient particularity. .................................................................................... 67

D.  The economic loss doctrine does not bar Plaintiffs' fraudulent concealment claims..................................................................................................... 68

E.  Plaintiffs have adequately alleged causation....................................... 70

VI.  Plaintiffs Have Sufficiently Pleaded Statutory Consumer Protection Claims. ........ 71

A.  Plaintiffs have adequately alleged Defendants' deceptive conduct. .................. 71

B.  Plaintiffs' statutory consumer protection claims are not time-barred. ............... 71

C.  The economic loss doctrine does not bar Plaintiffs' statutory consumer protection claims..................................................................................................... 74

D.  Statutory prohibitions on class actions have no effect in federal court.............. 75

E.  Statutory pre-suit notice requirements do not bar Plaintiffs' claims.................. 76

1.  State pre-suit notice requirements are purely procedural and do not grant or deny a substantive right. ...................................................................... 77

2.  Even if this Court decides that state pre-suit notice requirements apply, they have been satisfied or excused. ............................................................ 79

F.  Takata's idiosyncratic arguments against Plaintiffs' statutory consumer protection claims are unavailing......................................................................... 80

1.  Takata's Deceptive Acts Were Indisputably Directed at Plaintiffs. ................. 80

2.  Plaintiffs Need Not Show A Direct Relationship With Takata To Establish Privity.................................................................................... 82

3.  Plaintiffs Are Entitled to Restitution From Takata Under the Arkansas and California Consumer Protection Laws........................................................ 83

G.  Plaintiffs Are Entitled to Consequential, Incidental, and Punitive Damages On Their Claims Against Subaru. ............................................................ 84

H.   Plaintiffs are Entitled to Damages From BMW on Their Post-Warranty Claims Under  the New Jersey Consumer Fraud Act. ...................................................... 87

VII.   Plaintiffs' Implied Warranty Claims Are Well Pled And Should Not Be Dismissed. ...................................................................................................................... 88

A.   Plaintiffs plead in detail and with specificity that the affected vehicles are not merchantable. ................................................................................................. 88

B.   Privity is not required under the implied warranty laws of Michigan, Texas, and California. ........................................................................................................ 91

1.   Michigan subclass (Count 73). ......................................................... 92

2.   Texas subclass (Count 98). ............................................................... 92

3.   California Claims Against Mazda (Count 26). .................................. 94

C.   Plaintiffs have given sufficient notice of their breach of warranty claims. ......... 95

D.   Plaintiffs' implied warranties have not expired. ................................................. 98

1.   Any purported durational limits are unenforceable because Plaintiffs have adequately pled that those limits are unconscionable. ....................... 98

2.   The validity of any warranty limitations turns on factual disputes not properly before the Court on Defendants' motions to dismiss. .................................... 102

3.   Plaintiffs have alleged breach of the implied warranty at the time of sale, and thus during the warranty period. .................................................... 103

4.   California courts have expressly rejected Defendants' argument.................... 104

E.   Plaintiffs' implied warranty claims are not barred by the statute of limitations because of well-accepted tolling doctrines........................................................ 106

VIII.   Plaintiffs' Negligence Counts Are Not Barred. .................................................. 113

IX.   Plaintiffs' Negligent Recall Counts Are Not Barred. ........................................... 114

X.   This Court May Exercise Personal Jurisdiction Over Ford With Respect To All Plaintiffs' Claims.............................................................................................. 117

XI.   Defendants' Requests to Dismiss or Strike Claims for "Recall-Related" Injunctive Relief Based on NHTSA's "Primary Jurisdiction" are Moot.............................. 120

CONCLUSION.................................................................................................................. 121

# TABLE OF AUTHORITIES

## CASES

*A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473 (Cal. Ct. App. 1982)...................... 120

*A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E. 2d 955 (Ind. Ct. App. 2000)...................................... 86

*Aas v.Super. Ct.*, 24 Cal. 4th 627 (Cal. Ct. App. 2000) ............................................................. 142

*Abraham v. Volkswagen of Am. Inc.*, 795 F.2d 238  (2d Cir. 1986) ........................................... 121

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174 (9th Cir. 2004) ........... 145, 146

*AFSCME v. Ortho-Mcneil-Janssen Pharms., Inc.*, 2010 U.S. Dist. LEXIS 23181 (E.D. Pa. Mar.

11, 2010)........................................................................................................................... 118

*Agency Holding Corp. v. Malley-Duff & Assoc.*, 483 U.S. 143 (1987)....................................... 15

*Aguilar v. Gen. Motors, LLC*, No. 1:13–cv–00437–LJO–GS, 2013 WL 5670888 (E.D. Cal. Oct.

16, 2013)........................................................................................................................... 109

*Al's Auto Inc. v. Hollander, Inc.*, No. 08-CV-731, 2008 WL 4831691

(E.D. Pa. Nov. 4, 2008).................................................................................................... 121

*Alban v. BMW of N. Am. LLC*, No. 09-CV-5398(DRD), 2011 WL 900114 (D.N.J. March 15,

2011).................................................................................................................................. 124

*Alberti v. Gen. Motors Corp.*, 600 F. Supp. 1026 (D.C.D.C. 1985)............................................ 46

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010)........................... 12, 22, 24, 26

*Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043 (11th Cir. 2007). ...................................... 33

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). ........................................................... 37

*American Suzuki Motor Corp. v. Sup. Ct.*, 37 Cal.App.4th 1291 (1995)...................................... 53

*Angus v. Shiley Inc.*, 989 F.2d 142 (1993) .......................................................................... 51, 52

*Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133 (C.D. Cal. 2005)...................................... 116

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)............................................................ 18

*Apodaca v. Whirlpool Corp.*,

   No. 13-cv-725, 2013 U.S. Dist. LEXIS 176363 (C.D. Cal. Nov. 8, 2013)............................ 110

*Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331 (S.D. Fla. 2013) .......................... 121

*Aruanno v. Martin Cnty. Sheriff*, 343 F. App'x 535 (11th Cir. 2009) ......................................... 70

*Ascentium Corp. v. Terremark N. Am., Inc.*, No. 10-20906-CIV, 2011 WL 1233256 (S.D. Fla.

   Mar. 30, 2011)..................................................................................................................... 58

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................... 11, 16, 19

*Associated Indus. Ins. Co. v. Advanced Mgmt. Servs., Inc.*, No. 12-80393-CIV, 2014 WL

   1237685 (S.D. Fla. Mar. 26, 2014) ............................................................................ 12, 23, 24

*Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (9th Cir. 2015)........................................... 59

*Baggett v. Hewlett–Packard Co.*, 582 F.Supp.2d 1261 (C.D. Cal. 2007) .................................... 79

*Bailey v. Atlantic Automotive Corp.*, 992 F.Supp.2d 560 (D. Md. 2014)............................... 15, 16

*Baker v. Castle & Cooke Homes Hawaii, Inc.*, No. CIV. 11-00616 SOM,

2012 WL 1454967 (D. Haw. Apr. 25, 2012) ................................................................................ 54

*Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A.*, 938 So. 2d 571

(Fla. Dist. Ct. App. 2006) ............................................................................................................ 67

*Barnext Offshore, Ltd. v. Ferretti Group USA, Inc.*, No. 1:10–CV–23869–CMA, 2012 WL

   1570057 (S.D. Fla. May 2, 2012)............................................................................................ 122

*Barrett v. Ferrell*, 550 S.W.2d 138 (Tex. App. 1977) ................................................................. 61

*Basham v. Gen. Shale*, 377 S.E.2d 830 (W. Va. 1988)......................................................... 82, 140

*Bates v. Cook, Inc.*, 509 So.2d 1112 (Fla. 1987) ........................................................................ 35

*Bayliner Marine Corp. v. Crow*, 509 S.E.2d 499 (Va. 1999) .................................................... 111

*Bednarski v. Hideout Homes & Realty, Inc., A Div. of U.S. Homes & Properties, Inc.*, 709 F.

    Supp. 90 (M.D. Pa. 1988)................................................................................. 117

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). .................................................. 11, 72

*Berger v. Home Depot USA, Inc.*, 741 F.3d 1061 (9th Cir. 2014).............................. 59

*Bert Smith Oldsmobile, Inc. v. Franklin*, 400 So. 2d 1235 (Fla. 2d DCA 1981)........ 105

*Bidon v. Dep 7 of Prof'l Reg. Fla. Real Estate Comm'n*, 596 So.2d 450 (Fla. 1992) ............... 105

*Bill Stremmel Motors, Inc. v. IDS Leasing Corp.*, 89 Nev. 414 (1973).................................... 121

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009)................................................. 54

*Blackward v. Simplex Prods. Division*, No. 221066, 2001 WL 1255924 (Mich. Ct. App. Oct. 19,

    2001)................................................................................................................ 140

*Block v. Toyota Motor Corp.*, 5 F. Supp. 3d 1047 (D. Minn. 2014).................................... 88, 134

*Bluewater Trading LLC v. Fountaine Pajot, S.A.*, 2008 WL 895705

(S.D. Fla. April 2, 2008) ............................................................................... 104

*Borden Inc. v. Advent Ink Co.*, 701 A.2d 255 (Pa. Super. 1997) ................................................. 125

*Bowe v. Public Storage*, --- F.Supp.3d ----, No. 14–cv–21559,

2015 WL 3440418 (S.D. Fla. May 19, 2015). .............................................................. 15

*Boyle v. United States*, 556 U.S. 938 (2009). ................................................ 19, 20, 21

*Braddock v. Orlando Reg'l Health Care Sys., Inc.*, 881 F. Supp. 580 (M.D. Fla. 1995)....... 93, 94

*Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538 (2014) ......................... 108, 129

*Breakstone v. Caterpillar, Inc.*, No. 09-23324-CIV, 2010 WL 2164440 (S.D. Fla. May 26, 2010)

    .......................................................................................................................... 49

*Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)............................ 17, 18, 19

*Briehl v. General Motors Corp.*, 172 F.3d 626 (8th Cir. 1999)........................ 45, 46, 53

*Brisson v. Ford Motor Co.*, 349 Fed. App'x 433 (11th Cir. 2009)........................................ 49,127

*Bristow v. Lycoming Engines*, No. CIV S-06-1947 LKK,

2007 WL 1106098 (N.D. Cal. April 10, 2007) .......................................................................... 42

*Broe v. Oneonta Sales Co., Inc.*, 100 Misc. 2d 1099 (N.Y. Sup. Ct. 1978)............................... 124

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997). ................... 11

*Burns v. Winnebago Indus., Inc.*, 492 F. App'x 44 (11th Cir. 2012) ......................................... 119

*Burr v. Philip Morris USA Inc.*, No. 8:07–CV–01429–MSS–EAJ, 2012 WL 5290164 (M.D. Fla.

Sept. 28, 2012.......................................................................................................................... 68

*Bush v. Am. Motor Sales, Corp*., 575 F. Supp. 1581 (D. Colo. 1984) ........................................ 125

*Bussian v. DaimlerChrysler Corp.*, 411 F.Supp.2d 614 (M.D.N.C. 2006) ........ 111, 120, 122, 123

*Calixto v. BASF Const. Chemicals, LLC*, No. 07-60077-CIV, 2008 WL 2490454 (S.D. Fla. June

19, 2008).................................................................................................................................. 27

*Captain & Company, Inc. v. Stenberg*, 505 N.E.2d 88 (Ind. Ct. App. 1987) .............................. 81

*Carlson v. Gen. Motors Corp.*, 883 F.2d 287 (4th Cir. 1989) ................................. 43, 49,121, 123

*Carriuolo v. General Motors LLC*, No. 14-61429-CIV, 2014 WL 7011022 (S.D. Fla. Dec. 11,

2014)................................................................................................................................... 64, 66

*Carroll v. TheStreet.com, Inc.*, No. 11-CV-81173, 2014 WL 5474061 (S.D. Fla. July 10, 2014)70

*Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351 (E.D. Cal. 2008) .......................................... 132

*Caster v. Hennessey,* 781 F. 2d 1569 (11th Cir. 1986)................................................................. 94

*Castrignano v. E.R. Squibb & Sons, Inc.*, 546 A.2d 775 (R.I. 1988) ........................................... 55

*Castro v. NYT Television*, 370 N.J. Super. 282 (N.J. App. Div. 2004)........................................ 63

*Cholakyan v. Mercedes–Benz USA, LLC*, 796 F.Supp.2d 1220 (C.D. Cal. June 30, 2011)108, 130

*Cirone-Shadow v. Union Nissan*, 955 F. Supp. 938 (N.D. Ill. 1997) ........................................... 85

*Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) ........................................ 116

*Club Car, Inc. v. Dow Chem. Co.*, No. 06 CVS 15530, 2007 WL 2570088 (N.C. Super. Ct. May
    3, 2007) ........................................................................................................... 82

*Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449 (5th Cir. 2001). ................................. passim

*Collins v. DaimlerChrysler Corp.,* 894 So. 2d 988 (Fla. 5th DCA 2004) ................................. 48

*Compagnie de Reassurance d'lle de Fr. v. New England Reinsurance Corp.*, 944 F. Supp. 986
    (D. Mass. 1996) ............................................................................................. 134

*Conley v. Pacific Gas and Elec. Co.,* 131 Cal.App.4th 260 (2005) .......................................... 53

*Connick v. Suzuki Motor Co.*, 675 N.E.2d 584 (Ill. 1996) ................................................ 77, 78

*Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410 (Mo. 2014) .............................................. 100

*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997) ................................................................ 79

*Coquina Investments v. Rothstein*, No. 10-60786-CIV, 2011 WL 197241 (S.D. Fla. Jan. 20,
    2011) .............................................................................................................. 24

*Cortina v. Goya Foods, Inc.*, --- F. Supp. 3d ---, 2015 WL 1411336 (S.D. Cal. 2015) ............... 60

*Court-Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, No. 05-60055CIV, 2008
    WL 906101 (S.D. Fla. Mar. 31, 2008) ................................................................ 71

*Crabb v. Harmon Enterprises, Inc.*, No. 60634, 2014 WL 549834 (Nev. Feb. 10, 2014) ........ 137

*Cramer v. Ford Motor Co., Inc.*, No. 2007-CA-2135-NC, 2011 WL 2477232 (Fla. Cir. Ct. June
    9, 2011) ........................................................................................................... 49

*Cruz v. NYNEX Information Resources*, 263 A.D.2d 285 (N.Y.A.D. 1 Dept.,2000) .................. 98

*Cwiakala v. Econ. Autos, Ltd.*, 587 F. Supp. 1462 (N.D. Ind. 1984) ..................................... 87

*Cypher v. Bill Swad Leasing Co.*, 521 N.E.2d 1142 (Ohio Ct. App. 1987) ............................. 87

*Daffin v. Ford Motor, Co.*, 458 F.3d 549 (6th Cir. 2010) .................................................... 43

*Daigle v. Ford Motor Co.*, No. 09-CV-3214 (MJD/LIB), 2012 WL 3113854, at *7 (D. Minn. July 31, 2012) ................................................................................................ 126, 128

*Dal Ponte v. Am. Mortgage Exp. Corp.*, No. CIV.A. 04-2152 (JEI), 2006 WL 2403982 (D.N.J. Aug. 17, 2006) ...................................................................................................... 36

*Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902 (8th Cir. 2013) ........................... 82

*Davis v. Monahan*, 832 So. 2d 708 (Fla. 2002) ........................................................................ 70

*Day v. Taylor*, 400 F.3d 1272 (11th Cir. 2005) ....................................................................... 73

*DIRECTV v. Megar*, No. 03-CV-20247, 2003 WL 24100784 (S.D. Fla. July 3, 2003) ............. 101

*Donovan v. Philip Morris USA, Inc.*, 65 F.Supp.3d 251 (D. Mass. 2014) .................................. 55

*Dorestin v. Hollywood Imports, Inc.*, 45 So. 3d 819 (Fla. 4th DCA 2010) ...................... 104, 105

*Dunn v. Rockwell*, 689 S.E.2d 255 (W. Va. 2009) .................................................................. 139

*Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304 (D.N.J. 2014) ................................................. 31

*E. Air Lines, Inc. v. McDonnell Douglas Corp.,* 532 F.2d 957 (5th Cir. 1976) ......................... 119

*Ebin v. Kangadis Family Mgmt. LLC*, 45 F. Supp.3d 395 (S.D.N.Y. 2014). .......................... 32, 33

*Eckstein v. Cummins*, 321 N.E.2d 897 (Ohio Ct. App. 1974) .................................................. 121

*Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908 (C.D. Cal. 2010) .................................. 115

*Eldrige v. Savage*, No. M2012-00973-COA-R3-CV, 2012 WL 6757941 (Tenn. Ct. App. Dec. 28, 2012) ................................................................................................................... 139

*Elkhart Metal Fabricating, Inc. v. Martin*, No. 14-CV-00705, 2014 WL 2972709 (E.D. Mo. July 1, 2014) .................................................................................................................... 82

*Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869 (Tex. 2007) ........................... 61

*Erie R.R. v. Tompkins*, 304 U.S. 64 (U.S. 1938) ..................................................................... 93

*Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E .2d 942 (Ill. App. Ct. 2005) ....................... 125

xi

*Excavation Technologies, Inc. v. Columbia Gas Co. of Pennsylvania*, 2007 PA Super 327 (2007) ............................................................................................................................... 83

*Exhibit Icons, LLC v. XP Companies, LLC*, 609 F. Supp. 2d 1282 (S.D. Fla. 2009) ................. 145

*Falco v. Nissan N. Am., Inc.*, No. 13-00686 DDP, 2013 WL 5575065 (C.D. Cal. Oct. 10, 2013) ............................................................................................................................... 52

*Falco v. Nissan N. Am., Inc.*, No. CV 13-00686 DDP, 2015 WL 1534800 (C.D. Cal. April 6, 2015).................................................................................................................... 101

*Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007)............................................ 75

*Farley v. Country Coach, Inc.*, No. 05-CV-71623, 2006 WL 3299464 (E.D. Mich. Nov. 14, 2006).................................................................................................................... 112

*Farley v. GameStop Corp.*, No. 12-4734-cv, 2013 WL 4042434 (D.N.J. Aug. 7, 2013)....... 62, 80

*Feiner v. Innovation Ventures LLC*, No. 12-62495-CIV, 2013 WL 2386656 (S.D. Fla. May 30, 2013)................................................................................................................. 57, 64

*Feiner v. Innovation Ventures LLC*, No. 12-62495-CIV, 2013 WL 2386656 (S.D. Fla. May 30, 2013).................................................................................................................... 30

*Ferrero v. Associated Materials Inc.*, 923 F. 2d 1441 (11th Cir. 1991) ....................................... 95

*Fid. & Deposit Co. of Maryland v. Int'l Bus. Machines Corp.*, No. CIV. 1:05-CV-0461, 2005 WL 2665326 (M.D. Pa. Oct. 19, 2005) ........................................................................ 83

*Fine v. Checcio*, 870 A.2d 850 (Pa. 2005)................................................................................ 137

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir.1994)................................. 14

*Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237 (Fla. 2004) ....................................... 66

*Foodtown v. Sigma Mktg. Sys., Inc.*, 518 F. Supp. 485 (D.N.J. 1980) ..................................... 137

*Ford Motor Co. v. Fairley*, 398 So. 2d 216 (Miss. 1981).......................................................... 110

*Ford Motor Co. v. Rice*, 726 So.2d 626 (Ala. 1998). ................................................................. 50

*Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671 (Tex. 2000) ........................................ 61

*Frenzel v. AliphCom*, No. 14-CV-03587(WHO), 2014 WL 7387150 (N.D. Cal. Dec. 29, 2014)

............................................................................................................................................ 128

*Gail Frances, Inc. v. Alaska Diesel Elec., Inc.*, 62 F. Supp. 2d 511 (D.R.I. 1999), ........... 138, 139

*Ganim v. Smith & Wesson Corp.*, 780 A.2d 98 (Conn. 2001) ...................................................... 99

*Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897 (2015). ...................................................... 34, 147

*Gherna v. Ford Motor Co.*, 246 Cal. App. 2d 6390 (Cal. Ct. App. 1966) ................................. 143

*Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667 (Mo. 2007) ........................................................ 100

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, No.: 10-CV-4429(JLL), 2012 U.S. Dist. LEXIS

62045 (D.N.J. May 3, 2012) ................................................................................................ 125

*Gour v. Daray Motor Co.*, 373 So. 2d 571 (La. Ct. App.) ........................................................ 100

*Greeson v. Ace Pipe Cleaning, Inc.*, 830 S.W.2d 444 (Mo. Ct. App. 1992) ............................. 135

*Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233 (11th Cir. 2007). ....... 35

*Grus v. Patton*, 790 S.W.2d 936 (Mo. App. 1990) .................................................................... 136

*Guido v. L'Oreal, USA, Inc.*, No. CV 11-1067 CAS JCX, 2013 WL 3353857 (C.D. Cal. July 1,

2013) ..................................................................................................................................... 101

*Hahn v. Ford Motor Co.*, 434 N.E.2d 943 (Ind. Ct. App. 1982) ............................................... 124

*Hanna v. Plumer*, 380 U.S. 460 (1965) ...................................................................................... 93

*Harnden v. Ford Motor Co.*, 408 F. Supp. 2d 315 (E.D. Mich. 2005) ..................................... 112

*Hatton v. Chrysler Canada, Inc.*, 937 F. Supp. 2d 1356 (M.D. Fla. 2013). ............................... 28

*Henderson v. Volvo Cars of N. Am. LLC*, No. 09-CV-4146(DMC)(JAD), 2010 WL 2925913

(D.N.J. July 21, 2010) .................................................................................................... 53, 123

*Hernandez v. Badger Constr. Equip. Co.*, 28 Cal. App. 4th 1791 (Cal. Ct. App. 1994)............ 142

*Herrera v. Toyota Motor Sales, U.S.A.*, No. 2:10-CV-924 JCM (RJJ),

2010 WL 3385336 (D. Nev. Aug. 23, 2010) ........................................................... 136

*Herrod v. Metal Powder*, 886 F. Supp.2d 1271 (D. Utah 2012). ................................ 75

*Hicks v. Kaufman & Broad Home Corp.*,

 89 Cal. App. 4th 908 (2001)........................................................................ 52, 110

*Highway Sales, Inc. v. Blue Bird Corp.*, 559 F.3d 782 (8th Cir. 2009)............................. 134, 135

*Hill v. Hoover Co.*, 899 F. Supp. 2d 1259 (N.D. Fla. 2012)................................... 57, 64

*Hininger v. Case Corp.*, 23 F.3d 124 (5th Cir. 1994 ................................................. 114

*Holland v. Cole Nat. Corp.*, No. 7:04-CV-246, 2005 WL 1242349 (W.D. Va. May 24, 2005). . 16

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992)..................................... 17, 18

*Horan v. Turnpike Ford, Inc.*, 433 S.E.2d 559 (W.Va.1993) ...................................... 82

*Hornberger v. General Motors Corp.*, 929 F. Supp. 884 (E.D. Pa.1996) ................. 124

*Hughes v. Alltel Corp.*, 2004 U.S. Dist. LEXIS 20705 (N.D. Fla. Mar. 31, 2004) ................... 125

*Hurst v. Socialist People's Libyan Arab Jamahiriya*, 474 F. Supp. 2d 19 (D.D.C. 2007). .... 27, 72

*In re Aftermarket Filters Antitrust Litig.,* 2009 WL 3754041 (N.D. Ill. Nov. 5, 2009). ............. 39

*In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982 (E.D. Mich. 2014) ................................ 102

*In re Auto. Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d 544 (E.D. Pa. 2007) .................. 98

*In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 155 F. Supp. 2d 1069 (S.D.

 Ind. 2001) ...................................................................................... 44, 46, 133

*In re Buspirone Patent Litig.,* 185 F. Supp. 2d 363 (S.D.N.Y. 2002). ........................................ 39

*In re Checking Account Overdraft Litig.*, MDL No. 2036, 2015 WL 3551527 (S.D. Fla. June 8,

 2015)............................................................................................ 30, 60

*In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538 (M.D. Pa. 2009). ............. 38

*In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090 (C.D. Cal. 2012)............................................ 61

*In re ConAgra Peanut Butter Prods. Liab. Litig.*, MDL No. 1845, 2008 WL 2132233 (N.D. Ga.

    May 21, 2008) ........................................................................................................ 27

*In re Diet Drugs (Phentermine Fenfluramine Dexfentluramine) Prods. Liab. Litig.*, No. Civ.A.

    98-20299, 1998 WL 1969647 (E.D. Pa. Nov. 13, 1998). ..................................................... 148

*In re Dixon*, 525 B.R. 827 (Bankr. N.D. Ga. 2015)..................................................................... 78

*In re Ford Motor Co. Bronco II Products Liab. Litig.*, 1995 WL 714441 (E.D. La. Dec. 4, 1995)

    ................................................................................................................ 81, 119

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*,

    No. 03-4558, 2008 U.S. Dist. LEXIS 73690 (D.N.J. Sept. , 2008) ......................... 48, 124, 137

*In re Ford Motor Co. Spark Plug & 3-Valve Engine Prods. Liab. Litig.*, Case No. 1:12-md-2136,

    2014 WL 3778592 (N.D. Ohio July 30, 2014)......................................................... 48

*In re Ford Motor Co. Vehicle Paint Litig.*, No. MDL 1063, 1996 WL 426548 (E.D. La. July 30,

    1996).................................................................................................................... 82

*In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*, 966 F. Supp. 1525 (E.D. Mo. 1997)

    ................................................................................................................... 114

*In re Grand Theft Auto Video Game Consumer Litig. (No. II)*, MDL No. 1739, 2006 WL

    3039993 (S.D.N.Y. Oct. 25, 2006)........................................................................ 38

*In re Healthsouth Corp. Sec. Litig.*, CV-98-J-2634-S, 2000 WL 34211319 (N.D. Ala. 2000).... 73

*In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d

    1311 (S.D. Fla. 2013) ........................................................................................... 66

*In re J.P. Morgan Chase Bank Home Equity Line of Credit Litig.*, 794 F. Supp. 2d 859 (N.D. Ill. 2011)..................................................................................................................... 31

*In re Managed Care Litig.*, 135 F. Supp. 2d 1253 (S.D. Fla. 2001)............................................. 58

*In re Managed Care Litig.*, 185 F. Supp. 2d 1310 (S.D. Fla. 2002)................................ 28, 29, 58

*In re Managed Care*, 150 F. Supp. 2d 1330 (S.D. Fla. 2001). ................................. 13, 14, 25, 34

*In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009). ...................... 30, 35

*In re Mercedes-Benz Tele Aid Contract Litig.*, 267 F.R.D. 113 (D.N.J. 2010). .......................... 35

*In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56 (2d Cir. 1998)................................... 15

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 1:00-1898, MDL 1358 SAS, 2005 WL 106936 (S.D.N.Y. Jan. 18, 2005). ............................................................... 148

*In re MyFord Touch Consumer Litig.*, 46 F. Supp.3d 936 (N.D. Cal. 2014) ............... 81, 109, 115

*In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83 (D. Mass. 2008). ............... 37

*In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp.2d 777 (N.D. Ohio 2011)...................... 38

*In re Porsche Cars N. Am., Inc.*, 880 F. Supp.2d 801 (S.D. Ohio 2012)..................................... 48

*In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp.2d 867 (E.D. Pa. 2012) ..................... 65

*In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133 (E.D. La. 2002).......................................... 34

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998).37

*In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586 (6th Cir. 2013). .................... 34

*In re Rezulin Products Liability Litigation*, 390 F.Supp.2d 319 (S.D.N.Y.,2005) ...................... 98

*In re Samsung DLP TV Class Action Litig.*, No. 07-2141, 2009 U.S. Dist. LEXIS 100065 (D.N.J. Oct. 27, 2009)................................................................................................................... 122

*In re Shop-Vac Mktg. & Sales Practices Litig.*, 964 F. Supp. 2d 355 (M.D. Pa. 2013) ............. 118

*In re St. Jude Med., Inc.*, No. 01-1396JRT/FLN, 2006 WL 2943154 (D. Minn. Oct. 13, 2006). 36

xvi

*In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672 (S.D. Fla. 2004). ..................... 29

*In re Tobacco II Cases*, 46 Cal.4th 298 (2009)........................................................................ 102

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
754 F. Supp. 2d 1145 (C.D. Cal 2010)............................................................................... 125

*In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152 (C.D. Cal. 2011). ............................. 16, 52, 102

*In re Trasylol Prods. Liab. Litig.*, MDL 1928, 2011 U.S. Dist. LEXIS 80447 (S.D. Fla. July 13,
2011)............................................................................................................................. 34

*In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897 (E.D. La. 2007).......................................... 34

*In re Wellbutrin XL Antitrust Litigation*, 260 F.R.D. 143 (E.D. Pa. 2009) ................................ 99

*In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604 (8th Cir. 2011). ........................ 45, 46

*In re: Air Bag Prods. Liab. Litig.*, 7 F.Supp.2d 792 (1992) ........................................................ 53

*In re: Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 687 F.Supp.2d 897 (W.D.
Mo. 2009)...................................................................................................................... 52

*In re: Ford Motor Co. Bronco Part II Prods. Liab. Litig.*, No. Civ. A. MDL-991, 1995 WL
714441 (E.D. La. Dec. 4, 1995) ...................................................................................... 52

*In re: Ford Motor Co. Ignition Switch Products Liab. Litig.*, No. 96-1814(JBS), 2001 WL
1266317 (D.N.J. Sept. 30, 1997)................................................................................... 112

*In re: Takata Airbag Products Liab. Litig.*, No. MDL 2599, 2015 WL 506406 (J.P.M.L. Feb. 5,
2015)............................................................................................................................. 146

*In re: Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab.
Litig.*, 754 F.Supp.2d 1145 (C.D. Cal. 2010) .................................................................. 43

*Inglis v. Am. Motors Corp.*, 209 N.E.2d 583 (Ohio 1965) ....................................................... 109

*Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19 (2007) ............................................... 110

*Jackson v. U.S. Bank, N.A.*, 44 F. Supp. 3d 1210 (S.D. Fla. 2014). ............................................ 22

*Jiminez v.Super. Ct.*, 29 Cal. 4th 473 (Cal. 2002)...................................................................... 142

*Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014)...................................................... 19, 72

*Jozwiak v. Stryker Corp.*, No. 6:09-cv-1985 ORL, 2010 WL 743834

(M.D. Fla. Feb. 26, 2010) ........................................................................................................ 95

*Kagan v. Harley Davidson, Inc.*, No. 07-CV-0694, 2008 WL 1815308 (E.D. Pa. Apr. 22, 2008)

........................................................................................................................................ 126, 127

*Kahn v. Shiley Inc.*, 217 Cal.App.3d 848 (1990) .................................................................... 53

*Kauchick v. Williams*, 435 S.W.2d 342 (Mo. 1968) ............................................................... 135

*K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517 (D.N.J. 2004) ..................................................... 38

*Kearney v. Huyndai Motor Co.*, No. SACV 09-1298 DOC, 2010 WL 9093204 (C.D. Cal. June

2010)...................................................................................................................................... 43

*Kelly v. Davis*, No. 3:10-cv-392 MCR, 2012 WL 967422 (N.D. Fla. March 22, 2012). ............. 42

*Kennedy v. Acura*, No. 01-4063, 2002 WL 31331373 (R.I. Super. Aug. 28, 2002)..................... 88

*Kent v. Daimler Chrysler Corp.*, 200 F.Supp.2d 1208 (N.D. Cal. 2002) ................................. 143

*Kersh v. Manulife Fin. Corp.*, 792 F. Supp. 2d 1111 (D. Haw. 2011) ......................................... 86

*Kia Motors Am. Corp.v. Butler*, 985 So.2d 1133 (Fla. 3d DCA 2008). ..................................... 47

*King v. Va. Birth–Related Neurological Injury Compensation Program*, 22 Va. Cir. 156 (1990)

............................................................................................................................................... 92

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). ...................................................... 33

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004). ............................................................. 28

*Klehr v. A.O. Smith Corp.*, 875 F. Supp. 1342 (D. Minn. 1995) ................................................. 87

*Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11-CV-81373-DMM, 2013 WL 139913 (S.D. Fla. Jan. 10, 2013). .......................................................................................................... 30

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) ........................................ 102

*L.R. McCoy & Co., Inc. v. Beiler*, No. CIV.A.10-1301, 2011 WL 925410 (E.D. Pa. Mar. 16, 2011).............................................................................................................................. 84

*La Torre v. BFS Retail & Commer. Operations, LLC*, 2008 U.S. Dist. LEXIS 99002 (S.D. Fla. Dec. 8, 2008) ........................................................................................................... 125

*LaFerney v. Scott Smith Oldsmobile, Inc.*, 410 So. 2d 534 (Fla. Dist. Ct. App. 1982) .............. 105

*Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723 (2000) ............................................ 60

*Lee v. Carter-Reed Co.*, 203 N.J. 496 (2010) .......................................................... 62

*Lee v. Gen. Motors Corp.*, 950 F. Supp. 170 (S.D. Miss. 1996).................................. 111

*Lennar Homes, Inc. v. Masonite Corp.*, 32 F. Supp. 2d 396 (E.D. La. 1998) ........................... 103

*Licul v. Volkswagen Group of Am.*, No. 13-CV-61686, 2013 WL 6328734 (S.D. Fla. Dec. 5 2013)............................................................................................................... 121, 124

*Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339 (11th Cir. 2008). 24

*Lisk v. Lumber One Wood Preserving LLC*, No. 14-11714, — F.3d —, 2015 WL 4139740 (11th Cir. July 10, 2015)................................................................................ 90, 91, 92

*Lowe v. Mercedes Benz of N. Am., Inc.*, Nos. 96-1501, 95-3038, 1996 WL 694433 (4th Cir. Dec. 5, 1996)........................................................................................................ 110, 111

*Lowther v. U.S. Bank N.A.*, 971 F. Supp. 2d 989 (D. Haw. 2013)................................. 87

*MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087 (N.D. Cal. 2014)........................ 79, 80, 133

*Mace v. Van Ru Credit Corporation*, 109 F. Supp. 3d 338 (7th Cir. 1997)...................... 93, 94

*Maio v. Aetna, Inc.*, 221 F.3d 472 (3d Cir. 2000). ..................................................... 13

*Majdipour v. Jaguar Land Rover N. Am.,*No. 12-cv-07849, 2013 U.S. Dist. LEXIS 146209

    (D.N.J. Oct. 9, 2013) ...................................................................................... 74, 130

*Major League Baseball v. Morsani*, 790 So. 2d 1071 (Fla. 2001). ............................................. 67

*Majors v. Kalo Labs., Inc.*, 407 F. Supp. 20 (M.D. Ala. 1975) ..................................... 104

*Malone v. CarMax Auto Superstores California, LLC*, No. LA CV14-08978 JAK, 2015 WL

    3889157 (C.D. Cal. June 23, 2015)..................................................................... 130

*MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132 (Tex. 2014) ............................. 113

*Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494 (D.N.J. 2009)........................... 106

*Marsikian v. Mercedes Benz USA, LLC*, 2009 U.S. Dist. LEXIS 117012, 2009 WL 8379784

    (C.D. Cal. May 4, 2009)......................................................................................... 75

*Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673 (E.D. Pa. 2011)................................................ 118

*Marty v. Anheuser-Busch Companies, LLC*, 43 F. Supp. 3d 1333 (S.D. Fla. 2014) ................... 60

*Mason v. Mercedes-Benz USA, LLC*,

    No. 85031, 2005 Ohio App. LEXIS 3911 (Ohio Ct. App. Aug. 18, 2005)............................ 109

*Maurizio v. Goldsmith*, 230 F.3d 5181 (2d Cir. 2000) .................................................. 97

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011). ................................................. 42

*Mazzeo v. Nature's Bounty, Inc.*, No. 14-60580-CIV, 2015 WL 1268271 (S.D. Fla. Mar. 19,

    2015)........................................................................................................................ 56

*McCabe v. Daimler AG*, 948 F. Supp. 2d 1347 (N.D. Ga. 2013). ........................................ *passim*

*McCoy v. S. Energy Homes, Inc.*, No. 09-civ-1271, 2012 WL 1409533 (S.D. W. Va. Apr. 23,

    2012)........................................................................................................................ 87

*McGregor v. Uponor, Inc.*, 2010 WL 55985 (D. Minn. Jan. 4, 2010)......................................... 46

*McKissic v. Country Coach, Inc.*, No. 8:07-CV-1488-T-17(EAJ), 2009 WL 500502 (M.D. Fla.

   Feb. 27, 2009) .......................................................................................................... 126, 127

*McManus v. Fleetwood Enters.*,320 F.3d 545 (5th Cir. 2003) .................................................. 110

*McNulty v. Chip*, No. 2014-97-APPEAL, 2015 WL 3511897 (R.I. June 4, 2015) ..................... 88

*McQueen v. BMW of North America, LLC*, 2014 WL 656619 (D.N.J. Feb. 20, 2014) ............... 75

*Metro Nat. Corp. v. Dunham-Bush, Inc.*, 984 F. Supp. 538 (S.D. Tex. 1997) ................... 113, 114

*Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297 (2009) ................................. 128, 129, 132, 133

*Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427 (D.N.J. 2012) ....................................... 106, 107

*Microsoft Corp. v. Manning*, 914 S.W.2d 602 (Tex. App. Ct. 1995) ........................................... 53

*Mills v. Ramona Tire, Inc.*, 2007 WL 4277537 (S.D. Cal. Dec. 5, 2007) .................................... 60

*Minter v. Wells Fargo Bank, N.A.*, 274 F.R.D. 535 (D. Md. 2011) .............................................. 18

*Mitchell Tracey v. First Am. Title Ins. Co.*, 935 F. Supp. 2d 826 (D. Md. 2013) .................. 21, 22

*Montgomery v. Kraft Foods Global, Inc.*, No. 1:12-CV-00149, 2012 WL 6084167 (W.D. Mich.

   Dec. 6, 2012) ......................................................................................................................... 113

*Montoya v. PNC Bank, N.A.*, ---F. Supp. 3d---, No. 14-20474-CIV,

2015 WL 1311482 (S.D. Fla. Mar. 23, 2015) .............................................................................. 22

*Moore v. Coachmen Indus., Inc.*, 499 S.E.2d 772 (1998) ............................................................ 82

*Morrison v. Williams*, No. Civ.A. 98-2408, 1998 WL 717423 (E.D. Pa. Sept. 18, 1998) .......... 51

*Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987 (N.D. Cal. Mar. 14, 2013) ...................... 75

*n re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604 (8th Cir. 2011) ................................ 42

*N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182 (5th Cir. 2015) .......... 61

*Nardone v. Reynolds*, 333 So. 2d 25 (Fla. 1976) ...................................................................... 133

*Newington Ltd. v. Forrester*, No. 3:08–CV–0864–G ECF, 2008 WL 4908200 (N.D. Tex. Nov. 13, 2008) ......................................................................................................... 62

No. EDCV 14–00700, 2015 WL 736273 (C.D. Cal. Feb. 20, 2015) ........................................ 143

*Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77 (Tex. 1977) ..................................... 113

*O'Neil v. Simplicity, Inc.*, 574 F.3d 501 (8th Cir. 2009) ......................................................... 44

*Oetiker v. Jurid Werke, G. m. b. H.*, 556 F.2d 1, 5 (D.C. Cir. 1977) ...................................... 146

*Oppenheimer v. York Int'l*, No. 4348 March Term 2002, 2002 WL 31409949 (Pa. Com. Pl. Oct. 25, 2002) ............................................................................................................... 89

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999). ...................................................................... 37

*Ortiz v. Ford Motor Co.*, 909 So. 2d 479 (Fla. 3d DCA 2005). ................................................ 47

*Oscar v. University Students Co–operative Ass'n*, 965 F.2d 783 (9th Cir.1992). ....................... 14

*Osness v. Lasko Prods., Inc.*, 868 F.Supp.2d 402 (E.D. Pa. 2012) .............................................. 51

*Owen v. Gen. Motors Corp.*, 533 F.3d 913 (8th Cir. 2008) ...................................................... 135

*Pa. Employee Benefit Trust Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458 (D. Del. 2010). ....... 29, 31

*Payne v. Fujifilm U.S.A., Inc.*,

   No. 07-385 (JAG), 2007 U.S. Dist. LEXIS 94765 (D.N.J. Dec. 28, 2007) ........................... 122

*Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663 (2d Cir. 2014). ......................................... 12

*Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680 (S.D. Tex. 2011)... 147

*Peri & Sons Farms, Inc. v. Jain Irr., Inc.*, No. 3:11-cv-0757 VPC, 2012 WL 5198502 (D. Nev. Oct. 19, 2012) ............................................................................................................... 53

*Perkins v. DaimlerChrysler Corp.*, 890 A.2d 997 (App. Div. 2006) .................................. 106, 107

*Perkins v. Falke & Dunphy, LLC*, No. 25162, 2012 WL 6097104

(Ohio Ct. App. Dec. 7, 2012) ................................................................................................ 87

*Pfizer, Inc. v. Farsian*, 682 So.2d 405 (Ala. 1996) ....................................................... 50

*Phillips Petro. Co. v. Shutts*, 472 U.S. 797 (1985) ............................................... 35, 61

*Phillips v. Restaurant Management of Carolina, L.P.*, 146 N.C.App. 203 (2001)...................... 53

*Plaquemine Marine, Inc. v. Mercury Marine*, 859 So. 2d 110 (La. Ct. App. 2003) ................. 100

*Plumbers & Steamfitters Local No. 150 Pension Fund v. Vertex Constr. Co.*, 932 F. 2d

1443,(11th Cir. 1991) .................................................................. 95

*Pycsa Panama S.A. v. Tensar Earth Technologies, Inc.*, 625 F. Supp.2d 1198 (S.D. Fla. 2008). 35

*Quality Air Servs., LLC v. Milwaukee Valve Co., Inc.*, 671 F. Supp. 2d 36 (D. D.C. 2009)........ 46

*Raie v. Cheminova Inc.*, 336 F.3d 1278 (11th Cir.2003) ........................................... 133

*Rajput v. City Trading, LLC*, 476 F. App'x 177 (11th Cir. 2012). ................................. 12

*Rakes v. Life Investors Ins. Co. of Am.*, No. 06-CV-99 LRR,

2007 WL 2122195 (N.D. Iowa July 20, 2007). ................................................ 35

*Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436 (Tenn. 2012)......... 139

*Reed v. Cent. Soya Co.*, 621 N.E.2d 1069 (Ind. 1993) ............................................. 82

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979). .............................................. 14, 15

*Reyes v. Wells Fargo Bank, N.A.*, 2011 WL 30759 (N.D. Cal. Jan. 3, 2011)............................ 60

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142 (Colo. 2003)........ 97

*Richards v. Georg Boat and Motors, Inc.*, 384 N.E.2d 1084 (Ind. App. 1979)......................... 55

*Richmond v. Nationwide Cassel L.P.*, 847 F. Supp. 88 (N.D. Ill. 1994). .................................. 21

*Roberts v. Electrolux Home Prods., Inc.*, 2013 WL 7753579 (C.D. Cal. Mar. 4, 2013)...... 46, 141

*Robinson Helicopter Corp. v. Dana Corp.*, 34 Cal. 4th 9799 (Cal. Ct. App. 2005).................. 142

*Robinson v.  Fountainhead Title Grp. Corp.*, 257 F.R.D. 92 (D. Md. 2009). ............................. 18

*Robinson v. Quicken Loans Inc.*, 988 F. Supp. 2d 615 (S.D. W.Va. 2013).................................. 88

*Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125 (S.D.N.Y. 2014) ........................................... 31

*Rollins Inc. v. Butland*, 951 So. 2d 860 (Fla. Dist. Ct. App. 2006) ............................................. 104

*Rollins, Inc. v. Heller*, 454 So. 2d 580 (Fla. Dist. Ct. App. 1984) ............................................. 105

*Romano v. Motorola, Inc.*, No. 07-CIV-60517, 2007 WL 4199781 (S.D. Fla. Nov. 26, 2007).. 63, 66, 67

*Ross v. Gore*, 48 So.2d 412 (Fla. 1950) ...................................................................... 105

*Rottner v. AVG Technologies USA, Inc.*, 943 F. Supp. 2d 222 (D. Mass. 2013) .......................... 96

*Royal Typewriter Co., a Div. of Litton Bus. Sys. v. Xerographic Supplies Corp.*, 719 F.2d 1092 (11th Cir. 1983) ............................................................................................. 120

*Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221 (2014) .............................. 59

*S.E.C. v. City of Miami, Fla.*, 988 F. Supp. 2d 1343 (S.D. Fla. 2013) ......................................... 78

*Saccoccio v. J.P. Morgan Chase Bank, N.A.*, Slip Copy, 2015 WL 3822315 (S.D. Fla. June 9, 2015) ........................................................................................................ 92

*Safeco Ins. Co. of Am. v. CPI Plastics Grp.*, Ltd., 625 F. Supp. 2d 508  (E.D. Mich. 2008). .... 141

*Saltzman v. Pella Corp.*, 257 F.R.D. 471 (N.D. Ill. 2009) ........................................................ 37

*Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223 (S.D. Fla. 2014) ................ 73, 85, 144

*Santanelli v. Remington Arms Co., Inc.*, No. 11-civ-0245, 2011 WL 6003199 (D. R.I. Nov. 30, 2011) .......................................................................................................... 87

*Sater v. Chrysler Grp. LLC*, No. EDCV 14-00700-VAP, 2015 WL 736273 (C.D. Cal. Feb. 20, 2015) .................................................................................................... 108, 129

*Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-cv-1851, 2006 U.S. Dist. LEXIS 61872 (E.D.N.Y. 2006) ......................................... 110

*Seaside Resorts, Inc. v. Club Car, Inc.*, 416 S.E.2d 655 (S.C. Ct. App. 1992) ........................... 54

*Sec'y of Labor v. Labbe*, 319 F. App'x 761 (11th Cir. 2008) ....................................................... 71

*See Clark v. LG Electronics U.S.A., Inc.*, No. 13-CV-485 JM JMA, 2013 WL 5816410 (S.D. Cal. Oct. 29, 2013) ................................................................................................................. 116

*See In re Managed Care Litig.*, 185 F. Supp. 2d 1310 (S.D. Fla. 2002) ..................................... 56

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266 (5th Cir. 2006), .................................... 147

*Seward v. Certo*, No. CIV. A. 05-6363, 2006 WL 266150 (E.D. Pa. Feb. 2, 2006) ................... 89

*Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), . 91, 92

*Sharma v. BMW of North America, LLC*, No. C–13–2274 MMC, 2014 WL 2795512 (N.D. Cal. June 19, 2014) ................................................................................................................. 143

*Sheet Metal Workers National Health Fund v. Amgen Inc.*, 2008 WL 3833577 (D.N.J. Aug. 13, 2008) .............................................................................................................................. 98

*Sheris v. Nissan N. Am.*, Inc., No. 07-2516 (WHW), 2008 WL 2354908 (D.N.J. June 3, 2008) 111

*Sherman v. Sea Ray Boats, Inc.*, 649 N.W.2d 783 (Mich. Ct. App. 2002). ................................ 141

*Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213 (S.D. Fla. 2009) ......................................................................................................................... 145, 146

*Simmons v. Pacor, Inc.*, 543 Pa. 664 (1996) ............................................................................... 51

*Singer v. AT & T Corp.*, 185 F.R.D. 681 (S.D. Fla. 1998). .............................................. 29, 30, 56

*Smith v. D.R. Horton, Inc.*, 742 S.E.2d 37, 40 (Ct. App. 2013) ................................................. 121

*Snodgrass v. Ford Motor Co.*, No. 96-CV-1814(JBS), 2001 U.S. Dist. LEXIS 18555 (D.N.J. Sep. 4, 2001) ........................................................................................................... 123, 126

*Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712 (D.N.J. 2011). ...................................................... 31

*Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288 (S.D. Fla. 2008) ........... 13,25

*Southwestern Bell Telephone Co. v. Marketing On Hold Inc.*, 308 S.W.3d 909 (Tex. 2010) ...... 61

*Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317 (S.D. Fla. 2012)..................................... 69, 71

*Spann v. J.C. Penney Corp.*, No. SA CV 12-0215 FMO, 2015 WL 1526559 (C.D. Cal. Mar. 23, 2015)............................................................................................................ 101

*Spearman v. Wyndham Vacation Resorts, Inc.*, 69 F. Supp. 3d 1273  (N.D. Ala. 2014). ............ 78

*Speier-Roche v. Volkswagen Grp. of Am. Inc.*, No. 14-20107-CIV, 2014 WL 1745050 (S.D. Fla. Apr. 30, 2014). ....................................................................................... 58, 86, 127

*Stalvey v. American Bank Holdings, Inc.*, No. 4:13–cv–714, 2013 WL 6019320 (D.S.C., Nov. 13, 2013)........................................................................................................ 91

*Starling v. R.J. Reynolds Tobacco Co.*, 845 F. Supp. 2d 1215 (M.D. Fla. 2011)......................... 70

*State Farm Fire & Cas. Co. v. Conair Corp.,* 833 F. Supp. 2d 713 (E.D. Mich. 2011)............. 141

*State Farm Mut. Auto. Ins. Co. v. Kugler*, No. 11-80051, 2011 WL 4389915 (S.D. Fla. Sept. 21, 2011 ............................................................................................................. 71

*State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714 (11th Cir. 2011)............................................................................................................... 56

*State Farm Mut. Auto. Ins. Co. v. Williams*, 563 F. App'x 665 (11th Cir. 2014)........................ 56

*Steinberg v. A Analyst Ltd.*, No. 04–60898, 2009 WL 806780 (S.D. Fla. Mar. 26, 2009). .... 27, 70

*Stringer v. Bugg*, 254 Ga.App.745 (2002) .................................................................. 96

*Suddreth v. Mercedes–Benz, LLC*, No. 10-CV-05130(DMC-JAD), 2011 U.S. Dist. LEXIS 126237 (D.N.J. Oct. 31, 2011) ....................................................................... 125

*Szymczak v. Nissan N. Am., Inc.*, No. 10 CV 7493(VB), 2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011)............................................................................................................ 111

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012).................................... 85

*Tanner v. Hartog*, 618 So.2d 177 (Fla. 1993).................................................................. 68

*Taragan v. Nissan N. Am., Inc.*, No. C-09-3660 SBA, 2013 WL 3157918 (N.D. Cal. June 20, 2013) ............................................................................................................... 54

*Taterka v. Ford Motor Co*, 271 N.W.2d 653 (Wis. 1978) ......................................... 124

*Taylor v. Am. Honda Motor Co., Inc.*, 555 F. Supp. 59 (M.D. Fla. 1982). ................. 78

*Teague v. Norcold, Inc.*, 774 F. Supp. 2d 817 (N.D. Tex. 2011) .............................. 113, 114, 115

*Teledyne Technologies Inc. v. Freedom Forge Corp.*, 2002 WL 748898 (Pa. Com. Pl. Apr. 19, 2002) ............................................................................................................... 83

*Tellez-Cordova v. Campbell-Hausfeld/Scott Fetzger Co.*, 28 Cal. Rptr. 3d 744 (Cal. Ct. App. 2004) .............................................................................................................. 144

*Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275 (11th Cir. 2005) ......................... 70

*Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06-cv-00018, 2006 WL 3359448 (N.D. Ohio Nov. 17, 2006) .......................................................................................................... 87

*Tiara Condominium Assoc., Inc. v. Marsh & McLennan Cos.*, 110 So. 3d 399 (Fla. 2013) .. 80, 81

*Tietsworth v. Sears*, No. 09-cv-288, 2009 U.S. Dist. LEXIS 98532 (N.D. Cal. Oct. 13, 2009). 130

*Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288 JFHRL, 2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) ........................................................................................................... 115

*Tolen v. A.H. Robins Co.*, 570 F. Supp. 1146 (N.D. Ind. 1983) ................................. 133

*Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, No. 3:08-CV-1057-FLW, 2008 WL 5381227 (D.N.J. Dec. 17, 2008) ............................................................................................ 63

*United States v. Elliott*, 571 F.2d 880 (5th Cir.1978). .................................................. 24

*United States v. Goldin Indus., Inc.*, 219 F.3d 1271 (11th Cir. 2000). ......................... 21

*United States v. Pepe*, 747 F.2d 632 (11th Cir.1984). ................................................. 22

*United States v. Turkette*, 452 U.S. 576 (1981). ......................................................... 20

*Utilities Bd. of City of Opp v. Shuler Bros.*, 138 So. 3d 287 (Ala. 2013), <u>reh'g denied</u> (Aug. 23, 2013)..................................................................................................................... 89

*Valor Healthcare, Inc. v. Pinkerton*, No. 08-6015, 2008 WL 5396622 (W.D. Ark. Dec. 23, 2008) ..................................................................................................................... 101

*Valoro, LLC v. Valero Energy Corp.*, No. 14-21694-CIV, 2014 WL 3920035 (S.D. Fla. Aug. 11, 2014)..................................................................................................................... 62

*Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329 (11th Cir. 2012) ..................................................... 65

*Virgin Valley Water Dist. v. Vanguard Piping Sys. (Canada), Inc.*, No. 2:09-CV-00309-LRH, 2011 WL 117244 (D. Nev. Jan. 13, 2011) ............................................................ 136

*Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349 (D.D.C. 2007)............ 31

*Warner v. Ford Motor Co.*, No. 06-cv-02442, 2008 U.S. Dist. LEXIS 82858 (D. Colo. Sept. 30, 2008)..................................................................................................................... 77

*Weiland v. Palm Beach Cnty. Sheriff's Office*, No. 13-14396, ---F.3d---, 2015 WL 4098270 (11th Cir. July 8, 2015)..................................................................................................... 28

*Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002) ................................................. 83, 89

*White v. Teays Valley Health Services, LLC*, No. 06-C-1044, 2006 WL 4524697 (W.Va.Cir.Ct. Nov. 9, 2006)..................................................................................................................... 96

*White v. Volkswagen Group of Am.*, Inc., No. 2:11-CV-02243, 2013 WL 685298 (W.D. Ark. Feb. 25, 2013)..................................................................................................................... 128

*Williams v. Bear Stearns & Co.*, 725 So. 2d 397 (Fla. Dist. Ct. App. 1998)................................ 56

*Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277 (11th Cir. 2006)............................................. 12

*Williams v. Student Loan Guarantee Found. of Arkansas*, No. 5:12-CV-02940-JHE, 2015 WL 241428 (N.D. Ala. Jan. 20, 2015) ............................................................................. 146

*Wilson v. De Angelis*, 156 F. Supp. 2d 1335 (S.D. Fla. 2001).......................................... 58

*Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202 (S.D. Fla. 2015) ................................. 38

*Winger v. Best Buy Co., Inc.*, No. CV 10–923, 2011 WL 995937 (D. Ariz. Mar. 21, 2011). ...... 16

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010)................................. 42

*World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)............................................. 147

*Worldwideweb Networx Corp. v. Entrade, Inc.*, 2002 WL 1472336 (Pa. Com. Pl. June 20, 2002)

............................................................................................................... 83

*York v. Sullivan*, 338 N.E.2d 341, 346, 369 Mass. 157 (Mass. 1975) ......................................... 96

*Zwicker v. Gen. Motors Corp.*, No. C07-0291, 2007 U.S. Dist. LEXIS 99310, 2007 WL 5309204

(W.D. Wash. July 26, 2007)...................................................................................... 77

*Zwiercan v. Gen. Motors Corp.*, No. 3235 June Term 1999, 2002 WL 31053838 (Pa. Com. Pl.

2002)................................................................................................................. 90

### STATUTES

13 Pa. Stat. Ann. § 2725(d)..................................................................................... 107, 112

13 Pa.C.S. § 2607(c)(1).............................................................................................. 95

672.719(3) ............................................................................................................... 85

Ala. Code § 8-19-10(f).......................................................................................... 75, 76

Ala.Code § 8-19-2 (1975)............................................................................................ 80

Cal. Com. Code § 2725(4) ........................................................................................ 107

Colo. Rev. Stat. Ann. § 6-1-113.................................................................................. 81

Fed. R. Civ. P. 12(b)(6)............................................................................................... 11

Fed. R. Civ. P. 12(h) ................................................................................................. 117

Fed. R. Civ. P. 8(d)(2)................................................................................................. 25

Fed. R. Civ. P. 9(b) ........................................................................................................... 61

Fla. Stat. § 48.193(1) ...................................................................................................... 117

Fla. Stat. §§ 95.11(3)(k), 95.031 ...................................................................................... 57

Fla. Stat. Ann. §§ 672.719(2) ........................................................................................... 85

Ga. Code Ann. § 10-1-399(a) ........................................................................................... 76

Ind. Code § 26-1-2-725(4) .............................................................................................. 107

Ind. Code § 34-11-5-1 .................................................................................................... 108

Ind. Code Ann. § 26-1-2-725(2) ...................................................................................... 108

La. Rev. Stat. § 51:1409(A) ............................................................................................. 76

La. Rev. Stat. Ann. § 51:1402 .......................................................................................... 81

Mass. Gen. Laws  ch. 260, § 12 ...................................................................................... 109

Mass. Gen. Laws ch. 106 § 2-725(4) .............................................................................. 107

Minn. Stat. § 336.2-725(2) ............................................................................................. 109

Minn. Stat. Ann. § 336.2-725(4) ............................................................................. 107, 109

Mo. Ann. Stat. § 400.2-725(4) ........................................................................................ 107

Mo. Ann. Stat. § 516.280 ............................................................................................... 110

Mo. Rev. Stat. § 400.2–725(4) ....................................................................................... 110

Mo. Rev. Stat. § 407.020.1 ............................................................................................. 82

N.J. Stat. Ann. § 12a:2-725(4) ........................................................................................ 107

N.J.S.A. 12A:2-725(4) .................................................................................................... 111

Nev. Rev. Stat. § 104.2725(4) ........................................................................................ 107

Nev. Rev. Stat. Ann. § 104.2607 ................................................................................. 95, 96

R.I. Gen. Laws § 6A–2–725 ........................................................................................... 112

xxx

R.I. Gen. Laws § 6a-2-725(4) ........................................................................ 107

R.I. Gen. Laws § 6A–2–725(4) ....................................................................... 112

R.I. Gen. Laws § 9-1-20 ................................................................................. 112

*S.A.P.*, 835 So. 2d at 1096 ............................................................................. 59

S.C. Code § 39-5-140(a) ................................................................................. 76

T.C.A. § 47-18-109(a)(1) ............................................................................... 76

Tenn. Code Ann. § 47-2-725(4) ...................................................................... 107

Tex. Bus. & Com. Code § 2.607(c)(1) ............................................................ 95

U.C.C. § 2-275 ............................................................................................... 106

Va. Code Ann. § 8.2-314 ................................................................................ 76

W. Va. Code § 46-2-725(4) ............................................................................ 113

W. Va. Code.§ 46-2-725(4) ............................................................................ 107

## OTHER AUTHORITIES

Judicial Council of California, California Civil Jury Instruction No. 1223 ("Negligence—

Recall/Retrofit") (Revised October 2004) .................................................... 115

Restatement (Second) of Torts § 525 (1977) .................................................. 29

Restatement (Second) of Torts § 550 (1977) .................................................. 29

Restatement (Second) of Torts § 551 (1977) .................................................. 29

Plaintiffs Pamela Koehler, et al., individually and on behalf of all others similarly situated, hereby respond in opposition to the motions to dismiss Plaintiffs' Second Amended Consolidated Class Action Complaint (the "Complaint") (Dkt. 579) filed by Mazda (Dkt. 608), Ford (Dkt. 612), Toyota (Dkt. 614), Subaru (Dkt. 615), Honda (Dkt. 616), Nissan (Dkt. 619), Takata (Dkt. 622), and BMW (Dkt. 625).[1]

## INTRODUCTION

The things designed to protect us should not harm us—but that is precisely what Takata's airbags, plagued by a uniform defect, have been doing for more than a decade.  This uniform defect, and Defendants' unconscionable concealment of it, has impacted over 34 million vehicles nationwide.  The severity of the public safety risk created by this defect cannot be overstated. Without warning, the defect transforms a critical safety device, the vehicle's airbag, into a useless piece of fabric or a veritable grenade.  Already responsible for at least 8 deaths and more than 139 injuries, the consequences of this defect are gruesome and tragic, and have been widely publicized.

Defendants do not, and cannot, contest the existence of this defect, having conceded that fact in regulatory filings tied to the single-largest vehicle recall in United States history.  The breadth of the Complaint reflects the sheer magnitude of the problem.  It is also a product of the reams of troubling information uncovered through extensive press coverage, Congressional hearings, and Defendants' own admissions.

As the Complaint's allegations exhaustively detail, the uniform defect—the use of ammonium nitrate, a notoriously volatile and unstable compound, as the propellant in Takata's defectively designed airbag inflators—began as a callous, cost-saving measure for Takata, which was well aware of the danger to which it was exposing the public.  The Vehicle Manufacturer Defendants,[2] too, were aware of this danger, having reviewed and approved the designs of

---

[1] Consolidating Plaintiffs' responses to Defendants' 250-pages of repetitive arguments, pursuant to this Court's order granting Plaintiffs permission to file an omnibus response, has yielded the intended efficiencies, as Plaintiffs' response is approximately half as long as Defendants' combined motions.

[2] The Vehicle Manufacturer Defendants addressed in this response are: Honda, BMW, Ford, Mazda, Toyota, Nissan, and Subaru.  Mitsubishi has also been named as a Defendant but has not made an appearance in the litigation.

Takata's inflators prior to installing the inflators in their vehicles. Yet for more than a decade, Defendants concealed the true nature and scope of the defect, misleading the public and regulators into believing that idiosyncratic, correctable manufacturing flaws or "anomalies" were responsible for the increasing number of deaths and injuries. The truth is now finally starting to come out.

Given how jam-packed the Complaint is with details of Defendants' misconduct over the past fifteen years, Defendants cannot seriously argue that Plaintiffs have failed to allege sufficient facts to state plausible claims for relief. Yet that has not stopped almost every Defendant from trying. Interestingly, the Vehicle Manufacturer Defendant responsible for the largest number of Class Vehicles, Honda, effectively concedes that many Plaintiffs have stated plausible implied-warranty, fraudulent concealment, and statutory consumer-protection claims, because it does not seek dismissal of many of these claims. But Honda overreaches as well, because the claims it does seek to dismiss are likewise well-pled.

Defendants' primary argument essentially boils down to this: despite Plaintiffs' detailed allegations relating to the 34-million-plus vehicle recall, Defendants' own admissions of a serious defect, and the numerous instances of death and serious personal injury caused by the defect, Plaintiffs cannot adequately plead damages because, thus far, they have had the good fortune to not have experienced an accident that will trigger an airbag explosion that hurts or kills them. In other words, Defendants contend that Plaintiffs' good luck (thus far) in escaping personal injury from an inherently defective and falsely marketed product nullifies their claims for overpayment, diminution in value, and other economic loss arising from the real impact of the belated disclosure of a hidden defect. As a practical matter, that argument is indefensible. As a legal matter, it is ungrounded, particularly because the defect has already manifested itself catastrophically, is present in every Class Vehicle, and has already caused Plaintiffs concrete economic harm.

The economic harm suffered by Class members is apparent. The Complaint specifically alleges—and common sense dictates—that consumers who paid for a safe car equipped with a reliable airbag, but instead received a dangerous car equipped with a defective and potentially lethal airbag, paid an artificially-inflated price for their vehicles and should be compensated for their overpayment. Similarly, consumers who own vehicles that are now worth less due to the understandable stigma attached to vehicles equipped with Takata airbags should be compensated

2

for the diminution in value. And consumers who reasonably chose to rent a car or pay for alternative transportation rather than expose themselves to exploding shrapnel should be compensated for their expenses.

Fortunately, this relief is available through Plaintiffs' well-pled federal RICO claims, common law unjust enrichment, fraudulent concealment, and negligence claims, as well as state statutory consumer protection and breach of implied warranty claims. Defendants' motions to dismiss should be denied.

## STATEMENT OF THE FACTS[3]

Plaintiffs in this action have suffered damages because Takata and the Vehicle Manufacturer Defendants put profits ahead of safety. Takata cut corners to make airbags it knew were defective, and the Vehicle Manufacturer Defendants sold Class Vehicles that they knew or should have known contained those Defective Airbags. (Dkt. 579, ¶ 33.) As a result, a tragic number of individuals have been injured or killed because Takata airbags either failed to deploy or violently exploded. As of the filing of the Complaint two months ago, the uniform defect in Takata's airbags had already caused at least seven deaths (*id.*, ¶ 8), but since then, according to news reports, it has killed at least one more person. At least another 139 people have been injured, including at least 37 reports of airbags either rupturing or exploding and propelling metal particles or chemicals at the very occupants they are designed to protect. (*Id.*) To date, over 34 million vehicles equipped with defective Takata airbags have been recalled nationwide. (*Id.*, ¶ 194.)

This action, which Defendants now wrongly seek to dismiss, concerns the economic damage caused to Plaintiffs by these Defective Airbags and Defendants' pattern of reckless disregard, deception, concealment, and obfuscation.

## I.   The Overarching Defect in All Takata Airbags: Ammonium Nitrate

All Takata airbags at issue here share a common, uniform defect: the use of a volatile and unstable compound, ammonium nitrate, as the propellant in their defectively designed inflators (the "Inflator Defect"). (*Id.*, ¶ 4.) The inflator, as its name suggests, is supposed to inflate the airbag upon vehicle impact. (*Id.*) In the milliseconds following a crash, the inflator ignites a propellant to produce gas that is sent into the airbag cushion, causing the airbag cushion to

---

[3] The following facts are alleged in and taken from the Second Amended Consolidated Class Action Complaint (Dkt. 579).

3

expand and deploy. (*Id.*) But because of ammonium nitrate's inherent volatility, Takata airbags too often either fail to deploy or violently explode, sometimes firing metal debris and shrapnel directly at vehicle occupants. (*Id.*, ¶ 8.) This volatility can occur even under ordinary conditions, as the chemical's sensitivity to temperature and moisture cause it to break down over time. (*Id.*, ¶ 206.)

The volatility of ammonium nitrate is no secret. The compound has typically been used in industrial explosives. (*Id.*, ¶¶ 205, 206.) One explosives expert has stated that ammonium nitrate "shouldn't be used in airbags" and is better suited to large demolitions in mining and construction. (*Id.*, ¶ 206.) Even Takata itself expressed concern in a patent document in 1995 that an ammonium nitrate propellant would be vulnerable to temperature changes and that its casing "might even blow up." (*Id.*, ¶ 207.) In a 1999 patent document, Takata further admitted that pure ammonium nitrate is "problematic" because many gas-generating compositions made with it are "thermally unstable." (*Id.*, ¶ 208.) Indeed, as the ammonium nitrate design was being considered, Takata's own engineering team raised objections and pointed to explosives manuals that warned of the risks of disintegration and irregular, overly-energetic combustion. (*Id.*, ¶ 209.) As a former Takata engineer noted, "ammonium nitrate stuck out like a sore thumb." (*Id.*)

The reason Takata insisted on using such a dangerous and volatile compound is uncomplicated—ammonium nitrate happens to be very cheap. (*Id.*, ¶ 211.) Whereas other major airbag manufacturers, including Autoliv, Key Safety Systems, and TRW Automotive, have reportedly avoided using ammonium nitrate as a propellant, Takata insisted on using the compound in an effort to cut costs and gain a perilous competitive advantage. (*Id.*, ¶ 209, 210.) In some respects, this decision paid off—by 2014, Takata had captured 22 percent of the entire global automotive airbag market. (*Id.*, ¶ 199.) But Takata's gain has come at an unconscionable public cost—many have died; hundreds of others have been seriously injured; and millions more continue to drive vehicles containing Defective Airbags that, at the critical juncture, will either fail to deploy or will simply explode. (*Id.*, ¶¶ 8, 23.)

## II.   Defendants' Awareness and Concealment of the Inflator Defect

Honda was among the first automakers to use Takata's new air bags, and installed them in some models beginning in 1998. (*Id.*, ¶ 225.) Since then, Takata airbags containing the Inflator Defect have been installed in tens of millions of vehicles manufactured by the Vehicle Manufacturer Defendants. (*Id.*) Both Takata and the Vehicle Manufacturer Defendants have

long known about the Inflator Defect.  Even before the Vehicle Manufacturer Defendants purchased Takata's airbags for their vehicles, they were aware that Takata used the volatile ammonium nitrate as the primary propellant in its inflators.  (*Id.*, ¶ 32.)  Takata even reviewed the designs of the inflators with the Vehicle Manufacturers, which the Vehicle Manufacturers approved.  (*Id.*)  Knowing what they already knew about the inflators in Takata's airbags, it would have been impossible for the Inflator Defect to have gone unnoticed by the Vehicle Manufacturer Defendants, as alarming breakdowns and incidents involving Takata's airbags escalated for over a decade.  (*Id.*)

Between 2001 and 2003, Takata struggled with at least 45 different inflator problems, according to dozens of internal reports titled "potential failures."  (*Id.*, ¶ 217.)  In 2002, Takata's Monclova, Mexico plant recorded 60 to 80 potential failures for every million inflators shipped to automakers—six to eight times beyond Takata's own quality control limit (the same plant would later be rocked by violent explosions from containers loaded with unstable ammonium nitrate propellant, leaving at least a dozen workers injured).  (*Id.*, ¶¶ 217, 218.)

No later than 2003, Takata and the Vehicle Manufacturer Defendants began receiving word of startling airbag failures.  In 2003, a Subaru passenger was killed in a Takata airbag-related accident.  (*Id.*, ¶ 226.)  That same year, a Takata inflator ruptured in a BMW vehicle in Switzerland.  (*Id.*, ¶¶ 11, 227.)  BMW and Takata jointly investigated the incident in one of Takata's Michigan facilities.  The results of the investigation indicated that the inflators were defective, but BMW and Takata inaccurately minimized the incident as an anomaly, without alerting federal safety regulators.  (*Id.*, ¶ 227.)

In 2004, a Takata airbag in a Honda Accord in Alabama exploded, shot out metal shrapnel, and severely injured the car's driver.  (*Id.*, ¶ 12.)  Honda and Takata investigated the incident and inaccurately minimized it as "an anomaly."  (*Id.*, ¶¶ 12, 228.)  Honda did not issue a recall, and neither Honda nor Takata sought the involvement of federal safety regulators.  (*Id.*)

Even as it downplayed these incidents publicly, in 2004 engineers at Takata's American headquarters in Auburn Hills, Michigan, began conducting secret tests on 50 airbags it had retrieved from scrapyards.  (*Id.*, ¶ 230.)  A former Takata employee stated that "[a]ll the testing was hush hush . . . . It was not standard procedure."  (*Id.*, ¶ 232.)  When tests confirmed that Takata's inflators were defective, Takata executives ordered the lab technicians to delete the test data, including video and computer backups, from company computers and to dispose of the

airbag inflators.  (*Id.*, ¶¶ 14, 232.)  Upon information and belief, Honda was aware of Takata's secret testing.  (*Id.*, ¶ 233.)

By the following year, other Vehicle Manufactures were also being implicated in Takata airbag incidents.  Publicly-available complaints to the National Highway Traffic Safety Administration ("NHTSA") show dozens of unusual Takata airbag deployments being reported after September 2005.  (*Id.*, ¶ 308.)  These complaints involved vehicles manufactured by Acura, BMW, Dodge, Ford, Mitsubishi, Pontiac, Subaru, and Toyota, and indicate problems with Takata airbags consistent with the Inflator Defect.  (*Id.*)  In one reported case, an airbag deployed with such force that the impact shattered the vehicle's windshield.  (*Id.*)  In another case, the explosion from an airbag started a fire.  (*Id.*)

In 2007, Honda reported three more airbag defect incidents, all three of which involved metal fragments exploding into the faces and bodies of car passengers upon deployment of the airbags.  (*Id.*, ¶ 234.)  Acting in the same manner it had in response to the 2004 incident, Honda did not initiate a recall or provide information about the ruptures to federal investigators.  (*Id.*).  Honda instead chose to wait for the results of a "failure mode analysis" to be performed by Takata.  (*Id.*, ¶ 438(c).)  In light of what the two companies knew about the Defective Airbags, this "failure mode analysis" was nothing more than an attempt to divert the attention of regulators and the public.  (*Id.*)

In late 2007, Honda and Takata began another round of secret testing on inflators, despite already knowing the airbags were defective.  (*Id.*, ¶¶ 237, 438(e).)  That year-long study again indicated an airbag inflator problem.  (*Id.*, ¶ 238.)  Honda and Takata, however, falsely claimed that only a limited number of inflators were affected and in 2008 Honda issued a limited recall for only 3,940 vehicles.  (*Id.*)

Despite the assurances made to regulators in connection with the 2008 recall, exploding Takata airbags continued to kill or injure Honda drivers the following year.  In 2009, a Takata airbag sent metal shrapnel into an 18-year-old girl's carotid artery and she bled to death.  (*Id.*, ¶ 241.)  Another Takata airbag sent shrapnel through a woman's neck.  (*Id.*)  Yet another Takata airbag incident caused an additional fatality that year, but Honda ultimately settled the lawsuit with the decedent's family.  (*Id.*)  As these incidents continued to mount, Takata and Honda revisited the issue yet again.  (*Id.* at 242.)  This time they blamed the defect on a flaw in machinery that created the propellant (which they claimed had now been fixed).  (*Id.*)  In a 2009

joint letter to NHTSA, Honda and Takata, in concert, knowingly and consciously omitted and withheld crucial information from government regulators in order to prevent regulatory action that likely would have resulted in a broader recall and possibly regulatory sanctions.  (*Id.*, ¶ 438(f).)

Unsurprisingly, Takata and Honda were forced to issue further recalls in 2009, 2010, and 2011, but as before, they continued to do so in a limited and misleading way, apparently in an effort to avoid the huge costs and bad publicity that would have been associated with appropriately-sized and broader recalls.  (*Id.*, ¶ 15.)

Toyota also received additional direct notice of the Inflator Defect.  In 2012, Toyota received field reports of three U.S. vehicles with fractured inflators—two were front passenger side airbags that deployed inadvertently.  (*Id.*, ¶ 271.)  Toyota recovered 144 in-use inflators from both the Japan and U.S. markets for Takata to evaluate.  (*Id.*)  In February 2013, Takata informed Toyota that some of the propellant wafers found within the recovered inflators were cracked, possibly due to lower material density.  (*Id.*, ¶ 271.)

Around this timeframe, more Takata airbags in Honda and BMW vehicles either ruptured or exploded, causing chest injuries, head injuries, facial injuries and blindness to the drivers.  (*Id.*, ¶ 272.)  With awareness and scrutiny over Takata airbags growing, news of incidents became more widespread and airbag-failure incidents were reported for the following vehicles in 2013: Honda, Acura, Nissan, BMW, Toyota, Chevy, Ford, Mazda, Chrysler, and Dodge.  (*Id.*, ¶¶ 278, 280, 281, 290.)  By 2014, NHTSA issued a recall covering ten automakers.  (*Id.*, ¶ 291.)

Over the past 13 years, there have been at least eight deaths and 139 injuries linked to the defective Takata airbags.  As detailed above the incidents date back to at least 2003, and involve vehicles made by Acura, BMW, Chevrolet, Honda, Mazda, Subaru, and Toyota.  Each of the Defendants knew of the Inflator Defect by virtue of these incidents, but failed to disclose the nature and scope of the Inflator Defect.  (*Id.*, ¶ 307.)  Defendants were on further notice due to unusual Takata airbag deployments that should have prompted further inquiry into the airbags' fitness for use.  (*Id.*, ¶ 308.)  A review of publicly-available NHTSA complaints shows dozens of incidents of Takata airbags inadvertently deploying in Class Vehicles, events that may be tied to the unstable and volatile ammonium nitrate propellant.  (*Id.*)

### III.   Defendants' Admission of the Inflator Defect

In 2014, NHTSA began to force Defendants into action.  In anticipation of a United States Senate hearing to be attended by Takata and the major automakers, NHTSA demanded that the recall be expanded to the entire country for certain driver's side airbags, citing airbag rupture incidents in North Carolina and California.  (*Id.*, ¶ 18.)  Incredibly, Takata refused, and testified at Congressional hearings that vehicles in non-humid regions were safe, *even as it claimed that it had not yet determined the root cause of the failures.*  (*Id.*)

Having misrepresented and omitted the nature and scope of the Inflator Defect for over a decade, the Vehicle Manufacturers finally chose a different path, meeting in December 2014 to "sort out a way to understand the technical issues involved."  (*Id.*, ¶ 298.)  Honda ultimately admitted that it had failed to report 1,729 serious accidents resulting in injuries or deaths to NHTSA between 2003 and 2014, and agreed to pay a $70 million fine for this startling failure. (*Id.*, ¶ 270.)  Defendants eventually consulted with external explosives and airbag specialists, and performed additional testing on Takata's airbags.  (*Id.*, ¶ 20.)  This testing confirmed what Defendants already knew: Takata's airbags containing ammonium nitrate were defective and prone to rupture.  (*Id.*)

In light of this testing, Defendants were unable to deny the existence of the Inflator Defect any longer.  On May 18, 2015, Takata filed four Defect Information Reports ("DIRs") with NHTSA and agreed to a Consent Order regarding its (1) PSDI, PSDI-4, and PSDI-4K driver air bag inflators; (2) SPI passenger air bag inflators; (3) PSPI-L passenger air bag inflators; and (4) PSPI passenger air bag inflators, respectively. After concealing the Inflator Defect for more than a decade, Takata finally admitted that "a defect related to a motor vehicle safety may arise in some of the subject inflators."  (*Id.*, ¶ 21.)  Importantly, in testimony presented to Congress following the submission of its DIRs, Takata's representative admitted that the use of ammonium nitrate is a factor that contributed to the tendency of Takata's airbags to rupture, and that as a result, Takata will phase out the use of ammonium nitrate.  (*Id.*)

As a result of Takata's admission that its inflators are defective, an additional 17 million vehicles must be recalled in the United States, pushing the total number of recalled vehicles nationwide to over 34 million.  (*Id.*, ¶ 23.)

## IV.    **Problems with Recalls**

Given Defendants' concealment of the Inflator Defect for more than a decade, the recalls now underway simply cannot be implemented effectively. (*Id.*, ¶ 25.) Defendants have acknowledged that the process could take at least three *years* because of supply constraints. (*Id.*) Even before the number of recalled vehicles nationwide doubled from approximately 17 million to 34 million, Honda's spokesman acknowledged that "[t]here's simply not enough parts to repair every recalled single car immediately." (*Id.*)

Even if there were enough airbags, dealers are unable to keep up with the volume of customers rushing to get their Takata airbags replaced. (*Id.*, ¶ 26.) Following the expanded recalls in late 2014, some dealers reported receiving up to *900 calls per day* about the recalls, and told customers that they may have to wait months before airbags can be replaced. And following Takata's submission of the May 18th DIRs, NHTSA's recall website received over one million visits. (*Id.*)

Consumers are, therefore, in the frightening position of having to drive dangerous vehicles for many months (or even years) while they wait for Defendants to replace the Defective Airbags in their cars. (*Id.*, ¶ 27.) Most Defendants are not providing replacement or loaner vehicles, even though there is an immediate need to provide safe vehicles to Plaintiffs and Class members. (*Id.*) For example, Toyota has simply disabled the dangerous passenger-side airbags in vehicles, and has offered stickers to paste onto the dashboard as a reminder not to sit in that seat. (*Id.*) Likewise, General Motors has recommended that owners of its cars prohibit anyone from riding in the passenger seat. (*Id.*) As a result, many consumers are effectively left without a safe vehicle to take them to and from work, to pick up their children from school or childcare, or, in the most urgent situations, to transport themselves or someone else to the hospital. (*Id.*) As a matter of common sense, a car with a "don't sit here" sticker fixed to its dashboard loses not only utility but economic value.

Worse yet, certain recalls for passenger-side airbags remain regional in scope. (*Id.*, ¶ 28.) This is an indefensible and unnecessarily risky approach because: (a) Defendants have claimed they have yet to uncover the root cause of the Inflator Defect, making their geographic boundaries arbitrary at best; (b) the passenger-side airbags are made with the same unstable and dangerous ammonium nitrate propellant that is prone to overly-aggressive combustion and becoming inert; (c) vehicles are by definition mobile and therefore can and likely will be

operated in high humidity regions; and (d) weather and climate are unpredictable and variable. (*Id.*)

Even more troubling, many of the replacement airbags that Takata and the Vehicle Manufacturers are using to "repair" recalled vehicles suffer from the same common, uniform defect that plagues the airbags being removed—they use unstable and dangerous ammonium nitrate as the propellant within the inflator, a fact that Takata's representative admitted at a recent Congressional hearing in June 2015. (*Id.*, ¶¶ 29, 224.) At the Congressional Hearing, the Takata representative repeatedly refused to provide assurances that Takata's replacement air bags are safe and defect-free. (*Id.*)

**V.**   **This Lawsuit**

Takata airbags create a dangerous condition that gives rise to a clear, substantial, and unreasonable danger of death and personal injury. (*Id.*, ¶ 37.) Takata and the Vehicle Manufacturer Defendants knew or should have known that the Takata airbags installed in millions of vehicles were defective. (*Id.*, ¶ 30.) Both Takata and the Vehicle Manufacturer Defendants, who concealed the nature and extent of the defect from the public while continuing to advertise their products as safe and reliable, have shown a blatant disregard for public welfare and safety. (*Id.*)

Moreover, Takata and each Vehicle Manufacturer Defendant benefitted through their unjust conduct, by selling Defective Airbags to Plaintiffs, who overpaid for these Defective Airbags by overpaying for their Class Vehicles, and/or would not have purchased these Defective Airbags and Class Vehicles at all. (*Id.*, ¶¶ 485, 547, 638, 685, 747, 838, 885, 940.) If Defendants had timely disclosed to consumers that the Class Vehicles, and the airbags installed in them, were much less safe than Defendants claimed, Plaintiffs would not have agreed to pay the price they did pay for their vehicles, or would not have purchased them at all. (*Id.*, ¶¶ 34-36, 72-187, 431, 440.) Now that the public is aware of the Inflator Defect, Plaintiffs' vehicles have significantly decreased in value. (*Id.*)

Plaintiffs seek redress individually and on behalf of those similarly situated for economic losses stemming from Defendants' manufacture or use of Defective Airbags in the Class Vehicles. Plaintiffs, on behalf of themselves and those similarly situated, seek to recover damages and statutory penalties, and injunctive relief/equitable relief. (*Id.*, ¶ 194.)

**LEGAL STANDARD**

10

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

A court reviewing a Rule 12(b)(6) motion to dismiss must construe the complaint in the light most favorable to the plaintiff and take all factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *Iqbal*, 556 U.S. at 678 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). A court's analysis "is limited primarily to the face of the complaint and the attachments thereto." *Brooks*, 116 F.3d at 1368. The court may also consider other documents to be part of the pleadings if the plaintiff refers to the documents in the complaint and those documents are central to the plaintiff's claim. *Id.* at 1369.

## MEMORANDUM OF LAW

### I.    Plaintiffs Have Sufficiently Pleaded RICO Claims Against Takata and Honda.

Plaintiffs begin with their RICO claims, since these federal claims do not implicate the choice-of-law issues that Defendants prematurely raise. Plaintiffs, including both the Consumer Plaintiffs and Automotive Recycler Plaintffs, have alleged ample facts to state a plausible substantive RICO claim against Takata, pursuant to 18 U.S.C. § 1962(c) (Dkt. 579, ¶¶ 410-432), and plausible RICO conspiracy claims against Takata and Honda under § 1962(d) (*id.*, ¶¶ 433-443). To establish a federal RICO violation under 18 U.S.C. § 1962(c), a plaintiff "must satisfy four elements of proof: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006) (internal quotation marks omitted). To establish a RICO conspiracy under § 1962(d), "a plaintiff must show either agreement with the objective of the conspiracy or agreement to commit two racketeering predicates. Direct evidence of agreement is not necessary as the existence of

11

conspiracy may be inferred from the conduct of the participants." *Rajput v. City Trading, LLC*, 476 F. App'x 177, 180 (11th Cir. 2012) (quotation marks omitted). And under § 1964(c), a civil RICO plaintiff must also show "(1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation." *Williams*, 465 F.3d at 1282-83 (quotation marks omitted). All of these elements are adequately alleged in the Complaint.

Indeed, neither Takata nor Honda challenges the adequacy of Plaintiffs' allegations of a pattern of racketeering activity. Nor could they. The allegations painstakingly detail a decade-long scheme to defraud devised and furthered by use of the mails and wires, as Takata and Honda actively concealed the Inflator Defect from consumers and federal regulators to enrich themselves and avoid the costs associated with a massive recall. (Dkt. 579, ¶¶ 422-27, 434, 437-39.) Takata and Honda limit their attacks to the injury, proximate cause, enterprise, and conspiracy elements of Plaintiffs' claims. Given Defendants' effective concession that Plaintiffs have adequately alleged a pattern of racketeering activity, Rule 9's heightened pleading standards—which apply to allegations of mail and wire fraud but not to the other elements of a RICO claim—are irrelevant to Defendants' arguments.[4]

### A.    Plaintiffs adequately allege cognizable injuries to their property.

Plaintiffs allege that they have suffered numerous concrete injuries to their property as a result of Takata's and Honda's RICO violations. These injuries include overpayment for leased or purchased Class Vehicles (Dkt. 579, ¶¶ 73, 431(a), 431(b), 440(a)), the diminution in value of Class Vehicles (*id.*, ¶¶ 72, 431(c), 440(c)), and other out-of-pocket and loss-of-use expenses and costs stemming from compliance with recalls, such as paying for rental cars or other transportation arrangements and child care (*id.*, ¶ 74). Takata and Honda claim that none of

---

[4] *See D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 666 (2d Cir. 2014) ("In the RICO context, a plaintiff must plead predicate acts sounding in fraud or mistake according to the particularity requirement of Rule 9(b); for other elements of a RICO claim—such as non-fraud predicate acts or, as relevant here, the existence of an 'enterprise'—a plaintiff's complaint need satisfy only the 'short and plain statement' standard of Rule 8(a)."); *Associated Indus. Ins. Co. v. Advanced Mgmt. Servs., Inc.*, No. 12-80393-CIV, 2014 WL 1237685, at *7 (S.D. Fla. Mar. 26, 2014) ("Rule 9(b)'s particularity requirement does not apply to RICO conspiracy claims."); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293-96 (11th Cir. 2010) (evaluating RICO conspiracy allegations under Rule 8(a) rather than Rule 9(b)); *Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288, 1291-93 (S.D. Fla. 2008) (evaluating nonfraud elements of a RICO conspiracy claim under Rule 8(a) rather than Rule 9(b)).

these monetary injuries are cognizable under RICO.  (Dkt. 616 [Honda] at 7-9; Dkt. 622 [Takata] at 6-10.)  This Court and many others have firmly held otherwise.

Indeed, this Court properly rejected the same exact argument in *Managed Care*, 150 F. Supp. 2d 1330, 1337-40 (S.D. Fla. 2001) which, tellingly, neither Takata nor Honda acknowledge.  In that case, the plaintiffs alleged "that they were fraudulently induced to subscribe to managed care coverage that had a market value less than what Plaintiffs bargained for, namely, a policy which would not be subject to Defendants' undisclosed fiscal policies."  *Id.* at 1338.  The defendants argued "that the Plaintiffs lack standing to bring their RICO claims because the Plaintiffs' allegations that they have been injured by paying more for insurance coverage than they would have . . . is an injury too speculative in fact and unfounded in theory to confer standing."  *Id.* at 1337.  The respective positions taken in *Managed Care* mirror the positions taken here.  Plaintiffs in this case allege that they were induced to pay for Class Vehicles that had a market value less than what Plaintiffs bargained for, namely a vehicle with a non-defective airbag.  (Dkt. 579, ¶¶ 431(a), 431(b), 440(a).)  And Takata and Honda argue here that Plaintiffs' allegations that they overpaid for their vehicles and that their vehicles diminished in value are "too speculative" to state a claim.  (Dkt. 616 [Honda] at 8; Dkt. 622 [Takata] at 8.)  Unsurprisingly, the authorities that defendants in *Managed Care* relied on, such as *Maio v. Aetna, Inc.*, 221 F.3d 472 (3d Cir. 2000), which, in turn, relied on *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir.1994), and *Oscar v. University Students Co–operative Ass'n*, 965 F.2d 783, 785 (9th Cir.1992), are the same authorities that Takata and Honda invoke (Dkt. 616 [Honda] at 7-8; Dkt. 622 [Takata] at 7-8.)

This Court correctly refused to follow these authorities in *Managed Care*, concluding that "the *Maio* court took an overly restrictive view of property rights and overlooked the distinction between business-related torts and contract breaches.  Section 1964(c), which accords relief to '[a]ny person injured in his business or property by reason of a violation of Section 1962,' is not so confined."  150 F. Supp. 2d at 1338. Instead, this Court relied on the Supreme Court's decision in *Reiter v. Sonotone Corp.*, 442 U.S. 330, 338 (1979), reasoning that "money is a form of property," and "'[a] person whose property is diminished by a payment of money wrongfully induced is injured in his property.'"  150 F. Supp. 2d at 1338 (quoting *Retier*, 442 U.S. at 338).

Based on this sound reasoning, this Court held that the plaintiffs in *Managed Care* "alleged facts sufficient to maintain standing to bring [their] claims," *Id.* at 1339, and should do so again here.[5]

As this Court recognized in *In re Managed Care*, 150 F. Supp. 2d at 1338, this issue is squarely controlled by *Reiter*, 442 U.S. at 338, which the decisions that Takata and Honda cite hardly address, if at all.   In *Reiter*, which interpreted the identical "injury to business or property" language of Section 4 of the Clayton Act, 15 U.S.C. § 15, the Supreme Court expressly held that "a consumer . . . acquiring goods or services for personal use[] is injured in 'property' when the price of those goods or services is artificially inflated by reason of the anticompetitive conduct complained of."  *Id.* at 339; *see also id.* at 342 ("[W]here petitioner alleges a wrongful deprivation of her money because the price of the hearing aid she bought was artificially inflated by reason of respondents' anticompetitive conduct, she has alleged an injury in her 'property' under § 4.").  Because "the civil action provision of RICO was patterned after the Clayton Act," *Agency Holding Corp. v. Malley-Duff & Assoc.*, 483 U.S. 143, 150 (1987), and in fact uses the same "injury to business or property" language, it follows that a consumer acquiring goods or services "is injured in 'property' when the price of those goods or services is artificially inflated by reason of the [racketeering] conduct complained of," *Reiter*, 442 U.S. at 339.[6]  As Plaintiffs have alleged that they "overpa[id] for leased or purchased Class Vehicles," i.e. the price of the Class Vehicles they leased or purchased was "artificially inflated," and the value of their property has been "diminished" (*e.g.,* Dkt. 579, ¶¶ 34, 72-74, 431, 440), Plaintiffs have adequately stated claims for property injuries under RICO.

Numerous courts have reached the same conclusion as this Court did when confronted with similar allegations of injury in RICO actions.   *See, e.g., In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 59 (2d Cir. 1998) ("[T]he investors sustained recoverable out-

---

[5] Takata and Honda also heavily rely on *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 155 F. Supp. 2d 1069 (S.D. Ind. 2001), but that decision relies on the same authorities that this Court persuasively distinguished in *Managed Care* fails to consider the Supreme Court's decision in *Reiter*, and directly conflicts with *Managed Care*., which the Indiana court expressly declined to follow, 155 F. Supp. 2d at 1091 n. 25.  This Court should follow its own precedent and reject the unpersuasive and obsolete *In re Bridgestone*.

[6] *See also Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 267-68 (1992) (interpreting "by reason of" language in RICO to have the same meaning as the same language in the Clayton and Sherman Acts).

of-pocket losses when they invested; namely, the difference between the value of the security they were promised and the one they received which could not meet those objectives."); *Bowe v. Public Storage*, --- F.Supp.3d ----, No. 14–cv–21559, 2015 WL 3440418, *9 (S.D. Fla. May 19, 2015) (recognizing that a motion to dismiss should be denied when "allegations were sufficient to show that plaintiffs had suffered an injury by paying more for a service than its actual value"); *Bailey v. Atlantic Automotive Corp.*, 992 F.Supp.2d 560, 580 (D. Md. 2014) (denying motion to dismiss because "allegations that one was overcharged for a car as a result of a fraudulent scheme to conceal the car's true history, and thus its actual market value, could be found to present a claim for a concrete financial loss"); *Winger v. Best Buy Co., Inc.*, No. CV 10–923, 2011 WL 995937, *3 (D. Ariz. Mar. 21, 2011) ("Plaintiff alleges that she was misled by Best Buy's misrepresentations, causing her to overpay for her speakers.  As such, the Court finds that Plaintiff has sufficiently alleged a concrete financial loss."); *Holland v. Cole Nat. Corp.*, No. 7:04-CV-246, 2005 WL 1242349, *5 (W.D. Va. May 24, 2005) (denying motion to dismiss because "having to pay an additional amount because of the fraud of defendants is a long-recognized element of injury") (quotation marks omitted).

In addition, Defendants cannot seriously dispute that other costs and expenses incurred as a direct result of the Inflator Defect and associated recalls are cognizable injuries to property. Indeed, Honda does not even address this category of damages, focusing exclusively on the overpayment and diminution-in-value allegations.  (Dkt. 616 [Honda] at 7-9.)  And Takata only reluctantly complains in a footnote that the allegations do not contain enough facts.  (Dkt. 622 [Takata] at 9 n.7.)  But several Plaintiffs provided specific examples of incurring such costs and expenses (Dkt. 579, ¶¶ 113, 119, 159), and the general factual allegation that Plaintiffs were required to "tak[e] time off from work, pay[] for rental cars or other transportation arrangements, and child care" (*id.*, ¶ 74), is plausible as a matter of "common sense," *Iqbal*, 556 U.S. at 679, and thus must be accepted as true at this stage.

Further, contrary to Takata's and Honda's claims, Plaintiffs' allegations of overpayment and diminution-in-value injury are more than sufficient to satisfy Rule 8's plausibility standard. Not one Defendant contests the plausibility of Plaintiffs' detailed description of the Inflator Defect; nor could they, as each Defendant has conceded the existence and seriousness of the defect in regulatory filings.  (Dkt. 579, ¶¶ 202-308.)  Because Plaintiffs have presented "detailed, non-conclusory factual allegations of the product defect, the economic loss injury flows from the

plausibly alleged defect at the pleadings stage." *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1166 (C.D. Cal. 2011).  Simply put, it is a truism that "[a] vehicle with a defect is worth less than one without a defect." *Id.* at 1163; *see also Bailey,* 992 F.Supp.2d at 577, 580 (holding that plaintiffs adequately pled an injury because she alleged that "she was overcharged for the Vehicle" based on defendant's misrepresentations); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1369 (N.D. Ga. 2013) (holding that plaintiffs adequately pled injury by alleging that "they expected to receive vehicles free from design or manufacturing defects and that they would not have purchased their vehicles had they known of the defect" and that they "'received [vehicles] that [have] a diminished value for what [they] believed he had paid for and purchased'").

Nor does the existence of the recalls negate Plaintiffs' damages claims, as Honda suggests. (Dkt. 616 [Honda] at 8.)  Plaintiffs have alleged that the recalls are inadequate for several reasons, including that the recalls will take several years to complete (Dkt. 579, ¶¶ 312-13), replacement vehicles are not being provided to consumers who must drive dangerous vehicles while they wait for recalls (*id.*, ¶¶ 325-27), not all Defective Airbags are being replaced (*id.*, ¶¶ 321-24), and even those Defective Airbags that are being replaced are being replaced by airbags that are themselves defective (*id.*, ¶¶ 328-29).  Moreover, the recalls do not compensate Plaintiffs for the amount that they overpaid for their vehicles at the point of sale, or their vehicles' diminution in value resulting from the stigma now attached to vehicles equipped with Takata airbags.  (*Id.*, ¶¶ 72-187.)  The recalls do nothing to undermine Plaintiffs' damages claims.

### B.      Plaintiffs adequately allege proximate cause.

Takata and Honda both claim that their racketeering violations did not proximately cause Plaintiffs' injuries.  (Dkt. 616 [Honda] at 8-9; Dkt. 622 [Takata] at 10-13.)  Their arguments, however, rest on a misunderstanding of prevailing law and the nature of Plaintiffs' claims.

It is undisputed that the "by reason of" language of § 1964(c) requires a civil RICO plaintiff to establish "proximate cause."  *See Holmes*, 503 U.S. at 268.  The Supreme Court has "use[d] 'proximate cause' to label generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts, with a particular emphasis on the demand for some direct relation between the injury asserted and the injurious conduct alleged." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008) (quotation marks omitted).  The "central question [a court] must ask is whether the alleged violation led directly to the plaintiff's

injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).  Here, the undeniable answer is yes.

Each Plaintiff has alleged that he or she would not have purchased the Class Vehicle or would not have paid as much for it had he or she been made aware of the problems associated with the Inflator Defect.  (Dkt. 579, ¶¶ 76-187.)  Such first-party reliance on a defendant's scheme to defraud is by itself sufficient to establish proximate cause.  *See Bridge*, 553 U.S. at 659 (observing that "[p]roof that the plaintiff relied on the defendant's misrepresentations may in some cases be sufficient to establish proximate cause"); *see also Minter v. Wells Fargo Bank, N.A.*, 274 F.R.D. 535, 546 (D. Md. 2011) (allowing plaintiff to establish proximate cause through inference that class members were harmed because they relied on lender's "façade of legitimacy"); *Robinson v. Fountainhead Title Grp. Corp.*, 257 F.R.D. 92, 95 (D. Md. 2009) ("In this case, after *Bridge*, Plaintiff need only show reliance on the scheme, not necessarily on any particular fraudulent mailing or misrepresentation.").  Likewise, Plaintiffs' allegations of third-party reliance—here, NHTSA's reliance on Takata's and Honda's misrepresentations and omissions regarding the nature and extent of the Inflator Defect—are sufficient to establish proximate cause.  *See Bridge*, 553 U.S. at 657-59.

Takata nonetheless claims that the Supreme Court's decisions in *Anza* and *Holmes*, in which the Court held that proximate cause was not established, support its defense that its deceptive conduct did not directly cause Plaintiffs' injuries.  But this case is nothing like *Anza* and *Holmes*.  In fact, the Supreme Court's reasoning for distinguishing those decisions in *Bridge* applies with equal or greater force here.  As in *Bridge*, Plaintiffs' "alleged injury—[overpayment for Class vehicles, diminution in value of Class vehicles, and other recall-induced costs and expenses]—is the direct result of petitioners' fraud."  553 U.S. at 658.  These injuries are the "foreseeable and natural consequence" of Takata's and Honda's RICO violations.  *Id.*  "And here, unlike in *Holmes* and *Anza*, there are no independent factors that account for [Plaintiffs'] injury, there is no risk of duplicative recoveries by plaintiffs removed at different levels of injury from the violation, and no more immediate victim is better situated to sue."  *Id.*  Just as in *Bridge*, therefore, the proximate cause element here is satisfied.

Takata and Honda also claim that the real cause of Plaintiffs' injuries is the Inflator Defect itself, not Defendants' RICO violations.  (Dkt. 616 [Honda] at 8-9; Dkt. 622 [Takata] at 10-11.)  But this argument ignores Plaintiffs' allegations, an impermissible tactic at the motion-

17

to-dismiss stage.  Plaintiffs allege that they would not have purchased their Class Vehicles or would not have paid as much for their vehicles had Defendants not concealed the nature and extent of the Inflator Defect.  (Dkt. 579, ¶¶ 76-187.)  These are not "legal conclusions" that the Court may disregard, *Iqbal*, 553 U.S. at 678, but instead are factual allegations describing Plaintiffs' purchase decisions, i.e. they state "simply, concisely, and directly events that . . . entitle[] [Plaintiffs] to damages from [Defendants]," and thus must be accepted as true at this stage, *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014).  Given these allegations, the Inflator Defect alone did not cause Plaintiffs' RICO injuries, because Plaintiffs would not have purchased the vehicles in the first place, or would have paid the appropriate price for the vehicles, if not for Defendants' RICO violations, and thus would not have suffered the monetary damages they seek to recover under RICO.  In sum, each Plaintiff specifically alleges that he or she was directly injured "by reason of" Takata's and Honda's RICO violations.

## C.     Plaintiffs adequately allege a RICO enterprise.

Takata, but not Honda, claims that Plaintiffs fail to allege an adequate RICO enterprise. (Dkt. 622 [Takata] at 13-15.)   Takata relies primarily on unpersuasive and distinguishable Seventh Circuit decisions that do not survive, or are inconsistent with, the Supreme Court's decision in *Boyle v. United States*, 556 U.S. 938 (2009).  Under prevailing Eleventh Circuit law, which is in accord with *Boyle*, Plaintiffs have more than adequately alleged an "association-in-fact" RICO enterprise.

In *Boyle*, the Court explained that the definition of an enterprise, which includes "any union or group of individuals associated in fact although not a legal entity," 18 U.S.C. § 1961(4), "is obviously broad," for "[t]he term 'any' ensures that the definition has a wide reach, and the very concept of an association in fact is expansive."  556 U.S. at 944 (citations omitted).  A RICO enterprise, the Court reiterated, "reaches 'a group of persons associated together for a common purpose of engaging in a course of conduct.'"  *Id.* (quoting *United States v. Turkette*, 452 U.S. 576, 580 (1981)).  Thus, a RICO enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."  *Turkette*, 452 U.S. at 583.  But, the Court further explained, to satisfy these requirements, "a group need not have a hierarchical structure or a 'chain of command'; decisions may be made on an ad hoc basis and by any number of methods. . . .Members of the group need not have fixed roles. . . .[And] [t]he group need not have a name, regular meetings, dues,

established rules and regulations, disciplinary procedures, or induction or initiation ceremonies." *Boyle*, 556 U.S. at 948.

Consistent with *Boyle*, the Eleventh Circuit "has never required anything other than a 'loose or informal' association of distinct entities" to establish an enterprise.  *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1284 (11th Cir. 2006).  In *Williams*, the court held that the complaint sufficiently alleged an enterprise based on allegations that "[the defendant] and the third-party recruiters are distinct entities that . . . are engaged in a conspiracy to bring illegal workers into this country for [the defendant's] benefit."  *Id.*

Plaintiffs' allegations far exceed those that the Eleventh Circuit deemed sufficient in *Williams*.  Plaintiffs allege that the "Takata RICO Enterprise" consists of the Takata corporations, those corporations' officers, executives, and engineers, the Vehicle Manufacturer Defendants, and the dealerships that sell vehicles manufactured by the Vehicle Manufacturer Defendants.  (Dkt. 579, ¶ 414.)  Plaintiffs also describe—in detail—the roles that each of these distinct entities and individuals played in the enterprise: the Takata corporations designed, manufactured, and sold Defective Airbags, knowing and concealing that they contained the Inflator Defect; Takata's officers, executives, and engineers collaborated and colluded with each other to conceal the Inflator Defect; the Vehicle Manufacturer Defendants purchased the airbags from Takata and equipped their vehicles with Defective Airbags, and falsely represented that their vehicles were safe; and dealerships sold or leased vehicles containing Defective Airbags and install replacement airbags in vehicles that still contain the Inflator Defect.  (*Id.*)  Further, Plaintiffs allege that "[t]he members of the Takata RICO Enterprise all served a common purpose: to sell as many airbags, and vehicles containing such airbags, as possible, and thereby maximize the revenue and profitability of the Takata RICO Enterprise's members."  (*Id.*, ¶ 418.)

There is no doubt that the members of the Takata RICO Enterprise are "distinct entities." *Williams*, 465 F.3d at 1284.  Further, "[b]ecause the complaint clearly alleges that the members of the enterprise stand to gain sufficient financial benefits from [the sale of airbags and vehicles containing such airbags and the concealment of the Inflator Defect], [Plaintiffs] have properly alleged a 'common purpose' for the purposes of RICO."  *Id.* at 1284-85.

Takata claims that Plaintiffs' allegations are nonetheless inadequate because they do not allege an enterprise that is "'meaningfully different from the units that go to make it up.'"  (Dkt. 622 [Takata] at 14 (quoting *Richmond v. Nationwide Cassel L.P.*, 847 F. Supp. 88, 91 (N.D. Ill.

1994).)   But neither the Supreme Court nor the Eleventh Circuit has recognized such a requirement, in essence, a second "distinctiveness" element.   Rather, the Eleventh Circuit has held that "the definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate crimes, that is, the pattern of racketeering activity requisite to the RICO violation." *United States v. Goldin Indus., Inc.*, 219 F.3d 1271, 1275 (11th Cir. 2000).[7]   The Eleventh Circuit has also recognized that "the enterprise itself can be a passive instrument or victim of the racketeering activity." *Id.* at 1270.  Given Plaintiffs' allegations that the members of the Takata RICO Enterprise are distinct entities associated in fact with a common purpose, nothing more is required.  *Boyle*, 556 U.S. at 946.

In any event, Plaintiffs have alleged that members of the Takata RICO Enterprise engaged in "more than the performance of ordinary business functions." *Mitchell Tracey v. First Am. Title Ins. Co.*, 935 F. Supp. 2d 826, 844 (D. Md. 2013).   Plaintiffs allege that Takata conducted the affairs of the Takata RICO Enterprise through a pattern of racketeering activity that neither Takata nor Honda challenges.  (Dkt. 579, ¶¶ 426-30.)  "Such unlawful acts are not conducted in the ordinary course of business. Thus, the Plaintiffs have also alleged a pattern of racketeering by [the members of the Takata RICO Enterprise] that existed apart from a normal business relationship and is distinct from the enterprise." *Mitchell Tracey*, 935 F. Supp. 2d at 844.   Indeed, Plaintiffs' allegations are indistinguishable from those that this Court deemed sufficient to satisfy the enterprise element (and all other RICO elements) in *Jackson v. U.S. Bank, N.A.*, 44 F. Supp. 3d 1210, 1218 (S.D. Fla. 2014).  *Accord Montoya v. PNC Bank, N.A.*, ---F. Supp. 3d---, No. 14-20474-CIV, 2015 WL 1311482, at *19 (S.D. Fla. Mar. 23, 2015).

---

[7] In embracing this prevailing interpretation of a RICO enterprise, the Eleventh Circuit has rejected the Seventh Circuit's unduly narrow view, upon which Takata relies. *See Williams*, 465 F.3d at 1285 (recognizing a conflict with the Seventh Circuit's restrictive view of an enterprise).

### D. Plaintiffs adequately allege a RICO conspiracy.

Honda, but not Takata, claims that Plaintiffs have failed to allege a RICO conspiracy. (Dkt. 616 [Honda] at 2-7.)  Its argument, however, rests on an argumentative narrative that is completely inconsistent with the allegations in the complaint, and thus must be rejected out-of-hand at this stage of the litigation.[8]

"A RICO conspiracy differs from an ordinary conspiracy in two respects: it need not embrace an overt act, and it is broader and may encompass a greater variety of conduct." *United States v. Pepe*, 747 F.2d 632, 659 (11th Cir.1984) (footnotes omitted).  "A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts."  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) (quotation marks omitted).  With that said, "[a] plaintiff need not offer direct evidence of a RICO agreement; the existence of conspiracy may be inferred from the conduct of the participants."  *Id.* at 1293 (quotation marks omitted); *accord Associated Indus. Ins. Co. v. Advanced Mgmt. Servs., Inc.*, No. 12-80393-CIV, 2014 WL 1237685, at *7 (S.D. Fla. Mar. 26, 2014) ("Although alleging an agreement to violate § 1962(a), (b) or (c) is essential to establishing a conspiracy claim under § 1962(d), proof of such a claim is often established by circumstantial evidence of a scheme or inferences from the conduct of the alleged participants.").  Here, Plaintiffs have alleged an agreement to violate § 1962(c) and detailed more than a decade of nefarious, deceptive conduct from which only a conspiracy can be inferred at this stage of the litigation.

In particular, the Complaint expressly alleges that Honda and Takata "agreed and conspired to violate 18 U.S.C. § 1962(c), that is, agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the Takata RICO Enterprise through a pattern of racketeering activity."  (Dkt. 579, ¶ 435.)  That express allegation, in turn, is supported with an abundance of specific, detailed instances of Honda and Takata "delay[ing] and/or prevent[ing] the release of inculpatory information, [and] misl[eading] regulatory authorities."  (*Id.*, ¶ 436.)  For example, the Complaint alleges that:

---

[8] It bears repeating that, contrary to Honda's suggestion (Dkt. 616 [Honda] at 3), Rule 9's heightened pleading standards do not apply to Plaintiffs' conspiracy allegations; only Rule 8's plausibility standard does.  *See* note 4, *supra*.

- "Honda was aware of Takata's secret testing" in 2004, the evidence of which Takata destroyed (*id.*, ¶¶ 438(b));

- Honda and Takata jointly deemed a 2004 violent explosion of a Defective Airbag "an anomaly" and "did not issue a recall or even involve federal safety regulators beyond completing a reporting form in a cursory and incomplete manner" (*id.*, ¶ 228);

- "Honda and Takata again chose to keep vitally important safety-related information between only the two of them" following a 2007 "failure mode analysis" designed to "divert the attention of regulators and the public" (*id.*, ¶ 438(c));

- despite being aware of the severity of the danger the Inflator Defect posed to millions of consumers, Honda did not compel Takata to expedite its investigation of the defect, as it "already knew the airbags were defective" (*id.*, ¶ 438(e));

- in 2008, Honda "falsely assured regulators that it had identified all 'possible vehicles that could potentially experience the problem'" (*id.*, ¶ 239);

- in a 2009 joint letter to NHTSA, "Honda and Takata, in concert, knowingly and consciously omitted and withheld crucial information from government regulators in order to prevent regulatory action that likely would have resulted in a broader recall and possibly regulatory sanctions" (*id.*, ¶ 438(f));

- in 2009, 2010, and 2011, Honda and Takata issued recalls "in a limited and misleading way" (*id.*, ¶ 15), "misleadingly focus[ing] on the manufacturing process" (*id.*, ¶ 263);

- and in late 2014, "Honda ultimately admitted that it failed to report 1,729 serious accidents resulting in injuries or deaths to NHTSA between 2003 and 2014," and "agreed to pay a $70 million fine for this startling failure" (*id.*, ¶ 270).

These detailed factual allegations, among many others in the Complaint, give rise to the reasonable inference—which is all that is necessary to move forward at this stage—that Honda and Takata "agreed to the overall objective of the conspiracy"—to conceal and deceive consumers, including Plaintiffs, and regulators about the Inflator Defect—and that Honda, itself, "commit[ted] [at least] two predicate acts [of mail or wire fraud]."   *Cigna*, 605 F.3d at 1293. Because Plaintiffs have alleged an agreement between Takata and Honda to violate § 1962(c)

22

and have also "made detailed factual allegations . . . illustrating how [Takata and Honda] interacted with each other as evidence of their conspiracy," Plaintiffs have adequately alleged the existence of a conspiracy under § 1962(d). *Associated Indus. Ins. Co.*, 2014 WL 1237685, at *8; *see also Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1353 (11th Cir. 2008) ("[P]articipation in a conspiracy may be inferred merely from acts which furthered its object."); *United States v. Elliott*, 571 F.2d 880, 903 (5th Cir.1978) ("Where . . . the evidence establishes that each defendant, over a period of years, committed several acts of racketeering activity in furtherance of the enterprise's affairs, the inference of an agreement to do so is unmistakable."); *Coquina Investments v. Rothstein*, No. 10-60786-CIV, 2011 WL 197241, at *5 (S.D. Fla. Jan. 20, 2011) (holding that a RICO conspiracy was adequately pled based on specific allegations of the defendant's predicate acts).

Honda's self-serving version of events is that it did nothing more than "shar[e] information about an incident" and "try[] to help a supplier get to the bottom of a problem in the field." (Dkt. 616 [Honda] at 4.) But that narrative, more appropriate for a closing argument than a motion to dismiss, completely ignores the Complaint's detailed and contrary factual allegations discussed above, which must be accepted as true at this stage. Indeed, in claiming that Plaintiffs' allegations "are entirely consistent with Honda's reliance on and cooperation with Takata's investigation into the root cause of the malfunction of Takata's inflators," Honda fails to mention the vast majority of the allegations highlighted above. (Dkt. 616 [Honda] at 4 (ignoring ¶¶ 15, 239, 263, 270, 438(b), 438(e) and most of ¶¶ 438(c) and 438(f)).) Crediting the veracity of these allegations, as the Court must, it would be patently unreasonable to infer, as Honda requests, that Takata and Honda benignly cooperated "to understand and fix a very real problem." (*Id.* at 6.) Instead, the most compelling inference—but at a minimum, a plausible inference, which is all that is required at this stage—is that the two companies were well aware of the extent and nature of the Inflator Defect and agreed and worked together to conceal it for as long as possible.

Given the detailed factual allegations discussed above, this case is nothing like *Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp.2d 1288 (S.D. Fla. 2008), or *In re Managed Care Litigation*, No. 00-1334-MD, 2009 WL 812257 (S.D. Fla. Mar. 26, 2009), upon which Honda heavily relies. The plaintiffs in those cases merely alleged "parallel conduct" and an "opportunity to conspire" to support their conclusory allegations of an agreement among the defendants. *In re Managed Care*, 2009 WL 812257 at *5-*6; *Solomon*, 574 F. Supp. 2d at 1292.

Here, in contrast, as discussed above, Plaintiffs have pled factual allegations detailing Takata's and Honda's close working relationship and joint—not parallel—conduct in concealing the Inflator Defect.  (Dkt. 579, ¶¶ 15, 228, 239, 263, 270, 436-38.)  To the extent that Defendants suggest that Plaintiffs were required to precisely allege exactly how and when Honda agreed to violate RICO (Dkt. 616 [Honda] at 6), they are clearly mistaken, as the Eleventh Circuit has held that "[a] plaintiff need not offer direct evidence of a RICO agreement; the existence of conspiracy may be inferred from the conduct of the participants."  *Cigna*, 605 F.3d at 1293 (quotation marks omitted).

Takata's and Honda's motions to dismiss the adequately pled RICO claims against them should be denied.

## II.    Defendants Misapprehend The Choice-Of-Law Issues.

Defendants moved to dismiss or strike Plaintiffs' nationwide class claims for (1) unjust enrichment,[9] (2) fraudulent concealment,[10] (3) negligence,[11] (4) violations of state consumer protection and implied warranty laws,[12] and (5) Plaintiffs' near-nationwide claim for breach of implied warranty under Magnuson-Moss,[13] based on choice-of-law issues.[14]  This Court should decline Defendants' invitation to engage in a premature and unnecessary choice-of-law analysis and follow the majority of courts that defer these issues until class certification.  *See* Section II.A., *infra*.  Even if the Court were to conduct a choice-of-law analysis now, dismissal of Plaintiffs' national class (or near-national class) claims is not warranted.  These claims are either governed by law that is materially uniform throughout the United States (*see* Section II.B, *infra*), governed by the law of each Defendant's home state (*see* Section II.C, *infra*), or can be

---

[9] Counts 6, 11, 18, 22, 27, 34, 38, 42 (Dkt. 579, ¶¶ 483-88; 545-50; 636-41; 683-88; 745-50; 836-41; 883-88; 936-43.).

[10] Counts 4, 9, 16, 20, 25, 32, 36, 40 (Dkt. 579, ¶¶ 463-76; 517-30; 616-29; 663-76; 717-30; 816-29; 863-76; 910-23).

[11] Counts 8, 15, 24, 31, 46 (Dkt. 579, ¶¶ 510-16; 609-15; 710-16; 809-15; 1002-08).

[12] Counts 5, 7, 10, 12-14, 17, 19, 21, 23, 26, 28-30, 33, 35, 37, 39, 41, and 43-45 (Dkt. 579, ¶¶ 477-82; 489-509; 531-44; 551-608; 630-35; 642-62; 677-82; 689-709; 731-44; 751-808; 830-35; 842-62; 877-82; 889-909; 924-37; 944-1001).

[13] Count 3 (Dkt. 579, ¶¶ 444-62).

[14] (Dkt. 608 [Mazda] at 5-8; Dkt. 612 [Ford] at 11-14, 19, 22-23; Dkt. 614 [Toyota] at 9-13; Dkt. 615 [Subaru] at 9-15; Dkt. 616 [Honda] at 14-17; Dkt. 619 [Nissan] at 5-7; Dkt. 622 [Takata] at 4-5, 24, 29; Dkt. 625 [BMW] at 6-14.)

subclassed into manageable groups of materially uniform state laws (*see* Section II.D, *infra*). Finally, class claims implicating a particular state's law should not be dismissed simply because there is no named plaintiff from that state.  *See* Section II.E, *infra*.

> ### A.  This Court should follow the majority of courts and reserve judgment on choice-of-law issues until class certification.

Courts, including those in this District, routinely observe that it is neither necessary nor appropriate to conduct any choice-of-law analysis at the motion-to-dismiss stage.  *See, e.g.*, *Steinberg v. A Analyst Ltd.*, No. 04–60898, 2009 WL 806780, at *7 (S.D. Fla. Mar. 26, 2009) (observing that "it is premature to undertake a choice of law analysis at the motion to dismiss stage of the proceedings"); *see also In re ConAgra Peanut Butter Prods. Liab. Litig.*, MDL No. 1845, 2008 WL 2132233, at *1-2 (N.D. Ga. May 21, 2008) ("[I]t is appropriate to wait until the class certification to fully explore the choice of law issues[.]").

Understandably, a choice-of-law analysis now is unnecessary and premature given that such an analysis is highly fact-dependent and the factual record has not yet been developed.  *See, e.g.*, *Calixto v. BASF Const. Chemicals, LLC*, No. 07-60077-CIV, 2008 WL 2490454, at *4 (S.D. Fla. June 19, 2008) (rejecting defendants' argument at motion-to-dismiss stage that the court should determine the state with the "most significant relationship" under Florida choice-of-law rules without a sufficient factual record).

At a minimum, contrary to Defendants' requests (*e.g.*, Dkt. 616 [Honda] at 14-15; Dkt. 622 [Takata] at 24), no claims should be dismissed simply based on choice-of-law considerations.  Rule 8 permits Plaintiffs' class claims to be pled on alternative bases.  *See* Fed. R. Civ. P. 8(d)(2).  For example, Plaintiffs' nationwide fraudulent concealment claims against Honda are first alleged under "the common law of fraudulent concealment" because "there are no true conflicts among various states' laws of fraudulent concealment," and then, in the alternative, under California law because California has the most significant relationship to the issues and facts relevant to the claim, and as a final alternative, "under the laws of the states where Plaintiffs and Class Members reside and/or purchased their Class Vehicles."  (Dkt. 579, ¶ 517.)[15]  Thus, even if the Court ultimately were to conclude that the applicable law is not

---

[15] Ford faults Plaintiffs for pleading in the alternative in this manner (Dkt. 612 at 10 n.5), but the Federal Rules of Civil Procedure specifically allow for pleading in the alternative.  Fed. R. Civ. P. 8(d)(2).  In any event, Plaintiffs have exceeded federal pleading requirements because "plaintiffs need not set forth their choice of law contentions in their complaint."  *Hurst v.*

uniform, or that the law of the state that has the most significant relationship may not be applied to the claims of a nationwide class, Plaintiffs will still have viable claims against Defendants based on the laws of the states where Plaintiffs reside and/or purchased their Class Vehicles. Those claims may then be appropriately subclassed for certification and trial. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1261-62 (11th Cir. 2004) ("[I]f the applicable state laws can be sorted into a *small number* of groups, each containing materially identical legal standards, then certification of subclasses embracing each of the dominant legal standards can be appropriate."). Accordingly, it is neither necessary nor appropriate to dismiss any claims at this stage based on choice of law.

> **B.     In any event, no choice-of-law analysis is required for Plaintiffs' unjust enrichment and fraudulent concealment claims because the law governing these claims is materially uniform throughout the United States.**

In a choice-of-law analysis, an MDL court typically first determines whether various state laws that might apply to the claims raised are materially uniform, or whether they contain outcome-dispositive conflicts with each other. *See, e.g.*, *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1336-37 (S.D. Fla. 2002) (noting that a choice-of-law analysis is only required where there are conflicts among the state laws involved); *see also Hatton v. Chrysler Canada, Inc.*, 937 F. Supp. 2d 1356, 1367-68 (M.D. Fla. 2013) (applying Florida choice-of-law rules and noting that a choice-of-law analysis "is required only if the case involves a 'true' conflict," that is "when two or more states have a legitimate interest in a particular set of facts in litigation and the laws of those states differ or would produce a different result") (quotation marks omitted).  If no "true" outcome-dispositive conflict exists, the court will apply one state's law to the claim, typically the law of the forum state.  *See, e.g.*, *Pa. Employee Benefit Trust Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 477 & n.9 (D. Del. 2010) (collecting cases).  In this case, the law applicable

---

*Socialist People's Libyan Arab Jamahiriya*, 474 F. Supp. 2d 19, 27 (D.D.C. 2007).  Nor, contrary to Ford's suggestion, is the presence of alternative allegations the equivalent of a prohibited "shotgun pleading."   As the Eleventh Circuit recently clarified in exhaustive detail, an impermissible shotgun pleading is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."  *Weiland v. Palm Beach Cnty. Sheriff's Office*, No. 13-14396, ---F.3d---, 2015 WL 4098270, at *5 (11th Cir. July 8, 2015).   The operative complaint here does not make that mistake, and thus is not an impermissible shotgun pleading.

to Plaintiffs' nationwide class claims for unjust enrichment and fraudulent concealment is materially uniform throughout the United States; therefore, this Court may apply Florida law to those claims.  *See id.*

      1.    <u>The law governing unjust enrichment is materially uniform throughout the United States.</u>

The fundamental equitable principle that a person who has been unjustly enriched at the expense of another is required to make restitution to the other is the same now as it was almost 75 years ago.  *Compare* Restatement (First) of Restitution § 1 (1937) *with* Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011).[16]  It is not surprising, then, that this Court observed in *Managed Care* that the law of unjust enrichment is materially uniform throughout the United States, and therefore no further choice of law inquiry was necessary.  185 F. Supp. 2d. at 1336-37 (citing *Singer v. AT & T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla. 1998) for the proposition that unjust enrichment is a "universally recognized cause[] of action that [is] materially the same throughout the United States").  Cases in this District and elsewhere are in accord.  *See, e.g.*, *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 697 & n.40 (S.D. Fla. 2004) (certifying 19-state unjust enrichment class, including California, Florida, Michigan, and New York, after finding that "[t]he standards for evaluating each of the various states classes' unjust enrichment claims are virtually identical" and that minor variation in states' laws "present[ed] no obstacle to class certification"); *Singer*, 185 F.R.D. at 692 (certifying nationwide unjust enrichment class, stating that the elements of unjust enrichment claim were "materially the same throughout the United States"); *see also In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009) (finding that "there is no material conflict relating to the elements of unjust enrichment" of the 50 states and the District of Columbia and certifying a nationwide class).

Indeed, most recently, a court in this District certified a near-national class (48 states and DC) on an unjust enrichment claim, concluding that "[t]here is general agreement among courts that the minor variations in the elements of unjust enrichment under the laws of the various states

---

[16] According to the Restatement (First) of Restitution § 1 (1937), unjust enrichment is straightforward: "A person who has been unjustly enriched at the expense of another is required to make restitution to the other."  The language remains virtually the same today: "A person who is unjustly enriched at the expense of another is subject to liability in restitution."  Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011).

. . . are not material and do not create an actual conflict." *In re Checking Account Overdraft Litig.*, MDL No. 2036, 2015 WL 3551527, at *16 (S.D. Fla. June 8, 2015) (internal quotations omitted) (stressing the court's view that "unjust enrichment requires the same essential showing in every jurisdiction" but certifying two subclasses at plaintiffs' request).[17]

These decisions reflect the fact that a claim for unjust enrichment does not vary materially from state to state. *See, e.g.*, *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 330 (D.N.J. 2014) (applying forum state law to unjust enrichment claim in products liability context and noting that "many courts have suggested that there are no significant disparities in the unjust enrichment laws of the 50 states"); *In re J.P. Morgan Chase Bank Home Equity Line of Credit Litig.*, 794 F. Supp. 2d 859, 885 (N.D. Ill. 2011) (holding, in a consumer mortgage context, that despite minor differences in characterizations of the elements, California, Delaware, Minnesota, and Texas "all essentially require the inequitable or unjustified retention of a benefit or enrichment at the plaintiff's expense"); *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 723 (D.N.J. 2011) ("Numerous courts have held that unjust enrichment laws do not vary in any substantive manner from state to state."); *Zeneca, Inc.*, 710 F. Supp. 2d at 477 (determining that "the basic elements required under the [fifty] states' [unjust enrichment] laws do not create an actual conflict"); *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349, 359 (D.D.C. 2007) (approving settlement of nationwide unjust enrichment class based on finding that unjust enrichment laws of the fifty states involved "predominant common questions" and "minor

---

[17] Defendants' citation to *Kunzelmann v. Wells Fargo Bank, N.A.*, No. 9:11-CV-81373-DMM, 2013 WL 139913, at *1 (S.D. Fla. Jan. 10, 2013) (denying certification of a nationwide class on claims of unjust enrichment), is unpersuasive. In *Kunzelmann*, the court observed "significant" variations as to whether state laws: (1) require a "direct benefit;" (2) require a high degree of wrongful conduct, such as fraud that may be highly fact-specific; and (3) recognize the "unclean hands" defense, which must be evaluated on an individual-by-individual basis. *Id.* at *10-11 (stressing that case was premised on individual circumstances given that plaintiff and class members sought to recover insurance premiums paid by mortgage holder to affiliate where mortgage contained force-placed insurance provision). *Kunzelmann*, however, arguably misinterpreted Florida law on "direct benefit." *Compare id.* at *10 (stating that Florida's "direct benefit" requirement "require[s] a benefit to pass directly from the defendant to the plaintiff") *with Feiner v. Innovation Ventures LLC*, No. 12-62495-CIV, 2013 WL 2386656, at *5 (S.D. Fla. May 30, 2013) (denying motion to dismiss because the "direct benefit" requirement is satisfied even where plaintiff does not have direct contact with a defendant because "a consumer can confer a benefit on a manufacturer by purchasing one of the manufacturer's products through a retailer"). *See* Section IV.C, *infra*, for additional discussion of the "direct benefit" issue. The other purported material variations are irrelevant on the facts alleged here.

differences in state law" did not preclude a nationwide class).   Indeed, as one court recently noted, "several courts have recognized that a universal thread throughout all common law causes of action for unjust enrichment is a focus on the gains of the defendants." *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 136 (S.D.N.Y. 2014).

Defendants' purported variations in the law are minor, irrelevant, or incorrect.   For example, Defendants' arguments (*see* Dkt. 608 [Mazda] at 9; Dkt 612 [Ford] at 20; Dkt. 616 [Honda] at 21-22; Dkt. 619 [Nissan] at 23; Dkt. 622 [Takata] at 34) that California and Texas do not recognize unjust enrichment as a cause of action has been rejected by the Fifth and Ninth Circuits. *See* discussion at Section IV.B, *infra*.   The other purported variations in Defendants' cited authority are irrelevant here, such as the level of wrongful conduct by defendants (Plaintiffs allege the most culpable conduct: fraud), and whether plaintiffs have unclean hands (not even possible here).

> 2.   *The law governing fraudulent concealment is materially uniform throughout the United States.*

The law of fraudulent concealment is likewise materially uniform from state to state when applied to a case like this one.[18]   *See Ebin v. Kangadis Family Mgmt. LLC*, 45 F. Supp. 3d 395, 398-99 (S.D.N.Y. 2014) (certifying nationwide class asserting common law fraud claims).

In *Ebin*, plaintiffs brought a consumer class action against defendant for selling containers of "100% Pure Olive Oil" that actually contained olive-pomace oil.   *Id.*   Plaintiffs alleged claims for breach of express and implied warranties, deceptive acts under New York law, consumer fraud under New Jersey law, negligent misrepresentation, and fraud.   *Id.*   Plaintiffs sought to certify a nationwide class of all persons who purchased the olive oil packed before March 1, 2013.   The district court rejected defendants' argument that a nationwide class would implicate 50 differing state laws of fraud and negligent misrepresentation.   *Id.*   In granting the motion for class certification, the court explained:

> Although certain courts have held that cases which implicate the common  law of fraud are inappropriate for class resolution…this

---

[18] The elements of fraudulent concealment are: (1) omission or concealment of a material fact, (2) a duty to disclose that fact, (3) requisite level of knowledge that concealment of the fact may induce another to act or refrain from acting, (4) intention to induce the party claiming fraud to act or refrain from acting, (5) justifiable reliance, and (6) damages.  *See* Restatement (Second) of Torts §§ 525, 550-551 (1977).

> is not true in this instance, since here, the item purchased, by labeling itself as 100% Pure Olive Oil, in effect defined the product. Unlike most fraud and negligent misrepresentation claims, it is thus inconceivable that any individual would not have relied on the tin's labeling in its purchase, since otherwise the individual would merely be purchasing a random tin of unknown fluid. Thus, the Court finds that while some variation exists among states in the common law of fraud and negligent misrepresentation, when applied to the facts of this particular case any such variation is unlikely to lead to actual variation in adjudication of liability.

*Id*. The law of fraudulent concealment, when applied to the facts of this case, is likewise "unlikely to lead to actual variation in adjudication of liability." *Id.* A purchaser of a vehicle designed for the purpose of being driven on a day-to-day basis invariably relies on the vehicle to be safe for driving. It is inconceivable that any purchaser of a car would not have relied on the safe condition of that car and its safety systems before purchasing it. Accordingly, under these facts the material uniformity of fraudulent concealment obviates any need for a choice-of-law analysis.[19]

C. **If true conflicts of law exist, it would be appropriate to apply the law of each Defendant's home state to the nationwide class claims against each Defendant.**

Although it would be premature and unnecessary for this Court to conclusively address choice-of-law questions at this stage, if any true conflicts were found to exist, Plaintiffs submit that Florida's choice-of-law rules, not the rules of the transferor forums, should eventually be applied to Plaintiffs' claims, and under Florida's rules, it would be appropriate to apply the law of each Defendant's home state to some or all of the nationwide claims asserted against each Defendant. (Dkt. 579, ¶¶ 463-1008.)

Florida's choice of law rules should apply to Plaintiffs' state law claims, because this action, *Dunn v. Takata Corp.*, No. 14-cv-24009 (S.D. Fla.), was originally filed in this Court, and

---

[19] In any event, at the class-certification stage, Plaintiffs will proffer a trial plan showing that any variations in fraudulent concealment law are manageable. For example, Defendants contend that fraudulent concealment claims under Florida, Alabama, and Pennsylvania law require "clear and convincing evidence" whereas the law of California requires only a "preponderance." (Dkt. 608 at [Mazda] 5-6; Dkt. 615 [Subaru] at 8-9; Dkt. 616 [Honda] at 616; Dkt. 619 [Nissan] at 5-6.) Even if the Court were to find such a variation to be material, this purported difference could be easily managed by subclasses or special verdict. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1261-62 (11th Cir. 2004).

federal courts sitting in diversity apply the substantive laws, including choice of law rules, of their forum states.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1059 (11th Cir. 2007); *In re Trasylol Prods. Liab. Litig.*, MDL 1928, 2011 U.S. Dist. LEXIS 80447, *5 (S.D. Fla. July 13, 2011) (applying Florida choice of law rules to claims arising out injuries suffered in Virginia, where the plaintiff filed her suit directly in the MDL proceedings) (*citing In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903-04 (E.D. La. 2007)).   Moreover, Defendants have insisted that the Second Amended Consolidated Class Action Complaint supersedes all of the various individual actions previously pending in this Court after having been transferred by the JPML (Dkt. 591), and Plaintiffs expressly allege that the Complaint supersedes and amends the original complaint filed in *Dunn v. Takata Corp.*, No. 14-cv-24009 (S.D. Fla.) (Dkt. 579, ¶ 39).   This Court may therefore treat the Complaint "as merging the discrete actions for the duration of the MDL pretrial proceedings." *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 904 (2015) (citing *In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 590-592 (6th Cir. 2013)); *cf. In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 141 (E.D. La. 2002) (recognizing that a consequence of treating the MDL consolidated complaint as an operative complaint would be to "make applicable [the forum's] choice-of-law rules").[20]

Under Florida law, if a true conflict exists, the Court must conduct a choice-of-law analysis specific to the type of claim at issue.  *Pycsa Panama S.A. v. Tensar Earth Technologies, Inc.*, 625 F. Supp. 2d 1198, 1218-19, 1246 (S.D. Fla. 2008) (stating that "Florida applies the 'significant relationship' test delineated in the Restatement" to tort claims and the *lex loci contractus* rule to contract claims).   The Court's resulting decision will pass constitutional muster so long as the chosen state has "a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 823 (1985).  Thus, the Constitution does

---

[20] Defendants rely on this Court's decision in *Managed Care*, 185 F. Supp. 2d at 1336, to argue that it would be inappropriate to apply Florida's choice-of-law rules to all Plaintiffs.  But that decision is distinguishable, because the original action was not filed in Florida and there is no indication that the Plaintiffs intended to have the consolidated complaint supersede a complaint in a particular action.  Moreover, the Court did not have the benefit of the Supreme Court's *Gelboim* ruling, which recognized that superseding, consolidated amended complaints may merge actions together and function as an operative pleading.

not generally mandate a particular choice of law; it empowers courts to choose what law governs claims emanating from multiple states.

For example, if there are true conflicts in the law governing Plaintiffs' fraudulent concealment, negligence, or consumer fraud statutory claims, this Court would apply Florida's "most significant relationship" test set out in the Restatement (Second) Conflict of Laws.  *See Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007); *Bates v. Cook, Inc.*, 509 So.2d 1112, 1114-15 (Fla. 1987).  Many courts applying the "most significant relationship" test to tort claims like those alleged here have concluded that the defendant's home state bears the "most significant relationship" to the claims, and thus applied the law of the defendant's home state to all members of a nationwide class.  *See, e.g., In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 64-70 (D.N.J. 2009) (in case involving misrepresentations by New Jersey corporation to class members nationally, applying Restatement §§ 6 and 148 to hold that the New Jersey consumer protection statute should apply to all class members); *In re Mercedes-Benz Tele Aid Contract Litig.*, 267 F.R.D. 113, 136 (D.N.J. 2010) ("*Mercedes II*") (reaching same conclusion on the defendant's motion to decertify class); *Rakes v. Life Investors Ins. Co. of Am.*, No. 06-CV-99 LRR, 2007 WL 2122195, at *10 (N.D. Iowa July 20, 2007) (applying law of defendant's home state to entire class because that state had "the most significant relationship to the case"); *In re St. Jude Med., Inc.*, No. 01-1396JRT/FLN, 2006 WL 2943154, at *7 (D. Minn. Oct. 13, 2006), *rev'd and remanded on other grounds*, 522 F.3d 836 (8th Cir. 2008) (applying law of defendant's home state to consumer fraud claims of nationwide class); *Dal Ponte v. Am. Mortgage Exp. Corp.*, No. CIV.A. 04-2152 (JEI), 2006 WL 2403982, at *7 (D.N.J. Aug. 17, 2006) (applying the consumer fraud statute of defendant's home state to claims of nationwide class).  At class certification, when it is appropriate to conduct a choice-of-law analysis, if any true conflict exists, this Court should likewise apply the law of each Defendant's home state to the nationwide tort claims against each Defendant.

> **D.    Even if the Court were to apply the laws of the states where Plaintiffs reside or purchased their cars to Plaintiffs' claims under Magnuson-Moss, negligence, or state consumer protection and implied warranty laws, any potential conflicts can be addressed by appropriate subclasses.**

Even if this Court applies the choice-of-law rules of the transferor fora to Plaintiffs' nationwide claims, as if the Complaint were not a real action filed in this District and had no

utility or purpose in unifying the pleadings, and even if the Court concludes, as Defendants argue, that such an analysis will implicate multiple state laws, dismissal is still not warranted.[21] To the extent that any material conflicts exist among state laws applicable to the facts of this case, Plaintiffs should be afforded an opportunity to submit appropriate subclasses and to present a trial plan that reduces any material variations to manageable groups.  *See Klay*, 382 F.3d at 1261-62 ("[I]f the applicable state laws can be sorted into a *small number* of groups, each containing materially identical legal standards, then certification of subclasses embracing each of the dominant legal standards can be appropriate."); *see also, e.g.*, *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998) ("Courts have expressed a willingness to certify nationwide classes on the ground that relatively minor differences in state law could be overcome at trial by grouping similar state laws together and applying them as a unit."); *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 477 (N.D. Ill. 2009) (collecting cases for the proposition that it is appropriate to group claims under the law of several states for trial); *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 96 (D. Mass. 2008) (application of many states' consumer protection laws in consumer class action MDL did not defeat predominance because claims could be grouped for common analysis); Aggregate Litigation § 2.05(b)(3) (Am. Law Institute 2010); Manual For Complex Litigation (Fourth) § 22.634 (2004). This, however, is most appropriately addressed in connection with class certification, not a motion to dismiss.

### E.    Class claims under a particular state's law should not be dismissed simply because there is no named plaintiff from that state.

Defendants ask the Court to address their claim that Plaintiffs do not have standing to sue under the laws of states in which they do not personally allege injury.  (Dkt. 625 [BMW] at 12-

---

[21] If the Court were nevertheless to find that dismissal is warranted, Plaintiffs request leave to replead these claims together with a trial plan that groups these claims together into subclasses. *See Klay*, 382 F.3d at 1261-62; *and see, e.g.*, *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 107 (D. Mass. 2008) (certifying multi-state class asserting consumer protection claims under multiple states' laws after "having closely studied the statutes and weed[ing] out the ones with substantially different standards").

33

13, 21-22; Dkt. 612 [Ford] at 23 n.13.)  But Defendants are mistaken and, in any event, the Court should reject this argument as premature.[22]

Many courts, including those in this District, have rejected Defendants' arguments where, as here, standing only becomes an issue if a class is certified and includes a state in which no named plaintiff suffered injury.  *See generally Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) *and Amchem Pros., Inc. v. Windsor*, 521 U.S. 591 (1997) (concluding that class certification is "logically antecedent" to standing and may be addressed at the certification stage); *Wilson v. EverBank, N.A.*, ---F. Supp. 3d---, 2015 WL 265648, *17 (S.D. Fla. 2015) ("[P]rovided that the named plaintiff articulates a redressable injury suffered as a result of the defendant's conduct and that her claims are based on principles of law that are uniform among the states that are involved, courts in this Circuit permit named plaintiffs to represent class members with claims arising under other states' laws."); *In re Grand Theft Auto Video Game Consumer Litig. (No. II)*, MDL No. 1739, 2006 WL 3039993, at *2 (S.D.N.Y. Oct. 25, 2006) (noting the split in lower court authority and concluding "that the better interpretation is to treat class certification as logically antecedent to standing where class certification is the source of the potential standing problems").  If the named plaintiff's standing under their own state's law is established and if the named plaintiffs and the absent class members' injuries have the same source, "[the plaintiff's] capacity to seek relief for the absent class members of the proposed class should [be] determined according to the requirements of Rule 23, not a motion to dismiss."  *In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 802 (N.D. Ohio 2011) (rejecting defendants' arguments to dismiss for lack of standing indirect purchaser claims under the laws of states in which a plaintiff did not reside and deferring consideration of standing issues until class certification).  This is a widely accepted view that should be adopted here.[23]

---

[22] Even where a class claim involves multiple states' laws, "the case law does not create a *per se* rule that the court must appoint a separate representative for each state or even each group."  *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. at 104.

[23] *See, e.g.*, *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 579 (M.D. Pa. 2009) ("[T]he plaintiffs' capacity to represent individuals from other states depends upon obtaining class certification, and the standing issue would not exist but for their assertion of state law antitrust claims on behalf of class members in these states."); *K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 543-544 (D.N.J. 2004) (declining to address defendants' argument that named plaintiffs who did not purchase K-Dur in certain states were not injured and thus had no standing to bring claims under the laws of those states prior to determining class certification); *Sheet*

### III.   Plaintiffs Need Not Suffer Catastrophic Airbag Failures and Life-Threatening Injuries Before Asserting Claims For Economic Harm.

Before addressing Defendants' challenges to Plaintiffs' specific state-law claims, it is necessary to dispel a recurring argument advanced by every Defendant across the board.  Despite recalling more than 34 million vehicles for a defect that has admittedly caused death and catastrophic injury and economic loss, every Defendant contends that Plaintiffs have not adequately alleged any cognizable injury.[24]  Defendants' argument rests on their erroneous claim that Plaintiffs fail to allege that all of the vehicles "have manifested or will manifest this defect," and, thus, Plaintiffs are barred from recovery *unless and until* the airbags in their vehicles show themselves to be defective by either violently rupturing or by failing to deploy entirely.  (Dkt. 608 [Mazda] at 10-11.)  Defendants' "manifestation of the defect" argument misunderstands the

---

*Metal Workers National Health Fund v. Amgen Inc.,* 2008 WL 3833577 at *8-9 (D.N.J. Aug. 13, 2008) (denying as premature defendant's motion to dismiss state law claims based on the argument that if the plaintiff did not reimburse clinics in a particular state it did not sustain an injury there and thus had no standing to assert that states law claims.); *In re Aftermarket Filters Antitrust Litig.,* 2009 WL 3754041, at *4-5 (N.D. Ill. Nov. 5, 2009) (denying a motion to dismiss on standing grounds, finding that the question of class certification was logically antecedent to the standing issue because the plaintiffs had individual standing to sue the defendants and all plaintiffs allegedly suffered the same type of injuries caused by defendants' antitrust conspiracy. Thus, "the name[d] plaintiffs' capacity to represent individuals from other states depends upon obtaining class certification, and the standing issue would not exist but for their assertion of state law claims on behalf of class members in those states."); *In re Buspirone Patent Litig.,* 185 F. Supp. 2d 363, 377-78 (S.D.N.Y. 2002)( The "alleged problems of standing will not arise unless class certification is granted" and if the court certified the class asserting state law antitrust and unfair competition claims, the "only relevant question about the named plaintiffs' standing to represent them will be whether the named plaintiffs meet the ordinary criteria for class standing" such as whether "their claims are typical of those of the class, [and] whether they will adequately represent the interests of the class. . . .").

[24]  Defendants' specific contentions with respect to Plaintiffs' purported failure to properly plead "manifestations of the defect" are as follows:  (1) Mazda and Toyota argue that all claims arising under Florida, Alabama and Pennsylvania must be dismissed; (2) Subaru argues all claims alleging violations of Florida and Alabama law fail; (3) BMW challenges Plaintiffs' claims for violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") and Alabama's Deceptive Trade Practices Act ("ADTPA"); (4) Honda and Ford assert Plaintiffs' FDUTPA claims fail; (5) Nissan challenges Plaintiffs' implied warranty claims with respect to California, Florida, Pennsylvania and Tennessee; and (6) Takata contends that Plaintiffs' implied breach of warranty claims under Florida, California, Colorado, Hawaii, Indiana, Louisiana, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Jersey, North Carolina, Rhode Island, South Carolina, Texas and West Virginia law must be dismissed.

nature of Plaintiffs' alleged economic injuries, rests on a profound mischaracterization of Plaintiffs' core allegations, and would lead to an absurd and unacceptable result.

### A.   Plaintiffs have suffered tangible economic harm resulting from Defendants' deception.

Defendants are wrong when they claim that the crux of Plaintiffs' economic injury allegations is that the airbags in the Class Vehicles *may fail* at some unspecified time in the future thereby causing Plaintiffs harm.  (Dkt. 608 at 11; Dkt. 625 at 21.)  To the contrary, Plaintiffs allege they have *already* suffered definite, economic harm because Defendants held Class Vehicles out to be much safer than they actually are, and they concealed the nature of the deadly defect from consumers, including Plaintiffs.   (Dkt. 579 at ¶¶ 1, 34-36, 72-187.)  According to the Complaint, Defendants' concealment and deception harmed Plaintiffs in at least three tangible ways.  First, Plaintiffs allege that they overpaid for their vehicles at the time of purchase and did not, therefore, receive the benefit of their bargain.  (Dkt. 579 at ¶¶ 34-36, 72-187.)   If Defendants had timely disclosed to consumers, including Plaintiffs, that the Class Vehicles, and the airbags installed in them, were much less safe than Defendants claimed, Plaintiffs would not have agreed to pay the price they did pay for their vehicles, or would not have purchased them at all.  (*Id.*, ¶¶ 34-36, 72-187.)  Second, Plaintiffs allege that their vehicles significantly decreased in value at the time consumers became aware that the Class Vehicles contained a defect and were not as safe as expected.  (*Id.*, ¶¶ 34, 72-187.)  And third, Plaintiffs incurred other out-of-pocket and loss-of-use costs and expenses as a result of the Inflator Defect. (*Id.*, ¶ 74.)

Contrary to what Defendants claim, this case is nothing like the "no-injury" *products liability* cases that Defendants repeatedly cite.  The distinction between the two was explained by the Fifth Circuit in *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449 (5th Cir. 2001).  There, the plaintiffs alleged that a recreational fishing boat they purchased was defective and failed to live up to the defendant manufacturer's representations.  *Id.* at 451.  They further alleged that, as a result of the defendant's conduct, they had overpaid for the boat and had not received the benefit of their bargain.  *Id.* at 452.  On the basis of these allegations, the plaintiffs asserted various causes of action under Florida law, including claims for fraud, civil conspiracy, unjust enrichment, and violations of the Magnuson-Moss Warranty Act ("MMWA") for breach of implied warranties.  *Id.* at 451.  The trial court *sua sponte* concluded the plaintiffs had failed to

state their claims because they had not alleged any injury.  *Id.*

In reversing the trial court's dismissal, the Fifth Circuit explained the distinction between a "no-injury" *products liability* case and a case in which, as here, plaintiffs allege *economic harm resulting from deceptive conduct* regarding the quality of a product:

> The core allegation in a no-injury product liability class action is essentially the same as in a traditional products liability case:  the defendant produced and sold a defective product . . .The wrongful act alleged in a no-injury products suit is thus the placing of a dangerous/defective product in the stream of commerce.  In contrast, the wrongful act alleged by the Coghlans is Wellcraft's failure to uphold its end of the bargain and to deliver what was promised . . . plaintiffs in a no-injury products liability case have not suffered any physical harm or out-of-pocket economic loss.  Here, the damages sought by the Coghlans are not rooted in the alleged defect of the product as such, but in the fact that they did not receive the benefit of their bargain.

*Id.* at 455, n. 4.

Just as in *Coghlan*, Plaintiffs here do not allege they suffered injuries only—or even primarily—because Defendants placed defective products in the stream of commerce.  Rather, Plaintiffs allege they suffered economic harm because, *in addition* to putting defective products into the stream of commerce, Defendants actively and deliberately deceived Plaintiffs and regulators about the quality of the Class Vehicles, and they failed to provide Plaintiffs with the benefit of their bargain.  Put simply, and as the Complaint alleges, Plaintiffs overpaid for their vehicles at the time of purchase because Defendants deceived them as to the Class Vehicles' safety, i.e., that the vehicles' airbags would protect them, a feature that Plaintiffs and most other consumers consider paramount in determining what a car is and should be worth, and how much they should pay for it; and now that the defect has been publicized, Class Vehicles are worth substantially less.

That Plaintiffs' airbags have not yet exploded and caused catastrophic injury does not change the fact that an unreasonable risk of such events exists, and that such a risk was concealed from consumers, including Plaintiffs.  Further, that the airbags have not yet exploded and caused catastrophic injury does not change the fact that simple market principles dictate that Plaintiffs' cars are worth less than the "safer" cars Plaintiffs believed they were purchasing.  Put another way, no rational person would pay "market price" for a vehicle if that person knew that the vehicle in question happened to be equipped with an airbag that, upon impact, could fail to deploy or fire deadly shrapnel at the driver or passengers.  Thus, as in *Coghlan*, Plaintiffs'

37

injuries are not speculative and do not remain contingent on the occurrence of some future event.[25]

Courts throughout the country have confirmed *Coghlan's* rationale and support the view that, contrary to Defendants' strained suggestions, Plaintiffs have adequately alleged economic injuries here.  *See In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604 (8th Cir. 2011) (finding plaintiffs adequately pled economic injury under Minnesota warranty law when they alleged all subject pipes exhibited the same design defect, even if the defect had not manifested itself as damage in all pipes); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1174 (9th Cir. 2010) (holding that the plaintiffs did not need to show the tires on their vehicles had already experienced premature wear in order to assert claims for economic injury on a class-wide basis); *Daffin v. Ford Motor, Co.*, 458 F.3d 549, 553-54 (6th Cir. 2010) (holding that certification of the proposed class was proper even though only the throttle assembly defect in question had only manifested itself in some of the class members' vehicles, where the plaintiffs asserted economic injuries).

Defendants also miss the mark when they contend that Plaintiffs have received exactly what they bargained for so long as the airbags in their vehicles do not explode or fail to deploy. (Dkt. 608 [Mazda] at 12.)  As noted, this contention ignores that relative degrees of risk and safety are features that inform consumers' purchasing decisions and, as such, affect the value of Class Vehicles on the open market.  Defendants cannot—and do not—dispute that, all things being equal, consumers will pay less for a vehicle that poses a higher risk of manifesting a

---

[25]   Importantly, Plaintiffs are not required to sell their vehicles in order to allege that their economic injury is tangible.  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1071 (9th Cir. 2011) (concluding that well-established Supreme Court authority does not require selling the product at issue as a prerequisite "to claiming injury on account of decreased value"); *Kelly v. Davis*, No. 3:10-cv-392 MCR, 2012 WL 967422, at *1 (N.D. Fla. March 22, 2012) (finding that the plaintiff had Article III standing to sue and had adequately pled injury in fact by alleging the value of her home had diminished, even if the plaintiff had not attempted to sell her home); *Bristow v. Lycoming Engines*, No. CIV S-06-1947 LKK, 2007 WL 1106098, at *6 (N.D. Cal. April 10, 2007) (noting that, taken to its logical conclusion, this argument would mean a vehicle owner whose car was hit could not recover for that loss until the owner was prepared to sell the vehicle).  Even so, Plaintiffs provide the specific examples of Dan Peoples, Mario Cervantes, John Huebner and Anthony Palmieri, all of whom allege that their attempts to part with their respective vehicles have been thwarted because potential buyers already demand a steep price discount.  (*Id.*, ¶¶ 91, 114, 140, 144.)

38

defect, particularly where, as here, that defect causes death or catastrophic injury and is one that Plaintiffs cannot reasonably mitigate on their own.[26]   *See e.g. Kearney v. Huyndai Motor Co.*, No. SACV 09-1298 DOC, 2010 WL 9093204, at *4 (C.D. Cal. June 2010) (recognizing the existence of an economic injury where an undisclosed defect in the vehicles' airbags caused the plaintiffs to overpay for cars that were not safe, even though not all the vehicles' airbags had failed to deploy properly); *In re: Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F.Supp.2d 1145, 1165 (C.D. Cal. 2010) (denying defendant's motion to dismiss because the plaintiffs had bargained for safe vehicles, but did not get them as a result of defective electronic throttle system that was prone to failure). Defendants' rhetoric aside, this issue is pretty straightforward: Plaintiffs paid for defect-free, safe vehicles, but received something a lot less safe and valuable.[27]

Defendants cite several inapposite cases that do not address the state law claims they are challenging, but nevertheless warrant some discussion.  Defendants, for example, rely on *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002) ("*Bridgestone*"), for the proposition that allowing recovery without manifestation of the defect is "bad policy" because it overcompensates plaintiffs.  (Dkt. 608 [Mazda] at 12.)  In that case, the court reasoned that "[i]f tort law compensates those who are *physically injured*, then any recoveries by those whose products *function properly* mean excess compensation."  *Id.* at 1017 (emphasis added).  Notably,

---

[26] Plaintiffs' Complaint includes examples underscoring and illustrating that the Inflator Defect in Class Vehicles renders them virtually unusable.  First, Defendants' recall of over 34 million vehicles speaks volumes about the significant, inherent and uniform risks created by the Inflator Defect. Second, class members' airbags have exploded and caused life-threatening injuries even during low speed crashes.  (*Id.*, ¶ 241.)  Plaintiffs' only option to mitigate the increased risk of grievous bodily harm and possible death is to stop using their vehicles altogether, which some Plaintiffs have done.  (*Id.*, ¶¶ 94, 113, 176.)  Plaintiffs also include examples of Toyota dealers that have resorted to simply placing stickers on the dashboard warning people not to sit in certain seats.  (*Id.*, ¶ 317.)  Doubtless, these allegations fly in the face of Defendants' mantra that Class Vehicles are fit for their ordinary and intended purpose.  (Dkt. 619 [Nissan] at 12.)  Indeed, even the authorities on which Defendants rely concede that a key feature of a vehicles' capacity to serve its intended purpose is the absence of a serious safety defect.  *See e.g.*, *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989) (noting that an implied warranty of merchantability is simply a guarantee that the vehicles "will operate in a 'safe condition'").

[27] Defendants' argument also ignores that airbags are designed to work only during emergencies. Therefore, an absence of catastrophic failure does not necessarily mean the airbags are functioning "properly" or as well as Plaintiffs expected.

the *Bridgestone* court *did not* extend its "bad policy" argument to instances where, as here, *economic injuries* exist independently of physical injuries or a product's proper function. *Coghlan*, on the other hand, persuasively addressed the point by noting, for example, that "if a man buys what is represented to him as an 18k gold ring, but later discovers it is merely 10k" he has suffered an economic injury, irrespective of whether the ring could be said to function "properly." 240 F.3d at 452. In short, *Coghlan*, the facts of this case, and common sense all provide that economic injuries resulting from the Defendants' deceptive acts can be, and plainly are, distinct and independent from physical injuries.

Defendants also erroneously rely on *O'Neil v. Simplicity, Inc.*, 574 F.3d 501 (8th Cir. 2009), a case involving defectively designed cribs. Affirming the lower court's grant of a motion to dismiss, the Eighth Circuit reasoned that the plaintiffs had not alleged any harm because they had not pled "a separation has ever occurred in their crib." *Id.* at 504. Two years later, however, the Eighth Circuit addressed its ruling in *O'Neil* and clarified that "*O'Neil never* indicated that a child would have to be injured by a crib for a defect to be manifest." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 617 (8th Cir. 2011) (emphasis added). Stated differently, while the plaintiffs there had to allege the existence of a defect, they did not have to wait for the absurd and unconscionable result of a crib injury before having access to the courts. This rationale applies with equal force here. Plaintiffs need not wait to experience a deadly airbag deployment to seek relief for their actual and real economic losses.

Defendants also rely upon *Briehl v. General Motors Corp.*, 172 F.3d 626, 628 (8th Cir. 1999), to claim that "[w]here … a product performs satisfactorily and never exhibits an alleged defect, no cause of action lies." (Dkt. 615 [Subaru] at 33.) But *Briehl* is easily distinguished. In *Briehl*, the plaintiffs alleged that the defendants manufactured a defective braking system that was counterintuitive in an emergency situation. *Briehl*, 172 F.3d at 626. They therefore sought damages for those situations in which the defective braking system might cause an "average driver to perceive an actual brake failure and misapply the brakes during emergencies where braking is required." *Id.* The *Briehl* court rejected that argument because the plaintiffs admitted that the allegedly defective brakes "functioned satisfactorily and at no time … exhibited a defect." *Briehl*, 172 F.3d at 628.

Since the *Briehl* court relied upon the product's satisfactory performance, the decision is based on facts that do not exist here. As Plaintiffs have alleged in the Complaint, the airbags in

question have never functioned satisfactorily, and have been defective—as Takata itself has admitted—since the time they were installed in Plaintiffs' vehicles. For instance, Plaintiffs allege:

> ***At the time of sale and all times thereafter***, the Class Vehicles were not merchantable and not fit for the ordinary purpose for which cars and airbags are used because they are equipped with Defective Airbags containing the Inflator Defect which causes, among other things, the Defective Airbags to (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; and (b) hyper-aggressively deploy and seriously injure occupants through contact with the airbag; and (c) fail to deploy altogether.

 (Dkt. 579, ¶ 881) (emphasis added); *see also id.* at ¶¶ 4 ("All Takata airbags at issue in this litigation share a common, uniform defect:  the use of ammonium nitrate …").

Here, an airbag has but one role: to function properly during an emergency.  Unlike the braking system in *Biehl*, and the tires and SUV in *Bridgestone*, an airbag does not see *repeated* use.  Instead, the whole purpose of an airbag is to function properly *once*.  This means that, unlike the plaintiffs in the cases relied on by Defendants, Plaintiffs do not contend that the airbags at the heart of this case functioned "satisfactorily" until a time that they did not; rather, Plaintiffs allege that the airbags have been defective since the very first day they were installed, because the propellant used by Takata—but rejected by every other major airbag manufacturer in the industry—is prone to instability and explosions.   And that defect is not theoretical or hypothetical, given the eight deaths and hundreds of injuries caused by the Inflator Defect in Takata's airbags.

Accordingly, Plaintiffs' pleading of damages is adequate, because this type of defect has been held not to require an actual injury-producing event.  *Accord In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616-17 (8th Cir. 2011) ("the district court did not err in determining that the [] plaintiffs were not 'no injury' parties simply because their [alleged defective products] had not yet" manifested injury); *Roberts v. Electrolux Home Prods., Inc.*, 2013 WL 7753579, at *5-6 (C.D. Cal. Mar. 4, 2013) ("The Court rejects defendant's argument, which conflates the existence of a defect and the manifestation of harms or hazards caused by the defect"); *Quality Air Servs., LLC v. Milwaukee Valve Co., Inc.*, 671 F. Supp. 2d 36, 44-45 (D.

D.C. 2009) (same); *Alberti v. Gen. Motors Corp.*, 600 F. Supp. 1026, 1028 (D.C.D.C. 1985) (finding plaintiffs stated valid claims, regardless of manifestation of defect).[28]

**B.      Defendants' state-specific authorities do not compel a different conclusion.**

1.      *Florida-Specific Authorities.*

Defendants' challenge of Plaintiffs' Florida-law claims relies almost exclusively on *Kia Motors Am. Corp.*, 985 So. 2d 1133 (Fla. Dist. Ct. App. 2008).   Indeed, Defendants pepper references to this case liberally throughout their briefs to support their claim that Florida, as well as other states, have adopted a wholesale rule that precludes plaintiffs from recovery unless they demonstrate a manifestation of the defect.  (Dkt. 608 at 12-14; Dkt. 612 at 26-27; Dkt. 614 at 30.; Dkt. 619 at 13.)  But *Kia Motors* is inapplicable here.

First, the *Kia Motors* court did not address the sufficiency of the plaintiffs' allegations of economic harm.  *Id.* at 1134.  Because it was a class certification ruling, the court did not consider the relative evidentiary burdens in play at the pleading stage nor the relevant dismissal standards.  *Id.* at 1139,1142-3.  Instead, it considered the propriety of class certification, given that some class members had experienced the defect and others had not.

Second, the *Kia Motors* court erroneously concluded that Florida has "firmly aligned" itself with jurisdictions that bar recovery absent a manifestation of a "deficiency."  The court justified this seemingly limitless rule by reference to a single case:  *Ortiz v. Ford Motor Co.*, 909 So. 2d 479 (Fla. 3d DCA 2005).  But *Ortiz*, another class certification decision, *did not* address defect manifestation, and certainly *did not* support the conclusion that Florida has adopted a wholesale rule that bars recovery without manifestation of a defect.  *Id.*

Third, and critically, numerous other courts have found that Florida *does not* require proof of a defect manifestation in cases where plaintiffs allege economic harm stemming from deceptive conduct concerning the quality of a defective product.  The most applicable authority

---

[28] Moreover where, as here, some consumers have experienced the manifestation of the defect, it is immaterial whether all have.  *Accord McGregor v. Uponor, Inc.*, 2010 WL 55985 (D. Minn. Jan. 4, 2010) (finding that, where 14 of 34 plaintiffs conceded there were no manifestations, dismissal was inappropriate where defect had already manifested with other plaintiffs); *Alberti*, 600 F. Supp. at 1027 (denying motion to dismiss where 72 of 127 named plaintiffs never experienced manifestation of defect).

is *Collins v. DaimlerChrysler Corp.,* 894 So. 2d 988, 990–91 (Fla. 5th DCA 2004), in which the court was asked to decide whether the plaintiff had sufficiently alleged an injury compensable under FDUTPA.  *Id.* at 989.  The plaintiff there sought to "recover the diminution in value" of her Chrysler vehicle, which she alleged was caused by the vehicle's "defective seat buckles."  *Id.* at 990.  On Chrysler's motion, the trial court dismissed the plaintiff's claims, finding that "diminution of value" did not constitute "actual damages," as FDUTPA requires, and that the plaintiff was instead required to allege that the seatbelts "malfunctioned or manifested the alleged defect in some way to state a cause of action."  *Id.*  The appellate court reversed, holding that there is "no requirement in FDUTPA that a defect manifest itself by failing to operate in an emergency or by causing injury."  *Id.*  And the court also concluded that the plaintiff "claim[ed] an actual injury in the form of insufficient product value."  *Id.*

Defendants make much of the fact that *Collins* addressed only FDUTPA violations and was decided prior to *Kia Motors*.  (Dkt. 608 [Mazda] at 12-13.)  But the sequence of the decisions is irrelevant, because both decisions are from intermediate appellate courts, neither one of which had the power to overrule the other.  If anything, the failure of *Kia Motors* to even acknowledge *Collins*, which is only four years older, severely undermines the persuasive force of *Kia Motors*.  Indeed, subsequent decisions demonstrate that *Collins*'s rationale and holding are broadly applicable and followed to this day.  *See e.g.*, *Coghlan v. Wellcraft Marine Crop.*, *supra*, 240 F.3d 449 (applying Florida common law and FDUTPA); *In re Ford Motor Co. Spark Plug & 3-Valve Engine Prods. Liab. Litig.*, Case No. 1:12-md-2136, 2014 WL 3778592 (N.D. Ohio July 30, 2014) (applying FDUTPA); *In re: Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 840-41 (S.D. Ohio 2012) (applying Florida common law and FDUTPA); *In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II)*, No. CIV. A. 03-4558, 2010 WL 2813788, at *48 (D.N.J. July 9, 2010) (applying FDUTPA).

Finally, even the other cases on which Defendants rely do not support the view that *Kia Motors* "reflects the current state of Florida law."  (Dkt. 608 [Mazda] at 12.)[29]  For example, three of the four cases that actually address Florida law all ultimately rely on *Kia Motors* as the

---

[29]   Defendants also cite various other cases, but none of these apply or discuss Florida-law claims.  *See Carlson.*, 883 F.2d 287; *Bussian v. DaimlerChrysler Corp.*, 411 F.Supp.2d 614 (M.D.N.C. 2006); *Weaver v. Chrysler Corp.*, 172 F.R.D. 96 (S.D.N.Y. 1997); *Wallis v. Ford Motor Co.*, 362 Ark. 317 (2005).

sole source of authority for the proposition that a bright-line "manifestation of defect" requirement exists. *See Breakstone v. Caterpillar, Inc.*, No. 09-23324-CIV, 2010 WL 2164440 (S.D. Fla. May 26, 2010); *Cramer v. Ford Motor Co., Inc.*, No. 2007-CA-2135-NC, 2011 WL 2477232 (Fla. Cir. Ct. June 9, 2011); *In re: Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10-ml-02151 JVS, Dkt. 2496, pp. 10-30 (C.D. Cal. May 4, 2012). The fourth case defendants cite is *Brisson v. Ford Motor, Co.*, 349 F. App'x 433 (11th Cir. 2009). But *Brisson* does not help Defendants, because the plaintiffs there "fail[ed] to allege that they experienced a defect," *id.* at 434, whereas Plaintiffs here have alleged that the Inflator Defect is present in *every* Class Vehicle, such that Plaintiffs' Defective Airbags all manifest an "unreasonably dangerous tendency to (a) rupture and expel metal shrapnel that tears through the airbag and poses a threat of serious injury or death to occupants; (b) hyper-aggressively deploy and seriously injure occupants through contact with the airbag; and (c) fail to deploy altogether." (Dkt. 579, ¶ 195.) Given this significant distinction, and the opinion's sparse discussion of the facts and relevant authority, *Brisson* is neither persuasive nor controlling. In other words, Defendants' contention that Florida has, generally and without qualification, "aligned itself" with jurisdictions that purportedly require a manifestation of injury, rests entirely on *Kia Motors*, which is wholly unpersuasive.[30]

### 2.   *Alabama-Specific Authorities.*

Defendants rely on two cases in support of their position that Alabama purportedly applies a wholesale bar on recovery when plaintiffs do not demonstrate a manifestation of injury: (a) *Pfizer, Inc. v. Farsian*, 682 So. 2d 405 (Ala. 1996) and (b) *Ford Motor Co. v. Rice*, 726 So. 2d 626 (Ala. 1998). Both of these cases are easily distinguished.

In *Pfizer*, the plaintiff alleged that the manufacturer of his heart valve had misrepresented information regarding the valve's propensity to suffer from strut failures. *Pfizer, Inc.,* 682 So. 2d at 406. Notably, the plaintiff did not allege that the valve had any defect. *Id.* at 408. Finding that plaintiff had failed to state a claim, the Alabama Supreme Court noted that "regardless of how [he] pleads his claim, his claim is in substance a product liability/personal injury claim." *Id.* at 407. Unlike *Pfizer*, however, Plaintiffs' fraud, unjust enrichment, and implied warranty claims do not assert, in substance, a "product liability/personal injury" claim. Indeed, unlike *Pfizer*,

---

[30] Importantly, *Collins* shares the same procedural posture as this case, unlike *Kia Motors*.

Plaintiffs here do not assert any claims for emotional distress.  And most significantly, Plaintiffs here have properly alleged the existence of a uniform defect present in every Class Vehicle.

*Ford Motor* is also unavailing because the plaintiffs there "admitted that they could not point to any tangible adverse economic consequences flowing from the alleged defect, such as diminished resale value in comparison to similar vehicles." *Ford Motor Co.*, 726 So.2d at 628.[31] Here, in contrast, Plaintiffs have articulated numerous, concrete allegations regarding the economic harms they have suffered as a result of Defendants' concealment of the Inflator Defect.

       *3.*    *Pennsylvania-Specific Authorities.*

Defendants' Pennsylvania-specific authorities also miss the mark.  Those cases are inapplicable because they concern causes of action that hinge on subjective and individualized emotional responses to speculative future illness.  *See Morrison v. Williams*, No. Civ.A. 98-2408, 1998 WL 717423 (E.D. Pa. Sept. 18, 1998) (plaintiffs allege intentional infliction of emotional distress as a result of occupational exposure to asbestos); *Simmons v. Pacor, Inc.*, 543 Pa. 664 (1996) (plaintiffs allege risk and fear of cancer, mental anguish, and loss of life's pleasures based on occupational exposure to asbestos); *Angus v. Shiley Inc.*, 989 F.2d 142 (1993) (plaintiffs allege negligent and intentional infliction of emotional distress as a result of occupational exposure to asbestos).  Unlike Plaintiffs in this case, none of the plaintiffs in those cases alleged tangible "overpayment" or "diminution of value" loss or harm caused by the defendants' concealment of a uniform defect.  Accordingly, these cases simply do not support Defendants' claim that Pennsylvania requires "manifestation of a defect" in cases like this.

Defendants' reliance on *Osness v. Lasko Prods., Inc.*, 868 F. Supp. 2d 402 (E.D. Pa. 2012), is similarly misplaced.  Addressing the plaintiffs' claim of breach of implied warranty, the *Osness* court noted that "[p]laintiff has not alleged that her fan has ever malfunctioned during this five-year (or potentially longer) period or that she has otherwise been unable to use her fan." *Id.* at 414.  Based on the absence of such allegations, the court saw no "basis in plaintiff's complaint for finding that the fan she purchased was not 'merchantable.'"  *Id.*  In a footnote, however, the court expressly limited its conclusion to the facts before it, concluding that "I need not and thus do not address here [the plaintiff's] more general suggestion that, to state a claim for

_____

[31] It is also worth noting that the *Ford Motor* court clearly stated it was not adopting a broad "economic loss rule" by requiring that all plaintiffs demonstrate some form of *physical* injury in order to properly plead fraudulent inducement claims.  *Id.* at 631.

breach of implied warranty, a plaintiff **must always** allege that he or she experienced a problem with a particular product.   I leave open the question whether, under certain circumstances, a plaintiff can rely on allegations that a defect is inherent in all units of a particular product and that other purchasers have experienced the problem."  *Id.* at 413, n. 13 (emphasis added).  This case presents exactly the facts that the *Osness* court declined to decide, and defendants cite no other pertinent authorities to suggest that the narrow holding in *Osness* has been broadened to apply in cases like this.[32]

### C.  Plaintiffs' Implied Warranty/Magnusson-Moss Warranty Act claims do not require evidence of a malfunction.

Takata and Nissan claim that nine additional states[33] bar Plaintiffs from asserting implied warranty claims unless Plaintiffs can also demonstrate that the airbags in their vehicles have failed catastrophically or will do so imminently and unavoidably.  (Dkt. 619 at 12-13; Dkt. 622 at 19-20.)  No such rule exists*,* however, and demonstrably so.  *See Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908, 918 (2001) ("proof of breach of warranty does not require proof the product has malfunctioned but only that it contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product."); *Falco v. Nissan N. Am., Inc.*, No. 13-00686 DDP, 2013 WL 5575065 (C.D. Cal. Oct. 10, 2013) (holding that "a vehicle is not merchantable solely because it provides transportation" and finding allegations of premature and excessive noise sufficient); *In re: Ford Motor Co. Bronco Part II Prods. Liab. Litig.*, No. Civ. A. MDL-991, 1995 WL 714441 (E.D. La. Dec. 4, 1995) (rejecting argument that plaintiffs could only assert breach of implied warranty claims if their vehicles had previously rolled over); *In re: Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 687 F.Supp.2d 897 (W.D. Mo. 2009) (holding case before it was more akin to *Coghlan*, *supra*, 240 F.3d 449 than to *Briehl v. General Motors Corp.*, 172 F.3d 623, 628-29 (8th Cir. 1999)); *Henderson v. Volvo Cars N. Am., LLC*, No. 09-4146 DMC, 2010 WL 2925913 (D.N.J. July 21,

---

[32]   Defendants also cite to *In re: Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.,* 785 F.Supp.2d 925 (C.D. Cal. 2011).  That decision cites, but does not examine, *Angus*, *supra*, which as noted above is inapplicable to this case.

[33]   Takata focusses on California, Louisiana, Minnesota, Missouri, Nevada, New Jersey, North Carolina and Texas, (Dkt. 622 [Takata] at 19-20), while Nissan challenges Plaintiffs' warranty claims for California and Tennessee (Dkt. 619 [Nissan] at 12-13).

2010) (finding that potential transmission failure after 40,000 miles may render vehicle unfit for purpose of driving); *Phillips v. Restaurant Management of Carolina, L.P.*, 146 N.C.App. 203 (2001) ("We are aware of no binding authority requiring a physical injury, or even a physical manifestation of a mental injury, to support a claim for breach of an implied warranty of merchantability."); *Microsoft Corp. v. Manning*, 914 S.W.2d 602 (1995) (finding manifestation of inherent defect in software was unnecessary for plaintiffs to assert claim for breach of implied warranty).

The litany of cases on which Takata relies do not counsel, let alone compel, the sweeping conclusion it urges. *See Briehl v. General Motors Corp.*, 172 F.3d at 627 (plaintiffs did not allege the product in question was actually defective); *American Suzuki Motor Corp. v. Sup. Ct.*, 37 Cal. App. 4th 1291 (Cal. Ct. App. 1995) (addressing class certification, but whose validity has been strongly questioned by subsequent authorities, including *Conley v. Pacific Gas and Elec. Co.,* 131 Cal. App. 4th 260, 268 (Cal. Ct. App. 2005)); *Kahn v. Shiley Inc.*, 217 Cal. App. 3d 848 (Cal. Ct. App. 1990) (plaintiff alleged "emotional and physical" distress on the basis of a potential future illness, as opposed to tangible, economic harm); *In re: Air Bag Prods. Liab. Litig.*, 7 F. Supp. 2d 792 (E.D. La. 1992) (does not apply Louisiana law to discussion of the plaintiffs' implied warranty claims, as Defendants contend it does); *Peri & Sons Farms, Inc. v. Jain Irr., Inc.*, No. 3:11-cv-0757 VPC, 2012 WL 5198502 (D. Nev. Oct. 19, 2012) (finding defendant had breached implied warranty of merchantability).[34]

Likewise, Nissan erroneously relies on two California cases that are easily distinguishable. In *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009), plaintiffs had the capacity to prevent the manifestation of the defect at all times and, indeed, any potential manifestation of the defect was caused directly by *plaintiffs*' own actions. *Id.* And in *Taragan v. Nissan N. Am., Inc.*, No. C-09-3660 SBA, 2013 WL 3157918 at *4 (N.D. Cal. June 20, 2013), plaintiffs did not allege they had suffered tangible economic harm as a result of the car manufacturer's active concealment of a uniform safety defect. *Id.* at *2. Tellingly, Nissan does

---

[34] In a futile attempt to bolster its argument, Takata adduces some "evidence" that is not referenced in or otherwise discussed in the Complaint. (Dkt. 622 [Takata] at 20.) This Court may not consider such "evidence" in connection with Defendants' motions to dismiss. *See Jozwiak v. Stryker Corp.*, 6:09-cv-1985 ORL, 2010 WL 74834 (M.D. Fla. Feb. 26, 2000) (noting a court "**must** limit its consideration to the complaint . . . and matters of which a court may take judicial notice." (emphasis added))

not cite any cases addressing the law of Tennessee, where its United States headquarters are located.

Additionally, Takata argues in a footnote that, for an additional group of eight "remaining" states, "Plaintiffs' conclusory pleadings are . . . insufficient." (Dkt. 622 [Takata] at 20.)  Without argument or reference to Plaintiffs' factually-detailed allegations, including dozens of paragraphs that detail the economic injuries caused by the Defendants' deceptive and fraudulent acts, Takata cites to cases, none of which endorse Takata's position.  Most of the cases, ironically, *undermine* it.  *See Seaside Resorts, Inc. v. Club Car, Inc.*, 416 S.E.2d 655 (S.C. Ct. App. 1992) (affirming lower court's determination there was sufficient evidence to deny defendants' motion for directed verdict on plaintiff's implied warranty claim); *Baker v. Castle & Cooke Homes Hawaii, Inc.*, No. CIV. 11-00616 SOM, 2012 WL 1454967, at *14 (D. Haw. Apr. 25, 2012) (denying defendants' motion to dismiss on plaintiff's implied warranty claims finding that allegations of uniform, design defect at the time of sale was sufficient); *Donovan v. Philip Morris USA, Inc.*, 65 F.Supp.3d 251 (D. Mass. 2014) (permitting implied warranty claims against defendant tobacco manufacturer to proceed to trial).  Takata's remaining cases do not address the sufficiency of the plaintiffs' claims in the context of a motion to dismiss.  *See Richards v. Georg Boat and Motors, Inc.*, 384 N.E.2d 1084, 1080 (Ind. App. 1979); *Castrignano v. E.R. Squibb & Sons, Inc.*, 546 A.2d 775, 783 n.5 (R.I. 1988).

Similarly, Subaru argues that Plaintiffs have failed to meet the pleading standard regarding their claims for damages.  (Dkt. 615 [Subaru] at 33.)  Subaru, like Takata, is wrong.

Both Subaru Plaintiffs, Regina M. Reilly and Plaintiff Michel A. Walker, specifically allege that the value of their Subaru has been diminished by the Inflator Defect.  (Dkt. 579, ¶¶ 151, 176.)  They also both allege that they never would have purchased their vehicles or paid as much for them if they had "known of the problems associated with the vehicle's Inflator Defect." (*Id.*)  Furthermore, Plaintiff Walker alleges that, due to the Inflator Defect, he was "unable to use his 2005 Subaru Legacy for approximately two months due to safety concerns."  (*Id.*, ¶ 176.) These allegations are, of course, in addition to those incorporated by reference against Subaru.[35]

---

[35]    (*See* Dkt. 579, ¶ 409.)  For example, in paragraphs 34 through 38 of the Complaint, Plaintiffs further allege the following types of damages: diminished vehicle value (¶ 34), benefit-of-the-bargain damages (¶ 35), out-of-pocket damages (¶ 36), and damages to the Automotive Recyclers (¶ 38).

48

From these allegations, the only reasonable inference is that Plaintiffs Walker and Reilly paid more for their automobiles than they should or would have, and thus suffered damages.  *See In re Toyota Motor Corp.*, 790 F. Supp. 2d at 1166 (finding that because Plaintiffs had presented "detailed, non-conclusory factual allegations of the product defect, the economic loss injury flows from the plausibly alleged defect at the pleadings stage.").

### IV.    Plaintiffs Have Sufficiently Pleaded Claims For Unjust Enrichment.

As explained above, Plaintiffs' unjust enrichment claims should be evaluated under Florida law because, as this Court previously concluded, the law governing unjust enrichment is materially uniform throughout the United States, i.e., there are no "true conflicts," and, therefore, the law of the forum, Florida law, is applicable to all unjust enrichment claims.  *See In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1336-37 (S.D. Fla. 2002) (citing *Singer v. AT & T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla. 1998) for the principle that unjust enrichment law is a "universally recognized cause[] of action that [is] materially the same throughout the United States"); *see also* Section II.B, *supra*.

### A.    Plaintiffs' unjust enrichment claims are not barred by any express warranty claim or other legal remedy.

Several Defendants claim that unjust enrichment is not available as a cause of action when Plaintiffs have adequate remedies at law, such as in this case where Plaintiffs have brought statutory and common law claims.  (Dkt. 622 [Takata] at 33-34; Dkt. 612 [Ford] at 20; Dkt. 608 [Mazda] at 24, 27, 32; Dkt. 614 [Toyota] at 25-27; Dkt. 615 [Subaru] at 23, 29-30; Dkt. 616 [Honda] at 21-22.)  Defendants are once again mistaken.

While "[i]t is generally true that equitable remedies are not available under Florida law when adequate legal remedies exist.. . . that rule does not apply to unjust enrichment claims.  'It is only upon a showing that an express contract exists between the parties that the unjust enrichment count fails.'"  *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714, 722 (11th Cir. 2011), *rev'd in part on other grounds sub nom. State Farm Mut. Auto. Ins. Co. v. Williams*, 563 F. App'x 665 (11th Cir. 2014) (quoting *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. Dist. Ct. App. 1998) (internal alterations omitted)); *see, e.g.*, *Mazzeo v. Nature's Bounty, Inc.*, No. 14-60580-CIV, 2015 WL 1268271, at *5 (S.D. Fla.

Mar. 19, 2015) ("The availability of Plaintiff's FDUTPA claim does not require dismissal of its unjust enrichment claim."); *Feiner v. Innovation Ventures LLC*, No. 12-62495-CIV, 2013 WL 2386656, at *5 (S.D. Fla. May 30, 2013) ("[U]njust enrichment claims are available under Florida law even where adequate legal remedies exist."); *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1268 (N.D. Fla. 2012) ("[T]he existence of an adequate legal remedy does not preclude the Plaintiff from pleading unjust enrichment in the alternative.").  Indeed, earlier this month this Court denied a similar motion to dismiss, concluding that "[t]he Plaintiffs' decision to plead unjust enrichment in the alternative to its other claims does not preclude them from proceeding on their unjust enrichment claim through the motions to dismiss phase." *Parker v. Am. Traffic Solutions, Inc.*, No. 14-cv-24010, 2015 WL 4755175, at *4 (S.D. Fla. Aug. 10, 2015) (Moreno, J.).  Therefore, Plaintiffs' alternative legal claims do not require dismissal of their unjust enrichment cause of action.  *See* Fed. R. Civ. P. 8(d)(2) (permitting parties to plead alternative claims for relief).

With respect to express contracts, Defendants Mazda, Subaru, and Honda argue that Plaintiffs are prohibited from bringing a claim for unjust enrichment because of the purported existence of express warranties governing their claims.  (*See* Dkt. 608 [Mazda] at 27; Dkt. 615 [Subaru] at 23, 29-30; Dkt. 616 [Honda] at 21-22.)  But unless and until "an express contract is proven, a motion to dismiss a claim for . . . unjust enrichment on these grounds is premature." *Williams*, 725 So. 2d at 400; *see Circeo-Loudon v. Green Tree Servicing, LLC*, No. 14-C1V-21384, 2015 WL 1914798, at *5 (S.D. Fla. Apr. 27, 2015) (Moreno, J.) (denying motions to dismiss alternatively pled claims including breach of contract, breach of implied covenants, and unjust enrichment)).

Here, the Complaint alleges no claim for breach of express warranty, and also asserts that warranties covering the issues in this litigation are procedurally and substantively unconscionable.  (Dkt. 579 at ¶¶ 443-54.)  Plaintiffs have also expressly pled that they "do not have an adequate remedy at law."  (*Id.* at ¶¶ 487, 549, 640, 687, 749, 840, 887, 942.)  As this Court has previously recognized, motions to dismiss unjust enrichment claims should be denied in cases such as this when there is a dispute about whether a valid, applicable express contract exists that would afford plaintiffs adequate relief.  *See Ascentium Corp. v. Terremark N. Am., Inc.*, No. 10-20906-CIV, 2011 WL 1233256, at *2 (S.D. Fla. Mar. 30, 2011) (Moreno, J.) (denying motion to dismiss and inferring that no adequate legal remedy existed where "the unjust

enrichment claims arise outside the scope of the contract"); *Wilson v. De Angelis*, 156 F. Supp. 2d 1335, 1341 (S.D. Fla. 2001) (Moreno, J.) (denying motion to dismiss unjust enrichment claim because allegation in complaint that "'no adequate legal remedy exists to compensate Plaintiff' . . . coupled with Plaintiff's allegations concerning the fraudulent scheme to sell Plaintiff bullion coins at grossly inflated prices, establish[d] a *prima facie* claim of unjust enrichment"); *In re Managed Care Litig.*, 135 F. Supp. 2d 1253, 1269 (S.D. Fla. 2001) ("To the extent that the Plaintiffs' quasi-contract claims are covered by contractual arrangements between the parties, the Court treats the Plaintiffs' contention as a pleading of alternative or inconsistent claims for relief in accordance with Federal Rule of Civil Procedure 8(e)(2)."). This is not a case where Plaintiffs have conceded that express warranties cover their claims or failed to plead that no adequate legal remedies exist. *Cf. Speier-Roche v. Volkswagen Grp. of Am. Inc.*, No. 14-20107-CIV, 2014 WL 1745050, at *8 (S.D. Fla. Apr. 30, 2014) (granting motion to dismiss unjust enrichment claim where plaintiff brought claim for breach of an express warranty that indisputably governed her rights); *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337-38 (S.D. Fla. 2002) (granting motion to dismiss unjust enrichment claim because neither party "contest[ed] the existence of an express contract governing the subject of the dispute" and because "Plaintiffs [did] not explicitly alleged that an adequate remedy at law does not exist, and the failure to do so is fatal"). Plaintiffs' unjust enrichment claims should not be dismissed based on the unsupported (and disputed) assertions by Defendants that valid express warranties between Plaintiffs and the Vehicle Manufacturer Defendants exist that cover the claims in this litigation.

Finally, Takata argues that it should be able to piggy-back on the purported express warranties between the Vehicle Manufacture Defendants and Plaintiffs, such that those express contracts also require the dismissal of Plaintiffs' unjust enrichment claim against Takata, even though it is not a party to those contracts, and does not have any relationship with the Vehicle Manufacturer Defendants or Plaintiffs with respect to those contracts. (Dkt. 622 at 32-33.) None of the cases Takata cites support this unfounded, expansive position. Plaintiffs have no express contract with Takata and their unjust enrichment claim should not be dismissed.

> **B.    Unjust Enrichment is a recognized cause of action under California, Texas, and New Jersey law.**

Without recognizing, much less discussing, any conflicting law, Defendants Honda, Ford, Mazda, and Nissan contend that California does not recognize a cause of action for unjust enrichment, and thus Plaintiffs' claims for unjust enrichment must be dismissed with prejudice.

51

(*See* Dkt. 608 [Mazda] at 9; Dkt 612 [Ford] at 20; Dkt. 616 [Honda] at 21-22; Dkt. 627 [Nissan] at 23; Dkt. 622 [Takata] at 34.)  The Takata and Ford Defendants similarly claim that the unjust enrichment claims against them must be dismissed because Texas does not recognize unjust enrichment as a freestanding cause of action.  (Dkt 612 [Ford] at 20; Dkt. 622 [Takata] at 34.) Defendants are yet again wrong on the law: the theory of unjust enrichment and the availability of remedies where unjust enrichment—by that or any other name—has in fact occurred, exist in these states.

As the Ninth Circuit recently reaffirmed, under California law, "'unjust enrichment[]' . . . is synonymous with 'restitution'" such that "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'"  *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (Cal. Ct. App. 2014)); *and see Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014) (recognizing unjust enrichment as an independent claim).  Accordingly, despite the "essentially semantic arguments" distinguishing unjust enrichment from restitution, courts routinely recognize unjust enrichment claims made pursuant to California law.  *Reyes v. Wells Fargo Bank, N.A.*, No. C–10–01667 JCS, 2011 WL 30759, at *17-18 (N.D. Cal. Jan. 3, 2011); *and see, e.g.*, *Rutherford Holdings*, 223 Cal. App. 4th at 232 (reversing dismissal of unjust enrichment claim where plaintiff alleged that contract did not apply and defendant was unjustly enriched by retaining deposited of funds); *Lectrodryer v. SeoulBank*, 91 Cal. Rptr. 2d 881, 883 (Cal. Ct. App. 2000) (affirming judgment in favor of plaintiff where "[e]vidence . . . supported the conclusion that [plaintiff] satisfied the elements for a claim of unjust enrichment"); *Marty v. Anheuser-Busch Co., LLC*, 43 F. Supp. 3d 1333, 1348-49 (S.D. Fla. 2014) (rejecting defendant's argument that "plaintiffs' unjust enrichment claim . . . should be dismissed on the ground that California does not recognize a separate cause of action for unjust enrichment"); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 680 (S.D. Fla. 2011) (certifying "California unjust enrichment subclass"); *Cortina v. Goya Foods, Inc.*, --- F. Supp. 3d ---, 2015 WL 1411336, at *17 (S.D. Cal. 2015) ("declin[ing] to conclude that this claim is legally incognizable" and denying motion to dismiss unjust enrichment claim where complaint pled that defendant was unjustly enriched at expense of plaintiffs and class members who paid for but did not receive beverages of a certain quality); *Mills v. Ramona Tire, Inc.*, No. 07-CV-

0052 H(AJB), 2007 WL 4277537, at *4 (S.D. Cal. Dec. 5, 2007) (denying motion to dismiss because "Plaintiff has adequately pled a claim for unjust enrichment").

Likewise, and as the Fifth Circuit recently explained, under Texas law, "'[u]njust enrichment claims are based on quasi-contract.'" *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 204 (5th Cir. 2015) (quoting *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683 (Tex. 2000)). Like in California, the debate about whether a cause of action for unjust enrichment exists under Texas law "is largely academic, . . . as plaintiffs can either plead unjust enrichment as a separate cause of action or cite it as grounds for seeking their requested relief on other claims." *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1115 (C.D. Cal. 2012). Indeed, courts routinely recognize claims for unjust enrichment under Texas law. *Sw. Bell Tel. Co. v. Mktg. On Hold Inc.*, 308 S.W.3d 909, 921 (Tex. 2010) (holding "that the trial court did not abuse its discretion in finding that individual issues of liability for the breach of warranty and unjust enrichment claims will not predominate over common issues at trial"); *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007) (holding that "[u]njust enrichment claims are governed by the two-year statute of limitations"); *Barrett v. Ferrell*, 550 S.W.2d 138 (Tex. App. 1977) ("An action for restitution based on unjust enrichment . . . will lie where one person has obtained money from another by fraud, duress or taking an undue advantage; . . . or to recover money received on a consideration that has failed in whole or in part."); *Phillips Petroleum Co. v. Adams*, 513 F.2d 355, 367 & n.17 (5th Cir. 1975) (noting that many Texas cases recognize claims for unjust enrichment even if they do not expressly use that term); *Valoro, LLC v. Valero Energy Corp.*, No. 14-21694-CIV, 2014 WL 3920035, at *4 (S.D. Fla. Aug. 11, 2014) (Moreno, J.) (denying motion to dismiss unjust enrichment claim under Texas law); *Newington Ltd. v. Forrester*, No. 3:08–CV–0864–G ECF, 2008 WL 4908200, *3-4 (N.D. Tex. Nov. 13, 2008) ("Texas courts may waffle about whether unjust enrichment is a theory of recovery or an independent cause of action, but either way, they have provided the plaintiff with relief when the defendant has been unjustly enriched").

Finally, BMW claims that Plaintiffs' unjust enrichment claim relies on a tort-based fraud theory, which is not recognized as a cause of action under New Jersey law. (Dkt. 625 [BMW] at 30-31.) Another federal court recently rejected this argument, finding "New Jersey law to be typical of American jurisprudence. 'To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be

unjust.'" *In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 4634541, at *72 (S.D.N.Y. Aug. 4, 2015) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)); *see also Farley v. GameStop Corp.*, No. 12-4734-cv, 2013 WL 4042434, *5 (D.N.J. Aug. 7, 2013) ("[New Jersey] [c]ourts have typically recognized consumer unjust enrichment claims in two distinct scenarios.   First, a consumer may have a viable unjust enrichment claim when the retailer sells a defective product.   Circumstances may also be unjust when a retailer makes a false statement in advertising the product.") (citations omitted). Plaintiffs' unjust enrichment claims are viable quasi-contractual claims under New Jersey law. *See Lee v. Carter-Reed Co.*, 203 N.J. 496, 504 (2010) (vacating denial of class certification on unjust enrichment claim brought against manufacturer that allegedly misrepresented qualities of product in violation of state consumer fraud act and in breach of express and implied warranties). Such claims are cognizable as independent claims under New Jersey law.   *See Castro v. NYT Television*, 370 N.J. Super. 282 (N.J. App. Div. 2004) ("Unjust enrichment is of course a familiar basis for imposition of liability in the law of contracts."); *Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, No. 3:08-CV-1057-FLW, 2008 WL 5381227, at *8 (D.N.J. Dec. 17, 2008) ("An unjust enrichment claim may be sustained independently as an alternative theory of recovery.").

Accordingly, Plaintiffs' claim for unjust enrichment under California, Texas, and New Jersey law should not be dismissed.[36]

### C.   Plaintiffs have adequately pleaded that they conferred a direct benefit on Defendants.

Defendants incorrectly argue that Plaintiffs must allege that they had a direct relationship with Defendants in order to state a claim for unjust enrichment.   (*See* Dkt. 622 [Takata] at 31; Dkt. 625 [BMW] at 31; Dkt. 612 [Ford] at 21; Dkt. 608 [Mazda] at 27-28; Dkt. 627 [Nissan] at 23-24; Dkt. 615 [Subaru] at 28 n.12; Dkt. 616 [Honda] at 21-22.)   While Florida law requires that plaintiffs directly confer a benefit on defendants, they need not have direct contact with the defendants to do so.   *See Williams v. Wells Fargo Bank N.A.,* No. 11-21233-CIV, 2011 WL 4901346, at *5 (S.D. Fla. Oct. 14, 2011) ("[J]ust because the benefit conferred by Plaintiffs on

---

[36] Having established that unjust enrichment is a recognized cause of action under California, Texas, and New Jersey law, this Court should evaluate whether Plaintiffs have adequately pled such claims under Florida law, as discussed above.   All of the elements of unjust enrichment under Florida law are adequately pled, as explained in Section IV.C and n.39, *infra*.

Defendants did not pass directly from Plaintiffs to Defendants—but instead passed through a third party—does not preclude an unjust-enrichment claim. Indeed to hold otherwise would be to undermine the equitable purpose of unjust enrichment claims."); *Romano v. Motorola, Inc.*, No. 07-CIV-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007) ("Defendant erroneously equates direct *contact* with direct *benefit* in arguing that because plaintiff here did not purchase either his phone or his batteries from Motorola, plaintiff conferred no direct benefit on Motorola.").

For example, in *Carriuolo v. General Motors LLC*, No. 14-61429-CIV, 2014 WL 7011022 (S.D. Fla. Dec. 11, 2014), plaintiffs purchased or leased vehicles from "independent" third-party dealers, which had been shipped to the dealers by defendant GM with incorrect safety stickers on them.  Plaintiffs sued GM for, among other things, unjust enrichment under Florida law.  *Id.* at *1.  Although the complaint contained only conclusory allegations that "GM received and retained wrongful benefits as a result of the purchases and leases made by Plaintiffs" (Case No. 14-61429-CIV, Dkt. No. 7, at ¶ 51), the court denied GM's motion to dismiss the unjust enrichment claim, finding that, "[t]aking all reasonable inference from Plaintiffs' allegations in their favor, Plaintiffs have alleged that they have conferred the required direct benefit upon Defendant."  2014 WL 7011022 at *3.  The court rejected GM's argument that plaintiffs would not be able to show GM was directly benefited by the dealerships' sales because of "the unique way GM's transactions with its independent dealerships are structured."  *Id.*  As the court explained, at the motion to dismiss stage, plaintiffs merely need to allege that it was "plausible" that "a dealership's sale would confer some benefit upon" GM.  *Id.* at *1, *3.

Similar cases abound.  *See, e.g.*, *Feiner v. Innovation Ventures LLC*, No. 12-62495-CIV, 2013 WL 2386656, at *5 (S.D. Fla. May 30, 2013) (denying motion to dismiss filed by defendant that manufactured, marketed, and sold 5-hour Energy product purchased by plaintiffs at third-party retailer because "a consumer can confer a benefit on a manufacturer by purchasing one of the manufacturer's products through a retailer"); *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1268 (N.D. Fla. 2012) (denying motion to dismiss filed by defendant who manufactured, marketed, distributed, and sold Steam Vac vacuum purchased by Plaintiff from intermediary retailer because "Plaintiff has sufficiently alleged that she has conferred a benefit upon the Defendants by purchasing the Steam Vac manufactured by the Defendants for a retail price of over two-hundred dollars."); *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867,

928 (E.D. Pa. 2012) (denying egg producer's motion to dismiss Florida unjust enrichment claim brought by plaintiffs who purchased eggs from intermediary retailers because, notwithstanding requirement of "direct benefit" under Florida law, "there exists other valid Florida law that does not require direct interactions between the plaintiff and defendant in order for a benefit to have been conferred") (collecting cases).

Here, Plaintiffs have clearly alleged that "Takata benefitted through its unjust conduct, by selling Defective Airbags with a concealed safety-and-reliability related defect, at a profit, for more than these Defective Airbags were worth, to Plaintiffs, who overpaid for these Defective Airbags by overpaying for their Class Vehicles, and/or would not have purchased these Defective Airbags and Class Vehicles at all."  (Dkt. 579, ¶ 485.)[37]  Plaintiffs also specifically allege that each Vehicle Manufacturer Defendant "benefitted through its unjust conduct, by selling Class Vehicles with a concealed safety-and-reliability related defect, at a profit, for more than these Vehicles were worth, to Plaintiffs, who overpaid for these Vehicles, and/or would not have purchased these Vehicles at all."  (*Id.*, ¶¶ 547, 638, 685, 747, 838, 885, 940.)[38]  These allegations are more than sufficient to state a benefit conferred under Florida law.[39]  *See, e.g.,*

---

[37] *See also, e.g.*, *id.* ¶¶ 420-22 (alleging that Takata "intentionally subjected Plaintiffs and Class members to [known] risks [of using ammonium nitrate] or consciously disregarded those risks in order to maximize their profits").

[38] (*See also, e.g.*, *id.* ¶ 35 (alleging that "Purchasers or lessees of the Class Vehicles paid more, either through higher purchase price or higher lease payments, than they would have had the Inflator Defect been disclosed); ¶ 917 (alleging that "Toyota actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost Toyota money, and it did so at the expense of Plaintiffs and the Class").).

[39] The Complaint also adequately pleads the other two elements of unjust enrichment under Florida law, which are that "the defendant voluntarily accepted and retained that benefit[,] and . . . the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citing *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1242 n.4 (Fla. 2004)).  (Dkt. 579, ¶¶ 73, 75 (alleging that Defendants unjustly profited from depriving Plaintiffs and Class Members of safe, defect-free airbags and instead providing them with airbags that pose a substantial and unreasonable risk of death or serious bodily injury); ¶¶ 484, 486 (alleging that "Takata has received and retained a benefit from the Plaintiffs" and "[i]t is inequitable for Takata to retain these benefits"), ¶¶ 546, 548 (same for Honda), ¶¶ 637, 639 (same for BMW), ¶¶ 684, 686 (same for Ford), 746, 748 (same for Mazda), ¶¶ 837, 839 (same for Nissan), ¶¶ 884, 886 (same for Subaru), ¶¶ 939, 941 (same for Toyota).)

*Carriuolo*, 2014 WL 7011022, at *3 (denying motion to dismiss because even unadorned allegations were sufficient to make it "plausible" that "a dealership's sale would confer some benefit upon Defendant"); *Romano,* 2007 WL 4199781, at *1-2 (denying Motorola's motion to dismiss unjust enrichment claim brought by plaintiffs who purchased phones and batteries from third-party retailers because "[w]hile the phone is ultimately sold through the retailer, Motorola is directly benefitted through profits earned from the sale of the phone"). Thus, Plaintiffs' unjust enrichment claims should not be dismissed.

Moreover, the Complaint alleges that all of the Vehicle Manufacturer Defendants marketed their vehicles to consumers as safe and reliable even though they were not. (Dkt. 579, ¶¶ 309-10.) Several courts in this District have denied motions to dismiss unjust enrichment claims against manufacturers that marketed their products to consumers but sold the products through third-party retailers. *See, e.g.*, *Carriuolo*, 2014 WL 7011022, at *3 ("[D]ismissal is not proper if the manufacturer of a product marketed its product directly to consumers, but sold its product through an intermediary, i.e., a retail outfit." (internal quotation omitted)); *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F. Supp. 2d 1311, 1338 (S.D. Fla. 2013) (denying motion to dismiss because "Plaintiffs' allegations that Plaintiffs directly conferred a benefit on WhiteWave by purchasing its DHA-fortified milk products at a premium price in reliance on WhiteWave's misrepresentations that the DHA in its products 'supports brain health,' and that WhiteWave profited from its misrepresentations and retains those profits, are sufficient to allege the three elements of an unjust enrichment under Florida law."); *Romano*, 2007 WL 4199781, at *2 ("Plaintiff appropriately notes that Motorola, as the manufacturer of the Razr phone, marketed its product directly to consumers, but sold its product through an intermediary, i.e. a retail outfit."). The same result is warranted here.

### D. Florida's four-year statute of limitations does not bar Plaintiffs' unjust enrichment claims because the doctrines of fraudulent concealment and equitable estoppel apply.

Under Florida law, unjust enrichment claims are subject to a four-year statute of limitations, which accrues at the time the benefit is conferred on the defendant. Fla. Stat. §§ 95.11(3)(k), 95.031; *Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A.*, 938 So. 2d 571, 577 (Fla. Dist. Ct. App. 2006). As the Florida Supreme Court has recognized, however, there are several "legal theories that may operate to deflect the statute of limitations," including equitable estoppel and equitable tolling. *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1076 (Fla.

2001).  More specifically, the limitations period may be "tolled under the equitable doctrine of fraudulent concealment."[40]  *Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc.*, 990 F. Supp. 2d 1254, 1272 (M.D. Fla. 2013) "The doctrine of fraudulent concealment will operate to toll the statute of limitations 'when it can be shown that fraud has been perpetrated on the injured party sufficient to place him in ignorance of his right to a cause of action or to prevent him from discovering his injury.'"  *Id.* (quoting *Nardone v. Reynolds*, 333 So.2d 25, 39 (Fla. 1976), *modified on other grounds*, *Tanner v. Hartog*, 618 So.2d 177 (Fla. 1993)).  "To establish fraudulent concealment, a claimant must allege and establish: '(1) successful concealment of the cause of action, (2) fraudulent means to achieve that concealment, and (3) plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of his claim.'"  *Id.* (quoting *Burr v. Philip Morris USA Inc.*, No. 8:07–CV–01429–MSS–EAJ, 2012 WL 5290164 (M.D. Fla. Sept. 28, 2012), *aff'd*, 559 F. App'x 961, 964 (11th Cir. 2014)).

Here, the Complaint alleges each of these elements.  Plaintiffs allege they were unaware of the dangerous propensities of the Defective Airbags, and thus they were necessarily unaware that they had conferred an inequitable benefit on Defendants.  (Dkt. 579, ¶¶ 471, 525, 624, 671, 725, 824, 871, 918.)[41]  Plaintiffs further allege that Defendants actively concealed material facts concerning the true nature of the Defective Airbags, including by destroying evidence from secret testing, taking steps to ensure their employees did not reveal the defects to regulators, and providing delayed and incomplete disclosures to governmental authorities and the public.  (*Id.*, ¶¶ 17, 30, 197, 224, 385-86 (all Defendants), 13-15, 21, 31, 230-33, 246-60, 263, 464-70, 518-24 (Takata and Honda), 617-23 (BMW), 664-70 (Ford), 718-24 (Mazda), 817-23 (Nissan), 864-70 (Subaru), 911-17 (Toyota).)   Finally, Plaintiffs allege that they were reasonably careful and

---

[40] Courts differ in whether they analyze fraudulent concealment under the doctrine of equitable tolling or equitable estoppel.  *Compare Am. Home Assur. Co.*, 990 F. Supp. 2d at 1272 (citing *Nardone*, 333 So.2d 25 (Fla. 1976) and analyzing fraudulent concealment under the doctrine of equitable tolling) *and Fla. Dep't of Health & Rehabilitative Servs. v. S.A.P.*, 835 So.2d 1091, 1100 (Fla. 2002) (analyzing fraudulent concealment under the doctrine of equitable estoppel). This Court need not choose a single approach, however, since both are permissible methods of deflecting Defendants' statute of limitations defense.  *Morsani*, 790 So. 2d at 1076.

[41] Each Plaintiff alleges that he or she was unaware of the problems associated with the airbag in his or her vehicle at the time of purchase.  (*See, e.g.*, Dkt. 579, ¶ 121 (alleging that "Plaintiff Koehler would not have purchased her 2006 Honda Pilot or would not have paid as much for it if she had known of the problems associated with the vehicle's Inflator Defect").)

diligent in seeking to determine whether vehicles were safe, but they could not discover the true risks posed by the Defective Airbags because of Defendants' active concealment of those facts. (*Id.* ¶¶ 390.)

Faced with similar allegations, the Florida Supreme Court and other courts in this district have denied motions to dismiss on statute of limitations grounds.  *See, e.g.*, *Fla. Dep't of Health & Rehabilitative Servs. v. S.A.P.*, 835 So. 2d 1091, 1100 (Fla. 2002) (reversing dismissal and holding that the doctrine of fraudulent concealment applied to toll the statute of limitations where complaint alleged that defendant "'obstructed' the police investigation, 'falsified' reports, 'altered' records, and otherwise 'actively concealed' the abuse"); *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1334-35 (S.D. Fla. 2012) (denying motion to dismiss on statute of limitations grounds where plaintiff alleged defendants fraudulently concealed evidence and records relating to their illegal conduct, preventing plaintiff from discovering the wrongfulness of defendants' conduct); *and see Am. Home Assur. Co.*, 990 F. Supp. 2d at 1272 (denying motion for summary judgment and concluding that party adequately alleged statute of limitations "should be tolled under equitable doctrine of fraudulent concealment" where party alleged that adversary "provided false information," "concealed the fact that such false information had been provided." and "collected . . . higher payments" as a result).  Thus the same result is warranted here.

Because Plaintiffs have adequately alleged that the doctrine of fraudulent concealment applies to their claims, Defendants' argument concerning the "delayed discovery" doctrine is entirely irrelevant.  (*See* Dkt. 608 at [Mazda] 26-27; Dkt. 614 [Toyota] at 28-29; Dkt. 616 [Honda] at 21-22.)  The Florida Supreme Court has made clear that equitable bases for tolling or estoppel, such as fraudulent concealment, may extend limitations periods, notwithstanding any limitations that the Florida courts or legislature have placed on the "delayed discovery" rule or statutory bases for tolling.  *Morsani*, 790 So. 2d at 1076-77 ("Equitable estoppel differs from other legal theories that may operate to deflect the statute of limitations, such as [delayed] accrual, [statutory] tolling, equitable tolling, and waiver."); *S.A.P.*, 835 So. 2d at 1096 (following *Morsani* in concluding that "the tolling proscription in section 95.051 is inapplicable to equitable estoppel"); *and see Aruanno v. Martin Cnty. Sheriff*, 343 F. App'x 535, 537 n.2 (11th Cir. 2009) (recognizing that "equitable tolling may be available" notwithstanding the "exhaustive" list of instances where tolling is available under Florida statutes); *Carroll v. TheStreet.com, Inc.*, No.

11-CV-81173, 2014 WL 5474061, at *3-9 (S.D. Fla. July 10, 2014) (recognizing distinction between, and separately analyzing, the delayed discovery doctrine, statutory tolling, equitable tolling, and equitable estoppel); *Starling v. R.J. Reynolds Tobacco Co.*, 845 F. Supp. 2d 1215, 1234-35 (M.D. Fla. 2011) (similar).[42]   Accordingly, Defendants' arguments concerning the delayed discovery rule are non-starters and should be ignored.

Finally, "a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred" because "[a] statute of limitations bar is an affirmative defense, and . . . plaintiff[s] [are] not required to negate an affirmative defense in [their] complaint." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal quotation omitted).   In other words, "[a]t the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs" cannot invoke equitable tolling. *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n.13 (11th Cir. 2005) (internal quotation omitted).   Here, as explained above, the Complaint amply alleges that the doctrine of fraudulent concealment applies, and Defendants' statute of limitations affirmative defense should be rejected.   *See, e.g.*, *Sec'y of Labor v. Labbe*, 319 F. App'x 761, 764 (11th Cir. 2008) (reversing dismissal because, "as to those violations that may be time-barred, [Court] cannot conclude beyond a doubt that the Secretary can prove no set of facts that toll the statute" where plaintiff pleaded that defendant knowingly received false payments); *Spadaro*, 855 F. Supp. 2d at 1335 (denying motion to dismiss "[b]ecause [plaintiff] has plead[ed] that the doctrine of equitable tolling applies to his case, and determining the applicability of this doctrine necessarily implicates factual issues which cannot be resolved on a motion to dismiss"); *State Farm Mut. Auto. Ins. Co. v. Kugler*, No. 11-80051, 2011 WL 4389915, at *13 (S.D. Fla. Sept. 21, 2011) (denying motion to dismiss on statute of limitations grounds because the doctrine of equitable tolling "implicate[d] factual issues which the court cannot resolve on a motion to dismiss"); *Court-Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, No. 05-60055CIV, 2008 WL 906101, at *4 (S.D. Fla.

---

[42] *Steinberg v. A Analyst Ltd.*, No. 04-60898-CIV, 2009 WL 806780, at *10 (S.D. Fla. Mar. 26, 2009), cited by Mazda (Dkt. 608 at 27) is simply incorrect in stating that the "Florida Supreme Court has ruled that there is no equitable tolling for unjust enrichment claims . . . ."  The case on which *Steinberg* relies only limited the application of the delayed discovery rule and said absolutely nothing about equitable tolling.  *Davis v. Monahan*, 832 So. 2d 708, 708 (Fla. 2002).

Mar. 31, 2008) (denying motion to dismiss where "a factual question has been raised whether Defendants should be equitably estopped from asserting a statute of limitations defense to the [Plaintiff's] claims").

**V.      Plaintiffs Have Sufficiently Pleaded Fraudulent Concealment Claims.**

As explained in Section II.B, *supra*, the law applicable to Plaintiffs' fraudulent concealment claims is materially uniform throughout the United States, and thus this Court may apply Florida law to Plaintiffs' claims.  Under Florida law, Plaintiffs' fraudulent concealment claims are unquestionably well-pled.  None of the authorities that Defendants invoke from other jurisdictions undermine this conclusion.[43]

**A.      Plaintiffs have adequately alleged Defendants' prior knowledge of the Inflator Defect.**

All Defendants other than Takata and Honda claim that Plaintiffs have not alleged sufficient facts regarding their prior knowledge of the Inflator Defect.[44]   To the extent Defendants contend that Plaintiffs have failed to plead Defendants' knowledge of the defect with particularity (*e.g.*, Dkt. 619 [Nissan] at 16), their argument is without merit.  Plaintiffs have generally alleged such knowledge, and that is all that is required by Rule 9(b).  Fed. R. Civ. P. 9(b) ("Malice, intent, *knowledge*, and other conditions of a person's mind may be alleged generally.") (emphasis added); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1367 (N.D. Ga. 2013).

To be sure, the facts alleged regarding some Defendants' prior knowledge of the Inflator Defect are more specific than those regarding others.  (*E.g.*, Dkt. 579, ¶¶ 207, 209.)  But this heightened level of specificity is not a requirement at this stage of the litigation.  *Twombly*, 550 U.S. at 570 ("we do not require heightened fact pleading of specifics"); *id.* at 555 ("a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations"); *McCabe*, 948 F. Supp. 2d at 1367.  Rather, Rule 8 requires "only enough facts to state a claim to

---

[43]  Takata contends that Plaintiffs' claims should be dismissed for not specifying which jurisdiction's law applies. (Dkt. [622] at 24.)  But as explained earlier, "plaintiffs need not set forth their choice of law contentions in their complaint."  *Hurst*, 474 F. Supp. 2d at 27; *see also Johnson*, 135 S. Ct. at 347.

[44]  (Dkt. 612 [Ford] at 10-12; Dkt. 614 [Toyota] at 13-17; Dkt. 608 [Mazda] at 10, 16-21, 25, 30-31; Dkt. 615 [Subaru] at 25-27, 30-32; Dkt. 625 [BMW] at 14-19; Dkt. [Nissan] 619 at 14-18.)

relief that is plausible on its face," *Twombly*, 550 U.S. at 570, or put another way, "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [Defendants' misconduct]," *id.* at 556.  Plaintiffs here have easily satisfied this standard.

Most critically, Plaintiffs allege that, "[w]hen the Vehicle Manufacturer Defendants purchased Takata's airbags for their vehicles, they were aware that the airbags used the volatile and unstable ammonium nitrate as the primary propellant in the inflators." (Dkt. 579, ¶ 9.)[45] This allegation, along with the fact that ammonium nitrate is widely recognized to be unstable and better suited for demolitions (*id.*, ¶¶ 205-210), as confirmed in basic explosives manuals (*id.*, 209) and Takata's own admissions in patent documents—all of which were publicly available and surely reviewed by the Vehicle Manufacturer Defendants' engineers—that an ammonium nitrate propellant "'might even blow up'" (Dkt. 579, ¶ 207), satisfies the pleading standard.  *See Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1239 (S.D. Fla. 2014) (denying motion to dismiss FDUTPA claim as inadequately pled); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 817 (S.D. Ohio 2012) (holding that plaintiffs adequately pled defendants' prior knowledge of defect based on allegations that defendants "played a role in manufacturing, marketing, and selling the vehicles and that, at the time the vehicles were manufactured and warranted, both [defendants] knew or should have known of the defect due to the mechanics of the design and pre-release testing data").

But there is more.  Plaintiffs specifically allege that "Vehicle Manufacturer Defendants were on notice of the Inflator Defect even before they installed the inflators in their vehicles, because Takata reviewed the designs of the inflators with the Vehicle Manufacturers and the Vehicle Manufacturers approved the designs."  (*Id.*, ¶ 32.)  This allegation came straight from a Takata representative's testimony to Congress, which is referenced in the Complaint (*e.g., id.*, ¶ 328), and thus properly before the Court.  *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *In re Healthsouth Corp. Sec. Litig.*, CV-98-J-2634-S, 2000 WL 34211319, at *2 (N.D. Ala. 2000) (taking judicial notice of congressional testimony when considering motion to

---

[45] Ford strangely claims that Plaintiffs' fraudulent concealment claim "contains no cross-references to any of the prior allegations in the [Complant]" (Dkt. 612 [Ford] at 10), but apparently overlooked paragraph 409, which expressly "reallege[d] and incorporate[d] by reference all of the preceding paragraphs and allegations . . . as though fully set forth in each of the following Claims for Relief."  (Dkt. 579, ¶ 409.)

dismiss).  According to Takata, the Vehicle Manufacturer Defendants "share the blame for this massive recall" because

> whenever a supplier provides a product to an automaker, there's a specification that you're required to meet.  There's a certain set of tests that you have to run, a certain quantity of tests that you have to run. . . . We review it with the [Vehicle Manufacturer Defendants] and they sign off on it and say, 'Yes, we accept this,' or 'No, we don't.'  And [Takata's defective inflators] went through that process.

(Exhibit A [June 2, 2015 Testimony before the House Energy and Commerce Committee] at 47-48.)  These allegations and Takata's testimony establish that engineers from the Vehicle Manufacturer Defendants worked closely with Takata's engineers in the design of the defective inflators, and thus it is plausible to infer, as the Court must at this stage, that the Vehicle Manufacturer Defendants were made aware of Takata's engineers' "warn[ings] of the risk of disintegration and irregular, overly-energetic combustion" and belief that "'ammonium nitrate stuck out like a sore thumb.'"  (Dkt. 579, ¶ 209.)

Further, the Vehicle Manufacturer Defendants were on notice through early incidents in the field, including ruptures in one of Defendant Subaru's vehicles in 2003, in one of Defendant BMW's vehicles in 2003 (which led to a joint BMW-Takata investigation), and in one of Defendant Honda's vehicles in 2004.  (*Id.*, ¶¶ 11, 226-28.)  The Vehicle Manufacturer Defendants gained yet additional knowledge of the Inflator Defect in 2008, "when Honda first notified regulators of a problem with its Takata airbags" (*id.*, ¶ 32), and, of course through the increasing incidents over time, as outlined above, some of which occurred in non-Honda vehicles.  (*Id.*, ¶ 272.d. (BMW incident), ¶ 280.c. (Acura), ¶ 281.a. (Chrysler), ¶ 281.b. (Dodge), ¶ 281.c. (Chevy), ¶ 290.e. (Ford), ¶ 306.b. (BMW); ¶ 307 (incidents have involved vehicles manufactured and sold by Acura, BMW, Chevrolet, Honda, Mazda, Subaru, and Toyota).)  Furthermore, NHTSA complaints dating back to September 2005 show a persistent pattern of unusual behavior in Takata airbags, based on incidents involving "vehicles manufactured by Acura, BMW, Dodge, Ford, Mitsubishi, Pontiac, Subaru, and Toyota."  (*Id.,* ¶ 308.)

These allegations and the reasonable inferences that must be drawn from them more than suffice to plead Defendants' knowledge of the defect.  *Cf. Majdipour v. Jaguar Land Rover N. Am., LLC*, 2013 U.S. Dist. LEXIS 146209, *7 (D.N.J. Oct. 9, 2013) (Land Rover knew of alleged defect based on complaints to NHTSA, complaints to the Land Rover and dealers, and warranty data); *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1097 (N.D. Cal. 2007)

(plaintiffs sufficiently pled active concealment by alleging that manufacturer did not notify consumers of defect in light of complaints and replaced defective parts with other defective parts in order to conceal defects); *Marsikian v. Mercedes Benz USA, LLC*, 2009 U.S. Dist. LEXIS 117012, 2009 WL 8379784 at *14 (C.D. Cal. May 4, 2009) (sufficient allegations of active concealment of known defect based on internal service bulletins, "goodwill" adjustments given to the most vocal owners, and temporary fixes); *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987 (N.D. Cal. Mar. 14, 2013).

This is not a case, contrary to Defendants' claims (*e.g.,* Dkt. 619 [Nissan] at 18), in which Plaintiffs have merely equated a design choice with knowledge of a defect, and thus is unlike *McQueen v. BMW of North America, LLC*, 2014 WL 656619 (D.N.J. Feb. 20, 2014), upon which several Defendants incorrectly rely. The plausible inference that must be drawn from Plaintiffs' allegations, and confirmed by Takata's testimony, is that the Vehicle Manufacturer Defendants, through their direct involvement in the inflator design process and approval of the inflators, were made aware of, but disregarded, common knowledge in the engineering community and Takata's engineers' warnings regarding the risks of using ammonium nitrate. Such warnings and common knowledge were not plausibly alleged in *McQueen*, rendering that case inapplicable.[46] Indeed, it

---

[46] Some Defendants rely on *Herrod v. Metal Powder*, 886 F. Supp.2d 1271 (D. Utah 2012), for the proposition that a recall of a critical component in one manufacturer's vehicle should not place other manufacturers that use the same component on notice that the component is defective. (Dkt. 608 [Mazda] at 21.) But *Herrod* does not come close to supporting Defendants' view, particularly on a motion to dismiss, for several reasons. First, *Herrod* was decided on a motion for summary judgment, not a motion to dismiss, and the parties had specifically agreed "that [defendant] neither knew or should have known about the dangers associated with the [alleged defective component] at the time the [product] at issue in th[e] case was sold by [defendant]." *Id.* at 1277. Indeed, it was taken as true that the defendant "was not aware of any safety concerns, alleged defects or design issues, or accidents involving the [alleged defective component] at any time before" the incident giving rise to the suit. *Id.* at 1273. In contrast, Plaintiffs here allege that Defendants all were aware of the hazards associated with the use of ammonium nitrate in the inflators at the time they sold Class Vehicles, and throughout the class period, Defendants were further aware of numerous additional red flags, yet continued to sell their vehicles. Second, the parties in *Herrod* agreed that the defendant had "played no role in recommending specifying the use of" the alleged defective component. *Id.* at 1276. In contrast, Plaintiffs here allege that the Vehicle Manufacturer Defendants reviewed the designs of the inflators with Takata for their vehicles and approved the designs. And third, the claim asserted in *Herrod* was strict liability for a post-sale failure to warn and involved a single accident that occurred 19 years after the defendant manufactured the product at issue, not claims of fraudulent concealment and more than a decade of ghastly accidents.

is patently implausible that the Vehicle Manufacturer Defendants, sophisticated corporations who employ thousands of experienced engineers, were unaware of the volatility and instability of ammonium nitrate, especially since such volatility and instability were also described in publicly available patent documents.

Nor are Plaintiffs' RICO claims inconsistent with their fraudulent concealment claims against the non-Honda Vehicle Manufacturer Defendants, as some Defendants claim.  (Dkt. 614 [Toyota] at 15.)  Plaintiffs never allege in their RICO claims that the Vehicle Manufacturer Defendants were deceived by Takata's and Honda's pattern of racketeering activity; rather, consumers, Plaintiffs, and regulators were.  (Dkt. 579, ¶¶ 423-25, 428-29.)  The remaining Vehicle Manufacturing Defendants, in contrast, had access to and approved the inflator designs and worked closely with Takata's engineers.  If anything, discovery will likely reveal that the other Vehicle Manufacturer Defendants should be held liable under RICO as well.

### B. The Vehicle Manufacturer Defendants owed Plaintiffs a duty to disclose the Inflator Defect.

Courts are largely in agreement that a defendant is under a duty to disclose a defect that poses a safety risk to consumers, as demonstrated by each of the following cases involving latent automobile defects.  *See, e.g.*, *In re Porsche*, 880 F. Supp. 2d at 826-27 (California law), 855-56 (Michigan law), 860 (New York law), 870-71 (Ohio law), 876-77 (Texas law), 880-81 (Washington law); *Warner v. Ford Motor Co.*, No. 06-cv-02442, 2008 U.S. Dist. LEXIS 82858, *49-50 (D. Colo. Sept. 30, 2008) (Colorado law); *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 675 N.E.2d 584, 595, 221 Ill. Dec. 389 (Ill. 1996) (Illinois law); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 550 (D. Md. 2011) (New York law); *Zwicker v. Gen. Motors Corp.*, No. C07-0291, 2007 U.S. Dist. LEXIS 99310, 2007 WL 5309204 (W.D. Wash. July 26, 2007) (Washington law); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1368-1372 (N.D. Ga. 2013) (Georgia, Texas, Virginia, Florida, Illinois, and California law); *Velasco v. Chrysler Group LLC*, 2014 U.S. Dist. LEXIS 117620, *15 (C.D. Cal. Aug. 22, 2014) (noting that "courts have routinely found that an auto manufacturer's alleged failure to disclose a material defect can be the basis for a claim" under the consumer protection statutes of Florida, Maryland, Massachusetts, and New Jersey).  The authorities upon which Defendants rely (*e.g.*, Dkt. 614 [Toyota] at 18 n.16) primarily involve commercial transactions that did not present a serious safety risk to consumers, and thus are inapplicable.

65

In *Porsche*, for example, the allegation that the use of the defective components "put consumers at risk of engine failure" sufficed to plead the necessary duty to disclose. *In re Porsche*, 880 F. Supp. 2d at 828. *See also, e.g., Warner, supra*, at *32 ("Ford withheld information about three related safety issues -- the Explorer's high susceptibility to rollover, its inadequate roof protection, and inadequacies in its seatbelt system…"); *Connick, supra*, at 595 (Suzuki allegedly sold vehicles knowing of a high susceptibility to rollover and inadequate occupant protection, which it did not disclose to the public).

Other triggers for the duty to disclose are also present here, as Defendants: "[p]ossessed exclusive knowledge of the dangers and risks posed by" the Defective Airbags; "[i]ntentionally concealed" those dangers and risks from Plaintiffs; and/or "[m]ade incomplete representations about the safety and reliability [of the Class Vehicles] while purposefully withholding material facts from Plaintiffs that contradicted these representations." (*See, e.g.*, Dkt. 579, ¶¶ 502 (Takata), 508 (Honda), 656 (BMW), 702 (Ford), 782 (Mazda), 856 (Nissan), 903 (Subaru), 975 (Toyota).)  Given the highly technical nature of the defect, and the fact that the defective inflator is hidden and unobservable by consumers, Plaintiffs and the Class had no knowledge of the dangers and risks it posed. *See* Section II of Statement of Facts, *supra*. Further, all of the Defendants routinely touted the safety of their airbag systems, amounting to highly misleading partial representations that demanded full disclosure of the defect.[47]  (Dkt. 579, ¶¶ 309-310.) Even certain Defendants concede that such incomplete representations give rise to a duty to disclose. (Dkt. 619 [Nissan] at 18.)[48]

---

[47] *See, e.g., S.E.C. v. City of Miami, Fla.*, 988 F. Supp. 2d 1343, 1356 (S.D. Fla. 2013) ("A duty to disclose may be created by a defendant's previous decision to speak voluntarily. Where a defendant's failure to speak would render the defendant's own prior speech misleading or deceptive, a duty to disclose arises."); *Spearman v. Wyndham Vacation Resorts, Inc.*, 69 F. Supp. 3d 1273, 1284 (N.D. Ala. 2014) ("[I]f a party undertakes to speak, even without a duty, he or she must also disclose those facts that are material to the ones already stated so as to make them truthful."); *In re Dixon*, 525 B.R. 827, 858 (Bankr. N.D. Ga. 2015) (applying Michigan law, noting that under Michigan law, "[A] representation can be action or conduct and can be actionable as silent fraud if that action or conduct is intended to create a misimpression to the opposing party.").

[48] Ford relies on *Taylor v. Am. Honda Motor Co., Inc.*, 555 F. Supp. 59 (M.D. Fla. 1982), to argue that it, as a "remote seller," had no duty to disclose to the Inflator Defect to Plaintiffs. (Dkt. 612 [Ford] at 12.  But *Taylor* is easily distinguishable.  *Taylor* merely held that a motorcyclist failed to state an actionable claim for fraudulent concealment where he failed to allege any (1) artifice or trick employed by the seller to prevent him from making a further

Thus, Plaintiffs have more than adequately pled that in failing to disclose the defects, Defendant failed to fulfill a duty imposed on them by well-settled law.

### C.     Plaintiffs have alleged Defendants' fraudulent concealment with sufficient particularity.

While Rule 9(b) undoubtedly applies to Plaintiff's allegations of fraud, claims based on an omission, as Plaintiffs' fraudulent concealment claims are, "can succeed without the same level of specificity required by a normal fraud claim." *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997); *Baggett v. Hewlett–Packard Co.*, 582 F.Supp.2d 1261, 1267 (C.D. Cal. 2007). "This is because a plaintiff alleging an omission-based fraud will 'not be able to specify the time, place, and specific content of an omission as would a plaintiff in a false representation claim.'" *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014) (quoting *Baggett*, 582 F.Supp.2d at 1267). "Because the plaintiffs '[are] alleging a failure to act instead of an affirmative act, the [Plaintiffs] cannot point out the specific moment when the Defendant failed to act.'" *Id.* (quoting Baggett, 582 F.Supp.2d at 1267). Given "the inherent limitations of an omission claim," *id.*, Plaintiffs have adequately alleged the "who, what, when, and where" required to satisfy Rule 9. *See Brooks*, 116 F.3d at 1380-81. "In short, the 'who' is [Defendants], the 'what' is [Defendants'] knowledge of [the Inflator Defect], the 'when' is prior to the sale of Class Vehicles, and the 'where' is the various channels of information through which [the Vehicle Manufacturer Defendants] sold [or advertised] Class Vehicles." *Id; see also McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1367 (N.D. Ga. 2013) ("Plaintiffs allege the dates on which each of them purchased their vehicles, and they contend that Defendants should have disclosed the defect at the time of purchase. Thus, they have set forth the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same.") (quotation marks omitted); *Farley v. GameStop Corp.*, No. 12-4734-cv, 2013 WL 4042434, *4 (D.N.J. Aug. 7, 2013) (holding that plaintiffs adequately pled a "knowing omission"

---

independent inquiry as to material facts, or (2) lack of an equal opportunity to become appraised of facts in question. *Id.* at 64.  Here, in contrast, Plaintiffs have alleged that Defendants actively concealed the Inflator Defect and have made misleading, partial disclosures, and because of the hidden nature of the Inflator Defect, Plaintiffs did have an equal opportunity to become apprised of the material facts Defendants have been concealing.  *Taylor* did not broadly that a remote seller never has a duty to disclose a critical safety defect to a consumer who is a known, intended ultimate purchaser of the defective product.

when plaintiff alleged that defendants "were aware of material information" but did not reveal it to the plaintiffs).

> **D.**    **The economic loss doctrine does not bar Plaintiffs' fraudulent concealment claims.**

The economic loss doctrine is a "judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Tiara Condominium Assoc., Inc. v. Marsh & McLennan Cos.*, 110 So. 3d 399, 401 (Fla. 2013). In an effort to expand the applicability of the economic loss doctrine, Takata, Ford, Toyota, Mazda and Nissan argue that the economic loss rule bars certain Plaintiffs from pursuing their common-law fraudulent concealment claims and statutory consumer protection claims under the laws of their home states.[49] But courts across the country have largely rejected this argument, concluding that the economic loss doctrine does not apply to claims sounding in fraud.

Fundamentally, these Defendants' arguments ignore Plaintiffs' core allegation that Takata and the Vehicle Manufacturer Defendants fraudulently concealed the Inflator Defect in Defective Airbags, and in doing so induced Plaintiffs to purchase or lease Class Vehicles, or to pay substantially more for them. (*See e.g.*, Dkt. 579 at ¶¶ 467-469; 471-474; 667-669; 671-674; 721-723; 725-729.)

In Florida, fraudulent inducement and fraudulent concealment are exceptions to the economic loss doctrine. *See e.g.*, *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 406 (Fla. 2013) ("we also reaffirmed that in cases involving … products liability, the other exceptions to the economic loss rule that we have developed, such as … fraudulent inducement … still apply"); *see also*, *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 966 (N.D. Cal. 2014) (economic loss rule did not bar Florida fraudulent concealment claims based on Ford's failure to disclose vehicle interface defects). Defendants' authorities do not suggest otherwise.[50]

---

[49] Ford and Mazda argue that the Florida Plaintiffs' common-law fraudulent concealment claims must be dismissed (Dkt. 612 at 13; Dkt. 608 at 25), while Takata argues that the Florida, Indiana, Michigan, Missouri, North Carolina, and West Virginia Plaintiffs common-law fraudulent concealment claims must be dismissed. (Dkt. 622 at 26-27.)

[50] In *Burns v. Winnebago Indus., Inc.*, No. 8:13-CV-1427-T-24, 2013 WL 4437246, at *4 (M.D. Fla. Aug. 16, 2013), the court recognized that the fraudulent inducement is an exception to the economic loss doctrine. In *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331 (S.D. Fla.

Similarly, courts in Indiana, Michigan,[51] Missouri, North Carolina and West Virginia have also found that the economic loss doctrine does not bar consumer fraud claims.  Indiana law, for example, allows a plaintiff to recover diminution in value when alleging fraud.  *See e.g., Captain & Company, Inc. v. Stenberg*, 505 N.E.2d 88, 98 (Ind. Ct. App. 1987); *see also*, *In re Ford Motor Co. Bronco II Products Liab. Litig.*, 1995 WL 714441, at *7 (E.D. La. Dec. 4, 1995) (denying Ford's motion to dismiss plaintiff's Indiana law claims for fraud and misrepresentation because they were not barred by the economic loss doctrine.).  And courts applying Missouri law have found that "fraudulent inducement to a contract [is] the breach of a precontractual tort duty," and therefore does not "run afoul" of the economic loss doctrine."  *Elkhart Metal Fabricating, Inc. v. Martin*, No. 14-CV-00705, 2014 WL 2972709, at *2 (E.D. Mo. July 1, 2014) (emphasis added).  Courts applying both North Carolina and West Virginia law have similarly held that the economic loss rule does not bar fraud claims.  *See e.g.*, *Club Car, Inc. v. Dow Chem. Co.*, No. 06 CVS 15530, 2007 WL 2570088, at *3 (N.C. Super. Ct. May 3, 2007) ("North Carolina appellate courts have yet to extend the application of the economic loss doctrine to bar claims based on fraud"); *In re Ford Motor Co. Vehicle Paint Litig.*, No. MDL 1063, 1996 WL 426548, at *13 (E.D. La. July 30, 1996) (economic loss doctrine does not bar fraudulent misrepresentation claims brought under North Carolina law.); *Horan v. Turnpike Ford, Inc.*, 433 S.E.2d 559 (W.Va.1993) (allowing plaintiff to recover purely economic losses for fraud claim).[52]

---

2013), the court applied the economic loss doctrine to strict liability, negligent misrepresentation, and failure to warn claims only.

[51]   As discussed in section XIII, the Michigan Supreme Court has never extended the economic loss doctrine beyond the commercial context.

[52]  Takata's authority fails to address the applicability of the economic loss doctrine in fraud claims: *Reed v. Cent. Soya Co.*, 621 N.E.2d 1069 (Ind. 1993) *opinion modified on reh'g*, 644 N.E.2d 84 (Ind. 1994) (analyzed the applicability of the economic loss doctrine to claims for strict products liability and negligence only); *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 905 (8th Cir. 2013) (analyzed "whether the district court erred in deciding Missouri's economic loss doctrine precluded Dannix's *negligent misrepresentation claim*." (emphasis added); *Moore v. Coachmen Indus., Inc.*, 499 S.E.2d 772, 780 (1998) (the court was not faced with the question of whether the economic loss doctrine would bar a fraud claim) (emphasis added); *Basham v. Gen. Shale*, 377 S.E.2d 830, 834 (W. Va. 1988) ("refused to extend *strict liability* in tort to cases involving economic loss.") (emphasis added).

Finally, Takata, Mazda, Nissan, and Toyota all cite to *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 665 (3d Cir. 2002), to support their claim that Plaintiffs' fraud claims brought under Pennsylvania law should be dismissed.  (Dkt. 622 [Takata] at 26-27; Dkt. 608 [Mazda] at 30, 32; Dkt. 619 [Nissan] at 22; Dkt. 614 [Toyota] at 19.)[53]  But, as the *Werwinski* court acknowledged, its holding was based on a *prediction* of how the Pennsylvania Supreme Court might apply the economic loss doctrine to a common-law fraud claim.   *Werwinski*, 286 F.3d at 665.  Significantly, Pennsylvania courts have disagreed with *Werwinski*'s prediction.   *See Worldwideweb Networx Corp. v. Entrade, Inc.*, 2002 WL 1472336, at *3 (Pa. Com. Pl. June 20, 2002) (finding that the economic loss doctrine does not apply to intentional tort claims); *Teledyne Technologies Inc. v. Freedom Forge Corp.*, 2002 WL 748898, at *11 (Pa. Com. Pl. Apr. 19, 2002) (holding that, "if Pennsylvania law were to apply, the economic loss doctrine would not bar the plaintiff's intentional misrepresentation claim.").  Other courts have refused to apply the economic loss rule to intentional torts, concluding that economic loss doctrine is limited to claims for "*negligence* that results solely in economic unaccompanied by physical injury or property damage."   *L.R. McCoy & Co., Inc. v. Beiler*, No. CIV.A.10-1301, 2011 WL 925410, at *5 (E.D. Pa. Mar. 16, 2011) (emphasis added).[54]

   **E.    Plaintiffs have adequately alleged causation.**

Plaintiffs have adequately pled that Defendants' concealment of material facts caused their injury, and that they relied on Defendants' omissions.  Specifically, but for Defendants' omissions of a dangerous safety defect—a highly material fact for consumers—Plaintiffs would not have purchased Class Vehicles or would not have paid as much for them as they did.  (Dkt. 579, ¶¶ 76-187.)  Nor could Plaintiffs have discovered the defect on their own, given its hidden

---

[53] Mazda also cites to *Excavation Technologies, Inc. v. Columbia Gas Co. of Pennsylvania*, 2007 PA Super 327, 936 A.2d 111 (2007) *aff'd*, 604 Pa. 50, 985 A.2d 840 (2009), which addressed the applicability of the economic loss doctrine to negligent misrepresentation claims.  Toyota also cites to *Fid. & Deposit Co. of Maryland v. Int'l Bus. Machines Corp.*, No. CIV. 1:05-CV-0461, 2005 WL 2665326, at *1 (M.D. Pa. Oct. 19, 2005), which addressed the applicability of the economic loss doctrine to negligence and strict liability claims.  Plaintiffs do not assert such claims under Pennsylvania law.

[54] If this Court finds there is a split of authority in Pennsylvania, it should follow Pennsylvania state courts, which have found that the economic loss doctrine does not bar intentional torts, instead of *Werwinski's* "prediction," which, has been rejected by Pennsylvania's state courts.

and technical nature, and Defendants' ongoing active concealment.  This suffices to plead causation and reliance.  *See*, *e.g.*, *McCabe v. Daimler AG*, 948 F. Supp. 2d at 1367 ("Plaintiffs allege that they would never have purchased their vehicles had they known of the defect. Thus, they have alleged "the content of [the omission] and the manner in which [it] misled [them].") (citations omitted); *In re Porsche*, 880 F. Supp. 2d at 861 (the omission "altered [the plaintiffs'] individual buying decisions," as they were unware of the defect "at the time they purchased their vehicles and that, due to the design and placement of the coolant tubes, they could not have reasonably discovered the defect before they purchased their vehicles.").  Plaintiffs have also pled that Defendants intended that Plaintiffs and consumers rely on their omissions.  (*See*, *e.g.*, Dkt. 579, ¶ 1298.)

Finally, in addition to the direct causation and reliance allegations above, Plaintiffs meet the pleading requirements implicitly by alleging that Defendants concealed a defect that was material, because that information about a safety defect would have been important to reasonable consumers, including Plaintiffs.  *See*, *e.g.*, *Cirone-Shadow v. Union Nissan*, 955 F. Supp. 938, 944 (N.D. Ill. 1997) (under Illinois law, reliance on a material omission is presumed); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 484 (C.D. Cal. 2012) (same under California, Illinois, Maryland, and New York law).

## VI.   Plaintiffs Have Sufficiently Pleaded Statutory Consumer Protection Claims.

### A.   Plaintiffs have adequately alleged Defendants' deceptive conduct.

Defendants' pleading-sufficiency arguments against Plaintiffs' statutory consumer protection claims are no different than their pleading arguments against Plaintiffs' fraudulent concealment claims,[55] and fail for the same reasons.  *See* Sections V.A-C, *supra*; *see also Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1239 (S.D. Fla. 2014) (finding that similar allegations satisfied pleading requirements for FDUTPA claim).  Because a deceptive, knowing omission constitutes deceptive and unfair conduct under every applicable statutory scheme, Plaintiffs have adequately alleged that Defendants engaged in deceptive and unfair conduct.

### B.   Plaintiffs' statutory consumer protection claims are not time-barred.

---

[55] (Dkt 612 [Ford] at 27-28, 31-33; Dkt. 614 [Toyota] at 13-18; Dkt. 608 [Mazda] at 10, 16-21, 24, 27, 32; Dkt. 615 [Subaru] at 23-27; Dkt. 625 [BMW] at 14-20, 22-24; Dkt. 616 [Honda] at 24; Dkt. 619 [Nissan] at 14-21.)

Plaintiffs have alleged that Class Members "had no realistic ability to discern that the vehicles were defective until – at the earliest – after either the Defective Airbag exploded or their vehicles were recalled … [a]nd even then, Plaintiffs and Class Members had no reason to discover their causes of action because of Defendants' active concealment of the true nature of the defect."  (Dkt. 579, ¶ 390).  To that end, it was not until May 18, 2015, after more than a decade of actively concealing the Inflator Defect that Takata finally admitted that "a defect related to motor vehicle safety may arise in some of the subject inflators."  (*Id.*, ¶ 301.)  Nevertheless, Takata, Honda, BMW, Ford, Mazda, and Toyota wrongfully contend that certain statutory consumer claims brought under the laws of various states are time-barred.[56]

Takata, Honda, BMW, Ford, Mazda, and Toyota all contend that the statutes of limitation on Plaintiffs' claims under FDUTPA have expired and that there is no discovery rule that would toll the limitations period.  (Dkt. 622 [Takata] at 26-27; Dkt. 616 [Honda] at 24; Dkt. 625 [BMW] at 21, 23; Dkt. 612 [Ford] at 29; Dkt. 608 [Mazda] at 27; Dkt. 614 [Toyota] at 28).  In so arguing, Defendants completely ignore that the FDUTPA limitations period *can be tolled where, as here, a party fraudulently conceals the existence of a cause of action.  See, e.g. Speier-Roche v. Volksw Agen Grp. of Am. Inc.*, No. 14-20107-CIV, 2014 WL 1745050, at *7 (S.D. Fla. Apr. 30, 2014) ("[T]o invoke a fraudulent concealment toll, Plaintiff must plead facts establishing that Defendant deliberately and actively concealed the material facts for the purpose of inducing her to delay filing this action.").[57]

Takata similarly insists that the statutory consumer protection claims brought under Connecticut, Hawaii, Indiana, Minnesota, Ohio, Rhode Island, and West Virginia law are time-

---

[56] Plaintiffs have alleged that "any applicable statute of limitations, has . . . been tolled by Defendants' knowledge, *active concealment*, and denial…" (Dkt. 579 at ¶ 387) and that Defendants ". . . failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective airbags installed in them." (Dkt. 579 at ¶¶ 1198, 1264, 1325, 1459, 1646, 1718, 1875.)  To the extent Defendants require more, the law does not require it. Indeed, Plaintiffs are not required to negate the existence of an affirmative defense, such as statute of limitations, in their Complaint.  *La Grasta*, 358 F.3d at 845 (11th Cir. 2004) ("A statute of limitations bar is an affirmative defense, and . . . plaintiff[s][are] not required to negate an affirmative defense in [their] complaint.") (citation and internal quotations omitted).

[57] As discussed in Part IV.D, Plaintiffs have adequately pled that the doctrine of fraudulent concealment applies to toll the statutes of limitations governing their claims.

barred under their respective statutes of limitations.  (Dkt. 622 at 30.) [58]  These arguments must also fail  because these states also recognize that fraudulent concealment can toll a limitations period.  *See e.g.*, *Lowther v. U.S. Bank N.A.*, 971 F. Supp. 2d 989, 1010 (D. Haw. 2013) ("The district court has recognized that the four-year limitations period of a UDAP claim may be tolled based on . . . fraudulent concealment.") (citation and quotations omitted); *Cwiakala v. Econ. Autos, Ltd.*, 587 F. Supp. 1462, 1466 (N.D. Ind. 1984) (Indiana law recognizes fraudulent concealment as tolling the statute of limitation) (citation omitted); *Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06-cv-00018, 2006 WL 3359448, at *6 (N.D. Ohio Nov. 17, 2006) ("Ohio law recognizes that the concealment of a cause of action can toll the statute of limitations … [o]ne such circumstance is fraudulent concealment."); *see also, Perkins v. Falke & Dunphy, LLC*, No. 25162, 2012 WL 6097104 at *3 (Ohio Ct. App. Dec. 7, 2012) ("fraudulent concealment may serve as a ground for equitable tolling ... in compelling cases which justify a departure from established procedure")[59]; *Block v. Toyota Motor Corp.*, 5 F. Supp. 3d 1047, 1059 (D. Minn. 2014) ("fraudulent concealment 'tolls the statute of limitations until the party discovers, or has a reasonable opportunity to discover, the concealed defect.'") (citation omitted); *Robinson v. Quicken Loans Inc.*, 988 F. Supp. 2d 615, 625 (S.D. W.Va. 2013) (noting that West Virginia has a discovery rule which "should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew … [or] should have known, of

---

[58]Takata's cases fail to support its position: *Kersh v. Manulife Fin. Corp.*, 792 F. Supp. 2d 1111, 1122 (D. Haw. 2011) (noting that Hawaii's consumer protection statute has a four-year statute of limitation, but also noting that the statute of limitation can be tolled by a claim of fraudulent concealment); *A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E. 2d 955, 964-65 (Ind. Ct. App. 2000) (noting that the Indiana Deceptive Sales Act has a two-year statute of limitation); *Klehr v. A.O. Smith Corp.*, 875 F. Supp. 1342, 1352-53 (D. Minn. 1995) (noting that Minnesota's consumer protection law has a six-year statute of limitation); *Cypher v. Bill Swad Leasing Co.*, 521 N.E.2d 1142, 1144 (Ohio Ct. App. 1987) (noting that the discovery rule did not apply to the Ohio consumer protection statute, but failing to address a situation where fraudulent concealment is alleged); *Santanelli v. Remington Arms Co., Inc.*, No. 11-civ-0245, 2011 WL 6003199, at *1-2 (D. R.I. Nov. 30, 2011) (discussing Rhode Island's discovery rule in the context of a personal injury case); *McCoy v. S. Energy Homes, Inc.*, No. 09-civ-1271, 2012 WL 1409533, at *11 (S.D. W. Va. Apr. 23, 2012) (noting that West Virginia's consumer protection act has a four year limitation period).

[59] Plaintiffs allegations likewise provides a "compelling case" of fraudulent concealment.  (*See e.g.*, Dkt. 579 at  ¶¶ 11-13, 17-18, 230-33, 254.)

the elements of a possible cause of action," and acknowledging that even if the discovery rule does not apply to the specific cause of action, the Court "must determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action") (citations and quotations omitted).

Courts in Rhode Island have noted that Rhode Island's DTPA does not have a limitations period, and courts should look at the underlying claim to determine the length of the limitations period. *See Kennedy v. Acura*, No. 01-4063, 2002 WL 31331373, at *6 (R.I. Super. Aug. 28, 2002) (acknowledging that Rhode Island's DTPA "does not have its own statute of limitations … [and] the period of limitations for DTPA claims depends on the underlying nature of the claim itself.") (citation omitted). But the Rhode Island Supreme Court has held that Rhode Island applies the discovery rule, which would delay the accrual of Plaintiffs' causes of action. *See e.g.*, *McNulty v. Chip*, No. 2014-97-APPEAL, 2015 WL 3511897, at *6 (R.I. June 4, 2015) (affirming that Rhode Island in fact does have its own discovery rule, and that "when the fact of the injury is unknown to the plaintiff when it occurs, the applicable statute of limitations will be tolled and will not begin to run until, in the exercise of reasonable diligence, the plaintiff should have discovered the injury or some injury-causing wrongful conduct.") (citation and quotations omitted).

Finally, BMW's argument that Plaintiff's Alabama DTPA claim falls outside the limitation period (Dkt. 625 at 23.) completely ignores Alabama Code § 6-2-3, which provides that "[i]n actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." Ala. Code § 6-2-3; s*ee also*, *Utilities Bd. of City of Opp v. Shuler Bros.*, 138 So. 3d 287, 293 (Ala. 2013), reh'g denied (Aug. 23, 2013) ("[t]he discovery rule in Alabama applies only to fraud actions … and cases involving the fraudulent concealment of the existence of a cause of action.") (citations and quotations omitted).

### C.  The economic loss doctrine does not bar Plaintiffs' statutory consumer protection claims.

Takata, Mazda, Nissan, and Toyota all rely on *Werwinski*, 286 F.3d at 665, to claim that Plaintiffs' statutory consumer fraud claims under Pennsylvania law should be dismissed. (Dkt. 622 [Takata] at 26-27; Dkt. 608 [Mazda] at 30, 32; Dkt. 619 [Nissan] at 22; Dkt. 614 [Toyota] at 19.) But the Third Circuit's prognostication of Pennsylvania law on the application of the

economic loss rule to UTPCPL claims, like its prediction regarding common law fraud claims, has been rejected by Pennsylvania's courts, and is thus unavailing. *See, e.g.*, *Oppenheimer v. York Int'l*, No. 4348 March Term 2002, 2002 WL 31409949, at *5 (Pa. Com. Pl. Oct. 25, 2002) (rejecting *Werwinski* as "a rare case for pitting the economic loss doctrine against statutory claims" and noting that a UTPCPL claim has "justification independent of … [the] exception for the economic loss doctrine for common law intentional torts"); *see also*, *Seward v. Certo*, No. CIV. A. 05-6363, 2006 WL 266150, at *2 (E.D. Pa. Feb. 2, 2006) ("Pennsylvania courts … have expressly disagreed with *Werwinski's* holding and refused to apply the economic loss doctrine to UTPCPL claims."); *Zwiercan v. Gen. Motors Corp.*, No. 3235 June Term 1999, 2002 WL 31053838 at *7 (Pa. Com. Pl. 2002) (rejecting GM's argument that a UTPCPL claim was barred by the economic loss doctrine because Plaintiffs were seeking economic loss.).

**D.    Statutory prohibitions on class actions have no effect in federal court.**

Takata, BMW and Toyota contend that Plaintiffs may not pursue their consumer protection claims as a class action in Alabama, Georgia, Louisiana, South Carolina, Tennessee, and Virginia because these states have statutes prohibiting class actions in cases of consumer fraud. (Dkt. 614 at 20, Fn. 18; Dkt. 622 at 29; Dkt. 625 at 22.)  But the Eleventh Circuit, as Toyota concedes, albeit in a footnote, recently held that such statutes cannot impede class actions in federal court.  *See Lisk v. Lumber One Wood Preserving LLC*, No. 14-11714, — F.3d —, 2015 WL 4139740 (11th Cir. July 10, 2015).

In *Lisk*, the plaintiff filed a putative nationwide class action against Lumber One Wood Preserving LLC ("Lumber One") in the District Court for the Northern District of Alabama after a wooden fence he installed at his home quickly deteriorated, contrary to warranty representations made by Lumber One.  The basis for federal jurisdiction was the Class Action Fairness Act ("CAFA").  *Id.* at *1.  Lumber One moved to dismiss the class allegations under the Alabama Deceptive Trade Practices Act ("ADTPA"), arguing that the Alabama statute expressly forbids private class actions.  Like Defendants in this case, Lumber One pointed to Alabama Code § 8-19-10(f), which provides that "a consumer or other person bringing an action under [the ADTPA] may not bring an action on behalf of a class."  The district court agreed that the ADTPA bars class actions by private consumers, and dismissed the class allegations.  *Id.*

The Eleventh Circuit reversed, holding that in light of *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), state prohibitions on class

actions are trumped by Federal Rule of Civil Procedure 23.  *Id.* at *5.  In *Shady Grove*, the plaintiff filed a class action in federal court alleging statutory penalty claims under New York law even though the New York statute prohibited a class action for statutory penalties.  The United States Supreme Court held that state prohibitions against class actions are procedural in nature and the "right . . . not to be subjected to aggregated class-action liability in a single suit" is not a substantive right.  *Shady Grove*, 559 U.S. at 408.  Therefore, Rule 23 applied and the class action could proceed in spite of the state statute.  *Id.* at 406.

Some district courts tried to distinguish *Shady Grove*, reasoning that a class action prohibition that is part of the consumer protection law itself is substantive and therefore overrides Rule 23.  *See, e.g., Stalvey v. American Bank Holdings, Inc.*, No. 4:13–cv–714, 2013 WL 6019320 at *4 (D.S.C., Nov. 13, 2013) (distinguishing *Shady Grove* on basis that class action prohibition before them was part of consumer code).  The Eleventh Circuit, however, definitively *rejected* this approach in *Lisk*, reasoning that "how a state chooses to organize its statutes affects the analysis not at all."  2015 WL 4139740 at *4.  Thus, under *Lisk*, the placement of the class action prohibitions in the Alabama, Georgia, Louisiana, South Carolina, Tennessee, and Virginia[60] consumer protection statutes is—according to the Eleventh Circuit—immaterial to the analysis, and the class action prohibitions are ineffective, yielding to Rule 23.  *Id.* at *4-5. ("The bottom line is this.  The Alabama statute restricting class actions, like the New York statute at issue in *Shady Grove*, does not apply in federal court. Rule 23 controls.").  *See also Saccoccio v. J.P. Morgan Chase Bank, N.A.*, Slip Copy, 2015 WL 3822315 at *5, n. 6 (S.D. Fla. June 9, 2015) ("[t]he Supreme Court has specifically held that Federal Rule of Civil Procedure 23 trumps the prohibition of class claims in a state statute" (citing *Shady Grove*, 559 U.S. at 398-99)).

**E.      Statutory pre-suit notice requirements do not bar Plaintiffs' claims.**

---

[60] Ala. Code § 8-19-10(f): "A consumer or other person bringing an action under this chapter may not bring an action on behalf of a class."  Ga. Code Ann. § 10-1-399(a): a plaintiff "may bring an action individually, but not in a representative capacity."   La. Rev. Stat. § 51:1409(A): a plaintiff  "may bring an action individually but not in a representative capacity."   S.C. Code § 39-5-140(a): a plaintiff "may bring an action individually, but not in a representative capacity."  T.C.A.  § 47-18-109(a)(1): a plaintiff "may bring an action individually to recover actual damages."  Va. Code Ann. § 8.2-314 has no such provision but unless specifically allowed by statute, class action relief is not generally available in Virginia in actions at law. *King v. Va. Birth–Related Neurological Injury Compensation Program*, 22 Va. Cir. 156 (1990).

Toyota, Mazda, BMW and Honda move to dismiss Plaintiffs' Complaint on grounds that, in some instances, the pre-suit notice required by various state consumer protection statutes was not provided (Dkt. 608 [Mazda] at 24 and 28; Dkt. 614 [Toyota] at 20; Dkt. 616 [Honda] at 20-21; Dkt. 625 [BMW] at 22-23). These Defendants' arguments fail for several reasons.

1.   *State pre-suit notice requirements are purely procedural and do not grant or deny a substantive right.*

As a threshold matter, Plaintiffs were not required to provide pre-suit notice in this federal action because the various state notice requirements, which are purely procedural in nature, have no effect in federal court. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938) (federal court sitting in diversity must apply relevant substantive rather than procedural state law requirements to state law claims). Consequently, courts routinely hold that state notice statutes are trumped by Rule 23. For example, in *Mace v. Van Ru Credit Corporation*, 109 F. 3d 338, 345-46 (7th Cir. 1997), the Seventh Circuit refused to dismiss an action when the plaintiff did not comply with a Wisconsin consumer protection statute's pre-suit notice requirement in a Rule 23 federal class action suit brought in diversity. *Mace*, 109 F. 3d at 345-46. And like Defendants here, the *Mace* defendants argued that the plaintiffs' procedural failure to comply with the notice requirement required dismissal. Relying on *Hanna v. Plumer*, 380 U.S. 460, 467-68 (1965), which held that the Federal Rules of Civil Procedure must be applied when there is a conflict with a procedural state rule, the Seventh Circuit rejected the defendants' argument. *Id.* at 346. The court reasoned that the pre-suit notice provisions, like those at issue here, do "not grant or deny a substantive right . . . [r]ather, it affects the period within which that right can be exercised." *Id.* Since Rule 23 does not contain a similar pre-suit notice requirement, the state rule conflicted with the federal rule, thus requiring application of the federal rule. *Id.*

Courts in the Eleventh Circuit also follow this approach. In *Braddock v. Orlando Reg'l Health Care Sys., Inc.*, 881 F. Supp. 580 (M.D. Fla. 1995), for example, the precise issue was whether certain procedural rules – including pre-suit notice and expert affidavits requirements – contained in Florida's medical malpractice provisions must be enforced by a federal court sitting in diversity. After analyzing whether these relevant sections were substantive or procedural, the *Braddock* court found that "where states have created specialized hurdles for filing causes of action, as Florida has with regard to medical malpractice suits, the Eleventh Circuit has consistently favored the federal rules." *Id.* at 583-84.

77

The *Braddock* court concluded that section 766.106, which requires 90 days pre-suit notice before suit can be filed, directly conflicts with Federal Rules of Civil Procedure 3 and 4. "As a result of this conflict, the heightened notice requirement followed by a waiting period before formally filing suit should not be considered part of the substantive law of a state, to be applied in federal court." *Id.* at 584.   Similarly, the *Braddock* court concluded that the heightened pleading requirement of section 766.203, which requires a corroborating expert affidavit in support of a medical negligence claim, directly conflicts with Federal Rule of Civil Procedure 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.*   Based on its analysis that sections 766.106 and 766.203 directly conflict with Federal Rules of Civil Procedure 3, 4, and 8(a), the *Braddock* court denied the defendants' motions to dismiss the plaintiff's complaint for failing to comply with the notice and corroborating expert affidavit provisions of the pre-suit statutes. *Id.*

Here, the pre-suit notice requirements of Alabama, Georgia, Massachusetts and West Virginia are, in the words of the *Braddock* court, "specialized hurdles for filing causes of action." 881 F. Supp. at 583-84.  They do "not grant or deny a substantive right . . . [r]ather, [they] affect the period within which that right can be exercised." *Mace*, 109 F. 3d at 346.  They are, in short, purely procedural.[61]  Since Federal Rule of Civil Procedure 23 does not contain a similar pre-suit notice requirement, the state rules requiring such notice conflict with the federal rule, and thus require application of the federal rule.  *Caster v. Hennessy,* 781 F. 2d 1569, 1570 (11th Cir. 1986) (federal law governs pleading requirements); *Brown v. Nichols*, 8 F. 3d 770, 773 (11th Cir. 1993) (same); *Plumbers & Steamfitters Local No. 150 Pension Fund v. Vertex Constr. Co.*, 932 F. 2d 1443, 1448 (11th Cir. 1991) (emphasizing the liberality of the principles of notice pleading that govern federal procedure); *Ferrero v. Associated Materials Inc.*, 923 F. 2d 1441, 1448 (11th Cir. 1991) (federal courts should "apply the federal rules of civil procedure to the exclusion of any contrary state procedure as long as the rule is both constitutional and within the scope of the rules' enabling act").  Accordingly, Federal Rule of Civil Procedure 23 controls, and Defendants' motions to dismiss for lack of compliance with state notice statutes must fail.

---

[61] Tellingly, BMW admits that the pre-suit notice requirement of Alabama is procedural in nature when it refers to Plaintiffs' allegedly "*procedurally* flawed" claim (Dkt. 625 at 23) (emphasis added).

2.      *Even if this Court decides that state pre-suit notice requirements apply, they have been satisfied or excused.*

Even if this Court finds that the particular state pre-suit notice requirements apply to this case, Defendants' motions to dismiss still fail because the notice requirements of the state statutes at issue have either been satisfied or excused.

Plaintiffs have alleged that they provided Defendants with sufficient written notice of the nature of their claims, including a detailed account of Defendants' wrongful and deceptive conduct and the economic harms Plaintiffs' suffered from such conduct.  (Dkt. 579 at ¶¶ 1062, 1238, 1421, 1893.)  Defendants attempt to refute Plaintiffs' unequivocal allegations by insisting that notice was not given by the proper individual Plaintiff(s).  (*See e.g.* 608 at 24.)  This argument rings hollow, however, because notice was provided to Defendants by "Plaintiffs' counsel *on behalf of Plaintiffs* . . . "  (Dkt. 579 at ¶¶ 1062, 1238, 1421, 1893.)  Defendants fail to adduce any legal argument or authorities to support their view that notice must come from specific individuals even in a class case such as this one.  Defendants also attack Plaintiffs' pre-suit notice allegations by insisting that they were afforded insufficient notice time.  (*See e.g.*, Dkt. 616 [Honda] at 20-21.)  This argument fares no better, however, because it rests on highly specific and fact-intensive inquiries that are entirely improper at this stage of the litigation.  *Jozwiak v. Stryker Corp.*, No. 6:09-cv-1985 ORL, 2010 WL 743834 at *2 (M.D. Fla. Feb. 26, 2010) (when adjudging a motion to dismiss, a court "must limit its consideration to the complaint . . .documents incorporated into the complaint by reference, and matter of which the court may take judicial notice").[62]

Defendants also conveniently ignore that pre-suit notice requirements are meant to be interpreted liberally and that courts typically consider them as merely formalistic and ceremonial.   *York v. Sullivan*, 338 N.E.2d 341, 346, 369 Mass. 157, 163 (Mass. 1975) ("[d]emand before suit is often a fruitless ceremony").  *See also*, *White v. Teays Valley Health*

---

[62]  For example, Honda contends that the Massachusetts Plaintiffs provided it with notice only on June 5, 2015 (Dkt. 616 at 21), even though Plaintiffs clearly allege the requisite notice was provided on October 27, 2014 (Dkt. 579, ¶ 1421.)  Any effort to weigh Honda's statements against Plaintiffs' factual allegations imposes on Plaintiffs an improper evidentiary burden.  *Rottner v. AVG Technologies USA, Inc.*, 943 F. Supp. 2d 222, 231-32 (D. Mass. 2013) (reasonableness of notice to seller as to alleged defects is a question of fact that cannot be resolved on a motion to dismiss).

*Services, LLC*, No. 06-C-1044, 2006 WL 4524697 at *1 (W.Va.Cir.Ct. Nov. 9, 2006)  (rather

than granting the defendant's motion to dismiss, granting brief stay of proceedings to allow

plaintiff to cure notice requirements); *Stringer v. Bugg*, 254 Ga.App.745, 747 (2002) ("But this

court has held that the notice requirement of the OCGA § 10-1-399(b) must be liberally

construed."); Ala.Code § 8-19-2 (1975) ("The public health, welfare and interest require a strong

and effective consumer protection program to protect the interest of both the consuming public

and the legitimate business person.").   Accordingly, even if, *arguendo*, the notices Plaintiffs

provided Defendants describing the nature of their claims are deemed insufficient to satisfy the

pre-suit notice requirements, there can be little doubt that Plaintiffs' individual and subsequent

consolidated complaints are enough to cure the defect.

    **F.**    **Takata's idiosyncratic arguments against Plaintiffs' statutory consumer
protection claims are unavailing.**

    *1.*    *Takata's Deceptive Acts Were Indisputably Directed at Plaintiffs.*

Takata's argument that its actions were not "directed at consumers" is, to put it bluntly,

absurd.  (Dkt. 622 at 27-28.)  Both the Complaint's allegations and common sense dictate that

Plaintiffs were the ultimate consumers of the Class Vehicles, and, therefore, of Takata's

Defective Airbags.  (Dkt. 579, ¶¶ 204-209, 221-227, 418-425.).   As such, Takata's conduct in

concealing the defect was unquestionably directed at Plaintiffs.

The cases cited by Takata offer no basis to justify a different conclusion.  Takata cites

*Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000), a case where the court affirmed

dismissal of plaintiff's consumer protection claims because they arose out of a "single shot,"

"private" transaction between two writers.  The court found that the case fell outside the scope of

New York's consumer protection statute because the conduct was not directed at consumers and

"[p]rivate contract disputes, unique to the parties … would not fall within the ambit of the

statute."  *Id.* (citation omitted).[63]   *Maurizio* is easily distinguishable from this case because

Plaintiffs' allegations here are grounded in Takata's concealment of a uniform defect from all

---

[63] The court also noted that plaintiff failed to allege that the defendant "intended to deceive
consumers in a material way when she represented herself as the sole author of *The First Wives'
Club*, or that [plaintiff] herself was somehow misled or injured as a result of the deception."  *Id.*
Here, Plaintiffs have alleged throughout their complaint that both Takata intended to deceive
consumers, and that Takata misled and injured consumers as a result of its deception.  (*See e.g.*,
Dkt. 579, ¶¶ 34-35, 1067, 1080, 1196-97, 1209, 1432, 1444, 1587-88, 1600, 1690-91, 1703.)

consumers who purchased or leased a Class Vehicle—a defect plaguing millions of vehicles and affecting millions of transactions occurring throughout the United States.  Accordingly, any case on which Takata relies concerning private contractual disputes should be rejected out-of-hand. *Cf. Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 150 (Colo. 2003) (dismissing consumer protection claims in a private contract dispute over an exclusive distributorship agreement).

Takata next relies on cases that are likewise distinguishable because they involve commercial disputes between businesses; they are *not* consumer deception cases.  *See Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 411, 413 417 (E.D. Pa. 2010) (rejecting consumer claims under Michigan, New York, and Arizona law because the conduct complained of by plaintiffs was aimed at the PTO and other drug manufacturers, not consumers.); *In re Auto. Refinishing Paint Antitrust Litig.*, 515 F. Supp. 2d 544, 552-53 (E.D. Pa. 2007) (affirming New York law which provides that when the alleged deceptive act occurs in a transaction between two companies, it is not actionable under New York's consumer protection statute.); *In re Rezulin Products Liability Litigation*, 390 F.Supp.2d 319, 338-39 (S.D.N.Y. 2005) (same).

There is little doubt that Plaintiffs here fit the description of a "consumer," under both the relevant consumer protection statutes and in the cases cited by Defendant Takata.  *See e.g., Cruz v. NYNEX Information Resources*, 263 A.D.2d 285, 289 (N.Y.A.D. 1 Dept. 2000) ("In New York law, the term consumer is consistently associated with an individual or natural person who purchases goods, services or property primarily for personal, family or household purposes") (citations and quotations omitted); Colo. Rev. Stat. Ann. § 6-1-113 ("An action under this section shall be available to any person who: (a) Is an actual or potential consumer of the defendant's goods, services, or property and is injured as a result of such deceptive trade practice . . . ."); La. Rev. Stat. Ann. § 51:1402 ("'Consumer transaction' means any transaction involving trade or commerce to a natural person, the subject of which transaction is primarily intended for personal, family, or household use.").

Takata also relies on *Ganim v. Smith & Wesson Corp.*, 780 A.2d 98 (Conn. 2001), a case in which the court dismissed the plaintiffs' consumer protection claims after finding that there were too many intervening factors in the causal chain between plaintiff's injuries and the defendants' allegedly unlawful conduct.  *Id.* at 118.  In particular, the court found it significant

that "the harms suffered by the plaintiffs are derivative of those suffered by the various actors in between the defendants and the plaintiffs." *Id.*  Here, unlike *Ganim*, the economic harm suffered by plaintiffs is not derivative of those suffered by any other parties—it flows directly from Defendants' misconduct.  Plaintiffs have alleged that they would not have agreed to pay the price they did pay for their vehicles or would not have purchased them at all but for Defendants' misconduct, and thus that Defendants' misconduct directly injured them.  (Dkt. 579, ¶¶ 34-36, 72-187.)  Moreover, Takata and all the other Defendants benefitted from the wrongful conduct in which they all participated.  (*See e.g.*, *id.*, ¶¶ 6, 33, 221, 1076.)

Similarly, Takata relies on *In re Wellbutrin XL Antitrust Litigation*, 260 F.R.D. 143 (E.D. Pa. 2009), a case where the court dismissed the consumer protection claim brought by employee benefit plans because the only allegation of deceit was that "defendants originally deceived the FDA and the federal courts by filing sham litigation and a sham citizen petition," and as a result, drug prices "were maintained at supracompetitive levels."  *Id.* at 165.  The court reasoned that the plaintiffs were "too remote from the allegedly deceptive acts" because "[t]he defendants' competitors, and then direct purchasers, were the first entities to feel the effect of that deceit . . . [and] the plaintiffs were impacted when they reimbursed those individuals for their purchases."  Unlike the plaintiffs in *Wellbutrin*, Plaintiffs here suffered economic harm that flows directly from the deceptive actions of Takata and the other Defendants in concealing the existence of the Inflator Defect.  (*See e.g.*, Dkt. 579, ¶¶ 11-14, 30-32, 227-28, 233, 1069, 1198, 1433, 1589, 1692.)  Simply put, these cases are all inapposite.

  2. *Plaintiffs Need Not Show A Direct Relationship With Takata To Establish Privity.*

Contrary to Defendant Takata's contentions (Dkt. 622 at 28), the Missouri Supreme Court recently rejected the direct privity requirement for consumer claims under the Missouri Merchandising Practices Act ("MMPA").  *See Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 414 (Mo. 2014) ("The use of an unlawful practice is a violation of the MMPA 'whether committed before, during or after the sale,' so long as it was made 'in connection with' the sale.") (citing Mo. Rev. Stat. § 407.020.1).  In so doing, the court reasoned that the MMPA was enacted to supplement the common law definition of fraud, [so there is] no compelling reason to interpret 'in connection with' to apply only when the entity engaged in the misconduct was a party to the transaction at the time the transaction was initiated . . ."  *Conway*, 438 S.W. 3d at 415, 416.  *See also*, *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667, 668 (Mo. 2007) (allowing a

consumer to sue an automotive wholesaler who failed to disclosed his vehicle's accident history to the car dealership where he purchased the vehicle).  Like Missouri, Louisiana does not impose a privity requirement between consumers and manufacturers under its consumer protection statute.  *Plaquemine Marine, Inc. v. Mercury Marine*, 859 So. 2d 110 (La. Ct. App. 2003) (finding marine product retailers had pled cognizable Louisiana Unfair Trade Practices Act ("LUTPA") even though they did not purchase products directly from manufacturer of the marine products in question);  *Gour v. Daray Motor Co.*, 373 So. 2d 571, 578 (La. Ct. App.) (finding viable LUTPA claim where consumer alleged harm against vehicle manufacturer).[64]

### 3. *Plaintiffs Are Entitled to Restitution From Takata Under the Arkansas and California Consumer Protection Laws.*

Takata erroneously claims that Plaintiffs are not entitled to restitution under California's or Arkansas's consumer protection statutes because they "have not alleged any loss of Plaintiffs' money or property to *Takata*…"  (Dkt. 622 at 29-30 (emphasis added).)  Plaintiffs need not allege they exchanged monies directly with Defendant Takata in order to have a viable claim for restitution.  *See, e.g.*, *Falco v. Nissan N. Am., Inc.*, No. CV 13-00686 DDP, 2015 WL 1534800, at *6 (C.D. Cal. April 6, 2015) (finding that plaintiffs need not allege a "direct transaction" in order to properly plead UCL and CLRA claims); *Guido v. L'Oreal, USA, Inc.*, No. CV 11-1067 CAS JCX, 2013 WL 3353857, at *14 (C.D. Cal. July 1, 2013) (holding that the plaintiffs asserted viable, class-wide UCL and CLRA claims against hair product manufacturer even though they purchased the products from "retail outlets nationwide"); *Valor Healthcare, Inc. v. Pinkerton*, No. 08-6015, 2008 WL 5396622, at *3 (W.D. Ark. Dec. 23, 2008) (Applying ADTPA broadly because the statute allows recovery by "[a]ny person who suffers actual damage or injury as a result of an offense or violation as defined in this chapter").

Furthermore, both states' statutory regimes contemplate restitution of monies lost *as a result* of overpayment for products that do not comport with the defendants' representations or the diminution in value of those products.  *See Spann v. J.C. Penney Corp.*, No. SA CV 12-0215 FMO, 2015 WL 1526559, at *5 (C.D. Cal. Mar. 23, 2015) ("By stating that evidence of *either*

---

[64]  To the extent this Court finds there is a split of authority in Louisiana, Plaintiffs note that Defendant Takata has failed explain why the cases it cites are controlling or dispositive in this case.  Accordingly, Defendant Takata has failed to discharge its burden at the motion-to-dismiss stage.  *DIRECTV v. Megar*, No. 03-CV-20247, 2003 WL 24100784, at *1 (S.D. Fla. July 3, 2003)

the dollar value of the consumer impact *or* the advantage realized by defendant could have provided the foundation for an award of restitution, the court implicitly recognized that a value-paid-minus-value-received approach is not the only one permitted.");[65] *In re Auto. Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1008 (E.D. Mich. 2014) (finding that plaintiffs had properly pled injury because they alleged they had been overcharged for products as a result of the defendants' unfair and deceptive business practices).

Defendant Takata also incorrectly contends that Plaintiffs fail to allege its fraudulent practices induced Plaintiffs to incur economic injuries. (Dtk. 622, at 30.) But Plaintiffs specifically allege they relied on overall representations of the Class Vehicles' safety and would not have purchased or would not have paid the same price for their vehicles had Defendants, including Takata, publically disclosed the significant safety risks posed by the Inflator Defect. (Dkt. 579, ¶¶ 1-2; 72-187.) These allegations are more than enough to satisfy reliance on a class-wide basis where, as here, Plaintiffs' allegations are based on the concealment of *material* information. *See*, *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1168-69 (C.D. Cal. 2011); *In re Tobacco II Cases*, 46 Cal.4th 298, 327 (2009).[66]

### G. Plaintiffs are entitled to consequential, incidental, and punitive damages on their claims against Subaru.

Subaru advances several arguments to the effect that Plaintiffs have failed to allege a claim for incidental, consequential and punitive damages. (Dkt. 615 at 27-28.) Each of Subaru's arguments is unpersuasive.[67]

---

[65] *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) is not to the contrary. That case only states that plaintiffs are entitled to restitution where defendants derive a benefit from their wrongful acts. It does not, however, hold that the benefit has to be derived from direct transactions with plaintiffs. Indeed, that case involved purchasers of locks, which were almost certainly not purchased directly from Kiwkset, the lock manufacturer.

[66] Takata also avers injunctive relief is unavailable because there is currently a recall of the Class Vehicles through NHTSA. (Dkt. 622 at 30, n.26.) There is no indication, however, that the ongoing recall will adequately and fully address the economic injuries suffered by Plaintiffs. As such, Plaintiffs reserve the right to seek injunctive relief that is distinct from the relief afforded to Plaintiffs by the current recall.

[67] Plaintiffs do agree with Subaru, however, that punitive damages are not available for breach of implied warranty under Florida law.

First, Subaru's assertion that Plaintiff Walker has "not pled facts establishing the existence of [incidental or consequential] damages," (Dkt. 615 at 27), is directly at odds with the allegation that he was "unable to use his Subaru Legacy for approximately two months due to safety concerns associated with the vehicle's" Inflator Defect.  (Dkt. 579, ¶ 176.)  From this, it is reasonable to infer, as this Court must, that Plaintiff Walker incurred out-of-pocket costs to secure an alternative mode of transportation.  Nor are Plaintiff Walker's allegations unique.  By way of example, Plaintiff Killgo was also forced to rent replacement vehicles while he waited for the dealership to receive replacement airbags.  (*Id.*, ¶ 119.)  Indeed, the Complaint is replete with similar allegations.  (*See e.g.*, *id.*, ¶¶ 91, 111, 114, 119, 124, 125, 144.)

Subaru also contends that Florida law provides for certain limits on the damages available under an express warranty claim.  But such limitations are typically not applicable where, as here, the limited warranty "fails of its essential purpose," or where an application of the warranty limitations would be unconscionable.   Fla. Stat. Ann. §§ 672.719(2) and 672.719(3); *Lennar Homes, Inc. v. Masonite Corp.*, 32 F. Supp. 2d 396, 401 (E.D. La. 1998) (applying Florida law).  For example, the court in *Lennar* found that plaintiff had not shown that the limited warranty there had failed its essential purpose because, although plaintiff had been "inconvenienced," there was no indication that the limited warranty could not "provide an adequate remedy under the circumstances."  *Id*.  The *Lennar* court also noted that, although "shipping a product with a known latent defect may infect a limitation with unconscionability," the analysis raised questions of fact regarding the defendants' knowledge of the defect, which rendered it inappropriate for summary judgment.  *Id.  See also, Majors v. Kalo Labs., Inc.*, 407 F. Supp. 20, 23 (M.D. Ala. 1975) (limitation on damages disfavored where it would allow manufacturer to escape significant liability; "It is the judgment of this Court that enforcement of the exculpatory clause would be contrary to the public policy of this State in the circumstances of this case. Therefore, the covenant in the contract purporting to exempt [the manufacturer] from liability in excess of a return of purchase price is unconscionable.").

Here, Plaintiffs have been more than "inconvenienced" by the Inflator Defect, which has placed them at risk of catastrophic injury or death.  Common sense also dictates that airbags that send exploding shrapnel into the faces of drivers maiming and, in some cases, killing them "completely fail in their intended use."  Moreover, Plaintiffs allege that Subaru and the other

85

defendants were aware of the lethal defects in the Class Vehicles at the time of sale, and any limitation on their exposure would be unconscionable under Florida law.[68]

Citing *Rollins Inc. v. Butland*, 951 So. 2d 860 (Fla. Dist. Ct. App. 2006), Subaru also contends that Plaintiffs' incidental and consequential damages are not "actual damages" under FDUTPA. (Dkt. 615 [Subaru] at 28.)  While it is true that Florida courts have limited the damages available under the FDUTPA to "actual damages," the concurrence opinion in *Dorestin v. Hollywood Imports, Inc*., 45 So. 3d 819, 832 (Fla. Dist. Ct. App. 2010), observed that *Butland* and other cases have improperly limited recoverable damages under FDUTPA, and urged for a more expansive interpretation of "actual damages."  *Id*. at 825-27.  In so doing, the concurrence explained that interpreting "actual damages" under FDUTPA to exclude "consequential, special or incidental damages," is contrary to the legislative intent of FDUTPA (*id*. at 828), and also contrary to the Florida Supreme Court's more expansive definition of "actual damages" in *Ross v. Gore*, 48 So. 2d 412 (Fla. 1950).  45 So. 3d at 829-30.  The *Dorestin* concurrence noted well established Florida law providing that "[a]ctual or compensatory damages are those amounts necessary to compensate adequately an injured party for losses sustained as the result of a defendant's wrongful or negligent actions."  *Id.* at 830 (quoting *Bidon v. Dep 7 of Prof'l Reg. Fla. Real Estate Comm'n*, 596 So. 2d 450, 452 (Fla. 1992)).  Indeed, the "obvious purpose of FDUTPA is to make consumers whole for losses caused by fraudulent consumer practices."  *Id.* at 828 (quoting *LaFerney v. Scott Smith Oldsmobile, Inc*., 410 So. 2d 534, 536 (Fla. Dist. Ct. App. 1982)).  Plaintiffs urge this Court to likewise construe FDUTPA to achieve its goals and permit Plaintiffs to seek all reasonably foreseeable damages as a result of Subaru's wrongful conduct.

Finally, Subaru argues that there is no provision for punitive damages under FDUTPA but, in so doing, it ignores Florida cases that have held that "any award of punitive damages based upon a violation of FDUTPA would be improper *absent some independent basis such as fraud*."  *Rollins, Inc. v. Heller*, 454 So. 2d 580, 586 (Fla. Dist. Ct. App. 1984) (emphasis added).  *See also, Bert Smith Oldsmobile, Inc. v. Franklin*, 400 So. 2d 1235 (Fla. Dist. Ct. App. 1981).

---

[68] *Bluewater Trading LLC v. Fountaine Pajot, S.A*., 2008 WL 895705 at (S.D. Fla. April 2, 2008) cited by Subaru (Dkt. at 27) is clearly distinguishable because the issue there concerned plaintiff's argument that any limitation on damages provision had to be written in conspicuous language.

Because Plaintiffs' allegations here indisputably include claims for fraudulent concealment (Dkt. 579, ¶¶ 863-876), punitive damages are available.[69]

**H.      Plaintiffs are entitled to damages from BMW on their post-warranty claims under the New Jersey Consumer Fraud Act.**

Defendant BMW incorrectly argues that Plaintiffs' claims are precluded under the New Jersey Consumer Fraud Act ("NJCFA") because the alleged defects manifested after the vehicles' warranty period.   (Dkt. 625 at 20.)   That argument conveniently ignores the Complaint's allegations that the Inflator Defect existed from the moment the Takata airbags were installed in Plaintiffs' vehicles, and that the defect was concealed by Defendants.  (Dkt. 578, ¶¶ 1-38.)  Accordingly, under the NJCFA, Plaintiffs' claims are valid because the Inflator Defect existed during the warranty period, and "the manufacturer knew the product would fail." *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 443 (D.N.J. 2012).  Notably, a federal court in New Jersey offered the following analysis, which is particularly applicable here:

> If the New Jersey Supreme Court were faced with a situation where a manufacturer or seller of a product knew that its product had a defect which would cause it to fail before its expected useful life, and intentionally concealed that information from a purchaser, with the purpose of maximizing profit, I predict that the New Jersey Supreme Court would not be willing to find, as a matter of law, that the CFA was categorically inapplicable.

*Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 502 (D.N.J. 2009).

Defendants ignore an important distinction between this case and *Perkins v. DaimlerChrysler Corp.*, 890 A.2d 997, 1004 (N.J. App. Div. 2006), a decision on which they rely.  In *Perkins*, the New Jersey appellate court distinguished "those circumstances in which safety concerns might be implicated" from circumstances where a part merely turns out to be defective shortly after the warranty expires.  *Id.*  The court noted that its dismissal of the plaintiff's claim was "driven by the fact that, in this case, it was not alleged that the deterioration or failure of such a part represented a danger to others."  *Id.*  Clearly, the Defective Airbags at issue here, unlike the product in *Perkins*, pose a consistent threat to occupants of the Class Vehicles, including Plaintiffs.  (Dkt. 579, ¶¶ 1-38.)

---

[69] In a lengthy footnote, Subaru cites to several New Jersey cases purportedly in support of its contention that Plaintiffs' damage allegations are somehow lacking.  (Dkt. 615 at 28, n.12).  The footnote is unaccompanied by analysis of any kind, and Plaintiffs are not willing to perform the legal analysis Subaru was required, but evidently unwilling or unable, to do itself.

According to the Complaint, the airbags in the Class Vehicles were defective, posing a dangerous threat to Plaintiffs from the day they were installed. That Plaintiffs brought their claims outside of the warranty period is irrelevant. The defect in the Class Vehicles existed at the time of the warranty, and this dangerous defect was known to, and concealed by, the Defendants. *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d at 443. Thus, Defendant BMW's argument that it cannot be held liable because of the expiration of the warranty period is unsupported by the facts and the law.

## VII. Plaintiffs' Implied Warranty Claims Are Well Pled And Should Not Be Dismissed.

This is a prototypical implied warranty case: a critical safety feature in all Class Vehicles, which was designed to protect occupants, in fact poses a deadly and hidden safety risk to occupants because of a design defect in existence at the time the vehicles were sold. Accordingly, Defendants' efforts to dismiss these claims under various state laws fail.[70] Class Vehicles are not (1) merchantable, (2) any effort to disclaim or time limit the implied warranties is unconscionable and therefore unenforceable, (3) Plaintiffs gave sufficient notice of their warranty claims, and (4) the claims are not barred by the statute of limitations because of well-accepted tolling doctrines. Defendants' motions to dismiss Plaintiffs' state law warranty claims and federal Magnuson Moss Warranty Act (MMWA) claim (Count 3) should therefore be denied.[71]

### A. Plaintiffs plead in detail and with specificity that the affected vehicles are not merchantable.

Defendants take the extreme position that vehicles with unstable, potentially deadly airbags are nonetheless merchantable as a matter of law. (Dkt. 614 [Toyota] at 23; Dkt. 625

---

[70] Takata moves to dismiss Counts 5 (MI), 48 (FL), 54 (CA), 57 (CO), 62 (HI), 66 (IN), 69 (LA), 71 (MA), 73 (MI), 76 (MN), 78 (MO), 80 (NV), 81 (NJ), 86 (NC), 90 (PA), 92 (RI), 95 (SC), 98 (TX), 103 (WV). Collectively, the Vehicle Manufacturer Defendants move to dismiss Counts 10 (CA), 26 (CA), 41 (CA), 54 (CA), 57 (CO), 48 (FL), 21 (MI), 73 (MI), 86 (NC), 17 (NJ), 37 (NJ), 80 (NV), 87 (OH), 90 (PA), 95 (SC), 33 (TN), 98 (TX), and 100 (VA).

[71] The Defendants seek to dismiss Count 3 (Magnusson Moss Warranty Act) solely on the grounds that the underlying state law warranty claims should be dismissed. (Dkt. 608 [Mazda] at 28; Dkt. [Ford] at 18-19; Dkt. 614 [Toyota] at 13; Dkt. 615 [Subaru] at 20; Dkt. 616 [Honda] at 22; Dkt. 622 [Takata] at 23; Dkt 625 [BMW] at 29; Dkt. 627 [Nissan] at 14.) In fact, the implied warranty claims should not be dismissed, and therefore the MMWA claim survives as well.

[BMW] at 28; Dkt. 619 [Nissan] at 11-14.)   This position is not only nonsensical but legally flawed.   Merchantability assumes safety, and is a question of fact not properly resolved on a motion to dismiss.   Accordingly, Defendants' arguments must be rejected.

"Courts have been hesitant to dismiss cases at the pleading stage which allege potential safety risks caused by defective automotive parts—choosing instead to treat a close question of merchantability as one for the fact-finder."   *Sater v. Chrysler Grp. LLC*, No. EDCV 14-00700-VAP, 2015 WL 736273, at *9 (C.D. Cal. Feb. 20, 2015); *see Cholakyan v. Mercedes–Benz USA, LLC*, 796 F. Supp. 2d 1220, 1243–44 (C.D. Cal. 2011) (denying motion to dismiss implied warranty claim because vehicle's alleged water leak could "cause engine failure, suddenly and unexpectedly," creating safety concern); *Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1547, 173 Cal. Rptr. 3d 454, 461 (2014), *as modified on denial of reh'g* (July 16, 2014) ("a reasonable jury could conclude that a vehicle sunroof that opens and closes *on its own* creates a substantial safety hazard," and thus violates the implied warranty).

Contrary to Defendants' argument that merchantability is focused only on a product's undefined "functionality" (Dkt. 619 [Nissan] at 12), "[a]s even Ford implicitly concedes, the ordinary purpose of a car is not just to provide transportation but rather *safe*, *reliable* transportation."   *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 980 (N.D. Cal. 2014) (emphasis added).   In *MyFord Touch*, plaintiffs alleged defects in Ford's infotainment system, and alleged associated safety risks, such as driver distraction and "more obvious" safety risks because of failures of rearview cameras or rear window defrosters.   *Id.* at 949.   Analyzing the allegations under the laws of fifteen states (including many of the same at issue here),[72] the court denied the motion to dismiss, holding that it is a "question of fact for the jury as to whether the problems with [MyFord Touch] posed enough of a safety risk that the cars at issue could not be said to provide safe, reliable transportation."   *MyFord Touch*, 46 F. Supp. 3d at 980.   The court correctly noted that though risks associated with infotainment systems were not of the "same magnitude" as those in other reported decisions, that did not matter because "the level of risk to safety need not be gross or certain."   *Id.*   As numerous cases throughout the country demonstrate,

---

[72] California, Alabama, Arizona, Colorado, Connecticut, Florida, Iowa, Massachusetts, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Texas and Virginia.

*MyFord Touch* accurately states the law on merchantability, and how that doctrine is to be assessed at the motion to dismiss stage.[73]

Thus, the case law undermines Defendants' argument.   Even the cases on which Defendants rely hold that merchantability is a question of fact.   *Ford Motor Co. v. Fairley*, 398 So. 2d 216 (Miss. 1981) (appeal from summary judgment); *Lowe v. Mercedes Benz of N. Am., Inc.*, Nos. 96-1501, 95-3038, 1996 WL 694433, at *2 (4th Cir. Dec. 5, 1996) (appeal from trial judgment); *Bayliner Marine Corp. v. Crow*, 509 S.E.2d 499, 503 (Va. 1999) (appeal from trial judgment).   Equally important, many of the cases Defendants cite do not involve the same

---

[73] *See Aguilar v. Gen. Motors, LLC*, No. 1:13–cv–00437–LJO–GS, 2013 WL 5670888, at *7 (E.D. Cal. Oct. 16, 2013) (taking note of plaintiff's allegation that a steering defect could "result in potential failure of power steering, pulling to the left and right, and loss of steering control during the normal course of driving[;] [s]uch a defect would render a vehicle unfit for driving"); *Inglis v. Am. Motors Corp.*, 209 N.E.2d 583, 584 (Ohio 1965) (vehicle unmerchantable because it contained a number of defects – various parts "squeaked and rattled" and others were "out of line".); *Mason v. Mercedes-Benz USA, LLC*, No. 85031, 2005 Ohio App. LEXIS 3911, at *15-16 (Ohio Ct. App. Aug. 18, 2005) (while the plaintiff continued to use the subject vehicle—and in fact drove the vehicle for 60,000 miles—the repeated repairs she was forced to undertake "undermine[d] the buyer's faith in the integrity and reliability of the vehicle" and rendered the vehicle unfit for its ordinary purpose); *McManus v. Fleetwood Enters.*, 320 F. 3d 545, 552 (5th Cir. 2003) (Texas law) (rejecting arguments that implied warranty claims were not viable because the alleged defect had not indisputably manifested for class members, which "misapprehend the nature of the implied warranty of merchantability cause of action"); *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (2007) (the fact that "a vehicle provides transportation from point A to point B" does not necessarily preclude an implied warranty claim); *Denny v. Ford Motor Co.,* 87 N.Y.2d 248, 263, (1995) (fully functional vehicle could nevertheless breach the implied warranty of merchantability if it was also prone to rollover); *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03-cv-1851(NGG)(RML), 2006 U.S. Dist. LEXIS 61872, at *32 (E.D.N.Y. Aug. 30, 2006) (denying summary judgment even when the plaintiff conceded that the defendant's products were fully functional in the "vast majority" of cases); *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908, 918 (2001) ("proof of breach of warranty does not require proof the product has malfunctioned but only that it contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product."); *Apodaca v. Whirlpool Corp.*, No. 13-cv-00725 JVS(ANx), U.S. Dist. LEXIS 176363, at *28 (C.D. Cal. Nov. 8, 2013) (dishwasher that functioned at times but malfunctioned at others breached the implied warranty of merchantability); *Chambers v. Gen. Trailer Mfg.*, No. 04-71066, 2006 WL 1851008, at *3 (E.D. Mich. July 5, 2006) (denying summary judgment against implied warranty claim involving recreational vehicle where "there were several documented repair trips in a short period of time, beginning soon after purchase, and some of the defects are still outstanding…"); *Rice v. Electrolux Home Products, Inc.*, No. 4:15-CV-00371, 2015 WL 4545520, at *1 (M.D. Pa. July 28, 2015) (denying motion to dismiss implied warranty claim where microwave functioned but posed burn risk to user).

significant safety risk inherent in Defendants' airbags, and several of them involve premature wear of parts that require regular replacement anyway.  *See Lowe*, *supra*, 1996 WL 694433 at *1 (case involving "warning light on dash [that] occasionally remained illuminated instead of shutting off"); *Bayliner Marine Corp. v. Crow*, 257 Va. 121, 128 (1999) (alleged failure of fishing boat to reach a certain speed); *Sheris v. Nissan N. Am.*, Inc., No. 07-2516 (WHW), 2008 WL 2354908, at *6 (D.N.J. June 3, 2008) (premature wear of brakes and rotors—which still lasted two years and over 20,000 miles—did not implicate merchantability, particularly where "contentions that the [vehicle] was….unsafe for driving" were cursory legal conclusions); *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 624 (M.D.N.C. 2006) (premature wear of ball joints); *Szymczak v. Nissan N. Am., Inc.*, No. 10 CV 7493(VB), 2011 WL 7095432, at *4 (S.D.N.Y. Dec. 16, 2011) (radiator defect); *Lee v. Gen. Motors Corp.*, 950 F. Supp. 170, 174 (S.D. Miss. 1996) (roofs not made to certain specification; no discussion of particular safety risk).

Finally, Defendants' merchantability argument is tied to their arguments on manifestation.  Yet that argument fails for all the reasons described in this section—merchantability does not require certain manifestation—and because Defendants misunderstand the relevance of manifestation generally, as discussed in Section III, *supra*.[74]

**B.**     **Privity is not required under the implied warranty laws of Michigan, Texas, and California.**

Not surprisingly, Defendants overstate the state-law privity requirements in Michigan, Texas, and California.  (*See* Dkt. 622 [Takata] at 20-21; Dkt. 608 [Mazda] at 9; Dkt. 616 [Honda] at 22-23.)  As set forth below, Plaintiffs do not need to establish privity in each of these states, and to the extent they do, have sufficiently pled the requirement.[75]

---

[74] For example, in *In re: Ford Motor Co. Ignition Switch Products Liab. Litig.*, No. 96-1814(JBS), 2001 WL 1266317, at *22 (D.N.J. Sept. 30, 1997), the court dismissed implied warranty claims under five states' laws where the plaintiffs alleged a fire risk in certain Ford trucks.  This decision is contrary to the weight of authority described above and overstates the importance of "manifestation," and is therefore not persuasive authority.

[75] Plaintiffs have elected not to pursue implied warranty claims under Florida and North Carolina.

     1.  *Michigan subclass (Count 73).*

   Contrary to Takata's and Honda's arguments (Dkt. 622 [Takata] at 21; Dkt. 616 [Honda] at 22-23), Michigan does not impose a privity requirement for breach of implied warranty claims. *Pack v. Damon Corp.*, 434 F.3d 810, 820 (6th Cir. 2006) ("[W]e conclude that Michigan has abandoned the privity requirement for implied-warranty claims and thus that the district court erred in dismissing [Plaintiff's] implied-warranty claims for lack of privity.").   While Takata and Honda cite to *Harnden v. Ford Motor Co.*, 408 F. Supp. 2d 315, 322 (E.D. Mich. 2005), that case predates the Sixth Circuit's opinion in *Pack v. Damon Corp.*, and is thus obsolete.   Following *Pack*, Michigan federal courts have, of course, *not* imposed a privity requirement.  *Farley v. Country Coach, Inc.*, No. 05-CV-71623, 2006 WL 3299464, at *8 (E.D. Mich. Nov. 14, 2006) (order reinstating implied-warranty claims following *Pack*); *Montgomery v. Kraft Foods Global, Inc.*, No. 1:12-CV-00149, 2012 WL 6084167, at *15 (W.D. Mich. Dec. 6, 2012) ("Under Michigan law, privity of contract is not required for implied warranty claims.") (citing *Pack*).

   Thus, Michigan Plaintiffs need not establish privity with any of the Defendants to prevail on their breach of warranty claims.

     2.  *Texas subclass (Count 98).*

   The Texas Supreme Court has long held that privity is not required to bring a breach of implied warranty claim.  *See MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132, 138 (Tex. 2014) ("A merchant bound by the implied warranty of merchantability is obligated to ensure that the good is merchantable when it leaves the merchant. A downstream purchaser who seeks to recover for economic loss under an implied-warranty theory, whether he buys the product new or used, seeks to hold the merchant accountable only for the state of the product when it passed to the first buyer.  We see no reason why the merchant's legally imposed duty to issue merchantable goods should automatically end when a good passes to subsequent buyers."); *see also Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 81 (Tex. 1977) ("We now hold that a manufacturer can be responsible, without regard to privity, for the economic loss which results from his breach of the Uniform Commercial Code's implied warranty of merchantability.").

   Although Takata claims that Texas law requires privity for breach of warranty claims against component manufacturers (Dkt. 622 [Takata] at 21), Texas courts have held otherwise.

*See Metro Nat. Corp. v. Dunham-Bush, Inc.*, 984 F. Supp. 538, 558-559 (S.D. Tex. 1997) (lack of privity with component manufacturer of an ice harvester was no barrier to plaintiff's breach of warranty claims); *see also Teague v. Norcold, Inc.*, 774 F. Supp. 2d 817, 822-23 (N.D. Tex. 2011) (denying motion to dismiss plaintiff's breach of warranty claims where defendant designed and manufactured refrigerator unit in plaintiff's recreational vehicle).

Takata primarily bases its privity arguments on *In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*, 966 F. Supp. 1525 (E.D. Mo. 1997), an Eastern District of Missouri case that interpreted the laws of multiple states, including Texas. There, the court cited to *Hininger v. Case Corp.*, 23 F.3d 124 (5th Cir. 1994), to conclude that the plaintiffs could not proceed with their breach of implied warranty claims against the manufacturer of an anti-lock braking system. *In re Gen. Motors*, 966 F. Supp. at 1533. But, in *Metro* (decided shortly after *In re Gen. Motors*), the Southern District of Texas distinguished the Fifth Circuit's analysis in *Hininger*, and found that the concern for protecting a component manufacturer was not applicable where the component manufacturer was, among other things, more than an anonymous manufacturer of an unbranded part, and had the ability to disclaim liability to the end-user. *Metro*, 984 F. Supp. at 558-559; *see also Teague*, 774 F. Supp. 2d at 821 ("The *Hininger* court based its holding primarily on two rationales: (1) that the component supplier is typically unable to disclaim any implied warranties as to the purchaser of the final product; and (2) that the ultimate purchaser does not reasonably expect the component supplier to respond to any defects in the final product."). The Eastern District of Missouri's analysis of Texas law in *In re Gen. Motors* is therefore not dispositive here, and in fact appears to espouse an incomplete statement of Texas law on the issue.

As with the component manufacturer in *Metro*, Takata is not merely an anonymous parts manufacturer. *See Metro*, 984 F. Supp. at 558-559 (distinguishing the component manufacturer in *Hininger*). It produces airbag systems that are installed in millions of vehicles nationwide, and serves as a supplier of one of the most critical safety features in modern automobiles. Furthermore, like the component manufacturer in *Metro*, Takata has the ability to address its liability to end-users and communicate with purchasers of the final product, as evidenced by its issuance of defect information reports in May 2015 that led to greatly expanded recalls of vehicles with its airbag modules. In short, Takata is not the vulnerable remote component manufacturer that the *Hininger* court contemplated; it is a major manufacturer subject to the

93

same liability and standards as the Vehicle Manufacturer Defendants.  In addition, any dispute over the type of component at issue here calls for a finding of fact, which is inappropriate at this stage.  *See Teague*, 774 F. Supp. 2d at 822-23 ("Therefore, although the ultimate finding of the nature of the Unit in relation to the RV is a question of law, resolution of certain factual circumstances pertaining to the sale of the Unit and its relation to the RV as a whole must be made in order for the Court to decide the issues raised in Norcold's motion.  As such, Norcold's motion to dismiss Teague's breach-of-warranty claims is DENIED.").

### 3.   *California Claims Against Mazda (Count 26).*

The Mazda Defendants argue that Plaintiffs Crystal Pardue's and Justin Birdsall's breach of warranty claims under the Song-Beverly Consumer Warranty Act fail because of lack of vertical privity with Mazda. (Dkt. 608 [Mazda] at 9.)  Not so.  California courts have repeatedly held that plaintiffs do not need to establish vertical privity to pursue claims under the Song-Beverly Consumer Warranty Act.  *See, e.g.*, *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 921 (C.D. Cal. 2010) (denying Defendant BMW's motion to dismiss plaintiff's Song-Beverly claim for lack of privity, and noting that the Act does not impose a privity requirement like California Commercial Code section 2314); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 982 (N.D. Cal. 2014) ("For the implied warranty claim under the Song-Beverly Act, there is no privity requirement.").[76]

Because Plaintiffs Pardue and Birdsall do not need to establish vertical privity to plead claims under California's Song-Beverly Consumer Warranty Act, Mazda's arguments fail.[77]

---

[76] While Mazda cites to *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288 JFHRL, 2009 WL 3320486, at *12 (N.D. Cal. Oct. 13, 2009) to claim that the Song-Beverly Act imposes a privity requirement (*see* Dkt. 608 [Mazda] at 9), it was wrongly decided and is clearly in the minority.  *See Clark v. LG Electronics U.S.A., Inc.*, No. 13-CV-485 JM JMA, 2013 WL 5816410, at *10 (S.D. Cal. Oct. 29, 2013) ("As a result, the court finds more persuasive the weight of authority considering the Song–Beverly Act and finding the statutory language does not impose a vertical privity requirement like that required under the California Commercial Code.").  Defendants' remaining citations to *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005) and *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) deal with privity under California Commercial Code 2314, and not the Song-Beverly Act, and therefore are inapplicable here.  (*See* Dkt. 608 at 9 [Mazda]; Dkt. 614 at 24, n.22 [Toyota].)

[77] Separately, Defendants Mazda and Toyota argue that the Song-Beverly Act claims of Plaintiffs who purchased their vehicles outside of California must be dismissed.  (Dkt. 608 [Mazda] at 9; Dkt. 614 [Toyota] at 29).  Plaintiffs concede that under *Cummins, Inc. v. Superior Court*, 36 Cal.

**C.      Plaintiffs have given sufficient notice of their breach of warranty claims.**

Defendants Ford, Mazda, Subaru, and Toyota contend that Plaintiffs' breach of implied warranty claims fail under the pre-suit notice requirements of Nevada, Pennsylvania, and Texas. (*See* Dkt. 612 [Ford] at 16; Dkt. 614 [Toyota] at 25; Dkt. 608 [Mazda] at 28; Dkt. 615 [Subaru] at 17.)  These arguments, too, are unavailing.  First, the pre-suit notice requirement is intended to give an unaware defendant a fair opportunity to correct a breach without litigation.  As the Complaint alleges, Defendants were indeed aware of the breach long before Plaintiffs, and had ample opportunity to correct it.  To impose pre-suit notice as a bar is both counterfactual and contrary to its purpose.

Nevada, Pennsylvania, and Texas have all adopted the same UCC language with respect to notice of a breach of warranty: "The buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  *See* Tex. Bus. & Com. Code § 2.607(c)(1); Nev. Rev. Stat. Ann. § 104.2607; 13 Pa.C.S. § 2607(c)(1).  This statutory language, however, does not specify the form of notice that must be given to Defendants, impose any restrictions on constructive notice, or even demand pre-suit notice.

As Plaintiffs allege, Defendants were put on notice of their breaches of implied warranty from consumer complaints, internal investigations, numerous individual letters and communications sent by consumers, and their knowledge of the issues.  (*See* Dkt. 579, ¶¶ 1553 (Count 80 – Nevada), 1711 (Count 90 – Pennsylvania), 1821 (Count 98 – Texas).)  This notice also includes the statutory notice letters that Plaintiff Class Representatives have sent to Ford, Mazda, Subaru, and Toyota.  (*See* October 27, 2014 Letter from Nancy Barnett (Ford);[78] June 9, 2015 Letter from Crystal Pardue (Mazda); June 2, 2015 Letter from Regina M. Reilly (Subaru);

---

4th 478, 483, 115 P.3d 98, 99 (2005), that is the correct result.  However, Defendants' remaining arguments for dismissal of the Song-Beverly Act claims, including its privity arguments, should be rejected, as discussed throughout this section.

[78] Ford is the only defendant to raise the notice requirement under Tex. Bus. & Com. Code § 2.607(c)(1).  (Dkt. 612 [Ford] at 16-17.)  Since Plaintiff Nancy Barnett sent Ford a statutory notice letter based on Texas law on October 27, 2014 (prior to the filing of Plaintiffs' Consolidated Class Action Complaint), Ford received adequate notice of the defect giving rise to Plaintiffs' breach of warranty claims, including those of Texas Plaintiffs Joseph Aliscio, Eugennie Sinclair, and Brooks Weisblat.

June 9, 2015 Letter from Roy Martin and June 22, 2015 Letter from Lisa Peterson (Toyota)). Thus, Plaintiffs have satisfied the notice requirements.[79]

Additionally, Pennsylvania courts have recognized that filing a complaint can satisfy the statutory notice requirement for breach of warranty claims. *See, e.g.*, *Bednarski v. Hideout Homes & Realty, Inc., A Div. of U.S. Homes & Properties, Inc.*, 709 F. Supp. 90, 94 (M.D. Pa. 1988) ("[T]his court concludes that the filing of a civil complaint satisfies the requirement of providing breach of warranty notice under section [13 Pa.C.S.A. § 2607(c)(1)]."); *see also Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 683 (E.D. Pa. 2011) (plaintiff satisfied the notice requirement by alleging that class members took the affirmative step of notifying Ford of defects with the rear axles in their automobiles). Toyota's citations to *AFSCME v. Ortho-Mcneil-Janssen Pharms., Inc.*, 2010 U.S. Dist. LEXIS 23181, at *19 (E.D. Pa. Mar. 11, 2010) and *In re Shop-Vac Mktg. & Sales Practices Litig.*, 964 F. Supp. 2d 355, 365 (M.D. Pa. 2013) are ineffective. (Dkt. 614 [Toyota] at 25.) In *AFSCME*, the court dismissed the plaintiffs' breach of warranty claims because the plaintiffs failed to include any allegations that they provided notice, but noted that "Plaintiffs were not required to allege in the Complaint that the notification occurred in any substantial form (such as a letter or a formal demand), as the 'reasonableness' of the notice is a factual matter left for the jury to resolve." *AFSCME,* 2010 U.S. Dist. LEXIS 23181 at *21-22. Here, Plaintiffs have satisfied the *AFSCME* court's standard by alleging that Defendants were provided with notice through their knowledge of the issues, customer complaints, internal investigations, and numerous individual letters and communications that consumers sent before or within a reasonable amount of time after Defendants issued the recalls and the allegations of the Inflator Defect became public. (Dkt. 579, ¶ 1711.) *In re Shop-Vac Mktg. & Sales Practices Litig.*, 964 F. Supp. 2d 355, 365 (M.D. Pa. 2013) is also inapposite

_____

[79] This is particularly true under Nevada law, where Defendants have not cited any Nevada case law requiring pre-suit notice or direct notice from the plaintiff to the defendant. More generally, Defendants fail to cite any Nevada cases rejecting forms of constructive notice, such as complaints and legal actions filed by similarly situated consumers. The plain language of Nev. Rev. Stat. Ann. § 104.2607 does not restrict the form of notice or dictate the time or manner in which a plaintiff must give notice to defendant. Thus, Plaintiffs' Complaint sufficiently notified Defendants of their breach of implied warranty claims, and the Complaint also sets forth other forms of notice provided to Defendants. (*See* Dkt. 579, ¶ 1553 (Count 80 – Nevada).)

because it did not apply Pennsylvania law to analyze the notice requirements for breach of implied warranty claims.  *See id.* at 364-65, 365 n.6 (addressing plaintiffs' breach of implied warranty claims under the UCC and Missouri law).

While Defendants cite to cases under Texas law that require pre-suit notice directly from a buyer (*see* Dkt. 608 [Mazda] at 28; Dkt. 612 [Ford] at 16-17; Dkt. 614 [Toyota] at 25; Dkt. 615 [Subaru] at 17), imposing such a requirement here would be duplicative of the ample notice that Defendants already had of the common defect, and ultimately be inequitable to Plaintiffs and consumers.  As a threshold issue, Plaintiffs have alleged that they provided Defendants with notice through their complaints.  (*See* Dkt. 579, ¶ 1821 (Count 98 – Texas)); *see also In re Ford Motor Co. Bronco II Products Liab. Litig.*, No. MDL-991, 1995 WL 491155, at *16 (E.D. La. Aug. 15, 1995) (applying Florida law and finding that "plaintiffs have sufficiently alleged that they provided notice to Ford of the alleged defect in the Bronco II vehicles.").  By the time that lawsuits around the country were filed against Defendants, there was widespread publicity and regulatory scrutiny of the Inflator Defect, which gave Defendants more than ample notice of the defect and the claims that their consumers could and would ultimately allege against them. There is no doubt that Defendants have been made aware of the Inflator Defect and their potential liability to Plaintiffs, as evidenced by outcries from Congress, investigations by regulators, and Defendants' own nationwide recalls.  In light of this, any additional notice from Plaintiffs above and beyond filing the Complaint would be unnecessary, and would serve no real purpose other than to deny Plaintiffs a right to assert otherwise legitimate claims.[80]  Put simply, Defendants' claims of lack of pre-suit notice is simply a meaningless exercise of form over substance.

Finally, the sufficiency of Plaintiffs' notice to Ford, Mazda, Subaru, and Toyota requires resolving issues of fact, which the Court should not address at this stage.  *E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 973 (5th Cir. 1976) ("The adequacy and timeliness of notice under section 2-607 [of the Uniform Commercial Code] typically depend upon the

---

[80] As the Eleventh Circuit noted in *Burns v. Winnebago Indus., Inc.*, 492 F. App'x 44, 48 (11th Cir. 2012), the primary purpose of the pre-suit notice is to give the defendant an opportunity to remedy the defect.  Here, Defendants have had plentiful opportunities to remedy the defect, and requiring additional notice from each class member would not alter this result, especially when Defendants have issued nationwide recalls.

reasonableness of the buyer's efforts to communicate his dissatisfaction. Therefore, whether the notice requirement has been complied with is a question which is particularly within the province of the jury.") (internal citation omitted); *Royal Typewriter Co., a Div. of Litton Bus. Sys. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1102 (11th Cir. 1983) ("Where the buyer gives some notice of the breach, the issues of timeliness and sufficiency are questions of fact."). Since inquiries into Plaintiffs' pre-suit notice and Defendants' receipt of consumer complaints require the Court to consider and resolve factual issues, the Court should defer a decision on this issue until the parties have engaged in discovery.

> **D.     Plaintiffs' implied warranties have not expired.**

All of the Vehicle Manufacturer Defendants contend that the Plaintiffs' implied warranties have expired, requiring that their claims be dismissed.  (Dkt. 612 [Nissan] at 17; Dkt. 614 [Toyota] at 21-23; Dkt. 615 [Subaru] at 17-19; Dkt. 625 [BMW] at 27-28; Dkt. 616 [Honda] at 18-19, 23; Dkt. 619 [Nissan] at 7-9.)  This argument ignores the Complaint's allegations and, at any rate, is not appropriate on a motion to dismiss.

> *1.     Any purported durational limits are unenforceable because Plaintiffs have adequately pled that those limits are unconscionable.*

Even assuming Defendants could successfully claim that the warranties had expired (which they do not, as discussed in subsequent sections), Plaintiffs allege that Defendants' warranty limitations are unconscionable and therefore unenforceable.  (Dkt. 579, ¶¶ 452-54.) The relevant States recognize an unconscionability exception, and Defendants do not contend otherwise.[81]  Even if they did not recognize such an exception, the MMWA expressly requires that disclaimers of implied warranties be conscionable.   15 U.S.C. § 2308(b) ("[I]mplied warranties may be limited in duration to the duration of a written warranty of reasonable duration, if such limitation is conscionable ...."), *In re Porsche Cars N. Am., Inc.*, 880 F. Supp.

---

[81] *See*, *e.g.*, *Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 823 (S.D. Ohio 2012) (Colorado, Michigan, Texas, and New Jersey); *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 622 (M.D.N.C. 2006) (North Carolina); *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 484, 186 Cal. Rptr. 114, 120 (Ct. App. 1982) (California); *Bill Stremmel Motors, Inc. v. IDS Leasing Corp.*, 89 Nev. 414, 418-19, 514 P.2d 654, 657 (1973) (Nevada); *Eckstein v. Cummins*, 41 Ohio App. 2d 1, 10-11, 321 N.E.2d 897, 903-04 (Ohio Ct. App. 1974) (Ohio); *Al's Auto Inc. v. Hollander, Inc.*, No. 08-CV-731, 2008 WL 4831691, at *2 (E.D. Pa. Nov. 4, 2008) (Pennsylvania); *Smith v. D.R. Horton, Inc.*, 403 S.C. 10, 15, 742 S.E.2d 37, 40 (Ct. App. 2013) (South Carolina).

2d 801, 823 (S.D. Ohio 2012)  ("Unlike temporal limitations on express warranties, however, temporal limitations on implied warranties must not only be reasonable *but also conscionable*.") (emphasis added) (*citing* 15 U.S.C. § 2308, *supra*).[82]  "Unconscionability is a 'broader question' than reasonableness and implicates the parties' subjective knowledge in the bargaining process." *Id*. (citing *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 295 (4th Cir. 1989)).  If "Plaintiffs have alleged sufficient facts to support the inference that the [w]arranties' durational limitation on all implied warranties was unconscionable," then they have stated "a claim for breach of the implied warranty of merchantability under the law of their respective states, as modified by Magnuson–Moss." *Id*. at 824.

In *Porsche*, where the plaintiffs alleged that the defendant knew, but did not disclose, an inherent, material defect in the coolant system, and consumers would bear the cost of the defect, the court held that the plaintiffs had stated a prima facie case of unconscionability that would render unenforceable any implied warranty durational limits.  *Id*. at 823 (denying motions to dismiss implied warranty and MMWA claims premised on Colorado, Michigan, Texas, and New Jersey law).  *See also Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 622 (M.D.N.C. 2006) (reasoning that plaintiff adequately alleged unconscionability by pleading that the vehicles "contain a latent defect of which Defendants were actually or constructively aware at the time of sale, and purchasers lacked a meaningful choice with respect to the terms of the warranty due to unequal bargaining power and a lack of warranty competition."); *Barnext Offshore, Ltd. v. Ferretti Group USA, Inc.*, No. 1:10–CV–23869–CMA, 2012 WL 1570057, at *10–11 (S.D. Fla. May 2, 2012) (allowing a yacht owner's express-warranty claim to survive summary judgment because there was evidence that the defendants knew the yacht was defective at the time of the sale) (citing *Lennar Homes, Inc. v. Masonite Corp.*, 32 F. Supp. 2d 396, 401 (E.D. La. 1998)); *Henderson v. Volvo Cars of N. Am., LLC*, No. 2:09–CV–4146–DMC–JAD, 2010 WL 2925913 (D.N.J. July 21, 2010); *In re Samsung DLP TV Class Action Litig.*, No. 07-CV-2141(GEB), 2009 U.S. Dist. LEXIS 100065, at *15-16 (D.N.J. Oct. 27, 2009) (explaining that when a

---

[82] Defendants tend to conflate the express and implied warranty inquiries; some of their cites do not even address implied warranties.  *See Licul v. Volkswagen Grp. Of Am., Inc.*, Civ. No. 13–61686, 2013 WL 6328734, at *2 (S.D. Fla. Dec. 5, 2013) (Moreno, J.) (cited by Ford); *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1340 (S.D. Fla. 2013); *Abraham v. Volkswagen of Am. Inc.*, 795 F.2d 238, 250 (2d Cir. 1986) (discussing durational limits only with regard to express warranties, and not addressing unconscionability).

manufacturer is aware that its product contains a latent defect, attempted warranty disclaimers are unconscionable and ineffective); *Payne v. Fujifilm U.S.A., Inc.*, No. 07-CV-385(JAG), 2007 U.S. Dist. LEXIS 94765, at *11-13 (D.N.J. Dec. 28, 2007) (same) (collecting cases).

The same result should apply here.   As detailed previously, Plaintiffs allege that Defendants knew of a specific, and critically important, defect that could convert a key safety feature of their vehicles into a veritable grenade, and yet continued to manufacture, market, and sell the affected vehicles without ever disclosing the defect.   *See* Sections II-III of Statement of Facts, *supra*; *see also* Dkt. 579, ¶ 454.   Indeed, Defendants risked not just other parts of the vehicle, as in *Porsche*, but the occupants themselves, including Plaintiffs, greatly heightening the substantive unconscionability of their efforts to disclaim warranties well within the useful life of the vehicles.   Further, Plaintiffs have expressly pled the procedural unconscionability of the warranty limitations, given the "unequal bargaining power between the Takata Defendants and Vehicle Manufacturer Defendants, on the one hand, and Plaintiffs and the other Class members, on the other." *Id.* ¶ 455.

Unconscionability is also a factual question inappropriate for resolution at the pleading stage.  *See, e.g.*, *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 293 (4th Cir. 1989) ("[T]he district court erred by ruling, solely on the basis of the pleadings, that GM's durational limitations on any and all implied warranties were both 'reasonable' and 'conscionable' as a matter of law."); *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 623 (M.D.N.C. 2006) ("The Court also agrees with *Carlson* that the issue of unconscionability should rarely be determined without an opportunity to develop evidence of time, place and commercial setting."); *Snodgrass v. Ford Motor Co.*, No. 96-CV-1814(JBS), 2001 U.S. Dist. LEXIS 18555, at *35 (D.N.J. Sept. 4, 2001) (cited by Defendants) (assessing unconscionability argument at *summary judgment* stage); *Henderson v. Volvo Cars of N. Am. LLC*, No. 09-CV-4146(DMC)(JAD), 2010 WL 2925913, at *9 (D.N.J. July 21, 2010) (denying motion to dismiss because "[w]hether Plaintiffs can demonstrate that the express warranty was unconscionable remains to be seen, however," and "this Court will not dismiss Plaintiffs' breach of express warranty claims at this early stage"); *Cooper v. Samsung Elec. Am., Inc.*, No. 07-CV-3853(JLL), 2008 U.S. Dist. LEXIS 75810, at *10 (D.N.J. Sept. 30, 2008) ("[M]uch of the information required to decide the issue of unconscionability is either not properly before the court" and is an issue "more suitable for decision at summary judgment."); *In re Ford Motor Co. Ignition Switch Products Liability Litig.*,

MDL No. 1112, Nos. 96-CV-3125(JBS), 96-CV-1814(JBS), 1999 U.S. Dist. LEXIS 22892, at *12 (D.N.J. May 14, 1999) ("[The court is] unable at this juncture to determine, as a matter of law, whether or not Ford's durational limitation of the implied warranty of merchantability that accompanied plaintiff's Ford vehicles at the time of their original retail sale was unconscionable.");  *In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*, No. 03-CV-4558(HAA), 2008 U.S. Dist. LEXIS 73690, at *63 (D.N.J. Sept. 3, 2008).

Defendants' cases do not alter the result.  (Dkt. 612 [Ford] at 18 n.11; Dkt. 614 [Toyota] at 22; Dkt. 615 [Subaru] at 18]; Dkt. 627 [Nissan] at 8.)  Some of the cases on which they rely were decided at summary judgment or on appeal after trial, undermining Defendants' arguments at this stage of the litigation.[83]   In many of the cases, the defect did not pose the safety risk posed here, thus greatly reducing the concern that the defendant had disclaimed an issue of serious import to the plaintiffs.[84]  And in others, the allegations of unconscionability were plainly insufficient.[85]   Finally, in *Nelson v. Nissan North Am., Inc.*, 894 F. Supp. 2d 558, 565 (D.N.J. 2012), the express and implied warranty claims were upheld on other grounds.

---

[83] *Hahn v. Ford Motor Co*., 434 N.E.2d 943, 952 (Ind. Ct. App. 1982) (appeal of trial judgment); *Hornberger v. General Motors Corp*., 929 F. Supp. 884, 891-92 (E.D. Pa.1996) (summary judgment); *Taterka v. Ford Motor Co*, 271 N.W.2d 653, 657 (Wis. 1978) (appeal from grant of summary judgment); *Broe v. Oneonta Sales Co., Inc*., 100 Misc. 2d 1099 (N.Y. Sup. Ct. 1978) (summary judgment).

[84] *See Alban v. BMW of N. Am. LLC*, No. 09-CV-5398(DRD), 2011 WL 900114 (D.N.J. March 15, 2011) (odor emanating from trunk); *Licul v. Volkswagen Group of Am.*, No. 13-CV-61686, 2013 WL 6328734 (S.D. Fla. Dec. 5 2013) (door locks); *Borden Inc. v. Advent Ink Co*., 701 A.2d 255, 264 (Pa. Super. 1997) (ink); *Evitts v. DaimlerChrysler Motors Corp*., 834 N.E .2d 942, 950 (Ill. App. Ct. 2005) (rear defroster); *Landsman Packing Co. v. Continental Can Co*., 864 F.2d 721, 729 (11th Cir. 1989); *Landsman Packing Co. v. Continental Can Co*., 864 F.2d 721, 729 (11th Cir. 1989) (jar capping machine); *Smith v. Ford Motor Co.*, 462 F. App'x 660, 662 (9th Cir. 2011) (alleged safety risk of defect was "too speculative").  Still other cases cited by Defendants do not even involve defective products, let alone a risk to personal safety.  *Hughes v. Alltel Corp.*, 2004 U.S. Dist. LEXIS 20705 (N.D. Fla. Mar. 31, 2004) (credit reporting); *La Torre v. BFS Retail & Commer. Operations, LLC*, 2008 U.S. Dist. LEXIS 99002 (S.D. Fla. Dec. 8, 2008) (unpaid wages).

[85] *Bush v. Am. Motor Sales, Corp*., 575 F. Supp. 1581, 1583 (D. Colo. 1984) (alleging only that warranty was "defective"); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig*., 754 F. Supp. 2d 1145, 1182 (C.D. Cal 2010) (rejecting unconscionability argument "in the absence of argument by Plaintiffs to the contrary"); *Evitts v. DaimlerChrysler Motors Corp*., 834 N.E .2d 942, 950 (Ill. App. Ct. 2005) (after two

### 2. *The validity of any warranty limitations turns on factual disputes not properly before the Court on Defendants' motions to dismiss.*

Defendants also have not established that they validly limited the implied warranties on their vehicles. Each of them seeks to have the Court consider written warranties that purport to limit Plaintiffs' implied warranties, but without any foundational evidence to suggest that the warranties were actually provided to Plaintiffs or their predecessors, or that they were provided at a time and in a manner necessary to limit the implied warranties. *See*, *e.g.*, *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 982 (S.D. Cal. 2014) (assessing time at which purported disclaimer was delivered before concluding that disclaimer was valid under the laws of Michigan, New York, New Hampshire, and Texas).

Here, Defendants attach to their motions to dismiss warranties that they contend applied to Plaintiffs' vehicles based solely on the date of purchase, and no other foundational facts. Even if the Court were to take judicial notice of those warranties, it need not and could not credit Defendants' factual conclusions that the warranties were actually provided to Plaintiffs or their predecessors, and the Court has no facts before it regarding the timing of any of the warranties provided. These are hardly grounds to grant a motion to dismiss. Indeed, it is not surprising that many of the cases Defendants rely on were decided at the summary judgment stage, when those foundational facts were appropriate for consideration and in evidence.[86]

---

amendments to the complaint, insufficient allegations that the defendant knew of the defect when limiting its express warranty); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1359 (N.D. Ga. 2013) (plaintiffs "failed to allege any other facts that would support a finding of unconscionability" other than the defendant's knowledge of the defect at the time of the sale); *Suddreth v. Mercedes–Benz, LLC*, No. 10-CV-05130(DMC-JAD), 2011 U.S. Dist. LEXIS 126237, at *9-12 (D.N.J. Oct. 31, 2011) (insufficient allegations regarding the defendant's knowledge); *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, No.: 10-CV-4429(JLL), 2012 U.S. Dist. LEXIS 62045, at *61-66 (D.N.J. May 3, 2012) (same).

[86] *See Snodgrass v. Ford Motor Co.*, No. 96-CV-1814(JBS), 2001 U.S. Dist. LEXIS 18555, at *33-35, 49 n.11 (D.N.J. Sep. 4, 2001) (cited by BMW, Ford, Subaru, and Toyota); *Daigle v. Ford Motor Co.*, No. 09–CV-3214 (MJD/LIB), 2012 WL 3113854, at *11 (D. Minn. July 31, 2012) (same); *Kagan v. Harley Davidson, Inc.*, No. 07-CV-0694, 2008 WL 1815308, at *7-9 (E.D. Pa. Apr. 22, 2008) (cited by BMW and Subaru); *McKissic v. Country Coach, Inc.*, No. 8:07-CV-1488-T-17(EAJ), 2009 WL 500502, at *12 (M.D. Fla. Feb. 27, 2009) (cited by BMW).

3.      *Plaintiffs have alleged breach of the implied warranty at the time of sale,*
        *and thus during the warranty period.*

No matter what durational limits Defendants prematurely contend are applicable, Plaintiffs allege in each of their implied warranty claims that the breach occurred *within* the warranty period; at the time of sale.  Specifically, the vehicles *as and when delivered* contained the Inflator Defect, as allegedly known by the Vehicle Manufacturer Defendants and their long-time supplier and co-Defendant, Takata.  (*See*, *e.g.*, Dkt. 579, ¶ 480) ("These Class Vehicles, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars and airbags are used, because they are fitted with Defective Airbags containing the Inflator Defect…"); Count 21, Dkt. 579, ¶ 680) (same).)[87]   As discussed previously, and unlike in the many cases Defendants cite, these are hardly conclusory allegations.   Rather, Plaintiffs identify in detail why the use of the inherently unstable ammonium nitrate propellant in Takata airbags undermined a key safety feature of the Class Vehicles and converted them into highly dangerous projectiles.   Indeed, the inherent danger forced upon Plaintiffs at the time of delivery itself distinguishes many of the cases Defendants cite.[88]   Accordingly, even if Defendants had correctly stated the law as to any of the applicable States, and could somehow legitimately ask this Court to consider and resolve at this stage factual issues regarding the application of durational limits in particular written warranties to

---

[87] By contrast, in *Brisson v. Ford Motor Co.*, 349 Fed. App'x 433, 434 (11th Cir. 2009) (cited by Ford and Toyota), "plaintiffs *failed to allege* that a defect manifested itself or a breach occurred within" the relevant warranty period." (emphasis added).

[88] Defendants rely on many cases where, at least based on the facts relied upon by the opinions, the defect was neither specifically described as being clearly present at the time of delivery, nor raised the unpredictable and severe safety risk as the Defective Airbags.  *Compare Speier-Roche v. Volkswagen Group of Am., Inc.*, No. 14-20107-CIV, 2014 WL 1745050 (S.D. Fla. Apr. 30, 2014) (premature wear of brake pads); *Kagan v. Harley Davidson, Inc.*, No. 07-CV-0694, 2008 WL 1815308, at *7-9 (E.D. Pa. Apr. 22, 2008) (summary judgment decision regarding warped kickstand, and apparently no allegations of safety defect present at time of delivery); *Alban v. BMW of N. Am., LLC*, No. 09-CV-5398 (DRD), 2010 U.S. Dist. LEXIS 94038, at *29 (D.N.J. Sept. 8, 2010) (unpleasant odor); *McKissic v. Country Coach, Inc.*, No. 8:07-CV-1488-T-17(EAJ), 2009 WL 500502, at *12 (M.D. Fla. Feb. 27, 2009) (water leaks); *In re Ford Tailgate Litig.*, No. 11-CV-2953(RS), 2014 U.S. Dist. LEXIS 119769, at *10 (cracking of tailgate panel); *Frenzel v. AliphCom*, No. 14-CV-03587(WHO), 2014 WL 7387150, at *15 (N.D. Cal. Dec. 29, 2014) (battery life of watch).

particular Plaintiffs, the argument still could not result in dismissal because Plaintiffs have pled a breach within that timeframe.[89]

Finally, Defendants contend that this argument applies with extra force for Plaintiffs who purchased the subject vehicles after the warranties had allegedly expired.  Yet this argument again misses the mark.  As previously noted, the warranties were breached upon delivery of the Class Vehicles.  While Defendants may contend that the statute of limitations on any implied warranty claim has expired, that is a different argument that fails for different reasons.  In the first instance, when all Plaintiffs allege breach upon initial delivery, there is no merit to the claim that the warranty had expired before any alleged breach.

### 4.    *California courts have expressly rejected Defendants' argument.*

Many of the Defendants focus their expiration arguments on California's Song-Berverly Act.  (Dkt. 608 [Mazda] at 9; Dkt. 616 [Honda] at 18; Dkt. 622 [Takata] at 22; Dkt. 625 [BMW] at 27; Dkt. 626 [Nissan] at 7.)  But under California law, latent defects that manifest that the duration of the warranty may still be actionable if those defects were present at the time of tender.  *Mexia v. Rinker Boat Co*., 174 Cal. App. 4th 1297, 1305-06 (2009) (no requirement in the SBA "that the purchaser discover and report to the seller a latent defect within" the duration of the warranty), *petition for review and depublication denied*, *Mexia v. Rinker Boat Co., Inc.*, No. S174901, 2009 Cal. LEXIS 9238 (Cal. Aug. 26, 2009).  This is especially true when the product poses a safety risk.  *Brand v. Hyundai Motor America*, 226 Cal. App. 4th 1538, 1547 (2014) (emphasizing potential safety risks of allegedly defective sunroof).

Though Defendants implore this Court to disregard the leading contemporary case, *Mexia*, and its progeny, the Court should decline to do so.  As one federal court explained earlier this year, in *Sater v. Chrysler Group, LLC*:

---

[89] Defendants seize on *Daigle*, in which the court rejected the plaintiff's argument that *express* warranty claims could be maintained after expiration of the express warranty period, even if the plaintiff claimed the vehicle was defective when sold.  *Daigle v. Ford Motor Co*., No. 09-CV-3214 (MJD/LIB), 2012 WL 3113854, at *7 (D. Minn. July 31, 2012).  Critically, and as noted above, *Daigle* was decided at the summary judgment stage.  Further, the court did not explicitly apply this logic to implied warranty claims.  And, even if it had considered the same arguments, it did so under Minnesota law, which is not applicable here.  Similarly, Defendants cite *White v. Volkswagen Group of Am.*, Inc., No. 2:11-CV-02243, 2013 WL 685298, at *5 (W.D. Ark. Feb. 25, 2013) for the same proposition, and yet it was decided solely on the basis of Arkansas law, which is not at issue here.

> The Court respectfully disagrees with those cases that disregard *Mexia's* holding. *Mexia* carefully explored the text, structure, and policy of the [Song Beverly Act] before reaching its result, and its interpretation of the SBA was central to that outcome (in other words, *Mexia's* reading of the SBA is not dicta). *See* 174 Cal. App. 4th at 1303–05, 95 Cal. Rptr. 3d 285. What is more, the Court cannot locate any California appellate court decision that has questioned the case—most cite Mexia's rule without hesitation. *See, e.g., Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1546, 173 Cal. Rptr. 3d 454 (2014). In sum, the Court is not convinced the Supreme Court of California would interpret the SBA differently. That court likely would have addressed the issue by now if it so desired—*Mexia* has been on the books for over five years and deals with a heavily litigated issue.

No. EDCV 14-00700-VAP, 2015 WL 736273, at *7 (C.D. Cal. Feb. 20, 2015). Indeed, that the California Supreme Court *declined* to review *Mexia* is persuasive evidence that *Mexica* was correctly decided.

The *Sater* federal decision adopts the correct approach and result. "An intermediate appellate state court's decision is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Majdipour v. Jaguar Land Rover N. Am.*, No. 12-cv-07849, 2013 U.S. Dist. LEXIS 146209, *61-63 (D.N.J. Oct. 9, 2013) (declining a defendant's invitation to ignore *Mexia's* holding regarding durational limitations, and noting that "the skepticism of a few federal district courts concerning the wisdom of that decision are not . . . persuasive data that the highest court of the state would decide otherwise.") (internal cites and quotes omitted).[90]

Other district courts have similarly followed *Mexia*, noting that they must "defer to the California Court of Appeal's interpretation of [a state statute] unless there is convincing evidence that the California Supreme Court would decide the matter differently." *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 924 (C.D. Cal. 2010) (citation omitted); *see also Malone v. CarMax Auto Superstores California, LLC*, No. LA CV14-08978 JAK, 2015 WL 3889157, at *7 (C.D. Cal. June 23, 2015) (quoting *Mexia* for the proposition that "[t]he implied warranty of

---

[90] *Ehrlich* further held that intervening authority—including *Tietsworth v. Sears*, No. 09-cv-288, 2009 U.S. Dist. LEXIS 98532 (N.D. Cal. Oct. 13, 2009)—did not provide convincing evidence that the California Supreme Court would reject *Mexia*. *Ehrlich*, *supra*, at 923-24.

merchantability may be breached by a latent defect undiscoverable at the time of sale.").[91]   Thus, *Mexia* remains good authority, and Defendants' motions to dismiss the Song-Beverly Act claims should be denied.

> **E.    Plaintiffs' implied warranty claims are not barred by the statute of limitations because of well-accepted tolling doctrines.**

The gravamen of Plaintiffs' warranty claims is a dangerous or deadly defect that Defendants knowingly and actively concealed from Plaintiffs, NHTSA, and the driving public for many years. Statutes of limitations--according to both law and equity—are tolled by such fraudulent concealment, which the Complaint alleges in detail.  Thus, contrary to Defendants' arguments, Plaintiffs' breach of warranty claims are not barred by the statutes of limitations in California, Indiana, Massachusetts, Minnesota, Missouri, Nevada, New Jersey, Pennsylvania, Rhode Island, Tennessee, or West Virginia.  (*See* Dkt. 614 [Toyota] at 24-25; Dkt. 608 [Mazda] at 9, 29, 32-33; Dkt. 622 [Takata] at 22-23; Dkt. 615 [Subaru] at 20-22; Dkt. 625 [BMW] at 24-25; Dkt. 616 [Honda] at 24; and Dkt. 627 [Nissan] at 10-11.)

Defendants contend that none of the following states—California, Indiana, Massachusetts, Minnesota, Missouri, Nevada, New Jersey, Pennsylvania, Rhode Island, Tennessee, and West Virginia—recognizes the discovery rule.  As noted below, this conclusion is suspect for a number of the states.  More importantly, Defendants discount that these states do recognize the fraudulent-concealment tolling of implied warranty statutes of limitations.  As discussed in Section IV.D, *supra*, Plaintiffs more than adequately plead that Defendants actively concealed the Inflator Defect from Plaintiffs, making the tolling doctrine applicable to their claims.  On that basis alone, Defendants' motions to dismiss the implied warranty claims on statutes of limitations ground should be denied.

These states have all adopted the Uniform Commercial Code statute of limitations provision, which recognizes that the state's tolling doctrines remain effective.[92]  *See* Cal. Com.

---

[91] *See also Cholakyan v. Mercedes–Benz USA, LLC*, 796 F.Supp.2d 1220, 1243–44 (C.D. Cal. June 30, 2011) (Judge Margaret Morrow) (emphasizing potential safety risks of alleged water leak defect).

[92] U.C.C. § 2-275 states:

Code § 2725(4) ("This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before this code becomes effective."); Ind. Code § 26-1-2-725(4) (same); Mass. Gen. Laws ch. 106 § 2-725(4) (same); Minn. Stat. Ann. § 336.2-725(4) (same); Mo. Ann. Stat. § 400.2-725(4) (same); Nev. Rev. Stat. § 104.2725(4) (same); N.J. Stat. Ann. § 12a:2-725(4) (same); 13 Pa. Stat. Ann. § 2725(d) (same); R.I. Gen. Laws § 6a-2-725(4) (same); Tenn. Code Ann. § 47-2-725(4) (same); W. Va. Code.§ 46-2-725(4) (same).

For these states, Plaintiffs have alleged that any applicable statute of limitations have been tolled by the discovery rule and/or Defendants' fraudulent concealment of the Inflator Defect.  (Dkt. 453, ¶¶ 385-390.)

**California:** California recognizes the tolling doctrines of fraudulent concealment and, at least for latent defects, the discovery rule.  *See, e.g.*, *Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351, 354-55 (E.D. Cal. 2008) (warranty claims were tolled because, due in part to the defendant's fraud, plaintiffs did not discover the defect until a year before filing complaint). Further, as discussed above, Plaintiffs' claims are timely under the doctrine set out in *Mexia v. Rinker Boat Co*., 174 Cal. App. 4th 1297, 1305-06, 1310 (2009) (no requirement in the SBA "that the purchaser discover and report to the seller a latent defect within" the duration of the

---

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

(3) Where an action commenced within the time limited by subsection (1) is so terminated as to leave available a remedy by another action for the same breach such other action may be commenced after the expiration of the time limited and within six months after the termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute.

(4) This section does not alter the law on tolling of the statute of limitations, nor does it apply to causes of action which have accrued before this chapter becomes effective.

warranty), *petition for review and depublication denied*, *Mexia v. Rinker Boat Co., Inc.*, No. S174901, 2009 Cal. LEXIS 9238 (Cal. Aug. 26, 2009).[93]

**Indiana:** Fraudulent concealment tolls the statute of limitations in Indiana. *See* Ind. Code § 34-11-5-1 ("If a person liable to an action conceals the fact from the knowledge of the person entitled to bring the action, the action may be brought at any time within the period of limitation after the discovery of the cause of action."); *In re Bridgestone/Firestone, Inc. Tires Products Liab. Litig.*, 155 F. Supp. 2d 1069, 1112 (S.D. Ind.), No. MDL NO. 1373, 2001 WL 34691976 (S.D. Ind. Nov. 14, 2001) (denying motion to dismiss breach of implied warranty claims based on defective tires, and finding that "Whether or not the facts contained in the Master Complaint would, by themselves, support a finding of fraudulent concealment is irrelevant; the relevant question is whether there is any set of facts consistent with the Master Complaint that will support such a finding if Plaintiffs ultimately can prove them. The answer to that question is undeniably yes; accordingly, Plaintiffs' warranty claims will not be dismissed based upon the statute of limitations contentions.").

Takata relies on *Tolen v. A.H. Robins Co.*, 570 F. Supp. 1146 (N.D. Ind. 1983) to claim that Indiana disallows the discovery rule, but *Tolen* does not foreclose Indiana's tolling doctrines. (Dkt. 622 at 22.) That case addressed whether the "future performance" language of Ind. Code Ann. § 26-1-2-725(2) applied to plaintiff's breach of warranty claims arising from a contraceptive device. 570 F. Supp. at 1153-54. While § 26-1-2-725(2) only allows breach of warranty claims to accrue upon discovery if the warranty explicitly extends to future performance of the goods, it does not foreclose the discovery rule or the doctrine of fraudulent concealment. At the same time, § 26-1-2-725(4) expressly preserves Indiana's preexisting tolling doctrines. *Tolen* did not purport to hold otherwise, and even recognized that "fraudulent

---

[93] Nissan's citation to *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1101 (N.D. Cal. 2014) does not alter the analysis. (*See* Dkt. 627 [Nissan] at 10.) *MacDonald* did not address tolling under the doctrine of fraudulent concealment, or the applicability of California's other tolling doctrines through Cal. Comm. Code 2725(4). Likewise, Nissan's cursory discussion of tolling under *Raie v. Cheminova Inc.*, 336 F.3d 1278, 1281 n.1 (11th Cir.2003) and *Nardone v. Reynolds*, 333 So. 2d 25, 39 (Fla. 1976) does not undermine Plaintiffs' arguments. (*See* Dkt. 627 [Nissan] at 10-11.) Plaintiffs have adequately pled their fraudulent concealment and equitable tolling arguments, and have sufficiently alleged the acts that Nissan and other Defendants took to actively conceal the Inflator Defect. (*See* Dkt. 579 ¶¶ 385-90; 816-29.)

concealment does toll the statute of limitation" when the concealment is active and intentional, as Plaintiffs have specifically alleged here.  570 F. Supp. at 1151.

**Massachusetts:** Massachusetts applies the doctrine of fraudulent concealment to toll the statute of limitations.  *See* Mass. Gen. Laws  ch. 260, § 12 ("If a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action.") *Compagnie de Reassurance d'Ile de Fr. v. New England Reinsurance Corp.*, 944 F. Supp. 986, 1000, 1006 (D. Mass. 1996) (Massachusetts claims tolled due to the defendant's fraudulent concealment).[94]

**Minnesota:**  Minnesota recognizes the fraudulent concealment doctrine.  *See, e.g.*, *Block v. Toyota Motor Corp.*, 795 F. Supp. 2d 880, 890 (D. Minn. 2011) (analyzing the tolling doctrine of fraudulent concealment and granting plaintiffs leave to file amended complaints to state with particularity which defendants engaged in acts of fraudulent concealment.).

Contrary to Takata's arguments (Dkt. 622 at 22), *Highway Sales, Inc. v. Blue Bird Corp.*, 559 F.3d 782, 789-90 (8th Cir. 2009) does not disallow the discovery rule.  There, the Eighth Circuit observed that under Minn. Stat. § 336.2-725(2), breach of implied warranty claims accrue when tender of delivery is made, because implied warranties do not extend to future performance.  559 F.3d at 788-89.  But the Eighth Circuit did not address subsection (4) of the statute, which states that "[t]his section does not alter the law on tolling of the statute of limitations, nor does it apply to causes of action which have accrued before this chapter becomes effective."  Minn. Stat. Ann. § 336.2-725(4).  The Eighth Circuit's limited analysis of § 336.2-725(2) in *Highway Sales* therefore does not restrict Minnesota's tolling doctrines from applying to breach of implied warranty claims.  In fact, the *Highway Sales* court acknowledged the doctrine of equitable estoppel with respect to the Plaintiff's claims, and noted that "if a buyer delays filing suit as a result of reasonable and detrimental reliance on a seller's assurances it will repair the defective goods, the limitations period is tolled during that period of delay."  *Id.* at 789-90.

_____

[94] Defendants do not cite to any Massachusetts case law prohibiting the discovery rule or the doctrine of fraudulent concealment from tolling the statute of limitations for breach of implied warranty claims.

**Missouri:**  Missouri applies the doctrine of fraudulent concealment to toll the statute of limitations.  *See, e.g.*, *Greeson v. Ace Pipe Cleaning, Inc.*, 830 S.W.2d 444, 447 (Mo. Ct. App. 1992) ("The concealment of a cause of action from a party who has a right to bring the action tolls the statute of limitations until the action is discovered or reasonably could be discovered by the owner of the cause of action."); Mo. Ann. Stat. § 516.280 ("If any person, by absconding or concealing himself, or by any other improper act, prevent the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented."); *Kauchick v. Williams*, 435 S.W.2d 342, 345 (Mo. 1968) (noting that the tolling provision in Mo. Ann. Stat. § 516.280 is "usually associated with fraudulent concealment."); *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 920 n.5 (8th Cir. 2008) ("However, the legislature explicitly stated in the Missouri UCC that the special four-year limitation applicable to breach of warranty claims 'does not alter the law on tolling of the statute of limitations,' Mo. Rev. Stat. § 400.2–725(4). Thus, the plain language of the statute preserves the possibility of equitable tolling on account of fraudulent concealment as set forth in the general limitations chapter.").

Takata relies on *Grus v. Patton*, 790 S.W. 2d 936 (Mo. App. 1990) to claim that Missouri does not allow the discovery rule (Dkt. 622 at 22), but that case is not instructive.  In *Grus*, the court did not analyze whether the discovery rule or fraudulent concealment could toll the statute of limitations for breach of implied warranty claims under Mo. Rev. Stat. § 400.2–725(4). Instead, the *Grus* court addressed a contract dispute involving the purchase of a farm tractor, and found that the plaintiff could not assert the doctrine of estoppel because it was not pled.  790 S.W. 2d at 940.  *Grus*, consequently has no bearing on whether Missouri tolls statutes of limitations for breach of warranty claims.

**Nevada:** Nevada recognizes the discovery rule.  *See, e.g.*, *Herrera v. Toyota Motor Sales, U.S.A.*, No. 2:10-CV-924 JCM (RJJ), 2010 WL 3385336, at *1 (D. Nev. Aug. 23, 2010) ("The applicable statutes of limitations do not bar plaintiffs' warranty claims" because, per the Nevada Supreme Court, "the statute of limitations in a breach of warranty claim begins to toll when a plaintiff knows or reasonably should know of the breach."); *see also Virgin Valley Water Dist. v. Vanguard Piping Sys. (Canada), Inc.*, No. 2:09-CV-00309-LRH, 2011 WL 117244, at *2 (D. Nev. Jan. 13, 2011) (finding that plaintiff's claims under Nev. Rev. Stat. § 104.2725  were not time barred, and that under the discovery rule, the statutory period of limitations is tolled until

the injured party discovers or reasonably should have discovered facts supporting a cause of action)).

Takata's reliance on *Crabb v. Harmon Enterprises, Inc.*, No. 60634, 2014 WL 549834 (Nev. Feb. 10, 2014) does not further its cause.  In *Crabb,* the court found that the plaintiff's claims were grounded in tort, and therefore were governed by a two year statute of limitations, rather than the four year statute of limitations for warranty claims.  *Id.* at *1-3.  The court then analyzed the plaintiff's claims under Nevada's two-year personal injury statute of limitations, which is not applicable here.

**New Jersey:** New Jersey recognizes the doctrine of equitable tolling based on fraudulent concealment.  *See, e.g.*, *Foodtown v. Sigma Mktg. Sys., Inc.*, 518 F. Supp. 485, 488 (D.N.J. 1980) (N.J.S.A. 12A:2-725(4) preserves "the common-law principles regarding the tolling of the statute of limitations"; "where there is fraudulent concealment of a cause of action the period of limitation will not commence until discovery of wrong or of facts which reasonably put one on notice."); *In re Ford Motor Co. E-350 Van Products Liab. Litig. (No. II)*, No. 03-4558(HAA), 2008 WL 4126264, at *17-18 (D.N.J. Sept. 2, 2008) ("Plaintiffs' warranty claims are not time-barred if they allege proper grounds for equitable tolling. . . .  Assuming the truth of Plaintiffs' allegations, and drawing inferences in a light most favorable to them, Plaintiffs sufficiently contend that they discovered Ford's alleged fraudulent concealment between the years 2002 and 2005, under circumstances owing to the revelation of the alleged defects by the media and other public reports.").

**Pennsylvania:** Pennsylvania recognizes tolling under the discovery rule and the doctrine of fraudulent concealment. *See, e.g.*, *Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005) ("In addition to the discovery rule, the doctrine of fraudulent concealment serves to toll the running of the statute of limitations. . . . The doctrine does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception.") (citation omitted).[95]

---

[95] Although *Fine v. Checcio* addressed a personal injury action, Defendants have not cited to any Pennsylvania authority that limits fraudulent concealment tolling strictly to tort actions. Absent a clear indication that the Pennsylvania Supreme Court that would deny application of fraudulent concealment tolling, this Court should not assume otherwise in light of the Supreme Court's reasoning in *Fine*.

While Defendants rely on authorities that limit Pennsylvania's application of the discovery rule in breach of warranty claims (*see* Dkt. 608 [Mazda] at 32-33; Dkt. 614 [Toyota] at 24; Dkt. 616 [Honda] at 24; Dkt. 625 [BMW] at 26; Dkt. 627 [Nissan] at 10), these cases simply do not restrict the doctrine of fraudulent concealment from tolling Plaintiffs' breach of warranty claims.   Under 13 Pa. Stat. Ann. § 2725(d), Pennsylvania's law on tolling of the statute of limitations remains effective.   Thus, to the extent that Pennsylvania courts have restricted the discovery rule in *Nationwide Ins. Co. v. General Motors Corp.*, 625 A.2d 1172 (Pa. 1993); *McCracken v. Ford Motor Co.*, 588 F. Supp. 2d 635, 642 (E.D. Pa. 2008); and *Voicheck v. Ford Motor Co.*, No. 12-cv-6534, 2013 U.S. Dist. LEXIS 62634 (E.D. Pa. May 2, 2013), these cases do not limit Pennsylvania's tolling doctrine under the doctrine of fraudulent concealment.[96]

**Rhode Island:** Fraudulent concealment tolls the statute of limitations in Rhode Island. *See* R.I. Gen. Laws § 9-1-20 ("If any person, liable to an action by another, shall fraudulently, by actual misrepresentation, conceal from him or her the existence of the cause of action, the cause of action shall be deemed to accrue against the person so liable at the time when the person entitled to sue thereon shall first discover its existence.").

*Gail Frances, Inc. v. Alaska Diesel Elec., Inc.*, 62 F. Supp. 2d 511 (D.R.I. 1999), Takata's only cited case, does not address tolling under R.I. Gen. Laws § 9-1-20 or the doctrine of fraudulent concealment.   Instead, *Gail Frances* concerned breach of warranty claims involving the repair of diesel engines.   The court noted that a cause of action for breach of implied warranty accrues when tender of delivery is made, based on R.I. Gen. Laws § 6A–2–725.   *Gail Frances, Inc.*, 62 F. Supp. 2d at 517.   Even so, this case does not address R.I. Gen. Laws § 6A–2–725(4), which allows Rhode Island's law on tolling of the statute of limitations to apply.

**Tennessee:** Tennessee tolls statutes of limitations under the doctrine of fraudulent concealment.   *See, e.g.*, *Eldrige v. Savage*, No. M2012-00973-COA-R3-CV, 2012 WL 6757941, at *4 (Tenn. Ct. App. Dec. 28, 2012) (reversing circuit court's dismissal of home purchaser plaintiff's complaint, and noting that "Tennessee courts have long recognized that the doctrine of fraudulent concealment will toll the running of a statute of limitations.") (citing *Redwing v.*

---

[96] As discussed in Section II.E, *supra*, BMW's argument that the Complaint does not identify a valid Pennsylvania class representative should be rejected..

*Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 461 (Tenn. 2012)).   Nissan's reliance on *Benton v. Snyder*, 825 S.W.2d 409, 413 (Tenn. 1992) does not alter the tolling analysis.  (Dkt. 627 [Nissan] at 11.)  In *Benton*, the Tennessee Supreme Court only addressed fraudulent concealment with respect to Tennessee's medical malpractice statute, Tenn. Code Ann. § 29–26–116, and not warranty claims.  *Benton*, 825 S.W. 2d at 413-14.  Although *Benton* noted that "a plaintiff who seeks to toll a statute of limitations on the ground of fraudulent concealment must prove that the cause of action was known to and fraudulently concealed by the defendant[,]" *Id.* at 414, Plaintiffs here have specifically pled that Nissan knew of and actively concealed the Inflator Defect.   (*See* Dkt. 579 at ¶¶ 816-29.)   Any further inquiry on these allegations would require a finding of fact, which is premature at this stage.  As discussed in Section V, *supra*, Plaintiffs have sufficiently pled their fraudulent concealment claims, and thus the statute of limitations for their breach of warranty claims are tolled under Tennessee law.

**West Virginia:** West Virginia recognizes that fraudulent concealment tolls the statute of limitations.  *See Dunn v. Rockwell*, 689 S.E.2d 255, 265 (W. Va. 2009) (Applying a five-step analysis to determining whether a cause of action is time-barred, and noting that "[w]henever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled.").   While the West Virginia Supreme Court declined to extend the discovery rule to breach of warranty claims in *Basham v. Gen. Shale*, 377 S.E.2d 830, 835 (W. Va. 1988), the court noted that "the discovery rule may be applied under circumstances in which a fraudulent concealment claim is properly before a court."  *Id.* at 836 n.7.  Defendants have not put forth any authority that limits the doctrine of fraudulent concealment in tolling breach of implied warranty claims.  To the contrary, W. Va. Code § 46-2-725(4) allows West Virgnia's law on tolling of the statute of limitations to remain in effect.  Because Plaintiffs have adequately pled Defendants' fraudulent concealment of the Inflator Defect (*see* Dkt. 579 at ¶¶ 385-390), the statute of limitations for Plaintiffs' breach of implied warranty claims have been tolled under West Virginia law.

In sum, even though the states' statutory language may impose a four-year statute of limitations on its face, the discovery rule and the doctrine of fraudulent concealment have effectively tolled Plaintiffs' breach of warranty claims.

**VIII.   Plaintiffs' Negligence Counts Are Not Barred.**

113

Ford and Takata move to dismiss Plaintiffs' negligence claims (Counts 8 and 24), arguing that such claims are barred by the economic loss rule.  Plaintiffs are asserting these claims for negligence under Michigan law, which should apply because Michigan has the most significant relationship to the claims.  *See* discussion Section II.C, *supra*.  And Michigan law permits individual consumers to pursue negligence claims for purely economic losses resulting from product defects.  Michigan has limited its application of the economic loss doctrine to commercial transactions, but has not extended it to consumer transactions.  *See, e.g., Neibarger v. Universal Coops., Inc.,* 486 N.W.2d 612, 618 (Mich. 1992); *Republic Ins. Co. v. Broan Mfg. Co., Inc.,* 960 F. Supp. 1247, 1249 (E.D. Mich. 1997) (Michigan's economic loss doctrine "has no application outside the commercial realm."); *see also Blackward v. Simplex Prods. Division*, No. 221066, 2001 WL 1255924, *3 (Mich. Ct. App. Oct. 19, 2001) ("The economic loss doctrine as adopted in Michigan clearly distinguishes between transactions involving the sale of goods for commercial purposes, where there are economic expectations attached to the purchases, and those involving the sale of defective products which result in losses traditionally remedied by resort to tort law.").[97]

Thus, the economic loss rule does not bar Plaintiffs' negligence claims.  Because Ford and Takata have not otherwise challenged the adequacy of these claims, their motion to dismiss Counts 8 and 24 should be denied.

## IX.    Plaintiffs' Negligent Recall Counts Are Not Barred.

Plaintiffs, on behalf of a nationwide class, have asserted negligent-failure-to-recall claims against California-headquartered Defendants Honda, Toyota, and Mazda (Dkt. 579, ¶¶ 609-615 (Honda), ¶¶ 809-815 (Mazda), ¶¶ 1002-1008 (Toyota)), under California law.  Similarly, on behalf of a California Sub-Class, Plaintiffs have asserted a negligent-failure-to-recall claim against Takata, Honda, BMW, and Nissan, also under California law.  (*Id.*, ¶¶ 1158-64.)  These claims are well-pled and Defendants' attempts to dismiss them should be denied.

---

[97] In a different case, Michigan's intermediate appellate court reached the opposite conclusion, *see Sherman v. Sea Ray Boats, Inc.,* 649 N.W.2d 783, 786-90 (Mich. Ct. App. 2002), but *Sherman* has been distinguished on numerous occasions and, of course, cannot overrule the Michigan Supreme Court's decision in *Neibarger*, which placed the commercial transaction limitation on the Michigan economic loss rule.  *See State Farm Fire & Cas. Co. v. Conair Corp.,* 833 F. Supp. 2d 713, 718 (E.D. Mich. 2011) (distinguishing *Sherman*); *Safeco Ins. Co. of Am. v. CPI Plastics Grp.*, Ltd., 625 F. Supp. 2d 508, 511 (E.D. Mich. 2008) (distinguishing *Sherman*).

No Defendant disputes that negligent failure to recall is a recognized cause of action in California, nor could they. *See, e.g., Roberts v. Electrolux Home Products, Inc.*, No. 12-cv-1644, 2013 WL 7753579, *13 (C.D. Cal. Mar. 4, 2013) (denying a motion to dismiss negligent-failure-to-recall claim because California law "recognizes that a duty to recall or retrofit a product can arise due to either a shift in industry standards or post-sale knowledge that puts a manufacturer on notice regarding a dangerous product defect"); *Hernandez v. Badger Constr. Equip. Co.*, 28 Cal. App. 4th 1791, 1828 (Cal. Ct. App. 1994) (affirming verdict on negligent-failure-to-recall claim). Indeed, the Judicial Council of California has promulgated an official jury instruction that specifically addresses this claim. *See* California Civil Jury Instruction No. 1223 ("Negligence—Recall/Retrofit") (Revised October 2004).

Instead, Defendants advance three arguments against this claim. First, they argue that the economic loss rule bars the claim. (Dkt. 614 [Toyota] at 31; Dkt. 608 [Mazda] at 9, 23-24, 26, 31; Dkt. 625 [BMW] at 29-30.) Second, Mazda and Toyota argue that it is preempted by federal law and conflicts with NHTSA's primary jurisdiction. (Dkt. 614 [Toyota] at 32-33; Dkt. 608 [Mazda] at 9, 24, 26, 31.) And third, Takata contends that it has no duty to recall and is thus immune from the claim. None of these arguments has any merit.

First, under California law, the economic loss rule does not bar product claims for losses to property "other than the product itself." *Jiminez v.Super. Ct.*, 29 Cal. 4th 473, 483-484 (Cal. 2002); *Robinson Helicopter Corp. v. Dana Corp.*, 34 Cal. 4th 979, 989 (Cal. Ct. App. 2005). (holding that the economic loss rule allows a plaintiff to pursue a strict liability tort recovery where a defective product causes damage to other property, that is, property other than the product itself). BMW concedes as much. (Dkt. 625 at 30, n. 60.)

In the context of a component part of a larger product, or a part of a larger structure, the economic loss rule in California does not bar claims for economic losses to the larger product or structure containing the defective product or part. *Jiminez*, 29 Cal. 4th at 483-484 (finding that the economic loss rule does not bar strict liability claims for damage to a home allegedly caused by a defective window); *see also Aas v. Super. Ct.*, 24 Cal. 4th 627, 641 (Cal. Ct. App. 2000) (collecting cases where economic loss rule does not bar recovery in tort for damage to a larger product caused by defective component part). In *Gherna v. Ford Motor Co.*, the court held that the plaintiff could pursue tort claims for the property loss of a vehicle caused by unknown defects within the engine compartment of the vehicle. 246 Cal. App. 2d 639, 649-650 (Cal. Ct.

App. 1966).  More recently, in *Sater v. Chrysler Group LLC,* the court found that the economic loss rule would not bar tort claims for property damage to a larger product caused by its component part.  No. EDCV 14–00700, 2015 WL 736273, *13-*14 (C.D. Cal. Feb. 20, 2015).  In *Sater*, the component part was a defective steering assembly, and the larger product damaged by the defective component was the truck in which the assembly was installed.  *See id.*  Likewise, here, the component part is Takata's Defective Airbag, and the larger product damaged by the component is the automobile.

Defendants' reliance on *Sharma v. BMW of North America, LLC*, No. C–13–2274 MMC, 2014 WL 2795512 (N.D. Cal. June 19, 2014), is misplaced, because the plaintiffs there did not assert that there was damage to property other than the product itself.  *Id.* at *6-*7 ("Plaintiffs, however, do not allege they incurred any physical injury or damage to property other than to their vehicles, and, consequently, fail to allege sufficient facts to support a negligence claim.").  Here, in contrast, Plaintiffs allege that Takata's Defective Airbags have damaged and diminished the value of the vehicles in which they have been installed.  (*E.g.,* Dkt. 579, ¶ 614.)  Thus, the economic loss rule does not bar Plaintiffs' negligent-failure-to-recall claims.

Second, contrary to Defendants' arguments, federal law does not preempt Plaintiffs' negligent-failure-to-recall claims, which do not seek injunctive relief, but instead only damages and restitution based on Defendants' failure to conduct a recall in a timely manner.  For this reason and several others, Defendants' preemption argument was rejected in *Kent v. Daimler Chrysler Corp.*, 200 F.Supp.2d 1208, 1213 (N.D. Cal. 2002), which Defendants, tellingly, fail to even acknowledge.  Another court in this District, however, recently expressed "agree[ment] with the reasoning" of *Kent*, in rejecting a motion to dismiss based on a similar primary jurisdiction argument.  *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1238 (S.D. Fla. 2014) (Dimitrouleas, J.).  Defendants cannot seriously argue that being held liable for damages or restitution based on their failure to recall Class Vehicles years ago will make it impossible for them to comply with both state and federal law now, or will create a conflict with a NHTSA investigation, particularly since Defendants have already recalled Class Vehicles.  Federal law, therefore, does not preempt Plaintiffs' negligent-failure-to-recall claims.

Finally, Takata claims that it cannot be held liable for a failure to recall because it is a "manufacturer of original equipment," but it cites absolutely no California authority for this proposition.  (Dkt. 622 [Takata] at 18.)  In fact, Takata's claim is inconsistent with California

116

law, which imposes a duty to warn and liability on a component manufacturer if its product is "'defective' when it left the manufacturer." *Tellez-Cordova v. Campbell-Hausfeld/Scott Fetzger Co.*, 28 Cal. Rptr. 3d 744, 747 (Cal. Ct. App. 2004). Takata also claims that federal regulations do not impose an obligation on it to notify NHTSA or consumers about a defect. (Dkt. 622 [Takata] at 18.) But even if that claim is accurate, it is irrelevant, because Takata's liability under Plaintiffs' negligent-failure-to-recall claim would be based on Takata's failure to exercise due care under California, not federal, law.

Defendants' motions to dismiss Plaintiffs' negligent-failure-to-recall claims under California law should be denied.

## X.  This Court May Exercise Personal Jurisdiction Over Ford With Respect To All Plaintiffs' Claims.

Ford's challenge to this Court's assertion of personal jurisdiction over is without merit. Tellingly, none of the other seven responding Defendants has advanced this argument, despite the fact that every responding Defendant has been sued in this action by Plaintiffs who are not Florida residents.

Seven named Plaintiffs have asserted claims against Ford in the Complaint. (Dkt. 579, ¶ 76 (Joseph Aliscio of Florida), ¶ 82 (Nancy Barnett of Texas), ¶ 84 (Alicia Benton of South Carolina), ¶ 114 (John Huebner of California), ¶ 165 (Eugennie Sinclair of Florida), ¶ 179 (Brooks Weisblat of Florida), ¶ 184 (Teresa Woodard of South Carolina).) Ford contends that this Court cannot assert personal jurisdiction over it with respect to the claims of the four Plaintiffs who are not Florida residents (Barnett, Benton, Huebner, and Woodard) (Dkt. 612 [Ford] at 29-30), even though it concedes, as it must, that it is subject to this Court's jurisdiction for the claims of the three remaining Plaintiffs from Florida (Aliscio, Sinclair, Weisblat).[98] This necessary concession with respect to the Florida Plaintiffs, however, is fatal to Ford's challenge with respect to the non-Florida Plaintiffs, based on the doctrine of pendent personal jurisdiction.

Under this doctrine, "a court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the

---

[98] Because Ford did not challenge this Court's assertion of personal jurisdiction over it with respect to the Florida Plaintiffs, Ford waived any such challenge. Fed. R. Civ. P. 12(h). Nor could it have presented a credible challenge, for this Court clearly has specific jurisdiction over Ford with respect to the Florida Plaintiffs' claims. Fla. Stat. § 48.193(1).

court does have personal jurisdiction." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). Courts in this District have regularly embraced and applied this well-established doctrine. *See Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1224 n.3 (S.D. Fla. 2009) ("The alleged tort of fraudulent misrepresentation or omission and the other tort and contract-related claims in this case arise out of a common nucleus of operative facts. Thus, the doctrine of 'pendent personal jurisdiction' comes into play.") (collecting decisions from the Second, Third, Fourth, Seventh, Ninth, Tenth, and D.C. Circuits); *Exhibit Icons, LLC v. XP Companies, LLC*, 609 F. Supp. 2d 1282, 1299 n.15 (S.D. Fla. 2009) (same); *accord Dekle v. Global Digital Solutions, Inc.*, No. CIV.A. 15-0069-WS-C, 2015 WL 3562412, at *4 (S.D. Ala. June 5, 2015); *Williams v. Student Loan Guarantee Found. of Arkansas*, No. 5:12-CV-02940-JHE, 2015 WL 241428, at *7 (N.D. Ala. Jan. 20, 2015).[99]

Ford cannot seriously dispute that the claims of Florida Plaintiffs and non-Florida Plaintiffs "arise out of a common nucleus of operative facts." *Sierra Equity Grp.*, 650 F. Supp. 2d at 1224 n.3. Both sets of Plaintiffs rely on the same factual allegations in the Complaint and challenge the same deceptive course of conduct by Ford, which is not alleged to have been any different throughout the country. Because this Court unquestionably has specific personal jurisdiction over Ford with respect to the Florida Plaintiffs' claims, it may also assert pendent personal jurisdiction over Ford with respect to the non-Florida Plaintiffs' identical claims, regardless of whether there is an "independent basis of personal jurisdiction" for the non-Florida Plaintiffs' claims. *Action Embroidery Corp.*, 368 F.3d at 1180.[100]

---

[99] To be sure, courts "may have discretion to dismiss the pendent claims where considerations of judicial economy, convenience and fairness to litigants so dictate." *Oetiker v. Jurid Werke, G. m. b. H.*, 556 F.2d 1, 5 (D.C. Cir. 1977) (quotation marks omitted). But such considerations unquestionably favor, if not compel, asserting pendent personal jurisdiction here, particularly given this JPML's decision to centralize litigation over Takata airbags in this Court "to eliminate duplicative discovery, prevent inconsistent pretrial rulings on class certification and other issues, and conserve the resources of the parties, their counsel, and the judiciary." *In re: Takata Airbag Products Liab. Litig.*, No. MDL 2599, 2015 WL 506406, at *1 (J.P.M.L. Feb. 5, 2015).

[100] The analysis and outcome are the same for all four of the non-Florida Plaintiffs, even though one was initially a named plaintiff in an action filed in Pennsylvania and then transferred to this Court (Heubner), one was a named plaintiff in the initial complaint filed in his Court (Barnett), and the two others were added as named plaintiffs to the most recent complaint filed in this Court (Benton and Woodard). Because the Complaint amends and supersedes the initial complaint in *Dunn v. Takata Corp.*, No. 14-cv-24009 (S.D. Fla.) (*see* Dkt. 579, ¶ 39), and Defendants have argued that this Court may treat the Complaint "as merging the discrete actions

118

Ford relies on a Fifth Circuit decision, *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274-75 (5th Cir. 2006), to argue that "Plaintiffs must prove personal jurisdiction exists for each plaintiff's claims against Ford."  (Dkt. 612 [Ford] at 29.)  Even if that general proposition is true, it does not help Ford, because the doctrine of pendent personal jurisdiction is a means by which Plaintiffs can "prove personal jurisdiction exists for each plaintiff's claims against Ford." Indeed, even district courts within the Fifth Circuit have adopted and applied the pendent personal jurisdiction doctrine.  *See Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 696 (S.D. Tex. 2011) (denying motion to dismiss for lack of personal jurisdiction based on pendent personal jurisdiction because, "[a]lthough the Fifth Circuit has not yet expressly ruled on pendent personal jurisdiction, other circuits to consider the issue have uniformly approved pendent personal jurisdiction.").

Additionally, Ford's argument fails to acknowledge that where, as here, a defendant has created a national market for its products, courts have time and again refused to erect insurmountable jurisdictional walls between states and have, instead, found it proper to exercise specific jurisdiction over the defendant in any state.  *See e.g., World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (if the sale of a product "arises from efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its products in other States, it is not unreasonable to subject it to suit in one of those States").  This analysis holds true even in MDL transferee courts.  *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 1:00-1898, MDL 1358 SAS, 2005 WL 106936, at *6 (S.D.N.Y. Jan. 18, 2005) (New York MDL transferee court exercised specific personal jurisdiction over a chemical manufacturer who created a national market for its products); *In re Diet Drugs (Phentermine Fenfluramine Dexfenfluramine) Prods. Liab. Litig.*, No. Civ.A. 98-20299, 1998 WL 1969647 at *6-7 (E.D. Pa. Nov. 13, 1998) (Pennsylvania MDL transferee court exercised specific personal jurisdiction over drug manufacturers because defendants intended drug to be sold to consumers throughout the United States).  Here, Ford has indisputably created a national market for its

---

for the duration of the MDL pretrial proceedings," *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 904 (2015), the Court need only consider the law of this forum.  But even if the law of Pennsylvania and the Third Circuit is consulted with respect to Heubner's claims, the result is the same, because the Pennsylvania district court before which Heubner's claims were initially filed in *Gerhart v. Takata Corp.*, No. 14-cv-01562 (W.D. Pa.), had specific jurisdiction over Ford as a result of the claims of a Pennsylvania Plaintiff, Laura Gerhart, and thus had pendent personal jurisdiction over Ford for Heubner's claims as well.

vehicles; it advertises its vehicles nationally, it distributes and services its vehicles nationally, and it sells parts and accessories for its vehicles nationally. (Dkt. 579, ¶ 53.). Because Ford's efforts are targeted to the United States as a whole, including Florida and the states where the other Plaintiffs reside, it is appropriate for this Court to exercise specific personal jurisdiction over Ford with respect to all Plaintiffs' claims without offending any Due Process considerations.

As every other responding Defendant has conceded, this Court has personal jurisdiction over the responding Defendants with respect to every claim asserted in the Complaint. Indeed, accepting Ford's extreme argument to the contrary would seriously undermine the ability of MDL courts to efficiently preside over litigation. Ford's misguided motion to dismiss the claims of Plaintiffs Barnett, Benton, Huebner, and Woodard for a lack of personal jurisdiction should be denied.

## XI. Defendants' Requests to Dismiss or Strike Claims for "Recall-Related" Injunctive Relief Based on NHTSA's "Primary Jurisdiction" are Moot.

Defendants ask the Court to dismiss or strike the claims for "recall-related" injunctive relief in the Complaint on the grounds that such claims fall within NHTSA's "primary jurisdiction."[101] This argument *only* applies to specific paragraphs seeking "recall-related" injunctive relief under certain of the causes of action. As Honda acknowledges: "The primary jurisdiction doctrine generally does not apply to claims for monetary relief, and Honda is not seeking dismissal of any such claims on primary jurisdiction grounds." (Dkt. 616 at 10.)

In connection with their claims against certain of the Defendants (Honda, Mazda, Toyota, BMW, Nissan and Takata) under California's Unfair Competition Law, Plaintiffs included a paragraph seeking injunctive relief in the form of this Court's supervision of the ongoing recalls of Class Vehicles. (*See* Dkt. 579, ¶¶ 567, 767, 960, 1102.) In addition, Plaintiffs included a paragraph seeking injunctive relief against those same Defendants under California's Consumer Legal Remedies Act requiring Defendants to adequately and permanently repair Class Vehicles. (*See* Dkt. 579, ¶¶ 600, 800, 993, 1135.) Plaintiffs do not intend to seek such recall-related

---

[101]    This argument is primarily advanced by Honda (Dkt. 616 at 9-13) and Toyota (Dkt. 614 at 33-35). The argument is joined in and adopted by BMW (Dkt. 625 at 32), Ford (Dkt. 612 at 33-34), Mazda (Dkt. 608 at 33-34), Nissan (Dkt. 627 at 24), and Subaru (Dkt. 615 at 33).

injunctive relief and agree to the striking of these particular paragraphs from the Complaint.[102] This concession moots Defendants' "primary jurisdiction" argument.

Plaintiffs have also included a general request for "such other injunctive relief that the Court deems just and proper" in their Prayer for Relief in the Complaint (Dkt. 579, ¶ 438) – which Defendants also reference.  The general request for injunctive should ***not*** be dismissed or stricken.   Defendants' argument is premature.   Plaintiffs have not filed a motion for a preliminary injunction and have not sought from this Court any specific injunctive relief at this stage.  If and when circumstances arise in which Plaintiffs seek specific injunctive relief, the Court can better address the "primary jurisdiction" issue at that time.  It is simply not possible to predict whether circumstances will arise in this case where injunctive relief is both appropriate and necessary, and the Plaintiffs should be permitted to retain the ability to seek such relief as this case progresses.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motions to dismiss should be denied.   In the alternative, should the Court deem any of Plaintiffs' claims inadequately pled, Plaintiffs request leave to file an Amended Complaint to cure any such deficiencies pursuant to Rule 15.

---

[102] In addition, as a practical matter, NHTSA and Plaintiffs are communicating and cooperating, as this Court has properly urged, and this relationship is expected to continue.

DATED: August 14, 2015    **PODHURST ORSECK, P.A.**

         /s/ Peter Prieto
        Peter Prieto (FBN 501492)
        Aaron S. Podhurst (FBN 63606)
        Stephen F. Rosenthal (FBN 131458)
        John Gravante  (FBN 617113)
        Matthew P. Weinshall (FBN 84783)
        25 West Flagler Street, Suite 800
        Miami, Florida 33130
        Phone: (305) 358-2800
        Fax: (305) 358-2382
        pprieto@podhurst.com
        apodhurst@podhurst.com
        srosenthal@podhurst.com
        jgravante@podhurst.com
        mweinshall@podhurst.com

        *Chair Lead Counsel for Plaintiffs*

| **COLSON HICKS EIDSON** | **POWER ROGERS & SMITH, P.C.** |
|---|---|
| Lewis S. "Mike" Eidson | Todd A. Smith |
| mike@colson.com | tsmith@prslaw.com |
| Curtis Bradley Miner | Brian LaCien |
| curt@colson.com | blacien@prslaw.com |
| 255 Alhambra Circle, PH | Carolyn Daley Scott |
| Coral Gables, FL 33134 | cdaley@prslaw.com |
| T: 305-476-7400 | 70 West Madison St., 55th Floor |
|  | Chicago, IL 60602 |
| By: /s/ Curtis Bradley Miner | T: 312-236-9381 |
|  |  |
| *Plaintiffs' Personal Injury Track Lead Counsel* | By: /s/ Todd A. Smith |
|  |  |
|  | *Plaintiffs' Economic Damages Track Co-Lead Counsel* |

| | |
|---|---|
| **BOIES, SCHILLER & FLEXNER LLP**<br><br>David Boies, Esq.<br>Motty Shuhnan, Esq. (Fla Bar. No. 175056)<br>333 Main Street<br>Armonk, NY 10504<br>Tel: (914) 749-8200<br>Fax: (914) 749-8300<br>dboies@bsfllp.com<br>mshulman@bsfllp.com<br><br>Stephen N. Zack, Esq. (Fla. Bar. No. 145215)<br>Mark J. Heise, Esq. (Fla. Bar No. 771090)<br>100 Southeast 2nd Street, Suite 2800<br>Miami, FL 33131<br>Tel: (305) 539-8400<br>Fax: (305) 539-1307<br>szack@bsfllp.com<br>mheise@bsfllp.com<br><br>Richard B. Drubel, Esq.<br>Jonathan R. Voegele, Esq.<br>26 South Main Street<br>Hanover, NH 03755<br>Tel: (603) 643-9090<br>Fax: (603) 643-9010<br>rdrubel@bsfllp.com<br>jvoegele@bsfllp.com<br><br>By: /s/ David Boies, Esq.<br><br>*Plaintiffs' Economic Damages Track Co-Lead Counsel* | **BARON & BUDD, PC**<br>Roland Tellis<br>rtellis@baronbudd.com<br>David Fernandes<br>dfernandes@bardonbudd.com<br>Mark Pifko<br>mpifko@baronbudd.com<br>15910 Ventura Blvd.,<br>Suite 1600<br>Encino, CA 91436<br>T: 818-839-2333<br><br>J.Burton LeBlanc<br>9015 Bluebonnet Blvd.<br>Baton Rouge, LA 70810<br>T: 225-761-6463<br><br>By: /s/ Roland Tellis<br><br>*Plaintiffs' Steering Committee* |

| **CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, PC** | **LIEFF CABRASER HEIMANN AND BERNSTEIN LLP** |
|---|---|
| James E. Cecchi<br>jcecchi@carellabyrne.com<br>5 Becker Farm Road<br>Roseland, NJ   07068-1739<br>T: 973 994-1700<br>f: 973 994-1744<br><br>By: /s/ James E. Cecchi<br><br>*Plaintiffs' Steering Committee* | Elizabeth Cabraser<br>ecabraser@lchb.com<br>Phong-Chau Gia Nguyen<br>pgnguyen@lchb.com<br>Todd Walburg<br>twalburg@lchb.com<br>275 Battery St., Suite 3000<br>San Francisco, CA 94111-3339<br>T: 415-956-1000<br><br>David Stellings<br>250 Hudson Street, 8th Floor<br>NY, NY 10012<br>212-355-9500<br>dstellings@lchb.com<br><br>By: /s/ Elizabeth Cabraser<br><br>*Plaintiffs' Steering Committee* |

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 14, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

By: <u>/s/Peter Prieto                    </u>
       Peter Prieto