UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

MDL No. 2599
Master File No. 15-2599-MD-MORENO
14-24009-CV-MORENO

IN RE:

TAKATA AIRBAG PRODUCTS
LIABILITY LITIGATION

————————————————

THIS DOCUMENT RELATES TO ALL
ECONOMIC LOSS TRACK CASES

————————————————/

## ORDER GRANTING IN PART AND DENYING IN PART MAZDA MOTOR OF AMERICA, INC. D/B/A MAZDA NORTH AMERICAN OPERATIONS' MOTION TO DISMISS

This multidistrict litigation ("MDL") consolidates allegations of economic loss and personal injury related to airbags manufactured by defendants Takata Corporation and TK Holdings (collectively, "Takata") and equipped in vehicles manufactured by defendants Honda, BMW, Ford, Mazda, Mitsubishi, Nissan, Subaru, and Toyota (collectively, the "Automotive Defendants") (collectively with Takata, the "Defendants"). This cause comes before the Court upon Mazda Motor of America, Inc. d/b/a Mazda North American Operations's ("Mazda"), Motion to Dismiss ("Motion") [D.E. 608], filed on July 17, 2015. The Court has reviewed the Motion, Plaintiffs' Omnibus Response (D.E. 658) and Mazda's Reply (D.E. 690). Additionally, the parties raised some of their briefed arguments at oral argument held on Friday, October 23, 2015. Mazda's Motion asks the Court to dismiss all counts alleged against it in the Second Amended Economic Loss Complaint ("Complaint") (D.E. 579).

# I.     BACKGROUND

Plaintiffs in this case are consumers of vehicles equipped with Takata airbags containing ammonium nitrate as a propellant. The Court has divided the MDL's component cases into two tracks: an economic loss track for plaintiffs alleging purely economic damages and a personal injury track for plaintiffs alleging damages to a person. This order pertains to the economic loss track cases. In the Complaint, Plaintiffs allege 11 counts against Mazda.[1]

These 11 counts against Mazda consist of the following: Count 3 for violations of the Magnuson-Moss Warranty Act; Count 25 for fraudulent concealment; Count 26 for violation of the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Merchantability; Count 27 for unjust enrichment; Count 28 for violation of California's unfair competition law; Count 29 for violation of California's Consumer Legal Remedies Act; Count 30 for violation of California's false advertising law; Count 31 for negligent failure to recall; Count 47 on behalf of a Florida sub-class alleging violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); Count 48 on behalf of a Florida sub-class alleging breach of Florida's implied warranty of merchantability; and Count 49 on behalf of an Alabama sub-class alleging violation of Alabama's Deceptive Trade Practices Act ("ADTPA").[2]

These 11 counts arise out of three Named Plaintiffs' Mazda purchases. Specifically, the three Named Plaintiffs are: (1) Justin Birdsall; (2) Crystal Pardue; and (3) Mickey Vukadinovic. Birdsall purchased his Mazda, used, in Pennsylvania. Pardue purchased her Mazda, used, in

---

[1]     This figure does not include Counts 104–106, alleged by the Automotive Recycler's Association. The Automotive Defendants moved to dismiss these three Counts and the Court ruled in their favor. As these Counts have been dismissed, the Court does not address arguments in the Motion, Omnibus Response, and Reply addressing them.

[2]     The Order does not apply to any of the claims for injunctive relief. The Court will consider the arguments concerning injunctive relief in a later order.

Alabama. And Vukadinovic purchased his Mazda, new, in Florida. Birdsall's claims were direct-filed into the MDL, as he is a Named Plaintiff in the Complaint and his case had not previously been transferred to the Southern District of Florida. Pardue's claims were transferred to the Court from the Northern District of Alabama. Vukadinovic's claims were transferred to the Court from the Eastern District of Pennsylvania.

## II.    LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  Detailed factual allegations are not required, but a pleading must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." *Twombly*, 550 U.S. at 555.

Where a cause of action sounds in fraud, however, Federal Rule of Civil Procedure 9(b) must be satisfied in addition to the more relaxed standard of Rule 8. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," although "conditions of a person's mind," such as malice, intent, and knowledge may be alleged generally. Fed. R. Civ. P. 9(b). "The 'particularity' requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (citations omitted).

### III.   ANALYSIS

#### A.  Choice of Law Analysis

Plaintiffs assert three counts against Mazda arising only under California law.[3] Specifically, Counts 28–30 allege violations of: California's (1) Unfair Competition Law, (2) Consumer Legal Remedies Act, and (3) False Advertising Law, respectively. Mazda argues that the counts asserting California law should be dismissed because "[a]pplication of the proper choice of law rules dictates that the consumer plaintiffs' . . . claims are governed by the law of the states where they purchased their respective vehicles," not California law. (D.E. 608, at 4). The Court agrees.

While Plaintiffs argue a choice of law inquiry is premature, the issue has been briefed and, at least with regard to the claims against Mazda, can be decided by the Court without further factual development.

Generally, a federal court hearing state law claims applies the choice of law rules of the forum state. *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). However, "[i]n cases transferred pursuant to 28 U.S.C. § 1407, the transferee district court must apply the state law, including its choice of law rules, that would have been applied had there been no change of venue." *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1296 (S.D. Fla. 2003); *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *In re Toyota Motor Corp. Unintended Acceleration*, 785 F. Supp. 2d 925, 931 (C.D. Cal. 2011). Accordingly, "all states in which the transferor court of an individual action sits are considered forum states, and an

---

[3]     Plaintiffs allege additional violations of California law, but in those counts, Plaintiffs plead alternative law if California law does not apply. The three counts discussed in this section arise strictly only under California law, with no alternative law pleaded.

independent choice of law determination is necessary for the states of all transferor courts." *In re Conagra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689, 693 (N.D. Ga. 2008).

This choice of law framework is not altered by the use of a consolidated complaint as a procedural device to streamline the litigation, unless the parties so consent. *See id.* ("[U]sing a master complaint as the operative pleading for choice of law purposes is not unprecedented in multidistrict litigation. However, it is generally used as a substantive pleading only when the parties have consented to such an arrangement." (citations omitted)); *see also In re Toyota Motor Corp. Unintended Acceleration*, 785 F. Supp. 2d at 931 (stating that "[n]either the general authorization of the coordination and consolidation under the MDL statute nor the more specific use of consolidated complaints, as the Court has required here, is intended to alter the substantive rights of the parties" and adding, "[t]he use of a consolidated complaint has been described as 'a procedural device rather than a substantive pleading with the power to alter the choice of law[] rules applicable to the plaintiffs' claims.'" (citing *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 56 (D.N.J. 2009)).

