**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

**MDL No. 2599**

**Master File No. 15-2599-MD-MORENO**

**14-24009-CV-MORENO**

IN RE:

**TAKATA AIRBAG PRODUCTS**
**LIABILITY LITIGATION**

_____

THIS DOCUMENT RELATES TO ALL
ECONOMIC LOSS TRACK CASES

_____/

**ORDER GRANTING IN PART AND DENYING IN PART BMW OF NORTH**
**AMERICA, LLC'S AND BMW MANUFACTURING COMPANY, LLC'S**
**MOTION TO DISMISS**

THIS CAUSE comes before the Court upon BMW of North America LLC's and BMW

Manufacturing Company, LLC's (collectively "BMW") Motion to Dismiss Plaintiffs' Second

Amended Consolidated Class Action Complaint (the "Motion") (D.E. 625).[1]

THE COURT has reviewed the Motion, Plaintiffs' omnibus response in opposition,

BMW's reply, and the pertinent portions of the record. In addition, the Court has considered the

arguments briefed at oral argument. BMW's Motion asks the Court to dismiss all counts alleged

against it in the Second Amended Economic Loss Complaint.

---

[1]     All Case Management/Electronic Case File Docket Entries correspond to S.D. Fla.
Master File No.: 15-02599-MD-MORENO.

## I.    BACKGROUND

Plaintiffs in this case are consumers of vehicles equipped with Takata airbags containing ammonium nitrate as a propellant. The Court has divided this multidistrict litigation's component cases into two tracks:  (1) an economic loss track for plaintiffs alleging purely economic damages, and (2) a personal injury track for plaintiffs alleging physical damages to a person or a vehicle.  This order pertains to the economic loss track cases.  In the Complaint, Plaintiffs allege twenty-one counts against BMW.[2]

These twenty-one counts against BMW consist of the following:

- Count 3 alleging violations of the Magnuson-Moss Warranty Act;

- Count 16 alleging fraudulent concealment;

- Count 17 alleging breach of New Jersey's implied warranty of merchantability;

- Count 18 alleging unjust enrichment;

- Count 19 alleging violation of New Jersey's Consumer Fraud Act;

- Count 47, on behalf of a purported Florida sub-class, alleging violation of the Florida Deceptive and Unfair Trade Practices Act;

- Count 48, on behalf of a purported Florida sub-class, alleging breach of Florida's implied warranty of merchantability;

- Count 49, on behalf of a purported Alabama sub-class, alleging violation of Alabama's Deceptive Trade Practices Act;

- Count 51, on behalf of a purported California sub-class, alleging violation of California's unfair competition law;

- Count 52, on behalf of a purported California sub-class, alleging violation of California's Consumer Legal Remedies Act;

---

[2]    This figure does not include Counts 104–106, alleged by the Automotive Recycler's Association. The Court granted the Automotive Defendants motion to dismiss these three Counts. *See* Order Granting Motion to Dismiss Counts 104–106 (D.E. 975).

- Count 53, on behalf of a purported California sub-class, alleging violation of California's false advertising law;

- Count 54, on behalf of a purported California sub-class, alleging violation of the Song-Beverly Consumer Warranty Act for breach of California's implied warranty of merchantability;

- Count 55, on behalf of a purported California sub-class, alleging negligent failure to recall;

- Count 56, on behalf of a purported Colorado sub-class, alleging violation of the Colorado Consumer Protection Act;

- Count 57, on behalf of a purported Colorado sub-class, alleging breach of Colorado's implied warranty of merchantability;

- Count 63, on behalf of a purported Illinois sub-class, alleging violation of the Illinois Consumer Fraud and Deceptive Business Practices Act;

- Count 64, on behalf of a purported Illinois sub-class, alleging violation of the Illinois Uniform Deceptive Trade Practices Act;

- Count 89, on behalf of a purported Pennsylvania sub-class, alleging violation of Pennsylvania's unfair trade practices and consumer protection law;

- Count 90, on behalf of a purported Pennsylvania sub-class, alleging breach of Pennsylvania's implied warranty of merchantability;

- Count 99, on behalf of a purported Virginia sub-class, alleging violation of the Virginia Consumer Protection Act;

- Count 100, on behalf of a purported Virginia sub-class, alleging breach of Virginia's implied warranty of merchantability.[3]

These twenty-one counts arise out of fifteen named plaintiffs' BMW vehicle purchases.

The fifteen Plaintiffs are:

1) Christopher Day, who purchased his BMW vehicle, used, in the state of Florida;

2) Sandeep Dewan, who purchased his BMW vehicle, used, in the state of Florida;

---

[3] This Order does not apply to any of the claims for injunctive relief. The Court will consider the arguments concerning injunctive relief in a later order.

3) William Daugherty, who purchased his BMW vehicle, used, in the state of California;

4) David Gunther, who purchased his BMW vehicle, used, in the state of Florida;

5) Constantine Kazos, who purchased his BMW vehicle, used, in the state of Florida;

6) Richard Lee, who purchased his BMW vehicle, new, in the state of Pennsylvania;

7) Howard S. Morris, who purchased his BMW vehicle, new, in the state of Virginia

8) Barbara E. Mulroy, who purchased her BMW vehicle, used, in the state of Colorado;

9) Henry H. Pham, who purchased his BMW vehicle, used, in the state of California;

10) Billy Richardson, who purchased his BMW vehicle, used, in the state of Alabama.

11) Richard H. Sayler, who purchased his BMW vehicle, used, in the state of California;

12) Robert Schmidt, who purchased his BMW vehicle, used, in the state of California;

13) Carla Thompson, who purchased her BMW vehicle, used, in the state of Georgia;

14) Gerdgene K. Veser, who purchased his BMW vehicle, new, in the state of Florida; and

15) John Zielinski, who purchased his BMW vehicle, used, in the state of Illinois.

BMW moves to dismiss all counts alleged in Plaintiffs' Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## II.      LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007)). Detailed factual allegations are

4

not required, but a pleading must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." *Twombly*, 550 U.S. at 555.

Where a cause of action sounds in fraud, however, Federal Rule of Civil Procedure 9(b) must be satisfied in addition to the more relaxed standard of Rule 8. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," although "conditions of a person's mind," such as malice, intent, and knowledge may be alleged generally. Fed. R. Civ. P. 9(b). "The 'particularity' requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (internal citations omitted) (citing *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

## III.   LEGAL ANALYSIS

### A. Choice of Law Analysis

Plaintiffs argue that a choice of law inquiry is premature. However, the Court finds that the issue has been briefed and that the claims against BMW can be decided without further factual development. As such, the Court applies the choice of law analysis prescribed in its Order Granting in Part and Denying in Part Mazda Motor of America, Inc. D/B/A/ Mazda North American Operations' Motion to Dismiss [D.E. 1099] (the "Mazda Order").[4]   The Court addresses the choice of law rules that apply to each Plaintiff in turn below.

