UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

MDL No. 2599
Master File No. 15-2599-MD-MORENO
No. 14-24009-CV-MORENO

IN RE:

**TAKATA AIRBAG PRODUCTS
LIABILITY LITIGATION**

_____

THIS DOCUMENT RELATES TO ALL
ECONOMIC LOSS TRACK CASES
_____/

## ORDER GRANTING IN PART AND DENYING IN PART FORD MOTOR COMPANY'S MOTION TO DISMISS

This multidistrict litigation ("MDL") consolidates allegations of economic loss and personal injury related to airbags manufactured by defendants Takata Corporation and TK Holdings (collectively, "Takata") and equipped in vehicles manufactured by defendants Honda, BMW, Ford, Mazda, Mitsubishi, Nissan, Subaru, and Toyota (collectively, the "Automotive Defendants") (collectively with Takata, the "Defendants"). This cause comes before the Court upon Ford Motor Company's ("Ford['s]") Motion to Dismiss (D.E. 612). The Court has reviewed the Motion, Plaintiffs' Omnibus Response (D.E. 658) and Ford's Reply (D.E. 694). Additionally, the parties raised some of their briefed arguments at oral argument. Ford's Motion asks the Court to dismiss all counts alleged against it in the Second Amended Economic Loss Complaint (D.E. 579).

### I. BACKGROUND

Plaintiffs in this case are consumers of vehicles equipped with Takata airbags containing ammonium nitrate as a propellant. The Court has divided the MDL's component cases into two

tracks: an economic loss track for plaintiffs alleging purely economic damages and a personal injury track for plaintiffs alleging damages to a person. This order pertains to the economic loss track cases. In the Complaint, Plaintiffs allege 11 counts against Ford.[1]

These 11 counts against Ford consist of the following: Count 3 for violations of the Magnuson-Moss Warranty Act; Count 20 for fraudulent concealment; Count 21 for breach of Michigan's implied warranty of merchantability; Count 22 for unjust enrichment; Count 23 for violation of the Michigan Consumer Protection Act; Count 24 for negligence; Count 47 for violation of Florida's Deceptive and Unfair Trade Practices Act on behalf of a Florida sub-class; Count 48 for breach of Florida's implied warranty of merchantability on behalf of a Florida sub-class; Count 87 for violation of the Ohio Consumer Sales Practices Act on behalf of an Ohio sub-class; Count 97 for violation of Texas's Deceptive Trade Practices Act on behalf of a Texas sub-class; and Count 98 for breach of Texas's implied warranty of merchantability on behalf of a Texas sub-class.[2]

These 11 counts arise out of seven Named Plaintiffs' Ford purchases. The seven Named Plaintiffs are: (1) Joseph Aliscio; (2) John Huebner; (3) Eugennie Sinclair; (4) Brooks Weisblat; (5) Nancy Barnett; (6) Alicia Benton and (7) Teresa Woodard.[3] The relevant information as to each Named Plaintiff is as follows:

---

[1] This figure does not include Counts 104–106, alleged by the Automotive Recycler's Association. The Automotive Defendants moved to dismiss these three Counts and the Court ruled in their favor. As these counts have been dismissed, the Court does not address arguments in the Motion, Omnibus Response, and Reply addressing them.

[2] The Order does not apply to any of the claims for injunctive relief. The Court will consider the arguments concerning injunctive relief in a later order.

[3] Ford asserts the transferor courts lack personal jurisdiction over Ford with respect to Barnett's Huebner's, Woodard's and Benton's claims because their claims were brought in districts other than those where they resided or purchased their vehicles. However, the Court can

- Aliscio, a Florida resident, purchased a used 2004 Ford Ranger in October 2009 in Florida. Aliscio's claims were transferred into the MDL from the Southern District of Florida.

- Barnett, a Texas resident, purchased a used 2007 Ford Mustang in July 2008 in Texas. Barnett's claims were direct-filed into the MDL.

- Benton, a South Carolina resident, purchased a used 2010 Ford Mustang in August 2010 in South Carolina. Benton's claims were direct-filed into the MDL.

- Huebner, a California resident, purchased a used 2005 Ford Mustang in March 2011 in California. Huebner's claims were transferred into the MDL from the Western District of Pennsylvania.

