MDL No. 2599
Master File No. 15-2599-MD-MORENO
No. 14-24009-CV-MORENO

IN RE:

**TAKATA AIRBAG PRODUCTS
LIABILITY LITIGATION**

THIS DOCUMENT RELATES TO
ECONOMIC LOSS TRACK CASES

_____/

## ORDER GRANTING IN PART AND DENYING IN PART AMERICAN HONDA MOTOR COMPANY'S MOTION TO DISMISS

This multidistrict litigation ("MDL") consolidates allegations of economic loss and personal injury related to airbags manufactured by defendants Takata Corporation and TK Holdings and equipped in vehicles manufactured by defendants Honda, BMW, Ford, Mazda, Mitsubishi, Nissan, Subaru, and Toyota. Honda's Motion asks the Court to dismiss "discrete claims" alleged against it in the Second Amended Economic Loss Complaint.

### I.  BACKGROUND

Plaintiffs in this case are consumers of vehicles equipped with Takata airbags containing ammonium nitrate as a propellant. The Court has divided the MDL's component cases into two tracks: an economic loss track for plaintiffs alleging purely economic damages and a personal injury track for plaintiffs alleging damages to a person. This order pertains to the economic loss

track cases. In the Complaint, Plaintiffs allege various counts against Honda, but the Court only addresses those counts Honda seeks to dismiss.[1]

Honda asks the Court to dismiss the following counts:

- Count 3 for violation of the Magnuson-Moss Warranty Act on behalf of the Nationwide Consumer Class

- Count 9 for fraudulent concealment on behalf of the Nationwide Consumer Class[2]

- Count 10 for violation of the Song-Beverly Consumer Warranty Act for breach of implied warranty of merchantability on behalf of the Nationwide Consumer Class

- Count 11 for unjust enrichment on behalf of the Nationwide Consumer Class

- Count 12 for violation of the California Unfair Competition Law on behalf of the Nationwide Consumer Class

- Count 13 for violation of the Consumer Legal Remedies Act on behalf of the Nationwide Consumer Class[3]

- Count 14 for violation of the California False Advertising Law on behalf of the Nationwide Consumer Class

- Count 15 for negligent failure to recall on behalf of the Nationwide Consumer Class

- Count 46 for negligent failure to recall on behalf of the Nationwide Toyota Consumer Class[4]

---

[1] The Court has already addressed Honda's request to dismiss Count 2 for violation of 18 U.S.C. § 1962(d), the Racketeer Influenced and Corrupt Organizations Act.

[2] The Court does not address Honda's motion to dismiss the fraudulent concealment claim as Honda only argues the claim should be dismissed because certain Plaintiffs are barred from invoking California law. As has been made clear from the Court's previous Orders, an analysis of each claim alleged under the common law has been addressed under the applicable law for each Plaintiff. Because Honda has not addressed the merits of this claim as to any Plaintiff (even those to whom California law would apply), the Court denies the motion to dismiss as to Count 9.

[3] In their Response, Plaintiffs state they "do not intend to seek such recall-related injunctive relief" as outlined in Counts 12 and 13. Thus, **Count 12** and **Count 13** are **DISMISSED**.

- Count 47 for violation of the Florida Deceptive and Unfair Trade Practices Act on behalf of the Florida Consumer Sub-Class

- Count 48 for breach of implied warranty of merchantability on behalf of the Florida Consumer Sub-Class[5]

- Count 49 for violation of the Alabama Deceptive Trade Practices Act on behalf of the Alabama Consumer Sub-Class

- Count 53 for violation of the California False Advertising Law on behalf of the California Consumer Sub-Class

- Count 54 for violation of the Song-Berverly Consumer Warranty Act for breach of the implied warranty of merchantability on behalf of the California Consumer Sub-Class

- Count 55 for negligent failure to recall on behalf of the California Consumer Sub-Class

- Count 59 for violation of the Georgia Fair Business Practices Act on behalf of the Georgia Consumer Sub-Class

- Count 62 for breach of the implied warranty of merchantability on behalf of the Hawaii Consumer Sub-Class

- Count 66 for breach of the implied warranty of merchantability on behalf of the Indiana Consumer Sub-Class

- Count 69 for breach of the implied warranty of merchantability/warranty against redhibitory defects on behalf of the Louisiana Consumer Sub-Class

- Count 70 for violation of the Deceptive Acts or Practices Prohibited by Massachusetts Law on behalf of the Massachusetts Consumer Sub-Class

- Count 71 for breach of the implied warranty of merchantability on behalf of the Massachusetts Consumer Sub-Class

- Count 73 for breach of the implied warranty of merchantability on behalf of the Michigan Consumer Sub-Class

---

[4]     The Court does not address this claim here because it refers to the Toyota Defendants, not the Honda Defendants. *See* D.E. 1202 at 14-16.

[5]     In their Response, Plaintiffs state they "have elected not to pursue implied warranty claims under Florida" law. (D.E. 658 at 91 n.75). Thus, **Count 48** and the derivative Magnuson-Moss Warranty Act claim (**Count 3**) are **DISMISSED**.

- Count 76 for breach of the implied warranty of merchantability on behalf of the Minnesota Consumer Sub-Class

- Count 78 for breach of the implied warranty of merchantability on behalf of the Missouri Consumer Sub-Class

- Count 80 for breach of the implied warranty of merchantability on behalf of the Nevada Consumer Sub-Class

- Count 81 for breach of the implied warranty of merchantability on behalf of the New Jersey Consumer Sub-Class

- Count 86 for breach of the implied warranty of merchantability on behalf of the North Carolina Consumer Sub-Class[6]

- Count 90 for breach of the implied warranty of merchantability on behalf of the Pennsylvania Consumer Sub-Class

- Count 92 for breach of the implied warranty of merchantability on behalf of the Rhode Island Consumer Sub-Class

- Count 98 for breach of the implied warranty of merchantability on behalf of the Texas Consumer Sub-Class

- Count 102 for violation of the Consumer Credit and Protection Act on behalf of the West Virginia Consumer Sub-Class

- Count 103 for breach of the implied warranty of merchantability on behalf of the West Virginia Consumer Sub-Class.

