

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

MDL No. 2599
Master File No.: 15-MD-02599-MORENO
S.D. Fla. Case No. 1:14-cv-24009-MORENO
Honorable Fedorico A. Moreno

| | |
|---|---|
| IN RE: TAKATA AIRBAG PRODUCT LIABILITY LITIGATION | OBJECTION OF CAMERON JAN TO MAZDA SETTLEMENT AND CLASS COUNSELS' FEE REQUESTS |
| This document relates to: ALL ECONOMIC LOSS ACTIONS AGAINST MAZDA DEFENDANTS | |

I.

**INTRODUCTION AND OBJECTION PREREQUISITES**

A.   INTRODUCTION

Cameron Jan, a Class Member, hereby objects to the proposed settlement of claims against Mazda in the Takata Airbag Product Liability Litigation on the grounds that: (1) Class Counsel seeks to coopt and recover fees on certain benefits already available to Class Members by action previously taken by the U.S. Department of Transportation/National Highway Traffic Safety Administration ("NHTSA"), which benefits are not new to the Class, and in connection with which Class Counsel has performed no significant work nor provided any additional value; (2) there exists conflict among Class Members and separate, independent counsel for sub-classes should

Page 1

have been provided, without which there can have been no adequate advocacy of, or negotiation relating to, the varying economic interests of respective sub-classes; and (3) the various outstanding proposed settlements in the captioned matter (i.e. those including Mazda, along with a number of other auto manufacturers) are all effective mirror images of one another and the gross proceeds of settlement total in excess of $1.1 billion, a mega-fund settlement by any measure, yet counsel seeks attorneys' fees of 30% of the gross settlement - a percentage fee that substantially exceeds the bounds of reason and offends the applicable analytical rules for setting common fund fees in this case.

B.   CLASS MEMBERSHIP/STANDING

Objector Cameron Jan's full name, home address, and phone number are: Cameron Kendrick Hondo Jan, 5464 Carlsbad Boulevard, Carlsbad, California 92008; phone: (760) 683-5851. Cameron is the owner of a 2005 Mazda 6, VIN 1YVFP80C455M66906, registered in the State of California. He received a notice from the Settlement Administrator in the "Auto Airbag Settlement". See Exhibit 1, attached. A search of the settlement website at www.autoairbagsettlement.com, including by link to his vehicle's VIN number, shows his vehicle is a "Subject Vehicle" as that term is used in the Class definition and the settlement notice. A copy of the current vehicle registration and Cameron Jan's California Driver's License are attached as Exhibit 2. As a Class Member he has standing to object to the Mazda Settlement.

C.   PRIOR OBJECTIONS

Cameron Jan has made one prior objection, that in the matter of *In re Google Referrer Header Privacy Litigation*, Case No. 5:10-CV-4809-EJD (USDC, Northern District of California, San Jose Division). His objection was filed with the Court on August 15, 2014, and was overruled by the Court on March 31, 2015. He did not take an appeal of the District Court's ruling. A copy

of the District Court's order granting final approval, including a ruling on objections, in *In re Google Referrer Header Privacy Litigation* is attached as Exhibit 7.

D.  OBJECTOR'S COUNSEL

Cameron Jan is represented by his father Kendrick Jan, an attorney licensed to practice law in the State of California, but not a member of the bar of the USDC, Southern District of Florida. Attorney Jan does not intend to appear in this litigation, but reserves the right to seek admission *pro hac vice* at a later date and to appear at the October 25, 2107 Fairness Hearing if so ordered by the Court. His business address and phone are: 402 West Broadway, Suite 2700, San Diego, CA 92101; phone: (619) 231-7702.

Attorney Jan has himself within the last five years been an individual objector in one case, *Demmick, et al. v. Cellco Partnership, et al.*, USDC, District of New Jersey, Civil Action No. 06-2163 (JLL). Copies of the District Court's settlement approval order and opinion are attached as Exhibits 8 and 9, respectively.

Attorney Jan has also appeared as counsel to an objector in one case, *In Re Hydroxycut Marketing and Sales Practices Litigation*, USDC, Southern District of California, Case Number 3:09-md-02087-BTM-KSC. Attorney Jan substituted into the case following submission of the client's objection made through another attorney's office. Attorney Jan appeared in court two or three times for oral argument in the case. Southern District of California Presiding Judge Barry Ted Moskowitz denied final approval of the objectionable settlement, and attorney Jan had no further involvement in the case. The matter was thereafter settled on different terms, and an Amended Stipulation of Settlement was later filed and approved as final.

