UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**MDL No. 2599**
**Master File No. 15-02599-MD-MORENO**
**Economic Loss No. 14-24009-CV-MORENO**

IN RE

**TAKATA AIRBAG PRODUCTS**
**LIABILITY LITIGATION**
_____/

BRIDGET BOYD, *et. al.*, individually and
on behalf of all others similarly situated,

        Plaintiffs,

    v.

FCA US LLC,

        Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART**
**<u>FCA US LLC'S MOTION TO DISMISS</u>**

## I.     INTRODUCTION

This multidistrict litigation consolidates allegations of economic loss and personal injury related to airbags manufactured by former-defendants Takata Corporation and TK Holdings (collectively, "Takata") and equipped in vehicles distributed by FCA US LLC.  The allegations are that FCA's vehicles were equipped with Takata airbags containing the chemical ammonium nitrate, which creates a small explosion to inflate the airbags during a crash.  Plaintiffs, who are consumers of FCA's vehicles, contend that when exposed to high heat and humidity, the explosion is much more forceful and can cause significant injuries and even death.

The crux of Plaintiffs' legal claims is that FCA knew or should have known of the Takata inflator defect prior to installing the Takata airbags in their vehicles, and that FCA concealed from, or failed to notify, the Plaintiffs and the general public of the full and complete nature of the inflator defect.  Plaintiffs allege that as a result of FCA's concealment, Plaintiffs would not have purchased their vehicles or would not have paid as much for them as they did.

FCA vigorously contests the sufficiency of the allegations supporting the myriad of claims remaining in the 46-count Complaint.  The Court has thoroughly reviewed the allegations in the Complaint and the arguments in the parties' moving papers.  This Order resolves all remaining claims asserted by the Consumer Plaintiffs against FCA.

For the reasons explained below, FCA's Motion to Dismiss **(D.E. 2983)** is **GRANTED IN PART** as follows:

- The nationwide-class Magnuson-Moss Warranty Act claim (Count 1) is **DISMISSED** in full;

- The statewide-class breach of implied warranty claims under the laws of Indiana, New York, and North Carolina (Counts 22, 36, and 38), and the duplicative claim under California law (Count 15), are **DISMISSED**;

- The statewide-class statutory consumer protection claims under the laws of Alabama, Florida, Indiana, and Pennsylvania (Counts 7, 16, 21, and 40) are **DISMISSED** in full, and the claims under the laws of California, Georgia, and Illinois (Counts 12, 18, and 20) are **DISMISSED** only to the extent they seek damages;

- The fraud claim (Count 4) is **DISMISSED** as to named-Plaintiffs Arlen Sturgis (Mississippi), and T'Keya Cooper, Jamelle Lowery, and Michael McClellion (South Carolina), and as to all putative class members whose fraud claims are governed under the laws of Alabama, Florida, Indiana, Mississippi, and South Carolina;

- The unjust enrichment claim (Count 5) is **DISMISSED** as to all putative class members whose unjust enrichment claims are governed under the laws of Alabama, Arizona, Florida, Indiana, Maryland, Mississippi, New Jersey, North Carolina, and Ohio, and as to these named-Plaintiffs: Laurie Reynolds (Arizona); Ronaldo Maldia (California); Daniel Dwinnells (Maryland); Michael Eikenberry, Kenneth Fischer, Deborah Hillyer, Dave Krzeminski, and Elizabeth Washington (Michigan); Arlen Sturgis (Mississippi); Gene Marsilio (New Jersey); Laquintha O'Neal and Terrie Swanson (North Carolina); Victoria Lykins and Reginald Price (Ohio); Jamelle Lowery (South Carolina); and Bridget Boyd (Texas); and

- The negligence claim (Count 6) is **DISMISSED** as to all named-Plaintiffs whose negligence claims are governed under the laws of Alabama, Arizona, Florida, Georgia, Indiana, Mississippi, Missouri, New Jersey, New York, Ohio, and Texas, and as to all putative class members whose negligence claims are governed under the laws of these states.

Furthermore, the Motion to Dismiss is **DENIED** as to the following claims, which will proceed to summary judgment:

- The statewide-class statutory consumer protection and breach of implied warranty claims in Counts 8–14, 17–20, 23–35, 37, 39, and 41–46;

- Claims for fraud (Count 4) asserted by all named-Plaintiffs whose claims are governed under the laws of Arizona, Arkansas, California, Georgia, Illinois, Maryland, Massachusetts, Michigan, Missouri, New Jersey, New York, North Carolina, Ohio, and Texas;

- Claims for unjust enrichment (Count 5) asserted by these named-Plaintiffs: Cathy Parker and Bobbie Simmons (Arkansas); Rushelle Gonder and Pedro Lucero (California); Michelle Gibson and Debrah Johnson (Georgia); John Fuesting and Priscilla Fuesting (Illinois); Carla Campagnone

(Massachusetts); Randy Nielsen (Michigan); Jason Williams (Missouri); Rmzy Abdallah (New York); Marcia Griffith (Pennsylvania); T'Keya Cooper (South Carolina); and Shanna Moore (Texas); and

- Claims for negligence (Count 6) asserted by these named-Plaintiffs: Cathy Parker and Bobbie Simmons (Arkansas) and Daniel Dwinnells (Maryland).

## II.    LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  Although legal conclusions can provide the framework of the complaint, they must be supported by factual allegations.  *Id.* at 679.  Detailed factual allegations are not required, but the complaint must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action."  *Twombly*, 550 U.S. at 555 (citation omitted).  The factual allegations must be enough to "raise a right to relief above the speculative level."  *Id.* (citations omitted).

Where a cause of action sounds in fraud, the allegations in the complaint must satisfy the particularity pleading requirement of Federal Rule of Civil Procedure 9(b).  Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake"; although "conditions of a person's mind," such as malice, intent, and knowledge may be alleged generally. Fed. R. Civ. P. 9(b).  To comply with Rule 9(b), a plaintiff must allege: (1) the precise statements,

documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997) (*per curiam*) (citation omitted).  In other words, a plaintiff is required to plead the "who, what, when, where, and how" pertaining to the underlying fraud. *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (citation omitted).  The purpose of particularity pleading is to alert the defendants to their precise misconduct and protect them against baseless charges of fraudulent behavior.  *See Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (citation omitted).

Finally, at the motion to dismiss stage, the Court must view the allegations in the complaint in the light most favorable to the plaintiffs and accept well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986).

## III.   DISCUSSION

In a previous order, the Court resolved FCA's personal jurisdiction challenge and ruled on the sufficiency of the allegations supporting the Racketeer Influenced and Corrupt Organizations Act claims.  *See In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101 (S.D. Fla. 2019). After thoroughly reviewing the Complaint and the moving papers, the Court dismissed the RICO claims (Counts 2 and 3), and the "Direct-File Action" in its entirety for lack of personal jurisdiction.

The Court will now resolve FCA's challenges to the claims remaining in the 46-count Complaint, which includes: a nationwide-class claim under the Magnuson-Moss Warranty Act (Count 1); nationwide-class common-law claims for fraud, unjust enrichment, and negligence (Counts 4–6); and statewide-class claims alleging breach of implied warranty and violations of

various state unfair and deceptive trade practices statutes (Counts 7–46).  Before addressing the sufficiency of the allegations, the Court will determine the substantive law governing the claims of each named-Plaintiff.

**A.**     **APPLICABLE LAW**

Questions of federal law in cases transferred under 28 U.S.C. Section 1407 are governed by the clearly settled law of the transferee court's circuit.  *See In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1336 (S.D. Fla. 2001) (citing *Murphy v. F.D.I.C.*, 208 F.3d 959, 966 (11th Cir. 2000) ("Since the federal courts are all interpreting the same federal law, uniformity does not require that transferee courts defer to the law of the transferor circuit.") (citing *In re Korean Air Lines Disaster of September 1, 1983*, 829 F.2d 1171, 1176 (D.C. Cir. 1987) (ruling, in the context of a Section 1407(a) transfer, that "[b]inding precedent for all is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit"))).

Questions arising under state law are generally governed by the substantive state law dictated by the choice of law rules of the federal court's state.  *See Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007).  But in cases transferred under Section 1407, the transferee court must apply the substantive state law dictated by the choice of law rules of the transferor court's state.  *See In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1332 (S.D. Fla. 2016) (quoting *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1296 (S.D. Fla. 2003)).

**B.**     **CHOICE-OF-LAW ANALYSIS**

The Complaint consolidates the Plaintiffs and the claims that were filed in the *Dwinnells* Complaint in the Eastern District of Michigan and later transferred to this Court by the Judicial Panel on Multidistrict Litigation, with the claims of Plaintiff Victor Khoury, the only

plaintiff to file his claims directly in this MDL proceeding.  *See In re Takata Airbag Prods. Liab. Litig.*, 379 F. Supp. 3d 1333, 1336–37 (S.D. Fla. 2019) (summarizing procedural and substantive background of the *Dwinnells* Complaint).  The claims asserted by Khoury were previously dismissed in their entirety, thus obviating any choice of law analysis here.  *See In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d at 1169 & n.17.

For the remaining named-Plaintiffs, the Court will now apply Michigan choice of law rules, which recognize a presumption in favor of *lex fori* and apply Michigan law "unless a 'rational reason' to do otherwise exists."  *Std. Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 693 (6th Cir. 2013) (quoting *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W. 2d 466, 471 (Mich. 1997)).  In determining whether there is a rational reason to displace Michigan law, the Court must undertake a two-step analysis.  *Sutherland*, 562 N.W. 2d at 471.  First, the Court "must determine if any foreign state has an interest in having its law applied.  If no state has such an interest, the presumption that Michigan law will apply cannot be overcome."  *Id.*  On the other hand, if a foreign state does have an interest in having its law applied, the Court "must then determine if Michigan's interests mandate that Michigan law be applied, despite the foreign interests."  *Id.* (citing *Olmstead v. Anderson*, 400 N.W. 2d 292, 304–05 (Mich. 1987)).