Plaintiffs rely in part on *Gelboim v. Bank of Am. Corp.*, 135 S. Ct. 897, 904 n.3 (2015), to support the proposition that the filing of a consolidated complaint allows the Court to ignore the transferor courts' choice of law rules and apply Florida's choice of law rules. However, *Gelboim* does not address the choice of law inquiry. The issue in *Gelboim* was whether, as part of a larger MDL, a group of plaintiffs could appeal the dismissal of the only claim brought by that group. *Id.* at 903. Holding that such dismissal is appealable, the Court stated, "[c]ases consolidated for MDL pretrial proceedings ordinarily retain their separate identities, so an order disposing of one of the discrete cases in its entirety should qualify under § 1291 as an appealable final decision." *Id.* at 905. The Court further explained, "Section 1407 refers to individual 'actions' which may

be transferred to a single district court, not to any monolithic multidistrict 'action' created by transfer." *Id.* Quoting *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 37, the Court parenthetically added, "§ 1407 does not 'imbu[e] transferred actions with some new and distinctive . . . character.'" In footnote 3, the Court stated, "parties may elect to file a 'master complaint' and a corresponding 'consolidated answer,' which supersede prior individual pleadings. In such a case, the transferee court may treat the master pleadings as merging the discrete actions for the duration of the MDL pretrial proceedings." *Gelboim*, 135 S. Ct. at 904 n.3. The Court clarified that "[n]o merger occurs, however, when 'the master complaint is not meant to be a pleading with legal effect but only an administrative summary of the claims brought by all the plaintiffs.'" *Id.*

The precise parameters of the Court's dicta in footnote 3 are unclear. However, given the Court's analysis regarding the "separate identities" of cases consolidated in MDL proceedings, it would be improper to ignore the transferor courts' conflict of law rules and apply only Florida's choice of law rules. Cases not resolved during the consolidated proceedings must go back to their respective transferor courts. If the Court were to apply Florida's choice of law rules to all the cases, then the transferor courts would have to apply state law they might not have applied to the cases themselves. Transfer into the MDL would have, thus, altered parties' substantive rights. The principles of *Van Dusen* and *Erie*,[4] in addition to the case law cited *supra*, lead the Court to

---

[4]     In *Van Dusen*, 376 U.S. 612 (1964), the Court held that when considering questions of state law, a transferee district court must apply the same state substantive law, including choice of law rules, as would be applied by a state court in the transferor forum. The Court grounded its holding on principles of federalism that underscored *Erie*. *See id.* at 637–39. The Court stated, "[a] change of venue under § 1404 generally should be, with respect to state law, but a change of courtrooms." *Id.* at 639. The same is true of cases consolidated before a district court pursuant to § 1407. *See In re Managed Care Litig.*, 298 F. Supp. 2d at 1296.

conclude that it should apply the transferor court's choice of law rules despite use of the consolidated complaint mechanism.

Accordingly, Florida's choice of law rules apply to Birdsall's claims because his claims were filed directly in the Southern District of Florida. Alabama's choice of law rules apply to Pardue's claims because her case was transferred into the MDL from the Northern District of Alabama. And Pennsylvania's choice of law rules apply to Vukadinovic's claims because his case was transferred into the MDL from the Eastern District of Pennsylvania.

Florida's choice of law rules for tort actions are based on the "'most significant relationship' test outlined in the Restatement (Second) of Conflict of Laws." *Grupo Televisa, S.A.*, 485 F.3d at 1240 (quoting *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980)). Courts consider four types of contacts to determine which state has the most significant relationship to the matter: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Id.* A court should evaluate these contacts "'according to their relative importance with respect to the particular issue.'" *Id.* (quoting § 145 of the Restatement (Second) of Conflict of Laws). However, the first contact is generally the most important, as "absent special circumstances, '[t]he state where the injury occurred would . . . be the decisive consideration in determining the applicable choice of law.'" *Pysca Panama, S.A. v. Tensar Earth Techs., Inc.*, 625 F. Supp. 2d 1198, 1220 (S.D. Fla. 2008) (quoting *Bishop*, 389 So. 2d at 1001).

Pennsylvania "employs a 'flexible rule' which combines the 'significant contacts analysis of Restatement (Second) of Conflict of Laws § 145 and a 'governmental interest analysis.'" *In re*

*Tylenol (Acetaminophen) Mktg.*, No. 13-md-02436, 2015 WL 2417411, at *2 (May 20, 2015 E.D. Pa.) (citing *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805 (Pa. 1964)). Pennsylvania's Supreme Court has stated, "[t]he merit of such a rule is that it gives to the place having the most interest in the problem paramount control over the legal issues arising out of a particular factual context and thereby allows the forum to apply the policy of the jurisdiction most intimately concerned with the outcome of the particular litigation." *Griffith*, 203 A.2d at 806 (internal quotation marks omitted). Pennsylvania "permits analysis of the policies and interests underlying the particular issue before the court and directs courts to apply the law of the state with the most interest in the problem.'" *Travelers Prop. Cas. Co. of Am. v. Chubb Custom Ins. Co.*, 864 F. Supp. 2d 301, 308 (E.D. Pa. 2012) (quoting *Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 229 (3d Cir. 2010)).

Alabama's choice of law rules for tort actions are based on "the traditional choice of law rule of *lex loci delicti*" requiring "that the substantive law of the place where the tort occurred must be employed." *In re Verilink Corp.*, 405 B.R. 356, 365 (N.D. Ala. 2009) (internal quotation marks omitted). "Under *lex loci delicti*, a tort is deemed to have occurred where the alleged harm was suffered." *Id.* (citing *Norris v. Taylor*, 460 So. 2d 151, 152 (Ala. 1984).

In any conflict of law analysis, a fundamental issue is "whether a conflict actually exists." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1171 (11th Cir. 2009). "'Simply stated, [a false conflict occurs] . . . when the laws of the competing states are substantially similar.'" *Id.* (alterations in original) (quoting *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1234 (11th Cir. 2006)). "If a false conflict exists, the court should avoid the conflicts question and simply decide the issue under the law of each of the interested states." *Id.* (internal quotation marks omitted). "A true conflict exists when two or more states have a legitimate interest in a particular

set of facts in the litigation and the laws of those states differ or would produce a different result." *Id.* (internal quotation marks omitted). Assuming, *arguendo*, that California has any interest in the instant actions, there is a true conflict of law where California has causes of action not recognized by Florida, Pennsylvania, and Alabama law.

The Court finds that under Florida, Pennsylvania, and Alabama's choice of law rules, California law should not apply to the instant actions. None of the three Named Plaintiffs reside in California, nor did they reside in California at the time of purchase.[5] Plaintiffs do not allege that the vehicles at issue were purchased in California or that the Named Plaintiffs saw or heard any allegedly deceptive advertisements about Mazda in California. Nor do Plaintiffs allege the vehicles at issue were manufactured in California. The only significant tie to California alleged is that Mazda is headquartered in California. This tie is not enough to defeat the interests of Florida, Pennsylvania, and Alabama in the instant actions, as these states are where the vehicles were purchased and where the alleged harm — overpayment for a purportedly defective car — was suffered.