---

[4]      *See* D.E. 1099 at 4–7.

Alabama's choice of law rules apply to Richardson's claims because his case was transferred into the multidistrict litigation from the Northern District of Alabama.[5] California's choice of law rules apply to Dougherty's claims because his case was transferred into the multidistrict litigation from the Central District of California[6] and to Mulroy's claims because her case was transferred into the multidistrict litigation from the Southern District of California.[7] Florida choice of law rules apply to Day and Schmidt's claims because their cases were transferred into the multidistrict litigation from the Middle District of Florida,[8] to Dewan, Gunther, and Lee's claims because their cases were transferred into the multidistrict litigation from the Southern District of Florida,[9] and to Thompson's claims because her case was directly filed in the multidistrict litigation assigned to the Southern District of Florida. Illinois choice of law rules apply to Zielinski's claims because his case was transferred into the multidistrict litigation from the Northern District of Illinois.[10] Michigan choice of law rules apply to Morris and Veser's claims because their cases were transferred into the multidistrict litigation from the

---

[5]     N.D. Ala. Case Number 2:15-cv-00092 was assigned S.D. Fla. Case Number 1:15-cv-20757-FAM.

[6]     C.D. Cal. Case Number 2:14-cv-08324 was assigned S.D. Fla. Case Number 1:15-cv-20508-FAM.

[7]     S.D. Cal. Case Number 3:14-cv-02618 was assigned S.D. Fla. Case Number 1:15-cv-20643-FAM.

[8]     M.D. Fla. Case Number 3:14-01427 was assigned S.D. Fla. Case Number 1:15-cv-20674-FAM (Day); M.D. Fla. Case Number 3:14-cv-01420 was assigned S.D. Fla. Case Number 1:15-cv-20673-FAM (Schmidt).

[9]     S.D. Fla. Case Number 0:14-cv-62669-FAM (Dewan); S.D. Fla. Case Number 0:14-cv-62669-FAM (Gunther); S.D. Fla. Case Number 1:14-cv-24365-FAM (Lee).

[10]     N.D. Ill. Case Number 1:15-cv-00272 was assigned S.D. Fla. Case Number 1:15-cv-20796-FAM.

Eastern District of Michigan.[11]  New York choice of law rules apply to Kazos' claims because his case was transferred into the multidistrict litigation from the Eastern District of New York[12] and to Pham's claims because his case was transferred into the multidistrict litigation from the Southern District of New York.[13]  Ohio choice of law rules apply to Sayler's claims because his case was transferred into the multidistrict litigation from the Northern District of Ohio.[14]

### 1.  Alabama Choice of Law Rules

Alabama's choice of law rules for tort actions are based on "the traditional choice of law rule of *lex loci delicti*" requiring "that the substantive law of the place where the tort occurred must be employed."  *In re Verilink Corp.*, 405 B.R. 356, 365 (N.D. Ala. 2009) (internal quotation marks omitted).  "Under *lex loci delicti*, a tort is deemed to have occurred where the alleged harm was suffered."  *Id.* (citing *Norris v. Taylor*, 460 So. 2d 151, 152 (Ala. 1984)); *Randolph v. Tenn. Valley Auth.*, 792 F. Supp. 1221, 1222 (N.D. Ala. 1992) (stating "[i]n Alabama, the traditional choice of law rule of *lex loci delicti* governs tort causes of action and requires that the substantive law of the place where the tort occurred must be employed").

The state of Alabama is the sole jurisdiction that has significant contacts with Richardson's claims.  Richardson is a resident of the state of Alabama who purchased his BMW

---

[11]     E.D. Mich. Case Number 2:14-cv-14209 was assigned S.D. Fla. Case Number 1:15-cv-20496-FAM (Morris); E.D. Mich. Case Number 2:15-cv-10078 was assigned S.D. Fla Case Number 1:15-cv-20769-FAM (Vesser).

[12]     E.D.N.Y. Case Number 1:15-cv-00821 was assigned S.D. Fla. Case Number 1:15-cv-21099-FAM.

[13]     S.D.N.Y. Case Number 1:14-cv-08960 was assigned S.D. Fla. Case Number 1:15-cv-20666-FAM.

[14]     N.D. Ohio Case Number 1:14-cv-2722 was assigned S.D. Fla. Case Number 1:15-cv-20672-FAM.

vehicle in state of Alabama.  Thus, applying Alabama's choice of law rule of *lex loci delicti* to Richardson's claims, Alabama substantive law governs Richardson's claims.

### 2. California Choice of Law Rules

California applies a three-step "governmental interest analysis" to resolve choice of law issues for tort actions as follows:  (1) the court determines whether the laws of the potentially affected jurisdictions are the same or different; (2) If the laws are different, the court examines each jurisdiction's interest in having its laws applied to the case to determine whether a true conflict exists; and (3) If a true conflict exists, the court compares the relative strength of each jurisdiction's interest in having its laws applied to the case to determine which state's interest would be more impaired if another states laws were applied.  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012); *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81-82 (Cal. 2010); *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107–08, (2006); *Reich v. Purcell*, 67 Cal. 2d 551, *555–56, (1967).  Yet, as a threshold matter, California recognizes that "the place of the wrong has the predominant interest." *Mazza*, 666 F.3d at 593-94; *see Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980).  Accordingly, the "place of the wrong" is considered to be the state in which the alleged harm—where the BMW vehicle was purchased—occurred. *Id.*

The state of California is the sole jurisdiction that has a governmental interest in Dougherty's claims.  Dougherty is a resident of the state of California who purchased his BMW vehicle in the state of California.  Thus, applying California's governmental interest analysis choice of law rule to Dougherty's claims, California substantive law governs Dougherty's case.  Next, the Court applies California's governmental interest analysis choice of law rule to Mulroy's claims.

8

### i. Plaintiff Barbara E. Mulroy

The state of Colorado is the sole jurisdiction with a governmental interest in Mulroy's claims. Mulroy is a resident of the state of Colorado who purchased her BMW vehicle in the state of Colorado—where the alleged injury occurred. Thus, applying California's governmental interest analysis choice of law rule to Mulroy's claims, Colorado substantive law governs Mulroy's claims.