- Sinclair, a Florida resident, purchased a used 2007 Ford Mustang in September 2012 in Florida. Sinclair's claims were direct-filed into the MDL.

- Weisblat, a Florida resident, purchased a used 2005 Ford GT in February 2011 in Florida. Weisblat's claims were transferred into the MDL from the Southern District of Florida.

- Woodard, a South Carolina resident, purchased a new 2005 Ford Mustang in 2005 in South Carolina. Woodard's claims were direct-filed into the MDL.

## II.   LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Detailed factual allegations are not required, but a pleading must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." *Twombly*, 550 U.S. at 555.

---

exercise supplemental jurisdiction over the non-Florida Plaintiffs' claims. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Furthermore, as Plaintiffs note, the Judicial Panel on Multidistrict Litigation's decision to centralize this case favors retaining jurisdiction over all related claims against Defendants.

Where a cause of action sounds in fraud, however, Federal Rule of Civil Procedure 9(b) must be satisfied in addition to the more relaxed standard of Rule 8. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," although "conditions of a person's mind," such as malice, intent, and knowledge may be alleged generally. Fed. R. Civ. P. 9(b). "The 'particularity' requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (citations omitted).

### III. ANALYSIS

#### A. Choice of Law Analysis

Plaintiffs assert two counts against Ford arising only under Michigan law and one count arising only under Ohio law.[4] Counts 21 and 23 allege violations of Michigan's implied warranty of merchantability and the Michigan Consumer Protection Act, respectively. Count 87 alleges violations of Ohio's Consumer Sales Practices Act. The Court also treats Count 24 as arising only under Michigan law even though Plaintiffs pleaded the count under alternative laws in their Second Amended Economic Loss Complaint.[5] Ford argues that the counts asserting claims under Michigan and Ohio law should be dismissed because "[n]one of the Ford Plaintiffs reside in Michigan or Ohio, or purchased their vehicles in Michigan or Ohio." (D.E. 612 at 35). The

---

[4] Plaintiffs allege additional violations of Michigan law, but in those counts, Plaintiffs plead alternative law if Michigan law does not apply. The two counts discussed in this section are strictly under Michigan law, with no alternative law pleaded.

[5] The Court need not address whether Plaintiffs' negligence claims are barred by the economic loss rule because the Court has determined Michigan law does not apply to the instant action and Plaintiffs state in their reply that they are "asserting . . . claims for negligence under Michigan law."

4

choice of law analysis set forth in the Court's order on Mazda's motion to dismiss (D.E. 1099) (the "Mazda Order") applies and for the same reasons, Counts 21, 23, 24 and 87 must be dismissed.[6]

Applying the analysis from the Mazda Order, Florida's choice of law rules apply to the claims brought by Aliscio, Barnett, Benton, Sinclair, Weisblat, and Woodard because their cases were either transferred into the MDL from the Southern District of Florida or filed directly into the MDL. Pennsylvania's choice of law rules apply to Huebner's claims because his case was transferred into the MDL from the Western District of Pennsylvania.

    i.    **Florida Choice of Law Rules**

This Court, in its order on BMW's motion to dismiss (D.E. 1256 at 9), discussed its analysis on Florida's choice of law, which is especially applicable to the claims against Ford.

    ii.    **Pennsylvania Choice of Law Rules**

Pennsylvania "employs a 'flexible rule' which combines the 'significant contacts' analysis of Restatement (Second) of Conflict of Laws §145 and a 'governmental interest analysis.'" *In re Tylenol (Acetaminophen) Mktg.*, No. 13-md-02436, 2015 WL 2417411, at *2 (May 20, 2015 E.D. Pa.) (citing *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805 (Pa. 1964)). Pennsylvania's Supreme Court has stated, "[t]he merit of such a rule is that it gives to the place having the most interest in the problem paramount control over the legal issues arising out of a particular factual context and thereby allows the forum to apply the policy of the jurisdiction most intimately concerned with the outcome of the particular litigation." *Griffith*, 203 A.2d at 806 (internal quotations omitted). Pennsylvania "permits analysis of the policies and interests underlying the particular issue before the court and directs courts to apply the law of the state

---

[6]     *See* D.E. 1099 at 4–10.

with the most interest in the problem." *Travelers Prop. Cas. Co. of Am. v. Chubb Custom Ins. Co.*, 864 F. Supp. 2d 301, 308 (E.D. Pa. 2012) (quoting *Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 229 (3d Cir. 2010)).