These counts arise out of various Named Plaintiffs' Honda and Acura purchases. Plaintiffs group themselves by state consumer classes. The classes are composed of "[a]ll persons who, prior to the date on which the Class Vehicle was recalled, entered into a lease or bought a Class Vehicle in the state of _____ (e.g., Florida)." In other words, all Plaintiffs who purchased or leased their vehicles in the same state are grouped together as members of that

---

[6]     In their Response, Plaintiffs state they "have elected not to pursue implied warranty claims under . . . North Carolina" law. (D.E. 658 at 91 n.75). Thus, **Count 86** and the derivative Magnuson-Moss Warranty Act claim (**Count 3**) are **DISMISSED**.

state's subclass regardless of where they live or filed their complaints. The relevant information as to each Named Plaintiff is as follows:

## Alabama Subclass

- Mario Cervantes, an Alabama resident, purchased a used 2003 Honda Pilot in 2007 in Alabama. Cervantes's claims were transferred into the MDL from the Northern District of Alabama.

- Marita K. Murphy, an Alabama resident, purchased a new 2003 Honda Pilot EX on April 22, 2003 in Alabama. Murphy's claims were transferred into the MDL from the Northern District of Alabama.

- Cathryn Tanner, an Alabama resident, purchased a used 2003 Honda Civic on October 8, 2009 in Alabama. Tanner's claims were transferred into the MDL from the Northern District of Alabama.

- Charlotte Whitehead, an Alabama resident, purchased a used 2003 Honda Civic LX in 2007 in Alabama. Whitehead's claims were transferred into the MDL from the Central District of California.

## Arizona Subclass

- Gwendolyn Cody, an Arizona resident, purchased a new 2006 Honda CRV in September 29, 2006 in Arizona. Cody's claims were transferred into the MDL from the Central District of California.

- Kristen Go, a California resident, purchased a new 2001 Honda Accord in December 2000 in Arizona. Go's claims were transferred into the MDL from the Central District of California.

- Chris Pedersen, a Kentucky resident, purchased a new 2004 Honda Odyssey in October 2003 in Arizona. Pedersen's claims were transferred into the MDL from the Eastern District of Kentucky.

## California Subclass

- Jina Bae, a California resident, purchased a used 2004 Honda Accord in September 2008 in California. Bae's claims were transferred into the MDL from the Central District of California.

- Lonnee Cataldo, a Florida resident, purchased a used 2003 Honda Element in 2004 in California. Cataldo's claims were transferred into the MDL from the Southern District of Florida.

- Leslie A. Flaherty, a California resident, purchased a new 2008 Honda Element on December 1, 2007 in California. Flaherty's claims were direct-filed into the MDL.

- Terri Gamino, a California resident, purchased a new 2006 Honda Accord in October 2007 in California. Gamino's claims were transferred into the MDL from the Southern District of California.

- Judith Hollywood, a California resident, purchased a new 2004 Honda Accord LX on December 28, 2008 in California. Hollywood's claims were transferred into the MDL from the Central District of California.

- Constantine Kazos, a California resident, purchased a new 2008 Honda Element in August 2008 in California. Kazos's claims were transferred into the MDL from the Eastern District of New York.

- Richard D. Klinger, a California resident, purchased a used 2003 Honda Civic Hybrid in 2006 in California. Klinger's claims were transferred into the MDL from the Central District of California.

- Michael McLeod, a California resident, purchased a new 2007 Honda Accord on January 11, 2007 in California. McLeod's claims were transferred into the MDL from the Central District of California.

- Valerie M. Nannery, a District of Columbia resident, purchased a new 2004 Honda Civic Hybrid on September 30, 2004 in California. Nannery's claims were transferred into the MDL from the Central District of California.

- Holly Ruth, a California resident, purchased a used 2002 Honda Accord EX in May 2007 in California. Ruth's claims were direct-filed into the MDL.

- David Takeda, a California resident, purchased a new 2005 Honda Element in July 2005 in California. Takeda's claims were transferred into the MDL from the Central District of California.

- Susana Zamora, a California resident, purchased a new 2004 Honda Accord Sedan in 2004 in California. Zamora's claims were transferred into the MDL from the Southern District of California.

## Connecticut Subclass

- Nicole Peaslee, a Massachusetts resident, purchased a new 2004 Honda Accord EX in October 2004 in Connecticut. Peaslee's claims were transferred into the MDL from the Southern District of Florida.

## Florida Subclass

- Kiele Allen, a Florida resident, purchased a used 2002 Honda Odyssey in Florida. Allen's claims were transferred into the MDL from the Southern District of Florida.

- Camila Corteleti, a Florida resident, purchased a used 2004 Honda Civic on April 1, 2011 in Florida. Corteleti's claims were direct-filed into the MDL.

- Ryvania Fuentes, a Florida resident, purchased a used 2007 Honda Accord in December 2007 in Florida. Fuentes's claims were transferred into the MDL from the Southern District of Florida.

- Kimberly Holmes, a Florida resident, purchased a new 2002 Honda Odyssey on February 11, 2002 in Florida. Holmes's claims were transferred into the MDL from the Southern District of Florida.

- Pamela H. Koehler, a Florida resident, purchased a new 2006 Honda Pilot in March 2006 in Florida. Koehler's claims were transferred into the MDL from the Southern District of Florida.

- David Kopelman, a Florida resident, purchased a new 2004 Honda Pilot EXL DVD on August 6, 2004 in Florida. Kopelman's claims were transferred into the MDL from the Southern District of Florida.

- Gail Markowitz, a Florida resident, purchased a used 2007 Honda Accord on May 15, 2009 in Florida. Markowitz's claims were transferred into the MDL from the Southern District of Florida.

- Yessica Martinez, a Florida resident, purchased a new 2004 Honda Civic on May 2004 in Florida. Martinez's claims were transferred into the MDL from the Southern District of Florida.

- Maureen Gilick Rash, a Florida resident, leased and then purchased a new 2007 Honda Pilot in February 2011 in Florida. Rash's claims were transferred into the MDL from the Southern District of Florida.