E. <u>NO AGREEMENTS WITH THIRD PARTIES</u>

No agreements relating to the objection or process of objecting, whether written or oral, exist between Cameron Jan or his counsel, and any other person or entity.

F. <u>OBJECTOR DOES NOT INTEND TO APPEAR OR CALL WITNESSES</u>

Objector Cameron Jan does not at this time intend to appear, or call witnesses, at the Fairness Hearing, but reserves the right to, should the Court so order, have counsel present to make oral argument consistent herewith.

## II.

### CERTAIN BENEFITS OF THE SETTLEMENT ARE ILLUSORY AND WERE LARGELY ACHIEVED PRIOR TO THE SETTLEMENT THROUGH EFFORTS OF THE NHTSA; ATTORNEYS' FEES SHOULD NOT BE AWARDED FOR BENEFITS ACHIEVED BY THE GOVERNMENT PRIOR TO THE SETTLEMENT.

The Takata recall has been the largest and most complex automotive recall in U.S. history. The defective airbags, present in over forty million vehicles nationwide, have created a public safety crisis. The pending motions in the captioned matter imply the Class Action was largely responsible for uncovering the crisis, and further that the settlements themselves will achieve important safety goals for the public and benefits for consumers. Both of these propositions are false.

The work of uncovering and understanding the defects and risks presented by the Takata airbags was largely performed by the NHTSA before this Class Action was filed. Review of the NHTSA website: "Recall Spotlight: Takata Air Bags" (available at https://www.nhtsa.gov/recall-spotlight/takata-air-bags) provides evidence of the intensive and expensive scientific investigations conducted by the government. For example, the Third Amendment to the Coordinated Remedy Order ("TACRO"), dated December 9, 2016, states that "the NHTSA has,

among other things, received briefings from three independent research organizations, each of which had undertaken scientific evaluations of Takata's frontal air bag inflators." See Exhibit 4, page 2.

A substantial component of the proposed Settlement's purported value to the Class is labeled an "Outreach Program" intended to "maximize completion of the recall remedy" and a "Customer Support Program to help with repairs associated with affected Takata airbag replacement inflators." See Exhibit 1, under the heading "What Are the Settlement Terms." These aspects of the Outreach Program, however, are redundant of the NHTSA's Coordinated Remedy Order ("CRO"), dated November 3, 2015, and the TACRO. See Exhibits 3 and 4, respectively. As part of these orders, manufacturers were required to submit recall engagement plans that include innovative methodologies and techniques for maximizing recall completion rates. The NHTSA also appointed an Independent Monitor to develop and implement additional recommendations at enhancing completion rates. A letter dated December 23, 2016 from the Independent Monitor shows that the agency, the independent monitor and the manufacturers were already working by that time together to achieve the goals of the "Outreach Program" of the Settlement Benefits. See Exhibit 5. Consistent with the CRO/TACRO, the NHTSA has implemented and continued its Coordinated Remedy Program ("CRP") and has, among other things, investigated and defined the defect in the subject product, established the year, make and model of vehicles outfitted with the subject product, identified the VIN numbers and total number of Subject Vehicles, provided recommendations to vehicle manufacturers subject to the CRO to improve processes, procedures, communications, and outreach to improve recall completion rates, monitored supply/availability of replacement parts, and received data regarding recall and repairs

of Subject Vehicles. The Settlement website even links directly to the NHTSA safercar.gov website to inform of/confirm whether a vehicle owned by notice recipients is a Subject Vehicle.

Plaintiffs' lawsuit was filed only after the NHTSA investigation had long been pending, and settlements with the Defendants were obtained only after the Defendants themselves – consistent with the CRO and TACRO – had undertaken extensive customer outreach programs to recall and replace the defective airbags.

It seems the Settlement's Outreach Program is a handy way to leverage the work of the NHTSA to the benefit of Class Counsel without really adding meaningfully to the effort to maximize completion of the recall remedy or practically bringing new help with repairs associated with affected Takata airbag replacement inflators. The Settlement appears to create a second bureaucracy, a "Settlement Special Administrator" to oversee the Outreach Program which will essentially play a redundant role to that of the NHTSA Independent Monitor.