As in the *Whitaker* Order, the Court finds that for the named-Plaintiffs that purchased or leased their vehicle in their state of residence, there is a "rational reason" to depart from applying Michigan substantive law.  (D.E. 3838 at 7–8 (the "*Whitaker* Order") (citing *In re Takata Airbag Prods. Liab. Litig.*, No. 14-24009-CV, 2016 WL 5848843, at *5 (S.D. Fla. Sept. 21, 2016); *In re Takata Airbag Prods. Liab. Litig.*, No. 14-24009-CV, 2016 WL 6072406, at *6 (S.D. Fla. Oct. 14, 2016)).)  Accordingly, substantive law applies to these named-Plaintiffs as follows: **Arizona** law to Laurie Reynolds; **Arkansas** law to Cathy Parker and Bobbie Simmons; **California** law to

Rushelle Gonder, Pedro Lucero, and Ronaldo Maldia; **Georgia** law to Michelle Gibson and Debrah Johnson; **Illinois** law to John Fuesting and Priscilla Fuesting; **Maryland** law to Daniel Dwinnells; **Massachusetts** law to Carla Campagnone; **Michigan** law to Deborah Hillyer and Dave Krzeminski; **Mississippi** law to Arlen Sturgis; **Missouri** law to Jason Williams; **New Jersey** law to Gene Marsilio; **New York** law to Rmzy Abdallah; **North Carolina** law to Laquintha O'Neal and Terrie Swanson; **Ohio** law to Victoria Lykins and Reginald Price; **Pennsylvania** law to Marcia Griffith; **South Carolina** law to T'Keya Cooper, Jamelle Lowery, and Michael McClellion; and **Texas** law to Bridget Boyd and Shanna Moore.

Also like the *Whitaker* Order, the Court finds that Michigan substantive law applies to the named-Plaintiffs that purchased or leased their vehicle in a state where they do not live. (*See* D.E. 3838 at 8–9 (citing *In re Takata Airbag Prods. Liab. Litig.*, 2016 WL 6072406, at \*6).) These named-Plaintiffs include: Michael Eikenberry, Kenneth Fischer, Randy Nielsen, and Elizabeth Washington.

Based on this choice-of-law analysis, certain claims must be dismissed. Because the substantive laws of Alabama, Florida, and Indiana do not apply to any named-Plaintiffs, the statutory claims arising under the laws of these states (Counts 7, 16, and 21–22) are **DISMISSED** in full; as are the common law claims (Counts 4–6) to the extent they are asserted under the laws of these states. By extension, all these counts are also **DISMISSED** as to all putative class members with these claims. *See Wooden v. Bd. of Regents of Univ. Sys. of Georgia*, 247 F.3d 1262, 1288 (11th Cir. 2001) ("[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.") (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000)).

Even though FCA attacks these claims with several arguments, for sake of brevity and

clarity, the Court will not specifically reference these claims or FCA's corresponding arguments elsewhere in this Order.  For the same reasons, the Court also will not reference these claims in the conclusion sections of each heading.  Where applicable, however, the Court refers to these dismissals as the "choice-of-law dismissals."

Having determined the substantive law that governs the claims of each named-Plaintiff, the Court will now address the sufficiency of Plaintiffs' allegations.  The Court will begin by reviewing the fraud-based claims (common law and statutory), and then evaluate the remaining common law claims (negligence and unjust enrichment).  Next, the Court will analyze the nationwide-class Magnuson-Moss Warranty Act claim and the statewide-class breach of implied warranty claims.  And finally, the Court will assess FCA's argument that the Sale Order bars all claims by certain named-Plaintiffs.

C.     NATIONWIDE-CLASS COMMON-LAW FRAUD AND
       STATEWIDE-CLASS STATUTORY CONSUMER PROTECTION CLAIMS

Plaintiffs assert a nationwide-class common-law fraud claim (Count 4) and numerous statewide-class statutory consumer protection claims (Counts 7–9, 12–14, 16–21, 24–25, 27, 30–32, 34–35, 37, 39–40, 42–43, and 45).  The Court will first address the arguments common to both types of "fraud-based" claims, and then address claim-specific arguments.  For ease of reference, the Court refers to the common-law fraud and statutory consumer protection claims as "fraud-based" claims; this term accurately describes the claims and is consistent with the *Puhalla* and *Whitaker* Orders.  (*See In re Takata Airbag Prods. Liab. Litig.*, --- F. Supp. 3d ---, 2020 WL 2764196, at *6 (S.D. Fla. May 27, 2020) ("*Puhalla* Order"); D.E. 3838 at 10.)

1.     Common Challenges

FCA argues that all fraud-based claims should be dismissed because Plaintiffs fail to adequately allege: (1) that FCA had actual knowledge of the alleged inflator defect; (2) that FCA

made material misrepresentations or omissions; and (3) that Plaintiffs relied on any of FCA's material misrepresentations or omissions. FCA also urges that certain fraud-based claims are either time-barred, barred by the economic loss rule, or fail for lack of privity. The Court addresses each argument in turn.

### a)   Knowledge of Inflator Defect

First, FCA argues that all fraud-based claims must be dismissed because Plaintiffs fail to allege that FCA had actual knowledge of the inflator defect. Notably, "knowledge may be alleged generally." *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d at 1118 (quoting Fed. R. Civ. P. 9(b)). And after closely reviewing the allegations in the Complaint, the Court found in a previous order that Plaintiffs sufficiently alleged that FCA had knowledge of the risks posed by installing Takata airbags in their vehicles. *See id.* at 1159.[1] Accordingly, the Court declines to dismiss the fraud-based claims on this basis.

### b)   Omissions and Misstatements

Second, FCA argues that all fraud-based claims must be dismissed because Plaintiffs do not adequately allege that FCA either failed to disclose the Takata inflator defect, or made any actionable misstatements about the safety of its vehicles. Plaintiffs maintain that FCA breached a duty owed to the Plaintiffs by failing to fully inform them about the nature of the Takata inflator defect. Plaintiffs also contend that FCA made actionable misstatements by falsely touting the safety of their vehicles.

---

[1] Throughout this litigation, the Court has made the same finding on similar allegations. *See In re Takata Airbag Products Liab. Litig.*, --- F. Supp. 3d ---, 2020 WL 2764196, at *6 & n.5; *In re Takata Airbag Products Liab. Litig.*, 193 F. Supp. 3d at 1336 ("The Court finds that Plaintiffs have sufficiently alleged Mazda's knowledge of the alleged inflator defect . . . ."); *In re Takata Airbag Products Liab. Litig.*, 255 F. Supp. 3d 1241, 1258 (S.D. Fla. 2017) (same as to Honda).

In the *Puhalla* and *Whitaker* Orders, the Court resolved a similar challenge brought by Mercedes, Audi, Volkswagen, and General Motors. Looking to prior rulings in this case, the Court explained that, by definition, Plaintiffs cannot point to one particular statement because an *omission* is a non-statement. (*See In re Takata Airbag Prods. Liab. Litig.*, --- F. Supp. 3d ---, 2020 WL 2764196, at *7 (citing *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d at 1337–38); D.E. 3838 at 11 (citing same).) After reviewing those plaintiffs' allegations, the Court found that they sufficiently alleged that Mercedes, Audi, Volkswagen, and General Motors had a duty to disclose the inflator defect, and thus declined to dismiss any of those plaintiffs' claims. *See id.*

Like the plaintiffs in *Puhalla* and *Whitaker*, Plaintiffs here also allege that FCA had a duty to disclose the inflator defect because it had exclusive and/or far superior knowledge and access to facts that were not known to or reasonably discoverable by Plaintiffs, and which FCA intentionally concealed from Plaintiffs, all the while making incomplete representations about the safety and reliability of their vehicles. (*See* D.E. 2758 at ¶¶ 235(a)–(c).) Therefore, for the reasons explained in the *Puhalla* and *Whitaker* Orders, and as the Court has throughout this litigation on similar allegations, the Court declines to dismiss any fraud-based claims on this ground.

As for FCA's "puffery" argument, the Court explained in the *Puhalla* and *Whitaker* Orders that "[a]lthough marketing materials about safety features may be construed as puffery when viewed in isolation, such marketing can 'cross the line from mere puffery to active misrepresentations' when statements about safety are read next to allegations that an automotive manufacturer had actual knowledge of the alleged safety defect." (*See In re Takata Airbag Prods. Liab. Litig.*, --- F. Supp. 3d ---, 2020 WL 2764196, at *8 (quoting *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 457 (S.D.N.Y. 2017); citing *see also In re Toyota Motor Corp.*, No. 8:10ML 02151 JVS (FMOx), 2012 WL 12929769, at *18 (C.D. Cal. May 4, 2012)

("Advertising a car as safe and reliable when it actually has a safety-related defect that may render it unable to stop is not 'within the tolerable range of commercial puffery,' especially because Toyota allegedly had exclusive knowledge of the SUA defect.")); D.E. 3838 at 14 (citing same).)

Like the plaintiffs in *Puhalla* and *Whitaker*, Plaintiffs here allege that FCA distributed marketing materials that touted FCA's commitment to vehicle safety.  (*See* D.E. 2758 at ¶¶ 127(a)–(h).)  Among other examples, Plaintiffs allege that FCA: (1) promoted two vehicle models as receiving an Insurance Institute for Highway Safety "top safety pick" (both models later subject to recalls for the inflator defect); (2) published a press release touting that two vehicle models had achieved 5-star safety ratings from the National Highway Traffic Safety Administration (both models later subject to recalls for the inflator defect); and (3) published brochures for four vehicle models that specifically promoted the vehicles' airbag features (each model later subject to recalls for the inflator defect).  *See id.* at ¶¶ 73, 127(c)–(h).  Plaintiffs also allege that, through these promotions, FCA "continuously maintained that Chrysler-branded vehicles were safe and reliable," yet "uniformly concealed the Inflator Defect"—which was "material to decisions to purchase or lease Class Vehicles."  *Id.* at ¶ 126.  And as discussed above, Plaintiffs sufficiently allege that FCA had actual knowledge of the inflator defect.  *See supra* Sec.III.C.1.a; *see also In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d at 1159.  Taken together, the Court finds that Plaintiffs sufficiently allege that the promotion of vehicle safety in FCA's marketing materials crosses the line from mere "puffery" to active misrepresentation.

So, in addition to the duty to disclose, the Court also finds that Plaintiffs' allegations of material misstatements—*i.e.* that FCA continued to promote the safety of their vehicles despite having actual knowledge of the inflator defect—are sufficient to survive the Motion to Dismiss.

Of course, at summary judgment or trial, FCA can present evidence to disprove these allegations. But for now, the claims survive dismissal.

### c)   Reliance

Third, FCA argues that all fraud-based claims must be dismissed because Plaintiffs fail to adequately allege reliance on any statements made by FCA.  In the *Puhalla* Order, this Court rejected the same argument and ruled that the plaintiffs sufficiently alleged reliance against Mercedes, Audi, and Volkswagen.  *See In re Takata Airbag Prods. Liab. Litig.*, --- F. Supp. 3d ---, 2020 WL 2764196, at *8–9 (citing *In re Takata Airbag Prods. Liab. Litig.*, No. 14-24009, 2017 WL 2406711, at *6 (S.D. Fla. June 1, 2017) (ruling same as to allegations against Takata); *In re Takata Airbag Prods. Liab. Litig.*, No. 14-24009-CV, 2016 WL 5844872, at *3–4 (ruling same as to allegations against Subaru)).