Applying Florida's choice of law rules to Birdsall's claims, Pennsylvania substantive law applies to his claims, as he purchased the vehicle in Pennsylvania, and thus, Pennsylvania has more interest in the claims than does California. Applying Pennsylvania's choice of law rules to Vukadinovic's claim, Florida's substantive law applies to his claims, as he purchased the vehicle in Florida and resides in Florida, and thus, Florida has more of an interest in the claims than does California. Applying Alabama's choice of law rule of *lex loci delicti* to Purdue's claims,

---

[5] Specifically, Birdsall resides in New York and purchased his Mazda in Pennsylvania; Pardue resides in Alabama and purchased her Mazda in Alabama; and Vukadinovic resides in Florida and purchased his Mazda in Florida.

Alabama substantive law governs her claim, as the purported harm would have occurred in Alabama, where Purdue purchased her vehicle.

Because California law does not govern the claims brought against Mazda, Mazda's Motion is **GRANTED** as to the counts exclusively alleging claims under California law. Accordingly, Count 28, Count 29, and Count 30 are hereby **DISMISSED**.

As to Count 26, Violation of Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Merchantability (California's Lemon Law), Plaintiffs expressly plead this Count in the alternative, stating "if California law does not apply, [the Count] is brought under the laws of the states where Plaintiffs and class Members reside." (D.E. 579 ¶ 731). Mazda is correct that California law does not apply to the instant actions. However, Mazda does not address Plaintiffs' pleading Count 26 in the alternative. Accordingly, the Court **DENIES** the Motion as to Count 26.

### B. Manifestation of Alleged Defect

Mazda argues that all claims for damages against it should be dismissed because Birdsall, Pardue, and Vukadinovic fail to allege manifestation of a defect. Mazda posits that the Named Plaintiffs' Mazda vehicles "have performed satisfactorily without any manifestation of the Inflator Defect." (D.E. 608 at 10). Mazda argues that Florida, Alabama, and Pennsylvania are "firmly aligned with this majority jurisprudence" requiring "manifestation for a defect even where plaintiffs allege diminished value or loss of resale value and the defect is life threatening." (D.E. 608 at 11–16). Plaintiffs respond, *inter alia*, that the airbags have been defective since the very first day they were installed because the propellant used by Takata — but rejected by every other major airbag manufacturer in the industry — is prone to instability and explosions." (D.E. 658 at 41). Plaintiffs continue, "[T]hat defect is not theoretical or hypothetical, given the eight

deaths and hundreds of injuries caused by the Inflator Defect in Takata's airbags." (D.E. 658 at 41).

At this motion to dismiss stage, given Plaintiffs' allegations of ammonium nitrate's innate instability, the Court agrees with Plaintiffs' argument regarding manifestation. The crux of Plaintiffs' allegations is that the propellant used in the Takata airbags at issue is unstable. By definition, this alleged instability would mean that the airbags *may* not protect vehicle occupants, or it may, and it *may* create a more dangerous situation than having no airbag at all, or it may not. Plaintiffs allege there is no way to know whether the airbags at issue would perform satisfactorily in an accident. If Takata had installed grenades in its airbags that may or may not explode on impact, a court would not require an explosion to demonstrate manifestation of a defect. Plaintiffs have alleged essentially this scenario,[6] explaining that occupants of vehicles equipped with the allegedly defective airbags cannot know whether their airbags will expel metal shrapnel that may kill or maim them.

The above analysis is limited to the motion to dismiss stage, taking as true Plaintiffs' allegations of a uniform defect based on the use of ammonium nitrate as a propellant. The Court notes that Defendants have raised the possibility of other causes and factors contributing to the airbag inflator malfunctions, like the press used in the manufacturing process and humidity. These factors may be appropriately considered at the summary judgement stage.

### C. Mazda's Knowledge

Mazda argues that Plaintiffs have not adequately alleged that it had knowledge of the inflator defect at the time of sale, and thus, that the knowledge-dependent counts alleged against

---

[6]     In the Response, Plaintiffs state, "Without warning, the defect transforms a critical safety device, the vehicle's airbag, into a useless piece of fabric or a veritable grenade." (D.E. 658 at 33).

it should be dismissed. (*See* D.E. 608 at 16–21). Mazda notes that Plaintiffs have not alleged that Mazda had direct knowledge of the alleged inflator defect prior to the relevant sales, and that Plaintiffs rely on two theories of constructive knowledge: (1) that Mazda "knew or should have known that Takata's airbags were defective at the time of manufacture because [Mazda] knew that Takata's design contained 'volatile and unstable ammonium nitrate,'" and (2) that Mazda "knew or should have known about the Inflator Defect because it had a duty to investigate all of its vehicles following Honda's first recall in 2008." (D.E. 608 at 17–18). Defendants argue that both theories fail as a matter of law.

The Court finds that Plaintiffs have sufficiently alleged Mazda's knowledge of the alleged inflator defect to satisfy Rule 9(b). Plaintiffs have alleged that the Vehicle Manufacturer Defendants "were aware that the airbags used the volatile and unstable ammonium nitrate as the primary propellant in the inflators." (D.E. 579 ¶¶ 9, 32). Plaintiffs claim that the Vehicle Manufacturer Defendants reviewed the designs of the inflators with Takata before they approved using the Takata airbags in their vehicles. (D.E. 579 ¶¶ 9, 32). Further, Plaintiffs allege facts suggesting Defendants knew or should have known of the volatility and potential danger of using ammonium nitrate as an airbag inflator propellant. Specifically, Plaintiffs allege that Takata expressed concern over the using an ammonium nitrate propellant in 1995 and 1999 patent documents. (D.E. 579 ¶¶ 207, 208). Plaintiffs further claim that ammonium nitrate is typically used as an industrial explosive. (D.E. 579 ¶¶ 205, 206). Given the above, Plaintiffs have plausibly alleged that Defendants knew or should have known of the alleged inflator defect. Accordingly, the Court need not reach the issue of whether Mazda had a duty to investigate incidents of Takata inflator malfunctions in other Automotive Defendants' vehicles.

Exactly how prevalent knowledge of the volatility and instability of ammonium nitrate is, and whether Mazda knew or should have known about these characteristics, is a topic better suited for summary judgment or trial, and thus, the Court can revisit this issue at a more appropriate time.

### D. Count 25: Fraudulent Concealment

Mazda moves to dismiss Count 25, for fraudulent concealment, as alleged by the three Named Plaintiffs.