### 3. Florida Choice of Law Rules

Florida's choice of law rules for tort actions are based on the "'most significant relationship' test outlined in the Restatement (Second) of Conflict of Laws." *Grupo Televisa, S.A.*, 485 F.3d at 1240 (quoting *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980)). Courts consider four types of contacts when determining whether one state has a more significant relationship to the matter than another state. The four factors are as follows: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Id.* A court should evaluate these contacts "'according to their relative importance with respect to the particular issue.'" *Id.* (quoting § 145 of the Restatement (Second) of Conflict of Laws). The first contact is generally the most important. In Florida, "absent special circumstances, '[t]he state where the injury occurred would . . . be the decisive consideration in determining the applicable choice of law.'" *Pysca Panama, S.A. v. Tensar Earth Techs., Inc.*, 625 F. Supp. 2d 1198, 1220 (S.D. Fla. 2008) (quoting *Bishop*, 389 So. 2d at 1001). The Court applies Florida's most significant relationship choice of law rule to Day, Dewan, Gunther, Lee, Schmidt, and Thompson's cases in turn below.

i.   Plaintiffs Christopher Day, Sandeep Dewan, and David Gunther

The state of Florida is the sole jurisdiction that has contacts to Day, Dewan, and Gunther's claims. They are each residents of the state of Florida who each purchased their BMW vehicles in the state of Florida. Thus, applying Florida's most significant relationship choice of law rule to Day, Dewan, and Gunther's claims, Florida substantive law governs their claims. Next, the Court applies Florida's most significant relationship choice of law rule to Lee, Schmidt, and Thompson's claims in turn.

ii.   Plaintiff Richard Lee

The states California and Pennsylvania are each jurisdictions that have potential contacts with Lee's claims. Lee is a resident of the state of Pennsylvania who purchased his BMW vehicle in the state of California—where the alleged injury occurred. The Court finds that these factors, when evaluated according to their relative importance to Lee's claims, indicate that the state of California has a more significant relationship to Lee's claims than the state of Pennsylvania. Thus, applying Florida's most significant relationship choice of law rule to Lee's claims, California substantive law governs Lee's claims.

iii.   Plaintiff Robert Schmidt

The state of California is the sole jurisdiction that has contacts with Schmidt's claims. Schmidt is a resident of the state of California who purchased his BMW vehicle in the state of California. Thus, applying Florida's most significant relationship choice of law rule to Schmidt's claims, California substantive law governs Schmidt's claims.

iv.   Plaintiff Carla Thompson

The state of Georgia is the sole jurisdiction that has contacts with Thompson's claims. Thompson is a resident of the state of Georgia who purchased her BMW vehicle in the state of

Georgia—where the alleged injury occurred. Thus, applying Florida's most significant relationship choice of law rule to Thompson's claims, Georgia substantive law governs Thompson's claims.

### 4. Illinois Choice of Law Rules

Like Florida, Illinois applies the choice of law rule of the "most significant relationship test" to tort actions. *Carris v. Marriott Int'l, Inc.*, 466 F.3d 558, 560 (7th Cir. 2006) (citing *Esser v. McIntyre*, 661 N.E.2d 1138, 1141 (Ill. 1995)). Illinois courts also determine the most significant relationship by evaluating the parties' contacts to a jurisdiction based on the same four factors that Florida Courts evaluate, discussed *supra* (Section III.A.3). *Esser*, 661 N.E.2d at 1141. "Under this test, the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties." *Id.*; *Ingersoll v. Klein*, 46 Ill. 2d 42, 45 (Ill. 1970); *Carris*, 466 F.3d at 560.

The state of Illinois is the sole jurisdiction that has contacts with Zielinski's claims. Zielinski is a resident of the state of Illinois who purchased his BMW vehicle in the state of Illinois. Thus, applying Illinois' most significant relationship choice of law rule to Zielinski's claims, Illinois substantive law governs Zielinski's claims.

### 5. Michigan Choice of Law Rules

Michigan choice of law rules differ from those previously discussed. In tort actions, "Michigan courts recognize a presumption in favor of *lex fori* and apply Michigan law unless a rational reason to do otherwise exists." *Std. Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 693 (6th Cir. 2013) (internal quotations omitted); *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W. 2d 466, 471 (Mich. 1997); *Olmstead v. Anderson*, 400 N.W. 2d 292, 302 (Mich. 1987). To determine whether a rational reason to displace Michigan law exists, the Court applies the following two-step analysis:

11

> First, we must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, we must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests.

*Sutherland*, 562 N.W. 2d at 471.  Accordingly, state interests are created by either "a significant contact or significant aggregation of contacts" between (1) the state whose law is applied, (2) the occurrence giving rise to the claim, and (3) the parties. *Allstate Ins. v. Hague*, 449 U.S. 302, 313 (1981).  The Court applies Michigan's *lex fori* choice of law rule to Morris and Veser's cases in turn.

      i.  <u>Plaintiff Howard S. Morris</u>

The states of Michigan, Pennsylvania, and Virginia each have potential interests in Morris's claims.  Morris is a resident of the state of Pennsylvania, who purchased his BMW vehicle in the state of Virginia, and filed his complaint in the state of Michigan.  The state of Pennsylvania's sole potential interest to this litigation is Morris's residence.  The United States Supreme Court has held that residence alone does not create a state interest sufficient to overcome the presumption that Michigan law applies claims filed in the state of Michigan.  *See Home Ins. Co. v. Dick*, 281 U.S. 397, 408 (1930).  As such, the Court finds no rational reason to apply Pennsylvania substantive law to Morris's claims.  The state of Virginia has contacts to this litigation because Morris purchased his BMW vehicle in Virginia, where the alleged harm occurred.  However, Michigan courts apply the doctrine of *lex fori*—where the claim was filed, rather than *lex loci delicti*—where the alleged harm occurred.  *Sexton v. Ryder Truck Rental, Inc.*, 413 Mich. 406, 439 (Mich. 1982); *Std. Fire Ins. Co.*, 723 F.3d at 693; *Sutherland*, 562 N.W. 2d at 471; *Olmstead*, 400 N.W. 2d at 302.  Plaintiffs have not put forth sufficient facts to support a determination that Virginia substantive law should apply Morris's claims.  As such, the Court

finds no rational reason to displace Michigan substantive law by applying Virginia substantive law here. Thus, applying Michigan's choice of law rule of *lex fori* to Morris's claims, the court finds that the aggregate of the states of Pennsylvania or Virginia's contacts are not sufficient to create an interest sufficient to overcome the presumption that Michigan substantive law should apply to Morris's claims. Thus, Michigan law governs Morris's case.

      ii.  Plaintiff Gerdgene K. Veser

The jurisdictions of Michigan and Florida each have potential interests in Veser's claims. Veser is a resident of the state of Florida who purchased his BMW vehicle in the state of Florida yet filed his complaint in the state of Michigan. Applying Michigan's choice of law rule of *lex fori* to Veser's claims, the Court finds the aggregate of the state of Florida's contacts sufficient to create an interest that overcomes the presumption that Michigan substantive law applies to Veser's claims. Thus, Florida substantive law governs Veser's case.