For the reasons stated in the Mazda Order,[7] the Court finds that under Florida's and Pennsylvania's choice of law rules, Michigan and Ohio law should not apply to the instant actions filed originally in Florida and Pennsylvania. No Plaintiff is a resident of Michigan or Ohio, claims to be a resident of either state at the time they purchased their Ford vehicles, or filed their complaint in either state. Furthermore, no Plaintiff alleges that they purchased their Ford vehicles in Michigan or Ohio or that they perceived any allegedly deceptive advertisements about Ford in either state. It appears the only contact Michigan has to Plaintiffs' claims is that Ford is headquartered in Michigan. The Court finds that the interests that Florida and Pennsylvania have to Plaintiffs' claims is greater than the attenuated contact to either Michigan or Ohio.

Applying Florida's choice of law rules, Florida substantive law applies to the claims brought by Aliscio, Sinclair, and Weisblat because they purchased their vehicles in Florida and reside in Florida. Florida's choice of law rules also dictate that Texas law applies to Barnett's claims because she purchased her vehicle and resides in Texas, and South Carolina law applies to the claims alleged by Benton and Woodard because they purchased their vehicles in South Carolina and reside in South Carolina. Applying Pennsylvania's choice of law rules to Huebner's claims, California law governs, as the purported harm would have occurred in California, where he purchased his vehicle.

Because neither Michigan nor Ohio law govern the claims brought against Ford, Ford's

---

[7] *See* D.E. 1099 at 4-10.

6

Motion to Dismiss is **GRANTED** as to the counts exclusively alleging claims under Michigan or Ohio law. Accordingly, Count 21, Count 23, Count 24, and Count 87 are **DISMISSED**.

### B. Manifestation of Alleged Defect

Consistent with the Court's Mazda Order,[8] the Court agrees with Plaintiffs' argument regarding manifestation. As stated in the Mazda Order, the Court's finding is limited to the motion to dismiss stage, taking as true Plaintiffs' allegations of a uniform defect based on the use of ammonium nitrate as a propellant. The Court notes that Defendants have raised the possibility of other causes and factors contributing to the airbag inflator malfunctions. Accordingly, these factors may be appropriately considered at the summary judgement stage.

### C. Ford's Knowledge

Consistent with the Court's Mazda Order,[9] the Court finds that Plaintiffs have sufficiently alleged Ford's knowledge of the alleged inflator defect to satisfy the pleading requirements of Rule 9(b).

### D. Count 20: Fraudulent Concealment

Ford moves to dismiss Count 20 for fraudulent concealment as alleged by the seven Named Plaintiffs.

i. **Claims by Aliscio, Sinclair, and Weisblat for Fraudulent Concealment Under Florida Law**

Ford argues that Plaintiffs' claims for fraudulent concealment under Florida law should be dismissed for five reasons: (1) Plaintiffs have not adequately pleaded Ford had knowledge of a defect; (2) Plaintiffs fail to meet the heightened pleading requirements of Rule 9(b); (3)

---

[8] *See* D.E. 1099 at 10–11.

[9] *See* D.E. 1099 at 11–13.

Plaintiffs fail to meet the requirement of Rule 8; (4) Plaintiffs were not owed a duty by Ford to disclose any information regarding the Takata airbags; and (5) Plaintiffs' claims are barred by the economic loss rule.[10]

Consistent with its Mazda Order, the Court finds that Plaintiffs have adequately pleaded manifestation and Ford's knowledge under Rule 9(b)'s heightened pleading standard for purposes of fraudulent concealment.

The Court also concludes that Plaintiffs have adequately alleged that Ford had a duty to disclose information about the Takata airbags. Florida law imposes a duty to disclose on a defendant if that "defendant's failure to speak would render the defendant's own prior speech misleading or deceptive." *See, e.g., S.E.C. v. City of Miami, Fla.*, 988 F. Supp. 2d 1343, 1356 (S.D. Fla. 2013). Plaintiffs have alleged that Ford had a duty to disclose the Inflator Defect because it "made incomplete representations about the safety and reliability of the Class Vehicles, while purposefully withholding material facts from Plaintiffs that contradicted these representations." (D.E. 579 at ¶ 667). Accordingly, the Court finds that Plaintiffs have sufficiently alleged that Ford had a duty to disclose additional facts about the safety of its vehicles under Florida law.