- Steven P. Schneider, a Florida resident, purchased a used 2002 Acura TL in May or June 2012 in Florida. Schneider's claims were transferred into the MDL from the Southern District of Florida.

- Shaun Taylor, a Florida resident, purchased a used 2004 Honda Accord in March 28, 2011 in Florida. Taylor's claims were transferred into the MDL from the Central District of California.

- Oswald C. Tessier, a Florida resident, purchased a new 2003 Honda Accord on August 8, 2003 in Florida. Tessier's claims were transferred into the MDL from the Southern District of New York.

- Robert E. Weisberg, a Florida resident, purchased a new 2005 Honda CRV in November 2004 in Florida. Weisberg's claims were transferred into the MDL from the Southern District of Florida.

## Georgia Subclass

- Richard Arnold, a Georgia resident, purchased a used 2006 Honda Pilot on October 14, 2012 in Georgia. Arnold's claims were transferred into the MDL from the Northern District of Georgia.

- Trey Watley, a Georgia resident, purchased a new 2006 Honda Pilot in June 2006 in Georgia. Watley's claims were transferred into the MDL from the Northern District of Georgia.

- Bonnie Young, a North Carolina resident, purchased a new 2006 Acura MDX in November 2006 in Georgia. Young's claims were transferred into the MDL from the Eastern District of North Carolina.

## Hawaii Subclass

- Timothy L. Archer, a Hawaii resident, purchased a new 2004 Honda CRV in April 2004 in Hawaii. Archer's claims were transferred into the MDL from the Central District of California.

- David M. Jorgensen, a Hawaii resident, leased and then purchased a new 2006 Honda Ridgeline in 2006 in Hawaii. Jorgensen's claims were transferred into the MDL from the Southern District of Florida.

### Illinois Subclass

- Peter Breschnev, an Illinois resident, purchased a new 2002 Acura TL in April 2002 in Illinois. Breschnev's claims were transferred into the MDL from the Eastern District of Michigan.

### Indiana Subclass

- Charles and Vickie Burd, Indiana residents, purchased a used 2004 Honda Odyssey in March or April 2007 in Indiana. Their claims were direct-filed into the MDL.

### Louisiana Subclass

- Tasha Severio, a Louisiana resident, purchased a used 2007 Honda Pilot on February 2013 in Louisiana. Severio's claims were transferred into the MDL from the Southern District of Florida.

### Massachusetts Subclass

- Megan Sayre-Scibona, a Massachusetts resident, purchased a used 2005 Honda CRV in 2010 in Massachusetts. Sayre-Scibona's claims were direct-filed into the MDL.

### Michigan Subclass

- Erik Boone, a Michigan resident, purchased a used 2004 Honda Pilot on March 31, 2014 in Michigan. Boone's claims were transferred into the MDL from the Central District of California.

### Minnesota Subclass

- Darla Spiess, a Minnesota resident, purchased a used 2005 Acura MDX in Minnesota. Spiess's claims were direct-filed into the MDL.

### Missouri Subclass

- Amber Hodgson, a Missouri resident, purchased a new 2004 Honda CRV on January 4, 2004 in Missouri. Hodgson's claims were transferred into the MDL from the Western District of Missouri.

- Russell Holland, a Missouri resident, purchased a new 2007 Honda Pilot in April 2007 in Missouri. Holland's claims were transferred into the MDL from the Western District of Missouri.

- Jason Moehlman, a Missouri resident, purchased a used 2005 Honda Civic in July 2007 in Missouri. Moehlman's claims were transferred into the MDL from the Western District of Missouri.

### North Carolina Subclass

- Marjorie Michelle Avery, a North Carolina resident, purchased a new 2006 Honda Ridgeline in August 2005 in North Carolina. Avery's claims were transferred into the MDL from the Western District of North Carolina.

- John Meiser, a North Carolina resident, purchased a used 2007 Honda Pilot in 2007 in North Carolina. Meiser's claims were transferred into the MDL from the Western District of North Carolina.

### New Jersey Subclass

- Doreen Dembeck, a New Jersey resident, purchased a new 2005 Honda Accord in April 2005 in New Jersey. Dembeck's claims were direct-filed into the MDL.

- Helen Klemer, a New Jersey resident, purchased a new 2004 Honda Accord in November 2004 in New Jersey. Klemer's claims were direct-filed into the MDL.

### New York Subclass

- Rafael A. Garcia, a New York resident, purchased a used 2007 Honda Pilot on March 30, 2013 in New York. Garcia's claims were transferred into the MDL from the Southern District of New York.

- Anthony Palmieri, a New York resident, purchased a used 2005 Honda Accord in October 2009 in New York. Palmieri's claims were transferred into the MDL from the Central District of California.

### Nevada Subclass

- Kostan Lathouris, a Nevada resident, purchased a used 2005 Honda Civic on April 10, 2006 in Nevada. Lathouris's claims were transferred into the MDL from the Central District of California.

### Ohio Subclass

- Katherine E. Shank, an Ohio resident, purchased a used 2002 Honda Civic on July 6, 2009 in Ohio. Shank's claims were transferred into the MDL from the Eastern District of New York.

### Oregon Subclass

- Ana and Kangyi Chen, Texas residents, purchased a new 2006 Honda Accord on May 24, 2006 in Oregon. Their claims were transferred into the MDL from the Western District of Pennsylvania.

- Laura M. Killgo, an Idaho resident, purchased a used 2003 Honda Element in 2009 in Oregon. Killgo's claims were transferred into the MDL from the Central District of California.

- Kathleen Wilkinson, an Idaho resident, purchased a used 2006 Acura MDX on April 23, 2009 in Oregon. Wilkinson's claims were transferred into the MDL from the Southern District of Florida.

### Pennsylvania Subclass

- Deborah T. Morgan, a Florida resident, purchased a new 2008 Honda Element in October 2008 in Florida. Morgan's claims were transferred into the MDL from the Southern District of Florida.

### Rhode Island Subclass

- Mary Hasley, a Rhode Island resident, purchased a new 2002 Honda Accord VXS on August 30, 2002 in Rhode Island. Hasley's claims were direct-filed into the MDL.