If the Settlement Outreach Program is in substantial part reliant on or redundant of the prior investigative, administrative and oversight efforts of the NHTSA, then Class Counsel's attorneys' sought fees should be adjusted accordingly. The first *Johnson* factor for use in analyzing a sought class action attorneys' fee is time and labor. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974). While Class Counsel seems not to have provided a report of the hours spent in this case, it does seem to have laid claim to a great deal of work performed and remedies provided by the federal government. Thus, it would seem the "time and labor" attributable to those services performed and benefits provided by the NHTSA should be carved out of the settlement for purposes of determining the value upon which the attorneys' fee is calculated.

As well, receiving fees based on the cost/value of the Outreach Program is problematic because of a lack of benefit to Class Members. While Class Counsel describes the Outreach

Program as an important settlement benefit to Class Members, in reality the Outreach Program is a benefit to Defendants, and only attaches a Settlement value to those actions and promised efforts already required of the Defendants. The CRO and TACRO require the Defendants to notify owners of their vehicles of the recall program and to fix the defective vehicles, by so doing the Defendants comply with NHTSA orders and limit their own liability. The Outreach Program is a benefit for the Defendants; describing it as a benefit to consumers, and based thereon seeking to take money from the Class in the form of attorneys' fees is an overreach by Class Counsel.

## III.

### THE SETTLEMENT DOES NOT FAIRLY CONSIDER THE DISTINCT INTERESTS OF SUBCLASSES

As noted in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 481-82 (1980), "The members of the class . . . are at least the equitable owners of their respective shares in the recovery." See also *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) ("[T]he common fund doctrine ensures that each member of the winning party contributes proportionately to the payment of attorneys' fees."). This rule of proportionality allows that class members should only pay common fund percentage fees out of that share of a recovery they actually are intended to enjoy. Class Counsel's sought fees in the instant settlement do not, however, consider the disparate interests of various subclasses to the settlement.

For instance, ten percent of the Mazda settlement is credited to Mazda to allow its payment of a "Rental Car/Loaner Program." Exhibit 1, first paragraph. Whether or not a Class Member chooses to accept use of a rental or loaner vehicle, the available cash component of the settlement is reduced by attorneys' fees calculated in part on the amount of the ten percent credit for rental/loaner cars. For the Mazda settlement the fee on the $7,580,500 rental/loaner credit would

be $2,274,150, no part of which should be paid by a Class Member who doesn't use a rental/loaner car paid for/reimbursed/provided by Mazda.

As stated by the Supreme Court in *Amchem*:

> Whether or not the interests of subclasses, defined according to benefit actually obtained under the settlement, have been adequately advocated and protected must be considered in approving the settlement. The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)

In the instant case, those who don't use a rental car should not be made to contribute to the attorneys' fees of those who do.

## IV.

### ATTORNEYS' FEES SHOULD NOT BE CALCULATED ON DOLLARS CREDITED TO DEFENDANT WHERE THERE IS A RETENTION/REVERSION TO DEFENDANT, AND NO PROVISION FOR DISTRIBUTION TO CLASS MEMBERS OF UNUSED CREDITED RENTAL AND LOANER CAR MONIES

The Mazda Settlement Agreement allows Mazda a credit equal to ten percent of the gross settlement for use in connection with Mazda's program of providing rental or loaner cars to Class Members during recall repairs. The Settlement, however, does not provide an accounting mechanism to track Mazda's actual expenses associated with the rental/loaner car program, and section III.C.3 of the Mazda Settlement Agreement allows Mazda to retain any money out of the ten percent credit not consumed by rental/loaner car program. Nonetheless, Class Counsel is asking that attorneys' fees be calculated on monies that may be either retained by or revert to Mazda. Thus, Class Counsel is prematurely seeking a fee on monies that may never be enjoyed by any Class Member.

Further, crediting the value of the loaner program to the Settlement is inappropriate for another reason – it is only a thinly disguised effort to inflate the settlement and increase the attorneys' fees. As indicated by Exhibit 6, Mazda already routinely provides loaner cars for warranty related repairs lasting more than four hours. Many class members already used loaner cars while their vehicle was being repaired, but did so based on Mazda's existing loaner car policy not because of the Settlement.

V.