Like many of the plaintiffs before them, Plaintiffs here allege that they "were unaware of . . . omitted material facts," "would not have acted as they did if they had known of the concealed or suppressed facts," and that "[h]ad they been aware of the Defective Airbags . . . [they] either would not have paid as much for their Class Vehicles, or they would not have purchased or leased them at all."  (D.E. 2758 ¶¶ 240–41.)  Once more, these allegations sufficiently plead reliance.  Accordingly, the Court will not dismiss any fraud-based claims on this ground.

### d)   Time Bars

Fourth, FCA argues that fraud-based claims under the laws of Arizona, Georgia, Ohio, and Texas are barred by the statute of limitations.  Plaintiffs disagree.

### (1)   Discovery Rule (Arizona)

To start, the statute of limitations for a claim under the Arizona Consumer Fraud Act is "within one year after the cause of action accrues."  Ariz. Rev. Stat. Ann. § 12-541(5).  FCA argues

that Plaintiff Laurie Reynolds' fraud-based claims under Arizona law, filed on March 14, 2018,[2] are barred by the one-year statute of limitations because a recall for her vehicle was announced on December 9, 2016 and thus her claim expired one year later on December 9, 2017.

Although Arizona does not recognize fraudulent concealment tolling, under Arizona's discovery rule, the statute of limitations for a claim under the Arizona Consumer Fraud Act begins running "when the defrauded party discovers or with reasonable diligence could have discovered the fraud." *Alaface v. Nat'l Inv. Co.*, 892 P.2d 1375, 1379 (Ariz. Ct. App. 1994) (quoting *Mister Donut of Am., Inc. v. Harris*, 723 P.2d 670, 672 (Ariz. 1986) (*en banc*)). "When discovery occurs and a cause of action accrues are usually and necessarily questions of fact for the jury." *Schellenbach v. GoDaddy.com LLC*, No. CV-16-00746-PHX-DGC, 2017 WL 192920, at *4 (D. Ariz. Jan. 18, 2017) (quoting *Doe v. Roe*, 955 P.2d 951, 961 (Ariz. 1998) (*en banc*); citing *Walk v. Ring*, 44 P.3d 990, 996 (Ariz. 2002) (*en banc*); *Alaface*, 892 P.2d at 1379). "The jury must determine at what point Plaintiff's knowledge, understanding, and acceptance in the aggregate provided sufficient facts to constitute a cause of action." *Schellenbach*, 2017 WL 192920, at *4 (quoting *Doe*, 955 P.2d at 962).

Even though the statute of limitations is an affirmative defense that is properly raised in a motion to dismiss, where it appears from the face of the complaint that the claim is barred, "the motion should not be granted 'unless it appears certain plaintiff will not be entitled to relief under any set of facts susceptible of proof under the claims stated.'" *Id.* (quoting *Anson v. Am. Motors Corp.*, 747 P.2d 581, 582 (Ariz. Ct. App. 1987)). As, indeed, the statute of limitations defense

---

[2] Prior to transfer to this MDL proceeding, Reynolds's fraud-based claims were initially filed in the *Dwinnells* Complaint in the Eastern District of Michigan on March 14, 2018.

"is never favored" by courts.  *Id.* (quoting *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 968 (Ariz. 1995)).

Aside from summarily asserting the date the recall was announced and the date Reynolds's claim should have expired, FCA advances no argument regarding when Reynolds actually received notice of the recall.  And, as Plaintiffs contend, "though the relevant recall was *announced* on December 9, 2016, it does not follow as a matter of law that Plaintiff Reynolds received notice on that date."  (D.E. 3034 at 136 (emphasis in original).)  The Court agrees with Plaintiffs on this point, and FCA cites no legal authority ruling otherwise.  Therefore, the Court declines to dismiss at this time Reynolds's Arizona Consumer Fraud Act claim on statute of limitations grounds. At summary judgment or trial, though, FCA may renew its argument and present evidence showing when Reynolds was put on notice of her fraud-based claims.

FCA also argues that the statute of limitations bars Reynolds's common law fraud claim. The Court disagrees here as well.  Under FCA's theory, Reynolds's fraud claim accrued on December 9, 2016, when a recall was announced for her vehicle.  But the statute of limitations for a common law fraud claim in Arizona is "within three years after the cause of action accrues." Ariz. Rev. Stat. Ann. § 12-543(3).  So, even under FCA's theory, Reynolds's common law fraud claim, filed on March 14, 2018, was filed within the statute of limitations period (which would have expired on December 9, 2019).  Thus, the Court also declines to dismiss Reynolds's fraud claim on statute of limitations grounds.

### (2)     Fraudulent Concealment Tolling (Georgia, Ohio, and Texas)

As for the states that remain, this Court has recognized that fraudulent concealment tolling applies in Ohio and Texas.  *See In re Takata Airbag Prods. Liab. Litig.*, --- F. Supp. 3d ---, 2020 WL 2764196, at *25 (ruling the plaintiffs invoked fraudulent concealment tolling under Texas

law) (citing *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W. 2d 746, 750 (Tex. 1999)); *In re Takata Airbag Prods. Liab. Litig.*, 2017 WL 2406711, at *13 (ruling same under Ohio law).  And Georgia also recognizes fraudulent concealment tolling.  *See Daniel v. Amicalola Elec. Membership Corp.*, 711 S.E. 2d 709, 716 (Ga. 2011) (citing *Jim Walter Corp. v. Ward*, 265 S.E. 2d 7 (Ga. 1980); *McElmurray v. Augusta–Richmond County*, 618 S.E. 2d 59, 68 (Ga. Ct. App. 2005)).

For the reasons fully explained in the *Puhalla* and *Whitaker* Orders, and other previous orders, the Court finds that Plaintiffs' allegations, taken as true and viewed in the light most favorable to them, sufficiently invoke fraudulent concealment tolling under the laws of Georgia, Ohio, and Texas.

### e) Economic Loss Bars

Fifth, FCA argues that certain statutory and common law fraud claims are barred by the economic loss rule because Plaintiffs only seek to recover economic loss damages.  Plaintiffs urge that several states recognize a fraud exception to the economic loss rule, and thus their statutory and common law fraud-based claims can proceed under the laws of these states.

### (1) Statutory Consumer Protection Claims

In the *Puhalla* and *Whitaker* Orders, the Court resolved economic loss challenges under North Carolina's Unfair or Deceptive Trade Practices Act and Pennsylvania's Unfair Trade Practices and Consumer Protection Law.  (*See In re Takata Airbag Prods. Liab. Litig.*, --- F. Supp. 3d ---, 2020 WL 2764196, at *9–10; D.E. 3838 at 18–19.)  For the same reasons explained in those Orders, the claim under North Carolina's Unfair or Deceptive Trade Practices Act (Count 37) is not barred by the economic loss rule and will proceed to summary judgment; but the claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Count 40) is barred by the

economic loss rule, and is accordingly **DISMISSED**.

### (2) <u>Common Law Claims</u>

Turning to the common law claims, FCA argues that the economic loss rule bars fraud claims under the laws of Arizona, Massachusetts, Michigan, Mississippi, Missouri, New Jersey, New York, Ohio, and South Carolina.  Plaintiffs respond that all these states recognize a fraud exception to the economic loss rule—with the lone of exception of Mississippi, and thus, Count 4 is **DISMISSED** as to Arlen Sturgis, the lone named-Plaintiff with a Mississippi fraud claim.

In the *Puhalla* Order, the Court found that Arizona, Michigan, New Jersey, New York, and Ohio all recognize a fraud exception to the economic loss rule, and then ruled that the plaintiffs' fraudulent concealment[3] allegations sufficiently invoked the fraud exception in these states. (*See In re Takata Airbag Prods. Liab. Litig.*, --- F. Supp. 3d ---, 2020 WL 2764196, at *10 (citing *Martin v. Weed Inc.*, No. CV-18-00027-TUC-RM, 2018 WL 2431837, at *6–7 (D. Ariz. May 30, 2018) (applying fraud exception to economic loss rule under Arizona law); *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W. 2d 541, 545 (Mich. Ct. App. 2001) (same under Michigan law); *G & F Graphic Services, Inc. v. Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 593 (D.N.J. 2014) (same under New Jersey law); *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d at 432–33 (same under New York law) (collecting cases); *Agilysys, Inc. v. Gordon*, No.

---

[3] Although the claim in Count 4 is styled as fraud—as opposed to fraudulent concealment or inducement—as the Court explained in the *Whitaker* Order, what matters legally is what Plaintiffs allege. (*See* D.E. 3838 at 17 (citing *Huber v. Crop Prod. Servs., Inc.*, No. 06-14564-BC, 2007 WL 2746625, at *6 (E.D. Mich. Sept. 19, 2007).)  And there, the Court ruled that because the plaintiffs alleged that General Motors's precontractual concealment of material facts induced the plaintiffs to purchase their vehicles, the fraud claim was not barred by Michigan's economic loss rule.  Like the plaintiffs in *Whitaker*, Plaintiffs here allege the same against FCA. (*See* D.E. 2758 at ¶¶ 236–37.)  Thus, the styling of the claim as "fraud" does not change the Court's analysis here.

1:06 CV 1665, 2008 WL 11377731, at *6–7 (N.D. Ohio Jan. 11, 2008) (same under Ohio law) (collecting cases)).  And in an earlier order, the Court found and ruled the same under Missouri law because, "similar to the reasoning applied under Michigan law," the fraudulent concealment claim was "independent of any contract."  *See In re Takata Airbag Prods. Liab. Litig.*, 2017 WL 2406711, at *8.

For the same reasons explained in those orders, the Court finds that Plaintiffs' allegations sufficiently invoke the fraud exception to the economic loss rule in Arizona, Michigan, Missouri, New Jersey, New York, and Ohio.  The Court will now address Massachusetts and South Carolina, the only states not previously addressed.

### (i)   <u>Massachusetts</u>

In Massachusetts, "purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage."  *FMR Corp. v. Boston Edison Co.*, 613 N.E. 2d 902, 903 (Mass. 1993).  But the economic loss rule "does not apply to 'pecuniary loss incurred as a result of an actionable misrepresentation.'"  *Passatempo v. McMenimen*, 960 N.E. 2d 275, 294 (Mass. 2012) (quoting *Nota Constr. Corp. v. Keyes Assocs., Inc.*, 694 N.E. 2d 401, 405 n.1 (Mass. App. Ct. 1998)); *see also Arthur D. Little Intern., Inc. v. Dooyang Corp.*, 928 F. Supp. 1189, 1205 (D. Mass. 1996) ("The economic loss rule does not apply to harm caused by intentional misrepresentations.") (citing *Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 998 (1st Cir. 1992) (noting economic loss rule does not preclude recovery for intentional torts)).