#### 1. Pardue's Claim For Fraudulent Concealment Under Alabama Law

Mazda argues Pardue's claim of fraudulent concealment should be dismissed for four reasons: (1) Plaintiffs have not adequately pleaded Mazda had knowledge of a defect; (2) Plaintiffs fail to meet the heightened pleading requirements of Rule 9(b), as Plaintiffs do not allege any statement made by Mazda to Pardue, much less the specifics of such statement; (3) Plaintiffs do not allege what Mazda obtained from Pardue's purchase of the used vehicle at issue; and (4) Mazda did not have a duty to disclose any information about the Takata airbags to Pardue, a used car purchaser.

As discussed in Section C, *supra*, Plaintiffs have adequately pleaded knowledge. Additionally, the Court finds that, for the motion to dismiss stage, Plaintiffs have pleaded fraudulent concealment with sufficient particularity. As Plaintiffs argue in their response, Plaintiffs have sufficiently pleaded the "who, what, when, and where" of their omission claim. In short, Plaintiffs have alleged Mazda failed to disclose its knowledge of a life threatening inflator defect prior to Plaintiffs' purchases through any mode of communication. By definition, Plaintiffs cannot point to one particular statement by Mazda as this count is for an *omission* — a non-statement.

The elements of fraudulent concealment (also referred to as "suppression" by Alabama legal authorities) under Alabama law are as follows: (1) "a duty on the part of the defendant to disclose facts"; (2) "concealment or nondisclosure of material facts by the defendant"; (3) "inducement of the plaintiff to act"; and 4) "action by the plaintiff to his or her injury." *See Parsons & Whittemore Enters. Corp. v. Cello Energy, LLC.*, 613 F. Supp. 2d 1271, 1288 (S.D. Ala. 2009).

Aside from the knowledge and fraud standards raised by Mazda, Mazda's remaining contention is with the first element: "duty on the part of the defendant to disclose facts." Mazda incorporates by reference the duty arguments made by Subaru of America, Inc. in docket entry 615, pages 31–32. The crux of this argument is that Mazda had no duty to Pardue, as she purchased her vehicle used, from a third party.

Although, generally, a duty to speak "arises if there is a confidential relationship between the parties," a duty to speak may arise if there are "'special circumstances' mandating disclosure." *Parsons & Whittemore Enters. Corp.*, 613 F. Supp. 2d at 1288. To determine if special circumstances exist, courts "look into the facts surrounding an event to determine if a duty to speak is appropriate, even if there is no confidential relationship between the parties." *Id.* at 1288–89. Specifically, courts assess six factors: (1) relationship of the parties; (2) relative knowledge of the parties; (3) value of the particular fact; (4) plaintiff's opportunity to ascertain the fact; (5) customs of the trade; and (6) other relevant circumstances. *Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C.*, 932 So. 2d 883, 891 (Ala. 2005). As part of the "other relevant circumstances," a court may consider whether a defendant has made any "affirmatively false statements." *Cf. Parsons & Whittemore Enters. Corp.*, 613 F. Supp. 2d at 1289 (stating the defendant "bore no duty to disclose in either scenario because there is no evidence that he made

14

any affirmatively false statements or that [the plaintiff] asked [the defendant]" a specific question the defendant would be obligated to answer).

Where a defendant did not have a duty to speak, if he does speak "either voluntarily or in response to inquiry, he is bound not only to state the truth but also not to suppress or conceal any facts within his knowledge which will materially qualify those stated; if he speaks at all, he must make a full and fair disclosure." *Freightliner, L.L.C.*, 932 So. 2d at 895 (emphasis removed).

Here, Plaintiffs have alleged that Mazda "had a duty to disclose the Inflator Defect because it . . . [m]ade incomplete representations about the safety and reliability of the Class Vehicles, while purposefully withholding material facts from Plaintiffs that contradicted these representations." (D.E. 579 ¶ 721). Plaintiffs have alleged Mazda made various statements regarding the safety of its vehicles prior to Pardue's purchase. (D.E. 579 ¶ 310(d)). Specifically, Plaintiffs allege that in 2004, Mazda "represented in brochures that its cars possessed 'inspiring performance' and 'reassuring safety features.'" Plaintiffs also claim that, in 2005, Mazda stated on its website that "in every configuration, you'll enjoy Mazda's legendary performance, function, style and safety."

At this motion to dismiss stage, because Plaintiffs have alleged that Mazda made these incomplete statements, the Court finds Plaintiffs have sufficiently alleged Mazda had a duty to disclose additional facts about the safety of its vehicles. Of course, if found that Mazda had no knowledge of the purported inflator defect at the time Mazda made these statements, then Mazda would not have had a duty to disclose additional facts. Such inquiry would be appropriate at the summary judgment stage or at trial.

### 2.  Vukadinovic's Claim For Fraudulent Concealment Under Florida Law

Mazda argues Vukadinovic's claim for Fraudulent Concealment under Florida Law should be dismissed for four reasons. Specifically, Mazda argues that: (1) the economic loss rule bars recovery; (2) Plaintiffs have not adequately alleged Mazda had knowledge of the alleged defect; (3) Plaintiffs' claims fail under Rule 9(b)'s heightened pleading standard; and (4) Mazda did not have a duty to Vukadinovic to disclose any information regarding the Takata airbags.

As the Court explained, *supra*, for purposes of this motion to dismiss stage, Plaintiffs have adequately pleaded knowledge and met Rule 9(b)'s heightened pleading standard for purposes of fraudulent concealment. The Court need not reach the issue of Mazda's duty to Vukadinovic, as the Court finds the economic loss rule bars Vukadinovic's claim for fraudulent concealment.

### a.  Florida's Economic Loss Rule

"[T]he economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Tiara Condo. Ass'n v. Marsch & McLennan Cos. Inc.*, 110 So. 3d 399, 401 (Fla. 2013). The Florida Supreme Court has defined economic loss as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profit — without any claim of personal injury or damage to other property." *Id.* (internal quotation marks omitted). Florida's Supreme Court has explained that "[t]he rule has its roots in the products liability arena, and was primarily intended to limit actions in the products liability context." *Id.* Specifically, the court explained the economic loss rule is "the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of

reasonable care and thereby encourages citizens to avoid causing injury physical harm to others."

*Id.* (internal quotation marks omitted).

In an effort to "roll back the economic loss rule" after an era of "unprincipled extension," Florida's Supreme Court expressly limited the application of the economic loss rule to the products liability context. *Id.* In doing so, the court noted several exceptions to the economic loss rule, including "fraudulent inducement, and negligent misrepresentation, or free-standing statutory causes of action." *Id.* However, the fraudulent inducement and negligent misrepresentation cases to which the court cited were outside of the products liability context. *See id.* at nn.7, 8. These exceptions were irrelevant to the decision reached in *Tiara*.