**6.  New York Choice of Law Rules**

"In tort actions, New York applies a so-called interest analysis" approach to choice of law selection. *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992). In this analysis courts seek to apply the law of the state that has the greatest interest in the litigation. *Watts v. Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334, 345 (E.D.N.Y. 2008) (citing *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 382 (1969)); *see Babcock v. Jackson*, 12 N.Y.2d 473, 484, (1963). To determine which state has the greater interest, courts analyze the contacts in relation to the purpose of the laws in conflict. *AroChem Int'l, Inc.*, 968 F.2d at 270; *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 301 (2d Cir. 2000). "Under this formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *AroChem Int'l, Inc.*, 968 F.2d at 270 (internal citations quotations omitted) (citing

*Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 196–97 (1985). ) The Court applies New York's interest analysis approach to Kazos and Pham's claims in turn below.

    i.  <u>Plaintiff Constantine Kazos</u>

The states of California and Florida each have potential interests in Kazos' claims. Kazos is a resident of the state of California who purchased his BMW vehicle in the state of Florida—the locus of the tort. The Court finds that these factors indicate that the state of Florida has a greater interest in having its substantive law applied to Kazos's claims than the state of California. Thus, applying New York's interest analysis choice of law rule to Kazo's claims, Florida substantive law governs Kazos' claims.

    ii.  <u>Plaintiff Henry H. Pham</u>

The state of California is the sole jurisdiction with an interest in Pham's claims. Pham is a resident of the state of California who purchased his BMW vehicle in the state of California. Thus, applying New York's interest analysis choice of law rule to Pham's claims, California substantive law governs Pham's case.

**7. Ohio Choice of Law Rules**

Like Florida and Illinois, Ohio choice of law rules for actions arising in tort are based on the "most significant relationship test." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011); *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 289 (Ohio 1984). Accordingly, Ohio courts consider the following general principles when determining whether one state has a more significant relationship to the litigation than another state:

    (1) the place of the injury;
    (2) the place where the conduct causing the injury occurred;
    (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties;
    (4) the place where the relationship between the parties, if any, is located; and

(5) any factors under [Restatement (Second) of Conflict of Laws § 6] which the court may deem relevant to the litigation. All of these factors are to be evaluated according to their relative importance to the case.

*Id.* (citing Restatement (Second) of Conflict of Laws, § 145 (1988)).

The jurisdictions of California and Ohio each have potential interests in Pham's claims. Sayler is a resident of the state of Ohio who purchased his BMW vehicle in the state of California—before having it shipped to Ohio. The Court finds that these factors, when evaluated according to their relevance to Sayler's claims, indicate that the state of Ohio has a more significant relationship to Sayler's claims than the state of California. Thus, applying Ohio's most significant relationship choice of law rule to Sayler's claims, Ohio substantive law governs Sayler's claims.

### 8. Conflict of Law Analysis

The fundamental issue in conflict of law analysis is "whether a conflict actually exists." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1171 (11th Cir. 2009). "'Simply stated, [a false conflict occurs] . . . when the laws of the competing states are substantially similar.'" *Id.* (alteration in original) (quoting *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1234 (11th Cir. 2006)). "If a false conflict exists, the court should avoid the conflicts question and simply decide the issue under the law of each of the interested states." *Id.* (internal quotation marks omitted). "A true conflict exists when two or more states have a legitimate interest in a particular set of facts in the litigation and the laws of those states differ or would produce a different result." *Id.* (internal quotation marks omitted). The Court finds that under the choice of law rules for the states of Alabama, California, Colorado, Florida, Illinois, Michigan, New York, and Ohio, the substantive laws of New Jersey, Pennsylvania, and Virginia should not be applied to any of the fifteen Plaintiff's claims. The Court addresses each state in turn.

i.   New Jersey State Law Claims

Plaintiffs assert three counts against BMW arising solely under New Jersey Law. Specifically, Count 17 and Count 19 allege that BMW breached New Jersey's implied warranty of merchantability and that BMW violated New Jersey's Consumer Fraud Act. Count 18 alleges unjust enrichment under New Jersey law. In response, BMW argues that the counts arising under New Jersey law should be dismissed because "[n]one of the BMW plaintiffs initially filed in New Jersey. Rather, they filed in Alabama, California, Florida, Illinois, Michigan, New York, and Ohio. . . Applying these choice-of-law rules to the BMW plaintiffs demonstrates that they may not invoke New Jersey law." *See* D.E. 625 at 9. The Court agrees. "[E]ach State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders." *State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408*, 422 (2003); *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1296 (S.D. Fla. 2003) (stating "[i]n cases transferred pursuant to 28 U.S.C. § 1407, the transferee district court must apply the state law, including its choice of law rules, that would have been applied had there been no change of venue"); *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *In re Toyota Motor Corp. Unintended Acceleration*, 785 F. Supp. 2d 925, 931 (C.D. Cal. 2011).

The Court finds that under Alabama, California, Colorado, Florida, Illinois, Michigan, New York, and Ohio's choice of law rules, New Jersey substantive law should not apply to any of the fifteen Plaintiffs' claims. The Court notes that no Plaintiff is a resident of New Jersey, claims to have been a resident of New Jersey at the time they purchased their BMW vehicle, or filed their complaint in New Jersey. Further, the court notes that no Plaintiff alleges that they purchased their BMW vehicle in New Jersey, that they perceived any allegedly deceptive advertisements about BMW in New Jersey, or alleges that any of the vehicles at issue in this litigation were manufactured in New Jersey. As such, it appears that the only contact New

Jersey has to Plaintiffs' claims is that Defendant BMW of North America, LLC is headquartered in New Jersey.  In accordance with the choice of law analysis discussed, *supra* , the Court finds that the interest created by New Jersey's attenuated contact to Plaintiffs' claims is not greater than the interests that Alabama, California, Florida, Illinois, Michigan, New York, and Ohio have to Plaintiffs' claims.