### ii. Barnett's Claim for Fraudulent Concealment Under Texas Law

Ford argues that Barnett's claim for fraudulent concealment should be dismissed for four reasons. Specifically, Ford argues that (1) Plaintiffs have not adequately pleaded Ford had knowledge of a defect; (2) Plaintiffs fail to meet the heightened pleading requirements of Rule

---

[10] The economic loss rule does not bar Plaintiffs' fraudulent concealment claims because the Court does not reach the merits of Plaintiffs' negligence claims as they only allege Michigan law.

8

9(b); (3) Plaintiffs fail to meet the requirement of Rule 8; and (4) Plaintiffs were not owed a duty by Ford to disclose any information regarding the Takata airbags.

Consistent with its Mazda Order, the Court finds that Plaintiffs have adequately pleaded manifestation and knowledge under Rule 9(b)'s heightened pleading standard for purposes of fraudulent concealment. The Court also finds Plaintiffs have adequately alleged a duty to disclose information about the Takata airbags.

Texas law states that "[a] duty to disclose may arise in four situations: (1) when there is a fiduciary relationship; (2) when one voluntarily discloses information, the whole truth must be disclosed; (3) when one makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue; and (4) when one makes a partial disclosure and conveys a false impression." *Vial v. Gas Sol., Ltd.*, 187 S.W.3d 220, 230 (Tex. App. 2006). For the reasons discussed *supra*, the Court finds that Plaintiffs have sufficiently alleged that Ford had a duty to disclose additional facts about the safety of its vehicles under Texas law.

### iii. Huebner's Claim for Fraudulent Concealment Under California Law

Ford argues that Huebner's claim for fraudulent concealment should be dismissed because (1) Plaintiffs have not adequately pleaded Ford had knowledge of a defect; (2) Plaintiffs fail to meet the heightened pleading requirements of Rule 9(b); (3) Plaintiffs fail to meet the requirement of Rule 8; and (4) Plaintiffs were not owed a duty by Ford to disclose any information regarding the Takata airbags. Consistent with its prior Mazda Order, the Court finds that Plaintiffs have adequately pleaded both the manifestation and Ford's knowledge of the inflator defect.

The Court also concludes that Plaintiffs have adequately alleged that Ford had a duty to disclose information about the Takata airbags under California law. Under California law, "concealment or partial suppression of material facts constitutes fraud when there is a duty to disclose those facts. The duty to disclose generally requires a relationship grounded in 'some sort of transaction between the parties.' Thus, a duty to disclose may arise from the relationship between seller and buyer." *Los Defensores, Inc. v. Gomez*, 166 Cal.Rptr.3d 899, 915 (Cal. Ct. App. 2014) (internal citations omitted). Accordingly, the Court finds that Plaintiffs have sufficiently alleged that Ford had a duty to disclose additional facts about the safety of its vehicles under California law.

### iv. Benton's and Woodard's Claims for Fraudulent Concealment Under South Carolina Law

Ford argues that Benton's and Woodard's claims for fraudulent concealment should be dismissed because (1) Plaintiffs have not adequately pleaded Ford had knowledge of a defect; (2) Plaintiffs fail to meet the heightened pleading requirements of Rule 9(b); (3) Plaintiffs fail to meet the requirement of Rule 8; and (4) Plaintiffs were not owed a duty by Ford to disclose any information regarding the Takata airbags. Consistent with its Mazda Order, the Court finds Plaintiffs have adequately pleaded both the manifestation and Ford's knowledge of the inflator defect.

The Court also concludes that Plaintiffs have adequately alleged that Ford had a duty to disclose information about the Takata airbags under South Carolina law. Like Florida, South Carolina law does not always require a fiduciary relationship for a duty to disclose to exist for purposes of a fraudulent concealment claim. *See Fisher v. Pelstring*, 817 F. Supp. 2d 791, 823 (D.S.C. 2011). The Court finds that Plaintiffs have sufficiently alleged that Ford had a duty to disclose additional facts about the safety of its vehicles under South Carolina law.