- Pamela Wilsey, a Rhode Island resident, purchased a used 2002 Honda Accord VLX in March 2010 in Rhode Island. Wilsey's claims were direct-filed into the MDL.

### Tennessee Subclass

- Sonya Annette Leonard, a North Carolina resident, purchased a new 2007 Honda Accord in spring 2007 in Tennessee. Leonard's claims were transferred into the MDL from the Western District of North Carolina.

- Rebecca Lew, a Tennessee resident, purchased a new 2004 Honda Civic in July 2004 in Tennessee. Lew's claims were direct-filed into the MDL.

- Dan Peoples, a Texas resident, purchased a new 2004 Honda Accord in April 2004 in Tennessee. Peoples's claims were transferred into the MDL from the Southern District of California.

## Texas Subclass

- Kelly Ritter, a Minnesota resident, purchased a used 2005 Honda Civic-LX on February 9, 2006 in Texas. Ritter's claims were transferred into the MDL from the Central District of California.

- Eric Rosson, a Florida resident, purchased a used 2007 Honda Accord in August 2007 in Texas. Rosson's claims were transferred into the MDL from the Southern District of Florida.

- Daniel N. Silva, a Texas resident, purchased a used 2004 Honda Pilot on December 1, 2006 in Texas. Silva's claims were direct-filed into the MDL.

## Virginia Subclass

- Kathryn A. Tillisch, a Virginia resident, purchased a new 2005 Honda Pilot LX on February 26, 2005 in Virginia. Tillisch's claims were transferred into the MDL from the Central District of California.

## West Virginia Subclass

- Jonathan Knight, a West Virginia resident, purchased a used 2006 Honda Pilot on January 6, 2009 in West Virginia. Knight's claims were transferred into the MDL from the Southern District of West Virginia.

## Washington Subclass

- Robert F. Goodwin, a Washington resident, purchased a used 2004 Honda CRV 4WD in 2005 in Washington. Goodwin's claims were transferred into the MDL from the Eastern District of Michigan.

## II.    LEGAL STANDARD

The Court incorporates the language on the legal standard used repeatedly in the prior orders dismissing in part some claims against other defendants.

## III.    ANALYSIS

### A.  Choice of Law Analysis

Reiterating the analysis from the Mazda Order, the following states' choice of law rules apply to Plaintiffs' claims because their cases were either filed in that state or filed directly into the MDL, in which case Florida's choice of law rules apply.

| | |
|---|---|
| **Alabama**: | Cervantes, Murphy, Tanner |
| **California**: | Whitehead, Cody, Go, Bae, Gamino, Hollywood, Klinger, McLeod, Nannery, Takeda, Zamora, Taylor, Archer, Boone, Palmieri, Lathouris, Killgo, Peoples, Ritter, Tillisch |
| **Florida**: | Cataldo, Flaherty, Ruth, Peaslee, Allen, Fuentes, Corteletti, Kopelman, Koehler, Holmes, Schneider, Rash, Martinez, Markowitz, Weisberg, Jorgensen, the Burds, Severio, Sayre-Scibona, Spiess, Dembeck, Klemer, Wilkinson, Hasley, Wilsey, Morgan, Rosson, Silva, Lew |
| **Georgia**: | Arnold, Watley |
| **Kentucky**: | Pedersen |
| **Michigan**: | Goodwin, Breschnev |
| **Missouri**: | Moehlman, Hodgson, Holland |
| **North Carolina**: | Avery, Young, Meiser |
| **New York**: | Garcia, Shank, Kazos, Tessier |
| **Pennsylvania**: | The Chens |
| **Tennessee**: | Leonard |
| **West Virginia**: | Knight |

### i.    Alabama, Georgia, North Carolina, and West Virginia Choice of Law

Alabama's choice of law rules for tort actions are based on "the traditional conflict rule of *lex loci delicti*" requiring a court to "determine the substantive rights of an injured party according to the law of the state where the injury occurred." *Norris v. Taylor*, 460 So. 2d 151, 152 (Ala. 1984). "The rule of *lex loci delicti* remains the law of Georgia." *Dowis v. Mud Slingers, Inc.*, 279 Ga. 808, 816 (Ga. 2005).

"North Carolina follows the *lex loci delicti* rule [law of the situs of the claim] in resolving choice of law for tort claims." *Terry v. Pullman Trailmobile*, 376 S.E.2d 47, 49 (N.C. Ct. App. 1989). In West Virginia, *[l]ex loci delicti* has long been the cornerstone of [its] conflict of laws doctrine." *Paul v. National Life*, 352 S.E.2d 550, 555 (W. Va. 1986).

### ii.    California Choice of Law

California applies a three-step "governmental interest analysis" to resolve choice of law issues for tort actions as follows: (1) the court determines whether the laws of the potentially affected jurisdiction are the same or different; (2) if the laws are different, the court examines each jurisdiction's interest in having its laws applied to the case to determine whether a true conflict exists; and (3) if a true conflict exists, the court compares the relative strength of each jurisdiction's interest in having its laws applied to the case to determine which state's interest would be more impaired if another state's laws were applied. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012). Yet, as a threshold matter, California recognizes that "the place of the wrong has the predominant interest." *Mazza*, 666 F.3d at 593-94. Accordingly, the "place of the wrong" is considered to be the state in which the alleged harm occurred, or where the vehicle was purchased.

### iii.    Florida, Kentucky, Missouri, and Tennessee Choice of Law

Florida employs the "most significant relationship test" when conducting a choice of law analysis in tort actions. *See Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). Courts consider four types of contacts to determine which state has the most significant relationship to the matter: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Id.* A court should evaluate these contacts "'according to their relative importance with respect to the particular issue.'" *Id.* (quoting § 145 of the Restatement (Second) of Conflict of Laws). However, the first contact is generally the most important, as "absent special circumstances, '[t]he state where the injury occurred would . . . be the decisive consideration in determining the applicable choice of law.'" *Pysca Panama, S.A. v. Tensar Earth Techs., Inc.*, 625 F. Supp. 2d 1198, 1220 (S.D. Fla. 2008).