### THE MAZDA SETTLEMENT IS ONLY PART OF SETTLEMENT OF THE CAPTIONED MATTER AND THE GROSS SETTLEMENT REPRESENTS A MEGA-FUND, REQUIRING NOTICE OF COLLECTIVE SETTLEMENT AND A FEE ANALYSIS THAT CONSIDERS A MEGA-FUND RECOVERY

A.   OBFUSCATION OF FACTS OF SETTLEMENT AND SOUGHT ATTORNEYS' FEE

The notice sent on the Mazda settlement states "A Settlement of $75,805,050 has been reached in a class action lawsuit alleging that [Mazda] manufactured and sold vehicles that contained allegedly defective airbags…" See Exhibit 1, first paragraph.

A problem with the notice is that a settlement of $75,805,050 is not the settlement reached in the class action. Rather, it is a part of the settlement of the class action, that part to which owners of Mazda Subject Vehicles can make claim. The pursuit of claims against Mazda is a part of the larger captioned matter brought against several defendants (i.e. Mazda, BMW, Honda, Nissan, Subaru, and Toyota). The entire suit has now been conditionally settled as to six defendants, with a combined settlement value of $1.135 billion. The gross settlement of the captioned class action for an amount in excess of $1.1 billion renders the settlement a mega-fund. Class Counsel has sought a 30% fee out of the Mazda component, as well as all other components of the class action settlement in the captioned matter. The notice to Mazda owners, however, doesn't indicate the

Mazda settlement is a part of a mega-fund, instead it suggests the entire case is concluded for a total of $75 million, thus inviting a blind eye to the overreach of Class Counsel's request for a 30% attorneys' fee out of a mega-fund recovery.

By bringing separate motions for approval of the respective settlements with the separate defendants, Class Counsel is obscuring the fact of the larger settlement and inviting confusion among Class Members. The pending Omnibus Motion for Final Approval of the Mazda Settlement should be denied for lack of adequate notice to Class Members.

B. THE PROPOSED SETTLEMENT OF THE CLASS ACTION CREATES A MEGA-FUND AND FEES SHOULD BE ADJUSTED ACCORDINGLY

"There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). "The factors which will impact upon the appropriate percentage to be awarded as a fee in any particular case will undoubtedly vary. We agree with the Tenth Circuit that the *Johnson* factors continue to be appropriately used in evaluating, setting, and reviewing percentage fee awards in common fund cases." *Supra* at 775. Among others, the *Johnson* factors include the "time and labor required", the "novelty and difficulty of the questions involved", the "customary fee", the "undesirability" of the case, and "awards in similar cases." *Supra* at 775, fn. 3.

The captioned matter has been pending for a relatively brief three years, during which the work of NHTSA was being tracked and leveraged by Class Counsel. The hours actually expended in pursuing the case, and the novelty and difficulty of the questions involved were substantially moderated by the efforts of NHTSA and the acquiescence of named Defendants.

The customary fee in a mega-fund case is lower than the common fund benchmark of 20%-30%. As described by Newberg:

The mega-fund approach holds that courts should award lower fee percentages in large fund cases. The Second[3] and Ninth Circuits[4] appear to have endorsed this idea, albeit while simultaneously referencing a lodestar cross-check, which is a distinct approach for the reasons explained below. The Seventh Circuit, on the other hand, opposes the mega-fund approach.[5] The Third Circuit has held that the effect of the mega-fund approach (awarding lower fee percentages in larger fund cases) might be realized through proper application of the normal multifactor fee methodology.[6] Despite this differing treatment, the mega-fund approach has garnered enough support that the *Manual for Complex Litigation* reported, in 2004, that "in 'mega-cases' in which large settlements or awards serve as the basis for calculating a percentage, courts have ***often*** found considerably lower percentages of recovery to be appropriate. One court's survey of fee awards in class actions with recoveries exceeding $100 million found fee percentages ranging from 4.1% to 17.92%. (Emphasis in the original.)"   Applying the percentage method—Reasonableness of percentage—Mega-fund approach, Newberg on Class Actions § 15:81 (5th ed.)

Regarding "undesirability" of the case, the question can be easily answered by the fact that the NHTSA has performed nearly all the work necessary to establish liability, along with a quick check of the impressive roster of high power class action firms involved in the prosecution of the case.

In the instant case, even if the court is to accept that an ordinary common fund benchmark of 25% should apply to the instant settlement (i.e. rather than some number in the common 4.1% - 17.92% mega-fund range), the benchmark is only the starting place.  An analysis of the *Johnson* factors would suggest a significant downward adjustment in the percentage fee would be appropriate, rather than Class Counsel's sought substantial and unwarranted upward adjustment.