This rule extends to intentional misrepresentation claims regarding the quality of products made in a commercial setting to induce the purchase of products where the product is subject to certain warranties.  *See Softub, Inc. v. Mundial, Inc.*, 53 F. Supp. 3d 235, 239, 260 (D. Mass. 2014) (ruling economic loss rule did not bar intentional misrepresentation claim) (citing *Passatempo*,

960 N.E. 2d at 295; *Canal Elec. Co.*, 973 F.2d at 998). Although FCA points to a ruling by the Superior Court of Massachusetts that a plaintiff could not recover "under her fraud claim because it [was] barred by the economic loss rule," *Costa v. Del La Femina*, No. 20053536, 2006 WL 3201070, at *10 (Mass. Super. Ct. Oct. 17, 2006), the Court finds that *Costa* runs against the weight of authority interpreting Massachusetts law, which recognizes an intentional misrepresentation exception to the economic loss rule.

To state a claim for intentional or fraudulent misrepresentation, the plaintiff must allege that the defendant "made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage." *Russell v. Cooley Dickinson Hosp., Inc.*, 772 N.E. 2d 1054, 1066 (Mass. 2002).

Here, like their predecessor plaintiffs, Plaintiffs allege: that FCA had knowledge of the risks posed by installing Takata airbags in its vehicles; that FCA had a duty to disclose the inflator defect; that FCA made material misstatements regarding the safety of its vehicles; and that but-for the omissions of the inflator defect, Plaintiffs would not have purchased their vehicles or would not have paid as much for them as they did. *See supra* Sec.III.C.1.a–c. Based on these allegations, the Court finds that Plaintiffs sufficiently invoke the intentional misrepresentation exception to the Massachusetts economic loss rule.

### (ii)    South Carolina

Although the Court has not previously addressed whether a fraud claim is barred by South Carolina's economic loss rule, earlier in this case, the Court dismissed a negligence claim as barred by the economic loss rule under *Sapp v. Ford Motor Co.*, 687 S.E. 2d 47 (S.C. 2009). *See In re Takata Airbag Prods. Liab. Litig.*, No. 14-24009-CV, 2016 WL 5848843, at *8. In *Sapp*,

the controlling economic loss case in South Carolina, the Supreme Court of South Carolina clarified the scope of the economic loss rule and explained that the court did not intend, through its previous rulings, for "the exception to the economic loss rule to be applied well beyond the scope of real estate construction in[to] an ordinary products liability claim." 687 S.E. 2d at 150. In short, the Supreme Court of South Carolina explained that "when personal injury or other property damage occurs, a tort remedy may be appropriate." *Id.* at 147.

Applying the law to the facts there, the Supreme Court of South Carolina affirmed summary judgment for Ford on the plaintiff's tort claims—which included a fraud/misrepresentation claim based on the theory that Ford knew about a design defect in the cruise control switch, which would short circuit and cause a fire in the engine compartment, *id.* at 146—because "[t]he only damage caused by the defect in the trucks was damage to the trucks themselves—purely an economic loss." *Id.* at 150.

In view of the Supreme Court of South Carolina's careful analysis in *Sapp*, which limited the application of the economic loss rule,[4] and consistent with the Court's previous ruling regarding negligence claims under South Carolina law, the Court finds that South Carolina does not recognize a fraud exception to the economic loss rule. Consequently, Count 4 is **DISMISSED**

---

[4] Although some federal district courts have interpreted *Sapp* as recognizing a fraud exception to the economic loss rule, *see In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. CV 16-2765 (JLL), 2017 WL 1902160, at *18 (D.N.J. May 8, 2017) and *Trevillyan v. APX Alarm Sec. Sys., Inc.*, No. 2:10–1387–MBS, 2011 WL 11611, at *8 (D.S.C. Jan. 3, 2011), the Court declines to follow these rulings. The Supreme Court of South Carolina, the final arbiter of South Carolina law, carefully clarified the scope of the "narrow" exception to the economic loss rule that applies in the residential real estate construction context. Notably, the Supreme Court of South Carolina stopped short of affirmatively recognizing a fraud-based exception to the economic loss rule in the products liability context.

as to Plaintiffs T'Keya Cooper, Jamelle Lowery, and Michael McClellion, whose fraud claims are governed under South Carolina law.

> **f)**      <u>**Privity (Ohio)**</u>

Finally, FCA argues in a footnote that the fraud-based claims under Ohio law must be dismissed because there is no privity between FCA and Plaintiffs Victoria Lykins and Reginald Price. (D.E. 2983 at 56 n.26 (citing *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 835 N.E. 2d 701, 703 (Ohio 2005).)

It appears that FCA stretches *Corporex* too far. In *Corporex*, the Supreme Court of Ohio explained that liability can be "based exclusively upon [a] discrete, preexisting duty in tort and not upon any terms of a contract or rights accompanying privity." 835 N.E. 2d at 705 (quoting *Haddon View Inv. Co. v. Coopers & Lybrand*, 436 N.E. 2d 212, 215 (Ohio 1982)). The Supreme Court of Ohio further explained that "*[i]n addition to* generally recognized duties in tort . . . privity or a sufficient nexus that could serve as a substitute for privity may impose only those contractual duties and liability for breach of those duties agreed to by the parties to the contract, and no more." *Id.* It is clear, though, that "[w]hen a duty in tort exists, a party may recover in tort." *Id.* Thus, privity is not required to plead a fraud-based claim under Ohio law.

Since *Corporex*, Ohio courts have continued to recognize that fraud claims do not require privity. *See Clemens v. Nelson Fin. Grp., Inc.*, No. 14AP–537, 2015 WL 1432604, *8 (Ohio Ct. App. 2015) ("Although the economic-loss rule sweeps widely, it does not preclude all tort claims for economic damages. A plaintiff may pursue such a tort claim if it is 'based exclusively upon [a] discrete, preexisting duty in tort and not upon any terms of a contract or rights accompanying privity.'") (quoting *Corporex*, 835 N.E. 2d at 705); *Campbell v. Krupp*, 961 N.E. 2d 205, 213 (Ohio Ct. App. 2011) ("[T]here is no question that privity is not required to assert a claim of

common law fraud, out of a concern that an innocent party should not suffer at the hands of an intentional wrongdoer.") (quoting *Haddon View Inv. Co.*, 436 N.E. 2d at 215).

Under Ohio law, a duty arises in business transactions only where: (1) the parties are in a fiduciary relationship; (2) both parties to the transaction understand that a special trust or confidence has been reposed; or (3) full disclosure is necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts. *Gator Dev. Corp. v. VHH, Ltd.*, No. C–080193, 2009 WL 1027584, at *6 (Ohio Ct. App. 2009) (citing *Blon v. Bank One, Akron, N.A.*, 519 N.E. 2d 363, 367 (Ohio 1988)).

Here, as discussed above, Plaintiffs sufficiently allege that FCA had a duty to disclose the inflator defect because it had exclusive and/or far superior knowledge and access to facts that were not known to or reasonably discoverable by Plaintiffs, and which FCA intentionally concealed from Plaintiffs, all the while making incomplete representations about the safety and reliability of their vehicles.  (*See supra* Sec.III.C.1.a–c; *see also* D.E. 2758 at ¶¶ 235(a)–(c).)  Thus, the Court finds that FCA had a duty to disclose under Ohio law.  And because this duty is grounded in tort, the economic loss rule does not bar the fraud-based claims under Ohio law.

## 2. Specific Challenges to Statutory Consumer Protection Claims

Next, FCA advances three challenges specific to the statutory consumer protection claims. First, FCA argues that the claims under the laws of Arkansas and South Carolina must be dismissed because the consumer protection statutes of these states bar class actions.  Second, FCA argues that the claims under the Michigan Consumer Protection Act and the Missouri Merchandising Practices Act should be dismissed because Plaintiffs fail to allege that they purchased their vehicles for "personal purposes."  And finally, FCA argues that the claims under the Uniform Deceptive Trade Practices Act of Georgia and Illinois, and California's Unfair Competition Law must be

limited to injunctive relief.[5]  Plaintiffs insist that none of these claims should be dismissed.

### a)    Class Action Bars

First, FCA argues that the statutory consumer protection claims under the laws of Arkansas and South Carolina must be dismissed because the statutes of these states bar class action claims. As explained fully in the *Puhalla* Order, in the Eleventh Circuit, Rule 23 controls whether a plaintiff can assert a class action claim under a state statute that forbids class actions.  *See In re Takata Airbag Prods. Liab. Litig.*, --- F. Supp. 3d ---, 2020 WL 2764196, at *11–12 (citing *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1336 (11th Cir. 2015)).  Following *Lisk*, the Court ruled that the plaintiffs could assert class action claims under the Arkansas Deceptive Trade Practices Act and the South Carolina Unfair Trade Practices Act (as well as under the Alabama Deceptive Trade Practices Act).  *See id.* at *12 (citing *Lisk*, 792 F.3d at 1335–38 (ruling Rule 23 did not bar a class claim under the Alabama Deceptive Trade Practices Act); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510, 553 (N.D. Ill. 2019) (ruling same under the Arkansas Deceptive Trade Practices Act and the South Carolina Unfair Trade Practices Act)).  Consequently, the Court declines to dismiss these class action claims on this basis.

### b)    Failure to Allege "Personal Purposes"

Second, FCA argues that the claims under the Michigan Consumer Protection Act and the

---

[5] In a footnote, FCA also argues that the Safety Act bars the Plaintiffs' request for the Court to enjoin FCA from continuing its negligence by continuing to install defective airbags in class vehicles.  (*See* D.E. 2983 at 57 n.29.)  In a previous order, the Court rejected a similar argument by Mercedes, Audi, and Volkswagen.  *See In re Takata Airbag Products Liab. Litig.*, 396 F. Supp. 3d at 1133 ("[T]o the extent Plaintiffs seek injunctive relief going forward that will 'unduly and directly interfere with NHTSA's investigatory and regulatory functions,' or interfere with NHTSA's Coordinated Remedy Order, the Court can address this issue at that time.") (quoting *In re Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2015 WL 12641693, at *3 (S.D. Fla. Sept. 21, 2015)).  Likewise here, if and when this issue arises, the Court can address it at that time.