The question before the Court, then, is whether Florida's Supreme Court, by its dicta, intended to abridge the economic loss rule in the products liability setting to allow fraudulent inducement and negligent misrepresentation claims (and by implication fraudulent concealment claims), even where the action for fraud depends upon precisely the same allegations as a warranty claim — i.e., a claim the product failed to work as promised.

The Court agrees with other courts in this Circuit that have concluded that Florida's Supreme Court did not intend to allow such products liability claims to survive. *See Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331 at 1337–39 (S.D. Fla. 2013); *Burns v. Winnebago Indus., Inc.*, No. 8:13-cv-1427-T-24, 2013 WL 4437246, at *4 (M.D. Fla. Aug. 16, 2013) (holding that fraudulent inducement and negligent misrepresentation exceptions to the economic loss rule generally arise in the context of contractual privity cases, not in products liability actions, and finding that economic loss rule barred claims of fraudulent concealment and negligent misrepresentation in the products liability context); *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, No. 130md-2495, 2015 WL 3796456, at *3 (N.D. Ga. June 18, 2015)

(applying Florida law and stating economic loss rule barred action for fraudulent concealment in products liability case because the alleged misrepresentation concerned the heart of the parties' agreement and "simply applying the label of fraud to a cause of action will not suffice to subvert the sound policy rationales underlying the economic loss rule.").

In *Aprigliano*, the court found that the plaintiffs' "cause of action for negligent misrepresentation is dependent on the same fundamental allegations contained in the breach of warranty claim — specifically, that Honda breached the terms of its Warranties by providing Plaintiffs with defective motorcycles . . . ." *Aprigliano*, 979 F. Supp 2d at 1338. The court explained that "[u]sually claims for negligent misrepresentation are barred by the economic loss rule where, as here, there are claims for breach of warranty alongside tort claims and the allegations contained in both are similar." *Id.* Accordingly, the court held the negligent misrepresentation claim was barred by the economic loss rule. In explaining its analysis, the court quoted *Burns*, stating that

> [t]o hold otherwise would allow the economic loss rule to be manipulated such that any time a purchaser received a defective product that did not cause any injuries or damage to other property, such a purchaser could assert claims for negligent and fraudulent concealment regarding the defect to avoid the economic loss rule.

*Id.* (citing *Burns*, 8:13-cv-1427-T-24, 2013 WL 4437246, at *4).

Here, the fraudulent concealment claims allege precisely what a breach of warranty claim would allege—namely that the Mazda vehicles did not work as promised. Because the Court holds Florida's economic loss rule applies to such claims, the Court **GRANTS** Mazda's Motion as to Vukadinovic's claim for fraudulent concealment, Count 25.

### 3. Birdsall's Claim For Fraudulent Concealment Under Pennsylvania Law

Mazda argues that Birdsall's claim for fraudulent concealment should be dismissed for the same four reasons that Vukadinovic's claim should be dismissed.

18

As the Court explained, *supra*, for purposes of this motion to dismiss stage, Plaintiffs have adequately pleaded knowledge and met Rule 9(b)'s heightened pleading standard for purposes of fraudulent concealment. The Court need not reach the issue of Mazda's duty to Birdsall, as the Court finds the economic loss rule bars Birdsall's claim for fraudulent concealment.

### a.  Pennsylvania's Economic Loss Rule

Pennsylvania's Supreme Court has expressly reserved the question of whether the economic loss rule bars claims for fraudulent misrepresentation. *See David Pflumm Paving & Excavating, Inc. v. Found. Servs. Co.*, 816 A.2d 1164, 1171 n.2 (Pa. 2003) (holding that the economic loss rule barred claims of negligence and that claim for fraudulent misrepresentation failed for other reasons, stating "[t]here are no Pennsylvania Supreme Court or Superior Court cases that indicate that the economic loss doctrine bars a claim for fraudulent misrepresentation. However, for the reasons stated in the text, we need not address that issue in this case.").

While noting a split of authority on the matter, the Third Circuit has predicted that Pennsylvania's Supreme Court would apply the economic loss rule to claims of intentional fraud relating to the quality or character of the goods sold. *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 670–71, 674–81 (3d Cir. 2002). As Plaintiffs observe, some Pennsylvania lower courts continue to apply an exception to the economic loss rule for claims of intentional torts. *See, e.g., Teledyne Techs. Inc. v. Freedom Forge Corp.*, No. 3398, 2002 WL 748898, at * 11 (Pa. Com. Pl. Apr. 19, 2002) (noting an absence of Pennsylvania case law on the subject and conflicting decision in Pennsylvania's federal courts). Yet, other Pennsylvania lower courts have approved the Third Circuit's logic in *Werwinski's* regarding the economic loss rule, as it pertains to claims brought under Pennsylvania's Unfair Trade Practices Act and Consumer Protection Law

("UTPCPL"). *See Ellenbogen v. PNC Bank*, 731 A.2d 175, 188–89 (Pa. Super. 1999); *Sarsfield v. Citimortgage, Inc.*, 707 F. Supp. 2d 546, 557–59 (M.D. Pa. 2010) (citing cases).

     Notwithstanding some lower state court opinions to the contrary, the Court agrees with the reasoning of the Third Circuit in *Werwinski* and its conclusion that Pennsylvania's Supreme Court would apply the economic loss rule to bar claims of intentional fraud relating to the quality of the goods at issue, as opposed to fraud that had nothing to do with the quality of the good sold.

     In an opinion largely adopted by Pennsylvania's Supreme Court, the United States Supreme Court adopted the economic loss doctrine, stating "a manufacturer . . . has no duty under either negligence or strict-liability theory to prevent a product from injuring itself." *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871 (1986). The Court stated that "contract remedies would drown in a sea of tort" if products liability remedies progressed too far. *Id.* at 866. The Court also explained that "the need for a remedy in tort is reduced when the only injury is to the product itself and 'the product has not met the customer's expectations, or, in other words, that the customer has received insufficient product value.'" *Werwinski*, 286 F.3d at 671 (quoting *E. River*, 476 U.S. at 872). The Court further stated, "The maintenance of product value and quality is precisely the purpose of express and implied warranties" and "warranty law sufficiently protects the purchaser by allowing it to obtain the benefit of its bargain." *E. River*, 476 U.S. at 872, 874.