Accordingly, the Court finds that BMW's motion to dismiss Plaintiff's counts that allege BMW breached New Jersey's implied warranty of merchantability, violated New Jersey's Consumer Fraud Act, and was unjustly enriched under New Jersey law should be granted.  Count 17 and Count 19 are **DISMISSED,** and Count 18 is **DISMISSED** as to New Jersey law only.

 ii.  Pennsylvania Consumer Sub-Class Claims

Plaintiffs, on behalf of a purported sub-class, assert three counts against BMW arising solely under Pennsylvania law.  Specifically, Count 89 alleges violation of Pennsylvania's unfair trade practices and consumer protection law, Count 90 alleges breach of Pennsylvania's implied warranty of merchantability, and Count 3 alleges breach of the Magnuson-Moss Warranty Act. BMW argues that these claims must be dismissed because "there is no plaintiff who is a member of and can represent the Pennsylvania sub-class."  D.E. 625 at 21, 26.  In response, Plaintiffs contend that BMW's argument should be rejected as premature.  D.E. 658 at 34.  Specifically, Plaintiffs assert that "standing only becomes an issue if a class is certified and includes a state in which no named plaintiff suffered injury." D.E. 658 at 34.  The Court finds Plaintiff's arguments unavailing.

Constitutional standing requires a plaintiff to show the following:  (1) that it has suffered an injury, (2) that the injury is traceable to the defendant's action, and (3) that a favorable decision will likely redress the injury.  *Neale v. Volvo Cars of N. Am.*, LLC, 794 F.3d 353, 358– 59 (3d Cir. 2015); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167,

180–81, (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "[W]hether an action presents a case or controversy under Article III is determined vis-a-vis the named parties." *Krell v. Prudential Ins. Co. of Am. (in Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions)* (internal quotations omitted), 148 F.3d 283, 306 (3d Cir. 1998); *Cf. Neale*, 794 F.3d 353 at 361 (stating "[a] class action can be maintained by one class representative with proper standing."). Plaintiffs rely, in part, on *Amchem Pros., Inc. v. Windsor*, 521 U.S. 591 (1997) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) for the proposition that "standing only becomes an issue if a class is certified and includes a state in which no named plaintiff suffered injury." D.E. 658 at 66.

In *Amchem*, the Supreme Court affirmed the appellate court's order denying class certification because the purported class failed to satisfy the predominance and adequacy of representation requirements of Fed. R. Civ. P. 23. *See Amchem*, 521 U.S. at 623–28. The objectors in *Amchem* argued that certain claimants lacked standing to sue because, *inter alia*, they had not sustained cognizable injuries and did not meet the current amount in controversy required by 28 U.S.C. § 1332(a). *See Id.* at 612. There the Court addressed the issue of class certification as logically antecedent to the issue of standing. In order for the Court to analyze whether class *members* have Article III standing, there must be a certified class to analyze. However, in its analysis, the Court also stated that it was "mindful that Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure 'shall not abridge, enlarge or modify any substantive right.'" *Id.* at 612–13 (quoting 28 U.S.C. § 2072(b)). In support, the Court quoted Rule 82 stating "rules shall not be construed to extend . . . the [subject matter] jurisdiction of the United States district courts." Fed. R. Civ. P. 82 (alteration in original).

The Supreme Court expanded upon the rationale put forth in *Amchem* in *Ortiz*. There, petitioners challenged the certification of a class action arising from a mass of asbestos claims. The class was certified pursuant to Fed. R. Civ. P. 23(b)(1)(B) despite the absence of a limited fund, which petitioners alleged was inadequate to protect the interests of the class. *See Ortiz*, 527 at 827–29. Additionally, the petitioners argued that the majority of the class members' claims were nonjusticiable under Article III because "the vast majority of the exposure-only class members [were] without injury in fact and hence without standing to sue." *Id.* at 830–31 (internal quotations omitted). Relying on *Amchem*, the Supreme Court found that "as a threshold matter," class certification issues for certified classes are "logically antecedent" to Article III standing issues for the purported *members* of the class *Id.* at 31.

In the instant case, class certification issues are not logically antecedent to Article III standing issues. Unlike in *Ortiz* and *Amchem*, the purported Pennsylvania Consumer Sub-Class is not a certified class. Thus, each plaintiff within the purported Pennsylvania Consumer Sub-Class must show that they suffered an injury that is traceable to BMW's actions and that a favorable decision would likely redress that injury. Here, no Plaintiff proffers the requirements of constitutional standing for the purported sub-class. Additionally, Pennsylvania substantive law does not govern any of the fifteen Plaintiffs' claims. *See supra* Section III.A.1–7. Thus, the purported Pennsylvania Consumer Sub-Class lacks standing to assert claims alleging violations under Pennsylvania law. Therefore, BMW's motion to dismiss Plaintiffs' claims for violation of Pennsylvania's consumer protection law, implied warranty law, and the Magnuson-Moss Warranty Act is **GRANTED**. Count 89, Count 90 and Count 3, as related to the purported Pennsylvania sub-class, are **DISMISSED**.

iii. <u>Virginia Consumer Sub-Class Claims</u>

Plaintiffs, on behalf of a purported sub-class, assert three counts against BMW arising solely under Virginia law.  Specifically, Count 99 alleges that BMW violated the Virginia consumer protection act, Count 100 alleges that violation of Virginia's implied warranty of merchantability, and Count 3 alleges breach of the Magnuson-Moss Warranty Act.  The Court addresses each count in turn.

BMW moves to dismiss Count 99, violation of the Virginia consumer protection act, for the following reasons:  (1) "Virginia consumer-protection claim cannot be pursued on behalf of a putative class;" and (2) the "VCPA requires that a plaintiff plead and prove reliance"  D.E. 625 at 22.  As discussed, *supra* (Section III.A.5.i), Virginia only has one contact to this cause of action through Plaintiff Morris who purchased his BMW vehicle in Virginia.  However, under the choice of law rules of Michigan—where Morris brought his claim—Michigan substantive law applies to his case.  Accordingly, Virginia substantive law does not govern any of the claims brought against BMW.  As such, BMW's motion to dismiss the Virginia Consumer Protection Act claim is **GRANTED**.  Count 99 is **DISMISSED**.