### E. Count 22: Unjust Enrichment

Ford moves to dismiss Count 22, for unjust enrichment, as alleged by the seven Named Plaintiffs.

    i.    **Claims by Aliscio, Sinclair, and Weisblat for Unjust Enrichment Under Florida Law**

Ford moves to dismiss Aliscio's, Sinclair's, and Weisblat's claims for unjust enrichment because (1) Plaintiffs have an adequate remedy at law and (2) Plaintiffs have failed to allege that they conferred a benefit on Ford.[11]

    a.  Adequate Remedy at Law

For the reasons stated in the Mazda Order[12]—i.e. because Plaintiffs have alleged that all applicable warranties are procedurally and substantively unconscionable and are therefore not enforceable (D.E. 579 ¶¶ 452–54) and that Plaintiffs have no adequate remedy at law (D.E. 579 ¶ 749)—the Court finds that at the motion to dismiss stage, Plaintiffs have sufficiently alleged that the Named Plaintiffs do not have an adequate remedy at law. Accordingly, the Court does not dismiss Count 22 on that ground.

    b.  Failure to Allege a Benefit Conferred on Ford

Ford argues that the unjust enrichment claims must be dismissed because Plaintiffs have failed to allege that they conferred any benefit on Ford. Plaintiffs respond that, while plaintiffs must "directly confer a benefit on defendants, they need not have direct contact with the defendants to do so" and that a plaintiff's money could pass to a defendant by a third party. (D.E. 658 at 54–55).

---

[11] Ford also takes issue with Plaintiffs' choice of law analysis with respect to their unjust enrichment claims. The Court has already set out its choice of law analysis.

[12] *See* D.E. 1099 at 27–28.

11

Under Florida law, "[a] claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012). Plaintiffs are correct, however, that a plaintiff may satisfy the first element through indirect contact with a defendant, e.g. through an intermediary. *See Williams v. Wells Fargo Bank N.A.*, No. 11-21233-CIV-ALTONAGA, 2011 U.S. Dist. LEXIS 119136, at *15–16 (S.D. Fla. Oct. 14, 2011) ("It would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the 'benefit' passed through an intermediary before being conferred on a defendant."); *Romano v. Motorola, Inc.*, No. 07-60517-CIV, 2007 WL 4199781, *2 (S.D. Fla. Nov. 26, 2007) ("Defendant erroneously equates direct *contact* with direct *benefit* in arguing that because plaintiff here did not purchase either his phone or his batteries from Motorola, plaintiff conferred no direct benefit on Motorola.").

Aliscio, Sinclair, and Weisblat purchased their used vehicles in Florida from Bev Smith Toyota, CarMax, and CNC Exotics, respectively. Plaintiffs do not allege these dealerships had any affiliation with Ford. The Court cannot reasonably infer from the facts alleged that Ford ever held any money belonging to Aliscio, Sinclair, or Weisblat. Accordingly, the Court finds that Ford's motion to dismiss Count 22 as to Aliscio, Sinclair, and Weisblat should be **GRANTED**.

### F. Barnett's Claim For Unjust Enrichment Under Texas Law

Ford argues that Barnett's claim for unjust enrichment should be dismissed because Texas law does not acknowledge unjust enrichment as a freestanding cause of action.

To be sure, Texas courts have held that "[u]njust enrichment, is not an independent cause of action but rather characterizes the result of a failure to make restitution benefits either

wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay." *Foley v. Daniel*, 346 S.W.3d 687, 690 (Tex. App. 2009) (citation omitted). However, "[i]n some circumstances, overpayments under a valid contract may give rise to a claim for restitution or unjust enrichment." *Id.* at 690-91 (citation omitted).

However, Barnett purchased her used vehicle in Texas from Henna Chevrolet LP. Plaintiffs do not allege this dealership had any affiliation with Ford. The Court cannot reasonably infer from the facts alleged that Ford ever held any money belonging to Barnett. Accordingly, the Court finds that Ford's motion to dismiss Count 22 as to Barnett should be **GRANTED**.