"Kentucky also follows the 'most significant relationship' approach in tort and contract cases." *Kirilenko v. Kirilenko*, 505 S.W.3d 766, 769 (Ky. 2016). "Missouri courts apply the 'most significant relationship' test as set forth in Restatement (Second) of Conflict of Laws Section 188 when resolving choice of law issues." *Sheehan v. Northwestern Mut. Life Ins. Co.*, 44 S.W.3d 389, 396 (Mo. Ct. App. 2000). Tennessee courts also follow this approach. "Our review of the background and modern development of conflicts of law rules convinces us that the *lex loci delicti* doctrine should be abandoned. Today we announce a new rule—the 'most significant relationship' approach of the *Restatement (Second) of Conflict of Laws*." *Hataway v. McKinley*, 830 S.W.2d 53, 54 (Tenn. 1992).

### iv. Michigan Choice of Law

Michigan choice of law rules differ from those previously discussed. Michigan courts

> apply Michigan law unless a 'rational reason' to do otherwise exists. In determining whether a rational reason to displace Michigan law exists, [courts] undertake a two-step analysis. First [they] must determine if any foreign state has an interest in having its law applied. If no state has such an interest, the presumption that Michigan law will apply cannot be overcome. If a foreign state does have an interest in having its law applied, [they] must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests.

*Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich. 1997).

### v. New York Choice of Law

"In tort actions, New York applies a so-called interest analysis" approach to choice of law selection. *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992). In this analysis, courts seek to apply the law of the state that has the greatest interest in the litigation. "Under this formulation, the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Schultz v. Boy Scouts of America, Inc.*, 480 N.E.2d 679, 684 (N.Y. 1985).

### vi. Pennsylvania Choice of Law

Pennsylvania permits "a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 805 (Pa. 1964).

## B. Substantive Law Analysis

Applying the choice of law analysis from the above-listed states to each corresponding Plaintiff, the following substantive law applies to each Plaintiff's claims:

| | |
|---|---|
| **Alabama**: | Cervantes, Murphy, Tanner, Whitehead |
| **Arizona**: | Cody, Go, Pedersen |
| **California**: | Bae, Cataldo, Flaherty, Gamino, Hollywood, Kazos, Klinger, |

McLeod, Nannery, Ruth, Takeda, Zamora

**Connecticut**: Peaslee

**Florida**: Allen, Fuentes, Corteleti, Kopelman, Koehler, Holmes, Taylor, Tessier, Schneider, Rash, Martinez, Markowitz, Weisberg

**Georgia**: Arnold, Watley, Young

**Hawaii**: Archer, Jorgensen

**Illinois**: Breschnev

**Indiana**: Burd

**Louisiana**: Severio

**Massachusetts**: Sayre-Scibona

**Michigan**: Boone

**Minnesota**: Spiess

**Missouri**: Moehlman, Hodgson, Holland

**North Carolina**: Avery, Leonard, Meiser

**New Jersey**: Dembeck, Klemer

**New York**: Garcia, Palmieri

**Nevada**: Lathouris

**Ohio**: Shank

**Oregon**: Chens, Killgo, Wilkinson

**Pennsylvania**: Morgan

**Rhode Island**: Hasley, Wilsey

**Tennessee**: Lew, Peoples

**Texas**: Rosson, Ritter, Silva

**Virginia**: Tillisch

**West Virginia**:     Knight

**Washington**:     Goodwin

## C. Manifestation of Alleged Defect

Consistent with the Court's Mazda Order, the Court agrees with Plaintiffs' argument regarding manifestation. As stated in the Mazda Order, the Court's finding is limited to the motion to dismiss stage, taking as true Plaintiffs' allegations of a uniform defect based on the use of ammonium nitrate as a propellant. The Court notes that Defendants have raised the possibility of other causes and factors contributing to the airbag inflator malfunctions. Accordingly, these factors may be appropriately considered at the summary judgement stage.

## D. Honda's Knowledge

Consistent with the Court's Mazda Order, the Court finds that Plaintiffs have sufficiently alleged Honda's knowledge of the alleged inflator defect to satisfy the pleading requirements of Rule 9(b).

## E. Count 10 and Count 54-violation of the Song-Beverly Consumer Warranty Act

Honda moves to dismiss Counts 10 and 54 for violations of the Song-Beverly Consumer Warranty Act for breach of implied warranty of merchantability on behalf of the Nationwide and California Sub-Class, respectively. Honda argues "none of the Honda Plaintiffs who allegedly purchased their vehicles in California say they experienced an airbag rupture or allege any other manifestation of an alleged defect within one year (or for used cars, three months) of their purchase or lease." Following the reasoning in the Court's Mazda Order, the doctrine of fraudulent concealment tolls the statute of limitations with respect to implied warranty claims. *Sater v. Chrysler Group LLC*, No. EDCV 14–00700–VAP, 2015 WL 736273, at *8-9 (C.D. Cal. Feb. 20, 2015) (finding that fraudulent concealment can toll statute of limitations on Song-

Beverly Consumer Warranty Act claims). Because the Song-Beverly Consumer Warranty Act is a California statute, Count 10 is **DISMISSED** as to all Plaintiffs whose claims are not governed by California law and Count 54 can proceed as to all Plaintiffs whose claims are governed by California law.

### F. Count 14 and Count 53-violation of the California False Advertising Law

Honda moves to dismiss Count 14 and Count 53 for violations of the California False Advertising Law on behalf of the Nationwide and California Sub-Class, respectively, because "Plaintiffs have failed to identify with particularity any affirmative 'false advertising.'" Plaintiffs' claims, like Haklar's claim addressed in the Nissan Order, fail to sufficiently allege that Honda made a misstatement or omission of the type required under California's False Advertising Law. Some Plaintiffs even fail to allege that they viewed any kind of Honda advertising. Therefore, for the reasons stated in the Nissan Order, **Count 14** and **Count 53** are **DISMISSED** either because California law does not apply to their claims or their claims insufficiently allege the type of misstatement or omission required under the law.