C.     A LODESTAR CROSSCHECK IS APPROPRIATE

The first *Johnson* factor calls for an analysis of time and labor expended by counsel, in effect calling for a lodestar analysis or crosscheck. Florida law limits class action fees to no more than 500% of counsel's lodestar. *Kuhlein v. Dept. of Revenue*, 662 So. 2d 309, 315 (Fla. 1995) where the Florida Supreme Court states "We emphasize that 5 is a maximum multiplier, and what multiplier, if any, depends on the particular case."

Though this is a multi-district litigation involving consumers in all 50 states and the argument against application of Florida law may be made, Federal Courts in the Eleventh Circuit have frequently seen fit to use a lodestar analysis as a crosscheck against a common fund percentage fee, though they have not necessarily been constrained by the Florida Supreme Courts 5x lodestar rule set forth in *Kuhlein, supra*. Nonetheless, as described by this Court *Pinto v. Princess*, "lodestar multiples 'in large and complicated class actions' range from 2.26 to 4.5, while 'three appears to the average.'" *Pinto v. Princess Cruise Lines Ltd.*, 513 F. Supp.2d 1334, 1343 (S.D. Fla. 2007).

Class Counsel has provided no accounting of time and labor consumed by the Mazda Settlement or any of the settlements in the captioned matter. A collective fee of hundreds of millions of dollars (or even the nearly $23 million sought out of the Mazda settlement component) demands some practical examination of the time and labor it took to obtain the settlement(s).

VI.

**OBJECTION TO OBJECTION REQUIREMENTS**

Finally, objection is made to the requirements imposed on Class Members wishing to object to the Settlement. These requirements, which are particularly burdensome on experienced objector counsel, interfere with a Class Member's ability and/or willingness to object and may

have a chilling effect on a Class Member's Rule 23 sanctioned participation in the development and critique of a settlement. Class action settlements routinely compromise the rights of absent class members, but class members have a due process right to object, as codified in FRCP Rule 23(e)(5). Their right to be heard on class action settlements is a constitutional right, and procedures that interfere with or inhibit that right should not be sanctioned by this Court.

## VII.
## CONCLUSION

For the foregoing reasons, this Court should deny the proposed Settlement for failure to define and protect through independent representation subclasses with disparate interests, and for failure to provide accurate and complete notice regarding the Settlement being only a piece of a larger mega-fund recovery. Alternatively, this Court should award Class Counsel a common fund contingent attorneys' fee calculated on benefits actually recovered through efforts of Class Counsel and enjoyed by Class Members, within applicable mega-fund standards, and subject to the constraints of a practical lodestar crosscheck.

Objector signs this objection as directed by sub-paragraph 25.xiii of this Court's June 9, 2017 Order Preliminarily Approving Class Settlement and Certifying Settlement Class.

Date: September 25, 2017

_____
Cameron Jan, Objector

Respectfully submitted,

Date: September 25, 2017

_____
Kendrick Jan, CA State Bar No. 105149
Attorney for Objector Cameron Jan
Jan & Jan, Attorneys
402 West Broadway, Suite 2700
San Diego, CA 92101
Phone: (619) 231-7702
Fax: (619) 230-1839
kendrickjan@hotmail.com

Page 13

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing OBJECTION OF CAMERON JAN TO MAZDA SETTLEMENT AND CLASS COUNSELS' FEE REQUESTS, along with Exhibits 1-9, has been served by U.S. Mail, First Class Postage prepaid, and via Overnight Carrier, sent September 25, 2017, on each of the following:

U.S. District Court:

    Clerk of the Court
    Wilkie D. Ferguson, Jr. U.S. Courthouse
    400 North Miami Avenue
    Miami, FL 33128

Lead Settlement Class Counsel:

    Peter Prieto
    PODHURST ORSECK, P.A.
    Suntrust International Center
    One S.E. 3rd Avenue, Suite 2700
    Miami, Florida 33131
    Phone: (305) 358-2800

Counsel for Mazda:

    Cari K. Dawson, Esq.
    Alston & Bird LLP
    One Atlantic Center
    1201 West Peachtree Street, Suite 4900
    Atlanta, GA 30309
    Phone: (404) 881-7766

Date: September 25, 2017

    Kendrick Jan, CA State Bar No. 105149
    Attorney for Objector Cameron Jan
    Jan & Jan, Attorneys
    402 West Broadway, Suite 2700
    San Diego, CA 92101
    Phone: (619) 231-7702
    Fax: (619) 230-1839
    kendrickjan@hotmail.com