Missouri Merchandising Practices Act should be dismissed because Plaintiffs fail to allege that they purchased their vehicles for "personal purposes." (D.E. 2983 at 57 (citing *Zine v. Chrysler Corp.*, 600 N.W. 2d 384, 393 (Mich. App. Ct. 1999); *Murphy v. Stonewall Kitchen, LLC*, 503 S.W. 3d 308, 311 (Mo. Ct. App. 2016)).)

Here, Plaintiffs allege in paragraph 28 of the Complaint that all Plaintiffs "purchased or leased their Class Vehicles primarily for personal, family, and household use." (*See* D.E. 2758 at ¶ 28.) Reviewing *Zine* and *Murphy*, the Court finds that this allegation is sufficient to satisfy the "personal purpose" requirement under Michigan and Missouri law. FCA does not press the argument in its Reply. Accordingly, the claims can proceed.

c)     **Injunctive Relief**

Finally, FCA argues that the claims under California's Unfair Competition Law (Count 12) and under the Uniform Deceptive Trade Practices Act of Georgia (Count 18) and Illinois (Count 20) must be limited to injunctive relief. Plaintiffs disagree.

(1)     **California's Unfair Competition Law**

Starting with California's Unfair Competition Law, the Court finds that Plaintiffs are correct that they can seek restitution and injunctive relief. (D.E. 3034 at 148 (citing *De La Torre v. CashCall, Inc.*, 422 P.3d 1004, 1012 (Cal. 2018).) But read in full, the sentence from *De la Torre* that Plaintiffs cite makes clear that plaintiffs "cannot obtain damages or attorney fees" under California's Unfair Competition Law. *De La Torre*, 422 P.3d at 1021 (citation omitted); *see also Valdez v. Seidner-Miller, Inc.*, 245 Cal. Rptr. 3d 268, 280 (Cal. Ct. App. 2019) ("The UCL provides for injunctive relief, restitution, and civil penalties.") (citing Bus. & Prof. Code, §§ 17203, 17206; *De La Torre*, 422 P.3d at 1021).

Through their Unfair Competition Law claim, Plaintiffs seek "such orders or judgments as

may be necessary to enjoin New Chrysler from continuing its unfair, unlawful, and/or deceptive practices . . . and for such other relief set forth below." (D.E. 2758 at ¶ 365.)  In view of the foregoing, Count 12 is dismissed only to the extent it seeks damages.

(2)   **Georgia and Illinois Uniform Deceptive Trade Practices Acts**

Turning to the Georgia and Illinois statutes, both Acts provide that "[a] person likely to be damaged by a deceptive trade practice of another *may be granted injunctive relief* upon terms that the court considers reasonable.  Proof of monetary damage, loss of profits or intent to deceive is not required."  *See* 815 Ill. Comp. Stat. Ann. 510/3 (emphasis added); Ga. Code Ann. § 10-1-373(a).  Both acts also authorize a court to assess costs and award attorneys' fees in certain situations.  *See* 815 Ill. Comp. Stat. Ann. 510/3; Ga. Code Ann. § 10-1-373(b).

Although the parties' briefing does not specifically address Georgia law, the Court finds that relief under Georgia's Uniform Deceptive Trade Practices Act "is limited to an injunction." *See Divis v. Gen. Motors LLC*, No. 18-13025, 2019 WL 4735405, at *9 (E.D. Mich. Sept. 27, 2019).  And it is equally true that a plaintiff cannot seek damages under Illinois's Uniform Deceptive Trade Practices Act.  *See Universal Gaming Grp. v. Taft Stettinius & Hollister LLP*, No. 1–15–0878, 2017 WL 1240860 at *9 (Ill. App. Ct. 2017) (quoting *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd. USA*, 893 N.E. 2d 981, 996 (Ill. App. Ct. 2008)).

Although Plaintiffs argue otherwise, the Court finds that they misread FCA's authority— *Dorr-Oliver Inc. v. Fluid-Quip, Inc.*, 834 F. Supp. 1008, 1014 (N.D. Ill. 1993)—and mistakenly conflate the Illinois Uniform Deceptive Trade Practices Act with the Illinois Consumer Fraud and Deceptive Business Practices Act.  Although similar, the latter "allows damages as well as injunctive relief," *id.* (citing 815 ILCS ¶¶ 505/7, 505/10a), whereas the former "provides only for injunctive relief but allows costs and attorneys fees if defendants willfully engaged in a deceptive

- 25 -

trade practice," *id.* (citing 815 ILCS ¶ 510/3).

With their claims under the Georgia and Illinois Deceptive Trade Practices Acts, Plaintiffs seek "an order enjoining New Chrysler's deceptive practices, attorneys' fees, and any other just and proper relief available under the [Acts]." (D.E. 2758 at ¶¶ 488, 522.)  In view of the foregoing, Counts 18 and 20 are dismissed only to the extent they seek damages.

### 3.    <u>Conclusion</u>

To summarize the fraud-based claims, Count 4 is **DISMISSED** as to named-Plaintiffs Arlen Sturgis (Mississippi), and T'Keya Cooper, Jamelle Lowery, and Michael McClellion (South Carolina).  By extension, Count 4 is also **DISMISSED** as to all putative class members with fraud claims governed under Mississippi and South Carolina law.  *See Wooden*, 247 F.3d at 1288 ("[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.") (quoting *Prado-Steiman*, 221 F.3d at 1280).  After accounting for the choice-of-law dismissals and the states excluded by Plaintiffs (Florida and Pennsylvania), Count 4 will proceed for all other named-Plaintiffs.

As for the statutory consumer protection claims, the claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Count 40) is **DISMISSED** in full, and the claims under California's Unfair Competition Law (Count 12), and Georgia's and Illinois's Uniform Deceptive Trade Practices Act (Counts 18 and 20) are **DISMISSED** only to the extent they seek damages.  The state statutory consumer protection claims in Counts 8–9, 12–14, 17–20, 24–25, 27, 30–32, 34–35, 37, 39, 42–43, and 45 will proceed.

### D.    <u>REMAINING NATIONWIDE-CLASS COMMON-LAW CLAIMS</u>

The Court will now address FCA's challenges to the nationwide-class common-law unjust enrichment (Count 5) and negligence (Count 6) claims.  These claims are asserted "under the

common law of" negligence and unjust enrichment "as there are no true conflicts (case-dispositive differences) among various states' laws." (*See* D.E. 2758 at ¶¶ 247, 253.)  Alternatively, though, Plaintiffs assert these claims under the laws of the states where the vehicles were purchased.  At this stage, the Court will determine whether Plaintiffs have stated negligence and unjust enrichment claims under applicable state common law.  *Cf. In re Takata Airbag Prods. Liab. Litig.*, 2017 WL 2406711, at *5 (evaluating nationwide fraudulent concealment claims under applicable state common law).  The Court begins with the unjust enrichment claims and then proceeds to the negligence claims.

### 1.      Unjust Enrichment (Count 5)

FCA argues that certain unjust enrichment claims should be dismissed because: (1) either there is no privity or Plaintiffs did not purchase their vehicles from an FCA-affiliated dealership; (2) certain Plaintiffs allege the existence of an express warranty; (3) California and Texas do not recognize unjust enrichment as a standalone cause of action; and (4) they are barred by the statute of limitations.  The Court addresses each argument in turn.

### a)      Direct Benefit

First, FCA argues that all unjust enrichment claims should be dismissed for lack of privity. Specifically, FCA argues that "[a]s this Court has previously recognized, for states that require privity to maintain an unjust enrichment claim, such claims must be dismissed if a plaintiff cannot demonstrate that they have conferred a direct benefit on a defendant."  (D.E. 2983 at 55.) Noticeably, though, FCA does not cite a single authority supporting this statement.  (*See id.*; *see also* D.E. 2983-4 at 2–5.)  Nor does FCA cite a single ruling in this case showing that privity is *required* to state an unjust enrichment claim under the laws of any state.  *See id.*  And this is because the Court has not issued such a ruling.  The privity argument thus fails.

Instead, the Court has ruled that under the laws of numerous states, a direct benefit is conferred on an automotive manufacturer where a plaintiff purchases or leases his or her vehicle from a dealership affiliated with the automotive manufacturer. *See In re Takata Airbag Prods. Liab. Litig.*, --- F. Supp. 3d ---, 2020 WL 2764196, at \*15–21 (ruling such under the laws of Alabama, Arizona, Connecticut, Florida, Georgia, Illinois, Indiana, Louisiana, Massachusetts, Michigan, Mississippi, New York, Ohio, Pennsylvania, Tennessee, Virginia, and Wisconsin) (citing *In re Takata Airbag Prods. Liab. Litig.*, 255 F. Supp. 3d at 1260–64 (ruling same under the laws of Alabama, Arizona, California, Connecticut, Florida, Georgia, Hawaii, Illinois, Indiana, Massachusetts, Nevada, New Jersey, Ohio, Oregon, Rhode Island, Tennessee, Texas, Virginia, West Virginia, and Washington); *In re Takata Airbag Prods. Liab. Litig.*, 2016 WL 5848843, at \*10–11 (ruling same under the laws of Alabama, Florida, Massachusetts, Nevada, Pennsylvania, and South Carolina)).

Following these rulings, FCA advances a second argument: that unjust enrichment claims should be dismissed for 16 named-Plaintiffs who did not purchase their vehicles from an FCA-affiliated dealership. It is clear (from a footnote, in one of FCA's six appendices) that FCA specifically seeks to dismiss the unjust enrichment claims of these named-Plaintiffs: Laurie Reynolds (Arizona), Ronaldo Maldia (California); Daniel Dwinnells (Maryland); Deborah Hillyer and Dave Krzeminski (Michigan); Arlen Sturgis (Mississippi); Gene Marsilio (New Jersey); Laquintha O'Neal and Terrie Swanson (North Carolina); Victoria Lykins, and Reginald Price (Ohio); Jamelle Lowery (South Carolina); and Bridget Boyd (Texas). (*See* D.E. 2983-1 at 3 n.6.) Although FCA also seeks to dismiss the claims of Plaintiff Elizabeth Washington under Illinois law, Plaintiff Michael Eikenberry under Indiana law, and Plaintiff Kenneth Fischer under Ohio, *see id.*, as discussed in the choice-of-law analysis above, Michigan law applies to the

claims of these Plaintiffs, *see* Sec.III.B.

Following its prior rulings on this issue, the Court will now analyze, on a state-by-state basis, the unjust enrichment allegations of these named-Plaintiffs.

### (1)   Arizona

Arizona law applies to Plaintiff Laurie Reynolds's unjust enrichment claim.  And her claim is **DISMISSED** because her Dodge was purchased "from Anderson Toyota" and she offers no additional allegations from which the Court could infer that Anderson Toyota has any affiliation with FCA.  (D.E. 2758 at ¶ 62.)