     In *REM Coal Co. v. Clark Equip. Co.*, 563 A.2d 128, 134 (Pa. 1989), Pennsylvania's Supreme Court "adopted the doctrine largely as set forth in *East River*." *Werwinski*, 286 F.3d at 671. There, the court phrased the issue as:

        the appropriateness of permitting recovery in tort where a product malfunctions
        because of an alleged defect in the product . . . but the malfunction causes no
        personal injury and no injury to any other property of the plaintiff. . . . [T]he

question is . . . whether a cause of action in tort, as opposed to one sounding solely in contract, is an appropriate vehicle for obtaining such a recovery.

*REM Coal*, 563 A.2d at 129. The court explained that "contract theories such as breach of warranty are specifically aimed at and perfectly suited to providing complete redress in cases involving . . . economic losses." *Id.* The court elaborated, "All of such losses are based upon and flow from the purchaser's loss of the benefit of his bargain and his disappointed expectations as to the product he purchased. Thus, the harm sought to be redressed is precisely that which a warranty action does redress." *Id.* Additionally, the court added that the proper focus of the economic loss rule is not on the type of risk associated with the defect, rather, it is "on the actual harm for which plaintiff seeks recovery." *Id.* at 133. Accordingly, the court held that the economic loss rule barred claims based on strict products liability and negligence. *See id.* at 134. The court found that to hold otherwise "would certainly erode the important distinctions between tort and contractual theories." *Id.* at 128.

The logic expressed by Pennsylvania's Supreme Court in *REM Coal* need not stretch far, if at all, to apply to claims of fraudulent concealment where a plaintiff alleges harm only to the product. The Court would vitiate the economic loss rule if it were to hold that the economic loss rule did not bar claims for intentional fraud, when that fraud directly relates to the quality of the product, and the only harm alleged is to the product itself. Essentially, any plaintiff could bypass the economic loss rule by adding a claim of fraudulent concealment to their complaint. Such a holding would erode the distinctions between tort and contract theories that Pennsylvania's Supreme Court has sought to preserve.

The Court finds, as did the Third Circuit in *Werwinski*, that Pennsylvania courts' use of the "gist of the action doctrine" in the fraud context lends support to application of the economic loss rule in the fraud context. *See eToll v. Elais/Savion Adver., Inc.*, 811 A.2d 10, 19 (Pa. Super.

Ct. 2002). The gist of the action doctrine "bars plaintiffs from bringing a tort claim that merely replicates a claim for breach of an underlying contract." *Werwinski*, 286 F.3d at 680 n.8. In *eToll*, the court elaborated upon the gist of the action doctrine, stating that "courts have **not** carved out a categorical exception to avoid fraud, and have not held that the duty to avoid fraud is always a qualitatively different duty imposed by society rather than by the contract itself." *eToll*, 811 A.2d at 19 (emphasis in original). "Rather, the cases seem to turn on the question of whether the fraud concerned the performance of contractual duties. If so, then the alleged fraud is generally held to be merely collateral to a contract claim for breach of those duties. If not, then the gist of the action would be the fraud." *Id.*

This distinction in the gist of the action doctrine — whether the fraud concerns the performance of contractual duties or whether the fraud is merely collateral to the contract claim — is essentially the same type of distinction the Third Circuit, in *Werwinski*, predicted the Pennsylvania Supreme Court would make regarding the economic loss rule. *See Werinski*, 286 F.3d at 676–78 (discussing the "*Huron* distinction").

In the case at hand, Plaintiffs claim Mazda fraudulently concealed information regarding the alleged Inflator Defect. Plaintiffs on the economic loss track have alleged only economic harm arising from this alleged fraudulent concealment. The alleged fraud pertains only to the quality of Mazda's product, i.e. the vehicle is not as safe (and may at times be lethally dangerous) as advertised. Accordingly, in the fraudulent concealment claims, Plaintiffs allege the same facts that would support breach of warranty claims. Accordingly, the Court holds the economic loss doctrine bars Birdsall's claim for fraudulent concealment, Count 25.

### E. Count 31: Negligent Failure to Recall

Mazda argues that Count 31, negligent failure to recall, should be dismissed as to all three Named Plaintiffs because the economic loss rules in Alabama, Florida, and Pennsylvania preclude these claims of negligence seeking damages for only economic losses.[7] The Court agrees.

Plaintiffs do not contend that the economic loss rules in Alabama, Florida, and Pennsylvania would not bar these claims. Rather, Plaintiffs' response to this issue is largely that negligent failure to recall is a cause of action recognized in California and that California's economic loss rule would not bar Count 31. However, as the Court has explained, *supra*, California law does not apply to the three Named Plaintiffs' claims. Rather, Alabama, Florida, and Pennsylvania law apply to the claims of Pardue, Vukadinovic, and Birdsall, respectively.

Alabama, Florida, and Pennsylvania's economic loss rules bar this negligence claim asserted by Plaintiffs. In Alabama, under the economic loss "rule, a cause of action does not arise under tort theories of negligence, wantonness, strict liability or [an Alabama statute] where a product malfunctions or is defective and thereby causes damage only to the product itself." *Ford Motor Co. v. Rice*, 726 So. 2d 626, 631 (Ala. 1998); *see also Harris Moran Seed Co., Inc. v. Philips*, 949 So. 2d 916, 931–33 (Ala. Civ. App. 2006) (applying economic loss rule to bar multiple claims, including negligence claim). Similarly, in Florida, the economic loss rule means a manufacturer "'has no duty under either a negligence or strict products liability theory to prevent a product from injuring itself.'" *Fla. Power & Light Co. v. Westinghouse Elec. Corp.*, 510 So. 2d 899, 901 (Fla. 1987) (quoting *E. River*, 476 U.S. at 870) (adopting the economic loss

---

[7]     Mazda makes numerous other arguments as to why Count 31 should be dismissed, however, because the economic loss rule in these three states clearly bars this negligence claim, the Court need not address those additional arguments.

rule in Florida); *see also Tiara*, 110 So. 3d at 404–05 (discussing Florida's economic loss rule). Along the same lines, in Pennsylvania, the economic loss rule "bars recovery in negligence where only economic losses are claimed." *Adams v. Copper Beach Townhome Cmtys., L.P.*, 816 A.2d 301, 304 (Pa. Super. Ct. 2003).

In Count 31, the three Named Plaintiffs seek damages for only economic loss alleging negligence. Accordingly, the Court must dismiss Count 31 as to all three Named Plaintiffs, as it is barred by the economic loss rules of Alabama, Florida, and Pennsylvania.

### F.  Count 27: Unjust Enrichment

Mazda moves to dismiss Count 27, for unjust enrichment, as alleged by the three Named Plaintiffs.

#### 1.  Pardue's Claim For Unjust Enrichment Under Alabama Law

Mazda argues Pardue's claim for unjust enrichment must be dismissed, *inter alia*, because Pardue purchased her purportedly defective Mazda vehicle used, from a used car dealership and thus, Mazda did not have possession of money belonging to Pardue. Plaintiffs respond that, while plaintiffs must "directly confer a benefit on defendants, they need not have direct contact with the defendants to do so" and that a plaintiff's money could pass to a defendant by a third party. (D.E. 658 at 54–55).