BMW also moves to dismiss Count 100 and its derivative Count 3 because no Plaintiff alleges that a malfunction occurred during the implied warranty period under Virginia law.  The Court agrees and finds that the purported Virginia Consumer Sub-Class claim for breach of Virginia's implied warranty of merchantability suffers the same defect addressed *supra*— Virginia substantive law does not govern any of Plaintiffs' claims.  *See* Section III.A.8.i–ii.  Therefore, BMW's motion to dismiss Plaintiffs' implied warranty of merchantability claim under Virginia law  and its derivative Magnuson-Moss Warranty Act Claim is **GRANTED**.  Count 100 and Count 3 are **DISMISSED**.

**B. Manifestation of Alleged Defect**

Consistent with the Court's Mazda Order,[15] the Court agrees with Plaintiffs' argument regarding manifestation. As stated in the Mazda Order, the Court's finding is limited to the motion to dismiss stage, taking as true Plaintiffs' allegations of a uniform defect based on the use of ammonium nitrate as a propellant. The Court notes that Defendants have raised the possibility of other causes and factors contributing to the airbag inflator malfunctions. Accordingly, these factors may be appropriately considered at the summary judgement stage.

**C. BMW's Knowledge**

BMW argues that Plaintiffs' Second Amended Complaint "relies on generic 'knowledge' allegations that do not plausibly allege knowledge of a defect at the time of the BMW plaintiffs' vehicle purchases." D.E. 625 at 16. Further, BMW argues that Plaintiffs' fraud allegations "based on information and belief do not satisfy the particularity requirement of Rule 9(b) unless the complaint sets forth the facts on which the belief is founded." D.E. 525 at 17 (quoting *In re Worlds of Wonder Secs. Litig.*, 649 F. Supp. 1427, 1432–33 (N.D. Cal. 1988) (internal quotations omitted)). As such, BMW argues that Plaintiffs' fraud-based claims are defective as a matter of law.

Consistent with the Court's Mazda Order,[16] the Court finds that Plaintiffs have sufficiently alleged BMW's knowledge of the alleged inflator defect with sufficient particularity to meet the requirements of Fed. R. Civ. P. 9(b) at this motion to dismiss phase of the litigation. Plaintiffs' allegations that BMW knew or should have known of the volatility and potential danger of using ammonium nitrate are more than "generic" or "conclusory." In support of their

---

[15]      *See* D.E. 1099 at 10–11.

[16]      *See* D.E. 1099 at 11–13.

claims, Plaintiffs allege that Takata expressed concerns over the use of ammonium nitrate—a chemical typically used in demolitions in mining—in its patent documents in 1995 and 1999. *See* D.E. 579 ¶¶ 205–208.   Plaintiffs allege that at the time "the Vehicle Manufacturer Defendants purchased Takata's airbags for their vehicles, they were aware that the airbags used the volatile and unstable ammonium nitrate as the primary propellant in the inflators."  D.E. 579 ¶ 9.  Further, Plaintiffs allege that "the Vehicle Manufacturer Defendants were on notice of the Inflator Defect even before they installed the inflators in their vehicles," because "Takata reviewed the designs of the inflators with the Vehicle Manufacturers and the Vehicle Manufacturers approved the designs."  D.E. 579 ¶ 32.  Given these allegations, the Court finds that Plaintiffs have sufficiently alerted BMW to the precise misconduct alleged.

## D.  State Law Consumer Protection Claims

BMW moves to dismiss the following state law consumer protection-based claims: Count 47, on behalf of a purported Florida sub-class, for violation of the Florida Deceptive and Unfair Trade Practices Act; Count 49, on behalf of a purported Alabama sub-class, for violation of the Alabama Deceptive Trade Practices Act; and Count 53 for violation of the California false advertising law

### 1.  Plaintiffs Day, Dewan, Gunther, Kazos, and Veser's Claims for violation of the Florida Deceptive and Unfair Trade Practices Act (Count 47)

BMW moves to dismiss Count 47 for violation of the Florida Deceptive and Unfair Trade Practices Act as alleged by Plaintiffs Day, Dewan, Gunther, Kazos, and Veser.  BMW asserts Count 47 should be dismissed for the following reasons: (1) the lack of defect manifestation bars Plaintiffs' Florida Deceptive and Unfair Trade Practices Act claims because they are based on the risk of future product failures; and (2) Veser's Florida Deceptive and Unfair Trade Practices Act claim is time barred by the Florida four-year statute of limitations.  In support, BMW

incorporates by reference Automotive Defendants Mazda, Toyota, and Ford's arguments that Plaintiffs' claims are precluded by Florida law for failure to allege manifestation of an airbag inflator defect in their BMW vehicles. *See* D.E. 608 at 10–13; D.E. 614 at 30; D.E. 612 at 26.

Under Florida law, a valid Florida Deceptive and Unfair Trade Practices Act claim must establish the following three elements: (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). "[A] deceptive practice is one that is likely to mislead consumers." *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. 1st DCA 2000) (internal quotation omitted).  The Court addresses each BMW argument below.

BMW's first argument is unavailing as per the Court's holding on manifestation. *See supra* Section III.B.  In support of its second argument, BMW argues that the statute of limitations for Veser's Florida Deceptive and Unfair Trade Practices Act claim ran in early 2009, and that the delayed discovery rule does not apply to Florida Deceptive and Unfair Trade Practices Act claims. *See* D.E. 625 at 21.  In response, Plaintiffs argue that Defendants completely ignore that the Fair Debt Collection Practices Act's limitations period can be tolled where there is fraudulent concealment.  Here, Vesser claims that "BMW concealed and suppressed material facts regarding the Class Vehicles—most importantly, the fact that they were equipped with Defective Airbags," and that he "would not have purchased his 2005 BMW 325i or would not have paid as much for it if he had known of the problems associated with the vehicle's Inflator Defect." *See* D.E. 579 ¶¶ 174, 617.  The Court notes that BMW's motion to dismiss does not challenge Plaintiffs' fraudulent concealment claims.  As explained, *supra* (Section III.C), and consistent with the Mazda Order,[17] Plaintiffs have met the heightened

---

[17]  *See* D.E. 1099 at 11–13.

pleading standard of Fed. R. Civ. P. 9(b). Accordingly, the Court finds that Veser has sufficiently alleged that the statute of limitations tolled the Florida Deceptive and Unfair Trade Practices Act sufficient to survive the motion to dismiss. As such, BMW's motion to dismiss Day, Dewan, Gunther, Kazos, and Veser's Florida Deceptive and Unfair Trade Practices Act claims is **DENIED**.