### G. Huebner's Claim For Unjust Enrichment Under California Law

Ford also argues that Huebner's claim for unjust enrichment should be dismissed because California law does not acknowledge unjust enrichment as a freestanding cause of action.

California recognizes the principle behind unjust enrichment by requiring "restitution if [a defendant] is unjustly enriched at the expense of another. The recipient of the benefit is liable only if the circumstances are such that, as between two persons, it is unjust for the recipient to retain it." *City of Chula Vista v. Gutierrez*, 143 Cal. Rptr. 3d 689, (Cal. Ct. App. 2012) (internal citation omitted).

Here, Plaintiffs only state that Huebner's used 2005 Ford Mustang was purchased in Burbank, California. It is unclear if Huebner purchased this vehicle from a Ford dealership like Plaintiffs Benton and Woodard, or if he purchased it from a dealership with no affiliation to Ford, such as CarMax. Accordingly, the Court finds that Ford's motion to dismiss Count 22 as to Huebner should be **GRANTED**.

### H. Benton's and Woodard's Claims for Unjust Enrichment Under South Carolina Law

Finally, Ford argues that Benton's and Woodard's claims for unjust enrichment should be

dismissed because (1) Plaintiffs have an adequate remedy at law and (2) Plaintiffs have failed to allege that they conferred a benefit on Ford.

Unjust enrichment claims in South Carolina have the following three elements: "(1) a benefit conferred by plaintiff upon the defendant; (2) realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for her to retain it without paying its value." *QHG of Lake City, Inc. v. McCutcheon*, 600 S.E.2d 105, 108 (S.C. Ct. App. 2004).

Benton purchased her used Ford from Summerville Ford in South Carolina. Woodard purchased her new Ford from Fairway Ford in South Carolina. The Court is unaware of any South Carolina case law that would require the Court to reach a different result as to Benton and Woodard in light of its decisions from previous orders regarding other Plaintiffs who purchased used and new cars from intermediary dealerships. Accordingly, the Court finds that Ford's motion to dismiss Count 22 as to Benton and Woodard should be **DENIED**.

I. **Count 47: Florida Deceptive and Unfair Trade Practices Act**

Ford moves to dismiss Count 47 for violation of Florida's Deceptive and Unfair Trade Practices Act as alleged by the Florida sub-class. Ford proffers three reasons Count 47 must be dismissed: (1) Plaintiffs have not alleged manifestation of the purported defect; (2) Plaintiffs fail to adequately allege their fraud-based claims pursuant to Rule 9(b)'s heightened pleading standard; and (3) Plaintiff Aliscio's claim is time-barred by Florida's four-year statute of limitations for these claims. Consistent with its prior rulings, Ford's motion to dismiss Count 47 is **DENIED**.

### J. Count 97: Texas's Deceptive Trade Practices Act

Ford moves to dismiss Count 97 for violation of Texas's Deceptive Trade Practices Act because Plaintiffs fail to adequately allege the deceptive conduct occurred in connection with a consumer transaction. The Court finds that Plaintiff Barnet has adequately alleged deceptive conduct on Ford's part. Specifically, Barnett alleges that Ford knew of the inflator defect and "allowed unsuspecting new and used car purchasers to continue buy/lease the Class Vehicles." Ford's motion to dismiss Count 97 is **DENIED**.

### K. Count 48 and Count 3 as to the Florida Named Plaintiffs: Breach of Florida's Implied Warranty of Merchantability and Violation of the Magnuson-Moss Warranty Act

Ford moves to dismiss Count 48, asserting breach of Florida's implied warranty of merchantability and Count 3, asserting violation of the Magnuson-Moss Warranty Act. In response, Plaintiffs state they "have elected not to pursue implied warranty claims under Florida" law." (D.E. 658 at 91 n.75). Consistent with the Mazda Order regarding the Magnuson-Moss Warranty Act claims asserted by Florida Plaintiffs,[13] Ford's motion to dismiss the Florida implied warranty of merchantability and Magnuson-Moss Warranty act claims filed by Aliscio, Sinclair, and Weisblat are **GRANTED**. Count 48 and its derivative Count 3 are **DISMISSED**.