### G. Count 47-violation of the Florida Deceptive and Unfair Trade Practices Act

Honda moves to dismiss Count 47 for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") as alleged by the Florida Consumer Sub-Class. Honda proffers three reasons Count 47 must be dismissed: (1) Plaintiffs have not alleged manifestation of the purported defect; (2) Plaintiffs fail to adequately allege their fraud-based claims pursuant to Rule 9(b)'s heightened pleading standard; and (3) Plaintiffs' claims are barred by Florida's four-year statute of limitations for FDUTPA claims. Honda's first two arguments are unavailing given the Court's ruling on the manifestation and knowledge issues, *supra*. As to the statute of limitations issue, the Court adopts its reasoning in the Mazda Order and denies Honda's motion to dismiss

Count 47 because the statute of limitations could be equitably tolled due to Honda's alleged fraudulent concealment. Count 47 can proceed as to all Plaintiffs whose claims are governed by Florida law.

## H. Count 49-violation of the Alabama Deceptive Trade Practices Act

Honda moves to dismiss Count 49 for violation of Alabama's Deceptive Trade Practices Act ("ADTPA") as alleged by the Alabama Consumer Sub-Class because it believes Plaintiffs did not provide timely pre-suit notice as required by the statute. While the Court finds ADTPA's pre-suit notice requirement applies, the Court also believes that Plaintiffs have sufficiently alleged the requirement was satisfied. Honda fails to note any particular deficiency in the notice received. Rather, Honda only takes issue with the allegations of notice, arguing Plaintiffs do not allege notice was provided prior to the filing of any action. Specifically, Plaintiffs have alleged that "Plaintiffs' counsel, on behalf of Plaintiffs, served Defendants with notice of their alleged violations of the Alabama DTPA relating to the Class Vehicles and/or the Defective Airbags . . . and demanded that Defendants correct or agree to correct the actions described therein." (D.E. 579 at 283). Viewing the allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have sufficiently alleged that they satisfied ADTPA's notice provision. For the foregoing reason, the Court denies Honda's motion to dismiss Count 49, which can proceed as to all Plaintiffs whose claims are governed by Alabama law.

## I. Count 3-violation of Magnuson-Moss Warranty Act and Counts 62, 66, 69, 71, 73, 76, 78, 80, 81, 90, 92, 98, and 103-violations of state implied warranty of merchantability claims

Honda moves to dismiss various counts alleging violations of different states' implied warranty of merchantability laws. Honda argues the "warranty provided with new vehicles limits the duration of any implied warranties, including merchantability, to the term of the express

warranty—three years or 36,000 miles, whichever comes first" and that Plaintiffs' express warranties expired because their vehicles are 2001-2008 models. Plaintiffs respond (1) that they adequately alleged that any durational limits on the New Vehicle Limited Warranties and associated implied warranties are unconscionable, and therefore unenforceable; and (2) that they adequately alleged that Honda breached the implied warranty within the warranty period because the inflator defect existed in the vehicles—and Honda knew about the defect at the time of sale. Following the analysis from the Mazda Order, the Court denies Honda's motion to dismiss Counts 62, 66, 69, 71, 73,[7] 76, 78, 80,[8] 81, 90, 92, 98, 103 and their derivative Magnuson-Moss Warranty Act claims.

## J.  Count 15 and Count 55-Negligent Failure to Recall

Honda moves to dismiss Count 15 and Count 55, negligent failure to recall, because Plaintiffs seek relief solely for alleged economic injuries on behalf of the Nationwide Consumer Class and California Consumer Sub-Class, respectively. For the reasons discussed in the Court's

---

[7]  Honda argues the Michigan implied warranty claim and its derivative Magnuson-Moss Warranty Act claim should be dismissed because there is no privity between the Michigan Sub-Class and Honda as required by a district court case in Michigan, *Harnden v. Ford Motor Co.*, 408 F. Supp. 2d 315, 322 (E.D. Mich. 2005). However, [Michigan district court] cases are not binding on this court and do not have the substantial weight of the decisions of the Michigan Supreme Court and the Michigan Court of Appeals on an issue of Michigan law." *Pack v. Damon Corp.*, 434 F.3d 810, 820 (6th Cir. 2006). In sum, "Michigan has abandoned the privity requirement for implied-warranty claims." *Id.* Thus, the Court also denies Honda's motion to dismiss Count 73 and its derivative Magnuson-Moss Warranty Act claim on that ground.

[8]  Honda also argues that the statute of limitations on the Nevada and Pennsylvania implied warranty claims have expired, and that they—along with derivative Magnuson-Moss Warranty claims—should be dismissed. The Court addressed the statute of limitation issue with respect to implied warranty claims under Nevada and Pennsylvania law in its Toyota Order. *See* D.E. 1202 at 26-29. Thus, the Court also denies Honda's motion to dismiss Count 80 and Count 90 on that ground.

BMW Order,[9] the economic loss rule applies to negligent failure to recall claims brought under California law. Thus, **Count 15** and **Count 55** are **DISMISSED**.

K. **Count 59, Count 70, and Count 102- violations of the Georgia Fair Business Practices Act, Massachusetts Consumer Protection Act, and West Virginia Consumer Credit and Protection Act**

Honda moves to dismiss Count 59, Count 70, and Count 102 for failure to provide pre-suit notice as required by their respective states' statutes. Viewing the allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have sufficiently alleged that they satisfied the notice provision because Honda fails to note any particular deficiency in the notice received and takes issue only with the allegations of notice. For the foregoing reason, the Court denies Honda's motion to dismiss Count 59, Count 70, and Count 102.

L. **Count 11-Unjust Enrichment**

Honda moves to dismiss Count 11 for unjust enrichment as alleged by all Plaintiffs. For the reasons stated in the Mazda Order—i.e. because Plaintiffs have alleged that all applicable warranties are procedurally and substantively unconscionable and are therefore not enforceable and that Plaintiffs have no adequate remedy at law—the Court finds that at the motion to dismiss stage, Plaintiffs have sufficiently alleged that the Named Plaintiffs do not have an adequate remedy at law. Accordingly, the Court does not dismiss Count 11 under any state's law on that ground. Instead, it analyzes the sufficiency of each Plaintiff's claim under the substantive law that applies to them only if they conferred a benefit on Honda by purchasing their vehicles directly from a Honda dealership. Thus, the Court does not address unjust enrichment under the law of all states that are applicable to Plaintiffs if no Plaintiff from that state purchased their vehicle from a Honda dealership.