### (2)   California

California law applies to Plaintiff Ronaldo Maldia's unjust enrichment claim.  And his claim is **DISMISSED** because his Dodge was purchased "from Balboa Motors" and he offers no additional allegations from which the Court could infer that Balboa Motors has any affiliation with FCA. *Id.* at ¶ 54.

### (3)   Maryland

Maryland law applies to Plaintiff Daniel Dwinnells's unjust enrichment claim.  The Court has not previously addressed unjust enrichment claims under Maryland law.

Maryland courts have recognized three required elements of unjust enrichment: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention of the benefit by the defendant of the benefit under such circumstances as to make it inequitable for the defendants to retain the benefit without payment of its value.  *See ADCS Inc. v. Kimbrough, Jr.*, 30 F. App'x. 225, 228 (4th Cir. 2002) (quoting *Berry & Gould, P.A. v. Berry*, 757 A.2d 108, 113 (Md. 2000)).  Aside from these required elements, the Court is not aware of any authority also requiring a plaintiff to directly

confer a benefit on a defendant in order to state an unjust enrichment claim under Maryland law.

Turning to the allegations, Dwinnells's claim is **DISMISSED** because he purchased his Dodge "from Ideal Buick GMC" and he offers no additional allegations from which the Court could infer that Ideal Buick GMC has any affiliation with FCA.  (D.E. 2758 at ¶ 39.)

### (4)   Michigan

Michigan law applies to the unjust enrichment claims of Plaintiffs Michael Eikenberry, Kenneth Fischer, Deborah Hillyer, Dave Krzeminski, and Elizabeth Washington.  And the claims of each Plaintiff are **DISMISSED** because their vehicles were not purchased from FCA-affiliated dealerships, and they offer no additional allegations from which the Court could infer the dealerships have any affiliation with FCA.  *See id.* at ¶ 40 (Eikenberry purchased his used Chrysler "from Auto World"); *id.* at ¶ 41 (Fischer purchased his used Dodge "from Troy Auto Group"); *id.* at ¶ 47 (Hillyer purchased her used Chrysler "from AM Automotive LLC"); *id.* at ¶ 50 (Krzeminski purchased his used Dodge "from a used car dealership"); *id.* at ¶ 66 (Washington purchased her used Dodge "from Howard Automotive").

### (5)   Mississippi

Mississippi law applies to Plaintiff Arlen Sturgis's unjust enrichment claim.  And his claim is **DISMISSED** because his Chrysler was purchased "from Southern Imports, Inc." and he offers no additional allegations from which the Court could infer that Southern Imports, Inc. has any affiliation with FCA.  *Id.* at ¶ 64.

### (6)   New Jersey

New Jersey law applies to Plaintiff Gene Marsilio's unjust enrichment claim.  As noted in the *Puhalla* Order, under New Jersey law, "[w]hen a plaintiff fails to allege a direct relationship, that plaintiff has failed to assert a claim for unjust enrichment, and under those circumstances,

dismissal is appropriate." *See In re Takata Airbag Prods. Liab. Litig.*, --- F. Supp. 3d ---, 2020 WL 2764196, at \*19 (quoting *Glass v. BMW of N. Am., LLC*, Civil Action No. 10-5259 (ES), 2011 WL 6887721, at \*16 (D.N.J. Dec. 29, 2011)).

Turning to the allegations, Marsilio's claim is **DISMISSED** because his used Dodge was purchased "from Luxury Haus" and he offers no additional allegations from which the Court could infer that Luxury Haus is directly owned and operated by FCA. (D.E. 2758 at ¶ 55.)

### (7)      North Carolina

North Carolina law applies to the unjust enrichment claims of Plaintiffs Laquintha O'Neal and Terrie Swanson. The Court also has not previously addressed unjust enrichment claims under North Carolina law.

To state a claim for unjust enrichment under North Carolina law, a plaintiff must allege that he or she "conferred a benefit on the other party" that is "measurable" and not "gratuitous." *Krawiec v. Manly*, 811 S.E. 2d 542, 552 (N.C. 2018) (quoting *Booe v. Shadrick*, 369 S.E. 2d 554, 556 (N.C. 1988)). Aside from these elements, the Court is not aware of any authority that also requires the plaintiff to directly confer the benefit on the defendant in order to state an unjust enrichment claim under North Carolina law.

Turning to the allegations, O'Neal's and Swanson's claims are **DISMISSED** because their vehicles were purchased "from Carmax" and "from Hickory Used Car Superstore," respectively, and they offer no additional allegations from which the Court could infer that Carmax or the Hickory Used Car Superstore have any affiliation with FCA. (D.E. 2758 at ¶¶ 59, 65.)

### (8)      Ohio

Ohio law applies to the unjust enrichment claims of Plaintiffs Victoria Lykins and Reginald Price. And Lykins's and Prices's claims are **DISMISSED** because their vehicles were purchased

"from Jeff Wyler, Eastgate Automall" and "from Dixie Import," respectively, and they offer no additional allegations from which the Court could infer that these dealerships have any affiliation with FCA. *Id.* at ¶¶ 53, 61.

(9)   <u>South Carolina</u>

South Carolina law applies to Plaintiff Jamelle Lowery's unjust enrichment claim. And Lowery's claim is **DISMISSED** because her used Chrysler was purchased "from Crown Nissan" and she offers no additional allegations from which the Court could infer that Crown Nissan has any affiliation with FCA. *Id.* at ¶ 51.

(10)   <u>Texas</u>

Texas law applies to Plaintiff Bridget Boyd's unjust enrichment claim. And her claim is **DISMISSED** because her used Chrysler was purchased "from Driver's Choice" and she offers no additional allegations from which the Court could infer that Driver's Choice has any affiliation with FCA. *Id.* at ¶ 36.

b)   <u>Adequate Remedy at Law (Express Warranties)</u>

Second, FCA argues in a footnote that unjust enrichment claims should be dismissed for the 12 named-Plaintiffs who allege the existence of an express warranty, as these plaintiffs fail to adequately allege unconscionability. (D.E. 2983 at 55 n.24.) As the Court explained in the *Puhalla* and *Whitaker* Orders, this argument is unavailing because not only has FCA failed to provide the Court with any written express warranties covering any of Plaintiffs' vehicles, but also, Plaintiffs allege that they do not have an adequate remedy at law, and that the warranties are procedurally and substantively unconscionable and are thus not enforceable. (*See In re Takata Airbag Prods. Liab. Litig.*, --- F. Supp. 3d ---, 2020 WL 2764196, at *14–15; D.E. 3838 at 25–26; D.E. 2758 at ¶¶ 182–84, 251).) And although FCA also summarily argues in passing in its footnote that

- 32 -

Plaintiffs fail to offer any facts showing unconscionability (D.E. 2983 at 55 n.24), FCA has not produced the applicable written express warranties.  Thus, the Court need not reach this cursory contention.  (*See* D.E. 1208 at 20 (addressing Nissan's unconscionability argument only after "Nissan attached the express warranty covering [the plaintiff's vehicle] to its Motion," and then only after the Court found that the warranty was "central to Plaintiffs' claims and that Plaintiffs ha[d] not disputed the authenticity of the attached warranty").)

In addition, Plaintiffs are allowed to maintain an unjust enrichment claim in the alternative to their other claims.  *See In re Takata Airbag Prods. Liab. Litig.*, --- F. Supp. 3d ---, 2020 WL 2764196, at *15 (citing *Tershakovec v. Ford Motor Co.*, No. 17-21087-CIV, 2018 WL 3405245, at *14 (S.D. Fla. July 12, 2018) ("Plaintiffs may maintain an unjust enrichment claim in the alternative to their breach of express warranty claim.") (citing *Martorella v. Deutsche Bank Nat. Tr. Co.*, 931 F. Supp. 2d 1218, 1227–28 (S.D. Fla. 2013) ("Plaintiff may, however, maintain an equitable unjust enrichment claim in the alternative to her legal claims against Defendants."); Fed. R. Civ. P. 8(a)(3), (d)(2) (permitting pleading in the alternative))).  This is because it is only upon a showing that an express contract exists between the parties that the unjust enrichment count fails.  *See id.* at *15 (quoting *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d at 1344).  And FCA has not made this showing here.  Thus, it would be premature to dismiss the unjust enrichment claims on this basis.  *Id.* (quoting *Martorella*, 931 F. Supp. 2d at 1228).

Finally, even though equitable relief ultimately may not be awarded because there is an adequate remedy at law, Plaintiffs "certainly may plead alternative equitable relief" at this stage. *Id.* (quoting *Adelphia Cable Partners, Inc. v. E & A Beepers Corp.*, 188 F.R.D. 662, 666 (S.D. Fla. 1999)).  Provided there is evidence proving the existence of enforceable written express warranties, FCA may renew its argument at summary judgment.  But for now, the claims survive.

c)      **Standalone Causes of Action (California and Texas)**

Third, FCA argues that California and Texas unjust enrichment claims should be dismissed because these states do not recognize unjust enrichment as a standalone cause of action. Plaintiffs again disagree.

(1)      **California**

As explained in the *Whitaker* Order, California recognizes the principle behind unjust enrichment by requiring "restitution if [a defendant] is unjustly enriched at the expense of another. The recipient of the benefit is liable only if the circumstances are such that, as between two persons, it is unjust for the recipient to retain it." (D.E. 3838 at 26–27 (quoting *In re Takata Airbag Prods. Liab. Litig.*, 255 F. Supp. 3d at 1261 (quoting *City of Chula Vista v. Gutierrez*, 143 Cal. Rptr. 3d 689, 692 (Cal. Ct. App. 2012))).)

Here, California law applies to the unjust enrichment claims of Plaintiffs Rushelle Gonder and Pedro Lucero. And their claims can proceed because their vehicles were purchased from FCA-affiliated dealerships. (*See* D.E. 2758 at ¶ 45 (Gonder purchased her used Chrysler "from Scott Robinson Chrysler"); *id.* at ¶ 52 (Lucero purchased his new Chrysler "from Elk Grove Chrysler").