Under Alabama law, "[t]o prevail on a claim of unjust enrichment, the plaintiff must show that the defendant holds money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud." *Atl. Nat'l Trust, LLC v. McNamee*, 984 So. 2d 375, 381 (Ala. 2007) (internal quotation marks omitted) (emphasis removed). Accordingly, "[a] defendant cannot be unjustly enriched if it does

24

not have in its possession any money belonging to the plaintiff." *RRE FRB-AL SLDL, LLC, v. Saxon Land Dev.*, 968 F. Supp. 2d 1133, 1141 (M.D. Ala. 2013).

Here, Pardue purchased her vehicle from a used car dealer in Alabama. (D.E. 579 ¶ 141). Plaintiffs do not allege this dealership had any affiliation with Mazda. The Court cannot reasonably infer from the facts alleged that Mazda ever held any money belonging to Pardue. Accordingly, the Court must dismiss Count 27, for unjust enrichment, as alleged by Plaintiff Pardue.

### 2.  Birdsall's Claim For Unjust Enrichment Under Pennsylvania Law

Mazda argues that Birdsall's claim for unjust enrichment should be dismissed for the same underlying reason as Pardue's claim: because Birdsall purchased his vehicle used, he did not confer a benefit on Mazda. Just as with Pardue, the Court agrees.

Under Pennsylvania law, the elements of unjust enrichment are as follows: (1) the "plaintiff conferred a benefit on the defendant;" (2) "the defendant appreciated the benefit;" and (3) "acceptance and retention by the defendant of the benefits, under the circumstances, would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit." *Glob. Ground Support, LLC v. Glazer Enters., Inc.*, 581 F. Supp. 2d 669, 675 (E.D. Pa. 2008); *see also Mitchell v. Moore*, 729 A.2 1200, 1203–04 (Pa. 1999). The "heart of a claim for unjust enrichment is that 'the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider.'" *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 721 (E.D. Pa. 2013) (quoting *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987)).

Here, Birdsall purchased his vehicle from a used car dealer in Pennsylvania. (D.E. 579 ¶ 85). Plaintiffs do not allege this dealership had any affiliation with Mazda. The Court cannot

reasonably infer from the facts alleged that Birdsall conferred any benefit on Mazda by purchasing his vehicle at an independent third party dealership with no alleged relationship with Mazda. Accordingly, the Court must dismiss Count 27, for unjust enrichment, as alleged by Plaintiff Birdsall. *See Id.* (dismissing unjust enrichment claims because the plaintiffs did "not even allege that they purchased their vehicles from Defendant or one of Defendant's dealers," and adding that the plaintiffs "fail[ed] to show any way in which their money transferred from their own pockets to [the d]efendant's.")

### 3.  Vukadinovic's Claim For Unjust Enrichment Under Florida Law

Having purchased a new Mazda, Vukadinovic stands in a different position than Pardue and Birdsall. Nevertheless, Mazda moves to dismiss his claims for unjust enrichment on two grounds, arguing: (1) that the statute of limitations ran in early 2009 and bars the action; and (2) that as an equitable remedy, unjust enrichment is not available where there is an adequate legal remedy. The Court addresses both arguments in turn.

#### a.  Statute of Limitations

Plaintiffs respond to Mazda's argument, stating Florida's four-year statute of limitations for unjust enrichment claims does not bar this claim because the doctrines of fraudulent concealment and equitable estoppel apply. The Court agrees that, at this motion to dismiss stage, Plaintiffs have sufficiently alleged facts of fraudulent concealment to implicate tolling of the statute of limitations. *See Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc.*, 990 F. Supp. 2d 1254, 1272 (M.D. Fla. 2013) (stating, "The doctrine of fraudulent concealment will operate to toll the statute of limitations when it can be shown that fraud has been perpetrated on the injured party sufficient to place him in ignorance of his right to a cause of action or to prevent him from discovering his injury." (internal quotation marks omitted)).

While Mazda argues that the tolling argument fails because Plaintiffs have not sufficiently alleged Mazda's knowledge of the purported inflator defect and have not pleaded fraud with sufficient particularity, the Court has already addressed these matters in favor of Plaintiffs, *supra*. Mazda also argues that Plaintiffs fail to allege the active concealment necessary to invoke tolling. However, Plaintiffs allege Vukadinovic took his Mazda to a Mazda dealership and was told his airbag light turning on was "nothing to worry about." Viewing the facts alleged in the Complaint in the light most favorable to Vukadinovic, as the Court must at this stage, this statement could have been made to conceal the purported defect from Vukadinovic. Accordingly, the Court finds Plaintiffs have sufficiently alleged fraudulent concealment to survive a motion to dismiss on statute of limitations grounds.

### b. Adequate Legal Remedy

Mazda argues Vukadinovic's unjust enrichment count should be dismissed because unjust enrichment is an equitable remedy that is unavailable where there is an adequate legal remedy. Mazda posits that an express contract, in the form of Mazda's express warranty, exists covering the same matter as the unjust enrichment claim: the purported defects in his vehicle.

Plaintiffs respond that "'[i]t is only upon a showing that an express contract exists between the parties that the unjust enrichment count fails.'" (D.E. 658 at 49 (citing *State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714, 722 (11th Cir. 2011))). Plaintiffs additionally argue that they have sufficiently alleged that the warranties covering the issues in this litigation are procedurally and substantively unconscionable. Plaintiffs' former argument is unavailing, but the latter argument has merit at this stage in the proceedings.

Plaintiffs have alleged Vukadinovic's "2004 Mazda MPV is currently covered or was covered by a written warranty for new cars." (D.E. 579 ¶ 175). Mazda attached said express warranty to its Motion. (*See* D.E. 608-1). Furthermore, Plaintiffs do not deny the existence of this express warranty. Accordingly, Mazda has shown that a contract exists that covers the subject of this litigation. However, Mazda has not proven that the contract is enforceable.

An unjust enrichment claim "can exist only if the subject matter of that claim is not covered by a valid and enforceable contract." *See In re Managed Care Litig.*, 185 F. Supp. 2d at 1337–38 (dismissing unjust enrichment claim because the plaintiffs failed to contest the existence of an express contract governing the subject of the dispute and the plaintiffs failed allege an adequate remedy at law did not exist).