### 2. Plaintiff Richardson's Claim for Violation of the Alabama Deceptive Trade Practices Act Claim (Count 49)

BMW moves to dismiss Count 49, violation of the Alabama Deceptive Trade Practices Act, for the following reasons: (1) Richardson failed to provide a written demand for relief that describes the unfair or deceptive act relied upon and the injury suffered 15 days prior to the filing the instant action; (2) Richardson's claims are time-barred; and (3) Richardson has not alleged manifestation of the purported defect. *See* D.E. 625 at 21–22. BMW incorporates by reference Automotive Defendants Mazda and Toyota's arguments on this issue. *Id.* at 22; *See also* D.E. 608 at 10–16; D.E. 614 at 30–33.

The Court finds BMW's first argument unavailing as it incorporates the same arguments asserted by Mazda regarding a written demand for relief that the Court addressed in its Mazda Order.[18] *See* D.E. 625 at 22–23. Consistent with the Mazda Order, the Court finds that Plaintiff has sufficiently alleged that the pre-suit notice requirement was satisfied.

BMW's second argument asserts that the statute of limitations for Richardson's claim ran in June 2012—at the latest. *See* D.E. 625 at 23. In response, Plaintiffs argue that BMW "completely ignores Alabama Code § 6-2-3, which provides that "[i]n actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after

---

[18]     *See* D.E. 1099 at 27–30.

which he must have two years within which to prosecute his action." D.E. 658 at 74 (citing

*Utilities Bd. of City of Opp v. Shuler Bros.*, 138 So. 3d 287, 293 (Ala. 2013), *reh'g denied* (Aug.

23, 2013). Here Richardson alleges the following:

> [That he] had no realistic ability to discern that the vehicles were defective
> until—at the earliest—after either the Defective Airbag exploded or their
> vehicles were recalled … [a]nd even then, Plaintiffs and Class Members had
> no reason to discover their causes of action because of Defendants' active
> concealment of the true nature of the defect. To that end, it was not until
> May 18, 2015, after more than a decade of actively concealing the Inflator
> Defect that Takata finally admitted that a defect related to motor vehicle
> safety may arise in some of the subject inflators.

D.E. 658 at 72 (internal citations and quotations omitted) (alteration in original). The Court

notes that BMW does not challenge Richardson's fraudulent concealment claims. Accordingly,

the Court finds that Richardson has adequately pleaded "who, what, when, and where" of his

omission claim and sufficiently alleged that BMW's fraudulent concealment tolled the statute of

limitations at the motion to dismiss stage of this litigation.

Finally, the Court finds BMW's third argument asserting lack of manifestation unavailing

for the reasons discussed, *supra*. *See* Section III.B. Thus, BMW's motion to dismiss

Richardson's claim for violation of the Alabama Deceptive Trade Practices Act is **DENIED**.

### 3. Plaintiffs Dougherty, Lee, Pham, and Schmidt's California False Advertising Law Clams (Count 53)

BMW moves to dismiss Count 53, violation of the California false advertising law, for

the following reasons: (1) Plaintiffs who purchased new BMW vehicles purchased them before

the allegedly misleading statements were made; (2) Plaintiffs who purchased used BMW

vehicles could not have plausibly relied on allegedly misleading statements made years earlier;

and (3) Plaintiffs have not alleged facts to show BMW had knowledge of the claimed defect in

the years the alleged misrepresentations were made.

California's "false advertising law generally prohibits advertising that contains any statement … which is untrue or misleading, and which is known, or … should be known, to be untrue or misleading . . ." *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226 (2013) (citing Bus. & Prof. Code, § 17500.) A valid false advertising claim must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322, (2011); *see e.g. Janda v. T-Mobile, USA, Inc.*, No. C 05-03729 JSW, 2008 U.S. Dist. LEXIS 93399, at \*13 (N.D. Cal. Nov. 7, 2008). "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 855 (2008); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) ("there is no doubt that reliance is the causal mechanism of fraud); *Hensley-Maclean v. Safeway, Inc.*, No. CV 11-01230 RS, 2014 U.S. Dist. LEXIS 48591, at \*20 (N.D. Cal. Apr. 7, 2014) ("[T]he CLRA only applies to representation and omissions that occur during pre-sale transactions.").

In its first argument, BMW asserts that Lee, Morris, and Veser could not have relied upon BMW's allegedly false advertisements because they purchased their new BMW vehicles before the alleged statements were made. D.E. 625 at 24.[19] BMW notes that the Second Amended Complaint proffers that Lee, relied on BMW's false advertisements to purchase his BMW vehicle in June 2003, yet he proffers that the statements he relied on were made in 2005. *See* D.E. 579 ¶¶ 310, 1141. The Court is unaware of any specific proffer asserted by Lee that identifies a specific statement made by BMW *prior* to the time he purchased his BMW vehicle.

---

[19] Of the claims BMW seeks to dismiss for this Count, only Lee's claims are governed by California substantive law as discussed in Sections III.A.3.i, III.A.5.i–ii.

The Court notes that Dougherty is similarly situated to Lee in this respect because Dougherty purchased his BMW vehicle, albeit used, in August 2001.  Dougherty and Lee fail to allege they plausibly relied on BMW's statements to purchase their vehicles *before* the statements were uttered.  As such, the Court finds that Dougherty and Lee's false advertisement claims must fail.

In its second argument, BMW proffers that it is not plausible for the used BMW vehicle Plaintiffs, Pham and Schmidt, to have relied on BMW's alleged misstatements that were made years before they purchased their used BMW vehicles.  However, at this stage of the litigation, the Court finds it plausible that Pham and Schmidt relied on the statements BMW made in 2005 and 2008 to purchase their used BMW vehicles within the plain and ordinary sense of the term.  Pham purchased his used BMW vehicle in August 2007, and Schmidt purchased his used BMW vehicle in May 2011.  Unlike Lee and Dougherty, Pham and Schmidt's allegations identify specific statements made by BMW in support of their claims:

(1)    In 2005, BMW represented on its website: "Driver's and passenger's front airbag supplemental restraint system (SRS) with 'smart' dual threshold, dual-stage deployment and sensor to help prevent unnecessary passenger's airbag deployment."

(2)    In 2008 BMW represented on its website: "The driver and front passenger airbags provide effective protection for the head and upper-torso area, preventing contact with the steering wheel and dashboard. In a head-on collision, you have the best possible protection."

Thus, the Court finds that Pham and Schmidt have sufficiently pleaded a claim for violation of California's false advertising law.  Whether these claims will survive the expected motions for summary judgment is for another day.

BMW's third argument is again unavailing for the reasons stated *supra* (Section III.C), consistent with the Mazda Order.[20]

Therefore, BMW's motion to dismiss Plaintiffs California false advertising law claims are **GRANTED** in part and **DENIED** in part. Count 53 is **DISMISSED** only as to Plaintiffs Dougherty and Lee.