### L. Plaintiff Barnett's Texas Implied Warranty of Merchantability Claims (Count 98) and Non-Florida Plaintiffs' Magnuson-Moss Warranty Act Claims (Count 3)

Ford moves to dismiss Count 98 for breach of Texas's implied warranty of merchantability and Count 3 for violation of the Magnuson-Moss Warranty Act because Plaintiffs fail to identify an implied warranty breach that occurred during the warranty period.

---

[13] See D.E. 1099 at 31.

Consistent with the Mazda Order,[14] Ford's motion to dismiss Barnett's implied warranty of merchantability and her derivative Magnuson-Moss Warranty Act claims is **DENIED**.

Ford also moves to dismiss the Magnuson-Moss Warranty Act claims brought by the remaining non-Florida Plaintiffs—Huebner, Benton, and Woodard. Ford makes three arguments in support of its position: (1) Plaintiffs failed to provide the required pre-suit notice; (2) the implied warranties were limited to the duration of Ford's New Vehicle Limited Warranty, and that it has expired; and (3) Plaintiffs have not alleged manifestation of the purported defect.[15] The Court has already found that Plaintiffs have adequately alleged manifestation of the inflator defect and moves to address Ford's remaining two arguments below.

i. **Ford's Lack of Pre-Suit Notice Argument**

Ford argues that Plaintiffs' failure to provide pre-suit notice bars their implied warranty claims. Plaintiffs allege, however, that Defendants were put on notice of their breaches of implied warranties from consumer complaints, internal investigations, numerous individual letters sent by consumers, and their knowledge of the alleged inflator defect. Plaintiffs also argue that this notice is sufficient, as the applicable provisions do not specify a particular kind of notice, only that notice to the defendant be given. Furthermore, Ford Plaintiff Barnett sent Ford a notice letter on October 27, 2014, prior to the filing of Plaintiffs' Consolidated Class Action Complaint. Thus, the Court finds that Plaintiffs have alleged sufficient facts to satisfy the pre-suit notice requirement.

---

[14] See D.E. 1099 at 10-11.

[15] As noted *supra*, Plaintiffs "have elected not to pursue implied warranty claims under Florida law." (D.E. 658 at 91 n.75). Thus, the Court does not address Ford's arguments that the Florida Plaintiffs could not maintain a claim for breach of implied warranty.

### ii.     Ford's Limited Duration of the Implied Warranties Argument

Ford argues that the Non-Florida Plaintiffs' Magnuson-Moss Warranty Act claims must be dismissed because the implied warranties on their vehicles were limited to the duration of their New Vehicle Limited Warranties, which have all expired. Plaintiffs respond (1) that they adequately alleged that any durational limits on the New Vehicle Limited Warranties and associated implied warranties are unconscionable, and therefore unenforceable; and (2) that they adequately alleged that Ford breached the implied warranty within the warranty period because the inflator defect existed in the vehicles—and Ford knew about the defect at the time of sale.

As discussed in the Mazda Order,[16] Plaintiffs have sufficiently alleged that Ford's New Vehicle Limited Warranties are procedurally and substantively unconscionable and therefore unenforceable. In addition, Plaintiffs also alleged that Ford breached the applicable warranties at the time of sale and that Ford knew that the inflators were defective at the time of each sale. The Court has also rejected Ford's argument that Plaintiffs have not adequately alleged manifestations of the defect of Ford's knowledge of the alleged defect. Accordingly, the Court does not dismiss the Non-Florida Plaintiffs' Magnuson-Moss Warranty Act claims for this reason. Ford's motion to dismiss Count 3 as to the Non-Florida Plaintiffs is therefore **DENIED**.

### IV.     CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Ford's Motion to Dismiss (D.E. 612) is **GRANTED IN PART** and **DENIED IN PART**. Specifically, Count 21, Count 23, Count 24, Count 48, and Count 87 are **DISMISSED**. Count 3 is **DISMISSED** as asserted by the Florida

---

[16]     See D.E. 1099 at 28.

Plaintiffs. Count 22 is **DISMISSED** as asserted by Aliscio, Sinclair, Weisblat, Barnett, and Huebner.

**DONE AND ORDERED** in Chambers, Miami, Florida, this 27th day of February, 2017.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of record