---

[9] *See* D.E. 1256 at 29-30.

### i.  Alabama Law

In Alabama, "[t]o prevail on a claim of unjust enrichment, the plaintiff must show that the 'defendant holds money which, in *equity* and *good conscience*, belongs to the plaintiff *or* holds money which was improperly paid to defendant because of *mistake* or *fraud*.'" *Wyeth v. Blue Cross Blue Shield of Ala.*, 42 So.2d 1216, 1222 (Ala. 2010) (citing *Dickinson v. Cosmos Broad. Co.*, 782 So.2d 260, 266 (Ala. 2000)). Following the reasoning in the Court's Mazda Order, the Court denies Honda's motion to dismiss Cervantes's and Murphy's claims, but because Tanner and Whitehead did not purchase their vehicles at a Honda dealership, their claims are **DISMISSED**.

### ii.  Arizona Law

In Arizona, "[a]n unjust enrichment claim requires proof of five elements: '(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law.' (internal quotations omitted). In short, unjust enrichment provides a remedy when a party has received a benefit at another's expense and, in good conscience, the benefitted party should compensate the other.'" *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 230 Ariz. 314, 318 (Ariz. 2012). Following the Mazda Order, the Court denies Honda's motion to dismiss Cody's claim and grants Honda's motion to dismiss Go's and Pedersen's claims because they did not purchase their vehicles at a Honda dealership. Accordingly, their claims are **DISMISSED**.

### iii.  California Law

California recognizes the principle behind unjust enrichment by requiring "restitution if [a defendant] is unjustly enriched at the expense of another. The recipient of the benefit is liable

only if the circumstances are such that, as between two persons, it is unjust for the recipient to retain it." *City of Chula Vista v. Gutierrez*, 143 Cal. Rptr. 3d 689, (Cal. Ct. App. 2012). The unjust enrichment claims as to the following Plaintiffs can proceed because their cars were purchased from Honda dealerships: Bae, Cataldo, Gamino, Hollywood, McLeod, Takeda, and Zamora. Flaherty's, Kazos's, Klinger's, Nannery's, and Ruth's claims are **DISMISSED** because their cars were not purchased from Honda dealerships.

### iv. Connecticut Law

In Connecticut, "[p]laintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." *Schirmer v. Souza*, 126 Conn. App. 759, 762 (Conn. App. Ct. 2011). The Court therefore denies Honda's motion to dismiss Peaslee's unjust enrichment claim because she purchased her vehicle at a Honda dealership.

### v. Florida Law

Under Florida law, "[a] claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012). Plaintiffs have sufficiently alleged that Holmes, Koehler, Kopelman, Rash, Tessier, and Weisberg did confer a direct benefit on Honda by purchasing their vehicles from a Honda dealership. Allen's, Corteleti's, Fuentes's, Markowitz's, Martinez's, Schenider's, and Taylor's claims are **DISMISSED** because they did not purchase their vehicles at Honda dealerships.

### vi.     Georgia Law

"A claim of unjust enrichment will lie if there is no legal contract and 'the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefited party equitably ought to return or compensate for.'" *Jones v. White*, 311 Ga. App. 822, 827 (Ga. App. 2000) (citing *Smith v. McClung*, 215 Ga. App. 786, 789 (1994)). "The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received." *Jones*, 311 Ga. App. at 827 (citing *Scott v. Mamari Corp.*, 242 Ga. App. 455, 458 (Ga. App. 2000)). Based on the same analysis in the Mazda Order, the Court denies Honda's motion to dismiss Watley's claim. Arnold's and Young's claims are **DISMISSED** because their vehicles were not purchased at Honda dealerships.

### vii.    Hawaii Law

"[A] claim for unjust enrichment requires only that a plaintiff prove that he or she 'confer[red] a benefit upon' the opposing party and that the 'retention [of that benefit] would be unjust." *Wagner v. World Botanical Gardens, Inc.*, 268 P.3d 443, 455 (Haw. Ct. App. 2011). As previously discussed, Plaintiffs cannot prove they conferred a benefit on Honda without having purchased their vehicles from Honda dealerships. But both Archer and Jorgensen did purchase their vehicles directly from a dealership. Therefore, Honda's motion to dismiss their claims is denied.

### viii.   Illinois Law

"To state a claim for unjust enrichment, 'a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.'" *Stefanski v.*

*City of Chicago*, 28 N.E. 3d 967, 980 (Ill. App. Ct. 2015). Because Breschnev purchased his Acura at an Acura dealership, his unjust enrichment claim can proceed.

### ix.    Indiana Law

"To recover under an unjust enrichment claim, a plaintiff must generally show that he rendered a benefit to the defendant at the defendant's express or implied request, that the plaintiff expected payment from the defendant, and that allowing the defendant to retain the benefit without restitution would be unjust." *Reed v. Reid*, 980 N.E. 2d 277, 296 (Ind. 2012). Because the Burds purchased their Honda at a Honda dealership, their unjust enrichment claim can proceed.

### x.    Massachusetts Law

"A plaintiff asserting a claim for unjust enrichment must establish not only that the defendant received a benefit, but also that such a benefit was unjust, 'a quality that turns on the reasonable expectations of the parties.'" *Metropolitan Life Ins. Co. v. Cotter*, 984 N.E. 2d 623, 644 (Mass. 2013). Sayre-Scibona purchased her vehicle from a Honda dealership. Therefore, the Court denies Honda's motion to dismiss her unjust enrichment claim.

### xi.    Nevada Law

"Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience (internal citations omitted). This court has observed that the essential elements of unjust enrichment 'are a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit.'" *Topaz Mut. Co., Inc. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992). Because Lathouris

purchased his vehicle at a Honda dealership, the Court denies Honda's motion to dismiss his claim.