(2)      **Texas**

Texas courts have ruled that unjust enrichment "is not an independent cause of action but rather characterizes the result of a failure to make restitution benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay." *In re Takata Airbag Prods. Liab. Litig.*, 255 F. Supp. 3d at 1263–64 (quoting *Foley v. Daniel*, 346 S.W. 3d 687, 690 (Tex. Ct. App. 2009)). In some circumstances, however, "overpayments under a valid contract may give rise to a claim for restitution or unjust enrichment." *Id.* (quoting *Foley*, 346 S.W. 3d at 690–91)). But because the Court is only deciding "the sufficiency of Plaintiffs'

claims under a motion to dismiss standard"—"and not whether Plaintiffs actually overpaid for their vehicles"—their claims should not be summarily dismissed on this basis. *See id.* The overpayment inquiry is appropriate at summary judgment or trial; but for now, the Court can determine whether plaintiffs allege that they purchased their vehicles from an FCA-affiliated dealership such that their claim can proceed. *See id.*

Here, Texas law applies to Plaintiff Shanna Moore's unjust enrichment claim. And her claim can proceed because her Dodge was purchased "from Team Dodge," an FCA-affiliated dealership. (D.E. 2758 at ¶ 57.)

### d)        Time Bars

Finally, FCA argues that the statute of limitations bars certain unjust enrichment claims under the laws of Arkansas, Georgia, North Carolina, and Texas. As discussed above, fraudulent concealment tolling applies to claims under Georgia and Texas law, *see supra* Sec.III.C.1.d.2, as well as under Arkansas law, *see In re Takata Airbag Prods. Liab. Litig.*, --- F. Supp. 3d ---, 2020 WL 2764196, at *25 (citing *Martin v. Arthur*, 3 S.W. 3d 684, 687 (Ark. 1999) (citing *Adams v. Arthur*, 969 S.W. 2d 598, 602–03 (Ark. 1998))). Like these states, North Carolina also recognizes fraudulent concealment tolling. *See Friedland v. Gales*, 509 S.E. 2d 793, 797 (N.C. Ct. App. 1998) (citing *Connor v. Schenck*, 84 S.E. 2d 175 (N.C. 1954); *Stallings v. Gunter*, 394 S.E. 2d 212 (N.C. Ct. App. 1990)). For the reasons explained earlier and in previous orders, fraudulent concealment tolling applies to the unjust enrichment claims under the laws of these states.

### e)        Conclusion

In sum, Count 5 is **DISMISSED** as to the following named-Plaintiffs: Laurie Reynolds (Arizona); Ronaldo Maldia (California); Daniel Dwinnells (Maryland); Michael Eikenberry, Kenneth Fischer, Deborah Hillyer, Dave Krzeminski, and Elizabeth Washington (Michigan);

Arlen Sturgis (Mississippi); Gene Marsilio (New Jersey); Laquintha O'Neal and Terrie Swanson (North Carolina); Victoria Lykins and Reginald Price (Ohio); Jamelle Lowery (South Carolina); and Bridget Boyd (Texas).  By extension, because there are no class representatives with unjust enrichment claims under the laws of Arizona, Maryland, Mississippi, New Jersey, North Carolina, and Ohio, Count 5 is also **DISMISSED** as to all putative class members whose negligence claims are governed under the laws of these states.  *See Wooden*, 247 F.3d at 1288 ("[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.") (quoting *Prado-Steiman*, 221 F.3d at 1280).

As for the claims that survive, Count 5 will proceed for the following named-Plaintiffs: Cathy Parker and Bobbie Simmons (Arkansas); Rushelle Gonder and Pedro Lucero (California); Michelle Gibson and Debrah Johnson (Georgia); John Fuesting and Priscilla Fuesting (Illinois); Carla Campagnone (Massachusetts); Randy Nielsen (Michigan); Jason Williams (Missouri); Rmzy Abdallah (New York); Marcia Griffith (Pennsylvania); T'Keya Cooper (South Carolina); and Shanna Moore (Texas).[6]

### 2.   Negligence (Count 6)

Plaintiffs also assert a nationwide-class common-law negligence claim.  FCA argues that this claim should be dismissed in its entirety for lack of causation, and that alternatively, certain negligence claims should be dismissed under the economic loss rule or the statute of limitations.

### a)   Causation

First, FCA argues that all negligence claims should be dismissed because Takata's criminal acts—which Takata admitted to in the Takata Plea Agreement—break any causal connection

---

[6] The Court notes that Plaintiff Michael McClellion (South Carolina) is excluded from this claim.  (D.E. 2758 at ¶ 247.)

between FCA's allegedly negligent conduct and Plaintiffs' purported injuries.

The Court previously declined to judicially notice the contents of the Takata Plea Agreement for its truth because, regardless of reliability, meaning, or actual proof, the parties heavily disputed the contents. *See In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d at 1128–29. By extension, the Court declined to dismiss the entire complaint for lack of standing on the grounds that Takata's admissions demonstrated that Plaintiffs' injuries were not "fairly traceable" to certain defendants' actions. *Id.* at 1129. Likewise here, because the contents of the Takata Plea Agreement are heavily disputed, it is premature to dismiss any negligence claims on this basis at this stage. Whether Takata's admissions are sufficient to sever the causal connection between Plaintiffs' injuries and FCA's allegedly negligent conduct is an issue appropriate for resolution at summary judgment or trial. (*See* D.E. 3838 at 23 (ruling same).)

b)   **Economic Loss Bars**

After accounting for the choice-of-law dismissals and the states excluded by Plaintiffs,[7] negligence claims remain under the laws of Arizona, Arkansas, Georgia, Maryland, Mississippi, Missouri, New Jersey, New York, Ohio, and Texas.

FCA's second argument is that the economic loss rule bars negligence claims under the laws of Arizona, Georgia, Missouri, New Jersey, New York, Ohio, and Texas. Plaintiffs do not appear to contest this argument, and instead maintain that negligence claims should proceed under the laws of Arkansas and Maryland because these states have not adopted the economic loss rule. In turn, FCA does not appear to contest this argument. And the only remaining state, Mississippi,

---

[7] The Complaint specifically excludes from this claim consumers from Alabama, California, Florida, Illinois, Massachusetts, Michigan, Nevada, North Carolina, Pennsylvania, and South Carolina. (*See* D.E. 2758 at ¶ 253.)

bars negligence claims under the economic loss doctrine if the only damage sustained was to the product. *See Herman Cronier & Sons, Inc. v. Carrier Corp.*, No. 1:11CV364-HSO-RHW, 2013 WL 12090326, at *6 (S.D. Miss. Sept. 6, 2013) (citing *State Farm Mut. Auto. Ins. Co. v. Ford Motor Co.*, 736 So. 2d 384, 387 (Miss. Ct. App. 1999)). Accordingly, negligence claims can proceed under Arkansas and Maryland law.

        **c)**     **Time Bars**

Finally, FCA argues that the statute of limitations bars the negligence claims of Plaintiffs Michelle Gibson and Shanna Moore, which are asserted under the laws of Georgia and Texas, respectively. As discussed above, fraudulent concealment tolling applies to claims under Georgia and Texas law. *See supra* Sec.III.C.1.d.2. For the reasons explained earlier, fraudulent concealment tolling applies to these negligence claims.

        **d)**     **Conclusion**

Taken together, Count 6 is **DISMISSED** as to all named-Plaintiffs whose negligence claims are governed under the laws of Arizona, Georgia, Mississippi, Missouri, New Jersey, New York, Ohio, and Texas. By extension, Count 6 is also **DISMISSED** as to all putative class members whose negligence claims are governed under the laws of these states. *See Wooden*, 247 F.3d at 1288 ("[A] claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.") (quoting *Prado-Steiman*, 221 F.3d at 1280).

As for the claims that survive, Count 6 will proceed for named-Plaintiffs Cathy Parker and Bobbie Simmons (Arkansas) and Daniel Dwinnells (Maryland).

**E. NATIONWIDE-CLASS MAGNUSON-MOSS WARRANTY ACT AND STATEWIDE-CLASS BREACH OF IMPLIED WARRANTY CLAIMS**

Next, Plaintiffs assert a nationwide-class Magnuson-Moss Warranty Act claim. In the alternative, they assert statewide-class breach of implied warranty claims under the laws of several

states.  FCA argues that the Magnuson-Moss Warranty Act claim must be dismissed because Plaintiffs fail to assert implied warranty claims under the laws of every state, and additionally, because Plaintiffs do not meet the 100-plaintiff requirement to bring a class action under the Act. As to the alternative claims for breach of implied warranty under state law, FCA argues that certain claims are barred by the statute of limitations, and that claims under New York and North Carolina law should be dismissed for lack of privity.

### 1.     Nationwide-Class Magnuson-Moss Warranty Act Claim (Count 1)

Despite asserting a *nationwide*-class Magnuson-Moss Warranty Act claim, Plaintiffs assert breach of implied warranty claims under the laws of only *14 states*.  For the reasons fully explained in the *Puhalla* Order, the nationwide-class Magnuson-Moss Warranty Act claim in Count 1 is **DISMISSED** for lack of standing.  *See In re Takata Airbag Prods. Liab. Litig.*, --- F. Supp. 3d ---, 2020 WL 2764196, at *24 ("Because standing is a claim-specific determination and implied warranty claims under the [Magnuson-Moss Warranty] Act 'arise out of and are defined by' state law, the Court finds that the named-Plaintiffs lack standing to represent putative class members of states for which there are no breach of implied warranty claims.").  Furthermore, Count 1 is dismissed in its entirety because—unlike the nationwide-class common-law claims—Plaintiffs explicitly assert that "[i]n the event the Court declines to certify a Nationwide Consumer Class under the Magnuson-Moss Warranty Act," they assert statewide-class breach of implied warranty claims under the laws of several states.  (D.E. 2758 at ¶¶ 326, 334, 406, 549, 555, 608, 636, 642, 675, 703, 740, 771, 823, 857, 888.)  Because Count 1 is dismissed for lack of standing, the Court need not address FCA's separate argument regarding the 100-plaintiff requirement.  The Court will now address the state breach of implied warranty claims.

## 2.    Statewide-Class Breach of Implied Warranty Claims (Counts 10–11, 15, 23, 26, 28–29, 33, 41, 44, and 46)

Plaintiffs assert breach of implied warranty claims under laws of Arkansas, California,[8] Maryland, Massachusetts, Michigan, Mississippi, Missouri, New Jersey, New York, North Carolina, Pennsylvania, South Carolina, and Texas.   FCA argues that the statute of limitations bars certain implied warranty claims under the laws of Arkansas, California, Maryland, Michigan, Mississippi, Missouri, New Jersey, North Carolina, Pennsylvania, and Texas.   FCA also argues that the implied warranty claims under New York and North Carolina law should be dismissed for lack of privity; because Plaintiffs do not dispute this argument and agree to dismiss Counts 36 and 38, these claims are **DISMISSED**.