However, because Plaintiffs have alleged that the warranties are procedurally and substantively unconscionable, Plaintiffs have also alleged that the warranties covering the instant action are not enforceable.[8] (D.E. 579 ¶¶ 452–54). Additionally, Plaintiffs have expressly alleged they have no adequate remedy at law. (D.E. 579 ¶ 749). Thus, at this motion to dismiss stage, Plaintiffs have sufficiently alleged Vukadinovic does not have an adequate remedy at law. Accordingly, the Court **DENIES** Mazda's motion to dismiss Vukadinovic's claim for unjust enrichment, Count 27.

### G. Count 49: Alabama Deceptive Trade Practices Act

Mazda moves to dismiss Count 49 for violation of Alabama's Deceptive Trade Practices Act ("ADTPA") as alleged by Pardue. Mazda proffers three reasons that Count 49 must be dismissed: (1) Plaintiffs have not alleged manifestation of the purported defect; (2) Plaintiffs fail

---

[8]     Mazda states Vukadinovic "does not deny the existence or validity of the contract." However, this is precisely what the allegations of procedural and substantive unconscionability do. Mazda does not reply to Plaintiffs' argument of unconscionability and the purported unenforceability of the contract at issue.

to adequately allege Mazda's knowledge of false or deceptive conduct; and (3) Plaintiffs fail to allege Pardue satisfied ADTPA's pre-suit notice requirement.

Mazda's first two arguments are unavailing, as per the Court's holding on manifestation and knowledge, *supra*.

Plaintiffs respond to the notice requirement argument by positing that notice was not required and even if it were, the requirement has been satisfied or excused. Plaintiffs claim that because Rule 23 "does not contain a similar pre-suit notice requirement, the state rules requiring such notice conflict with the federal rule, and thus, require application of the federal rule." (D.E. 658 at 78). Rule 23, however, has no bearing on this stage of litigation, which has nothing to do with class certification. Accordingly, there is no conflict and the pre-suit notice requirement should be enforced. *See Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1399–1400 (N.D. Ala. 1997) (applying ADTPA's pre-suit notice requirement and dismissing ADTPA claim); *In re Sears, Roebuck & Co. Tools Mktg. and Sales Practices Litig.*, No. MDL-1703, 2009 WL 937256, at *10 (N.D. Ill. Apr. 6, 2009) (same).

While the Court finds ADTPA's pre-suit notice requirement applies, the Court also finds that Plaintiffs have sufficiently alleged the requirement was satisfied. Specifically, Plaintiffs have alleged that

> [i]n accordance with Ala. Code § 8-19-10(e), Plaintiffs' counsel, on behalf of Plaintiffs, served Defendants with notice of their alleged violations of the Alabama DTPA relating to the Class Vehicles and/or the Defective Airbags installed in them purchased by Plaintiffs and the Alabama Sub-Class, and demanded that defendants correct or agree to correct the actions described therein.

(D.E. 579 ¶ 1062). Mazda fails to note any particular deficiency in the notice received. Rather, Mazda takes issue only with the allegations of notice, arguing Plaintiffs do not allege notice was provided at least 15 days prior to the filing of any action and that Plaintiffs failed to plead Pardue

was specifically mentioned in the notice letter. (D.E. 690 at 17). Viewing the allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have sufficiently pleaded that they satisfied ADTPA's notice provision.

For the foregoing reasons, the Court denies Mazda's motion to dismiss Pardue's ADTPA claim, Count 49.

### H. Count 47: Florida Deceptive Trade Practices Act

Mazda moves to dismiss Count 47 for violation of Florida's Deceptive Trade Practices Act ("ADTPA") as alleged by Vukadinovic. Mazda proffers two reasons Count 49 must be dismissed: (1) Plaintiffs have not alleged manifestation of the alleged defect; and (2) the claim is barred by Florida's four-year statute of limitations for FDUTPA claims.

As discussed *supra*, Plaintiffs have sufficiently alleged manifestation of the alleged Inflator Defect. Thus, the Court turns to Mazda's second argument. Mazda argues that the statute of limitations for this FDUTPA claim ran in early 2009 and that the discovery doctrine does not apply to toll FDUTPA claims. (*See* D.E. 608 at 27). Plaintiffs argue that even if the discovery doctrine does not apply to the toll FDUTPA claims, the claim can survive because the statute of limitations could be equitably tolled due to Mazda's alleged fraudulent concealment. For purposes of the motion to dismiss stage, the Court agrees and adopts its reasoning *supra* pertaining to Plaintiffs sufficiently alleging that fraudulent concealment tolled the statute of limitations for Vukadinovic's unjust enrichment claim.

Thus, the Court **DENIES** Mazda's motion to dismiss Vukadinovic's FDUTPA claim, Count 47.

I.  **Count 48 and Count 3: Breach of Florida's Implied Warranty of Merchantability and Violation of the Magnuson Moss Warranty Act**

Mazda moves to dismiss Count 48, asserting breach of Florida's implied warranty of merchantability. In Response, Plaintiffs state they "have elected not to pursue implied warranty claims under Florida" law. Accordingly, the Court **GRANTS** Mazda's motion to dismiss Count 48.

For Magnuson Moss Warranty Act ("MMWA") claims, courts "must look to the relevant state law to determine the meaning and creation of any implied warranty." As Plaintiffs have decided not to pursue Vukadinovic's claim for breach of implied warranty, the Court assumes Plaintiffs do not seek to pursue Vukadinovic's claim for violation of the MMWA, Count 3. Mazda raised three reasons to dismiss the implied warranty claim, and thus, to dismiss the MMWA claim, and Plaintiffs did not respond to any of them. Mazda argues, inter alia, that Vukadinovic lacked privity with Mazda, and thus, cannot maintain a claim for breach of implied warranty. The Court agrees. Mazda is an automotive distributor, not a dealer. Vukadinovic could not have purchased his vehicle from Mazda. Thus, Vukadinovic lacks privity with Mazda and the implied warranty claim must fail. *See Mesa v. BMW of N. Am.*, 904 So. 2d 450, 458 (Fla. 3d DCA 2005) ("Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity."); *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1321 (S.D. Fla. 2009) ("Florida law requires privity of contract to sustain a breach of implied warranty claim.").

Accordingly, the Court **GRANTS** Mazda's Motion as to Count 3, as asserted by Vukadinovic.

## IV.    CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Mazda's Motion [D.E. 608] is **GRANTED IN PART** and **DENIED IN PART**. Specifically, Count 25 is **DISMISSED** as it pertains to Vukadinovic and Birdsall, but not Pardue. Count 27 is **DISMISSED** as it pertains to Birdsall and Pardue, but not Vukadinovic. And Counts 28, 29, 30, 31, and 48 are **DISMISSED**. Count 3, as asserted by Vukadinovic only, is also **DISMISSED**.

**DONE AND ORDERED** in Chambers, Miami, Florida, this 14th day of June, 2016.

**FEDERICO A. MORENO**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:
Counsel of record