### E. State Law Breach of Implied-Warranty Claims

#### 1. Plaintiffs Day, Dewan, Gunther, Kazos, and Veser's Florida Implied Warranty Claims (Count 48) and Magnuson Moss Warranty Act Claims (Count 3)

BMW moves to dismiss Count 48, breach of Florida's implied warranty of merchantability and Count 3, asserting violation of the Magnuson-Moss Warranty Act. In response, Plaintiffs state they "have elected not to pursue implied warranty claims under Florida law." D.E. 658 at 91 n.75. Consistent with the Mazda Order,[21] BMW's motion to dismiss Day, Dewan, Gunther, Kazos, and Veser's Florida implied warranty of merchantability and Magnuson-Moss Warranty Act claims is **GRANTED**. Count 48 and its derivative Count 3 are **DISMISSED**.

#### 2. Plaintiffs Dougherty, Lee, Pham, and Schmidt's California Implied Warranty Claims (Count 54) and Magnuson-Moss Warranty Act Claims (Count 3)

BMW moves to dismiss Count 54 for violation of the Song Beverly Act and Count 3 for violation of the Magnuson-Moss Warranty Act because Plaintiffs fail to identify an implied warranty breach that occurred during the warranty period. Consistent with the Mazda Order,[22] and as discussed *supra* (Section III. B), Dougherty, Lee, Pham, and Schmidt have sufficiently

---

[20]     *See* D.E. 1099 at 11–13.

[21]     *See* D.E. 1099 at 31.

[22]     *See* D.E. 1099 at 10–11.

pleaded manifestation of a uniform defect.  As such, BMW's motion to dismiss Lee, Pham, and Schmidt's implied warranty claims and their derivative Magnuson-Moss Warranty Act claims is **DENIED**.

### 3. Plaintiff Mulroy's Claim for Breach of Colorado's Implied Warranty of Merchantability Claim (Count 57) and Magnuson-Moss Warranty Act (Count 3)

BMW moves to dismiss Count 57 for breach of Colorado's implied warranty of merchantability and Count 3 for violation of the Magnuson-Moss Warranty Act on the grounds that Plaintiffs have failed to claim that a malfunction occurred during the warranty period. Consistent with the Mazda Order,[23] and as discussed *supra* (Section III. B), BMW's motion to dismiss Mulroy's implied warranty claim and his derivative Magnuson-Moss Warranty Act claim is **DENIED**.

### 4. Plaintiffs Dougherty, Lee, Pham and Schmidt's California Negligent Failure to Recall Claims (Count 55)

BMW moves to dismiss Count 55, negligent failure to recall, because Dougherty, Lee, Pham and Schmidt seek relief solely for alleged economic injuries.

The economic loss rule of California requires dismissal of Count 55.  In California, "[e]conomic loss consists of damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to other property". *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (citing *Jimenez v. Superior Court*, 29 Cal.4th 473, 482 (2002)); *see also Callaghan v. BMW of N. Am., LLC*, No. 13-CV-4794-RS, 2014 U.S. Dist. LEXIS 46374, at *19–20 (N.D. Cal. Apr. 2, 2014).  "The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and

---

[23]    *See* D.E. 1099 at 10–11.

beyond a broken contractual promise." *Id.* (citing *Redarowicz v. Ohlendorf*, 441 N.E.2d 324, 326 (1982) ("a plaintiff cannot recover solely economic losses in tort"). The economic loss rule applies to negligent failure to recall claims. *Majdipour v. Jaguar Land Rover N. Am.*, LLC, No. 12-07849 (WHW) (CLW), 2015 U.S. Dist. LEXIS 33377, at *43 (D.N.J. Mar. 18, 2015).

In Count 55, Plaintiffs seek damages for solely economic losses arising from BMW's alleged negligence in failing to recall BMW vehicles that contain airbags with inflator defects. Thus, Dougherty, Lee, Pham and Schmidt's negligent recall claims are barred by California's economic loss rule. BMW's motion to dismiss Plaintiffs' claims for negligent failure to recall is **GRANTED**. Count 55 is **DISMISSED**.

### F. Motion to Stay Case

BMW moves to stay this case based on its proffer that the National Highway Transportation and Safety Administration has primary jurisdiction over the Takata inflator defect investigation and recall. In support, BMW incorporates by reference the arguments put forth in the motion to stay filed by Toyota, Ford, and Subaru. *See* D.E. 610. The Court has denied the previously filed motion to stay. *See* D.E. 737. As stated in the Court's previous order, BMW's motion to stay is **DENIED**.

### G. BMW Manufacturing Company, LLC

BMW moves to dismiss all claims against BMW Manufacturing Company, LLC because "it is identified only in the caption of the [Second Amended Complaint] but nowhere in the [Second Amended Complaint] itself. This was due to a clerical error." D.E. 625 at 32. The Court notes that Plaintiff's do not object or respond to BMW's assertion. Thus, BMW's motion to dismiss all Plaintiffs' claims against BMW Manufacturing Company, LLC is **GRANTED**.

IV.    **CONCLUSION**

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that BMW's Motion to dismiss (D.E. 625) is

**GRANTED IN PART** and **DENIED IN PART** as follows:

- Count 3 is **DISMISSED** as to Plaintiffs Day, Dewan, Gunther, Kazos, Veser, the purported Pennsylvania sub-class, the purported Virginia sub-class, and claims arising under New Jersey Law only;

- Count 17 and Count 19 are **DISMISSED** in full;

- Count 18 is **DISMISSED** as to claims arising under New Jersey law only;

- Count 48 is **DISMISSED** in full;

- Count 53 is **DISMISSED** only as to Plaintiffs Dougherty and Lee;

- Count 55 is **DISMISSED** only as to Plaintiffs Dougherty, Lee, Pham and Schmidt;

- Count 89 and Count 90 are **DISMISSED** in full;

- Count 99 and Count 100 are **DISMISSED** in full;

- BMW's motion to dismiss counts 16, 47, 49, 51, 52, 54, 55, 56, 57, 63, and 64 are **DENIED**;

- BMW' motion to stay this case is **DENIED**;

- BMW's motion to dismiss all claims alleged against BMW Manufacturing Company, LLC is **GRANTED**.

**DONE AND ORDERED** in Chambers, Miami, Florida, this 14th day of October, 2016.

FEDERICO A. MORENO
**UNITED STATES DISTRICT JUDGE**

<u>Copies furnished to</u>:
Counsel of record