### xii.    New Jersey Law

In New Jersey, "[t]here are two basic elements of an unjust enrichment claim. The plaintiff must 'show both that defendant received a benefit and that retention of that benefit without payment would be unjust.'" *D.R. Horton Inc. - New Jersey v. Dynastar Development, L.L.C.*, No. MER-L-1808-00, 2005 WL 1939778, at *18 (N.J. Aug. 10, 2005). *See VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519 (1994)). Because both Dembeck and Klemer purchased their vehicles from a Honda dealership, the Court denies Honda's motion to dismiss their claims.

### xiii.    Ohio Law

To make an unjust enrichment claim in Ohio, a plaintiff must establish: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Columbus Steel Castings Co. v. King Tool Co.*, No. 08AP-385, 2008 WL 5104786, at *3 (Ohio Ct. App. Dec. 4, 2008). The Court denies Honda's motion to dismiss Shank's unjust enrichment claim because he purchased his car from a Honda dealership.

### xiv.    Oregon Law

"The elements of the quasi-contractual claim of unjust enrichment are (1) a benefit conferred, (2) awareness by the recipient that she has received the benefit, and (3) it would be unjust to allow the recipient to retain the benefit without requiring her to pay for it." (internal quotations omitted). In the context of an unjust enrichment claim, the Oregon Supreme Court has defined a 'benefit' broadly, citing the Restatement of Restitution § 1 (1937)." *Wilson v. Gutierrez*, 323 P.3d 974, 978 (Or. Ct. App. 2014). Killgo has plausibly alleged that he did confer

a direct benefit on Honda through a Honda dealership. Wilkinson's and the Chens's claims are **DISMISSED** because they did not purchase their vehicles at Honda dealerships.

### xv. Rhode Island Law

"Under Rhode Island law, unjust enrichment is not simply a remedy in contract and tort but can stand alone as a cause of action in its own right (internal citations omitted). To recover for unjust enrichment, a claimant must prove: (1) that he or she conferred a benefit upon the party from whom relief is sought; (2) that the recipient appreciated the benefit; and (3) that the recipient accepted the benefit under such circumstances 'that it would be inequitable for [the recipient] to retain the benefit without paying the value thereof.'" *Dellagrotta v. Dellagrotta*, 873 A.2d 101, 111 (R.I. 2005) (citing *Bouchard v. Price*, 694 A.2d 670, 673 (R.I. 1997)). Hasley purchased his vehicle from a Honda dealership, but Wilsey did not. Thus, Hasley's unjust enrichment claim can proceed and Wilsey's claim is **DISMISSED**.

### xvi. Tennessee Law

In Tennessee, "[t]he elements of an unjust enrichment claim are: 1) '[a] benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof. The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust.'" *Bennet v. Visa U.S.A., Inc.*, 198 S.W.3d 747, 755 (Tenn. Ct. App. 2006) (citations omitted). Because Leonard, Lew, and Peoples all purchased their vehicles from Honda dealerships, the Court denies Honda's motion to dismiss their claims.

### xvii.  Texas Law

Texas courts have held that "[u]njust enrichment, is not an independent cause of action but rather characterizes the result of a failure to make restitution benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay." *Foley v. Daniel*, 346 S.W.3d 687, 690 (Tex. Ct. App. 2009) (citation omitted). However, "[i]n some circumstances, overpayments under a valid contract may give rise to a claim for restitution or unjust enrichment." *Id.* at 690-91 (citation omitted). Because the Court has only made a determination as to the sufficiency of Plaintiffs' claims under a motion to dismiss standard, and not whether Plaintiffs actually overpaid for their vehicles, their claims should not be dismissed at this stage. Such inquiry would be appropriate at the summary judgment stage or trial. Therefore, the Court denies Honda's motion to dismiss Count 11 as to Ritter and Rosson but grants the motion as to Silva because he did not purchase his vehicle at a Honda dealership. Accordingly, Silva's claim is **DISMISSED**.

### xviii.  Virginia Law

"A cause of action for unjust enrichment in Virginia 'rests upon the doctrine that a man shall not be allowed to enrich himself unjustly at the expense of another'" (internal citation omitted). Specifically, the moving party must typically demonstrate the existence of: (1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value." *Virginia Mun. Group Self-Insurance Ass'n v. Crawford*, No. CH03-59, 2004 WL 3132010, at *5 (Va. Cir. Ct. Nov. 24, 2004). Because Tillisch purchased his vehicle at a Honda dealership, his claim can proceed.

### xix. West Virginia Law

In West Virginia, "[t]he elements of an unjust enrichment claim are: '(1) a benefit conferred upon the [defendant], (2) an appreciation or knowledge by the defendant of such benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value' (internal citations omitted). West Virginia specifically requires that the benefits were 'received and retained under such circumstance that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor.'" *Employer Teamsters v. Bristol Myers Squibb Co.*, 969 F.Supp.2d 463, 471 (S.D. W. V. 2013) (citing *Copley v. Mingo Cnty. Bd. of Educ.*, 466 S.E.2d 139 (W. Va. 1995)). Because Knight purchased his vehicle at a Honda dealership, the Court denies Honda's motion to dismiss his unjust enrichment claim.

### xx. Washington Law

In Washington, "[t]hree elements must be established for unjust enrichment: (1) there must be a benefit conferred on one party by another; (2) the party receiving the benefit must have an appreciation or knowledge of the benefit; and (3) the receiving party must accept or retain the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value." *Dragt v. Dragt/De Tray, LLC*, 139 Wash. App. 560, 576 (Wash. Ct. App. 2007). Goodwin's claim meets this threshold because he purchased his vehicle from a Honda dealership. Thus, the Court denies Honda's motion to dismiss his claim.

## IV.    CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Honda's Motion to Dismiss [D.E. 616] is **GRANTED IN PART** and **DENIED IN PART**. Specifically, Count 12, 13, 14, 15, 48, 53, 55, and 86 are **DISMISSED.** Count 3 is **DISMISSED** as asserted by the Florida and North Carolina Plaintiffs. Honda's Motion to Dismiss Count 10 and Count 11 is **GRANTED IN PART AND DENIED IN PART**.

**DONE AND ORDERED** in Chambers, Miami, Florida, this _____ day of May, 2017.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of record