As explained in the *Puhalla* and *Whitaker* Orders, fraudulent concealment tolling applies in Arkansas, California, Michigan, Mississippi, Missouri, New Jersey, Pennsylvania, and Texas. (*See In re Takata Airbag Prods. Liab. Litig.*, --- F. Supp. 3d ---, 2020 WL 2764196, at *25 (Arkansas, California, Michigan, Mississippi, New Jersey, Pennsylvania, and Texas); D.E. 3838 at 29 (Missouri).)   The only states left unaccounted for here, Maryland and North Carolina, also recognize fraudulent concealment tolling.  *See Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 536 (D. Md. 2011) (quoting Md. Code. Ann., Cts. & Jud. Proc. § 5–203)); *Friedland*, 509 S.E. 2d at 797 (citing *Connor*, 84 S.E. 2d 175; *Stallings*, 394 S.E. 2d 212).

Here, as explained above, Plaintiffs assert numerous allegations detailing FCA's knowledge of the risks posed by the Takata airbags installed in their vehicles, their alleged failure

---

[8] Plaintiffs asserts two claims under California's Song-Beverly Consumer Warranty Act (Counts 11 and 15).  Finding no discernable difference between these two claims, Count 15 is **DISMISSED** as duplicative.  *See Kuchenbecker v. Johnson & Johnson*, No. 19-61712-CIV, 2019 WL 4416079, at *2 (S.D. Fla. Sept. 16, 2019) ("To promote judicial economy, a court should dismiss claims that are duplicative of other claims.") (citations and internal quotations omitted).

to fully investigate or disclose the seriousness of the issue to consumers or regulatory authorities, and their continued selling and leasing of vehicles installed with Takata airbags. *See supra* Sec.III.C.1.a–c. Viewing these allegations in the light most favorable to Plaintiffs, as the Court must at this stage, the Court finds that fraudulent concealment tolling applies to the breach of implied warranty claims.

### 3. <u>Conclusion</u>

In sum, Counts 1, 15, 36, and 38 are **DISMISSED**, and the state breach of implied warranty claims in Counts 10–11, 23, 26, 28–29, 33, 41, 44, and 46 will proceed.

## F. <u>SALE ORDER BAR</u>

Finally, FCA urges that *all* the claims of the named-Plaintiffs who own vehicles manufactured by Chrysler LLC ("Old Chrysler")—not FCA—are barred by the bankruptcy Sale Order governing FCA's acquisition of certain of Old Chrysler's assets.[9]  FCA argues that its liability for vehicles manufactured by Old Chrysler and sold prior to the closing date of the Sale Order is "limited to certain expressly Assumed Liabilities," as defined in the Master Transaction Agreement. Plaintiffs insist that the Sale Order does not bar *any* of these claims because these Plaintiffs purchased their vehicles *after* the Sale Order closed, and because their claims are premised on FCA's *post*-closing wrongful conduct.

The moving papers frame the issue as all or nothing. But the Master Transaction Agreement expressly delineates both "Assumed Liabilities" and "Excluded Liabilities." (*See* D.E. 2989-2 at 69–72.) For instance, Sections 2.08(g) and 2.08(h) list as Assumed Liabilities "all Liabilities pursuant to product warranties, product returns and rebates on vehicles sold by

---

[9] In June 2009, FCA purchased substantially all of Old Chrysler's assets pursuant to a Sale Motion and Purchase Agreement that was approved by the United States Bankruptcy Court for the Southern District of New York. (D.E. 2758 at ¶ 3.)

Sellers prior to the Closing" and "all Product Liability Claims arising from the sale after the Closing of Products or Inventory manufactured by Sellers or their Subsidiaries in whole or in part prior to the Closing." *Id.* at 70.  And Sections 2.09(i) and 2.09(j) list as Excluded Liabilities "all Product Liability Claims arising from the sale of Products or Inventory prior to the Closing" and "all Liabilities in strict liability, negligence, gross negligence or recklessness for acts or omissions arising prior to or ongoing at the Closing." *See id.* at 71.  It follows from these definitions that application of the Sale Order is claim specific. *See In re Old Carco LLC*, 492 B.R. 392, 403–06 (Bankr. S.D.N.Y. 2013) (deciding separately whether the claims for breach of implied warranty, and the claims for negligence under various theories of liability, were barred by the Sale Order).

Although FCA argues in a footnote that liability for fraud, failure to warn, and breach of implied warranty are not Assumed Liabilities under the Master Transaction Agreement, FCA's Reply does not sufficiently address Plaintiffs' core contention that FCA's *post*-closing wrongful conduct is actionable—a contention supported by interpretive case law. *See In re Old Carco LLC*, 582 B.R. 838, 845 (Bankr. S.D.N.Y. 2018) ("At bottom, *a post-Closing breach of an independent duty gives rise to a post-Closing right to payment*, and the 'free and clear' provisions of the Sale Order cannot cut off New Chrysler's liability for its own wrongful, post-Closing conduct.") (emphasis added and citation omitted); *Castleman v. FCA US LLC*, No. 2:18-cv-00342-JNP-PMW, 2019 WL 1406611, at *4 (D. Utah Mar. 28, 2019) ("The Sale Order is not so broad as to preclude FCA's liability for post-Sale duty to warn."); *Holland v. FCA U.S. LLC*, No. 1:15 CV 121, 2015 WL 5172996, at *5 (N.D. Ohio Sept. 3, 2015) ("[T]his case is not one that argues liability simply because FCA is a successor to Old Chrysler, but rather whether FCA had a duty to act based knowledge it acquired and actions it took post Sale Order . . . .").

Plaintiffs' post-closing conduct argument highlights the claim-specific nature of the

Sale Order analysis, and FCA's ensuing failure to respond to this argument seals the Court's refusal to dismiss any of Plaintiffs' claims under the Sale Order.[10]

In the end, holding aside whether Plaintiffs can state certain claims for post-closing wrongful conduct, they will ultimately have to prove at summary judgment or trial that FCA's post-closing conduct was a proximate cause of their economic losses.  *See Castleman v. FCA US LLC*, 2019 WL 1406611, at *6 ("[T]he court would have to determine whether the post-Closing or pre-Closing conduct was the proximate cause of [plainitff's] harm.  But the question of proximate cause is a question reserved for the fact finder.  Accordingly, it is not appropriately decided at the motion to dismiss stage.") (citing *In re Old Carco LLC*, 582 B.R. at 846 ("[A]ssuming that the Plaintiff can assert legally sufficient claims based solely on New Chrysler's post-Closing wrongful conduct, the question of what proximately caused the Decedents' fatal injuries is for the factfinder.")).

For now, the Court declines to dismiss any of the Plaintiffs' claims under the Sale Order. FCA may, however, renew claim-specific arguments at summary judgment.

## **CONCLUSION**

For all the reasons explained above, it is

**ADJUDGED** that FCA's Motion to Dismiss is **GRANTED IN PART** as follows:

- The nationwide-class Magnuson-Moss Warranty Act claim (Count 1) is **DISMISSED** in full;

---

[10] The Court notes that the definitions of Assumed Liabilities and Excluded Liabilities in the Master Transaction Agreement were subsequently amended.  *See In re Old Carco LLC*, 492 B.R. at 396.  The parties' briefing makes no mention of these amendments and only provides the Court with Amendment No. 1.  Although it ultimately may not be relevant to the parties' arguments, it appears that Amendment No. 4 "expanded the category of Assumed Liabilities to include certain product liability claims."  *See id.* at 396 & n.8.

- The statewide-class breach of implied warranty claims under the laws of Indiana, New York, and North Carolina (Counts 22, 36, and 38), and the duplicative claim under California law (Count 15), are **DISMISSED**;

- The statewide-class statutory consumer protection claims under the laws of Alabama, Florida, Indiana, and Pennsylvania (Counts 7, 16, 21, and 40) are **DISMISSED** in full, and the claims under the laws of California, Georgia, and Illinois (Counts 12, 18, and 20) are **DISMISSED** only to the extent they seek damages;

- The fraud claim (Count 4) is **DISMISSED** as to named-Plaintiffs Arlen Sturgis (Mississippi), and T'Keya Cooper, Jamelle Lowery, and Michael McClellion (South Carolina), and as to all putative class members whose fraud claims are governed under the laws of Alabama, Florida, Indiana, Mississippi, and South Carolina;

- The unjust enrichment claim (Count 5) is **DISMISSED** as to all putative class members whose unjust enrichment claims are governed under the laws of Alabama, Arizona, Florida, Indiana, Maryland, Mississippi, New Jersey, North Carolina, and Ohio, and as to these named-Plaintiffs: Laurie Reynolds (Arizona); Ronaldo Maldia (California); Daniel Dwinnells (Maryland); Michael Eikenberry, Kenneth Fischer, Deborah Hillyer, Dave Krzeminski, and Elizabeth Washington (Michigan); Arlen Sturgis (Mississippi); Gene Marsilio (New Jersey); Laquintha O'Neal and Terrie Swanson (North Carolina); Victoria Lykins and Reginald Price (Ohio); Jamelle Lowery (South Carolina); and Bridget Boyd (Texas); and

- The negligence claim (Count 6) is **DISMISSED** as to all named-Plaintiffs whose negligence claims are governed under the laws of Alabama, Arizona, Florida, Georgia, Indiana, Mississippi, Missouri, New Jersey, New York, Ohio, and Texas, and as to all putative class members whose negligence claims are governed under the laws of these states.

Furthermore, the Motion to Dismiss is **DENIED** as to the following claims, which will proceed to summary judgment:

- The statewide-class statutory consumer protection and breach of implied warranty claims in Counts 8–14, 17–20, 23–35, 37, 39, and 41–46;

- Claims for fraud (Count 4) asserted by all named-Plaintiffs whose claims are governed under the laws of Arizona, Arkansas, California, Georgia, Illinois, Maryland, Massachusetts, Michigan, Missouri, New Jersey, New York, North Carolina, Ohio, and Texas;

- Claims for unjust enrichment (Count 5) asserted by these named-Plaintiffs: Cathy Parker and Bobbie Simmons (Arkansas); Rushelle Gonder and Pedro Lucero (California); Michelle Gibson and Debrah Johnson (Georgia); John Fuesting and Priscilla Fuesting (Illinois); Carla Campagnone (Massachusetts); Randy Nielsen (Michigan); Jason Williams (Missouri); Rmzy Abdallah (New York); Marcia Griffith (Pennsylvania); T'Keya Cooper (South Carolina); and Shanna Moore (Texas); and

- Claims for negligence (Count 6) asserted by these named-Plaintiffs: Cathy Parker and Bobbie Simmons (Arkansas) and Daniel Dwinnells (Maryland).

It is further

**ADJUDGED** that FCA must answer the remaining claims in the *Boyd* Complaint **no later than July 23, 2020**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 1st of June 2020.

_Federico A. Moreno_

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

- 45 -